

RECEIVED
Mail Room

DEC 2 9 2020

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CARTER W. PAGE,      )    Case No. 1:20-cv-03460-KJB
            )
Plaintiff,         )
            )    Hon. Ketanji Brown Jackson
-vs.-           )
            )
JAMES COMEY, et. al.,     )    **MOTION TO INTERVENE**
            )
Defendants        )

   Now comes Anthony L. Viola, respectfully moving this Court for an order granting leave to intervene in this action as of right pursuant to Rule 24(a)(2) or, alternatively, permissively pursuant to Rule 24(b)(1)(B), because the Court's disposition of the action may impair or impede movants' ability to protect their interest. What is more, movants' interest is not adequately represented by the parties to this matter, and intervention is in the interests of justice.

### PART ONE: BACKGROUND

   Plaintiff Anthony L. Viola was simultaneously prosecuted in both federal and state court, on identical charges, by the same prosecution team, through a multi-jurisdictional Mortgage Fraud Task Force. These prosecutions featured three indictments and two criminal trials with opposite results. Prosecutors alleged the undersigned devised the "Nation's largest mortgage fraud scheme" and stole $46 million by duping lenders including JP Morgan Chase and Citigroup into making 'no money down' mortgage loans that did not meet the banks' underwriting guidelines. Following a federal conviction, Task Force Office Manager Dawn Pasela provided the Plaintiff with evidence (including FBI 302s and Bates Stamped Federal Evidence) that Federal Prosecutor Mark Bennett stated in writing did not exist, and which was not produced before the first trial, **Exhibit A**. When the evidence that Ms. Pasela provided was introduced at the second trial, actual innocence was established, kindly compare USA v. Viola, 08-cr-506, N.D. Ohio, guilty verdict and 150 month prison sentence, with the subsequent acquittal on the exact same charges, Ohio v. Viola, 10-cr-543886 and 10-cr-536877, Cuyahoga County Common Pleas Court. Judge Daniel Gaul, who presided over the second trial, has taken the extraordinary step of stating in writing that the Plaintiff is innocent, wrongly convicted, and that prosecutors committed "misconduct," **Exhibit B**. Plaintiff was a federal prisoner for nearly a decade, housed at the McKean Federal Correctional Institution, in Bradford, Pa., Prisoner ID # 32238-160 for many years and is now on house arrest.

   Despite establishing innocence at a second trial, the Plaintiff remained in jail. The federal judiciary REFUSED to grant an evidentiary hearing so that the exact same proof of innocence utilized at the second trial could be presented in federal court. Nevertheless, the undersigned continued to investigate the case, retained an investigator and established a web site to solicit leads

1

from the public, www.FreeTonyViola.com. The undersigned also filed public records requests to support post-conviction filings. In those submissions under the Freedom of Information Act (FOIA), the government failed to produce a single piece of paper for over two years, leading to this litigation, where the FBI and Justice Department now admit lying about evidence in the Proposed Intervenor's criminal cases.

## PART TWO: THE JUSTICE DEPARTMENT AND THE FBI BOTH ADMIT THEY LIED ABOUT EVIDENCE IN THE PROPOSED INTERVENOR'S CRIMINAL CASE

The Federal Bureau of Investigation has stated in writing that it was unaware of FBI records in its own records system for a decade. The FBI also asked a federal judge to vacate previous rulings in its favor because those decisions were based upon on false statements it made in sworn affidavits. According to the FBI, it only became aware of evidence in its own custody "when it received those records" from the U.S. Attorney's Office and "discovered that they had not been processed ... The FBI investigated why the records were not initially processed and found that, when it had initially searched for and gathered records, it had inadvertently failed to obtain all portions of the responsive records. ... The FBI intends to process the additional records" totaling nearly 10,000 pages "expeditiously," Viola v. Department of Justice, Case: 18-2573, Third Circuit, Document: 99 Page: 2, **Exhibit C**. Earlier in the same litigation, Assistant U.S. Attorney Michael Colville informed the federal judiciary that the Executive Offices for United States Attorneys made false statements in affidavits and discovered additional records that were previously withheld, and that he "regrets those inaccuracies and the resulting inconvenience," September 27, 2019 letter to Judge Susan P. Baxter, Viola v. Department of Justice, et. al., 15-cv-242, W.D. Pa., **Exhibit D**.

While Lisa Page and Peter Struck exchanged salacious messages via text messages, the undersigned sat in a jail cell, even though actual innocence was established at trial.

## PART THREE: INTRUSION INTO THE SIXTH AMENDMENT RIGHT TO COUNSEL

Following the filing of federal and state indictments, but prior to the commencement of either criminal trial, Assistant U.S. Attorney Bennett directed Ms. Pasela to pose as a graduate student studying criminal defense and working with local defense attorneys defending similar cases. Ms. Pasela shared helpful information with the Plaintiff and offered to assist the defense team. Then, Ms. Pasela recorded a series of post-indictment conversations with the undersigned so prosecutors could obtain confidential defense trial strategy information. FBI Agent Jeff Kassouf admitted listening to these tapes, which have yet to be produced. Ms. Pasela was also given funds to make donations towards defense legal fees so prosecutors could use her cancelled checks to identify the law firm's bank account and track investigative expenses before trial. When one of Ms. Pasela's co-workers informed her it was illegal to intrude into the defense's trial preparation, she realized what she was doing was wrong. Concerned that federal prosecutor Bennett and state prosecutor Kasaris were not producing exculpatory evidence, Ms. Pasela provided the undersigned with key evidence, assisted with preparation for the second trial, prepared defense exhibits and offered to testify as a witness about misconduct inside the Task Force. Ms. Pasela was added to the defense witness list, served with a valid defense subpoena, signed by Judge Gaul.

When AUSA Bennett and state prosecutor Daniel Kasaris realized their own Office Manager was prepared to testify as a defense witness, they advised Ms. Pasela to "leave town" or

face "federal Prison. Kasaris sent an e mail stating that Ms. Pasela would face "indictment" and "prosecution" if she appeared in court as a defense witness.  Ms. Pasela never appeared in court and was found dead in her apartment by her Father shortly after her scheduled testimony.  No investigation into her death or the intrusion into the defense's right to prepare for trial has ever been undertaken, nor has the Plaintiff ever been granted an evidentiary hearing in his case.  And despite admissions by FBI Agent Jeff Kassouf that he listened to tapes made by Ms. Pasela, and sworn statements from the Pasela family, these materials have yet to be produced.  The government was ordered to produce these tapes but has been in violation of a court order for over four years, Viola v. Department of Justice, 15-cv-242, W.D. Pa., Docket # 46, 11/10/16.

The Plaintiff is greatly honored that Edward and Karen Pasela, the parents of Dawn Pasela, have joined the efforts of the undersigned to have Bennett and Kasaris investigated for their actions, which caused the death of their daughter at age 26.

In support of this claim of misconduct, kindly consult the following exhibits, which are also on the district court record:

**EXHIBIT E** – Pasela affidavit and cancelled check
**EXHIBIT F** – Defense Subpoena
**EXHIBIT G** – FBI Agent Kassouf admitted listened to tapes made by Dawn Pasela
**EXHIBIT H** – Dawn Pasela job description / professional resume.
**EXHIBIT I** – E mail from Prosecutor Kasaris threatening to prosecute Dawn Pasela if she testified as a defense witness pursuant to a defense subpoena.

### PART FOUR:  KNOWING USE OF KATHRYN COVER'S PERJURED TESTIMONY AND FEDERAL PROSECUTOR MARK BENNETT'S FAILURE TO WITHDRAW THAT TESTIMONY, DESPITE HIS WRITTEN STATEMENTS THAT CLOVER COMMITTED PERJURY

AUSA Bennett knowingly utilized the perjured testimony of government witness Kathryn Clover.  According to Bennett's own court filing in Clover's case, "Clover provided false testimony during the trial," USA v. Clover, 10-cr-75, Docket # 46, page 2.  Bennett became aware that Clover committed perjury because, **during the federal trial**, Clover informed her attorney, Jaye Schlachet, that she committed perjury by falsely testifying that the Plaintiff conspired with her to commit mortgage fraud – testimony she recanted at the second trial.  But when Mr. Schlachet contacted Mark Bennett and asked him to recall Clover to the stand to correct her false testimony, Bennett refused because doing so "jeopardized the outcome of the case … [and] it served the best interests of justice to allow her testimony to remain unchanged," USA v. Clover, Docket # 29-1, page 8.  No better example of illegal "win at all costs" style of criminal prosecution could possibly be found – and Bennett's knowledge of Clover's perjured testimony is proven by his own court filings.

Meanwhile, prosecutors Bennett and Kasaris CONTINUED to use Clover as a government witness in dozens of criminal and grand jury proceedings, USA v. Clover, Docket # 29-1, pages 43-44.  Moreover, multiple individuals have stated that Clover received undisclosed financial support from federal and state prosecutors, including cash, assistance paying bills and obtaining a Barrister's Scholarship to attend the Cleveland Marshall College of Law.  And according to Clover's own resume, she was an employee of the prosecutor's office while she was testifying as a "fact witness" in criminal cases and grand jury proceedings.

In support of this misconduct claim, kindly consult the following exhibits:

> **EXHIBIT J** – Prosecutor emails and Kathryn Clover's resume, confirming she was an employee in the Prosecutor's Office, not a "fact witness" at trial.
> **EXHIBIT K** – AUSA Bennett's court filing stating Clover committed perjury
> **EXHIBIT L** – AUSA Bennett believes perjury is in "the interests of justice"
> **EXHIBIT M** – Kasaris letter, prosecutors CONTINUE using perjured testimony
> **EXHIBIT N** – Clover recants her federal court testimony

Kathryn Clover was added as a defendant in this case as an indispensable party because she claims she removed evidence from the Task Force and, according to her testimony at the second trial, she informed Bennett that her testimony was false but Bennett told her to commit perjury so he could "win" the case. The public records litigation sought emails between Clover and Bennett, which have yet to be produced by the government. In 2016, the District Court specifically ordered the production of these emails, and the government has been in violation of a court order for over four years, Viola v. Department of Justice, 15-cv-242, W.D. Pa., Docket # 46, 11/10/16. Nevertheless, the Plaintiff's investigative team has obtained some Bennett-Clover emails, **Exhibit O**, proving that – once again – an incarcerated prisoner has obtained records that the government can't find or claims do not exist. The best way to obtain emails between AUSA Bennett and Kathryn Clover would be for the attorneys representing the Justice Department in this case to simply ask for them. In nearly a decade, that has not yet occurred, strongly indicating a cover up.

## PART FIVE:  PROSECTOR DAN KASARIS USED A PRIVATE EMAIL ACCOUNT TO CONDUCT OFFICIAL BUSINESS, AND TO COMMUNICATE WITH GOVERNMENT WITNESS KATHRYN CLOVER, AN ALLEGATION KASARIS ADMITTED UNDER OATH

The government has shifted evidence and records in the Proposed Intervenor's criminal case between jurisdictions and locations for many years, necessitating state public records requests as well as an investigation at Plaintiff's expense conducted by former FBI Agent Robert Friedrick, In related public records litigation, <u>Anthony Viola v. Ohio Attorney General</u>; Case No. 2020-00507PQ and <u>Anthony Viola v. Cuyahoga County Prosecutor's Office</u>, Case No. 2020-506PQ, nearly 600 pages of emails between Mr. Kasaris, AUSA Mark Bennett and government witness Kathryn Clover were produced, confirming that Ms. Clover was falsely portrayed as a "fact witness" in criminal cases where she testified, when she was, in fact, having a romantic relationship with Mr. Kasaris and serving as a paralegal for AUSA Bennett and Mr. Kasaris. Selections from those emails have been provided to the District Court and are on the Ohio Court of Claims docket, www. ohiocourtofclaims.gov, On Line services, Case Search.

Family members of the Prosecutor have been assisting the undersigned and providing copies of Yahoo emails between Mr. Kasaris and government witness Clover, in which Kasaris identifies himself as a prosecutor on his Yahoo account. In one email to Kathryn Clover, Kasaris describes "hand jobs" and "banging in the car," **Exhibit P.** Recently, Kasaris himself stated that he utilized his private Yahoo email account with his official government signature affixed thereto to conduct official business. According to Mr. Kasaris' affidavit, "For the most part" he followed

records laws but on some occasions, Kasaris forwarded official emails from his Yahoo account to his government accounts or "deleted" certain public records from the Yahoo account concerning criminal matters (Paragraph 12, Kasaris affidavit).  But emails relating to criminal cases concern government operations and functions – and are public records.  Please see Kasaris affidavits and emails confirming he utilized his Yahoo account for official government business, **Exhibit Q**.

As the attached affidavits and sworn statements previously filed with the District Court as part of a proposed Amended Complaint make clear, there is overwhelming evidence that Mr. Kasaris had a long-term romantic relationship with government witness Kathryn Clover and utilized his private email account to communicate with her.  Please see:

- o   Affidavit from Matt Fairfield, **Exhibit R**.
- o   Statement from Bryan Butler, who viewed some of these emails, **Exhibit S**.
- o   Affidavit from Kelly Patrick, **Exhibit T**.

In addition to the misconduct described herein, kindly consult the FreeTonyViola.com web site and Evidence Locker for additional documentary evidence of criminal activities by FBI Agent Jeff Kassouf and Prosecutors Dan Kasaris and Mark Bennett.

## PART SIX :  THE FBI USES A MULTI-JURISDICTIONAL TASK FORCE TO SHIFT EVIDENCE BETWEEN JURISDICTIONS AND LOACTIONS TO HIDE EXCULPATORY EVIDENCE

The FBI led a federally funded, multijurisdictional Task Force, then used the structure of that Task Force to shift evidence between locations and jurisdictions to hide it from criminal defendants.  When it suited the FBI to claim it was working with state and local law enforcement agencies, it did so – in both press releases and federal grant applications, **Exhibit U**.  Sometimes, federal law enforcement officials asked "state" authorities to interview witnesses before the federal trial – if those witnesses stated that the undersigned was innocent, they were NOT sent to the FBI for further interviews, so the FBI could claim it didn't interview such witnesses.  And while the FBI stated it could access evidence at the Task Force "at any time," it also claims it sent evidence to that location (including tapes made by Ms. Pasela) and now has now dispossessed itself of that evidence.  On other occasions, the FBI has asserted "sovereign immunity" and refused to testify in state criminal proceedings, prosecuted by the same Task Force it ran, **Exhibit V**.

This hiding and shifting of evidence and voice recordings echoes the underhanded and illegal tactics the Bureau employed in the Page case and should cease immediately.

## MEMORANDUM OF LAW

"The D.C. Circuit 'has identified four prerequisites to intervention as of right: (1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." Karsner v. Lothian, 532 F.3d 876, 885 (D.C. Cir. 2008). If intervention is unavailable as of right, the Court may permit intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Also see Reporters LLC v. U.S. Dep't of Justice, 307 F.R.D. 269, 286 (D.D.C. 2014) (permissive intervention "allow[s] all interested parties to present their arguments in a single case at the same time").

**The application to intervene is timely** because the case was filed less than 30 days ago, and no answers to the complaint have been filed.   Allowing intervention at this stage would not be disruptive to the litigation or otherwise prejudice the parties.

**The proposed intervenor has a legally protected interests in this lawsuit.**  The proposed intervenors and their members has a legally protectable interest that is threatened by this lawsuit; — namely, the FBI's illegal surveillance of American citizens and its subsequent cover up of its improper actions.   The proposed intervenors' interests in this case are therefore concrete and direct, and concern the fair administration of justice in America, and the propensity of the federal judiciary to simply take the government's word for it when victims of FBI misconduct raise issues in federal courts.  This Intervention is also important because the Justice Department routinely minimizes its criminal activities in cases by claiming they were a "one off" or the result of a few bad apples.  This pleading makes clear that criminal activities by the FBI and Justice Department are routine and – even when caught – Justice Department employees who break the law are never punished or face any consequences.  Clearly, the proposed intervenors' interests are "of such a direct and immediate character that [its members] will either gain or lose by the direct legal operation and effect of the judgment." United States v. AT&T, 642 F.2d 1285, 1292 (D.C. Cir. 1980).

**Absent intervention, the proposed intervenor's legally protectable interests are at risk of being impaired** "The [impairment] inquiry is not a rigid one: consistent with the Rule's reference to dispositions that may 'as a practical matter' impair the putative intervenor's interest, courts look to the practical consequences' of denying intervention." Forest Cty. Potawatomi Cmty. v. United States, 317 F.R.D. 6, 10-11 (D.D.C. 2016).

**The parties to this case will not adequately represent the proposed intervenors' interests** because the defendants routinely cover up misconduct, rather than reporting or stopping it, contrary Section 45.11 of Title 28 of the Code of Federal Regulations, which imposes a duty on all Department of Justice (DOJ) employees to report allegations of "criminal or serious administrative misconduct" to the DOJ's Office of Inspector General (OIG), or to their supervisor or internal affairs for referral to OIG.  Section 45.12 imposes a duty on DOJ employees to report to the Office of Professional Responsibility (OPR) allegations of misconduct by a DOJ attorney or "law enforcement personnel when such allegations are related to allegations of attorney misconduct."

And since counsel for the Plaintiff does not have access to all records in the Viola criminal case, only the Proposed Intervenor can properly represent his legal interests.

**The Court also has** discretion to grant leave to intervene under Rule 24(b). That rule provides that a court may allow a party to intervene if it merely "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Moreover, this Motion is in the interests of justice, McDonald v. E. J. Lavino Co., 430 F.2d 1065, 1074 (5th Cir. 1970) (permissive intervention should be granted "where no one would be hurt and greater justice would be attained").

## CONCLUSION

Any American who would like to break the law with impunity should join the Federal Bureau of Investigation.  The greatest threat to the American public is not the Chinese Communist Party or Russian President Vladimir Putin – it's the United States Department of Justice and the Federal Bureau of Investigation, which – combined – constitute the most prolific criminal enterprise in America.  Add to that the fact that no one in the government EVER does the right thing and the result is litigation like this, which is vital to ending criminal violations by government officials, who are destroying the very American citizens they claim to protect.

