**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CARTER W. PAGE, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | )   Civil Action No. 20-3460 (KBJ) |
| | ) |
| JAMES COMEY, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT LISA PAGE'S**
**<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION ................................................................................................................. 1

ALLEGATIONS IN THE COMPLAINT ............................................................................ 2

I.      First FISA Application................................................................................................ 3

II.     Second FISA Application ........................................................................................... 3

III.    Third FISA Application .............................................................................................. 4

IV.     Fourth FISA Application ............................................................................................ 4

V.      Allegations Relating to Media Leaks........................................................................ 5

VI.     Allegations Mentioning Ms. Page............................................................................. 5

ARGUMENT ....................................................................................................................... 7

I.      The Complaint Fails to Allege Any Actionable Conduct by Ms. Page ............................ 8

        A.      None of the Conduct Attributed to Ms. Page Constitutes a Violation of FISA ...... 8

        B.      Plaintiff Does Not Allege That Ms. Page Personally Participated in a Violation
                of His Fourth Amendment Rights............................................................................ 13

        C.      Plaintiff May Not Fill the Gaps in His Claims Against Ms. Page with
                Indiscriminate Group Pleading ............................................................................... 14

II.     All of Plaintiff's Claims Against Ms. Page Must Be Dismissed as Time-
        Barred........................................................................................................................... 14

III.    The Court Should Decline to Extend *Bivens* to This New Context.................................. 15

IV.     Ms. Page Is Entitled to Qualified Immunity on Plaintiff's Claims................................... 17

CONCLUSION..................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Haramain Islamic Found., Inc. v. Obama*,
   705 F.3d 845 (9th Cir. 2012) ................................................................................8

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011) .............................................................................................18

*\*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................13

*Attkisson v. Holder*,
   No. 17-cv-364, 2017 WL 5013230 (E.D. Va. Nov. 1, 2017) ...............................10

*Banneker Ventures, LLC v. Graham*,
   798 F.3d 1119 (D.C. Cir. 2015) ...........................................................................13

*Berry v. Funk*,
   146 F.3d 1003 (D.C. Cir. 1998) ...........................................................................17

*Brunoehler v. Tarwater*,
   743 F. App'x 740 (9th Cir. 2018) .........................................................................17

*\*Corsi v. Mueller*,
   422 F. Supp. 3d 51 (D.D.C. 2019) .......................................................................17

*Doe v. Dep't of Justice*,
   753 F.2d 1092 (D.C. Cir. 1985) ...........................................................................15

*\*Fazaga v. FBI*,
   965 F.3d 1015 (9th Cir. 2020) .............................................................................18

*Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*,
   545 U.S. 409 (2005) .............................................................................................15

*Greenpeace, Inc. v. Dow Chem. Co.*,
   97 A.3d 1053 (D.C. 2014) ....................................................................................15

*Hernandez v. Mesa*,
   140 S. Ct. 735 (2020) ....................................................................................15, 16

*\*Kareem v. Haspel*,
   986 F.3d 859 (D.C. Cir. 2021) .............................................................................11

ii

Page(s)

**Cases cont.**

*Kelley v. FBI,*
    67 F. Supp. 3d 240 (D.D.C. 2014) ..........................................................................17

*Mead v. Holder,*
    766 F. Supp. 2d 16 (D.D.C. 2011) ..........................................................................12

*In re Nat'l Sec. Agency Telecomm. Recs. Litig.,*
    564 F. Supp. 2d 1109 (N.D. Cal. 2008) ..................................................................18

*Ortiz-Contreras v. Holder,*
    126 F. Supp. 3d 127 (D.D.C. 2015) ........................................................................13

*Simpkins v. D.C. Gov't,*
    108 F.3d 366 (D.C. Cir. 1997) ................................................................................13

*Tooley v. Napolitano,*
    586 F.3d 1006 (D.C. Cir. 2009) ..............................................................................11

*Toumazou v. Turkish Republic of N. Cyprus,*
    71 F. Supp. 3d 7 (D.D.C. 2014) ..............................................................................14

*\*United States v. Koyomejian,*
    946 F.2d 1450 (9th Cir. 1991) ...........................................................................9–10

*\*Ziglar v. Abbasi,*
    137 S. Ct. 1843 (2017) ..............................................................................13, 16, 17

**Statutes**

18 U.S.C. § 2511(1)(a) ......................................................................................................16

18 U.S.C. § 2516 ...............................................................................................................16

18 U.S.C. § 2520(a) ..........................................................................................................16

18 U.S.C. § 2520(f) ...........................................................................................................16

18 U.S.C. § 2707(a) ..........................................................................................................16

18 U.S.C. § 2707(d) ..........................................................................................................16

18 U.S.C. § 2707(g) ..........................................................................................................16

18 U.S.C. § 2712 ...............................................................................................................16

iii

**Page(s)**

**Statutes cont.**

*50 U.S.C. § 1809(a)(1) ...................................................................................................8

