# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARTER PAGE, | |
| Plaintiff, | |
| v. | No. 20-cv-3460 (KBJ) |
| JAMES COMEY, ANDREW MCCABE, KEVIN CLINESMITH, PETER STRZOK, LISA PAGE, JOE PIENTKA III, STEPHEN SOMMA, BRIAN J. AUTEN, DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION, UNITED STATES OF AMERICA, JOHN DOES 1-10, JANE DOES 1-10, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

## DEFENDANT STEPHEN SOMMA'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

Meaghan VerGow (#977165)
Andrew R. Hellman (*pro hac vice* pending)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006-4001
Telephone: (202) 383-5300
Fax: (202) 383-5414
mvergow@omm.com
andrewhellman@omm.com

*Attorneys for Stephen Somma*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................ 2

I.     THE FIRST FISA APPLICATION ...................................................................... 3

II.    THE SECOND FISA APPLICATION ............................................................... 5

III.   THE THIRD FISA APPLICATION.................................................................... 6

IV.   THE FOURTH FISA APPLICATION ............................................................... 7

V.    PLAINTIFF'S CLAIMS ...................................................................................... 7

ARGUMENT .................................................................................................................. 8

I.     ALL OF PLAINTIFF'S CLAIMS AGAINST AGENT SOMMA ARE
UNTIMELY........................................................................................................ 9

     A.    Plaintiff's *Bivens* Claim Is Untimely Under Any Conceivably Applicable
Limitations Period.................................................................................. 9

     B.    Plaintiff's FISA Claims Against Agent Somma Accrued at Least Three
Years Ago. ........................................................................................... 11

II.    A *BIVENS* CAUSE OF ACTION DOES NOT EXTEND TO THIS CONTEXT. ......... 12

III.   PLAINTIFF HAS FAILED TO STATE A VALID FISA CLAIM AGAINST
AGENT SOMMA. ............................................................................................ 12

     A.    Plaintiff Has Inadequately Alleged That Agent Somma Intentionally
Violated FISA (All Counts). ................................................................ 13

     B.    All of Agent Somma's Alleged Conduct Falls Within FISA's Safe Harbor
for Law Enforcement and Investigative Officers' Official Acts. ....................... 16

     C.    Plaintiff Has Inadequately Alleged That Agent Somma Surveilled Him
Pursuant to the Third and Fourth Warrants (Counts 3 and 4).............................. 17

IV.   PLAINTIFF HAS INADEQUATELY ALLEGED THAT HIS CLAIMED
DAMAGES ARE FAIRLY TRACEABLE TO AGENT SOMMA'S
CHALLENGED CONDUCT. ............................................................................ 18

V.    AGENT SOMMA IS ENTITLED TO QUALIFIED IMMUNITY ON ALL OF
PLAINTIFF'S CLAIMS.................................................................................... 20

CONCLUSION............................................................................................................. 23

Table of Authorities

Page(s)

**Cases**

*ACLU v. NSA*,
  493 F.3d 644 (6th Cir. 2007) ................................................................. 18

*Albright v. United States*,
  732 F.2d 181 (D.C. Cir. 1984) ............................................................... 14

\*\**Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) ......................................................................... 20, 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................. 15

*Atkisson v. Holder*,
  925 F.3d 606 (4th Cir. 2019) ............................................................... 21

*Banneker Ventures, LLC v. Graham*,
  798 F.3d 1119 (D.C. Cir. 2015) ............................................................. 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................. 14

*Berman v. Crook*,
  293 F. Supp. 3d 48 (D.D.C. 2018) ..................................................... 9, 10

*Byrne v. Clinton*,
  410 F. Supp. 3d 109 (D.D.C. 2019) ...................................................... 18

\*\**Clapper v. Amnesty Int'l, USA*,
  568 U.S. 398 (2013) ....................................................................... 19, 20

*Doe v. Dep't of Justice*,
  753 F.2d 1092 (D.C. Cir. 1985) .............................................................. 9

*Doe v. Se. Univ.*,
  732 F. Supp. 7 (D.D.C. 1990) ................................................................. 9

*Dukore v. District of Columbia*,
  799 F.3d 1137 (D.C. Cir. 2015) ............................................................ 20

\*\**Fazaga v. FBI*,
  965 F.3d 1015 (9th Cir. 2020) ................................................... 16, 21, 22

*Franks v. Delaware*,
  438 U.S. 154 (1978) ............................................................................. 16

*Gill v. Dep't of Justice*,
  No. 15-824, 2016 WL 3982450 (D.D.C. July 22, 2016) ........................ 19

*Greenpeace, Inc. v. Dow Chem. Co.*,
  97 A.3d 1053 (D.C. 2014) ...................................................................... 9

*In re Nat'l Sec. Agency Telecomm. Recs. Litig.*,
  564 F. Supp. 2d 1109 (N.D. Cal. 2008) ................................................ 21

**Table of Authorities**
(continued)

**Page(s)**

*Kelley v. FBI,*
  67 F. Supp. 3d 240 (D.D.C. 2014)..............................................................14, 15

*Lampon-Paz v. Dep't of Justice,*
  No. 16-9071, 2019 WL 2098831 (D.N.J. May 14, 2019).....................................21

*Laningham v. U.S. Navy,*
  813 F.2d 1236 (D.C. Cir. 1987).............................................................................14

*Loumiet v. United States,*
  968 F. Supp. 2d 142 (D.D.C. 2013)......................................................................10

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992)..............................................................................................18

*Messerschmidt v. Millender,*
  565 U.S. 535 (2012)..............................................................................................22

*Mitchell v. Forsyth,*
  472 U.S. 511 (1985)..............................................................................................20

*Mittleman v. United States,*
  104 F.3d 410 (D.C. Cir. 1997)................................................................................9

*Reed v. United Transp. Union,*
  488 U.S. 319 (1989)..............................................................................................11

*Rehaif v. United States,*
  139 S. Ct. 2191 (2019)..........................................................................................13

*Reichle v. Howards,*
  566 U.S. 658 (2012)..............................................................................................20

*Sewell v. Bernardin,*
  795 F.3d 337 (2d Cir. 2015) .................................................................................11

*Simon v. E. Ky. Welfare Rts. Org.,*
  426 U.S. 26 (1976)................................................................................................18

