**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CARTER PAGE,

        *Plaintiff*,

        v.

JAMES COMEY, *et al*.,

        *Defendants.*

Civil Action No. 20-cv-3460 (KBJ)

ORAL ARGUMENT REQUESTED

**DEFENDANT PETER STRZOK'S MEMORANDUM IN SUPPORT OF HIS
MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ALLEGATIONS IN THE AMENDED COMPLAINT ................................................... 3

STANDARD OF REVIEW ................................................................................................ 7

ARGUMENT ...................................................................................................................... 8

I.      THE FISA CLAIMS SHOULD BE DISMISSED ............................................... 8

      A.     The FISA Claims Are Time-Barred ..................................................... 8

      B.     Plaintiff Fails To State A Claim ........................................................... 9

            1.     There are no factual allegations that Mr. Strzok "engaged" in electronic surveillance. ............................................................ 10

            2.     There are no factual allegations that Mr. Strzok disclosed or used information that he knew, or should have known, was obtained through unauthorized electronic surveillance. .......................... 12

            3.     There are no factual allegations that Mr. Strzok acted "intentionally." ................................................................................ 15

            4.     Section 1809(b) and qualified immunity bar Plaintiff's claims. ............... 16

II.     THE *BIVENS* CLAIM SHOULD BE DISMISSED ..................................... 17

III.    PLAINTIFF'S DAMAGES ARE NOT TRACEABLE TO MR. STRZOK'S CONDUCT ................................................................................ 20

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011) ............................................................................... 16

*\*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................ *passim*

*Attkisson v. Holder,*
  2017 WL 5013230 (E.D. Va. Nov. 1, 2017) ............................................ 10

*Attkisson v. Holder,*
  925 F.3d 606 (4th Cir. 2019) ............................................................ 16–17

*Attkisson v. Rosenstein,*
  2021 WL 978821 (D. Md. Mar. 16, 2021) ............................................... 17

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................... 14

*Berry v. Funk,*
  146 F.3d 1003 (D.C. Cir. 1998) ............................................................. 16

*Franks v. Delaware,*
  438 U.S. 154 (1978) ............................................................................... 19

*In re Domestic Airline Travel Antitrust Litig.,*
  221 F. Supp. 3d 46 (D.D.C. 2016) ........................................................... 4

*Owens v. BNP Paribas, S.A.,*
  897 F.3d 266 (D.C. Cir. 2018) ............................................................... 10

*Richardson v. Trump,*
  496 F. Supp. 3d 165 (D.D.C. 2020) .......................................................... 9

*Toumazou v. Turkish Rep. of N. Cyprus,*
  71 F. Supp. 3d 7 (D.D.C. 2014) ............................................................. 11

*United States v. Koyomejian,*
  946 F.2d 1450 (9th Cir. 1991) ............................................................... 10

————

\*Authorities upon which we chiefly rely are marked with an asterisk.

-ii-

*United States v. Williams*,
    827 F.3d 1134 (D.C. Cir. 2016) ............................................................................................... 19

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) .............................................................................................................. 18

**STATUTES**

18 U.S.C. § 3052 ............................................................................................................................. 16

50 U.S.C. § 1809 ..................................................................................................................... *passim*

50 U.S.C. § 1810 ..................................................................................................................... *passim*

**OTHER AUTHORITIES**

*Office of the Inspector General, *Review of Four FISA Applications and Other Aspects of
    the FBI's Crossfire Hurricane Investigation* at 5 (revised Dec. 2019) ........................... *passim*

Office of the Inspector General, *Review of Various Actions in Advance of the 2016
    Election* (June 2018) ................................................................................................................... 7

Press Release, House Comm. On Oversight & Reform, *Cummings and Nadler Issue
    Statement After GOP Leaks and Mischaracterizes Documents—Again* (Sept. 11, 2018),
    https://oversight.house.gov/news/press-releases/cummings-and-nadler-issue-statement-
    after-gop-leaks-and-mischaracterizes ...................................................................................... 15

## INTRODUCTION

Plaintiff Carter Page has sued more than thirty individuals and entities—including former high-ranking FBI officials, FBI agents, FBI lawyers, and twenty unknown Doe defendants—across eight causes of action. The thrust of Plaintiff's allegations is that all these parties are liable for misrepresentations and omissions in four warrants for electronic surveillance of Plaintiff under the Foreign Intelligence Surveillance Act (FISA). Included in Plaintiff's wide-ranging Amended Complaint is Defendant Peter Strzok, the former Deputy Assistant Director of the FBI's Counterintelligence Division, who supervised an investigation into Plaintiff for a few months in late 2016 until January 2017. Plaintiff brings five claims against Mr. Strzok: four for violations of FISA (one count for each warrant), and a *Bivens* claim. All these claims fail for multiple reasons.

*First*, the FISA claims are time-barred, whether under the most analogous state statute of limitations—the District of Columbia's one-year limitations period for invasion of privacy claims—or the two-year limitations period in the Wiretap Act and Stored Communications Act.