**WHEREFORE,** Anthony L. Viola respectfully request that the Court:  (1) Grant leave to participate as intervenor-defendants in this case; (2)  Refer the misconduct described herein to the Department of Justice's Inspector General for a full investigation; and (3) Grant any additional relief deemed appropriate.

Respectfully Submitted,

Anthony Viola
2820 Mayfield Road # 205
Cleveland Heights, Ohio  44118
MrTonyViola@ICloud.com
(330) 998-3290
www.FreeTonyViola.com

December 23, 2020

## CERTIFICATE OF SERVICE

I, Anthony Viola, hereby swear and affirm that I caused a copy of the foregoing Motion to Intervene, and all of its attachments, to be served upon the following individuals, via regular U.S. mail, postage prepaid, and email, where such email addresses are available, on this 23rd day of December, 2020:

Kerry Lawson Pedigo,
Counsel for Plaintiff Carter Page
Miller Keffer & Pedigo
3400 Carlisle Street
Suite 550
Dallas, TX  75204-0354
KLPedigo@mkp-law.net

JAMES COMEY
7845 Westmont Ln.
McLean, VA 22101

ANDREW McCABE
42751 Summerhouse Pl.
Broadlands, VA 20148

KEVIN CLINESMITH
1375 Keyon St. NW, Apt. 607
Washington D.C., 20010

PETER STRZOK
3214 Prince William Dr.
Fairfax, VA 22031

LISA PAGE
1229 D St. NE
Washington D.C., 20002

JOE PIENTKA III
3227 20th Rd. N
Arlington, VA 22207

STEPHEN SOMMA
6 Overlook Dr.
Madison, CT 06443

BRIAN J. AUTEN
10245 Quiet Pond Ter.
Burke, VA 22105

DEPARTMENT OF JUSTICE,
950 Pennsylvania Avenue, NW
Washington, DC 20530-000

FEDERAL BUREAU OF INVESTIGATON,
935 Pennsylvania Ave NW,
Washington, DC 20535

UNITED STATES OF AMERICA,
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Respectfully Submitted,

Anthony Viola

RE: Newcomb 302 request from Tony Viola

Page 1 of 1

**From:** Bennett, Mark (USAOHN) (USAOHN) <Mark.Bennett2@usdoj.gov>
   **To:** tonytopaz <tonytopaz@aol.com>
   **Cc:** Daniel Kasaris (p4dxk@cuyahogacounty.us) <p4dxk@cuyahogacounty.us>
**Subject:** RE: Newcomb 302 request from Tony Viola
   **Date:** Sun, Apr 8, 2012 8:45 pm

I have checked the system and do not have a 302 for Mr. Newcombe. I have inquired with the agents and other AUSAs on the case to see if one was created and they can provide. I will not be in the office next week. But they can respond directly to Mr. Kasaris.

Mark S. Bennett
Assistant United States Attorney
801 W. Superior Ave., Suite 400
Cleveland, Ohio 44113
216.622.3878 (direct)
216.522.2403 (fax)
mark.bennett2@usdoj.gov

**From:** tonytopaz@aol.com [mailto:tonytopaz@aol.com]
**Sent:** Sunday, April 08, 2012 6:20 PM
**To:** Bennett, Mark (USAOHN)
**Subject:** Re: Newcomb 302 request from Tony Viola

Mr. Kasaris says he does not have Mr. Newcomb's 302, if possible, kindly reforward that, thank you.

Tony

-----Original Message-----
From: Bennett, Mark (USAOHN) (USAOHN) <Mark.Bennett2@usdoj.gov>
To: 'tonytopaz@aol.com' <tonytopaz@aol.com>; 'dkasaris@cuyahogacounty.us' <dkasaris@cuyahogacounty.us>
Sent: Sun, Apr 8, 2012 10:31 am
Subject: Re: Newcomb 302 request from Tony Viola

Mr. Viola,

I have provided those to Mr. Kasaris. I am sure he will provide pursuant to local rule and the Court's trial order.

Mark Bennett

**From:** tonytopaz@aol.com [mailto:tonytopaz@aol.com]
**Sent:** Saturday, April 07, 2012 03:47 PM
**To:** Bennett, Mark (USAOHN); dkasaris@cuyahogacounty.us <dkasaris@cuyahogacounty.us>
**Subject:** Newcomb 302 request from Tony Viola

Mr Bennett - I am respectfully requesting that you e mail me a copy of the Argent witness, Mr. Steve Newcomb, his 302 statement summary. He testified on direct exam on Friday and will resume this coming week. Thank you.

Tony Viola

exhibit  A - p.1

and this was my response to mark.
I do not have any newcomb 302

dan

Daniel J. Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST, 9th Floor
216-443-7863
216-698-2270 (fax)

Attached Message

From: Daniel Kasaris <dkasaris@cuyahogacounty.us>
To: Mark (USAOHN) Bennett <Mark.Bennett2@usdoj.gov>
Cc: Jeffrey P. (FBI) Kassouf <Jeffrey.Kassouf@ic.fbi.gov>; John (USAOHN) Siegel <John.Siegel@usdoj.gov>
Subject: Re: Viola - 302s of lender, Rich and Calo
Date: Sun, 08 Apr 2012 12:56:01 -0400

mark
this is what you sent
I do not have a 302 for steve newcomb
thx
dan

Daniel J. Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST, 9th Floor
216-443-7863
216-698-2270 (fax)

>>> "Bennett, Mark (USAOHN)" <Mark.Bennett2@usdoj.gov> 2/29/2012 5:25 PM >>>
Dan,

I have not found the interview of Steve Newcomb from Argent, but you probably already have that one. In addition, please be advised that we have put all of our trial exhibits on a disk and will send that disk, along with the Colley disk out tomorrow.

Thanks,
Mark

P.S. I also included a summary of our interview of Viola. I also have his typed letter to me with all of the attachments from early on where he admitted to the fact he should have realized these deals were questionable. Let me know if you want that.

Mark S. Bennett
Assistant United States Attorney
801 W. Superior Ave., Suite 400
Cleveland, Ohio 44113
216.622.3878 (direct)
216.522.2403 (fax)
mark.bennett2@usdoj.gov


exhibit A - p. 2

FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    02/22/2011

On February 18, 2011, SCOTT NEWCOMBE, was telephonically interviewed, by Forensic Accountant Ron Saunders, Special Agent Jeffrey Kassouf and Special Assistant United States Attorney Micah Ault, after being advised of the nature of the interview and the identity of the interviewing personnel, NEWCOMBE provided the following information:

NEWCOMBE worked at ARGENT MORTGAGE, and transferred over to Citigroup Global once Argent was sold to Citigroup.  NEWCOMBE is involved in ACC Capital as they wind down Argent.

Argent was a loan originator.

During the years 2005-2006 Argent processed a significant number of loans.

Argent required the borrower provide a down payment, which was generally provided through a cashiers check.

Argent had a stated loan program.  These loans were typically higher risk, so they carried a higher interest rate on the loan.  In the stated income loan program, the borrower states their income on the loan application, also known as a 1003.  Argent required the borrower to sign a certification or letter as to their income.

Argent originated their loans through mortgage brokers. The mortgage brokers were required to go through an approval process before Argent would accept any loans.

The loans were assigned to the underwriting department if the loan met the underwriting guidelines a conditional loan approval with various terms was issued.

Final approval on the loan would be issued after the loan conditions were met.

Argent would send various loan documents to the title company to be signed at closing.  Once the title company closed the loan and completed the documents, they would send the completed

Investigation on    02/18/2011    at  Cleveland, Oh

File #  329A-CV-71645

Date dictated

by   SA Jeffrey P. Kassouf

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

exhibit A - p. 3

FD-302a (Rev. 11-6-95)

329A-CV-71645

Continuation of FD-302 of    SCOTT NEWCOMBE                                    , On 02/18/2011 , Page    2

documents back to Argent.  Once this was done Argent would fund the
loan.

        The account executive, was the sales representative in
the field who dealt with the mortgage brokers.

        The account manager oversaw the underwriter and funding
processes.

        Underwriting approved the loans, if there were any
exceptions or conditions not met the account manager could override
or waive a condition, if it made good business sense.

        It was important to underwriting to pull the borrower's
credit report.  The credit score drove the loan process.

        The borrower's income was important to assess the risk of
repayment.

        A debt to income ratio was calculated based upon the
income provided in the 1003.

        Purchase loans required proof of the down payment.

        The appraisal was required to be done by a disinterested
third party.

        The appraiser dealt with the mortgage broker, who
submitted the appraisal report to Argent.  Once received the
appraisal would be sent for a desk review.  If any followup by the
desk review was needed they could call the appraiser.

        The Account Manager and Underwriter placed heavy reliance
that the 1003 was completed accurately and truthfully.

        If the borrower was self employed a third party letter
from a Certified Public Accountant was needed.

        Argent required 5% of the down payment must be from the
borrowers own funds, regardless of the Loan to Value.

        Gift funds had to come from an immediate family member.
If a gift was provided a gift letter was required, stating the
funds were given truly as a gift and no repayment was required.

EXHIBIT A - P.4

FD-302a (Rev. 10-6-95)

329A-CV-71645

Continuation of FD-302 of ___SCOTT NEWCOMBE_____ , On _02/18/2011_ , Page ___3___

      Argent did not accept third party down payments from a down payment provider.

      Argent accepted seller second mortgages, also known as seller carry backs.  The loan contract stating the terms and conditions was required to be provided to Argent.  If a seller second was entered into Argent expected this was a legitimate transaction which would be repaid.

      At one point Argent allowed only the buyer HUD Settlement Statement, however, their policy switched to requiring both the buyer and seller side.  Argent switched this policy when it was discovered unauthorized third party disbursements were being made on the loans.

      Closing costs were based upon the purchase agreement. The closing costs were capped at a certain percentage.  Therefore the seller could only provide a certain maximum percentage.

      Any money going to the buyer would need to be disclosed to Argent.

exhibit A-0.5

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☒ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☒ Conventional  ☐ Other (explain): | | Agency Case Number | Lender Case Number |
|---|---|---|---|---|
| | ☐ FHA  ☐ USDA/Rural Housing Service | | | 0079489357 |

| Amount | Interest Rate | No. of Months | Amortization Type: | ☒ Fixed Rate  ☐ Other (explain): |
|---|---|---|---|---|
| $76,500.80 | 9.450 % | 360 | | ☐ GPM  ☒ ARM (type): 2/28 |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) | | County | No. of Units |
|---|---|---|---|
| 2101 EAST 101ST STREET, CLEVELAND, OH  44106 | | CUYAHOGA | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| | 1910 |

| Purpose of Loan | ☒ Purchase  ☐ Construction  ☐ Other (explain): | Property will be: | ☐ Primary Residence | ☐ Secondary Residence | ☒ Investment |
|---|---|---|---|---|---|
| | ☐ Refinance  ☐ Construction-Permanent | | | | |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| 0 | 0 | 0 | 0 | 0 | 0 |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | ☐ made  ☐ to be made |
|---|---|---|---|---|---|
| 0 | 0 | 0 | | Cost: 0 | |

| Title will be held in what Name(s)  LUCAS FAIRFIELD | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| | | ☒ Fee Simple |
| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) | | ☐ Leasehold (show expiration date) |
| EQUITY FROM SUBJECT PROPERTY | | |

## III. BORROWER INFORMATION

| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|
| LUCAS  FAIRFIELD | |

| Social Security Number | Home Phone (incl. area code) | DOB(MM/DD/YYYY) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB(MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|
| 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 | (541)740-3137 | 03/17/1983 | 16 | | | | |

| ☐ Married  ☒ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Co-Borrower) no. 0 ages | ☐ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Borrower) no. ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP)  ☐ Own ☒ Rent 2 No. Yrs. | Present Address (street, city, state, ZIP)  ☐ Own ☐ Rent No. Yrs. |
|---|---|
| 13936 LAKE AVENUE | |
| LAKEWOOD,OH 44107 | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP)  ☐ Own ☐ Rent No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own ☐ Rent No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| BORROWER | | | CO-BORROWER | | |
|---|---|---|---|---|---|
| Name & Address of Employer  ☒ Self Employed | Yrs. on this job  2 | | Name & Address of Employer  ☐ Self Employed | Yrs. on this job | |
| 1920 KODEL & TALENT 2220 SUPERIOR VIADUCT CLEVELAND,OH 44113 | Yrs. employed in this line of work/profession  2 | | | Yrs. employed in this line of work/profession | |
| Position/Title/Type of Business  OWNER | Business Phone (incl. area code)  (216)579-1920 | | Position/Title/Type of Business | Business Phone (incl. area code) | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer  ☐ Self Employed | Dates (from – to) | | Name & Address of Employer  ☐ Self Employed | Dates (from – to) | |
|---|---|---|---|---|---|
| | Monthly Income  $ | | | Monthly Income  $ | |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

| Name & Address of Employer  ☐ Self Employed | Dates (from – to) | | Name & Address of Employer  ☐ Self Employed | Dates (from – to) | |
|---|---|---|---|---|---|
| | Monthly Income  $ | | | Monthly Income  $ | |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

0079506473

FT06895

exhibit A - p.6

## Argent Mortgage Company
### BORROWER'S DISBURSEMENT AUTHORIZATION

| SETTLEMENT /CLOSING AGENT<br>TITLE NETWORK OF AMERICA LLC<br>35401 EUCLID AVENUE SUITE 215<br><br>WILLOUGHBY, OH 44094 | BORROWER(S)<br>KATHRYN CLOVER |
|---|---|
| PROPERTY ADDRESS<br>3233 DELLWOOD ROAD, CLEVELAND HEIGHTS,<br>OH 44118 | SELLER(S) |
| CLOSING DATE  06/30/2005   FUNDING DATE   06/30/2005 | LEGAL DESCRIPTION |
| LOAN NUMBER   0082568999 - 9705 | LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF: |
| LOAN PURPOSE  Purchase | |

FROM: Argent Mortgage Company, LLC -  Division 03 - Reg 05 Sales  PHONE NO. (800)369-5117   FAX
FUNDING CONTACT:

**INSTRUCTIONS TO SETTLEMENT/CLOSING AGENT:**
BELOW IS A LIST OF ALL SETTLEMENT CHARGES AND DISBURSEMENTS APPLICABLE TO THIS LOAN. YOU MUST USE THESE FIGURES TO PREPARE YOUR SETTLEMENT STATEMENT. YOU CANNOT DEVIATE FROM THESE FIGURES WITHOUT PRIOR WRITTEN AUTHORIZATION FROM Denise Obrock. ANY AMOUNTS MARKED WITH AN " * " ARE PREPAID FINANCE CHARGES AND CANNOT BE INCREASED OR ADDED ONCE LOAN DOCUMENTS HAVE BEEN PREPARED UNLESS NEW LOAN DOCUMENTS ARE GENERATED.

### Settlement Charges

LOAN AMOUNT:  $     161,500.00

| Item Payable | Pay to | Paid Outside of Closing (POC) | Paid by Borrower | Paid by Lender | Paid by Seller | Total Amount Paid |
|---|---|---|---|---|---|---|
| Underwriting Fee to Lender | Argent Mortgage Company, LLC | $0.00 | $550.00 | $0.00 | $0.00 | $550.00  * |
| Interest 1 days @ 36.06 | Argent Mortgage Company, LLC | $0.00 | $36.06 | $0.00 | $0.00 | $36.06  * |
| Origination Fee to Broker   2.477% | Central National Mortgage   (W) | $0.00 | $4,000.36 | $0.00 | $0.00 | $4,000.36  * |
| Appraisal Fee | HUDAK APPRAISAL   (W) | $0.00 | $350.00 | $0.00 | $0.00 | $350.00 |
| Tax Related Service Fee | Argent Mortgage Company, LLC | $0.00 | $70.00 | $0.00 | $0.00 | $70.00  * |
| Flood Search Fee | Argent Mortgage Company, LLC | $0.00 | $9.00 | $0.00 | $0.00 | $9.00  * |
| Hazard Insurance Premium | INSURANCE OFFICE OF   (W) | $0.00 | $860.50 | $0.00 | $0.00 | $860.50 |
| Closing/Remote Close/Trip | FAMILY TITLE SERVICES INC (W) | $0.00 | $450.00 | $0.00 | $0.00 | $450.00  * |
| Title Ins/Endorsements/Survey | FAMILY TITLE SERVICES INC (W) | $0.00 | $576.25 | $0.00 | $0.00 | $576.25 |
| Recording/Recording | FAMILY TITLE SERVICES INC (W) | $0.00 | $200.00 | $0.00 | $0.00 | $200.00 |
| Courier/Wire/E-Mail Fee | FAMILY TITLE SERVICES INC (W) | $0.00 | $115.00 | $0.00 | $0.00 | $115.00  * |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | TOTAL CHARGES | $7,217.17 |

### ESCROW ACCOUNTS

| | Annual Amount | Monthly Amount | Number of Months | Total Charge |
|---|---|---|---|---|
| TAXES | $0.00 | $0.00 | 0 | $0.00 |
| HAZARD INSURANCE | $0.00 | $0.00 | 0 | $0.00 |
| FLOOD INSURANCE | $0.00 | $0.00 | 0 | $0.00 |
| EARTHQUAKE INSURANCE | $0.00 | $0.00 | 0 | $0.00 |
| WINDSTORM INSURANCE | $0.00 | $0.00 | 0 | $0.00 |
| | | | INITIAL DEPOSIT | $0.00 |

BORRDISB (06/04)

FT02456

exhibit A - p. 7

Argent Mortgage Company, LLC

## BORROWER'S DISBURSEMENT AUTHORIZATION

Additional Disbursements to Others

| Item Payable | Account Number | Balance | Total Amount Paid |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TOTAL DISBURSEMENTS | |

FUNDING INFORMATION

| | |
|---|---|
| WIRE AMOUNT | |
| DEPOSIT(S) / EARNEST MONEY | |
| WAREHOUSE LINE | |
| CASH OUT | $15,717.17 |
| FUNDING CONTACT: | |

BORROWER(S) AUTHORIZATION

Argent Mortgage Company, LLC ("LENDER") IS HEREBY AUTHORIZED AND REQUESTED TO DISBURSE THE LOAN FUNDS TO THE SETTLEMENT/CLOSING AGENT TO BE APPLIED/DISBURSED IN ACCORDANCE WITH AND AS SHOWN IN THIS AUTHORIZATION. IT IS UNDERSTOOD THAT THIS STATEMENT IS AN ESTIMATE ONLY AND IS AUTHORIZED TO MAKE ADJUSTMENTS TO THE FIGURES AS NECESSARY TO REFLECT CHANGES IN THE CLOSING/SETTLEMENT DATE OR TO REFLECT UPDATED PAYOFF AMOUNTS FOR ANY PRIOR LIENS OR ACCOUNTS TO BE SATISFIED WITH THEIR LOAN PROCEEDS.