*50 U.S.C. § 1809(a)(2) ........................................................................................9, 12, 13

50 U.S.C. § 1809(b) ...................................................................................................18

50 U.S.C. § 1810 .........................................................................................................8

D.C. Code 12-301(a)(4) ..............................................................................................15

**Other Authorities**

Ellen Nakashima, Devlin Barrett & Adam Entous, *FBI obtained FISA warrant to monitor former Trump adviser Carter Page*, Wash. Post (Apr. 11, 2017), https://www.washingtonpost.com/world/national-security/fbi-obtained-fisa-warrant-to-monitor-former-trump-adviser-carter-page/2017/04/11/620192ea-1e0e-11e7-ad74-3a742a6e93a7_story.html ......................................................12

Matt Apuzzo, Michael S. Schmidt, Adam Goldman & Eric Lichtblau, *Comey Tried to Shield the F.B.I. from Politics.  Then He Shaped an Election*, N.Y. Times (Apr. 22, 2017), https://www.nytimes.com/2017/04/22/us/politics/james-comey-election.html ...........................................................12

## INTRODUCTION

Plaintiff Carter Page brings FISA and *Bivens*/Fourth Amendment claims against eight former FBI officials, whom the complaint lumps together as the "individual Defendants," arising out of the FBI's investigation into the possibility of Russian interference in the 2016 presidential election and its electronic surveillance of Plaintiff under the Foreign Intelligence Surveillance Act ("FISA").  Defendant Lisa Page, then an FBI lawyer serving as counsel to Deputy Director Andrew McCabe, is among those eight named individual defendants.  However, the 59-page, 263-paragraph Amended Complaint barely mentions Ms. Page, and the handful of instances in which it does mention her do not come close to alleging any conduct that could possibly be actionable under *Bivens*, the Fourth Amendment, or the civil FISA provision.  All the complaint alleges about Ms. Page is that she was present at a couple of meetings relating to the Russia investigation and that she received several text messages from a colleague.  Under well-settled pleading standards, these allegations fall far short of the threshold to state an actionable claim.

The Court should dismiss the claims against Ms. Page on the ground that they plead no conduct by her that violates any law, but they fail on multiple other grounds as well.  First, each claim is time-barred under the District of Columbia's one-year statute of limitations for libel, slander, and invasion of privacy, the causes of action most analogous to the claims against Ms. Page.  Second, the *Bivens* cause of action is not available in this context, and the Court should decline to extend it, including because Congress has comprehensively legislated in this area and FISA itself provides alternative remedies.  Finally, even if Plaintiff's claims against Ms. Page were sufficiently pleaded, Ms. Page would be entitled to qualified immunity.  Plaintiff has not alleged that Ms. Page engaged in any violation of his rights at all, let alone rights that were clearly established in 2016 and 2017.

## ALLEGATIONS IN THE COMPLAINT[1]

Plaintiff Carter Page, a former foreign policy advisor to Donald Trump's 2016 campaign, alleges that the government unlawfully surveilled him based on four FISA warrants he claims were illegally obtained.  Am. Compl. ¶¶ 18, 121.  Plaintiff alleges that he was "targeted" for this unlawful surveillance because of his association with the Trump campaign.  *Id.* ¶ 2.  Between October 2016 and June 2017, the FBI prepared and submitted an initial application and three renewals, and the Foreign Intelligence Surveillance Court ("FISC") granted each.  *Id.* ¶ 3.  According to Plaintiff, a group of employees he identifies as the "individual Defendants" misled the FISC to obtain those warrants in violation of FISA and Plaintiff's Fourth Amendment rights.  *See, e.g.*, *id.* ¶ 17.

The Complaint asserts five causes of action against "All Individual Defendants," which is defined to include Ms. Page.  In Counts 1-4, Plaintiff alleges four violations of FISA, each predicated on one of the four FISA applications.  *Id.* ¶¶ 216-34.  In Count 6, brought under the implied cause of action first recognized in *Bivens*, Plaintiff seeks damages from each individual defendant for violating his Fourth Amendment rights by allegedly making "false and misleading statements" in those same applications.  *Id.* ¶¶ 243-50.[2]

The sections that follow summarize Plaintiff's allegations regarding the four FISA applications and purported media leaks (Sections I-V).  They also provide a list of all allegations in the complaint that mention Ms. Page (Section VI).

---

[1] For purposes of this motion, Ms. Page assumes that all allegations in the complaint are true.  This is not the case, however, and Ms. Page will vigorously contest many of these allegations should the claims against her proceed.

[2] In addition, the complaint contains claims against the United States under the Federal Tort Claims Act and DOJ and FBI under the Privacy Act, which are not relevant to Ms. Page.  *Id.* ¶¶ 235-42 (Count 5), ¶¶ 251-63 (Counts 7 and 8).