*Sparshott v. Feld Ent., Inc.,*
  311 F.3d 425 (D.C. Cir. 2002)..............................................................................11

**Sykes v. U.S. Att'y for D.C.,*
  770 F. Supp. 2d 152 (D.D.C. 2011) .......................................................................9

*United States v. Williams,*
  827 F.3d 1134 (D.C. Cir. 2016)............................................................................16

*Wallace v. Kato,*
  549 U.S. 384 (2007)..............................................................................................11

*Wikimedia Found. v. NSA/Cent. Sec. Serv.,*
  335 F. Supp. 3d 772 (D. Md. 2018).......................................................................21

**Ziglar v. Abbasi,*
  137 S. Ct. 1843 (2017)..........................................................................................12

**Table of Authorities**
(continued)

**Page(s)**

## Statutes

18 U.S.C. § 2520 ....................................................................................................... 11

18 U.S.C. § 2707 ....................................................................................................... 11

5 U.S.C. § 552a(g)(4) ............................................................................................... 14

**50 U.S.C. § 1809(a) ............................................................................................... 13

**50 U.S.C. § 1809(b) ....................................................................................... 16, 21

**50 U.S.C. § 1810 ................................................................................................... 13

## Other Authorities

Ellen Nakashima et al., *FBI Obtained FISA Warrant to Monitor Former Trump
  Advisor Carter Page*, Wash. Post (Apr. 11, 2017), http://wapo.st/2pr7kpE
  [https://perma.cc/X76V-CJRH] ............................................................... 6, 10

H.R. Conf. Rep. No. 95-1720 (1978) ...................................................................... 13

H.R. Rep. No. 95-1283 (1978) ................................................................. 13, 17, 22

# INTRODUCTION

Beginning in 2016, the Federal Bureau of Investigation ("FBI") and Department of Justice ("DOJ") investigated possible ties between individuals associated with Donald Trump's presidential campaign and Russian-sponsored efforts to interfere with the 2016 election. Defendant Stephen M. Somma is an FBI agent who worked on part of the investigation, and plaintiff Carter Page is one of the individuals who was investigated.  The FBI applied for authorization under the Foreign Intelligence Surveillance Act ("FISA") to investigate plaintiff's suspected improper ties to Russian nationals, and the Foreign Intelligence Surveillance Court ("FISC") issued four such warrants.  Plaintiff alleges improprieties in the government's pursuit of these warrants and asserts claims for damages based on the allegedly unlawful surveillance the warrants authorized.

Plaintiff brings a *Bivens* claim and four FISA claims against the individual defendants, including Agent Somma.  All five claims asserted against Agent Somma fail as a matter of law. Each is time barred, for one thing: plaintiff knew of the surveillance, believed it to be improper, and knew of Agent Somma's alleged role in it more than three years ago, the outer boundary of any limitations period applicable to plaintiff's claims.  And the claims themselves are insubstantial. Plaintiff cannot assert a *Bivens* claim, as he seeks to extend that implied cause of action to a new context that would raise grave separation-of-powers concerns, and in which an adequate alternative remedy (FISA itself) already exists.  Plaintiff's FISA claims fare no better: plaintiff fails to plausibly allege as he must that Agent Somma intended to violate FISA; he fails to allege that any of Agent Somma's conduct would fall outside a statutory safe harbor for investigative officers' acts in the course of their official duties; and as to two warrants he fails to allege that Agent Somma surveilled him at all.  Plaintiff further fails to adequately allege that his asserted injuries are fairly

traceable to Agent Somma's challenged conduct.  If the complaint itself left any doubt that plaintiff's claims are insufficiently pleaded, Agent Somma would still be entitled to qualified immunity—and with it, dismissal—on all five counts.  The claims against Agent Somma should be dismissed accordingly.

## BACKGROUND

In the interest of judicial economy, defendant Stephen M. Somma joins and incorporates by reference the generally applicable factual, statutory, and regulatory background set forth in the Motion to Dismiss and Memorandum in Support filed by Kevin Clinesmith (the "Clinesmith Brief"), Dkt. 60-1, at 2-14.  Agent Somma further summarizes plaintiff's allegations as relevant to his motion to dismiss.[1]

Agent Somma is an FBI agent who worked on part of the Crossfire Hurricane investigation, which examined possible links between individuals involved with the Trump campaign and Russian interference in the 2016 election.  Amended Complaint ("AC") ¶¶ 5, 29, 164.  Plaintiff was among the individuals investigated, and he now faults the United States, the FBI, the DOJ, and various individuals, including Agent Somma, for allegedly failing to approach their investigation of him with adequate skepticism and scrutiny of their sources, Christopher Steele in particular.  Plaintiff alleges that Agent Somma provided information that was used to obtain the warrants to surveil plaintiff.  While plaintiff does not allege that Agent Somma deliberately misrepresented any of that information, he contends that the information Agent Somma provided lacked important details or context.

---

[1] As required at this posture, this factual background is drawn from the allegations in the complaint, accepted as true, along with the documents they incorporate, though Agent Somma of course reserves his right to contest plaintiff's contentions should any of plaintiff's claims proceed.

Plaintiff's allegations are drawn substantially from a DOJ Office of the Inspector General ("OIG") report titled "Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation" (Revised Dec. 2019), *available at* https://www.justice.gov/storage/120919-examination.pdf [https://perma.cc/78UD-HAHM].[2]  OIG examined many aspects of the investigation—including the decision to open it, the investigation's reliance on Steele and other confidential sources, and the applications for the FISA warrants—for compliance with the law and DOJ and FBI policies. *See* OIG at i.  OIG specifically investigated whether "political bias or other improper considerations" influenced the investigation of plaintiff, and found none. *Id.* at iii-iv, vi. The report identified certain errors and omissions in the FISA application process and concluded that the investigators did not satisfy FBI policy to "ensure that all factual statements in a FISA application are 'scrupulously accurate.'" *Id.* at viii.  But OIG found no evidence that these errors involved intentional misconduct; rather, OIG concluded that FBI agents were unaware of certain procedures to ensure accuracy and completeness and that there was inadequate supervision over the agents' judgments about what information had to be provided. *Id.* at xiii-xiv.