*Second*, Plaintiff fails to state a claim under each FISA count. Plaintiff never alleges that Mr. Strzok engaged in any electronic surveillance of Plaintiff under any of the four warrants. As to the Second, Third, and Fourth Warrants, Plaintiff's Amended Complaint makes clear that Mr. Strzok could not have engaged in any surveillance under those warrants, as he no longer supervised the investigation of Plaintiff.

Plaintiff's allegations about unlawful disclosure of information under FISA also miss the mark. There are no factual allegations that Mr. Strzok disclosed any information of Plaintiff's that was obtained through electronic surveillance. Indeed, Plaintiff fails to identify what information of his was allegedly obtained through electronic surveillance and purportedly disclosed or used, who specifically disclosed or used the information, or to whom the information was disclosed.

Plaintiff's FISA claims also fail because he has not alleged that Mr. Strzok acted with the requisite intent to violate FISA. And the FISA claims are barred under section 1809(b), which provides a complete defense to a law enforcement or investigative officer where the surveillance was authorized by a warrant, and qualified immunity, because Mr. Strzok has not violated any clearly established right under FISA.

*Third*, Plaintiff fails to state a *Bivens* claim for several reasons. The claim is time barred under either a one-year or three-year statute of limitations. The Court should also decline to recognize a new *Bivens* action for alleged Fourth Amendment violations involving electronic surveillance, especially where Mr. Strzok held a high-ranking position as Deputy Assistant Director of the Counterintelligence Division of the FBI. On the merits of the *Bivens* claim, Plaintiff has not alleged that Mr. Strzok personally violated Plaintiff's Fourth Amendment rights by allegedly making misleading statements or omissions in the FISA warrant applications. In fact, while Plaintiff repeatedly cites to the relevant Office of Inspector General reports as authoritative, he omits the Inspector General's conclusion that "testimonial and documentary evidence we reviewed established that Strzok . . . played no role in the substantive preparation or approval of any of the four FISA applications" related to Plaintiff. Finally, Mr. Strzok is also entitled to qualified immunity because he did not violate a Fourth Amendment right, nor was any such right clearly established.

*Finally*, Plaintiff has not alleged that any injury he suffered was caused by Mr. Strzok's conduct.

For those reasons, the Court should dismiss the Amended Complaint.

## ALLEGATIONS IN THE AMENDED COMPLAINT[1]

Plaintiff's Amended Complaint focuses on four applications for FISA warrants for electronic surveillance of Plaintiff, approved in October 2016, January 2017, April 2017, and June 2017. Am. Compl. ¶¶ 220, 224, 228, 232. These applications were prepared as part of the operation of the Crossfire Hurricane team. Mr. Strzok, the Deputy Assistant Director of the FBI's Counterintelligence Division, was a member of that team and was part of the supervisory chain of command of the investigation of Plaintiff until January 2017. *Id.* ¶¶ 26, 65. Mr. Strzok was *not* one of the supervisors of the investigation into Plaintiff at the time of the second, third or fourth FISA warrants.

Plaintiff alleges in conclusory fashion that a host of individuals, consisting of "the individual Defendants and other FBI personnel, both known and unknown to Dr. Page," used the FISA warrants "to engage in surveillance of him," "obtained" his "electronic communications," and "used and disclosed those communications, to among other things, obtain the subsequent FISA Warrants, unlawfully pursue investigative ends, and for unlawful leaks to the media and others." *Id.* ¶¶ 121–23. As described below, however, Plaintiff's scattered references to Mr. Strzok do not allege *facts* supporting those assertions as to the preparation of, and surveillance under, the four warrants or as to the allegations of use and disclosure.

*First FISA Warrant.* Plaintiff does not allege any facts showing that Mr. Strzok prepared the First FISA Warrant application, engaged in surveillance under that warrant, or used or disclosed information obtained through surveillance under that warrant. Instead, in his "First FISA Warrant" section, Plaintiff alleges that Mr. Strzok received information, such as "an investigation

---

[1] Mr. Strzok incorporates by reference the discussion of the background of the Crossfire Hurricane investigation from Defendant Kevin Clinesmith's Motion to Dismiss ("Clinesmith Br.").

referral" from the CIA about then-candidate Clinton's plan to use then-candidate Trump's link to Russian hackers as a distraction, *id.* ¶ 60, as well as a letter from Plaintiff denying communications with sanctioned Russian individuals, *id.* ¶ 65.[2] Plaintiff does not allege Mr. Strzok took any inappropriate action with this information.[3]

Plaintiff's Amended Complaint reveals that Mr. Strzok escalated questions about the warrant application through the appropriate channels. For instance, when a DOJ attorney raised concerns about the First FISA Warrant application, Plaintiff concedes that Mr. Strzok, as well as others, "briefed Comey and McCabe about" those concerns. *Id.* ¶ 73.