Borrower KATHRYN CLOVER    Date 6/30/05

Borrower _____ Date _____

Borrower _____ Date _____

Borrower _____ Date _____

Borrower _____ Date _____

SETTLEMENT/CLOSING AGENT REPRESENTATIVE    Date 6-30-05

BORRDISB2 (09/04)    2 of 2

FT02457

exhibit A - p. 8



# THE COURT OF COMMON PLEAS

COUNTY OF CUYAHOGA

JUSTICE CENTER

1200 ONTARIO STREET

CLEVELAND, OHIO  44113

DANIEL GAUL
Judge
(216) 443-8706

February 17, 2017

Anthony L. Viola - ID #32238-160
McKean Federal Correctional Institution
P.O. Box 8000
Bradford, PA  16701

Dear Tony:

I hope you are as well as a person can be in federal prison.

Just thought I would write to express my feelings of regret on your continued incarceration. I had hoped that your exoneration in my courtroom would have assisted you in overturning your federal conviction.

In any case, I am writing to inform you that there is a newly elected Cuyahoga County Prosecutor. His name is Mike O'Malley. His office may be willing to take a fresh look at Daniel Kasaris' misconduct in your case. If Kasaris participated in your federal case, O'Malley's office may be able to intervene, or at least support a post-release remedy before Judge Nugent.

Anyway, this is just a thought. Please let me know if I may assist you in any way.

I regard you as an extremely decent man and I do hope you will have your conviction overturned.

Sincerely,

Daniel Gaul
Judge

DG/mtl

exhibit  B

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

ANTHONY L. VIOLA,

        Plaintiff-Appellant,

    v.

U.S. DEPARTMENT OF JUSTICE, FEDERAL
BUREAU OF INVESTIGATION; U.S. DEPART-
MENT OF JUSTICE, EXECUTIVE OFFICE FOR
U.S. ATTORNEYS; CUYAHOGA COUNTY
MORTGAGE FRAUD TASK FORCE; and
KATHRYN CLOVER,

        Defendants-Appellees.

No. 18-2573

## FEDERAL DEFENDANTS' MOTION TO EXPAND THE SCOPE OF
## THE PARTIAL REMAND

In this Freedom of Information Act (FOIA) action, plaintiff Anthony L. Viola

seeks records from the Federal Bureau of Investigation (FBI), the Executive Office for

U.S. Attorneys (EOUSA), and the Cuyahoga County Mortgage Fraud Task Force. In

October 2019, counsel for the federal defendants discovered that the *Vaughn* index

submitted to the district court in support of EOUSA's withholdings contained inaccu-

racies. The federal defendants therefore requested a partial remand to allow EOUSA

to reprocess responsive records and submit a new *Vaughn* index and declaration to the

district court. The other parties to this appeal did not oppose the motion, and this

Court granted it on October 31, 2019.

exhibit   C —   P. 1

When EOUSA reprocessed the responsive records on remand from this Court, it referred to the FBI a number of records for which the FBI was the custodian. When the FBI received those records, it discovered that they had not been processed during the initial phase of district court litigation. The FBI investigated why the records were not initially processed and found that, when it had initially searched for and gathered records, it had inadvertently failed to obtain all portions of the responsive records. The FBI thus determined that, in addition to the records referred from EOUSA, it must now process the previously unprocessed responsive records within its own investigative files. The FBI intends to process the additional records expeditiously and then to provide the district court with a supplemental declaration and *Vaughn* index.

Because the federal defendants' motion for a partial remand asked for a remand only as to EOUSA, not the FBI—and because this Court granted the motion without saying anything further about the scope of the remand—it appears that the district court may currently lack jurisdiction to consider a supplemental declaration and *Vaughn* index, and adjudicate any resulting disputes, as to the FBI. The federal defendants accordingly request that the partial remand be expanded to include the FBI.

The Cuyahoga County Mortgage Fraud Task Force does not oppose this request. Viola intends to file a response.

## CONCLUSION

The Court should vacate the district court's judgment with respect to the FBI and remand with instructions that the FBI be permitted to produce a supplemental

exhibit C—p.2

declaration and *Vaughn* index after it processes additional records.  This appeal should continue to be held in abeyance until the district court has completed proceedings on remand as to the FBI and EOUSA.

Respectfully submitted,

SHARON SWINGLE

/s/ *Daniel Winik*
DANIEL WINIK
D.C. Bar No. 1015470
*Attorneys, Appellate Staff*
*Civil Division, Room 7245*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
(202) 305-8849

June 29, 2020

exhibit C - P. 3



**U.S. Department of Justice**

*United States Attorney*
*Western District of Pennsylvania*

---

*Joseph F. Weis Jr. U.S. Courthouse*
*700 Grant Street*
*Suite 4000*
*Pittsburgh, Pennsylvania 15219*                    *412/644-3500*

September 27, 2019

The Honorable Susan Paradise Baxter
United States District Judge
U.S. Courthouse
17 South Park Row, Room A-240
Erie, PA 16501

     **RE:**   **Anthony L. Viola v. USDOJ FBI, et al.**
             **Civil Action No. 15-242E**

Dear Judge Baxter:

     In June 2018, the Court granted summary judgment to the federal defendants in this Freedom of Information Act case, the Federal Bureau of Investigation (FBI) and Executive Office for U.S. Attorneys (EOUSA). The plaintiff, Anthony L. Viola, appealed that ruling to the U.S. Court of Appeals for the Third Circuit, where the appeal remains pending.

     In the course of preparing the government's brief on appeal, government counsel discovered that the *Vaughn* index that EOUSA prepared and the government filed with this Court incorrectly described some of the documents at issue. The government has now moved in the Third Circuit to vacate this Court's judgment in favor of EOUSA and remand for further proceedings—in which EOUSA will reprocess the documents at issue and submit a new *Vaughn* index and declaration—once the Third Circuit has resolved the remaining issues in the appeal.

EXHIBIT   D — P.1

September 27, 2019
Page 2

      Because the Third Circuit appeal remains pending, this Court presently lacks jurisdiction, and the government does not ask that the Court take any action at this time.  The government is filing this letter simply to avoid any delay in notifying the Court of the inaccuracies in EOUSA's prior submission.  The government regrets those inaccuracies and the resulting inconvenience to the Court.

                    Respectfully submitted,

                    SCOTT W. BRADY
                    United States Attorney

                    */s/ Michael C. Colville*
                    MICHAEL C. COLVILLE
                    Assistant U.S. Attorney
                    (412) 894-7337

exhibit D - 0.2

DAWN M. PASELA   06-05
1520 CLEARBROOKE DR., UNIT 103
BRUNSWICK, OH  44212

25-3 671
440
70016 1631

147

C/O Mr. J Norman Star DATE 11-12-09

PAY TO THE
ORDER OF   Tony V____ D__ __ Fund              $ 25 —

Twenty Five Dollars                              DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
Columbus, Ohio 43271
www.Chase.com

MEMO   Viola Doe Fund              D. M____

exhibit e - p.1

## AFFIDAVIT OF KAREN PASELA

STATE OF OHIO
COUNTY OF CUYAHOGA, SS:

I, Karen Pasela, depose and state under oath as follows:

1. I was the mother of Dawn Pasela, who died on April 25, 2012.

2. For the last three years of her life, Dawn worked for the Cuyahoga County Mortgage Task Force, first as a contract employee and then as a county employee.

3. Dawn served in the capacity of office manager. One of her duties was to maintain the task force's files. After Dawn worked there for a while, she said she was concerned that things were being taken from the files and not returned. She also said some employees had signed her name when they took the files, and she feared they were hiding them from attorneys representing the people the task force was investigating. She particularly expressed concern about the way the cases against Anthony Viola and Susan Alt were being handled. Dawn showed us photos she had taken of file boxes haphazardly stacked in the hallway, which made them easily accessible to almost anyone.

4. Dawn also mentioned that some computers in the office had disappeared, and she couldn't find out why or where they went.

5. Although Dawn was not trained as an investigator, she was asked to go to a fund-raising event for Anthony Viola after he had been indicted and to secretly record what was said. She was also asked to write a check for Viola's defense fund so the prosecutors could determine at which bank the fund was being maintained. Dawn wondered about the propriety of these tactics.

6. Dawn continued to attend events sponsored by Viola's supporters and eventually began to sympathize with him because she felt that prosecutors were withholding documents that could help in his defense.

7. As her disenchantment over what was going on at the task force grew, Dawn began drinking excessively. This finally led to her termination. The task force later asked her to come in to discuss reinstatement, but she declined.

8. After the task force learned that Dawn had been subpoenaed to testify on Viola's behalf, two investigators came to her apartment to pressure her to reveal what Viola wanted her to testify about. She told us that the two men said that it would be wise for her to leave Ohio for a while and that if she testified for Viola she could end up in a federal prison. As a result, Dawn did not testify.

exhibit  e-  p. 2

9. Dawn was so frightened that the investigators might return that she moved into our house for 10 or more days and stopped drinking. She also parked her car in our garage so no one would see it. Dawn eventually began to feel stronger physically and emotionally and moved back to her apartment.

10. When we visited Dawn the day before she died, we could tell that she had started drinking again, and we urged her to stop.

11. Dawn was found dead the next day. The cause of death was listed as acute alcohol intoxication. She was only 26.


Further I sayeth naught.

*Karen Pasela*

Karen Pasela


Sworn and subscribed in my presence this ___16th___ day of ___December___, 20_16_

*Paul Vargo*

NOTARY PUBLIC

PAUL **VARGO**
NOTARY PUBLIC
STATE OF OHIO
Recorded in
Cuyahoga County
My Comm. Exp. 1/25/17

exhibit e — p.3



Police photo - As Rosela's Death

exhibit e - p.4

FD-473 (Rev. 6-1-00)



3/17/2008
(Date)

(Location)

I,

(Name)

hereby authorize                                                                and

, Special Agents

of the Federal Bureau of Investigation, United States Department of Justice, to place a

☒ Body Recorder

on my person for the purpose of recording any conversations

☐ Transmitter

with

(Name of Subject(s))

and others as yet unknown which I may have on or about   3/17/08   and
(Date)

continuing thereafter until such time as either I revoke my permission or the FBI terminates the investigation .

I have given this written permission to the above-named Special Agents voluntarily and without threats or promises of any kind.  I understand that I must be a party to any conversation in order to record that conversation.  I therefore agree not to leave the recording equipment unattended or take any other action which is likely to result in the recording of conversations to which I am not a party.



Witnesses

b6
b7C
b7D

b6
b7C

exhibit e- p.5

3295 CU 71645-30

DAWN MARIE PASELA Obituary: View DAWN PASELA's Obituary by The Plain Dea...   Page 1 of 2



EXHIBIT   e - 0.6

822974

# DEFENSE SUBPOENA
(Criminal Rule 17)

RECEIVED FOR FILING
03/15/2012 08:34:26
GERALD E. FUERST, CLERK

THE STATE OF OHIO

Cuyahoga County

**PRECIPE**

**DS 822974**

Case Number:    CR-10-  543886  -A

To the Sheriff of Cuyahoga County:
You are hereby commanded to summon:
   DAWN PASELA
   5676 BROADVIEW ROAD APT. 201
   CLEVELAND, OH 44134-0000

JUDGE: DANIEL GAUL
ROOM: JC19D

**Please Call Defense Attorney: JOHN B GIBBONS at (216) 363-6086 BEFORE Appearing**

<u>TO THE WITNESS</u>

YOU ARE HEREBY ordered to appear, under penalty of law, before the COURT OF COMMON PLEAS, held at the Courts Tower - Justice Center, Lakeside and Ontario Streets, in the City of Cleveland, within and for said County, **on the 21st day of March, 2012,** at **09:00 o'clock A.M.,** to testify to all and singular such matters and things which you may know in a certain action in court pending, and then and there to be determined, between the STATE OF OHIO, plaintiff, and **ANTHONY L VIOLA (defendant 11873387)**, on the part of the DEFENSE.



WITNESS, GERALD E. FUERST, Clerk Court of Common Pleas, and the seal of said Court, as Cleveland, Ohio, this 15th day of March, A.D. 2012.

GERALD E. FUERST, Clerk

by

---

**FOR SHERIFF'S USE ONLY**

<u>RETURN OF SUBPOENA:</u>

On  3/19/12  , I  STEVEN PRINCE  PERSONALLY  served the within named for him, them, at their usual place of business or residence, a true and certified copy thereof with all endorsements therein .

| SHERIFF FEES | | | |
|---|---|---|---|
| Service and Returns ....................... | $ | | |
| Miles Traveled .............................. | $ | | CUYAHOGA COUNTY SHERIFF DEPT., Sheriff |
| Total ......................................... | $ | | |
| | | | |
| | | | ~~Deputy Sheriff~~  PROCESS SERVER |

CMSN6062

exhibit F

Kassouf - Cross/Weintraub

1    Q.    And were there times when you listened to it with

2    members of the U.S. Attorney's Office?

3    A.    Well, a lot of those documents -- not documents.  I

4    don't know what type of file it would be.  Maybe a PDF,

15:34:23  5    whatever type of wave.

6    Q.    Audio wave?

7    A.    Audio wave file.  Apologize about that.  Whenever they

8    were provided to us, I had a chance to listen to some and

9    so did Mr. Saunders.

EXHIBIT  G  P.1

tag reference

would have been located through the FBI's searching efforts.   As a result of its search efforts, the FBI located responsive main file 329E-CV-71645, and several sub-files 329E-CV-71645-1A and 329E-CV-71645-GJ-1A, which were indexed to plaintiff's name.   During a detailed review and processing of the records, the FBI did not locate the specific two items detailed above.

(25)    In a further effort to locate the above items, RIDS contacted on November 14, 2016, the lead FBI Special Agent ("SA") over plaintiff's criminal investigation, and he confirmed that the above described items are not in the FBI's custody.   The SA informed RIDS, "There were no tapes, consensual monitoring, or transcripts in which the FBI tasked Ms. Dawn Pasela.   Any [taskings] *sic* would have been done by the Cuyahoga County Mortgage Fraud Task Force, and not the FBI."   The FBI did not retain any such records.   In addition, as to any emails from and to Katherine Clover, the SA reported, "Early in the investigation Ms. Clover retained her attorney, therefore to my knowledge any correspondence would have been between the USAO and her attorney."

## JUSTIFICATION FOR NONDISCLOUSRE UNDER THE PRIVACY ACT

(26)    When an individual requests records about themselves from the FBI, RIDS first considers the request under the Privacy Act, which generally provides individuals a right of access to records about them maintained in government files, unless the records are part of a system of records exempted from individual access.   *See* 5 U.S.C. § 552a(d).   Exemption (j)(2) exempts from mandatory disclosure systems of records "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals…" 5 U.S.C. § 522a(j)(2).

15

EXHIBIT G - p. 2

5407 Alber Ave
Parma, OH 44129
440.915.9207
dawn_pasela@hotmail.com

# Dawn Pasela

**Professional Profile:**
Experienced professional manager of administration in a variety of environments. Office manager looking to continue a career in the security industry through investigations. Ambitious Law Enforcement/Information System student with success in coordinating career path with education.

**History:**

**State of Ohio, Attorney General's Office – Mortgage Fraud Task Force**                    2008-Present
*Office Manager*

- Direct communications between multiple agency task force members.
- Efficiently communicate with local, state and federal level agencies.
- Design and implement evidence receiving and recording system for documenting chain of custody.
- Convert files to electronic formats and filings for case preparation.
- Prepare cases' documents for trial.
- Design and maintain network of information for task force and deconfliction purposes.
- Evidence processing, including but not limited to receiving evidence, creating chain of custody, converting files for investigators, creating and maintaining case file evidence structure.

**Shooz**                                                                        Beachwood, OH
*General Manager*                                                                        2007

- Executed daily operations of financial reporting, employee files, store operations, loss prevention, document retention and reconciliations.
- Trained and managed 45 employees and achieved significant improvements in their productivity, margin and customer relations skills.
- Interpreted company policies to workers'and human resource regulations.
- Instructed computer courses on Microsoft applications and basic computer hardware operation.
- Working knowledge in SAP, ADP,IMS, POS, JDA, Kronos, Macros and Microsoft Excel, Word, Access, PowerPoint and Outlook.
- Conducted and assisted in both internal and external theft cases, check fraud and credit card disputes.

**CompUSA**                                                                        Beachwood, OH
*Operations/HR Manager*                                                                2004 - 2007

- Served as Training Department Coordinator for locations network maintenance, including class set-ups, software requirements, firewall setup, computer configuration, network setup (hardware and software) and computer trouble shooting.
- As Training Department Coordinator, instructed Microsoft Office Application courses to consumers and businesses, instructed employees on computer system use and services.
- Same responsibilities as General Manager of Shooz.

**Education:**           Cuyahoga Community College                    Parma Heights, OH
                    Associate – Law Enforcement                        May 2009

**Language:**           American Sign Language
                    English Sign Language

**Volunteering:**       Youth Challenge                                    1999-2003
                    St. Ignatius Soup Kitchen                            2002-2004
                    Parma Animal Shelter                                2008
                    Founder of Student Criminal Justice Club – Tri-C        2008

exhibit H

From: Daniel Kasaris <dkasaris@cuyahogacounty.us>
To: tonytopaz <tonytopaz@aol.com>
Subject: Re: Final witnesses
Date: Mon, Apr 16, 2012 11:34 pm

OK
she has has a right to have an attorney court appointed for her to represent her. If you confer with john I am sure he will agreee. If I do not raise that issue with the judge and she testifies and admits to being on pain killers or whatever she was on and admits other things and is then indicted all sorts of problems woulexist. Therefore, in the abundance of caution I will suggest that he appoint an attorney for her to deal with her drug abuse issues as well as whatever crimes she may have committed after she was fired.