## I.      First FISA Application

Shortly after the initiation of the Russia investigation, also known as "Crossfire Hurricane," the FBI prepared the first application to conduct electronic surveillance of Plaintiff under FISA. *Id*. ¶¶ 6, 76. This application was submitted to the FISC on October 21, 2016. *Id*. ¶ 76. Plaintiff alleges that the application relied on inaccurate information provided by Christopher Steele, a confidential source who had provided the FBI with six reports alleging that Plaintiff had improper or unlawful communications with "two sanctioned Russians with close ties to Russian President Vladimir Putin." *Id*. ¶¶ 7, 62. Plaintiff alleges that Steele was "politically motivated" and that the FBI failed to conduct "any meaningful investigation" of Steele's allegations. *Id*. ¶¶ 62, 63.

The complaint's sole allegation mentioning Ms. Page in connection with the first FISA application is that, "[i]n August 2016, then-Associate Attorney General Bruce Ohr, whose wife worked for political opposition research firm Fusion GPS, briefed Steele's accusations regarding [Plaintiff] to Andrew McCabe and his counsel, Lisa Page." *Id*. ¶ 61. This briefing occurred prior to any of the other alleged conduct, including Steele's provision of the six reports to the FBI "[o]n or about September 19, 2016." *Id*. ¶ 62; *see also id*. ¶¶ 64-76.

## II.     Second FISA Application

The application for the second FISA warrant was submitted on January 12, 2017. *Id*. ¶ 92. The complaint alleges that this application, like the first one, was "false and misleading." *Id*. ¶ 98; *see also id*. ¶¶ 92-95. According to the complaint, on November 17, 2016, the FBI terminated Steele's status as a source after learning that he had violated protocol by providing information to the press. *Id*. ¶¶ 82, 84-85. On November 21, 2016, "DOJ official Bruce Ohr met with Lisa Page, Peter Strzok, Joe Pientka, and other FBI officials to discuss 'Steele's background and reliability as a source and to identify his source network.'" *Id*. ¶ 87. According to the complaint, "Ohr

advised them that Steele 'was desperate that Donald Trump not get elected and was passionate about him not becoming the U.S. president.'" *Id.* In addition, Ohr allegedly said that "Steele had been hired by 'a lawyer who does opposition research' and the information about Trump and Russia was being relayed to Hillary Clinton's presidential campaign." *Id.* The complaint does not contain any other allegations regarding Ms. Page in connection with the second FISA application.

## III.    Third FISA Application

According to the complaint, surveillance conducted under the first and second FISA warrants revealed no evidence that Plaintiff was acting as a foreign agent of Russia. *Id.* ¶ 104. The application for the third FISA warrant was submitted on April 7, 2017. *Id.* ¶ 103. The complaint alleges that this application, like the first two, was "false and misleading." *Id.* ¶ 106. Specifically, the complaint alleges that "[t]he FBI" received information that "contradicted or undermined the allegations" about Plaintiff in the first two FISA applications, but it did not disclose that information in the third application. *Id.* ¶¶ 101-02. *The complaint does not contain any allegations regarding Ms. Page in connection with the third FISA application.*

## IV.    Fourth FISA Application

The application for the fourth FISA warrant was submitted on June 29, 2017. *Id.* ¶ 114. The complaint alleges that this application, like the others, was "false and misleading," *id.* ¶ 119— in particular, because it "did not advise the FISC that [Plaintiff] had been an operational contact for the CIA," *see id.* ¶ 115. The complaint further alleges that the FBI Supervisory Special Agent who signed the application relied on an altered e-mail provided by an attorney with the National Security and Cyber Law Branch of the FBI's Office of General Counsel, which purported to state that Plaintiff was "not a source" for the CIA. *Id.* ¶¶ 112-13. *The complaint does not contain any allegations regarding Ms. Page in connection with the fourth FISA application.*

## V.      Allegations Relating to Media Leaks

According to the complaint, Ms. Page received text messages from FBI agent Peter Strzok on April 10, 12, and 22, 2017 (after the submission of the third FISA application, but before the submission of the fourth). One message, from April 10, referenced a "media leak strategy" and stated "I had literally just gone to find this phone to tell you I want to talk to you about media leak strategy with DOJ before you go." *Id.* ¶ 183. The second message, from April 12, allegedly informed Ms. Page that "two media articles were coming out about her 'namesake' Carter Page and one was worse than the other." *Id.* ¶ 185. The third message, from April 22, allegedly "stat[ed] that the 'article is out!'" and "congratulat[ed] her on a job well done, saying 'Well done, Page.'" *Id.* ¶ 186. After describing these three messages, the complaint alleges on "information and belief" that "Strzok and Lisa Page collaborated to disclose protected information regarding [Plaintiff] to the media and sought and obtained approval to do so from McCabe." *Id.* ¶ 188.

## VI.     Allegations Mentioning Ms. Page

Aside from a paragraph in the "Parties" section of the complaint merely identifying Ms. Page as an individual defendant, the allegations mentioning Ms. Page are, in their entirety, as follows:

1.   Paragraph 61: "In August 2016, then-Associate Attorney General Bruce Ohr, whose wife worked for political opposition research firm Fusion GPS, briefed Steele's accusations regarding [Plaintiff] to Andrew McCabe and his counsel, Lisa Page."