## I.     THE FIRST FISA APPLICATION

Plaintiff alleges that in August 2016, Agent Somma contacted the FBI's Office of the General Counsel to inquire about applying for a FISA warrant to conduct electronic surveillance of plaintiff, and the Office requested more information to establish the necessary probable cause. AC ¶¶ 165-66.  The next month, Steele gave the FBI information suggesting troubling links between plaintiff and Russia, including "improper or unlawful communications or activities between [plaintiff] and two sanctioned Russians with close ties to Russian President Vladimir

---

[2] This motion cites the report as "OIG at __."  The OIG report refers to Agent Somma as "Case Agent 1."  AC ¶ 164. As the Clinesmith Brief explains, Dkt. 60-1, at 8 n.2, the complaint relies on the report extensively, frequently verbatim, and incorporates it by reference, so the Court may consider the report in full without converting this motion into one for summary judgment. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015).

Putin." *Id.* ¶ 62.  Agent Somma provided this information to DOJ attorneys, who began work on a FISA application based on probable cause derived in part through the Steele information.  *Id.* ¶¶ 11, 166.

Plaintiff alleges that Agent Somma, in responding to the drafting attorneys' questions as they prepared the first warrant, gave answers that in two instances were inadequate.  In the first, a DOJ attorney asked Agent Somma whether plaintiff had been a "source" for the CIA.  *Id.* ¶¶ 68, 168; OIG at 157.  Drawing on his memory of information the CIA had provided to the Crossfire Hurricane team, Agent Somma responded that plaintiff had met with the CIA in Moscow but characterized the contact as "dated" and arguably "outside scope," though he offered to get the precise language the CIA had used.  AC ¶¶ 59, 167-68; OIG at 157.  Plaintiff alleges that Agent Somma's response was "incomplete" and "inaccurate," since the CIA had told the Crossfire Hurricane team that plaintiff was an "operational contact" from 2008 to 2013.  AC ¶ 68.

Second, in October, another DOJ attorney working on the FISA application asked Agent Somma about Steele's political affiliations and campaign contributions.  *Id.* ¶¶ 73, 170.  Plaintiff asserts that Agent Somma did not completely answer the question in responding "that Steele was most likely a foreign national and therefore unable to contribute to either campaign."  *Id.* ¶ 170.  The DOJ attorney followed up and got a further response, *viz.*, that the FBI "assumed Steele had been paid to develop political opposition research."  *Id.*  That response prompted further scrutiny of the warrant application by DOJ (though plaintiff alleges it was still inadequate).  OIG at 136-38; AC ¶¶ 73-74.

The FBI filed the first warrant application with the FISC on October 21, 2016.  *Id.* ¶ 76.  Plaintiff alleges that the application was misleading, because—while it included a footnote explaining that an "identified U.S. person" had hired Steele for the "likely" purpose of "looking

for information that could be used to discredit [Donald Trump's] campaign"—it did not identify the precise source and path of funds used to pay Steele, did not disclose plaintiff's alleged prior status as an "operational contact" for the CIA, and did not warn the court of possible false reports of ties between Russian individuals and U.S. citizens. *Id.* ¶¶ 74-76. The FISC ultimately issued the FISA warrant. *Id.* ¶ 86.

## II.   THE SECOND FISA APPLICATION

In November 2016, the FBI closed Steele as a source. *Id.* ¶ 85. Plaintiff alleges that later that month, an FBI liaison informed Agent Somma and other members of the Crossfire Hurricane team that Steele had reported inaccurate information in a recent meeting with a State Department official, but the Crossfire Hurricane team did not follow up. *Id.* ¶ 90. Plaintiff also alleges that the Crossfire Hurricane team "was told Steele 'may have some judgment problems,'" as Agent Somma's notes purportedly put it, but that the FBI and DOJ did not include this information in subsequent FISA warrant renewal applications. *Id.* ¶ 171. The OIG report clarifies that the same officials who allegedly told the team about Steele's "judgment problems" also informed the agents that they could "continue to rely on [Steele's] reports for FISA" purposes. OIG at 257.

The FBI filed the application for the second FISA warrant with the FISC in January 2017. AC ¶ 92. Plaintiff alleges omissions in the second warrant application, including its description of the FBI's relationship with Steele as "suspended" rather than "terminated," *id.*; insufficient detail about Steele's affiliations and reliability, *id.* ¶ 93; and the failure to disclose the purported suspicion of some officials that Steele's primary sub-source "might well be a Russian intelligence officer," *id.* ¶ 94. Plaintiff also alleges that the second warrant application failed to describe any intelligence gathered pursuant to the first FISA warrant. *Id.* ¶ 95. The FISC issued the second FISA warrant on January 12, 2017. *Id.* ¶ 99; OIG at 209.

Plaintiff alleges that FBI agents, including Agent Somma, interviewed Steele's primary sub-source for three days in January 2017.  AC ¶¶ 101, 172.  According to the complaint, the sub-source denied or contradicted much of Steele's reporting about the information the sub-source had provided, but subsequent applications never disclosed the "inconsistencies" that emerged in these interviews, and only described the sub-source as "truthful and cooperative."  *Id.* ¶¶ 101-02, 172.

In March 2017, Agent Somma and another FBI agent interviewed plaintiff five times, for a total of approximately ten hours.  *Id.* ¶¶ 103, 173.  Plaintiff describes himself as "candid and cooperative" during these interviews.  *Id.* ¶ 103.  At the interviews, plaintiff told Agent Somma and the other agent "that he believed he was under surveillance."  OIG at 220.

## III.    THE THIRD FISA APPLICATION

In March 2017, Agent Somma "was promoted to a supervisory position," and a different agent out of the New York field office assumed primary responsibility for the Page investigation. *Id.* at 210; *see also id.* at 82 (chart identifying Crossfire Hurricane team over time).  The FBI filed the application for the third FISA warrant in April 2017.  AC ¶ 103.  The agent who took over from Agent Somma emailed him a draft of the third application; OIG did not find any response from Agent Somma.  OIG at 212.  At the new lead agent's request, Agent Somma assisted with the Woods Procedures for the application on April 3—the last work he did on the investigation. OIG at 217.  The FISC issued the third warrant on April 7, 2017.  AC ¶ 107; OIG at 219.