*Second FISA Warrant.* Like the First FISA Warrant, Plaintiff does not allege any facts showing that Mr. Strzok prepared the Second FISA Warrant application, engaged in surveillance under that warrant, or used or disclosed information obtained through surveillance under that warrant. Indeed, according to Plaintiff's allegations, any surveillance under the Second FISA Warrant would have occurred *after* Mr. Strzok was no longer supervising the investigation into

---

[2] Plaintiff also alleges that Mr. Strzok "was aware that, in August 2016, the CIA had confirmed that Carter Page was an 'operational contact' for that agency." Am. Compl. ¶ 139. Plaintiff does not allege *when* Mr. Strzok became aware of this information, and Plaintiff's allegations about the First FISA Warrant do not specifically allege that Mr. Strzok received this information in August 2016. *See id.* ¶ 59 ("On or about August 17, 2016, the CIA delivered materials to 'certain members' of the Crossfire Hurricane team documenting that Carter Page was an 'operational contact.' "). In any event, Plaintiff does not allege that Mr. Strzok did anything inappropriate with this information.

[3] As to the letter from Plaintiff denying interactions with sanctioned Russians, the Office of Inspector General Report shows that the First FISA Warrant application included this information. *See* Office of the Inspector General, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* at 5 (revised Dec. 2019) ("IG Report") ("[T]he application . . . stated that . . . Page himself denied the accusations in the *Yahoo News* article and reiterated that denial in a September 25, 2016 letter to the FBI Director and in a September 26, 2016 media interview."). The Court may consider the IG Report because Plaintiff incorporates the Report throughout the Amended Complaint. *See, e.g.*, Am. Compl. ¶¶ 22, 38–39, 57, 192–213; *see also In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 54 (D.D.C. 2016) ("In deciding a Rule 12(b)(6) motion, a court may consider . . . documents . . . incorporated by reference in the complaint." (citation omitted)).

Plaintiff, thus making it impossible for Mr. Strzok to have engaged in surveillance under that warrant. *See id.* ¶ 26 (Strzok supervised investigation of Plaintiff "until approximately January 2017"); *id.* ¶ 224 (Second Warrant issued January 12, 2017).

Plaintiff's factual allegations regarding Mr. Strzok do not concern the preparation of the warrant or any surveillance or disclosure under the warrant. *First*, Plaintiff alleges that in November 2016, "Priestap and Peter Strzok went to London to assess Steele's credibility by gathering the opinions of persons who previously had professional contacts with Steele." *Id.* ¶ 86. According to Plaintiff, Mr. Strzok and Priestap "found some who described Steele as 'smart' and a 'person of integrity,'" while others "lamented Steele's 'poor judgment' or 'lack of judgment' and his habit of 'pursuing people [with] political risk but no intel value.'" *Id.* The IG Report states that "FBI officials told us, and documents reflect, that Strzok briefed the Crossfire Hurricane team regarding the information he received about Steele." IG Report at 257.

*Second*, Plaintiff alleges that, on November 21, 2016, "DOJ official Bruce Ohr met with Lisa Page, Peter Strzok, Joe Pientka, and other FBI officials to discuss 'Steele's background and reliability as a source and to identify his source network.'" Am. Compl. ¶ 87. According to Plaintiff, Ohr mentioned that Steele did not want Donald Trump to become President and that Steele had been hired to do opposition research. Plaintiff also alleges that Ohr separately communicated with "the FBI" thirteen times after November 21, 2016, though Plaintiff does not allege any further communications between Ohr and Mr. Strzok. *Id.* ¶ 88. The November 21, 2016 meeting with Ohr was memorialized in an FD-302 by an FBI agent. IG Report at 280.

Although Plaintiff alleges that "the FBI" did not "include relevant information provided to the FBI in November and December 2016 related to Steele's motivations and reliability" in the warrant application, he does not allege that *Mr. Strzok* failed to include such information in the

warrant application, or ordered or directed anyone not to include such information. Am. Compl. ¶ 93.

*Third and Fourth FISA Warrants*. Plaintiff makes no specific allegations about Mr. Strzok regarding these two warrants. As the Amended Complaint shows, the preparation of these warrant applications, and any surveillance under these warrants, occurred after Mr. Strzok no longer supervised the investigation of Plaintiff. *See id.* ¶ 228 (Third FISA Warrant issued on April 7, 2017); *id.* ¶ 232 (Fourth FISA Warrant issued on June 29, 2017). Although Plaintiff alleges that Mr. Strzok made comments on a New York Times article in February 2017, *id.* ¶ 144, Plaintiff makes no allegations connecting the article or Mr. Strzok's annotations thereof to the third or fourth FISA applications, both of which were filed after Mr. Strzok stopped supervising the Carter Page investigation.

*Alleged "Disclosure" Of Information*. Plaintiff makes a series of allegations against Mr. Strzok concerning the alleged disclosure of unidentified "protected" information. In particular, Plaintiff alleges that: (1) "On information and belief, Strzok and Lisa Page collaborated to disclose protected information regarding Dr. Page to the media and sought and obtained approval to do so from McCabe" and (2) "On information and belief, Defendants, known and unknown to Dr. Page, but including but not limited to, Comey, McCabe, Strzok, and Page, leaked information and records concerning Dr. Page that were protected from disclosure under the FISA and the Privacy Act to media outlets, including the New York Times, the Washington Post, and Yahoo News, among others." *Id.* ¶¶ 188–89.