The purpose of the hearing will be to ascertain if she needs a laywer. She cant testify without an attorney unless she does not want one. She will be asked incrimidating questions and may incriminidate herself.

dan


Daniel J. Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

>>> 04/16/12 7:49 PM >>>
3 witnesses left:  michelle crissey, Steve Greenwald and Dawn Pasela, Gibbons was going to get with all of them, we're trying to have them there first thing ... if they don't show, we'll move to my testimony.  If Dawn does not show, I'll ask for a hearing after trial to figure out what, if anything, she knows about computers or discovery.

Thanks,
Tony


-----Original Message-----
From: Daniel Kasaris <dkasaris@cuyahogacounty.us>
To: tonytopaz <tonytopaz@aol.com>
Cc: Donald Cleland <dcleland@cuyahogacounty.us>; Nick Giegerich <lgiegerich@cuyahogacounty.us>
Sent: Sat, Apr 14, 2012 7:59 pm
Subject: Re: MONDAY

thank you
I have to ask the judge to appoint an attorney to represent dawn pasela because she has 5th amendment rights and issues like greenwald and fairfield, just an FYI —I think I mentioned that on the record at least twice She was fired for refusing a drug test in late May 2011 when she was clearly stoned —staggering down the hallway of our office, eyes rolling back into her head, slurred groggy speech—so there is an issue with respect to which drugs she may have abused that day, in addition to the issues surrounding her breaching a statutory mandated confidentiality agreement she signed with the OAG which she apparently broke.

she is apparently subject to prosecution for both of the above issues.

dan kasaris

Daniel J. Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor

exhibit I

Resumes

Kathryn Clover - Lakewood, OH
Work
Company: Neighborhood progress inc     May 2012 to 2000
Legal intern

Company: Housing advocates inc - Cleveland, OH     May 2011 to Oct 2012
Senior law clerk

Company: Cuyahoga county prosecutor's office - Cleveland, OH     Mar 2010 to May 2012
Such investigation lead to the indictments and convictions

Company: Chateau management investments - Cleveland, OH     Feb 2005 to Aug 2008
Owner and partner

Education
School: Marshall College Of Law, Cleveland State University - Cleveland, OH     Jul 2013
J.d.

Hide details
PHONES & ADDRESSES
Name   Address          Phone
Kathryn K Clover       206 Springwood Dr, Oxford, OH 45056   (513) 523-4470
Kathryn Clover  13935 Lake Ave, Lakewood, OH 44107  (216) 221-5955
Kathryn E Clover       2750 Fair, Lancaster, OH 43130 (740) 653-9079
Kathryn E Clover       2750 Fair Ave, Lancaster, OH 43130     (740) 653-9079
Kathryn K Clover       3233 Dellwood Rd, Cleveland, OH 44118     (216) 320-0301
Kathryn E Clover       435 Eastwood Ave, Lancaster, OH 43130     (740) 653-9079
Kathryn Clover  517 Herbert Pl Nw, Canton, OH 44703
Kathryn Clover  1093 Norka St, Akron, OH 44307
Kathryn Clover  717 Sylvan Ct Ne, Canton, OH 44704
Kathryn Clover  1512 2Nd St Se, Canton, OH 44707
Kathryn K Clover       4236 Riggs Rd, Oxford, OH 45056
Kathryn Clover  202 Young Ave Se, Canton, OH 44707
Kathryn Clover  206 Springwood Dr, Oxford, OH 45056   (513) 284-****
ORGANIZATIONS
Name / Title    Company / Classification       Phones & Addresses
Kathryn Clover  REINE MODEL MANAGEMENT LLC
Kathryn Clover  CHATEAU MANAGEMENT LLC
Kathryn K Clover       MKM TALENT GROUP, LTD
Kathryn Clover  CHATEAU MANAGEMENT INVESTMENTS LLC
SOCIAL NETWORKS
GooglePlus

Kathryn K Clover age ~36
Lived in: Oxford, OH, Westlake, OH, Cleveland, OH, Lakewood, OH, Olmsted Falls, OH, North Olmsted, OH, Westerville, OH,
Columbus, OH, Cincinnati, OH, Hamilton, OH

EXHIBIT J - 0.1

**From:** Kasaris, Daniel
**Sent:** Thursday, February 23, 2012 11:12 AM
**To:** Kathryn Clover
**Subject:** Re: assistance in investigating crimes
**Attachments:** Daniel Kasaris1.vcf


something like this is fine with me

march of 2010-August  2011
Assisted Cuyahoga County Prosecutor's office Mortgage Fraud Unit in investigating crime committed by Lender Employees, Appraiser, Realtors, and Mortgage Brokers. Such investigation lead to the indictment and or conviction of a number of people involved in committing more than $10,000,000.00 worth of mortgage fraud in Cuyahoga County.

dan

Daniel J.  Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

>>> Kathryn Clover <kclover24601@yahoo.com> 2/23/2012 10:29 AM >>>
ok thanks, no worries, I said that I would get it to him this weekend!
I just wanted to clear it with you obviously

**From:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**To:** Kathryn Clover <kclover24601@yahoo.com>
**Sent:** Thursday, February 23, 2012 10:23 AM
**Subject:** Re: assistance in investigating crimes

I will put something together for you and send it back ASAP
dan

Daniel J.  Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

>>> Kathryn Clover <kclover24601@yahoo.com> 2/23/2012 10:17 AM >>>
thanks, but I can't really put names on a resume... how would you suggest I word it:
Professor Lind wondered if it would be possible for me to put something like,
"pro bono assistance in the investigation, prosecution and investigation in mortgage fraud with the mortgage fraud task force of Cuyahoga County..."
thoughts?

58   exhibit  J - 0. 2

**From:** Kasaris, Daniel
**Sent:** Thursday, February 23, 2012 10:53 AM
**To:** Kathryn Clover
**Subject:** Re: assistance in investigating crimes
**Attachments:** Daniel Kasaris1.vcf

i will get that 2 you 2 day

Daniel J. Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

>>> Kathryn Clover <kclover24601@yahoo.com> 2/23/2012 10:29 AM >>>
ok thanks, no worries, I said that I would get it to him this weekend!
I just wanted to clear it with you obviously

**From:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**To:** Kathryn Clover <kclover24601@yahoo.com>
**Sent:** Thursday, February 23, 2012 10:23 AM
**Subject:** Re: assistance in investigating crimes

i will put something togetehr for you and send it back asap
dan

Daniel J. Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

>>> Kathryn Clover <kclover24601@yahoo.com> 2/23/2012 10:17 AM >>>
thanks, but I can't really put names on a resume... how would you suggest I word it:
Professor Lind wondered if it would be possible for me to put something like,
"pro bono assistance in the investigation, prosecution and investigation in mortgage fraud with the
mortgage fraud task force of Cuyahoga County..."
thoughts?
(As you know I am trying to get into the Housing Court to do work with helping people who have gone
through foreclosure get title out of their names etc.. volunteer at first, but hope to turn it into a job by
summer)

thanks so much-
He wants to make sure I show my ability and things I have done, but I don't want overstep anything
**From:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**To:** kclover24601@yahoo.com

60   Exhibit J - B.3

(As you know I am trying to get into the Housing Court to do work with helping people who have gone through foreclosure get title out of their names etc.. volunteer at first, but hope to turn it into a job by summer)

thanks so much-
He wants to make sure I show my ability and things I have done, but I don't want overstep anything
**From:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**To:** kclover24601@yahoo.com
**Sent:** Thursday, February 23, 2012 10:12 AM
**Subject:** assistance in investigating crimes

per your request since march of 2010 you have assisted investigators and or investigated the following persons which have lead to indictmetns and or convictions of crimes:
1. denise obrock--argent
2. mike scola--argent
3. angela pasternak--argent
4. Linda Warner--appraiser
5. Gerald Spuzzillo--appraiser
6. Leighann McCarthy--realtor
7. Dale Adams--Mortgage Broker
8. Nick Myles--Broker

this list does not include other person who you provided information on

dan


Daniel J.  Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

exhibit J - 0.4

**From:**        Kasaris, Daniel
**Sent:**        Wednesday, February 15, 2012 3:40 PM
**To:**          Kathryn Clover
**Subject:**     Re: chat management
**Attachments:** Daniel Kasaris.vcf

you are in class you should not be answering emails.
go do your school work and listen to teacher
hahaha
dan

Daniel J. Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

>>> Kathryn Clover <kclover24601@yahoo.com> 2/15/2012 3:35 PM >>>
sorry i am in class. i dont have time to do all this plus get ready for trial plus everything else. i will
have to get to this when i can
or we will have to go over friday.

**From:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**To:** Kathryn Clover <kclover24601@yahoo.com>
**Sent:** Wednesday, February 15, 2012 3:33 PM
**Subject:** Re: chat management

thx
dan

Daniel J. Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

>>> Kathryn Clover <kclover24601@yahoo.com> 2/15/2012 3:30 PM >>>

**From:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**To:** kclover24601@yahoo.com
**Sent:** Wednesday, February 15, 2012 8:05 AM
**Subject:** chat management

exhibit J - p.5

| | |
|---|---|
| **From:** | Kathryn Clover <kclover24601@yahoo.com> |
| **Sent:** | Thursday, December 1, 2011 11:15 AM |
| **To:** | Kasaris, Daniel;Kathryn Clover |
| **Subject:** | Fw: jeff muzila |
| **Attachments:** | jeff zephix muzila fake.docx |

This guy is stealing pics from my photographer and others and claiming them as his own and selling them,
possibly my pics too, and other models. What would you suggest I do? He has several identities apparently,
and has shut down his pages bc he found out that we were on to him. I am afraid though he will just make a new id.
I don't know if he sold anything, he shut it down before I could go in as a spy. I will see if Mike knows...

Any thoughts?

thank you
kat


 here is his info:

Jeff Muzila aka Jeff Zephix

DR-05-307139

JEFFREY MUZILA
659 DEWITT DRIVE Highland Heights- prior addy

17825 Lakeshore Blvd. 44119
*(216) 513-3760*

*http://www.custombrackets.com/*  *says he works there*

*http://www.blogger.com/profile/12853485087313548505*

*http://www.myspace.com/darkzephix*

*http://twitter.com/#!/izephix*


*http://zephix.deviantart.com/*

360   exhibit  J - 0.6

**From:** Kasaris, Daniel
**Sent:** Tuesday, January 31, 2012 2:01 PM
**To:** Kathryn Clover
**Subject:** Re: sappers computer
**Attachments:** 55960.mddata.png; 142919.JPG; 142920.JPG; 142921.JPG; 143531.JPG; Daniel Kasaris.vcf

ok
chuck wilson has my external drive on it as he is reinstalling the sapper computer stuff on it as my external hard drive
was I was havign issues with opening his some of the pictures. Chuck also indicates that he will be able to restore
deleted videos to so I said put them on the hard drive so I have them. Once I get the hard drive back I will secure all the
pics you want.

here are a few that i did find before i began to have issues opening data on the computer
i will get you want you need all the animals and any doc pic I will get for you
going to grand jury now

dan

Daniel J.  Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

>>> Kathryn Clover <kclover24601@yahoo.com> 1/31/2012 1:52 PM >>>
if you have them please

**From:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**To:** kclover24601@yahoo.com
**Sent:** Tuesday, January 31, 2012 1:46 PM
**Subject:** sappers computer

earlier you indicated that you wanted pics from sappers computer--pics of your pets and of your vocal teacher--
do you still want them?
please advsie
thank you
dan


Daniel J.  Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

**From:** Kathryn Clover <kclover24601@yahoo.com>
**Sent:** Monday, January 23, 2012 3:34 PM
**To:** Kasaris, Daniel;Kathryn Clover
**Subject:** Re: viola

yeah, do you think i am doing jumping jacks over here? no... but you have to deal with what youre given. come on, all of us are smarter than tony.... seriously.
tony's problem is his arrogance, and his underestimation of you, nick and me. mainy me.
i am going to take him down and make him pay for ruining my life. bring it tony.

**From:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**To:** Kathryn Clover <kclover24601@yahoo.com>
**Sent:** Monday, January 23, 2012 3:29 PM
**Subject:** Re: viola

i don't know ok
try and keep it out and the stuff in it out but it is not just these proceeds I am concerned about ok --I am concerned about your future as well.
i am concerned about a lot of things

Daniel J.  Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

>>> Kathryn Clover <kclover24601@yahoo.com> 1/23/2012 3:25 PM >>>
yes i am aware that everyone in the world can see it. got it. not a fan.
now we just have to mitigate . what else can you do

**From:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**To:** Kathryn Clover <kclover24601@yahoo.com>
**Sent:** Monday, January 23, 2012 3:24 PM
**Subject:** Re: viola



dan

283   exhibit J - p. 9

**From:** Kasaris, Daniel
**Sent:** Monday, October 3, 2011 1:32 PM
**To:** Kathryn Clover
**Subject:** Re: WELLS FARGO
**Attachments:** Daniel Kasaris.vcf

wed-Friday.
I will schedule wells fargo next Tuesday from 11 to 1? how is that?
Kasaris

Daniel J.  Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

>>> Kathryn Clover <kclover24601@yahoo.com> 10/3/2011 11:58 AM >>>
When are you going to Chicago and for how long?

**From:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**To:** kclover24601@yahoo.com
**Sent:** Monday, October 3, 2011 8:23 AM
**Subject:** WELLS FARGO

please advise when your schedule permits you to
1. discuss long beach
2. discuss wells fargo
3. discuss argent

Daniel J.  Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

468     EXHIBIT J - Q-9

**From:** Kasaris, Daniel
**Sent:** Wednesday, October 12, 2011 12:35 PM
**To:** Kathryn Clover
**Subject:** Re: wells fargo
**Attachments:** Daniel Kasaris.vcf

well said--alot on my plate--my office looks like an office supply store with 90 binders in it.
yes Thursday will discuss wells fargo.
also I know you are a full time law student so you have a lot 2 do to.

ok

Daniel J.  Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

>>> Kathryn Clover <kclover24601@yahoo.com> 10/12/2011 11:30 AM >>>
When we meet on Thursday I would like to please discuss where we are at with the Wells Fargo subpoenas. I know
there is a lot on the plate, but you know I can multi task very well. I need to fulfill obligations to both
parties I work for as you know and I know this woman was taken advantage of and I can't just sit by.
I know assured and wells are doing bad things. I would at least like to start perusing. (not too much)
We can discuss Thursday.

Thanks
Kat

**From:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**To:** Gary Stein <gstein@cuyahogacounty.us>
**Cc:** kclover24601@yahoo.com
**Sent:** Wednesday, October 12, 2011 7:23 AM
**Subject:** argent

gary
the report you and kat are working on does not need to be done for another month
thx
dan

Daniel J.  Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor

456   exhibit J - p.10

| | |
|---|---|
| **From:** | Kasaris, Daniel |
| **Sent:** | Wednesday, February 22, 2012 7:40 AM |
| **To:** | Sarah;Kathryn Clover |
| **Subject:** | Re: Wow!! |
| **Attachments:** | Daniel Kasaris.vcf |

so i would be south african ?

Daniel J.  Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

>>> Kathryn Clover <kclover24601@yahoo.com> 2/21/2012 2:26 PM >>>
I'm in!

---

**From:** Sarah <solidgoldsarah@live.com>
**To:** Kathryn Clover <kclover24601@yahoo.com>
**Cc:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**Sent:** Tuesday, February 21, 2012 12:52 PM
**Subject:** Re: Wow!!

How about African American sister wives? Maybe We'd fit in with the rest of the scenery? If Dan wants to come he can always be an African American orthodox Jewish guy- I think both are good decoys

"Diamonds are Formed Under Pressure"

On Feb 21, 2012, at 12:45 PM, Kathryn Clover <kclover24601@yahoo.com> wrote:

i say we dress like sister wives mormons.. or is that too obvious lol

**From:** Sarah <solidgoldsarah@live.com>
**To:** Kathryn Clover <kclover24601@yahoo.com>
**Cc:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**Sent:** Tuesday, February 21, 2012 12:16 PM
**Subject:** Re: Wow!!

Finally!!! A reason to go somewhere incognito w our wigs!!
Omg I would seriously love to just watch her and the place in action- we could always go in masks and pretend we r coming from a masquerade! They just had one on my soap opera and it looked fun!

"Diamonds are Formed Under Pressure"

On Feb 21, 2012, at 11:55 AM, Kathryn Clover <kclover24601@yahoo.com> wrote:

exhibit J - p. 11

**From:**        Kathryn Clover <kclover24601@yahoo.com>
**Sent:**        Monday, January 23, 2012 3:34 PM
**To:**          Kasaris, Daniel;Kathryn Clover
**Subject:**     Re: viola

yeah, do you think i am doing jumping jacks over here? no... but you have to deal with
what youre given. come on, all of us are smarter than tony.... seriously.
tony's problem is his arrogance, and his underestimation of you, nick and me. mainy me.
i am going to take him down and make him pay for ruining my life. bring it tony.

**From:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**To:** Kathryn Clover <kclover24601@yahoo.com>
**Sent:** Monday, January 23, 2012 3:29 PM
**Subject:** Re: viola

i don't know ok
try and keep it out and the stuff in it out but it is not just these proceeds I am concerned about ok --I am
concerned about your future as well.
i am concerned about a lot of things

Daniel J. Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

>>> Kathryn Clover <kclover24601@yahoo.com> 1/23/2012 3:25 PM >>>
yes i am aware that everyone in the world can see it. got it. not a fan.
now we just have to mitigate . what else can you do

**From:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**To:** Kathryn Clover <kclover24601@yahoo.com>
**Sent:** Monday, January 23, 2012 3:24 PM
**Subject:** Re: viola



dan

eXhiBiT J - p. 12

i am going to take him down and make him pay for ruining my life. bring it tony.