2.   Paragraph 87: "On November 21, 2016, DOJ official Bruce Ohr met with Lisa Page, Peter Strzok, Joe Pientka, and other FBI officials to discuss 'Steele's background and reliability as a source and to identify his source network.'"

3. Paragraphs 126-27: "[Plaintiff] subsequently wrote to Comey on September 25, 2016 denying that he participated in any collaboration with Russians on behalf of the Trump campaign. He also referred to his long-term interactions with the CIA and FBI. [Plaintiff's] letter to Comey was received and shared with the Crossfire Hurricane team. 'At a minimum, the letter provides us a pretext to interview,' Peter Strzok wrote to Lisa Page on Sept. 26, 2016."

4. Paragraph 134: "On October 11, 2016, Strzok messaged Lisa Page that the FISA application to surveil [Plaintiff] could not gain approval at DOJ without a call from McCabe."

5. Paragraph 141: "In October 2016, as the FBI Crossfire Hurricane team was attempting to complete the application for the First FISA Warrant, DOJ attorney Stuart Evans expressed reluctance to proceed with the application. Evans wanted more scrutiny of Steele's motives, and believed that before pursuing a surveillance warrant against someone associated with a presidential campaign, leadership of both the FBI and DOJ should sign off on the request. In messages to Lisa Page, he said, 'Currently fighting with Stu for this fisa' and 'Hey-The FISA will probably not go forward without a call from [McCabe].'"

6. Paragraph 161: "Lisa Page was an FBI attorney and was Special Counsel to Andrew McCabe. She facilitated the leaks of information about the FBI's FISA warrants regarding [Plaintiff]."

7. Paragraph 183: "On Monday, April 10, 2017, Peter Strzok texted Lisa Page to discuss a 'media leak strategy,' stating 'I had literally just gone to find this phone to tell you I want to talk to you about media leak strategy with DOJ before you go.'"

8. Paragraph 185: "On Wednesday, April 12, 2017, Peter Strzok texted Lisa Page to warn her that two media articles were coming out about her 'namesake' Carter Page and one was worse than the other."

9. Paragraphs 186-87: "On Saturday, April 22, 2017, Peter Strzok sent another text to Lisa Page stating that the 'article is out!' congratulating her on a job well done, saying 'Well done, Page.'  That same day the New York Times published a lengthy article entitled 'Comey Tried to Shield the F.B.I. From Politics.  Then He Shaped an Election.'"

10. Paragraph 188: "On information and belief, Strzok and Lisa Page collaborated to disclose protected information regarding [Plaintiff] to the media and sought and obtained approval to do so from McCabe."

11. Paragraph 189: "On information and belief, Defendants, known and unknown to [Plaintiff], but including but not limited to, Comey, McCabe, Strzok, and Page, leaked information and records concerning [Plaintiff] that were protected from disclosure under the FISA and the Privacy Act to media outlets, including the New York Times, the Washington Post, and Yahoo News, among others."

## ARGUMENT

The complaint does not allege any actionable conduct by Ms. Page.  Instead, it indiscriminately lumps her together with other defendants, speculates on "information and belief" that she participated in leaking information to the media, and seeks to recast routine activities like attending meetings and receiving messages from colleagues as violations of FISA and Plaintiff's Fourth Amendment rights.  These allegations simply do not state a claim under either FISA or the *Bivens* cause of action.  Moreover, the claims are time-barred, the extension of *Bivens* into this new context is not warranted, and Ms. Page would be entitled to qualified immunity on Plaintiff's

claims even if they were sufficiently pleaded.  For all of these reasons, the claims against Ms. Page must be dismissed.

## I.    The Complaint Fails to Allege Any Actionable Conduct by Ms. Page

Plaintiff fails to state a claim against Ms. Page under either FISA or *Bivens*.  As detailed in Section VI above, the complaint contains only 11 allegations that mention Ms. Page.  These allegations fall into two categories: (1) allegations that simply describe briefings and communications Ms. Page received from DOJ and FBI colleagues, without alleging that she took any affirmative action of her own; and (2) conclusory allegations and speculation on "information and belief" that Ms. Page was involved in leaking information to the media.  Collectively, these allegations fall far short of the plausibility threshold set by *Twombly* and *Iqbal*.  To the extent Plaintiff premises his claims against Ms. Page on allegations that do not mention her specifically— including allegations that "the FBI," "the government," or "the individual Defendants" engaged in actionable conduct—these allegations constitute impermissible group pleading and cannot fill the gaps in Plaintiff's otherwise deficient claims.