Four days later, the Washington Post published an article, referenced and incorporated in the complaint, discussing the investigation into plaintiff, including the FISA warrants.  AC ¶ 184. In an interview quoted in the article, plaintiff stated, "[t]his confirms all of my suspicions about unjustified, politically motivated government surveillance," comparing himself to Dr. Martin Luther King Jr.  Ellen Nakashima et al., *FBI Obtained FISA Warrant to Monitor Former Trump*

*Advisor Carter Page*, Wash. Post (Apr. 11, 2017), http://wapo.st/2pr7kpE [https://perma.cc/X76V-CJRH].

## IV.   THE FOURTH FISA APPLICATION

The FBI filed the fourth FISA warrant application in June 2017.  AC ¶ 114.  Plaintiff does not allege that Agent Somma participated in preparing the fourth warrant application.  *Id.* ¶¶ 108-20.  The OIG report similarly does not describe Agent Somma as having any role in the fourth warrant application.  OIG at 219-27; *see also id.* at 83 (organizational chart).  The FISC went on to issue the fourth FISA warrant on June 29, 2017, authorizing a final 90-day period of surveillance ending on September 22, 2017.  AC ¶ 120; OIG at 219, 227.

## V.   PLAINTIFF'S CLAIMS

Plaintiff broadly alleges that the surveillance of him was unlawful and that the individual defendants are liable for damages to him based on their alleged roles in the investigation.  Mirroring the elements of the FISA cause of action, plaintiff alleges in conclusory terms that each individual defendant surveilled plaintiff, obtained his electronic communications, and used and disclosed his communications.  AC ¶¶ 121-23.  Plaintiff's complaint largely focuses on alleged errors in the process used to obtain the FISA warrants under which he was surveilled, though plaintiff also alleges that defendants "unlawfully leaked FISA and Privacy Act protected records and information," *id.* ¶ 181.  Plaintiff does not identify information obtained via FISA surveillance that was supposedly disclosed, however, and he does not in any event contend that Agent Somma was responsible for any of these alleged leaks.  *Id.* ¶¶ 181-91.  Plaintiff also does not allege any facts contradicting the OIG's finding that the members of the Crossfire Hurricane team did not intentionally engage in any misconduct in relation to their investigation.

Plaintiff claims a host of personal, economic, and emotional injuries relating to the publicity surrounding the investigation—such as alleged threats against him, loss of business, and

"damage to his reputation"—but he does not specify any harm resulting from the surveillance itself. *Id.* ¶ 214.  Indeed, while plaintiff recites in passing that his Fourth Amendment rights were violated, *id.* ¶ 58, the complaint overwhelmingly focuses on alleged reputational harms, such as being "portrayed as a traitor," *id.* ¶¶ 222, 226, 230, 234.

Plaintiff asserts eight claims in total, five against the individual defendants.  Plaintiff pleads four claims for FISA violations, one for each FISA application and warrant.  *Id.* ¶¶ 216-34.  Plaintiff also asserts a *Bivens* claim against the individual defendants based on the same alleged conduct as the FISA claims.  *Id.* ¶¶ 243-50.  All told, plaintiff seeks at least $75 million in damages.

### ARGUMENT[3]

The complaint stumbles out of the gate: accepting all of plaintiff's allegations as true and construing them in his favor, the face of the complaint conclusively shows that all of plaintiff's claims against Agent Somma accrued years ago and are now time barred.  If plaintiff's claims were timely brought, they would still fall short.  The law precludes extending *Bivens* to this new context, where significant separation-of-powers concerns and an adequate alternative remedy (invoked by plaintiff himself) render *Bivens* unavailable.  Plaintiff's FISA claims fare no better: he does not plausibly allege that Agent Somma surveilled him intending to violate FISA; he does not allege any conduct by Agent Somma that would fall outside the scope of a statutory defense to liability; and the complaint does not (and could not) allege that Agent Somma conducted any surveillance under two of the warrants.  Plaintiff further fails to adequately allege that his asserted injuries can be fairly traced to Agent Somma's own challenged conduct.  Last, even if plaintiff had timely brought and adequately alleged any of his claims, Agent Somma still would be entitled to qualified immunity on every one.  The claims against Agent Somma should be dismissed.

---

[3] Agent Somma joins and incorporates by reference the arguments set forth in the other individual defendants' motions that apply to him as well.

I.      **ALL OF PLAINTIFF'S CLAIMS AGAINST AGENT SOMMA ARE UNTIMELY.**

A claim must be dismissed as barred by the statute of limitations "when the face of the complaint conclusively indicates it is time-barred." *Sykes v. U.S. Att'y for D.C.*, 770 F. Supp. 2d 152, 154 (D.D.C. 2011).  That is the case for all of plaintiff's claims against Agent Somma.

A one-year statute of limitations applies to all those claims, and there is no plausible argument that a limitations period of more than three years would apply to any of them.  Allegedly improper surveillance is the basis for all of plaintiff's claims.  Plaintiff was fully aware of this surveillance, believed it to be improper, and knew of Agent Somma's role in it more than three years ago, and all alleged surveillance concluded more than three years ago.  Plaintiff's claims accrued, and the statute of limitations started running, as soon as he knew he was being surveilled.  Indulging each and every possibility in plaintiff's favor, not one of his claims against Agent Somma is timely.

A.      **Plaintiff's *Bivens* Claim Is Untimely Under Any Conceivably Applicable Limitations Period.**

For plaintiff's *Bivens* claim, Agent Somma joins and incorporates by reference the argument set forth in the Clinesmith Brief, Dkt. 60-1, at 18-20.  To briefly reiterate, the statute of limitations for this claim must be borrowed from D.C. law, looking to the "gist" of plaintiff's allegations and the "most analogous" local cause of action.  *Doe v. Dep't of Justice*, 753 F.2d 1092, 1114 (D.C. Cir. 1985).  The gist of plaintiff's complaint is most closely analogous to libel or invasion of privacy, so a one-year statute of limitations applies.  *See* Clinesmith Brief, Dkt. 60-1, at 18-19 (libel); *Greenpeace, Inc. v. Dow Chem. Co.*, 97 A.3d 1053, 1061-62 (D.C. 2014) (invasion of privacy); *Mittleman v. United States*, 104 F.3d 410, 415-16 (D.C. Cir. 1997) (same); *Doe v. Se. Univ.*, 732 F. Supp. 7, 8 (D.D.C. 1990) (same).  While a three-year limitations period might apply to a *Bivens* action based on a physical search, *see Berman v. Crook*, 293 F. Supp. 3d 48, 56 (D.D.C.