Plaintiff does not identify what "information" or "records" of Plaintiff were disclosed that "were protected from disclosure under the FISA," what information Mr. Strzok (as opposed to others) allegedly disclosed, or to whom, specifically, Mr. Strzok disclosed the information.

Although Plaintiff recites several lines from two news articles, he does not allege that any information in those articles was obtained from electronic surveillance of Plaintiff or disclosed by Mr. Strzok. *See id.* ¶¶ 184, 187. Plaintiff also quotes a few out-of-context text messages between Mr. Strzok and Defendant Lisa Page, *id.* ¶¶ 183, 185, 186, but he never alleges that those text messages concerned the disclosure of information obtained from surveillance of Plaintiff.[4]

Based on the above allegations, Plaintiff brings five causes of action against Mr. Strzok: four claims under FISA, 50 U.S.C. §§ 1809, 1810, under each of the four warrants, for allegedly engaging in unlawful surveillance and disclosing or using information obtained through unlawful surveillance; and one *Bivens* claim alleging a Fourth Amendment violation for false or misleading statements in the FISA warrant applications for electronic surveillance. For the reasons explained below, all those claims fail.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In evaluating a motion to dismiss, a court must accept all factual allegations as true. *Id.* at 679. But a pleading "that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* at 678 (citation omitted). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted).

---

[4] The IG Report reviewed "relevant text messages" between Mr. Strzok and Lisa Page, and made no mention of the purported text messages in Plaintiff's Amended Complaint. *See* IG Report at 66–67. The IG Report incorporates the Office of Inspector General's report into the 2016 election, in which thousands of text messages between Mr. Strzok and Lisa Page were reviewed. *See* Office of the Inspector General, *Review of Various Actions in Advance of the 2016 Election* (June 2018). Nothing in those Reports suggests that Mr. Strzok disclosed any information about Plaintiff to the media.

<h1 style="text-align:center">ARGUMENT[5]</h1>

Plaintiff's FISA and *Bivens* claims should be dismissed for multiple reasons. The four FISA claims fail on several fronts: they are untimely, Plaintiff fails to allege facts in support of his allegations that Mr. Strzok intentionally engaged in electronic surveillance of Plaintiff or disclosed or used information from electronic surveillance, knowing or having reason to know that the surveillance was unauthorized, and FISA's safe harbor provision and qualified immunity bar Plaintiff's claims. The single *Bivens* claim should be dismissed because it is untimely, Plaintiff impermissibly seeks to extend the *Bivens* remedy to this new context, Plaintiff fails to plead facts showing that Mr. Strzok violated Plaintiff's Fourth Amendment rights, and Mr. Strzok is entitled to qualified immunity. In addition, Plaintiff's alleged damages are not traceable to Mr. Strzok's conduct.

## I.   THE FISA CLAIMS SHOULD BE DISMISSED

The FISA claims should be dismissed as barred by the statute of limitations and because Plaintiff fails to state a claim on the merits.

### A.   The FISA Claims Are Time-Barred.

Mr. Strzok adopts and incorporates by reference the arguments in the Clinesmith and Somma briefs that the FISA claims are time-barred because the District of Columbia's one-year statute of limitations for invasion of privacy applies and, even if the two-year statute of limitations from the Wiretap Act or Stored Communications Act applies, the FISA claims would still be barred. *See* Clinesmith Br. § II.A; Somma Br. § I.B. In particular, Plaintiff was aware of the FISA warrants by April 11, 2017 when the Washington Post reported on those warrants. *See* Am. Compl.

---

[5] As set forth below, for efficiency and to minimize duplicating arguments for the Court, Mr. Strzok joins and incorporates by reference the arguments made by the other Defendants in their respective motions to dismiss.

¶ 184 (describing the April 11, 2017 Washington Post article). That article was published more than *three years* before Plaintiff filed this action in November 27, 2020 and several months after Mr. Strzok no longer supervised Plaintiff's investigation. As a result, all of Plaintiff's surveillance claims against Mr. Strzok are time-barred.

The statute of limitations bars not only the surveillance claims, but also the claims of alleged disclosure or use of information obtained from surveillance. Plaintiff knew about any alleged leaking by April 2017, when the only two news articles on which he relies were published. *See* Am. Compl. ¶¶ 184, 187. In addition, in September 2018, Plaintiff gave statements to The Hill regarding the same text messages from Mr. Strzok included in his Amended Complaint as support for his disclosure allegations.[6] *See id.* ¶¶ 183, 185–86. Accordingly, under either a one- or two-year statute of limitations, Plaintiff's FISA claims against Mr. Strzok are time-barred.

## B.    Plaintiff Fails To State A Claim.

Plaintiff's four FISA claims—one for each warrant—do not state a claim because Plaintiff does not set forth any facts supporting the elements of those claims.