**From:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**To:** Kathryn Clover <kclover24601@yahoo.com>
**Sent:** Monday, January 23, 2012 3:29 PM
**Subject:** Re: viola

i don't know ok
try and keep it out and the stuff in it out but it is not just these proceeds I am concerned about ok --I am
concerned about your future as well.
i am concerned about a lot of things




Daniel J.  Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

>>> Kathryn Clover <kclover24601@yahoo.com> 1/23/2012 3:25 PM >>>
yes i am aware that everyone in the world can see it. got it. not a fan.
now we just have to mitigate . what else can you do

**From:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**To:** Kathryn Clover <kclover24601@yahoo.com>
**Sent:** Monday, January 23, 2012 3:24 PM
**Subject:** Re: viola

look I agree but that report is public record now--every one has access to it. I mean everyone and
everything in it is there for whomever to read and I dont like that one bit.

as far as intimidation concerned that is NOT going to happen.
I have full faith in you and in your ability to handle Tony and in our ability to prepare you for tony and
what may happen.
We can discuss milano later. I dont care what I have been told that is an anomaly or was an anomaly.
Like I said I have full faith in you, your abilities and in our ability to prepare you for it.

dan

Daniel J.  Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

>>> Kathryn Clover <kclover24601@yahoo.com> 1/23/2012 3:20 PM >>>
well a bunch of shit that happened during that trial sucks but whats done is done.
we deal with it and figure it out.

EXHIBIT J - P. 13

**From:** Kasaris, Daniel
**Sent:** Monday, February 6, 2012 2:10 PM
**To:** Sarah;Kathryn Clover
**Subject:** Re: "the meadowbrook estate"
**Attachments:** Daniel Kasaris1.vcf

thank you
we are doing the trash pull tomorow lets see what we get
let me know what you see next
thx
dan

Daniel J.  Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

>>> Sarah <solidgoldsarah@live.com> 2/6/2012 2:08 PM >>>
Darn the car was gone but now I know to get plate for future sightings :) garage door was up today- topaz and old burgundy Benz were in there- newspapers still in driveway

"Diamonds are Formed Under Pressure"

On Feb 5, 2012, at 5:12 PM, Kathryn Clover <kclover24601@yahoo.com> wrote:

> totally! get the license plate! what bitch is staying there lol!!! hahahahaha
>
> **From:** Sarah <solidgoldsarah@live.com>
> **To:** Daniel Kasaris <dkasaris@cuyahogacounty.us>; Kat <kclover24601@yahoo.com>
> **Sent:** Sunday, February 5, 2012 4:44 PM
> **Subject:** "the meadowbrook estate"
>
> That's what tv called his house on meadowbrook ha! So just drive pastit-4 newspapers in the driveway and a gold dodge stratus- want me to get license plate number? Trash is tues so I'll let u know if I see anything out tomorrow night after I leave work
>
> "Diamonds are Formed Under Pressure"

Exhibit J- p.14

**From:** Kathryn Clover <kclover24601@yahoo.com>
**Sent:** Wednesday, February 15, 2012 3:53 PM
**To:** Kasaris, Daniel;Kathryn Clover
**Subject:** Re: Fwd: Re: tony v

From: Daniel Kasaris <dkasaris@cuyahogacounty.us>
To: Kathryn Clover <kclover24601@yahoo.com>
Sent: Wednesday, February 15, 2012 3:50 PM
Subject: Re: Fwd: Re: tony v

dan

Daniel J. KasarisAssistant County ProsecutorCuyahoga County, Ohio1200 Ontario ST. 9th Floor216-443-7863216-698-2270 (fax)>>> Kathryn Clover <kclover24601@yahoo.com> 2/15/2012 3:41 PM >>>

From: Daniel Kasaris <dkasaris@cuyahogacounty.us>
To: solidgoldsarah@live.com; kclover24601@yahoo.com
Cc: AClar@ag.state.oh.us; Donald Cleland <dcleland@cuyahogacounty.us>; Gary Stein <gstein@cuyahogacounty.us>;
Nick Giegerich <lgiegerich@cuyahogacounty.us>; Nicole DiSanto <ndisanto@cuyahogacounty.us>
Sent: Tuesday, February 14, 2012 11:06 AM
Subject: Fwd: Re: tony v
----- Forwarded Message -----
game set match "super tony"

ladies

thx
dan

Daniel J. Kasaris Assistant County Prosecutor Cuyahoga County, Ohio 1200 Ontario ST. 9th Floor 216-443-7863 216-698-2270 (fax)

Sent from Yahoo! Mail on Android

**From:**       Kasaris, Daniel
**Sent:**        Wednesday, February 15, 2012 3:50 PM
**To:**          Kathryn Clover
**Subject:**    Re: Fwd: Re: tony v
**Attachments:**  Daniel Kasaris.vcf

dan

Daniel J. Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

>>> Kathryn Clover <kclover24601@yahoo.com> 2/15/2012 3:41 PM >>>

**From:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**To:** solidgoldsarah@live.com; kclover24601@yahoo.com
**Cc:** AClar@ag.state.oh.us; Donald Cleland <dcleland@cuyahogacounty.us>; Gary Stein <gstein@cuyahogacounty.us>;
Nick Giegerich <lgiegerich@cuyahogacounty.us>; Nicole DiSanto <ndisanto@cuyahogacounty.us>
**Sent:** Tuesday, February 14, 2012 11:06 AM
**Subject:** Fwd: Re: tony v
----- Forwarded Message -----
game set match "super tony"

ladies

thx
dan


Daniel J. KasarisAssistant County ProsecutorCuyahoga County, Ohio1200 Ontario ST. 9th Floor216-443-
7863216-698-2270 (fax)

Sent from Yahoo! Mail on Android

exhibit J - p. 16

**From:** Kathryn Clover <kclover24601@yahoo.com>
**Sent:** Wednesday, February 15, 2012 3:41 PM
**To:** Kasaris, Daniel;Kathryn Clover
**Subject:** Re: Fwd: Re: tony v

**From:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**To:** solidgoldsarah@live.com; kclover24601@yahoo.com
**Cc:** AClar@ag.state.oh.us; Donald Cleland <dcleland@cuyahogacounty.us>; Gary Stein <gstein@cuyahogacounty.us>; Nick Giegerich <lgiegerich@cuyahogacounty.us>; Nicole DiSanto <ndisanto@cuyahogacounty.us>
**Sent:** Tuesday, February 14, 2012 11:06 AM
**Subject:** Fwd: Re: tony v
----- Forwarded Message -----
game set match "super tony"

ladies

thx
dan

Daniel J. KasarisAssistant County ProsecutorCuyahoga County, Ohio1200 Ontario ST. 9th Floor216-443-7863216-698-2270 (fax)

Sent from Yahoo! Mail on Android

exhibit J - p.17

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:10 CR 75 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | GOVERNMENT'S RESPONSE IN |
| KATHRYN CLOVER, | ) | OPPOSITION TO CLOVER'S |
| | ) | MOTION FOR EARLY |
| Defendant. | ) | TERMINATION OF PROBATION |

Now comes the United States of America, by and through its counsel, Steven M.

Dettelbach, United States Attorney, and Mark S. Bennett, Assistant United States

Attorneys, and hereby respectfully moves this Honorable Court to issue an order denying

Defendant Kathryn Clover's Motion for Early Termination of Probation for the following

reasons:

(1)   This Court sentenced Clover on September 28, 2011 4 years probation with

10 months of house arrest.  Clover has only served 1 year and 4 months -

not even half of her sentence;

exhibit h - 0.1

-2-

(2)     The issue of restitution still needs to be determined.  However, the parties agreed in the written plea agreement that the loss caused to the lenders by Clover's fraudulent conduct exceeded $1 million.  Accordingly, Clover will have a substantial restitution amount to pay, and her probation should be continued to allow the Court to oversee her restitution;

(3)     As this Court knows, Clover provided false testimony during the trial of this matter.  Because of her false testimony, the government did not move for the full amount of 5K1.1 contemplated by the plea agreement and, as such, Clover's sentencing guideline range 15 to 21 months in Zone D, based on an offense level of 14 with a criminal history category of I.  Accordingly, Clover should have been sentenced to a term of imprisonment.  However, the Court granted defense's request for a further reduction of levels pursuant to 5K1.1 and placed Clover in a range and zone allowing for a sentence of probation.  Clover has already been given an extremely favorable sentence and this Court should not give her the additional benefit of the early termination of her probation;

(4)     As part of her plea agreement, Clover was not prosecuted for her role in other mortgage fraud schemes, nor did the government request that this Court take into consideration at the time of sentencing her involvement in other mortgage fraud schemes as "other relevant" conduct, which would have greatly increased her guideline sentencing range.  Clover has already

Exhibit H - p. 2

been given an extremely favorable sentence and this Court should not give her the additional benefit of the early termination of her probation;

(5)     The federal government did not prosecute Clover for bankruptcy fraud, nor did the Cuyahoga County Prosecutor's office prosecute Clover for filing a false police report based on her false statements regarding the loss of her diamond ring. Clover has already been given an extremely favorable sentence and this Court should not give her the additional benefit of the early termination of her probation; and,

(6)     The Cuyahoga County Prosecutor's office did not prosecute Clover for her involvement in the companion state prosecution of this mortgage fraud scheme, or for her involvement in various other mortgage fraud schemes. Clover has already been given an extremely favorable sentence and this Court should not give her the additional benefit of the early termination of her probation.

exhibit h- 0.3

-4-

For the foregoing reasons, the United States respectfully moves this Honorable

Court to issue an order denying Defendant Kathryn Clover's Motion for Early

Termination of Probation.

Respectfully submitted,

STEVEN M. DETTELBACH
United States Attorney

By:     *s/Mark S. Bennett*
Mark S. Bennett (0069823)
Assistant U.S. Attorney
801 West Superior Avenue
Cleveland, Ohio 44113
(216) 622-3878; (216) 522-8355 (fax)
mark.bennett2@usdoj.gov

exhibir k- 0.4



# Kaplan Consulting & Counseling, Inc.

⊟ 3401 Enterprise Parkway
Suite 340
Beachwood, Ohio 44122-7340

Phone: (216) 766-5743
Fax: (216) 937-0187
Email: RKaplan@KaplanCC.com
www.KaplanCC.com

☐ 14650 Detroit Avenue
Suite 118
Lakewood, Ohio 44107-4210

# Psychological Report

| | |
|---|---|
| Name: | Kathryn Clover |
| Social Security No.: | xxx-xx-7297 |
| Docket No.: | 1:10CR00075-003 |
| Date of Birth: | 10/15/79 |
| Date of Examination: | 5/16/11 |
| Date of Report: | 6/1/11 |
| Examiner: | Robert G. Kaplan, Ph.D., B.C.F.E., D.A.B.P.S. |
| Diagnostic Procedures: | Personality Assessment Inventory |
| | Millon Clinical Multiaxial Inventory-III |
| | Substance Abuse Subtle Screening Inventory-3 |
| | Trauma Symptom Inventory-2 |
| | Detailed Assessment of Posttraumatic Stress |
| | Three-Hour Structured Diagnostic Clinical Interview |

**Records Reviewed:**

- Presentence Investigation Report of Valencia Small, dated 4/09/10
- Proffer Agreement of Kathryn Fairfield, a.k.a. Kathryn Clover, dated 3/09/09
- Plea Agreement, undated
- Waiver of an Indictment, undated
- Pretrial Release Reporting Instructions, dated 3/09/10
- Order for Presentence Investigation Report, dated 3/11/10
- Sentencing Table of the 2008 Federal Sentencing Guidelines Manual
- Chapter 5 - Part B - Probation of the 2008 Federal Sentencing Guidelines Manual
- Charge Information of William J. Edwards, undated

exhibit L - 0.1

RE: Kathryn Clover                                                                      Page 6
Docket No.: 1:10CR00075-003

who were men. Additionally, she feared the consequences of being subject to additional charges if she disclosed everything she believed about the police report and didn't have any opportunity to consult with her attorney about how to respond to such a question. She was apparently too overwhelmed at the moment, even as a law student, to realize her fifth amendment right to refuse to answer such a question on the grounds that it could incriminate her.

Following her lapse in judgment, Ms. Clover was able to realize that she needed the assistance of her attorney. She and her attorney asked the prosecutors to recall her to testify again during the trial. However, the prosecutors did not recall her since they reportedly believed that it jeopardized the outcome of their case. If that is the case, then it would appear that the prosecutors would also have felt that it served the best interests of justice to allow her testimony to remain unchanged. Therefore, it would be difficult to imagine how she could be punished for serving what the prosecutor believed was in the best interests of justice. It might be argued that, if the best interests of justice were not served, she would not be the only one who would be responsible.

In spite of the great emotional damage that she suffered, the psychological testing indicates that her prognosis for recovery is good. Her youth, intelligence, verbal ability, insight, and motivation for treatment favor a good treatment outcome. With regard to treatment interventions, she will need cognitive-behavioral therapy to restructure her negative self-image and assertiveness training to help her to develop more functional social relationships. Medications for anxiety, depression, and mood stability will also help her recover and should be part of the treatment plan. Abstinence from alcohol will also be necessary for her recovery. Now that she no longer fears her husband, she is able to be truly open with a psychotherapist and needs a therapist who will be warm and caring to provide her with a sense of nurturance that she never had. Such a therapeutic relationship would also serve as a model for her to seek in other relationships, since she has never really known what such a relationship is like. It will take years for her to recover, but the ultimate outcome is favorable. If she is to remain an effective material witness, such treatment should be required in order to prevent any future lapse in judgment. Treatment should also be more frequent when she is subjected to cross-examination.

## Opinion

With reasonable psychological certainty, it can be stated that:

1. Ms. Kathryn Clover has severe mental disorders of: Posttraumatic Stress Disorder, Chronic; Major Depressive Disorder, Recurrent, Moderate Severity, Chronic; Generalized Anxiety Disorder; Alcohol Dependence, in Early Full Remission; and Borderline Personality Disorder, with Dependent and Histrionic Traits.

exhibit L - 0.2



**Bill Mason**
CUYAHOGA COUNTY PROSECUTOR

Jaye M. Schlachet, Esq.
The Law Office of Jaye M. Schlachet
55 Public Square, Suite 1600
Cleveland, Ohio 44113

September 16, 2011

Re: U.S. Government v. Kathryn Clover

Dear Attorney Schlachet:

I have been informed that Kathryn Clover's sentencing date in the United States District Court for the Northern District of Ohio has been scheduled by the Honorable Judge Don Nugent for September 28, 2011. I am writing you concerning the sentencing date.

As you know you're at the present time is heavily involved in assisting the State of Ohio in several "Mortgage Fraud" investigations and pending cases. She is scheduled to testify on or about October 17, 2011 in the State of Ohio v. Turner Nash in the Courtroom of Daniel Gaul. In addition at the present time she is assisting the State Government in the investigation of top Argent executives who may have been responsible for committing fraud in the selling of mortgage backed securities to investors, and others who may have participated in the tampering with internal Argent loan documents. Her work as already lead to the indictment of several former Argent employees for tampering with these internal loan documents, thereby allowing at least 100 loans to be approved when the approval was contrary to Argent's stated guidelines. She has already testified before a State Grand Jury in that matter and more Grand jury testimony is expected. Moreover, she is also working with State Government Prosecutors in investigating two mortgage brokers and a title company of dubious repute who it appears was closing deals with two huds (and I am not referring to Family Title).

Given the above and on behalf of the State of Ohio and at your request the State Government is requesting that her sentencing be continued until at least the middle of November so that the above matters may be concluded.

**OFFICE OF THE PROSECUTING ATTORNEY**
The Justice Center • Courts Tower • 1200 Ontario Street • Cleveland, Ohio 44113
(216) 443-7800 • Fax (216) 443-7601 • Email: prosecutor@cuyahogacounty.us
www.prosecutormason.com

exhibit M - 0.1

Sincerely

Daniel J. Kasaris
Assistant County Prosecutor
Supervisor Mortgage Fraud Unit
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

exhibit M - 0.2

THE STATE OF OHIO, )
                    ) SS:   DANIEL GAUL, J.
COUNTY OF CUYAHOGA.)

IN THE COURT OF COMMON PLEAS

CRIMINAL DIVISION

THE STATE OF OHIO,          )
                             )
             Plaintiff,   )
                             )
    -v-                   ) Case No. 536877
                             )
                             ) TRIAL EXCERPT
ANTHONY VIOLA,           )
                             )
            Defendant.   )

_Kathryn Clover Testimony_

- - - -

EXCERPT TRANSCRIPT OF PROCEEDINGS

16  Q      Does this look like a copy of your plea

17  agreement?

18  A      Yes, it does.

19  Q      You stood up in front of Judge Donald Nugent in

20  federal court, correct?

21  A      That's correct.

22  Q      When you pled guilty to conspiring with me at

23  Transcontinental when Mr. Lesniak bought the house on

24  Gertrude; is that correct?

25  A      It was in that -- in the plea agreement but I had

exhibit N - p.1

1  already told Mark Bennett, as I stated in the federal

2  trial, that that was incorrect.

3  Q      That's not my question.

4         My question was, you pled guilty to conspiring

5  with Viola's new mortgage company, Transcontinental

6  Lending Group, on the transaction on Gertrude, right?

7  A      Correct.

8  Q      That's what you pled guilty to?

9  A      Correct.

10 Q      You were aware that this was false when you pled

11 guilty?

12 A      I told Bennett that that was incorrect, that you

13 did not own that branch.

14                    THE COURT:  Who's Mr. Bennett?

15                    THE WITNESS:  The federal prosecutor.

16                    THE COURT:  When did you tell him that?

17                    THE WITNESS:  In one of our meetings.

18                    THE COURT:  You read this document?

19                    THE WITNESS:  Yes.

20                    THE COURT:  You told him that was

21        incorrect?