### A.   None of the Conduct Attributed to Ms. Page Constitutes a Violation of FISA

To state a FISA claim against Ms. Page, Plaintiff must plead that she committed a violation of Section 1809, the section providing for criminal liability under the statute.  50 U.S.C. § 1810; *see Al-Haramain Islamic Found., Inc. v. Obama*, 705 F.3d 845, 851 (9th Cir. 2012).  Liability under Section 1809 is available in two situations: (1) when a person intentionally "engages in electronic surveillance," unless authorized by other provisions of FISA, the Wiretap Act, or the Stored Communications Act, 50 U.S.C. § 1809(a)(1); and (2) when a person intentionally "discloses or uses information" that the person knew or had reason to know was obtained through

8

electronic surveillance that was not properly authorized, *id.* § 1809(a)(2).  The complaint fails to state a claim against Ms. Page under either theory.

Indeed, eight of the eleven allegations mentioning Ms. Page describe no active conduct on her part at all, let alone conduct that is criminally actionable under FISA.  These allegations simply describe her receipt of written and oral updates from colleagues; they do not allege that she responded, took any subsequent action, or participated in any way other than receiving the information.  Am. Compl. ¶¶ 61, 87, 126-27, 134, 141, 183, 185, 186-87.  This alleged conduct simply does not constitute "engag[ing] in electronic surveillance" or "disclos[ing] or us[ing] information" obtained through electronic surveillance under FISA.

The remaining allegations—all of which are generalized and conclusory in nature—relate to Ms. Page's alleged participation in "media leaks."  *Id.* ¶¶ 161, 188, 189.  For the reasons explained below, these allegations fail to state a claim as well, even under the most strained interpretation of FISA's "disclose[] or use[]" provision.

Regarding the first FISA application, the sole allegation relating to Ms. Page is that Associate Attorney General Bruce Ohr "briefed Steele's accusations regarding [Plaintiff] to Andrew McCabe and his counsel, Lisa Page."  *Id.* ¶ 61.  According to the complaint, this briefing occurred prior to any of the other relevant conduct—including Steele's provision of the "six reports" regarding Plaintiff to the FBI, *id.* ¶ 62—and the complaint does not allege that Ms. Page participated in the preparation or submission of the first FISA application in any way.  Nor does it allege that she participated in subsequent surveillance pursuant to the FISA warrant.  Because merely being present during a briefing by Mr. Ohr prior to any FISA surveillance taking place does not plausibly indicate that Ms. Page "engage[d] in electronic surveillance" or "disclose[d] or use[d] information" obtained through such surveillance, the claim must be dismissed.  *See United*

9

*States v. Koyomejian*, 946 F.2d 1450, 1459 n.16 (9th Cir. 1991) (explaining that the phrase "engage in electronic surveillance" "is best understood as subjecting to criminal liability anyone *who performs electronic surveillance*" without statutory authorization) (emphasis added); *Attkisson v. Holder*, No. 17-cv-364, 2017 WL 5013230, at *12 (E.D. Va. Nov. 1, 2017) (dismissing FISA claims where the complaint failed to allege that the defendant "personally engaged in the alleged surveillance").

Regarding the second FISA application, the only allegation relating to Ms. Page is that "DOJ official Bruce Ohr met with Lisa Page, Peter Strzok, Joe Pientka, and other FBI officials to discuss 'Steele's background and reliability as a source and to identify his source network.'"  Am. Compl. ¶ 87.  The complaint does not allege that Ms. Page participated in the preparation or submission of the second FISA application, or in subsequent surveillance, in any way.  Because merely being present at a meeting with at least five others does not plausibly indicate that Ms. Page "engage[d] in electronic surveillance" or "disclose[d] or use[d] information" obtained through such surveillance, the claim must be dismissed.

Regarding the third and fourth FISA applications, the complaint contains no allegations relating to Ms. Page at all.  Thus, Plaintiff has utterly failed to plead any facts to the effect that Ms. Page committed a criminal violation by "engag[ing] in [illegal] electronic surveillance" or "disclos[ing] or us[ing] information" obtained through such surveillance in connection with those warrants.

The only remaining question is whether the allegations regarding media leaks somehow could be deemed to state a viable theory that Ms. Page "disclose[d] or use[d] information" obtained through electronic surveillance, which Ms. Page knew or should have known was not properly authorized.  They do not.  The bald assertions in Paragraphs 161, 188, and 189—that Ms. Page

10

"facilitated" leaks of information about the warrants; "collaborated" to disclose protected information regarding Plaintiff to the media; and, along with an unspecified number of "known and unknown" defendants, leaked information and records concerning Plaintiff to media outlets—are conclusory allegations entitled to no weight.  Notably, two of the three assertions are alleged on "information and belief," and the third (Plaintiff's allegation that Ms. Page "facilitated" the leaks) does not reference or rely on a single underlying fact.   While "on information and belief" pleading is not categorically prohibited, such allegations must "be accompanied by a statement of the facts upon which the allegations are based." *Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994)); *see also Tooley v. Napolitano*, 586 F.3d 1006, 1007-08, 1010 (D.C. Cir. 2009) (dismissing complaint where the alleged facts did not plausibly support the inference that the government had surveilled plaintiff, despite plaintiff's allegation "on information and belief" that at least nine phones connected to him had been illegally wiretapped).