2018), plaintiff's very different allegations—focused on electronic surveillance resulting in alleged reputational harms—sound in a reputational or privacy tort.  Regardless, plaintiff's claims are untimely even under a three-year statute:  A *Bivens* claim accrues "when the plaintiff has a complete and present cause of action"—that is, "when the plaintiff knows or has reason to know of the harm," *Loumiet v. United States*, 968 F. Supp. 2d 142, 150 (D.D.C. 2013) (quotation omitted), or the defendant's conduct, *Berman*, 293 F. Supp. 3d at 56 (plaintiff's *Bivens* "claim accrued … when he learned of the search").

Plaintiff filed suit on November 27, 2020.  Applying the one-year limitations period from that date, plaintiff's *Bivens* claim is timely only if it accrued on or after November 28, 2019, and under the longest possible limitations period of three years from that date, the claim would be timely only if it accrued on or after November 28, 2017.  Plaintiff's *Bivens* claim against Agent Somma accrued by September 2017 at the latest and so is untimely by any measure.

Plaintiff himself knew of the surveillance in March 2017, and he does not (and cannot) allege that it continued after September 2017.  Plaintiff met Agent Somma in March 2017, AC ¶¶ 103, 173, and at that time plaintiff himself told Agent Somma "that he believed he was under surveillance," OIG at 220.  On April 11, 2017, the *Washington Post* published an article, AC ¶ 184, that quoted plaintiff:  "This confirms all of my suspicions about unjustified, politically motivated government surveillance."  Nakashima et al., *supra*.  At least as soon as April 2017, then, plaintiff knew that he was under surveillance pursuant to a FISA warrant and believed this surveillance to be improper—by April 2017, plaintiff was fully aware of the basis for all of the claims he now asserts against Agent Somma.  The complaint does not allege that plaintiff was subject to any surveillance beyond September 22, 2017, pursuant to the terms of the fourth FISA warrant.  AC ¶ 120; OIG at 219, 227.  Plaintiff thus had a complete and present cause of action against Agent

Somma by September 2017 *at the absolute latest*: by then, all of the alleged harm had been inflicted, plaintiff knew of the alleged harm, and plaintiff knew of Agent Somma's involvement. Plaintiff then sat on his rights for more than three years before filing suit.  Whatever statute of limitations applies, it bars plaintiff's *Bivens* claim against Agent Somma.

> **B.     Plaintiff's FISA Claims Against Agent Somma Accrued at Least Three Years Ago.**

Agent Somma also joins and incorporates by reference the argument with respect to the statute of limitations on plaintiff's FISA claims set forth in the Clinesmith Brief, Dkt. 60-1, at 38-39.  As discussed there, a one-year limitations period should also apply to the FISA claims, and the period runs from when plaintiff learned he was under surveillance.  But once again, under any conceivable approach, plaintiff's claims against Agent Somma would be time barred.  If the Court borrowed a rule from federal law instead of D.C. law, *see Reed v. United Transp. Union*, 488 U.S. 319, 324 (1989), the best analogies would be the Wiretap Act, 18 U.S.C. § 2520 (which imposes liability for the unauthorized interception, use, or disclosure of wire, oral, or electronic communications), and the Stored Communications Act (SCA), 18 U.S.C. § 2707 (which imposes liability for unauthorized access to stored wire or electronic communications).  Both statutes have a two-year limitations period triggered by inquiry notice.  *See Sparshott v. Feld Ent., Inc.*, 311 F.3d 425, 428-29 (D.C. Cir. 2002) (Wiretap Act); *Sewell v. Bernardin*, 795 F.3d 337, 340 (2d Cir. 2015).  At the latest, the limitations period would begin running when plaintiff had a complete and present cause of action.  *See Wallace v. Kato*, 549 U.S. 384, 388 (2007).  Thus, the statute of limitations on plaintiff's FISA claims would begin running at the same time the limitations period on the *Bivens* claim started: when plaintiff knew he was being surveilled.  *See supra* at 10.

Even if the longer two-year limitations period applied to plaintiff's FISA claims, they too would still be untimely.  Under the appropriate one-year limitations period, measured from the

date plaintiff filed suit, plaintiff's claims are timely only if they accrued on or after November 28, 2019, and under the longest possible limitations period of two years, plaintiff's claims would be timely only if they accrued on or after November 28, 2018.  All of plaintiff's FISA claims against Agent Somma accrued by September 2017 at the latest, so they are also untimely by any measure.

## II.      A *BIVENS* CAUSE OF ACTION DOES NOT EXTEND TO THIS CONTEXT.

Agent Somma joins and incorporates by reference the Clinesmith Brief's argument explaining that a *Bivens* cause of action is unavailable to plaintiff, Dkt. 60-1, at 23-33.  Plaintiff's claim would extend *Bivens* into a new context; the separation-of-powers concerns that doing so would raise and the adequate alternative remedy (which plaintiff himself invokes) foreclose a *Bivens* cause of action here.  *See, e.g.*, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857-58 (2017) (separation-of-powers concerns are "special factors counseling hesitation" in extending *Bivens*); *id.* at 1858 ("In a related way, if there is an alternative remedial structure in a present case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.").

## III.     PLAINTIFF HAS FAILED TO STATE A VALID FISA CLAIM AGAINST AGENT SOMMA.

All four of plaintiff's FISA claims against Agent Somma are inadequately pleaded because plaintiff does not plausibly allege, contrary to the findings of the OIG, that Agent Somma undertook any actions proscribed by FISA with improper intent.  Because intent is a necessary element of any FISA violation, the claims against Agent Somma fail accordingly.  FISA also affords a defense for surveillance by law enforcement or officers engaged in the course of their official duties, and all of Agent Somma's alleged conduct falls within the scope of that protection. Finally, two of the FISA claims asserted against Agent Somma involve surveillance that occurred after Agent Somma left the Crossfire Hurricane team.  Those claims must be dismissed for that reason alone.