FISA's civil liability provision states that:

> [a]n aggrieved person . . . who has been subjected to an electronic surveillance or about whom information obtained by electronic surveillance of such person has been disclosed or used in violation of section 1809 of this title shall have a cause of action against any person who committed such violation.

50 U.S.C. § 1810. Accordingly, to state a claim against Mr. Strzok under section 1810, Plaintiff must plausibly allege a violation of section 1809, FISA's criminal liability provision. Section 1809,

---

[6]  https://thehill.com/opinion/white-house/405956-leaking-lovers-and-an-fbi-smear-job-of-carter-page. Courts may "take[] judicial notice of the existence of . . . news article[s]." *Richardson v. Trump*, 496 F. Supp. 3d 165, 172 n.4 (D.D.C. 2020). As described in footnote 8, *infra*, the text messages did not concern leaking information about Plaintiff, but rather combatting leaks to the media.

in turn, provides that a person is guilty of an offense if he or she "intentionally" "engages in electronic surveillance under color of law" that is not authorized or "discloses or uses information obtained under color of law by electronic surveillance, knowing or having reason to know that the information was obtained through electronic surveillance" that was not authorized. *Id*. § 1809(a)(1), (2). In addition, section 1809(b) states that "it is a defense to a prosecution under" section 1809(a) "that the defendant was a law enforcement or investigative officer engaged in the course of his official duties and the electronic surveillance was authorized by and conducted pursuant to a search warrant or court order of a court of competent jurisdiction."

Plaintiff has failed to plead any facts plausibly suggesting that Mr. Strzok violated either section 1809(a)(1) or (2), or that he acted with the requisite intent. Section 1809(b) and qualified immunity also bar Plaintiff's FISA claims.

### 1. There are no factual allegations that Mr. Strzok "engaged" in electronic surveillance.

An individual who "engage[s] in" surveillance is one who "*performs*" the surveillance. *See United States v. Koyomejian*, 946 F.2d 1450, 1459 n.16 (9th Cir. 1991) (emphasis added); *see also Attkisson v. Holder*, 2017 WL 5013230, at *12 (E.D. Va. Nov. 1, 2017) (dismissing where "Complaint fails to allege sufficient facts to make a plausible claim that either defendant personally engaged in the alleged surveillance"). Mr. Strzok adopts and incorporates by reference the arguments in the Clinesmith brief that the rule of lenity also supports a narrow understanding of "engaged." *See* Clinesmith Br. § II.B. Mr. Strzok also adopts and incorporates by reference the arguments in the Clinesmith brief that secondary liability is unavailable in section 1810, which makes no mention of such liability. *See id.*; *see also Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 279 (D.C. Cir. 2018) ("[W]hen Congress is silent as to aiding and abetting liability, it has unambiguously foreclosed that theory of recovery."). Under the correct reading of "engaged,"

Plaintiff's claims fail as to Mr. Strzok. And even if "engaged" were interpreted broadly, dismissal would still be appropriate.

Plaintiff's allegations of surveillance consist of conclusory, group-pleading allegations that the Court should reject. *See Toumazou v. Turkish Rep. of N. Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014) ("Generally, a plaintiff cannot satisfy the minimum pleading requirements under Rule 8 of the Federal Rules of Civil Procedure by lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct." (citation omitted)). Plaintiff broadly alleges that "individual Defendants and others, known and unknown to Dr. Page, engaged in electronic surveillance against Dr. Page that was not lawfully authorized by FISA. . . and aided and abetted one another in doing so." Am. Compl. ¶¶ 220, 224, 228, 232; *see also id.* ¶ 121 (similar). The Court should disregard those allegations because they lack factual support, and are legal conclusions that parrot the FISA statute. *See Iqbal*, 556 U.S. at 678 ("[A] formulaic recitation of the elements of a cause of action will not do." (citation omitted)).

Plaintiff's own allegations concede that Mr. Strzok could not be liable for engaging in surveillance under Counts 2 through 4 (the Second, Third, and Fourth FISA Warrants). Because Mr. Strzok was no longer involved with Plaintiff's investigation at the time of the approval of the Second Warrant in January 2017,[7] he could not have engaged in surveillance of Plaintiff under the Second, Third, or Fourth FISA Warrants. Surveillance under the Second FISA Warrant began only after its approval on January 12, 2017. *See* Am. Compl. ¶ 224. And the Third and Fourth FISA Warrants were approved in April and June 2017, months after Mr. Strzok's involvement in

---

[7] The Office of Inspector General Report confirms that Mr. Strzok was no longer supervising the investigation of Plaintiff at the time of the approval of the Second Warrant in January 2017. *See* IG Report at Figs. 3.1 (p. 81) (showing Mr. Strzok as supervising Plaintiff's investigation through December 2016) and 3.2 (p. 82) (showing Mr. Strzok supervising other parts of Crossfire Hurricane beginning in January 2017).

Plaintiff's investigation ended. *Id.* ¶¶ 228, 232. Accordingly, the Amended Complaint itself contradicts any assertion that Mr. Strzok engaged in surveillance (whether "engaged" is interpreted narrowly or broadly) pursuant to the Second, Third, or Fourth Warrants.