22                    THE WITNESS:  I told him that was

23        incorrect and there's --

24                    THE COURT:  What did he say?

25                    THE WITNESS:  There's writing -- I don't

exhibit N- 0.2

**From:** Kathryn Clover <kclover24601@yahoo.com>
**Sent:** Thursday, February 2, 2012 9:29 AM
**To:** Kasaris, Daniel;Kathryn Clover
**Subject:** Re: KAT CLOVER AKRON PROPERTIES



**From:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**To:** Gary Stein <gstein@cuyahogacounty.us>; Nicole DiSanto <ndisanto@cuyahogacounty.us>
**Cc:** Jaye Schlachet <jaye@schlachetlaw.com>; Mark Bennett <Mark.Bennett2@usdoj.gov>
**Sent:** Thursday, February 2, 2012 8:51 AM
**Subject:** KAT CLOVER AKRON PROPERTIES



Daniel J.  Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

exhibit   O -   P. 1

**From:** Kasaris, Daniel
**Sent:** Thursday, February 2, 2012 9:49 AM
**To:** Kathryn Clover
**Subject:** Re: KAT CLOVER AKRON PROPERTIES
**Attachments:** Daniel Kasaris.vcf



Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

>>> Kathryn Clover <kclover24601@yahoo.com> 2/2/2012 9:29 AM >>>



**From:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**To:** Gary Stein <gstein@cuyahogacounty.us>; Nicole DiSanto <ndisanto@cuyahogacounty.us>
**Cc:** Jaye Schlachet <jaye@schlachetlaw.com>; Mark Bennett <Mark.Bennett2@usdoj.gov>
**Sent:** Thursday, February 2, 2012 8:51 AM
**Subject:** KAT CLOVER AKRON PROPERTIES

234  exHibiT  O - P.2

**From:** Kathryn Clover <kclover24601@yahoo.com>
**Sent:** Thursday, February 2, 2012 10:07 AM
**To:** Kasaris, Daniel;Kathryn Clover
**Subject:** Re: KAT CLOVER AKRON PROPERTIES



**From:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**To:** Kathryn Clover <kclover24601@yahoo.com>
**Sent:** Thursday, February 2, 2012 9:49 AM
**Subject:** Re: KAT CLOVER AKRON PROPERTIES



Daniel J. Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

>>> Kathryn Clover <kclover24601@yahoo.com> 2/2/2012 9:29 AM >>>

**From:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**To:** Gary Stein <gstein@cuyahogacounty.us>; Nicole DiSanto <ndisanto@cuyahogacounty.us>
**Cc:** Jaye Schlachet <jaye@schlachetlaw.com>; Mark Bennett <Mark.Bennett2@usdoj.gov>
**Sent:** Thursday, February 2, 2012 8:51 AM
**Subject:** KAT CLOVER AKRON PROPERTIES

exhibit  0 - 0.3



**From:** Daniel Kasaris <dkasaris@cuyahogacounty.us>
**To:** Gary Stein <gstein@cuyahogacounty.us>; Nicole DiSanto <ndisanto@cuyahogacounty.us>
**Cc:** Jaye Schlachet <jaye@schlachetlaw.com>; Mark Bennett <Mark.Bennett2@usdoj.gov>
**Sent:** Thursday, February 2, 2012 8:51 AM
**Subject:** KAT CLOVER AKRON PROPERTIES



Daniel J.  Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

exhibit  0 - P. 4

7/24/2020                                                iCloud Mail

**Subject:** RE:

Yeah I have kept up with Manuel's condition. I told John I'm free this Thursday to go so he was going to call your mom and see what is going on this week. Have you gone yet?

On Sep 3, 2012 9:35 PM, "dan kasaris" <danieljkasaris@yahoo.com> wrote:

> Yea I thought pretty good too..when u guys going 2 c manual..havent talked to John today..tumor grapefruit size in stomach..whole stomach coming out..ahhhh not good..like mag told me and my kids..u see what smoking did to me ..same there..he was commenting a month ago how he was surprised he was cancer free after all the smoking he did

---

**From:** Kelly Patrick
**Sent:** 9/3/2012 9:32 PM
**To:** Danny Kasaris
**Subject:** Re:

Pretty cool! Love Melanie's blue eyes.

On Mon, Sep 3, 2012 at 8:31 PM, Danny Kasaris <danieljkasaris@yahoo.com> wrote:

http://thepostnewspapers.com/royalton/

check out dem and mel

Daniel J. Kasaris
Assistant Cuyahoga County Prosecutor
Representing  the Residents of Ward 6
North Royalton City Council
North Royalton, Ohio
440-305-4226

**From:** John Rydarowicz <johnr72hd@yahoo.com>
**To:** dan kasaris <danieljkasaris@yahoo.com>
**Sent:** Monday, September 3, 2012 4:56 PM
**Subject:** Re:

Dan:
   Was that at mom's house on Viola?
LoveDad

**From:** dan kasaris <danieljkasaris@yahoo.com>
**To:** Kat Clover <kclover24601@yahoo.com>; John Rydarowicz <johnr72hd@yahoo.com>
**Sent:** Monday, September 3, 2012 2:30 PM
**Subject:**

As u can see I started early..grabbed my dzia beer bottle and away I went..nothing like.a Stroh s. Hahahah

exhibit P - P.1

---------- Forwarded message ----------
From: **dan kasaris** <danieljkasaris@yahoo.com>
Date: Mon, Sep 3, 2012 at 11:00 PM
Subject: RE:
To: Kelly Patrick


Yes they r..i have some with Tom that r awesome..ok..one night he was working til 5 and I needed the car cause I was closing..no Tom..so I took my mothers car and went to work..i get there and I see the car rocking back and forth..all steamed up in McDonald's parking lot..i jumped on the bumper and up popped 2 heads..tom and a female coworker he was banging in the car...then there were the hand jobs we got from co workers in the cooler.hahahaha...alot of memories.hahahahaah..john worked at the Boardman McDonald's ..he wanted 2 work there or maybe they figured 3 of us were 2 much...

---

**From:** Kelly Patrick
**Sent:** 9/3/2012 10:42 PM
**To:** dan kasaris
**Subject:** RE:

That is pretty cool. They're creating memories they'll remember for the rest of their lives.
On Sep 3, 2012 10:39 PM, "dan kasaris" <danieljkasaris@yahoo.com> wrote:
. I like Dem and mel working 2 gether send me back 2 1982 to 1985 when Tommy and I worked 2 gether..

---

**From:** Kelly Patrick
**Sent:** 9/3/2012 10:10 PM
**To:** dan kasaris
**Subject:** RE:

And John's texting me what you're telling him!
On Sep 3, 2012 10:07 PM, "dan kasaris" <danieljkasaris@yahoo.com> wrote:
Yep..hey emailing u and texting John hahahaa

---

**From:** Kelly Patrick
**Sent:** 9/3/2012 9:51 PM
**To:** dan kasaris
**Subject:** Re:

It's sad. It's not easy to see or hear about people suffering. So many people don't realize the consequences of what you do to your body will always catch up to you in some way.


On Mon, Sep 3, 2012 at 9:48 PM, dan kasaris <danieljkasaris@yahoo.com> wrote:
no haven't talked 2 her 2 day..she was waiting for result of cat scan 2 see if it spread as of 2 weeks ago it hadnt spread..wont operate for another week in the mean time it grows..need 2 get him stronger I guess..

---

**From:** Kelly Patrick
**Sent:** 9/3/2012 9:38 PM
**To:** dan kasaris

exhibit P- P. 2

## IN THE OHIO COURT OF CLAIMS

ANTHONY VIOLA,                                      :
                                                   :
            Respondent,          :   CASE NO. 2020-00507PQ
                                                   :
            v.                    :
                                                   :   Special Master Jeff Clark
OHIO ATTORNEY GENERAL'S OFFICE –                   :
PUBLIC RECORDS UNIT,                               :
                                                   :
            Respondent.          :

---

### AFFIDAVIT OF DANIEL J. KASARIS

---

Daniel J. Kasaris, being first duly cautioned and sworn, testifies as follows:

1. I am an adult, over 18 years of age, and I have personal knowledge of the matters set forth below.

2. I serve as Senior Assistant Attorney General in the Special Prosecutions Section of the Ohio Attorney General's Office ("AGO"). I have held this position since August 12, 2013.

3. Prior to my employment in the AGO, I was an Assistant Prosecutor with the Cuyahoga County Prosecutor's Office from September 1997 to August 9, 2013.

4. During my employment as a prosecuting attorney at the Cuyahoga County Prosecutor's Office, that office criminally prosecuted Mr. Anthony Viola in state court. In my capacity as an Assistant Prosecutor with the Cuyahoga County Prosecutor's Office, I was on a team of attorneys that criminally prosecuted Mr. Viola. After a trial, the jury acquitted Viola of the state charges.

exhibit A- 0·1          Exh. A, p | 1

5.   Separately, the United States federal government through the United States' Attorney office for the Northern District of Ohio prosecuted Mr. Viola on federal criminal charges. I was not involved in this case.

6.   Since beginning my employment with the AGO in 2013, I have not been consulted on or involved in any criminal prosecutions against Mr. Anthony Viola.

7.   Since beginning my employment with the AGO, the AGO has not been involved in any criminal prosecutions against Mr. Anthony Viola.

8.   Since beginning my employment with the AGO, the AGO has defended against civil lawsuits filed by Mr. Anthony Viola against myself and other AGO employees.

9.   I understand that the AGO received a public records request that stated:

"Assistant Ohio Attorney General Daniel Kasaris has used a personal Yahoo account for official business. I'm attaching an example of an e mail from his Yahoo account with an official signature. I'm asking you to look into this Yahoo account and determine whether its use violates Ohio public records laws. I'm also asking you to review that Yahoo account and search for records responsive to my recent records request, which sought all e mails from the inception of his employment in 2013 until the present mentioning the following key words:

--Task Force or Mortgage Fraud Task Force          -- Bryan Butler
-- Dawn Pasela                                                      -- Matt or Matthew Fairfield
-- Kathryn Clover                                                   -- Jay Milano
-- Anthony or Tony Viola                                        -- Peter Beck
--Mark Bennett                                                      -- Arvin Clar"
--Mortgage Fraud

10. I maintain a personal email account with Yahoo.com, Danieljkasaris@yahoo.com.

11. For the most part, I use my email account with Yahoo for personal communications unrelated to my AGO employment.

12. On very rare occasions, I have sent to my Yahoo email account copies of emails that I received on my AGO email account. The emails that I sent from my AGO email account to my Yahoo email account were all duplicates of AGO emails. These emails involved a

exhibit Q - 0.2                                                    Exh. A, p | 2

criminal prosecution that was separate and unrelated to any matter involving Mr. Viola. Once that criminal case concluded, I deleted the duplicate emails from my Yahoo account. I also saved the emails in my AGO email account to the AGO case file for that case, which are maintained in accordance with the AGO record retention policies.

13. I have no emails related to my AGO employment on my personal Yahoo account.

14. I searched my personal email account, Danieljkasaris@yahoo.com, using the search terms listed in the above public records request. That search yielded no emails that relate to any case or matter involving the AGO or that relate to my AGO employment.

FURTHER AFFIANT SAYETH NAUGHT.

DANIEL J. KASARIS

Sworn to and subscribed before me, a Notary Public in and for said county and state, and subscribed in my presence, by the above-named Daniel J. Kasaris, who acknowledged that he did sign the foregoing instrument and that the same is his free act and deed, this _1st_ day of _December_, 2020, in the City of _Youngstown_ County of _Mahoning_ State of Ohio, in testimony whereof, I set my hand and official seal.

Notary Public – State of Ohio
My commission

KATHLEEN WALLEY
Notary Public, State of Ohio
My Commission Expires
May 11, 2024

exhibit Q- P.3                    Exh. A, p | 3

| | |
|---|---|
| **From:** | Danny Kasaris |
| **To:** | Dana Schroeder |
| **Subject:** | Re: Public Records Request - June 25, 2020 |
| **Date:** | Monday, July 6, 2020 10:54:24 AM |

To the Director of Legislative Services

  Danieljkasaris@yahoo.com is my private email account. In the event a resident inadvertently sent me an email on my Yahoo email account, when I replied to the particular email I cced my city email account, Ward6@northroyalton.org. This would have had the effect of forwarding the email to the City Email account for the Ward 6 representative.
Thank you
Dan Kasaris
Former Ward 6 Councilman



Sent from Yahoo Mail on Android

exhibit Q - 0.4

# SWORN AFFIDAVIT

I, Matthew Fairfield, swear under the penalty of perjury that the following statement is true and correct:

1) I was married to Kathryn Clover from 2006-2010. We lived together during this time in Cleveland, Ohio.

2) From 2005-2008, Kathryn purchased rental properties with Paul Lesniak using Realty Corporation of America, a real estate brokerage owned by Tony Viola. She later rented office space from Viola where she was affiliated with Transcontinental Lending and Pacific Guarantee Mortgage. However, she presented herself as Tony Viola's Partner.

3) I visited her office several times and on one occasion I overheard a phone conversation she was having with a mortgage rep about "altering" loan documents. When I ask her about this, she said "Don't say anything. Tony can never know I am doing this. He'd never let this deal close if he knew what I was doing."

4) In 2009, Kathryn was indicted for mortgage fraud. Shortly after the indictment, I entered our home and found Kathryn shredding documents she had brought home from her office and compiling computer hard drives (3 total) to destroy. When I asked her what she was doing, she said she was getting rid of things because she was cooperating with the prosecutor as their "key witness" to get herself out of trouble and set up Viola to take the fall in her case.

5) Over the next few months, I became very concerned about the amount of time Kathryn was spending at the prosecutor's office and that she was meeting prosecutor Dan Kasaris outside of the office at all hours of the day and night. I saw that her email account showed numerous email communications between the two of them. I read the text messages between Kathryn and Dan, which included sexual photos of both of them.

6) During this time she was not employed but regularly had huge amounts of cash - thousands of dollars in hundred dollar bills – on her person.

MY COMMISSION EXPIRES SEPTEMBER 26, 2022

exhibit R - P.1

7) December 2009, Kathryn had forgotten that she had asked me to pick her up from school and I saw her exit the building and get into an unknown vehicle. I followed this car to a bar in Lakewood where she jumped out of the car and kissed Kasaris who was waiting for her to arrive.

8) In February 2010, I confronted Kathryn about the texts, emails, and the rendezvous with Dan Kasaris at the Lakewood bar. I demanded to know what was going on. It was then she admitted she had been having a sexual affair with Kasaris.

9) Later in 2010 Kathryn told me that she was in love with Dan Kasaris and wanted to end our marriage. We were subsequently divorced by 2011.

Around May, 2020, I became aware that Tony Viola had been released from prison. I heard his broadcast on a national radio show shortly afterwards. I reviewed his website to learn that he has a federal case pending that directly pertains to missing evidence in his original criminal case, the same evidence that I witnessed being destroyed by Kathryn Clover.

Under the penalty of perjury, I swear the foregoing is true and correct and comports with any and all previous statements I have made regarding this matter.

Date __7/27/20__                    _____
                                    Matthew Fairfield


Notary Public _____        STATE OF OREGON
              07-27-2020                    COUNTY OF KLAMATH



OFFICIAL STAMP
RAYNA MARIE HERNANDEZ
NOTARY PUBLIC - OREGON
COMMISSION NO. 979570
MY COMMISSION EXPIRES SEPTEMBER 26, 2021

exhibit R - P.2

BB

I **Bryan Butler**, DOB January 3, 1980, was advised of the nature of the investigation by **Investigator Robert Friedrick**, and make the following statement:

I met **Kathryn Clover** (known to me as **Katie**) in grade school. We went to high school through our sophomore year at Talawanda High School in Oxford, Ohio. I never dated **Katie** in school, but we exchanged greetings and made small-talk in the school hallways. The second semester of my sophomore year I moved to Hamilton

BB ~~County~~ City. I believe this was in 1998. After graduation I worked with my stepdad cleaning carpets for about 20 years.

**Katie** and I got back together again through Facebook in 2015. We had a mutual friend named **Chris Evans**. **Katie** and **Chris** both commented on a post I made and subsequently **Katie** messaged me. I responded and asked **Kathy** where she was living. She replied that she was back in Oxford, but she travels between Miami and New York. She said the reason she was living at home was because her mother had Alzheimer's.

I believe my first date with **Katie** was in November 2015 before Thanksgiving. I picked **Katie** up at her home in Oxford, Ohio where she was living with her parents. Her parents were at home when I arrived, and I met them. Two weeks later in November 2015 I received a call from **Katie** to meet her in Houston Woods State Park. I characterized myself as a "observant guy" and noticed that **Katie** would constantly pick up her phone and then put it down. I asked her why she was so secretive with her phone. **Katie** responded, "I didn't want to tell you, but I have a stalker who was a boyfriend" or words to that effect. I told her that if she had a problem that I could take care of it for her. **Katie** responded that I could not get involved because her ex-boyfriend was named **Dan Kasaris** and very dangerous. She further elaborated that **Dan** was a county prosecutor in Cuyahoga County. She said that **Dan** would not leave her alone and was infatuated with her.

A couple of weeks later in December 2015 I met **Katie** again in Houston Woods. She confided in me about her past. She said she had worked for a modeling agency, stole the clientele, and opened up her own agency. A short time later she turned it into a brothel. **Katie** never told me where the modeling agency was located. She said the brothel was raided which was how she got in trouble.

exhibit   S- 0.1

BB

BB

She then talked about her former husband, **Matt Fairfield**. She told me **Matt** was serving a life sentence and further he was abusive. He would have friends over and watch them rape her. **Katie** went to a prosecutor in regards to domestic violence and met **Dan Kasaris**. She said the first time they met it was very professional but by the third time they were sleeping together. **Katie** said that sex with him was great for his age. She said she felt comfortable with him, and it was a way to have him on a string. She said they broke up after the trial, and he was stalking her. **Katie** said she was sexually involved with **Dan Kasaris** from the time she met him until at least the time she began going out with me.

The next time **Dan's** name came up was a few days later. I was at **Katie's** house. She was taking a shower. I was in her bedroom when her phone went off right next to me. I picked up the phone and saw the name **Dan Kasaris**. I recall this was in December 2015. It was then I found out that **Katie** was lying about her ending her relationship with **Dan** and about him being a stalker. There were many messages between the two of them. One of which I recall said, "can we meet?" I also saw a message from **Dan** asking, "does he know?" I think this meant me. Another message said, "how long can we keep this from him" or words to that effect. **Dan** also said they needed to meet, he loved her, missed her and cannot wait to be with her again. The messages on her phone went back and forth.