Plaintiff provides no such "statement of the facts" to support his conclusory allegations.  If such facts existed, surely Plaintiff would have included them in the section of the complaint titled "Individual Defendants' Actions, Omissions and Misrepresentations," which lists the conduct attributable to each individual defendant.  This section consists of only two sentences for Ms. Page: "Lisa Page was an FBI attorney and was Special Counsel to Andrew McCabe.  She facilitated the leaks of information about the FBI's FISA warrants regarding [Plaintiff]."  Am. Compl. ¶ 161.  The first sentence is neutral; the second sentence, if anything, contradicts Plaintiff's theory that, by leaking information, Ms. Page "disclose[d] or use[d]" information obtained through surveillance.  To the contrary, it avers that the leaked information was "about the FBI's FISA warrants," not about information learned through surveillance conducted pursuant to the warrants.

11

Moreover, the Court should not accept "unwarranted deductions of fact or unreasonable inferences" as true.  *Mead v. Holder*, 766 F. Supp. 2d 16, 38 n.13 (D.D.C. 2011), *aff'd sub nom. Seven-Sky v. Holder*, 661 F.3d 1 (D.C. Cir. 2011) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).  For example, while Paragraph 186 alleges that "[o]n Saturday, April 22, 2017, Peter Strzok sent another text to Lisa Page stating that the 'article is out!' congratulating her on a job well done, saying 'Well done, Page,'" the notion that Mr. Strzok was "congratulating" Ms. Page for some unspecified action that led to publication of the article is rank speculation.  Like the other allegations regarding text messages from Mr. Strzok to Ms. Page, Paragraph 186 fails to create a plausible inference that Ms. Page "disclose[d] or use[d]" any information.

Finally, Plaintiff has failed to plausibly plead that Ms. Page disclosed or used such information while "knowing or having reason to know that the information was obtained through electronic surveillance not authorized by this chapter."  50 U.S.C. § 1809(a)(2).  The complaint is at least three steps removed from what would be necessary to sustain a claim: there are simply no well-pleaded allegations in the complaint that Ms. Page disclosed *any* information to the media at all, let alone information "obtained through electronic surveillance" of Plaintiff, much less information that she knew was obtained through surveillance that was not properly authorized.  Indeed, even if the complaint adequately pleaded that Ms. Page contributed to either of the April 2017 articles—which it does not—there is no content in either article that conveys or reflects any information "obtained through electronic surveillance" of Plaintiff.[3]

---

[3] Ellen Nakashima, Devlin Barrett & Adam Entous, *FBI obtained FISA warrant to monitor former Trump adviser Carter Page*, Wash. Post (Apr. 11, 2017), https://www.washingtonpost.com/world/national-security/fbi-obtained-fisa-warrant-to-monitor-former-trump-adviser-carter-page/2017/04/11/620192ea-1e0e-11e7-ad74-3a742a6e93a7_story.html; Matt Apuzzo, Michael S. Schmidt, Adam Goldman & Eric Lichtblau, *Comey Tried to Shield the F.B.I. from Politics.  Then He Shaped an Election*, N.Y. Times (Apr. 22, 2017), https://www.nytimes.com/2017/04/22/us/politics/james-comey-election.html.  The Court may consider the entirety of these articles, which

In the absence of any facts that could satisfy the requirements of Section 1809(a)(2), Plaintiff's theory of "media leaks" fails to state a FISA claim as to Ms. Page.

**B.  Plaintiff Does Not Allege That Ms. Page Personally Participated in a Violation of His Fourth Amendment Rights**

With respect to the *Bivens* claims, Plaintiff must plausibly plead, among other things, that Ms. Page *personally participated* in the alleged violations of his Fourth Amendment rights by "ma[king] or caus[ing] to be made false and misleading statements in the applications for the FISA Warrants against [Plaintiff]."  Am. Compl. ¶ 245.  Not a single allegation in the complaint supports this theory.  "[A] *Bivens* claim is brought against the individual officer for his or her own acts, not the acts of others."  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017).  Thus, "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (emphasis added); *see also Simpkins v. D.C. Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997) ("The complaint must at least allege that the defendant federal official was personally involved in the illegal conduct."); *Ortiz-Contreras v. Holder*, 126 F. Supp. 3d 127, 130 (D.D.C. 2015) (dismissing action against individual defendants in part because the complaint "alleged no facts that would support a claim that any of these Defendants were individually involved in the constitutional violations Plaintiff alleges").

While the complaint alleges that Ms. Page received information related to certain FISA applications, and makes a half-hearted attempt to allege that she "facilitated" leaking of unspecified information to the press, there is not even the slightest suggestion that she had a role in obtaining or executing the warrants.  Because Plaintiff has failed to plead that Ms. Page, through her own actions, violated his Fourth Amendment rights, the *Bivens* claim must be dismissed.

---

Plaintiff identifies and quotes from in the complaint (¶¶ 184, 187), without converting this motion into one for summary judgment.  *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015).