**A.      Plaintiff Has Inadequately Alleged That Agent Somma Intentionally Violated FISA (All Counts).**

FISA creates a civil cause of action for an "aggrieved person … who has been subjected to an electronic surveillance or about whom information obtained by electronic surveillance of such person has been disclosed or used in violation of section 1809 of this title … against any person who committed such violation."  50 U.S.C. § 1810.  Section 1809, FISA's criminal offense, in turn provides:

> A person is guilty of an offense if he *intentionally*—
>
> (1) engages in electronic surveillance under color of law except as authorized by this chapter [or others permitting electronic surveillance];
>
> (2) discloses or uses information obtained under color of law by electronic surveillance, knowing or having reason to know that the information was obtained through electronic surveillance not authorized by this chapter [or others permitting electronic surveillance].

50 U.S.C. § 1809(a) (emphasis added).

When Congress includes a general mens rea provision in a criminal statute, it typically intends for that provision to apply to every element of the offense.  *See, e.g.*, *Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019).  The legislative history confirms that Congress intended criminal liability to attach under FISA only on a showing that the defendant intended to violate the statute.  *See* H.R. Rep. No. 95-1283, at 97 (1978) (explaining that "intentionally" as used in § 1809 "is intended to reflect the most strict standard for criminal culpability" and that the offense requires proof "both that the conduct engaged in was in fact a violation, and that it was engaged in with a conscious objective or desire to commit a violation").  The legislative history also confirms that Congress intended "that the civil liability of intelligence agents under this Act should coincide with the criminal liability."  H.R. Conf. Rep. No. 95-1720 (1978), at 34.

Thus, to state a civil FISA claim against Agent Somma, plaintiff must plausibly allege not only that Agent Somma intentionally engaged in surveillance of plaintiff, but that he *intended* to do so unlawfully, without proper authorization under FISA.[4]   Plaintiff's use of "the talismanic words 'willful' and 'intentional' … cannot satisfy plaintiff['s] pleading burden because they are nothing more than 'labels and conclusions, and a formulaic recitation of the elements of a cause of action.'" *Kelley v. FBI*, 67 F. Supp. 3d 240, 257 (D.D.C. 2014) (citations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   And intent cannot be lightly inferred.   On that score, precedents under the analogous Privacy Act, which plaintiff also invokes, are instructive. That Act permits a plaintiff to recover against an agency that "acted in a manner which was intentional or willful" in violating the Act.   5 U.S.C. § 552a(g)(4).   As with FISA, the mens rea provision of this statute applies to every element of the claim; the plaintiff may recover only for "the intentional or willful failure … to abide by the Act, and not [for] all voluntary actions which might otherwise inadvertently contravene one of the Act's strictures."   *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984).   The D.C. Circuit has made clear that for a plaintiff to show an intent to violate that statute, "the violation must be so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful."   *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (quotation omitted).

The OIG report specifically found no evidence that Agent Somma intentionally engaged in misconduct—much less misconduct so "patently egregious and unlawful" that anyone would have known it to be unlawful—and the complaint alleges no facts supporting a contrary inference.

---

[4] Plaintiff alleges in conclusory terms that each defendant "disclose[d] or use[d] information" in violation of the statute, AC ¶¶ 121-23, but the complaint does not identify any "information … obtained by electronic surveillance" that was "disclose[d] or use[d]" at all, *id.* ¶¶ 181-91, much less by Agent Somma.   The text specifically discusses the insufficiency of plaintiff's intent allegations with respect to the surveillance prong of the statute—but the deficiencies are only more pronounced with respect to the "use or disclose" prong that is not even pleaded against Agent Somma.

OIG at 377.  The complaint's fleeting allegations about any actual surveillance are conclusory and unspecific; "[t]hreadbare recitals of the elements of [the] cause of action, supported by mere conclusory statements," obviously "do not suffice" to state a FISA claim, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Even assuming the truth of all of plaintiff's allegations and construing them in his favor, the complaint at most alleges Agent Somma made a handful of mistakes in connection with certain FISA warrants under which plaintiff was surveilled eventually, not purposeful misconduct.  AC ¶¶ 164-73.  Indeed, the complaint does not plausibly support an inference that the two warrants to which Agent Somma contributed were unlawfully issued at all.

The complaint alleges, for example, that Agent Somma "did not accurately describe the nature and extent of the information the FBI received" about plaintiff's relationship with the CIA. *Id.* ¶ 168.  But Agent Somma shared his own recollection about what that information showed, and offered to go back and provide the actual information verbatim.  OIG at 157.  Plaintiff suggests Agent Somma should have done more, but "summary allegations that defendants should have known that their conduct was improper cannot themselves create an inference of intentional and willful misconduct."  *Kelley*, 67 F. Supp. 3d at 258.

Plaintiff's allegations that Agent Somma "mischaracterized the extent to which the FBI had previously relied on CHS Steele's prior reporting," AC ¶ 169, are insufficient for the same reasons.  Agent Somma "borrowed the *exact language*" he used from "an Intelligence Memorandum on the Steele reporting, which the Supervisory Intel Analyst and Staff Operations Specialist (SOS) had prepared," and which Agent Somma "believed had been vetted by analysts," OIG at 161 (emphasis added)—hardly signs of a flagrant and willful attempt to violate the law.

Plaintiff's allegations about Agent Somma's alleged omissions similarly suggest no criminal intent to defy the FISA process.  Plaintiff contends that Agent Somma incompletely

answered a question that, upon follow up, both was fully answered and prompted further scrutiny

of the warrant application plaintiff now criticizes.  AC ¶ 170.  Plaintiff does not allege that Agent

Somma gave an answer that was false or misleading, that he impeded the full answer, or even that

he *knew the answer himself*, or appreciated that he hadn't fully answered the attorney's question.

And while the complaint points to assorted other things—statements from interviews, notes from

a meeting—that Agent Somma allegedly should have disclosed, *id.* ¶ 166, 171-72, purported

oversights in an investigation, without more, do not evidence an unlawful intent.

It is one thing to infer, as one court has, that a defendant intended to violate FISA by

engaging in *warrantless* surveillance.  *See Fazaga v. FBI*, 965 F.3d 1015, 1031 (9th Cir. 2020).  It

is quite another to infer criminal intent from the kinds of missteps in the effort to obtain a lawful

warrant that plaintiff describes in his complaint.  The OIG found no basis to do so, and plaintiff's

complaint offers this Court none either.  Not one of Agent Somma's alleged oversights supports

an inference that he intended to surveil plaintiff in violation of FISA, and all the FISA claims

against him must accordingly be dismissed.[5]

### B.    All of Agent Somma's Alleged Conduct Falls Within FISA's Safe Harbor for Law Enforcement and Investigative Officers' Official Acts.