As to the First FISA Warrant, Plaintiff does not allege that Mr. Strzok personally performed any electronic surveillance. And even if the ordinary meaning of "engaged" were ignored and it applied to more than just performing surveillance, Plaintiff does not allege that Mr. Strzok assisted, ordered, or directed anyone in performing electronic surveillance of Plaintiff. In short, nothing in the Amended Complaint approaches a factual allegation that Mr. Strzok engaged in the surveillance of Plaintiff.

Because Plaintiff lacks facts connecting Mr. Strzok to surveillance, Plaintiff spends much of his Amended Complaint on the preparation of the FISA Warrants. But allegations that individuals *prepared* the warrants does not show that those individuals *engaged* in *surveillance* following the approval of those warrants. And even assuming preparation had some marginal relevance to whether someone engaged in surveillance (which it does not), Plaintiff does not allege that Mr. Strzok prepared a FISA application. Importantly, the Inspector General concluded that "testimonial and documentary evidence we reviewed *established* that Strzok . . . played *no role* in the substantive preparation or approval of *any of the four FISA applications*, including the Woods process." IG Report at 359 (emphasis added).

Accordingly, Plaintiff has failed to state a claim that Mr. Strzok engaged in surveillance without authorization under sections 1809(a)(1) and 1810.

      **2.**     **There are no factual allegations that Mr. Strzok disclosed or used information that he knew, or should have known, was obtained through unauthorized electronic surveillance.**

Plaintiff also cannot state a claim against Mr. Strzok for disclosing or using information in violation of section 1809(a)(2). As with his engagement claims, Plaintiff does not allege any *facts*

showing that Mr. Strzok disclosed or used information obtained through unauthorized electronic surveillance, or that Mr. Strzok had any knowledge or reason to know that any such information, if he had it, would have been obtained without authorization. *See* 50 U.S.C. § 1809(a)(2).

Plaintiff's disclosure and use claims rest on conclusory allegations. According to Plaintiff, "individual Defendants and others, known and unknown to Dr. Page, . . . disclosed or used information obtained by that electronic surveillance knowing or having reason to know that the information was obtained through electronic surveillance not lawfully authorized by FISA, and aided and abetted one another in doing so." Am. Compl. ¶¶ 220, 224; 228, 232; *see also id.* ¶ 123 (similar). These allegations are "a formulaic recitation of the elements of [the] cause of action" that should not be taken as true. *See Iqbal*, 556 U.S. at 678 (citation omitted).

Plaintiff also alleges that "[o]n information and belief, Strzok and Lisa Page collaborated to disclose protected information regarding Dr. Page to the media"[8] and "[o]n information and belief, Defendants, known and unknown to Dr. Page, but including but not limited to, Comey, McCabe, Strzok, and Page, leaked information and records concerning Dr. Page that were protected from disclosure under the FISA and the Privacy Act to media outlets, including the New York Times, the Washington Post, and Yahoo News, among others." Am. Compl. ¶¶ 188–89. These allegations improperly group multiple defendants together without distinguishing who did what, and are "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citation omitted). Indeed, Plaintiff never alleges (1) *what* information was allegedly obtained through unlawful surveillance and then disclosed, (2) from *which* warrant this information supposedly came, (3) *who*, specifically as opposed to collectively, disclosed such information and

---

[8] Notably this vague statement about "protected information" does not allege that the information was protected *under FISA*.

(4) to *what* specific entity. As a result, Plaintiff has failed to give Mr. Strzok fair notice as to the claims against him. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (citation omitted)).

The only allegations that could be considered factual are a few snippets from two articles in the Washington Post and New York Times. *See* Am. Compl. ¶¶ 184, 187. But Plaintiff does not allege that *any* information in those articles was obtained through unauthorized electronic surveillance. For example, the New York Times article mentions a speech Plaintiff gave in Russia "[d]ays after Mr. Comey's new conference," *id.* ¶ 188—referring to a news conference in the *summer* of *2016*, months before any FISA surveillance had begun. That information could not have been obtained through electronic surveillance that had not yet taken place. Nor does Plaintiff allege that Mr. Strzok disclosed any of the information in that article to the New York Times.

Plaintiff's reference to an April 11, 2017 Washington Post article suffers from similar flaws. That article identifies the existence of the FISA warrants, but Plaintiff does not point to anything in that article that came from unauthorized electronic surveillance of him. The article refers to the same summer 2016 Russia speech in the New York Times article, as well as a meeting Plaintiff had in Russia in July 2016, neither of which was information obtained through electronic surveillance, lawful or unlawful. *Id.* ¶ 184. And although Plaintiff misleadingly quotes a text

message from Mr. Strzok about a "media leak strategy"[9] from April 10, 2017, *id.* ¶ 183, Plaintiff does not allege that Mr. Strzok disclosed the information in the April 2017 article to the Washington Post.