I saw a personal journal which belonged to **Katie** in her bedroom. I started to read her journal. It did say she had been sleeping with **Dan**. She mentioned how awesome their sex life was and how she hated being away from him. When **Katie** came back into the room, I confronted her. She tried to minimize her relationship with **Dan** telling me that she was trying to get out of the relationship and she had made a big mistake.

I also saw the name **Tony Viola** in her journal and asked her about him. **Katie** admitted they were in real estate in Cleveland. She further admitted that she stole **Tony's** laptop and burned it in a field. She also said that she had stolen paper documents from **Tony** and after shredding them she bagged them up and threw them away in different neighborhoods.

In January I started to back out of my relationship with **Katie**. This was right after I had an accident on January 3, 2016, which is my birthday. We had gone to Dave & Buster's in Springdale, Ohio, and we both had several drinks. When I returned to Oxford, I was stopped by an Oxford Police Officer and cited for DUI. This was the last time I saw **Katie**, although I spoke to her on my cell phone infrequently.

exhibit 5- P.2

BB

In the middle of March 2016 I received a Restraining Order. I was to have no contact with **Katie**. I was arrested on April 22, 2016 for Aggravated Vehicular Assault. This was regarding the accident I had on January 3, 2016. The so-called accident was no more than a minor scrape on her car, there was no impact. The incident happened in Springdale, Ohio. The only reason I was pulled over when we arrived in Oxford was because **Katie** had called her brother and told him I had kidnapped her and her car. I could not make bond and was held in jail for approximately seven months. I went on trial and was acquitted in a day and a half.

I have read this page and two others. To the best of my recollection my statement is the truth.

Signed:
Date: 7-28-2020

Witness: Robert S. Friedrich
Date: 7/28/20

exhibit S- p.3

<u>Affidavit of Kelly Patrick</u>

State of Ohio
County of Cuyahoga

I, Kelly Patrick, hereby depose and state under oath the following:

(1) I was married to Attorney John Patrick from May 2001 to July 2011.   John is a corporate partner at Reminger, a Cleveland-based law firm.  We had two children together.

(2) John Patrick is biological brothers with Senior Ohio Attorney General Dan Kasaris. I met Dan and his wife Susan Kasaris in 1999. Throughout my marriage, I was close with Dan and Susan.  I hosted many family parties at our home. Dan and Susan's children were very close with me and eventually my children, their eldest daughter frequently spending the night at our home.

(3) Despite divorcing in 2011, I remained close and was in regular communications with Dan. In 2012, Dan sent me an email referencing a picture of him and bragged how he was young when he started drinking alcohol. In that email, Dan also copied Kat Clover. Dan and I would talk frequently because I created and built a family tree for my children, researching not only my family but also John and Dan's family history. And despite being divorced, I still visited John's house when Dan was visiting, often taking pictures of everyone together.

(4) In 2016, Susan Kasaris discovered that her husband Dan was having an affair and Dan moved out of the family home on Beckingham, sometimes staying at John's home. During this time, Susan reached out to me for support.  For over a year, from October 7, 2016 through October 17, 2017, we exchanged messages about Dan seeking counseling for his excessive drinking and his sexual relationships outside of the marriage.  In one message, Susan discusses Dan's "affair" and in another, she states "He must not want her because he isn't divorcing me." In addition to this affidavit, I am providing print outs of all of the messages between Susan and me.

(5) Susan's messages confirm that Dan had left twice during this time after his affair was publicized. Susan and I exchanged messages sharing details of our alcoholic and abusive marriages to John and Dan.  She repeatedly told me Dan called her and her daughter "fat." Susan described Dan's "mid-life crisis" with his excessive drinking and out of control behavior.

(6) During a visit to John's house, John complained to me about Dan's behavior. John claimed that his brother was drinking a lot, taking pills, and obsessed with finding girls to have sex with. Dan complained that he could not get an erection when he was with his wife and sought out sexual relationships with other females to determine whether or not he could sustain an erection.

(7) During a visit to John's home, I found several bottles of prescription medications prescribed to Dan Kasaris for anxiety and pain.

exhibit  J - 0.1

Affidavit of Kelly Patrick – Page Two

(8) My communications with Susan abruptly ended in October, 2017 after Dan Kasaris and John Patrick discovered them. Susan wrote that "why are you sending John an e mail Dan is in alcoholic counseling! … I can't talk … I asked you not to talk about our convo" and then she blocked me from Facebook Messenger.

(9) In addition to written messages between Susan and me, I also have in my possession e mails from Dan Kasaris describing his "hand jobs we got from co-workers," among other admissions.

(10)    I am coming forward now and providing this information in hopes that it will be helpful to others. I am very concerned that Dan Kasaris committed misconduct during his prosecution of criminal cases and I felt compelled to make the information in my possession available to the public.

Further affiant sayeth naught.

_Kelly Patrick_

Kelly Patrick

6/22/20

DATE

NOTARY:

3/29/24

exhibit T – p.2

 

**THE FBI** *FEDERAL BUREAU OF INVESTIGATION*

## Cleveland Division

Home · Cleveland · Press Releases · 2010 · Three Charged In Mortgage Fraud Scheme

### Three Charged in Mortgage Fraud Scheme

**U.S. Attorney's Office**      **Northern District of Ohio**
February 23, 2010           (216) 622-3600

Steven M. Dettelbach, United States Attorney for the Northern District of Ohio, announced that an information has been filed charging Anthony Capuozzo, Nicholas Myles, and Kathryn Clover with two counts of conspiracy. According to court records, Anthony Capuozzo, age 39, currently resides in Concord, Ohio; Nicholas Myles, age 38, currently resides in Mayfield, Ohio; and Kathryn Clover, age 30, currently resides in Olmsted Falls, Ohio.

The information alleges that during the period from about June 2005 through April 2006, Capuozzo, Myles, and Clover conspired with previously indicted defendants Uri Gofman, Anthony Viola, Gennadiy Simkhovich, Dave Pirichy, Howard Sieferd, Jr., Noah Bloch, and Paul A. Lesniak to purchase 34 properties in the Cleveland area for over $2 million, of which 15 properties were purchased in Clover's name and 19 properties were purchased in Lesniak's name. The information further alleges that as part of their conspiracy, Clover and Lesniak completed and submitted false and fraudulent loan applications with the assistance of Myles and Pirichy, mortgage brokers for Central National Mortgage, LLC. The applications falsified employment, overstated income, overstated assets, falsified intent to occupy the property and concealed the source of the down-payment funds, which were in fact provided by Uri Gofman and Gennadiy Simkhovich through their company, Real Asset Fund, LLC, in order to obtain the financing to purchase the properties. The information alleges that Capuozzo, a licensed title agent through the State of Ohio and an owner of Family Title Service, Inc. and Howard Sieferd, Jr., an employee of Family Title, served as the title agency on the properties and conspired with defendants Uri Gofman, Anthony Viola and Gennadiy Simkhovich to allow the mortgage loan proceeds to be fraudulently and improperly distributed. The information alleges that the defendants did all of this in order to deceive and defraud Long Beach Mortgage Company, Argent Mortgage Company, LLC, and Mortgage IT, Inc. into funding the mortgage loans.

The defendants' sentences will be determined by the court after review of factors unique to this case, including the defendants' prior criminal records, if any, each defendant's role in the offense, and the characteristics of the violation. In all cases the sentences will not exceed the statutory maximum and in most cases it will be less than the maximum.

This case is being prosecuted by Assistant United States Attorney Mark S. Bennett, following an investigation by the Cleveland Divisions of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), the Federal Bureau of Investigation (FBI), and in conjunction with the Cuyahoga County Mortgage Fraud Task Force.



United States Attorney Steven M. Dettelbach stated that "Mortgage fraud has had a devastating negative impact on our community and, unfortunately, is continuing to happen. Our office has committed that one of our top priorities, along with our law enforcement partners, is to find and prosecute the perpetrators of mortgage fraud in order to eliminate it."

An information is only a charge and is not evidence of guilt. Defendants are entitled to a fair trial in which it will be the government's burden to prove guilt beyond a reasonable doubt.

This content has been reproduced from its original source.

### Cleveland Division Links

**Cleveland Home**

**Contact Us**
- Overview
- Territory/Jurisdiction

**News and Outreach**
- Press Room | Stories
- In Your Community

**About Us**
- Our People & Capabilities
- What We Investigate
- Our Partnerships
- Cleveland History

**Wanted by the FBI - Cleveland**

**FBI Jobs**

Accessibility | eRulemaking | Freedom of Information Act | Legal Notices | Legal Policies and Disclaimers | Links | Privacy Policy | USA.gov | White House
FBI.gov is an official site of the U.S. government, U.S. Department of Justice

Close

EXHIBIT   U - P.1

1          MR. BENNETT:  Thank you, Your Honor.  I will

2     try to be brief.

3          THE COURT:  And would you stand by the

4     podium, make sure that Judy can hear you?

5          MR. BENNETT:  My voice normally carries.

6          Again, Your Honor, much has been said.  I

7     will not be attempting to address all of it.  However,

8     I do want to address first and foremost, just for the

9     record, it was something brought up during the trial by

10    defense counsel in opening and closing, something

11    mentioned briefly by Mr. Kasaris about how the case

12    came before you.  Since we have a record and since it

13    was mentioned, I will make it clear that, as came out

14    during trial, our office is part of the mortgage fraud

15    Task Force with Cuyahoga County.  We did have a case

16    that initiated with Mr. Lesniak.

17          In speaking with the Task Force and advising

18    our plans to move forward with the investigation and

19    potential indictments, it was made clear by one of the

20    Task Force members that that name sounded familiar with

21    an investigation the county had already started with

22    Mr. Gofman.  We then had a meeting with Prosecutor

23    Kasaris; myself, Kasaris, the agent involved.  We have

24    a policy that will not allow us to indict others

25    currently under investigation or going to be indicted

exhibit  U- p. 2

# Bureau of Justice Assistance

**Award Title:** Recovery Act Grant Program

**Award Description:**

The Recovery Act Edward Byrne Memorial Competitive Grant Program (Byrne Competitive Program) will help communities improve the capacity of state and local justice systems and provide for national support efforts including training and technical assistance programs strategically targeted to address local needs. This competitive grant announcement focuses on initiatives in eight areas: 1) preventing and reducing violent crime through community-based data-driven approaches; 2) providing funding for neighborhood-based probation and parole officers; 3) reducing mortgage fraud and crime related to vacant properties; 4) hiring of civilian support personnel in law enforcement (training staff, analysts, dispatchers, etc.); 5) enhancing forensic and crime scene investigations; 6) improving resources and services for victims of crime; 7) supporting problem-solving courts; and 8) national training and technical assistance partnerships.

Under category 3, the Cuyahoga County Prosecutor's Office will use the grant to increase their number of law enforcement partners and expand their efforts to aggressively investigate and prosecute fraudulent mortgages within Cuyahoga County. The Cuyahoga County Prosecutors Office convened the Cuyahoga County Mortgage Fraud Task Force in January 2007. Since 2007, the Cuyahoga County Prosecutors Office has indicted 219 defendants for their involvement in fraudulent loans (totaling more than $55 million), taken on 353 homes. Of the 353 home loans under investigation, 252 of the houses (71 percent) have fallen into foreclosure. The task force is comprised of 12 federal, state, and local law enforcement agencies. The grant funds will be used to hire three additional full-time employees. The increased capacity provided by adding staff is expected to result in criminal indictments being brought against an additional 250 defendants for fraudulent mortgages by the end of the 24-month grant cycle.

CA/NCF

| | |
|---|---|
| **Awardee Name:** Cuyahoga County Prosecutors Office | **Award Number:** 2009-SC-B9-0080 |
| **Solicitation Title:** BJA FY 09 Recovery Act Edward Byrne Memorial Competitive Grant Program: Reducing Mortgage Fraud and Crime Related to Vacant Properties | **Fiscal Year:** 2009 |
| **Supplement Number:** 00 | **Amount:** $279,950.00 |
| **Earmark:** No | **Recovery Act:** Yes |
| **State/Territory:** OH | **County:** Cuyahoga |
| **Congressional District:** 11 | **Award Status:** Closed |

exhibit  U- Q.?



**For Immediate Release**
**August 26, 2009**

### Cuyahoga County Mortgage Fraud Task Force Announces
### One of Nation's Largest Mortgage Fraud Cases

## 500 Real Estate Transactions for $50 Million,
## 453 Houses Purchased with $44 Million in Fraudulent Loans,
## 45 Defendants, and $31 Million in Profit

CLEVELAND- County Prosecutor Bill Mason and the Cuyahoga County Mortgage
Fraud Task Force operating under authorization of Ohio Attorney General Richard
Cordray's Organized Crime Investigations Commission announced a 377-count
indictment involving 45 defendants who engaged in over 500 real estate transactions to
purchase 453 houses in Cuyahoga County for $50 million. These houses were purchased
with fraudulent loans totaling $44 million. Gofman and others siphoned off more than
$31 million in profits from their criminal enterprise.

These charges resulted from an 18-month investigation by the Task Force. Task Force
members County Prosecutor's Office, FBI, and Ohio Bureau of Criminal Identification
and Investigation (BCII) were three of many partners in the investigation. Cuyahoga
County Sheriff Bob Reid's deputies also provided assistance. With funding from the
Ohio Attorney General's Office and the Organized Crime Investigations Commission, the
Task Force was formed in December 2007. 289 defendants have been indicted for
approximately $111 million in fraudulent loans for 812 houses, located in 28
communities in Cuyahoga County, as well as 6 communities located outside Cuyahoga
County. 616 of the 812 houses fell into foreclosure.

Uri Gofman orchestrated one of the nation's largest mortgage fraud cases by enlisting
family, friends and others to invest in his real estate company, Real Asset Fund, with
promise of profit. Gofman's enterprise began with seed money from an investor who
transferred funds from an Eastern European bank account in Latvia. Gofman's typical
scheme involved setting up straw buyers to purchase homes; falsely claiming home
improvements were performed on houses in order to refinance them; and then selling

exhibit U - p.4

houses to unqualified buyers with assistance of real estate agents, mortgage brokers, and title companies. Gofman and others defrauded lenders through loan application fraud, down payment fraud, and loan distribution fraud. 358 of the 453 houses fell into foreclosure.

The following 11 defendants were indicted on mortgage fraud-related offenses including engaging in a patter of corrupt activity, a first degree felony: Uri Gofman, Tony Viola, Igor Gofman, Kevin Landrum, Dave Pirichy, Dale Adams, Steve Greenwald, George Gardner, James Leoni, along with Real Asset Fund owned by Uri Gofman and Karka Inc., which is owned by Uri Gofman. The other 34 defendants were indicted on mortgage fraud-related offenses.

Five defendants involved in this case were charged in December 2008, with mortgage fraud-related offenses in federal court: Uri Gofman, Paul Lesniak, Grennadiy Simkhovich, David Pirichy, and Howard Sieferd, Jr.

The Task Force is continuing to investigate this mortgage fraud case and possible new charges are forthcoming.

The Cuyahoga County Mortgage Fraud Task Force operates under authorization of Ohio Attorney General Richard Cordray's Organized Crime Investigations Commission. The Task Force is comprised of federal, state, and local enforcement agencies.

Task Force members include: Ohio Organized Crime Investigations Commission, Cuyahoga County Prosecutor's Office, Ohio Bureau of Criminal Identification and Investigation, Cuyahoga County Sheriff's Office, Cleveland Heights Police Department, Solon Police Department, Beachwood Police Department, Pepper Pike Police Department, HUD Inspector General's Office, Cuyahoga County Recorder, Cuyahoga County Auditor, Cuyahoga County Treasurer, Department of Commerce-Division of Financial Institutions, F.B.I., U.S. Attorney's Office, and U.S. Postal Inspector.

Contact: Ryan Miday, Public Information Officer, (216) 698-2819, cell (216) 299-9326 or p4rm1@cuyahogacounty.us
http://prosecutor.cuyahogacounty.us.

exhibit U - 0.5

Kassouf - Direct/Bennett

1    some resources to investigate mortgage fraud.  And a lot of

2    the mortgage fraud investigations you'll see, we will see --

3    excuse me.  We may start this investigation on an

4    individual, and that spirals out into many other

08:38:13  5    individuals.

6         So a portion of mortgage -- part of the Mortgage Fraud

7    Task Force was used to de-conflict with other potential

8    agencies that may be working mortgage fraud.

9    Q.    Who all is involved in the Task Force?

08:38:27 10   A.    Mortgage Fraud Task Force is comprised of various

11   local state and federal agencies to include the FBI.  I was

12   one of the members over there.  It is funded by the State

13   Attorney General's office, so the State Attorney General and

14   then various local agencies such as the Sheriff's

08:38:49 15   Department, Beachwood police, Pepper Pike police and various

16   other entities.

17   Q.    Is there a particular aspect of mortgage fraud that

18   entails or requires the local and the state and the federal

19   to coordinate?

08:39:04 20   A.    Just in general, for us to coordinate the Cuyahoga

21   County nationally, it became a big priority.  The FBI became

22   one of our big priorities, one of our top priorities on the

23   criminal side, so it was a large focus.

24        In terms of Cuyahoga County, there was a lot of

08:39:24 25   mortgage fraud that was a significant amount of mortgage

exhibit  U - p.6

FD-302 (Rev. 10-6-95)



- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription   04/06/2010        b6
                                          b7C

On April 6, 2010, at 3:35pm, Special Agent ⬚
⬚ accepted a box of documents which were being held at the
United States Attorney's Office.  The documents were originally
provided by ⬚ to Special Agent ⬚ of Alcohol
Tobacco and Firearms (ATF).

At 4:04 pm, SA ⬚ delivered these documents to the        b6
Cuyahoga County Mortgage Fraud Task Force, for scanning and to be    b7C
turned over for evidence.

On March 16, 2010, these documents were brought to a
meeting held at the United States Attorney's Office.  Present at the
meeting were SA ⬚ and ⬚ of the ATF, SA          b6
⬚ and Assistant United States Attorney ⬚  The          b7C
documents were placed in storage at the conclusion of this meeting.