### C. Plaintiff May Not Fill the Gaps in His Claims Against Ms. Page with Indiscriminate Group Pleading

Plaintiff cannot save his claims against Ms. Page through conclusory, collective allegations that "the FBI," "the government," or "the individual Defendants" engaged in unlawful conduct. *See, e.g.*, Am. Compl. ¶¶ 17, 49, 52, 55-58, 121-23, 181-82, 189, 220, 224, 228, 232.  To the contrary, it is inconsistent with Federal Rule of Civil Procedure 8 to "lump[] all the defendants together" and thus deprive the court of a "factual basis to distinguish their conduct." *Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014).

Plaintiff's approach is especially improper because the sole and limited allegation against Ms. Page in the defendant-by-defendant "Individual Defendants' Actions, Omissions and Misrepresentations" section of the complaint absolves her of the conduct that is attributed to "the individual Defendants" generally.  Am. Compl. ¶¶ 124-73.  For example, the complaint alleges that "[t]he individual Defendants fabricated or intentionally disregarded critical evidence . . . in order to obtain the FISA warrants," *id.* ¶ 17, but the only action, omission, or misrepresentation by Ms. Page that Plaintiff can muster is that she "facilitated the leaks of information about the FBI's FISA warrants" to the press—alleged conduct that has nothing do with the process for obtaining the warrants.  *Id.* ¶ 161.  The Court is, of course, not required to credit facially contradictory allegations.  For purposes of the 12(b)(6) analysis, the Court should consider only the conduct that Plaintiff specifically attributes to Ms. Page.

## II.   All of Plaintiff's Claims Against Ms. Page Must Be Dismissed as Time-Barred

Even if Plaintiff's claims against Ms. Page were sufficiently pleaded, they must be dismissed as time-barred.

For both the FISA and *Bivens* claims, a one-year statute of limitations applies.  Where a federal statute does not "expressly suppl[y] a limitations period," courts "generally 'borrow' the

most closely analogous state limitations period." *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 414 (2005).  Regarding the *Bivens* claims, courts likewise look to the "gist" of the plaintiff's allegations to determine the "most analogous" cause of action under state law.  *Doe v. Dep't of Justice*, 753 F.2d 1092, 1114 (D.C. Cir. 1985).  Here, Plaintiff appears to proceed against Ms. Page solely on a theory that she engaged in improper disclosures to the media, with the last-in-time alleged conduct occurring in April 2017.  Am. Compl. ¶¶ 161, 183-89.  Thus, the most closely analogous state law claims are libel, slander, and invasion of privacy, all of which have a one-year statute of limitations under D.C. law.  *See* D.C. Code 12-301(a)(4) (libel and slander); *Greenpeace, Inc. v. Dow Chem. Co.*, 97 A.3d 1053, 1061-62 (D.C. 2014) (invasion of privacy).  Because the alleged conduct by Ms. Page occurred in April 2017— and because Plaintiff did not file suit until November 27, 2020, more than one year after those claims accrued—each of Plaintiff's five claims against Ms. Page is untimely and must be dismissed.

## III.   The Court Should Decline to Extend *Bivens* to This New Context

Plaintiff asks this Court to recognize a new type of *Bivens* claim: Fourth Amendment violations caused by false and misleading FISA applications.  As discussed, the complaint does not allege that Ms. Page played any role in the preparation or submission of these applications.  Even if it did, however, the Court should not recognize this novel form of *Bivens* claim because "special factors" counsel hesitation and the availability of alternative remedies makes a judicially created cause of action unnecessary and improper.

Before recognizing a *Bivens* claim, courts must consider whether the claim "arises in a 'new context.'"  *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).  If the context is new, courts will not extend *Bivens* to that

context if "any special factors . . . counsel hesitation."  *Id.* at 743 (brackets and quotation marks omitted); *see also Abbasi*, 137 S. Ct. at 1857.  "[S]eparation-of-powers principles" are "central" to the special-factors analysis.  *Abbasi*, 137 S. Ct. at 1857.  In addition, the existence of alternative remedies, by itself, "may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* at 1858; *see Hernandez*, 140 S. Ct. at 750 & n.12.

Here, "special factors" counsel hesitation because extending *Bivens* into this new context would raise significant separation-of-powers concerns.  As Plaintiff acknowledges, Congress has enacted multiple, detailed statutory schemes that comprehensively govern the use of electronic surveillance in circumstances like those present here.  *See* Am. Compl. ¶ 8 ("Congress and the executive branch have enacted rigorous requirements that must be met before electronic surveillance of a U.S. citizen is legally permitted.").  For example, the Wiretap Act establishes procedures for federal officials to obtain court authorization to conduct electronic surveillance, 18 U.S.C. § 2516, criminalizes unlawful surveillance, *id.* § 2511(1)(a), creates a civil cause of action, *id.* § 2520(a), and establishes a process for administrative discipline, *id.* § 2520(f).  The Stored Communications Act creates a civil cause of action to address statutory violations, *id.* §§ 2707(a), (g), and provides for the discipline of government employees who engage in misconduct, *id.* § 2707(d).  The Patriot Act includes a civil cause of action against the United States for violations of the surveillance laws.  *Id.* § 2712.  And, as Plaintiff's complaint reflects, FISA itself is available to remedy abuses of the FISA process.  Where Congress has chosen to regulate the relevant sphere through comprehensive legislative schemes, the creation of a judicial remedy under *Bivens* raises serious separation-of-powers concerns.