Regardless whether plaintiff has adequately pleaded a violation of § 1809(a), the complaint

also fails to state a claim as all of Agent Somma's alleged conduct falls within the scope of FISA's

defense to both criminal and civil liability.  50 U.S.C. § 1809(b) provides: "It is a defense to a

prosecution under subsection (a) that the defendant was a law enforcement or investigative officer

---

[5] For the same reasons, even if *Bivens* could be extended here, that claim would founder on plaintiff's failure to plausibly allege—as he must to plead a Fourth Amendment violation—that Agent Somma made "a false statement knowingly and intentionally, or with reckless disregard for the truth," and that the false statement was "necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *see also United States v. Williams*, 827 F.3d 1134, 1146 (D.C. Cir. 2016) (discussing circuit precedent applying *Franks* "where a defendant alleges that the Government knowingly and intentionally (or with reckless disregard) omitted a fact that would have defeated probable cause" (quotation omitted)).

engaged in the course of his official duties and the electronic surveillance was authorized by and conducted pursuant to a search warrant or court order of a court of competent jurisdiction." FISA's legislative history makes clear that this defense applies equally to FISA's civil cause of action. *See* H.R. Rep. No. 95-1283, at 98 (1978) (explaining that because the criminal and civil provisions are coextensive, "the statutory good faith defense, *though applicable*, does not have to be restated" in the civil provision (emphasis added)).

Plaintiff's own complaint establishes that this statutory defense applies, and that it forecloses civil liability for Agent Somma here. Agent Somma is undisputedly an investigative officer. Plaintiff does not allege that he engaged in any surveillance outside the course of his official duties. Plaintiff's complaint likewise explicitly establishes that the electronic surveillance of him was "authorized by and conducted pursuant to a search warrant or court order of" the FISC, "a court of competent jurisdiction"; plaintiff contends that the FISC should not have authorized this surveillance but cannot deny that it did. Congress enacted this defense "to afford security to intelligence personnel so that if they act in accordance with the statute and the court order, they will be insulated from liability." H.R. Rep. No. 95-1283, at 96 (1978). Because the complaint does not allege that Agent Somma ever engaged in any surveillance other than pursuant to the FISA warrants, plaintiff has failed to state a claim against him.

### C.    Plaintiff Has Inadequately Alleged That Agent Somma Surveilled Him Pursuant to the Third and Fourth Warrants (Counts 3 and 4).

The complaint does not allege with any specificity that *any* particular individual defendant ever surveilled plaintiff, but it cannot even be inferred from the complaint and incorporated OIG report that Agent Somma surveilled plaintiff under the third or fourth warrants. Agent Somma was promoted to another position before that surveillance occurred, and a different agent assumed primary responsibility over the investigation into plaintiff in March 2017. OIG at 210. Neither

the complaint nor the OIG report states that Agent Somma continued to work on the investigation under the third and fourth warrants. *Id.* at 217 (last mention of Agent Somma, on April 3), 219 (third warrant issued on April 7, and surveillance occurred pursuant to third and fourth warrants from April 7 through September 22, 2017). Because the statute is concerned with unlawful *surveillance* and Agent Somma was not involved in surveillance under the third and fourth warrants, that ends the inquiry.

## IV. PLAINTIFF HAS INADEQUATELY ALLEGED THAT HIS CLAIMED DAMAGES ARE FAIRLY TRACEABLE TO AGENT SOMMA'S CHALLENGED CONDUCT.

Plaintiff claims $75 million in damages arising from the alleged unlawful surveillance of him, but cannot trace any such injury to Agent Somma. A "federal court [may] act only to redress injury that fairly can be traced to the challenged action of the defendant." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41 (1976). The plaintiff must show that the defendant's alleged violation of the law—not some external condition or the acts of a third party—caused the asserted injury. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (requiring "a causal connection between the injury and the conduct complained of"). "Therefore, to show causation," plaintiff "must show that, but for" a defendant's conduct, he "would not [have] incur[red]" the injury. *ACLU v. NSA*, 493 F.3d 644, 667 (6th Cir. 2007). Plaintiff cannot do so.

To start, plaintiff's claimed damages are not fairly traceable to the surveillance of him at all. Plaintiff derives these damages from alleged "damage to his reputation" and associated "[e]conomic losses" and "[p]ain and suffering." AC ¶ 214. But plaintiff does not identify any damaging information—or, for that matter, *any* information—obtained by surveillance. *Cf. Byrne v. Clinton*, 410 F. Supp. 3d 109, 118 (D.D.C. 2019) (alleged reputational harms not fairly traceable to defendants where the complaint "is devoid of any allegedly defamatory statement actually *made* by [the defendants], or facts allowing the Court reasonably to infer a connection between those

defendants and the allegedly defamatory statements allegedly made by … others").  Rather, the complaint's contentions about purported unlawful disclosures, AC ¶¶ 181-91, rest on media reports on the investigation *leading up to* the alleged FISA surveillance—for example, reporting on a speech plaintiff gave in Moscow in July 2016, well before the first FISA warrant application was even submitted, *id.* ¶¶ 184, 187.  Plaintiff cannot show that "but for" the allegedly unlawful surveillance itself, these disclosures and the alleged resulting reputational harm would not have occurred.  Put differently, plaintiff's claimed injuries would look just the same even if no one had ever conducted any surveillance of plaintiff.  *Cf. Gill v. Dep't of Justice*, No. 15-824, 2016 WL 3982450, at *8 n.6 (D.D.C. July 22, 2016) (plaintiff's firing and loss of security clearance not fairly traceable to FISA violations where information prompting those decisions not obtained through FISA surveillance).