Finally, Plaintiff has not alleged that Mr. Strzok, even assuming he used or disclosed information (which he did not), knew or had reason to know such information came from *unauthorized* surveillance, as required by section 1809(a)(2). Because Mr. Strzok had "no role" in the substantive preparation of the FISA warrants, IG Report at 359, he would not have known that any of the warrants were allegedly lacking in probable cause. Plaintiff does not offer a single factual allegation suggesting otherwise. And because Plaintiff cannot identify what information was allegedly disclosed or used, or from which warrant, there is no basis for inferring that Mr. Strzok had knowledge that this unidentified information was unlawfully obtained.

Accordingly, Plaintiff fails to state a claim that Mr. Strzok disclosed or used information in violation of 50 U.S.C. §§ 1809(a)(2) and 1810.

### 3. There are no factual allegations that Mr. Strzok acted "intentionally."

Mr. Strzok adopts and incorporates by reference the arguments in the Somma brief concerning the required showing for pleading an intentional violation of section 1809(a). *See* Somma Br. § III.A. Because Plaintiff has not alleged that Mr. Strzok engaged in any surveillance,

---

[9] Other texts from that day that Plaintiff has omitted from his Amended Complaint show that Mr. Strzok was referring to a strategy to *combat* leaks. *See* Press Release, House Comm. On Oversight & Reform, *Cummings and Nadler Issue Statement After GOP Leaks and Mischaracterizes Documents—Again* (Sept. 11, 2018), https://oversight.house.gov/news/press-releases/cummings-and-nadler-issue-statement-after-gop-leaks-and-mischaracterizes (quoting earlier texts from same day that "DoJ getting all political and about to blown (sic) up the media leak regs and turn this into a circus" and "if they are going to try to blow up the regs we need to get that to andy and d soonest"). Similarly, Plaintiff's reference to text messages on April 12, 2017 and April 22, 2017 are irrelevant.

-15-

or disclosed or used any information obtained from surveillance, Plaintiff has also failed to allege any facts remotely suggesting that Mr. Strzok acted with an intent to violate FISA.

### 4.     Section 1809(b) and qualified immunity bar Plaintiff's claims.

Mr. Strzok adopts and incorporates by reference the arguments in the other Defendants' briefs that 50 U.S.C. § 1809(b) is an affirmative defense that precludes Plaintiff's FISA claims. *See, e.g.*, Somma Br. § III.B; McCabe Br. § I.B; Pientka Br. § I.C. At the relevant times, Mr. Strzok was a law enforcement or investigative officer,[10] and any surveillance would have been "authorized by and conducted pursuant to a search warrant or court order of a court of competent jurisdiction." 50 U.S.C. § 1809(b).

To the extent the Court does not interpret section 1809(b) as a complete defense, then Mr. Strzok would be entitled to qualified immunity. *Cf. Berry v. Funk*, 146 F.3d 1003, 1013 (D.C. Cir. 1998) (declining to apply qualified immunity to statutory claims under Title III because of complete defense provision). A defendant-official is entitled to qualified immunity "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). Mr. Strzok has not violated any provision of FISA, and it is not clearly established that FISA applies to a government official who has not performed, or even directed, surveillance or used or disclosed any information obtained through allegedly unlawful surveillance. *See, e.g.*, *Attkisson v. Holder*, 925 F.3d 606, 623 (4th Cir. 2019)

---

[10] *See* 18 U.S.C. § 3052 ("The Director, Associate Director, Assistant to the Director, Assistant Directors, inspectors, and agents of the Federal Bureau of Investigation of the Department of Justice may carry firearms, serve warrants and subpoenas issued under the authority of the United States and make arrests without warrant for any offense against the United States committed in their presence, or for any felony cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony.").

(holding that the Attorney General and Postmaster General were entitled to qualified immunity because there was a "lack of settled precedent supporting the plaintiffs' ECPA claim" that those who "procured" a wrongful interception, use or disclosure of electronic communications were liable). Mr. Strzok also adopts and incorporates by reference the arguments in the Somma brief concerning the absence of clearly established rights under FISA. *See* Somma Br. § V.

## II.     THE *BIVENS* CLAIM SHOULD BE DISMISSED

The *Bivens* claim should be dismissed for several reasons: (1) it is untimely; (2) the Court should not extend *Bivens* to the new context alleged by Plaintiff; (3) even if the Court extended *Bivens* to this context, Plaintiff has not alleged that Mr. Strzok personally violated Plaintiff's Fourth Amendment rights; and (4) Mr. Strzok is entitled to qualified immunity.

*First*, Mr. Strzok adopts and incorporates by reference the arguments in the Clinesmith brief that the *Bivens* claim is time-barred. *See* Clinesmith Br. § I.A. Mr. Strzok also adopts and incorporates by reference the arguments in the Somma brief that the *Bivens* claim is barred even if a three-year limitations period applies. *See* Somma Br. § I.A; *supra* § I.A.