The documents turned over to the MFTF included ⬚        b6
⬚                                                              b7C

Investigation on   04/06/2010   at   Cleveland, Ohio

File #   329E-CV-71645- 179                Date dictated

by   SA ⬚                                                          b6
                                                                   b7C

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

Exhibit  U-P-7    Appelk 01.302

**U.S. Department of Justice**
Federal Bureau of

gation

In Reply, Please Refer to
File No.

1501 Lakeside Avenue
Cleveland, OH  44114
March 20, 2012

Judge Gaul
c/o Mary Jo Simmerly
Cuyahoga County Justice Center
1200 Ontario Avenue
Courtroom 19D
Cleveland, Ohio 44113

Correspondence to Pro Se Defendant: Anthony Viola

RE:   State of Ohio v. Anthony Viola

Dear Mr. Viola:

The Cleveland Division of the Federal Bureau of Investigation (FBI) is in receipt of a Subpoena for Special Agent (SA) Jeffery Kassouf, for SA Kassouf's testimony in the above captioned matter, scheduled to begin 03/21/2012.

I am writing to inform you of the procedures which are necessary in order for a determination to be made as to the ability of the FBI to comply with a request.   A determination will have to be made as to SA Kassouf's authorization to testify in a state court proceeding.   See below outline as to the factors which are necessary in order for such a determination to be made.   In short, as of the date of this correspondence, SA Kassouf is prohibited from testifying due to the following factors:   (1) the United States and its agencies and employees are immune from state subpoenas; (2) the Supremacy Clause prohibits enforcement of the subpoenas; and (3) you failed to comply with federal regulations governing testimony of Federal Agents.

I.      Sovereign Immunity:

The United States of America is immune from suit pursuant to the doctrine of sovereign immunity.   Further, it is well-settled that an action seeking specific relief against a federal official, acting within the scope of his delegated authority, is an action against the United States, subject to governmental privilege of immunity.   Boron Oil Co. v. Downie (4th Cir. 1989), 873 F.2d 67, 69.   Even though the government is not a party to the underlying state matter, the nature of the subpoena proceeding against a federal employee to compel him to testify about information obtained in his official capacity is inherently that of an action against the United States because such a proceeding

DEFENDANT'S
EXHIBIT

S 02

Exhibit   V - p.1

"interfere[s] with the public administration" and compels the federal agency to act in a manner different from that in which the agency would ordinarily choose to exercise its public function.   Boron Oil Co. at 70-71.   Therefore, it is universally accepted that state subpoenas that require federal officials to testify about facts obtained in the course of their official duties are barred by sovereign immunity.   U.S. v. Williams (4th Cir. 1999), 170 F.3d 431, 433-34; In re Elko County Grand Jury v. Siminoe (9th Cir. 1997), 109 F.3d 554, 556; Edwards v. United States Department of Justice (7th Cir., 1994), 43 F.3d 312, 317; State of Louisiana v. Sparks (5th Cir., 1992), 978 F.2d 226; Swett v. Schenk (9th Cir., 1986), 792 F.2d 1447; Boron Oil Co. at 69-71; Houston Business Journal, Inc. v. Office of Comptroller of Currency, 86 F.3d 1208, 1211 (D.C. Cir. 1996); United States v. Kaufman, 980 F. Supp. 1247, 1250 (S.D. Fla. 1997); Sharon Lease Oil Co. v. F.E.R.C., 691 F. Supp. 381, 383-85 (D.D.C. 1988); Environmental Enterprises, Inc. v. U.S. EPA, 664 F. Supp. 585, 586 (D.D.C. 1987).   As a result, SA Kassouf is barred by sovereign immunity from testimony.

II.    Supremacy Clause:

The Supremacy Clause of the United States Constitution would also bar a state court or body from enforcing a subpoena (if one were obtained) if it interferes with the duty the officer owes in the performance of his job.   The service of a subpoena on SA Kassouf would be an unlawful interference with the performance of his federal duties.   In United States v. McLeod, 385 F.2d 734 (5th Cir. 1967), a state grand jury subpoenaed a number of Department of Justice attorneys who had been working in Selma, Alabama to enforce federal civil rights.   The appellate court held that the Supremacy Clause and general principles of our federal system dictated that a state agency may not investigate the operation of a federal agency.   Id. at 751.   The appellate court cited the following passage from United States v. Owlett, 15 F. Supp. 736, 752 (M.D. Pa. 1936):

> The suggestion that federal employees could refuse to obey the subpoenas, or seek relief by habeas corpus from imprisonment for disobedience, is no relief.   Although these remedies might in a measure protect the individuals, they do not in any degree protect the United States of America from an invasion of its sovereignty or from vexatious interruptions of its functions.

Based on this law, any enforcement of a subpoena is barred by the Supremacy Clause of the United States Constitution.   Thus, your request must be withdrawn.

III.    Federal Regulations:

Finally, federal regulations govern the disclosure of official information by Federal Agents and would prohibit SA Kassouf from providing testimony without authorization. 28 C.F.R. 16.22.   The Supreme Court has long recognized the authority of agency heads to restrict the testimony of their subordinates through regulations.   U.S. ex rel. Touhy v. Ragen (1951), 340 U.S. 462.   These regulations are commonly called "Touhy Regulations".

In the Touhy decision, the United States Supreme Court held that a subordinate federal officer could not be found in contempt of court for refusing to produce subpoenaed documents where his refusal was based on Department of Justice regulations prohibiting

exhibit  V - p.2

disclosure of nonpublic documents without authorization from the Attorney General.   Id. at 468.   The Court rejected the contention that the regulation invaded the authority of the Courts to determine the admissibility of evidence.   Id.

In this case there exists a procedure for demanding testimony and receiving authorization for SA Kassouf to testify.   28 C.F.R. 16.21 et seq.   However, until such authorization is obtained, SA Kassouf is prohibited by law from testifying.   Thus, even where a subpoena is provided, it would have to be withdrawn unless/until a proper request was made.   It is important to note that even if you make a proper request, the authorizing official may not allow the disclosure of testimony and even if testimony is authorized, there may be limitations on the testimony.   See, 28 C.F.R. 16.26.

Sincerely,

Stephen D. Anthony
Special Agent in Charge

By: Steven L. Jackson /smm
Steven L. Jackson
Special Agent
Associate Division Counsel

3

exhibit U - p. 3

· 825529

# DEFENSE SUBPOENA
(Criminal Rule 17)

RECEIVED FOR FILING
03/28/2012 12:47:38
GERALD E. FUERST, CLERK

THE STATE OF OHIO

**PRECIPE**

**DS 825529**

Cuyahoga County

Case Number:   CR-10- 543886 -A

To the Sheriff of Cuyahoga County:
You are hereby commanded to summon:
KIMBERLY WESSELL
801 W. SUPERIOR AVE.
U.S. PROBATION OFFICE
CLEVELAND, OH 44113-0000

**JUDGE: DANIEL GAUL**
· **ROOM: JC19D**

U.S. PROBATION OFFICE PRE-TRIAL SERVICES

Please Call Defense Attorney: JOHN B GIBBONS at (216) 363-6086 BEFORE Appearing

TO THE WITNESS

YOU ARE HEREBY ordered to appear, under penalty of law, before the COURT OF COMMON PLEAS, held at the Courts Tower -
Justice Center, Lakeside and Ontario Streets, in the City of Cleveland, within and for said County, on the 4th day of April, 2012, at
09:00 o'clock A.M., to testify to all and singular such matters and things which you may know in a certain action in court pending,
and then and there to be determined, between the STATE OF OHIO, plaintiff, and ANTHONY L VIOLA (defendant 11873387), on
the part of the DEFENSE.



WITNESS, GERALD E. FUERST, Clerk Court of Common
Pleas, and the seal of said Court, as Cleveland, Ohio, this
28th day of March, A.D. 2012.

GERALD E. FUERST, Clerk

by _____

---

## NOTICE TO VICTIMS OF CRIME

If you are a Victim of a Violent Crime and have

been injured, you may qualify for compensation

under the Ohio Victims of Crime Program. Call

1-800-824-8263 for further information or contact

the Cuyahoga County Witness Victim Program

at 443-7399.

### WITNESS CERTIFICATION

The within named witness has been discharged and did appear on the following dates:

_____ TOTAL _____

PROSECUTOR AND/OR BAILIFF _____

Filed _____ By _____ Deputy Clerk

TO THE WITNESS : BRING THIS COPY OF THE SUBPOENA WITH YOU.

Before leaving the Courtroom, make sure the Prosecutor and/or Judge or Bailiff certifies the
above form in order to correctly process your witness voucher. Take this completed certification
to the Clerk's office -- SECOND LEVEL.

GOVERNMENT
EXHIBIT
A

CMSN6060

Exhibit U - p.4



**U.S. Department of Justice**

*United States Attorney*
*Northern District of Ohio*

*United States Court House*
*801 West Superior Avenue, Suite 400*
*Cleveland, Ohio 44113-1852*
*Direct: (216) 622-3718*
*Facsimile: (216) 522-4982*
*E-Mail: david.ruiz@usdoj.gov*

April 3, 2012

John B. Gibbons, Esq.
1370 Ontario Street
Suite 2000 Standard Building
Cleveland, OH 44113

*Sent via Facsimile at (216) 363-6013*

Re:    **Suboena for Federal Probation Officer Kim Wessel**
       **Trial Scheduled for April 4, 2012**
       **Cuyahoga County Case No. CR-10-543886**

Dear Mr. Gibbons:

    Please be advised that you requested a subpoena be issued to United States Probation Officer Kim Wessell in the above-captioned case purporting to command the testimony of Officer Wessell at the trial in the above-captioned matter on April 4, 2012.  Federal law, however, prohibits Probation Officer Wessell from providing testimony or disclosing official information for the following reasons and we therefore request you withdraw the subpoena:

1.    The United States and Officer Wessell are immune from a state court subpoena;
2.    Federal Probation Office records may only be released by federal court order; and,
3.    You have failed to comply with Federal Court rules governing testimony by Court officers and personnel.

<u>Federal Immunity and the Supremacy Clause</u>

    The doctrine of sovereign immunity bars enforcement of the subpoena directed to Probation Officer Wessell.  "It is well-settled that an action seeking specific relief against a federal official, acting within the scope of his delegated authority, is an action against the United States, subject to governmental privilege of immunity." <u>Boron Oil Co. V. Downie</u>, 873 F.2d 67, 69 (4th Cir. 1989) (citing <u>Larson v. Domestic and Foreign Commerce Corp.</u>, 337 U.S. 682, 688 (1949)).  The doctrine of sovereign immunity encompasses all actions brought against the United States, including those against federal officers and actors, in which the relief "sought would expend itself on the public treasury or domain, or interfere with the public administration, or . . . the effect of the judgment

exhibit U-B.5

GOVERNMENT
EXHIBIT
B

would be to restrain the Government from acting, or to compel it to act." <u>Dugan v. Rank</u>, 372 U.S. 609, 620 (1963) (citations omitted).

Even though the United States is not a party to the state court action, the nature of the subpoena proceeding against a federal employee to compel her to testify about information obtained in her official capacity is inherently that of an action against the United States because such a proceeding "interfere[s] with the public administration" and compels the federal agency to act in a manner different from that in which the agency would ordinarily choose to exercise its public function. <u>Boron Oil Co.</u> at 70-71 citing <u>Dugan v. Rank</u>, 372 U.S. 609, 620 (1963). Therefore, it is universally accepted that state court subpoenas that require federal officials to testify about facts obtained in the course of their official duties are barred by sovereign immunity. <u>U.S. v. Williams</u>, 170 F.3d 431, 433-34 (4th Cir. 1999); <u>In re Elko County Grand Jury</u>, 109 F.3d 554, 556 (9th Cir. 1997); <u>Edwards v. U.S. Dep't of Justice</u>, 43 F.3d 312, 317 (7th Cir. 1994); <u>State of La. v. Sparks</u>, 978 F.2d 226, 234 (5th Cir. 1992); <u>Swett v. Schenk</u>, 792 F.2d 1447, 1452 (9th Cir. 1986); <u>Boron Oil Co.</u> at 69-71; <u>Houston Bus. Journal, Inc. v. Office of Comptroller of Currency, U.S. Dep't of Treasury</u>, 86 F.3d 1208, 1211 (D.C. Cir. 1996); <u>United States v. Kaufman</u>, 980 F. Supp. 1247, 1250 (S.D. Fla. 1997) (state court subpoena duces tecum directed to federal judge barred by doctrine of sovereign immunity); <u>Sharon Lease Oil Co. v. F.E.R.C.</u>, 691 F. Supp. 381, 383-85 (D.D.C. 1988); <u>Envtl. Enterprises, Inc. v. U.S. EPA.</u>, 664 F. Supp. 585, 586 (D.D.C. 1987).

Here, enforcement of the subpoena directed to Probation Officer Wessell is an action against the United States barred by sovereign immunity. The subpoena is directed to Probation Officer Wessell in her capacity as a Probation Officer for the United States District Court for the Northern District of Ohio. Thus, the effect and operation of the subpoena and order is against the United States District Court for the Northern District of Ohio, the judicial branch of the United States government. Enforcement of the subpoena or order would interfere with the public administration of the federal courts and compel an entity of the federal government to act in a manner different from that in which it would ordinarily choose to exercise its public function. <u>Boron Oil Co.</u>, 873 F.2d at 70-71 (citing <u>Dugan v. Rank</u>, 372 U.S. 609, 620 (1963)).

Additionally, the Supremacy Clause of the United States Constitution would also bar a state court from ordering production of documents from a federal officer, if such production would violate the duty the officer owes in the performance of his or her job. See <u>Bosaw v. National Treasury Employees' Union</u>, 887 F.Supp. 1199, 1217 (S.D.Ind.1995); cf. <u>Kaufman</u>, 980 F.Supp. at 1251 (subpoena issued by state court judge against federal judge on behalf of state bar investigative committee violated Supremacy Clause of the United States Constitution); <u>Maddox v. Williams</u>, 855 F.Supp. 406, 413-14 (D.D.C.1994) (basing rejection of argument that a Kentucky state court could require members of a United States Congressional committee to furnish documents in their possession to a party to a civil state law suit in Kentucky state court on the Supremacy Clause of the United States Constitution.) Here, a state court subpoena orders a federal agency or official to act in some way that the agency or official is not obligated to act. The Federal Court's subpoena regulations prohibit court personnel, including probation officers, from providing testimony, or making any disclosures or comments about official matters, absent the express authorization. <u>See</u> Government Exhibit 1 and the regulations can be found at www.uscourts.gov/RulesAndPolicies/SubpoenaRegulations.aspx.

exhibit U p. 6

### Court Regulations Prohibit Disclosure

Federal probation officers are appointed by the U.S. District Court to supervise criminal defendants placed on probation and supervised release. 18 U.S.C. §§ 3601, 3602. Their responsibilities include preparing presentence reports, keeping informed as to conduct of a probationer or person under supervision and reporting information to the sentencing court and the Administrative Office of the United States Courts, pursuant to 18 U.S.C. §§ 3552, 3602(2) and (5).

Pursuant to 18 U.S.C. § 3602, probation officers serve as subordinate agents of the district courts employing them. Since probation information is prepared for and on behalf of the District Court, disclosure of such confidential material falls under the district court's authority. Id.; cf United States v. Dingle, 546 F.2d 1378, 1381 (10th Cir. 1976) ("The probation service is an arm of the court .... A presentence report is prepared exclusively at the discretion of and for the benefit of the court. It is essential that the confidentiality of such a report be protected . . ."). Only the district court may authorize release of federal probation office records.

### Failure to Comply with Federal Court Rule

As indicated, the Federal Judicial Conference has established rules governing the disclosure of federal judicial information and testimony. See Federal Court's subpoena regulations attached as Government Exhibit 1; see also **www.uscourts.gov/RulesAndPolicies/SubpoenaRegulations.aspx.** As provided in Section 5(a) of the Subpoena Regulations, Probation Officer Wessell "may not provide testimony or produce records in legal proceedings..." unless she receives express authorization from her "determining officer." Id.; see also section 7. The Supreme Court has long recognized the authority of agency heads to restrict the testimony of their subordinates through regulations. United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951). These regulations are commonly called "Touhy Regulations."

In the Touhy decision, the United States Supreme Court held that a subordinate federal officer could not be found in contempt of court for refusing to produce subpoenaed documents where his refusal was based on Department of Justice regulations prohibiting disclosure of nonpublic documents without authorization from the Attorney General. Id. at 468. The Court rejected the contention that the regulation invaded the authority of the Courts to determine the admissibility of evidence. Id. at 468-469.

In this case there exists a procedure for obtaining testimony and the production of information from United States Probation Officers. Specifically, the party seeking the information must make a written request containing an explanation of the nature of the testimony or records sought, the relevance of the testimony or records sought to the legal proceedings, and the reasons why the testimony or records sought, or the information contained therein, are not readily available

3


exHiBiT    U - p.)

from other sources or by other means.  Subpoena Regulations, Section 6(a).  This request must be submitted at least fifteen (15) days in advance.  Id. at Sec. 6(b).  The "determining officer" then determines whether or not to permit the testimony and/or production.

In the instant matter, you have failed to obtain prior authorization for Officer Wessell to testify and produce court information.  Consequently, she is prohibited from providing testimony or disclosing information pursuant to the subpoena.  Based on the foregoing, we respectfully ask that you withdraw the subpoena and, if you desire the testimony of Probation Officer Wessell, comply with the Subpoena Regulations by submitting a proper request.  Please note that Probation Officer Wessell cannot attend the trial unless and until authorization is obtained.

If you have any questions or this office can be of further assistance, please do not hesitate to contact me.

Sincerely,

David A. Ruiz
Assistant United States Attorney
(216) 622-3718


cc:   Greg Johnson
      Chief U.S. Pretrial Services & Probation Officer

      Sigmund R. Adams
      Assistant General Counsel
      Administrative Office of the U.S. Courts

      Chambers of the Honorable Daniel Gaul

4

exhibit  U - 0.6  /en/