The existence of "alternative methods of relief" independently precludes extension of *Bivens* to this setting.  *Abbasi*, 137 S. Ct. at 1863; *see Hernandez*, 140 S. Ct. at 750 n.12 (clarifying

that the "alternative remedies" analysis is distinct from the "special factors" analysis).   "[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not."   *Abbasi*, 137 S. Ct. 1863.   Here, the statutory schemes identified above—including the civil causes of action under FISA and the Patriot Act, which Plaintiff's complaint either presently invokes or anticipates invoking (Am. Compl. ¶¶ 215, 216-234)—preclude a new cause of action under *Bivens*.

A number of courts have relied on the existence of comprehensive statutory schemes in declining to extend *Bivens* to the context of illegal electronic surveillance.   *See, e.g.*, *Corsi v. Mueller*, 422 F. Supp. 3d 51, 66-67 (D.D.C. 2019) (dismissing *Bivens* claim to hold Special Counsel Robert Mueller personally liable for alleged Fourth Amendment and FISA violations, based in part on the statutory schemes laid out in the Wiretap Act, the Stored Communications Act, and FISA), *aff'd*, 819 F. App'x 6 (D.C. Cir. 2020); *Brunoehler v. Tarwater*, 743 F. App'x 740, 742 (9th Cir. 2018) (declining to extend *Bivens* to an alleged unlawful wiretap in part because the Wiretap Act "provides for damages when agents improperly obtain wiretaps"); *Kelley v. FBI*, 67 F. Supp. 3d 240, 270 (D.D.C. 2014) (holding that, in light of alternative statutory schemes, "it would not be appropriate to imply a *Bivens* remedy" for the claim that individual defendants searched and seized plaintiffs' e-mails without their consent or judicial authorization).   The same result is warranted here.

## IV.   Ms. Page Is Entitled to Qualified Immunity on Plaintiff's Claims

Even if Plaintiff had sufficiently alleged that Ms. Page had personally participated in the violation of his Fourth Amendment rights or violated FISA, Ms. Page would be entitled to qualified immunity.[4]   Qualified immunity shields government officials from suit "unless a plaintiff pleads

---

[4] In the context of Title III, the D.C. Circuit has held that qualified immunity is not available as a defense because the statute contains a safe harbor from liability based on good-faith reliance on a court warrant or order.   *Berry v. Funk*, 146 F.3d 1003, 1013 (D.C. Cir. 1998).   Even if that reasoning applied in the FISA context, however, FISA's statutory

facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."   *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   But no court has ever ruled on when a government employee may be held personally liable for FISA and Fourth Amendment violations like those asserted here, where the alleged electronic surveillance was authorized by the FISC.   *Cf. Fazaga v. FBI*, 965 F.3d 1015, 1037-38 (9th Cir. 2020) (holding that FBI agents were entitled to qualified immunity on FISA claims arising from alleged warrantless surveillance because, "[a]s of 2006 and 2007, . . . no federal or state court decision had held that individuals generally have a reasonable expectation of privacy from surveillance in places of worship"); *see also In re Nat'l Sec. Agency Telecomm. Recs. Litig.*, 564 F. Supp. 2d 1109, 1111 (N.D. Cal. 2008) (referring to a "lack of precedents interpreting the remedial provisions of FISA").   Far from being "clearly established" in 2016 and 2017, the rights Plaintiff asserts *still* have not been recognized by a single court, and no reasonable official involved in the alleged events—let alone an official in Ms. Page's position—would have been on notice that she was engaging in a potential violation of Plaintiff's statutory or constitutional rights.

## CONCLUSION

For the reasons explained above, the Court should dismiss all of the claims against Ms. Page with prejudice.

---

defense does not extend to Ms. Page because she was an FBI lawyer rather than a "law enforcement or investigative officer."  50 U.S.C. § 1809(b).  Thus, qualified immunity remains available to her on both the FISA and *Bivens* claims.

Dated: May 18, 2021                    Respectfully submitted,

                                       /s/ Amy Jeffress
                                       Amy Jeffress (D.C. Bar No. 449258)
                                       Robert J. Katerberg (D.C. Bar No. 466325)
                                       Kaitlin Konkel (D.C. Bar No. 1021109)
                                       ARNOLD & PORTER
                                         KAYE SCHOLER LLP
                                       601 Massachusetts Avenue NW
                                       Washington, DC 20001-3743
                                       Telephone: (202) 942-5000
                                       Fax: (202) 942-5999

                                       *Counsel for Defendant Lisa Page*