Plaintiff especially cannot fairly trace any claimed damages to Agent Somma.  The complaint itself refutes the possibility that Agent Somma's alleged failure to fully disclose Steele's political affiliations was the but-for cause of any eventual surveillance, as the FBI *did* provide the very answer that plaintiff alleges Agent Somma should have given.  AC ¶ 170.  Neither can plaintiff show that Agent Somma's other alleged omissions caused the harms plaintiff claims, which depend on layers of conjecture; plaintiff "can only speculate as to whether" and how any of the disclosures he alleges should have been made would have affected the applications that were eventually filed and the decisions the FISC eventually made.  *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 413-14 (2013).  The complaint alleges a "speculative chain of possibilities"—that the individuals drafting the warrant applications would have modified them to incorporate any of these disclosures, that the individuals reviewing the applications would have retained any of these changes, and that the FISC would decline to issue any of the warrants based on any of these

retained changes—and does not fairly trace the FISC decisions (much less plaintiff's alleged injuries) to conduct of Agent Somma's.  *Id.* at 414.  The causal chain for Agent Somma's purported misdescription of plaintiff's relationship with the CIA is equally attenuated; plaintiff can only speculate as to how the surveillance would have differed had Agent Somma been asked to provide the precise language the CIA used, as Agent Somma offered to do.  AC ¶ 168; OIG at 157.  Link after link in the chain from Agent Somma's conduct to plaintiff's injuries "rest[s] on speculation about the decisions of independent actors."  *Clapper*, 568 U.S. at 414.  Offering only "guesswork," *id.* at 413, the complaint fails to adequately allege that plaintiff's injuries are fairly traceable to Agent Somma's conduct.

## V.    AGENT SOMMA IS ENTITLED TO QUALIFIED IMMUNITY ON ALL OF PLAINTIFF'S CLAIMS.

Agent Somma joins and incorporates by reference the argument on qualified immunity set forth in the Clinesmith Brief, Dkt. 60-1, at 43-45.  To summarize:  Qualified immunity shields Agent Somma, a federal official, from liability for money damages unless plaintiff pleads facts showing both (1) that Agent Somma violated his statutory or constitutional right, and (2) "that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).  Plaintiff bears the burden of showing that his right, "narrowly described to fit the factual pattern confronting the officers," was clearly established, *Dukore v. District of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015), meaning that plaintiff must show that "existing precedent … placed the statutory or constitutional question beyond debate," *Reichle v. Howards*, 566 U.S. 658, 664 (2012).  Qualified immunity provides "*immunity from suit* rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), and plaintiff's claims against Agent Somma must be dismissed to effect that guarantee.

A "lack of settled precedent" supporting a claim "demonstrates that [defendants] are now entitled to qualified immunity." *Atkisson v. Holder*, 925 F.3d 606, 623 (4th Cir. 2019). Just so here. "The lack of precedents interpreting the remedial provisions of FISA" preclude plaintiff from showing that his FISA rights were clearly established. *In re Nat'l Sec. Agency Telecomm. Recs. Litig.*, 564 F. Supp. 2d 1109, 1111 (N.D. Cal. 2008); *see also Fazaga*, 965 F.3d at 1037-38 (finding FBI agents entitled to qualified immunity on FISA claim in absence of clearly established law and reversing denial of motion to dismiss). Plaintiff does not cite a single case describing the contours of civil liability under FISA for alleged omissions in a warrant application, much less a case clearly establishing that Agent Somma's alleged omissions of degree could expose him to liability for money damages.

First off, no law clearly establishes a plaintiff's right to civil recovery for alleged FISA violations in the absence of a criminal conviction for the same conduct. FISA's legislative history shows that Congress intended that "the civil cause of action only arises in connection with a violation of the criminal provision." H.R. Rep. No. 95-1283, at 98 (1978). Some courts have explained that "civil liability must be premised on a prior criminal conviction under the Act," which of course is absent here. *Lampon-Paz v. Dep't of Justice*, No. 16-9071, 2019 WL 2098831, at *7 (D.N.J. May 14, 2019); *see also Wikimedia Found. v. NSA/Cent. Sec. Serv.*, 335 F. Supp. 3d 772, 785 (D. Md. 2018) (reiterating "that § 1810 is intended to track an individual agent's criminal liability").

What's more, it was at the very least not clearly established that Agent Somma's official conduct on behalf of the government would be at his own risk. Agent Somma is eligible for FISA's safe harbor provision, 50 U.S.C. § 1809(b), because plaintiff does not allege that any of Agent Somma's conduct was outside the scope of his duties or contrary to the terms of the FISA warrants,

as discussed *supra* at 16-17.  But if § 1809(b) did not shield Agent Somma from suit, qualified immunity would.  Congress enacted FISA's safe harbor provision to protect officers from criminal and civil liability for such good-faith mistakes in the course of lawful investigations, *see* H.R. Rep. No. 95-1283, at 96-98 (1978), and qualified immunity similarly "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," *al-Kidd*, 563 U.S. at 743.

Agent Somma is equally entitled to qualified immunity on plaintiff's *Bivens* claim. Qualified immunity protects an officer from civil liability for a search conducted pursuant to a warrant unless "it is obvious that no reasonably competent officer would have concluded that a warrant should issue."  *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012).  Plaintiff alleges no facts permitting the inference that Agent Somma or any other officer should have concluded that FISC should not have approved these warrants, particularly where plaintiff can point to no law clearly establishing the disclosures that must be included in a FISA warrant application.

No court has ever ruled on when liability attaches under FISA in circumstances like these. The only case in the general vicinity, *Fazaga v. FBI*, 965 F.3d 1015, turned on *warrantless* surveillance, plainly not at issue here.  Not only is there no law *clearly* establishing when a federal officer may be held liable under FISA for surveillance conducted under the authority of a warrant; there is no case law on that subject *at all*.  Plaintiff's claims against Agent Somma fail in their own right, but were there any doubt that those claims must be dismissed, qualified immunity would resolve it.  From the face of the complaint, Agent Somma is entitled to qualified immunity.

## **CONCLUSION**

For the reasons stated above, all claims against Stephen Somma should be dismissed with

prejudice.

Dated: May 18, 2021                         Respectfully submitted,

                                            /s/ *Meaghan VerGow*
                                            Meaghan VerGow (#977165)
                                            Andrew R. Hellman (*pro hac vice* pending)
                                            O'MELVENY & MYERS LLP
                                            1625 Eye Street, N.W.
                                            Washington, D.C. 20006-4001
                                            Telephone: (202) 383-5300
                                            Fax: (202) 383-5414
                                            mvergow@omm.com
                                            andrewhellman@omm.com

                                            *Attorneys for Stephen Somma*