*Second*, Mr. Strzok also adopts and incorporates by reference the argument that *Bivens* does not apply to the new context alleged by Plaintiff. *See* Clinesmith Br. § I.B-C. In addition to the reasons in the Clinesmith brief, Mr. Strzok's high rank as Deputy Assistant Director of the FBI's Counterintelligence Division, Am. Compl. ¶ 26, provides further support that Plaintiff's new *Bivens* claim should not be recognized here. *See Attkisson v. Rosenstein*, 2021 WL 978821, at *5 (D. Md. Mar. 16, 2021) ("[T]he circumstances present a new *Bivens* context given the high ranks of the Defendants [including head of FBI field office] and the nature of the alleged Fourth Amendment intrusion, and Congress' extensive legislation in the area of electronic surveillance strongly counsels against creation of a new remedy."). And Mr. Strzok is not the only high-level

official sued by Plaintiff—the former Director and Deputy Director of the FBI are defendants as well.

Extending *Bivens* to a suit against several high-ranking officials runs afoul of the Supreme Court's decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). There, the Court concluded that when a plaintiff seeks to use *Bivens* against officials in the Executive Branch, "the burden and demand of litigation might well prevent [such officials]—or, to be more precise, future officials like them—from devoting the time and effort required for the proper discharge of their duties." *Id.* at 1860. That concern is heightened in the context of national security, where "[t]he risk of personal damages liability is more likely to cause an official to second-guess difficult but necessary decisions concerning national-security policy." *Id.* at 1861. Accordingly, extending *Bivens* to this case—where Plaintiff has sued multiple high-ranking officials in a matter involving national security—is inappropriate.

*Third*, if the Court reaches the merits of the *Bivens* claim, it should dismiss because Plaintiff has failed to allege Mr. Strzok's personal participation in a constitutional violation. To state a *Bivens* claim, "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. As a result, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Id.* Accordingly, Mr. Strzok's supervisory status until January 2017 for Plaintiff's investigation is not enough to plead a *Bivens* claim under *Iqbal*. Instead, Plaintiff must plead specific facts showing that Mr. Strzok took actions that violated the Constitution. He has not done so.

Plaintiff's *Bivens* claim focuses on allegedly false or misleading statements in the FISA warrant applications that resulted in electronic surveillance. To plead a Fourth Amendment

-18-

violation based on such false statements, Plaintiff must allege that Mr. Strzok made a "false statement knowingly and intentionally, or with reckless disregard for the truth" and that the false statement "is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978); *see also United States v. Williams*, 827 F.3d 1134, 1146 (D.C. Cir. 2016) ("This court has extended *Franks* to apply not only where the Government is alleged to have made false statements but also where a defendant alleges that the Government knowingly and intentionally (or with reckless disregard) omitted a fact that would have defeated probable cause." (citation omitted)).

Nothing in the Amended Complaint suggests that Mr. Strzok violated Plaintiff's Fourth Amendment rights. As discussed above, Plaintiff does not allege that Mr. Strzok had any role in the preparation or submission of the four FISA applications, and the IG Report, at 359, confirmed that he did not. It is thus unsurprising that Plaintiff nowhere asserts that Mr. Strzok made a false statement or material omission in a FISA application. And because Plaintiff does not plead any false statements or omissions from Mr. Strzok, Plaintiff also does not allege that Mr. Strzok's nonexistent statements or omissions were material to a probable cause finding. Accordingly, Plaintiff has not pleaded any facts supporting the elements of a *Bivens* claim, even if one existed here.

*Fourth*, Mr. Strzok is also entitled to qualified immunity. Plaintiff has not alleged facts showing that Mr. Strzok violated his Fourth Amendment rights, *see supra*. In addition, it is not "clearly established" that a supervisory government official violates the Fourth Amendment where the official had no substantive role in the preparation or submission of the warrants for electronic surveillance that allegedly contained misleading statements or omissions. *See Iqbal*, 556 U.S. at 677 (explaining that government officials "may not be held accountable for the misdeeds of

their agents" under *Bivens*). Mr. Strzok also adopts and incorporates by reference the arguments in the McCabe brief that it is not clearly established that officers who are not affiants can be liable under the Fourth Amendment for false statements or omissions in warrants. *See* McCabe Br. § IV.A.

Accordingly, the *Bivens* claim should be dismissed.

## III.   PLAINTIFF'S DAMAGES ARE NOT TRACEABLE TO MR. STRZOK'S CONDUCT

Mr. Strzok adopts and incorporates by reference the arguments from the Somma brief that Plaintiff's claims should be dismissed because he has not alleged any facts showing that his damages were caused by the alleged surveillance or any conduct by Mr. Strzok. *See* Somma Br. § IV.

## CONCLUSION

For the reasons above, the Court should dismiss all claims against Mr. Strzok with prejudice.

Dated: May 18, 2021                              Respectfully submitted,


                                                 /s/ *Aitan Goelman*
                                                 Aitan Goelman (D.C. Bar No. 446636)
                                                 ZUCKERMAN SPAEDER LLP
                                                 1800 M Street, NW, Suite 1000
                                                 Washington, DC 20036
                                                 Tel: (202) 778-1800
                                                 Fax: (202) 822-8106
                                                 E-mail: agoelman@zuckerman.com

                                                 *Attorney for Defendant*