# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CARTER W. PAGE,

                Plaintiff,

      v.

JAMES B. COMEY, *et al.*,

                Defendants.

Case No.: 1:20-cv-03460-KBJ

<u>ORAL ARGUMENT REQUESTED</u>

## MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
## <u>DEFENDANT ANDREW MCCABE'S MOTION TO DISMISS</u>

Brigida Benitez (DC Bar No. 446144)
Lisa M. Southerland (application pending)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone:    (202) 429-3000
bbenitez@steptoe.com
lsoutherland@steptoe.com

*Counsel for Defendant Andrew McCabe in*
*his individual capacity*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 2

   I.   Plaintiff's Amended Complaint ................................................................................ 2

   II.  The Foreign Intelligence Surveillance Act ............................................................ 4

LEGAL STANDARD ........................................................................................................ 6

ARGUMENT .................................................................................................................... 7

   I.   Plaintiff Has Failed to State a FISA Claim Against McCabe ................................. 7

      A.  The Amended Complaint Does Not Plausibly Allege that McCabe Personally or
          Intentionally Violated FISA ........................................................................... 7

      B.  McCabe Has an Affirmative Defense Under FISA ....................................... 12

   II.  Plaintiff Has Failed to State a *Bivens* Claim Against McCabe ........................... 13

      A.  The Amended Complaint Includes No Specific Factual Allegations Regarding
          McCabe's Actions ......................................................................................... 13

      B.  The Amended Complaint Impermissibly Seeks to Extend *Bivens* to a "New Context" 15

        1.  Plaintiff's claims meaningfully differ from those in existing *Bivens* cases.......... 16

        2.  An existing comprehensive remedial scheme and FISA's implication of
           sensitive areas such as national security counsel against expanding *Bivens* ........ 18

   III. Plaintiff's Claims are Time-Barred ..................................................................... 20

   IV. Plaintiff Has Not Plausibly Alleged That His Damages Are Fairly Traceable to Any
       Unlawful Electronic Surveillance ........................................................................ 24

   V.  Qualified Immunity Bars Plaintiff's FISA and *Bivens* Claims Against McCabe .............. 24

      A.  Plaintiff Has Not Plausibly Alleged a "Clearly Established" Fourth Amendment
          Right .............................................................................................................. 25

      B.  Plaintiff Has Not Plausibly Alleged that McCabe Personally and Unreasonably
          Infringed on Plaintiff's Fourth Amendment Rights .................................... 31

   CONCLUSION ............................................................................................................ 33

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Al-Haramain Islamic Found., Inc. v. Obama*,
  705 F.3d 845 (9th Cir. 2012) ...................................................7

*Annappareddy v. Pascale*,
  __ F.3d __, 2021 WL 1603987 (4th Cir. 2021) .....................................17

*\*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) ...................................................24, 25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................6, 13, 14, 31

*\*Attkisson v. Holder*,
  925 F.3d 606 (4th Cir. 2019) .....................................16, 17, 19, 20

*Attkisson v. Holder*,
  No. 1:17-cv-364, 2017 WL 5013230 (E.D. Va. Nov. 1, 2017), *aff'd as
  amended*, 925 F.3d 606 (2019) ...................................................12

*Banneker Ventures, LLC v. Graham*,
  798 F.3d 1119 (D.C. Cir. 2015) ...................................................23

*Barnes v. District of Columbia*,
  238 F. Supp. 3d 106 (D.D.C. 2017) ............................................... *passim*

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................6, 11

*Berman v. Crook*,
  293 F. Supp. 3d 48 (D.D.C. 2018) ...................................................22

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
  403 U.S. 388 (1971) ............................................... *passim*

*Cameron v. Thornburgh*,
  983 F.2d 253 (D.C. Cir. 1993) ...................................................31

*Carlson v. Green*,
  446 U.S. 14 (1980) ...................................................13, 16, 17

*Corsi v. Mueller*,
  422 F. Supp. 3d 51 (D.D.C. 2019) ...................................................15, 19

*Davis v. Passman*,
    442 U.S. 228 (1979)......................................................................................................13, 16, 17

*District of Columbia v. Wesby*,
    138 S. Ct. 577 (2018)......................................................................................................31

*Doe v. U.S. Dep't of Justice*,
    753 F.2d 1092 (D.C. Cir. 1985).......................................................................................22

*Earle v. District of Columbia*,
    707 F.3d 299 (D.C. Cir. 2012).........................................................................................21

*Fazaga v. Federal Bureau of Investigation*,
    965 F.3d 1015 (9th Cir. 2020) ................................................................................... *passim*

*Fox v. Gov't of D.C.*,
    794 F.3d 25 (D.C. Cir. 2015)...........................................................................................25

*Franks v. Delaware*,
    438 U.S. 154 (1978)................................................................................................... *passim*

*Gill v. Dep't of Justice*,
    Civil Action No. 15-824 (RMC), 2016 WL 3982450 (D.D.C. July 22, 2016)........................7

*Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*,
    545 U.S. 409 (2005).......................................................................................................21

*Greenpeace, Inc. v. Dow Chem., Co.*,
    97 A.3d 1053 (D.C. 2014)...............................................................................................21

*Hampton v. Comey*,
    No. 14-cv-1607 (ABJ), 2016 WL 471277 (D.D.C. Feb. 8, 2016) ...........................................22

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982).......................................................................................................24

*Hernandez v. Mesa*,
    140 S. Ct. 735 (2020).....................................................................................................15

*Johnson v. District of Columbia*,
    927 F.3d 539 (D.C. Cir. 2019) .................................................................................25, 26, 31

*Jones v. Kirchner*,
    835 F.3d 74 (D.C. Cir. 2016)...........................................................................................21

*Kaempe v. Myers*,
    367 F.3d 958 (D.C. Cir. 2004)...........................................................................................6

*Klay v. Panetta*,
   924 F. Supp. 2d 8 ..........................................................................................................31

*Klayman v. Obama*,
   125 F. Supp. 3d 67 (D.D.C. 2015) .................................................................................23

*Lash v. Lemke*,
   786 F.3d 1 (D.C. Cir. 2015) ............................................................................................25

*\*Loumiet v. United States*,
   948 F.3d 376 (D.C. Cir. 2020) .................................................................15, 16, 18, 20

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................................24

*Malley v. Briggs*,
   475 U.S. 335 (1986) ...........................................................................................25, 28, 31

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) ........................................................................................................19

*Morrow v. United States*,
   723 F. Supp. 2d 71 (D.D.C. 2010) ............................................................................6, 12

*Pierce v. Mattis*,
   256 F. Supp. 3d 7 (D.D.C. 2017) ...................................................................................30

*Pitts v. District of Columbia*,
   177 F. Supp. 3d 347 (D.D.C. 2016) ...............................................................................30

*Rasul v. Myers*,
   512 F.3d 644 (D.C. Cir. 2008) ........................................................................................25

*S.H. v. District of Columbia*,
   270 F. Supp. 3d 260 (D.D.C. 2017) ..........................................................................29, 30

*Sewell v. Bernardin*,
   795 F.3d 337 (2d Cir. 2015) ...........................................................................................21

*Sherrod v. McHugh*,
   334 F. Supp. 3d 219 (D.D.C. 2018) ..........................................................................29, 30

*Simpkins v. D.C. Gov't*,
   108 F.3d 366 (D.C. Cir. 1997) ...................................................................................14, 15

*Sparshott v. Feld Entm't, Inc.*,
   311 F.3d 425 (D.C. Cir. 2002) ........................................................................................21

*Sykes v. U.S. Att'y for D.C.*,
   770 F. Supp. 2d 152 (D.D.C. 2011) ................................................................20, 24

*Tah v. Glob. Witness Publ'g, Inc.*,
   991 F.3d 231 (D.C. Cir. 2021) ..........................................................................6

*Toumazou v. Turkish Rep. of N. Cyprus*,
   71 F. Supp. 3d 7 (D.D.C. 2014) ................................................................10, 12

*United States v. Koyomejian*,
   946 F.2d 1450 (9th Cir. 1991) ..........................................................................12

*United States v. Leon*,
   468 U.S. 897 (1984) ......................................................................... *passim*

*Voinche v. Obama*,
   744 F. Supp. 2d 165 (D.D.C. 2010) ....................................................................14

*Wilson v. Garcia*,
   471 U.S. 261 (1985) ..........................................................................................21

*Zhao v. Unknown Agent of CIA*,
   411 F. App'x 336 (D.C. Cir. 2010) ....................................................................22

*Ziglar v. Abbasi*,
   137 S. Ct. 1843 (2017) ......................................................................... *passim*

**Statutes**

18 U.S.C. § 2707(f) ..............................................................................................21

18 U.S.C. § 2520(e) ..............................................................................................21

42 U.S.C. § 1983 .................................................................................21, 22, 25

50 U.S.C. §§ 1801(a)-(b) .........................................................................................5

50 U.S.C. § 1804 ....................................................................................................5

50 U.S.C. § 1804(a) ...............................................................................................5

50 U.S.C. § 1804(a)(3) ...........................................................................................5

50 U.S.C. § 1804(a)(6) ..........................................................................................31

50 U.S.C. § 1805 ....................................................................................................5

50 U.S.C. § 1805(a)(2)(A) .......................................................................................5

50 U.S.C. § 1805(d) ......................................................................................5, 24

50 U.S.C. § 1809 ......................................................................................5, 7, 11

50 U.S.C. § 1809(2) ...........................................................................................11

50 U.S.C. § 1809(a) ....................................................................................6, 7, 12

50 U.S.C. § 1809(a)(1)-(2) .................................................................................11

50 U.S.C. § 1809(a)(2) .......................................................................................12

50 U.S.C. § 1809(b) ...........................................................................................12

50 U.S.C. § 1809(b) .............................................................................................6

50 U.S.C. § 1810 ........................................................................................4, 5, 7

D.C. Code § 12-301 ......................................................................................21, 22

D.C. Code § 12-301(4) .......................................................................................22

D.C. Code § 12-301(8) ..................................................................................22, 23

## Other Authorities

Ellen Nakashima, Devlin Barrett, & Adam Entous, *FBI obtained FISA warrant to monitor former Trump advisor Carter Page*, WASH. POST, Apr. 11, 2017 ...........................23

Fed. R. Civ. P. 8 .................................................................................................10

Fed. R. Civ. P. 12(b)(6).......................................................................................20

H.R. Rep. No. 95-1283, Pt. I (1978) ..............................................................7, 9, 12

# INTRODUCTION

This action stems from the Federal Bureau of Investigation's ("FBI") investigation into potential foreign agents associated with Donald Trump's 2016 presidential campaign.  In the course of that investigation, the Department of Justice ("DOJ") and the FBI sought and obtained a series of warrants and warrant renewals ("FISA Warrants") for electronic surveillance under the Foreign Intelligence Surveillance Act of 1978, 50 U.S.C. § 1801 *et seq.* ("FISA").  The four FISA Warrants that are the subject of the Amended Complaint authorized electronic surveillance of Plaintiff Carter W. Page, a consultant to the Trump campaign, who was suspected of having ties to Russian agents.

Plaintiff now contends that these warrants were invalid and asserts claims under FISA and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against a number of defendants, including Andrew McCabe, who was the Deputy Director of the FBI.  Those claims should all be dismissed as a matter of law.

First, as to the FISA claims, Plaintiff's claims fail because he does not plausibly allege that McCabe personally and intentionally violated FISA, and because FISA provides an affirmative defense for law enforcement officers engaged in their official duties when the allegedly unlawful surveillance was authorized by, and conducted pursuant to, a warrant, as it was here.

Second, Plaintiff's fatally deficient pleading as to McCabe's individual, intentional actions also dooms his *Bivens* claim, which is predicated on the same conduct as the FISA claims.  The *Bivens* claim also fails because Plaintiff improperly seeks to extend *Bivens* to a "new context," which the U.S. Supreme Court disfavors and has declined to do for more than 40 years.

Third, even if Plaintiff had stated viable claims under FISA or *Bivens*, such claims are

barred by the District of Columbia's statute of limitations.

Fourth, Plaintiff has not plausibly alleged any purported injuries that are fairly traceable to the allegedly unlawful electronic surveillance.

Finally, Plaintiff's claims are all barred by qualified immunity. Plaintiff has not alleged a "clearly established" Fourth Amendment right, nor has he alleged that McCabe personally violated *any* Fourth Amendment right.

Accordingly, all claims as to McCabe should be dismissed with prejudice.

## BACKGROUND

### I.    PLAINTIFF'S AMENDED COMPLAINT[1]

According to the Amended Complaint, Plaintiff is a U.S. citizen who "was a volunteer member of an informal foreign policy advisory committee to then-candidate Donald J. Trump's election campaign." Am. Compl. ¶ 18. Plaintiff alleges that the FBI opened its "Crossfire Hurricane" investigation on July 31, 2016, "concerning the Foreign Agent Registration Act (FARA), to determine whether 'individual(s) associated with the Trump campaign are witting of and/or coordinating activities with the Government of Russia.'" *Id.* ¶ 5.

Plaintiff alleges that the FBI sought the FISA Warrants to authorize electronic surveillance of his communications. *Id.* ¶¶ 3, 5. The Amended Complaint alleges that the FISA Warrants[2] were submitted for probable cause determinations to the Foreign Intelligence Surveillance Court ("FISC") on October 21, 2016, *id.* ¶ 76, January 12, 2017, *id.* ¶ 92, April 7, 2017, *id.* ¶ 103, and June 29, 2017, *id.* ¶ 114. Plaintiff contends that the resulting FISA Warrants

---

[1] This factual summary is based on the allegations in the Amended Complaint, which McCabe accepts as true for purposes of his Motion to Dismiss.

[2] Plaintiff refers to the FISA Warrants in the order in which they were submitted to the Foreign Intelligence Surveillance Court. Am. Compl. ¶ 3 n.1. For clarity, this Memorandum will do the same.

were invalid because they were issued without probable cause that he was an "agent of a foreign power," the standard under FISA. *See, e.g.*, *id.* ¶¶ 3, 7-8.

Rather, Plaintiff asserts that the sole justification for the FISA Warrants consisted of documents and reporting from Christopher Steele, a confidential human source. *See id.* ¶ 7. Plaintiff claims that Steele's reporting was unreliable and could not substantiate a probable cause finding because it was "political opposition research" funded by either the Democratic Party or the Hillary Clinton presidential campaign. *Id.*; *see also id.* ¶¶ 11-12.

Plaintiff further alleges that to justify its reliance on Steele's reporting, the FBI purposefully misrepresented or omitted relevant facts that would go to the FISC's probable cause determination. *Id.* ¶¶ 11-17. For instance, Plaintiff alleges that after seeing news articles regarding Plaintiff's purported contacts with Russian individuals, he wrote a letter to the FBI "categorically den[ying]" such contacts and noting that he had previously cooperated "with the CIA and FBI to combat Russian spying." *Id.* ¶ 12. He alleges that the FBI "disregard[ed] its procedures" by failing to investigate Steele further. *See id.* The Amended Complaint further alleges that the FBI compounded this error by not informing the FISC of these facts, *see id.* ¶ 14, and ultimately "altered an email from the CIA" to downplay the fact that Plaintiff "had been a CIA source serving for many years as an operational contact." *Id.* ¶ 15. In essence, Plaintiff claims that the individual defendants "fabricated or intentionally disregarded" evidence and misled the FISC so that they could obtain the FISA Warrants. *Id.* ¶ 17.

Despite these broad allegations, there are few specific allegations as to McCabe. Plaintiff alleges that McCabe was an "original and primary participant" in the FBI's investigation, *id.* ¶ 24, who "was involved in decisions to surveil [Plaintiff] from early in the . . . investigation," *id.* ¶ 131. Plaintiff claims that McCabe was "briefed" about Steele's reporting in August 2016 by an

Associate Attorney General. *Id.* ¶ 61. He further alleges that on or about August 25, 2016, McCabe "directed a supervisor working on the Crossfire Hurricane investigation to contact the FBI New York Field Office for information that could assist" the investigation. *Id.* ¶ 132.

McCabe was also allegedly "briefed" about concerns that Steele's reporting was unreliable, biased, and/or politically motivated in October 2016, *id.* ¶¶ 73, 135, 143, but allegedly "ignored" warnings from DOJ that they needed more information about Steele's motives, *id.* ¶ 133. According to the Amended Complaint, McCabe "approved the Crossfire Hurricane team's use of Steele in the investigation," though it does not allege when he did so. *Id.* Plaintiff further alleges that McCabe approved the disclosure of "protected information regarding [Plaintiff]" to the media and that he "leaked information and records concerning [Plaintiff] that were protected from disclosure . . . to media outlets[.]" *Id.* ¶¶ 188-89.

As to the FISA Warrants, Plaintiff makes only two specific allegations regarding McCabe:

- McCabe "approved the application for the Second FISA warrant." *Id.* ¶ 136; and

- McCabe "signed the application for the Fourth FISA Warrant." *Id.* ¶ 137.

Plaintiff asserts civil FISA claims pursuant to 50 U.S.C. § 1810 (Counts I-IV) and a *Bivens* claim arising under the Fourth Amendment (Count VI) against McCabe and each of the other individual defendants.[3]

## II.  THE FOREIGN INTELLIGENCE SURVEILLANCE ACT

Broadly speaking, FISA governs the circumstances in which the government can electronically surveil individuals suspected of being a "foreign power" or "agent of a foreign

---

[3] Plaintiff also alleges a Federal Tort Claims Act against the United States (Count V), a Privacy Act claim against DOJ for Failure to Amend (Count VII), and Privacy Act claims against DOJ and FBI for Unlawful Disclosures (Count VIII).

power."  50 U.S.C. § 1804(a)(3); *see also* 50 U.S.C. §§ 1801(a)-(b) (defining "foreign power"
and "agent of a foreign power").  In relevant part, it requires the government to obtain an order
(or "warrant") from a FISC judge authorizing such surveillance.  50 U.S.C. § 1804(a).  FISA sets
out the specific information the government must set forth in its application, *id.* § 1804, as well
as the specific findings a FISC judge must make before it can authorize the surveillance, *id.* §
1805, and limits the duration of such an order, in relevant part, to 90 days, *see id.* § 1805(d).  At
issue here is the requirement that the application include facts sufficient to support probable
cause that the target is a foreign power or agent of a foreign power, within the meaning of FISA.
*See id.* § 1805(a)(2)(A).

FISA also creates a private right of action for certain individuals subjected to unlawful
electronic surveillance.  Section 1810 provides, in relevant part:

> An aggrieved person, other than a foreign power or an agent of a
> foreign power, as defined in section 1801(a) or (b)(1)(A) of this title,
> respectively, who has been subjected to an electronic surveillance or
> about whom information obtained by electronic surveillance of such
> person has been disclosed or used in violation of section 1809 of this
> title shall have a cause of action against any person who committed
> such violation . . . .

*Id.* § 1810.

This provision refers to § 1809, which is a criminal provision stating:

> A person is guilty of an offense if he intentionally—
>
> (1) engages in electronic surveillance under color of law except as
> authorized by this chapter, chapter 119, 121, or 206 of Title 18, or
> any express statutory authorization that is an additional exclusive
> means for conducting electronic surveillance under section 1812 of
> this title;
>
> (2) discloses or uses information obtained under color of law by
> electronic surveillance, knowing or having reason to know that the
> information was obtained through electronic surveillance not
> authorized by this chapter, chapter 119, 121, or 206 of Title 18, or
> any express statutory authorization that is an additional exclusive

> means for conducting electronic surveillance under section 1812 of this title.

*Id.* § 1809(a).  That section also provides an affirmative defense:

> It is a defense to a prosecution under subsection (a) that the defendant was a law enforcement or investigative officer engaged in the course of his official duties and the electronic surveillance was authorized by and conducted pursuant to a search warrant or court order of a court of competent jurisdiction.

*Id.* § 1809(b).

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter to state "a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 239 (D.C. Cir. 2021) (citing *Iqbal*, 556 U.S. at 678).  A complaint must therefore include more than mere "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint cannot couch legal conclusions as factual allegations to satisfy these pleading requirements.  *Iqbal*, 556 U.S. at 679.  "Although the Court must accept the plaintiff['s] factual allegations as true, conclusory allegations are not entitled to an assumption of truth, even those allegations pled with factual support need only be accepted to the extent that 'they plausibly give rise to an entitlement to relief.'"  *Morrow v. United States*, 723 F. Supp. 2d 71, 76-77 (D.D.C. 2010) (quoting *Iqbal*, 556 U.S. at 664); *see also Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) (reviewing court need not accept factual allegations as true "insofar as they contradict exhibits to the complaint or matters subject to judicial notice").  Moreover, a court "should be wary of finding" that allegations "sufficiently nudge[] the claims into the realm of plausibility" when "'more likely explanations' than those alleged by the plaintiff exist[.]'"  *Morrow*, 723 F. Supp. 2d at 77 (quoting *Iqbal*, 556 U.S. 682).

ARGUMENT[4]

## I.     PLAINTIFF HAS FAILED TO STATE A FISA CLAIM AGAINST MCCABE

Plaintiff's claims as to McCabe fail both because there are no allegations that McCabe intentionally violated FISA, and because FISA itself provides an affirmative defense for officers like McCabe who relied on a warrant.

### A.     The Amended Complaint Does Not Plausibly Allege that McCabe Personally or Intentionally Violated FISA

To state a cause of action under § 1810 of FISA, Plaintiff must also allege a violation of FISA's criminal provision, 50 U.S.C. § 1809.  *See Gill v. Dep't of Justice*, Civil Action No. 15-824 (RMC), 2016 WL 3982450, at *7 (D.D.C. July 22, 2016) (explaining that FISA "provides a civil cause of action against an individual who violates § 1809") (footnote omitted); *see also Al-Haramain Islamic Found., Inc. v. Obama*, 705 F.3d 845, 851 (9th Cir. 2012) ("An offense under § 1810 is predicated on a violation of § 1809[.]").  Section 1809, in turn, imposes liability only upon a defendant who "*intentionally*" either "engages in [unlawful] electronic surveillance under color of law" or "discloses or uses information obtained under color of law by electronic surveillance, *knowing or having reason to know* that the information was obtained through [unlawful] electronic surveillance . . . ."  50 U.S.C. § 1809(a) (emphasis added).  By "intentionally," Congress "intended to reflect the most strict standard for criminal culpability," meaning that liability under § 1809 requires a showing that the "conduct engaged in . . . was engaged in with 'a conscious objective or desire' to commit a violation."  H.R. Rep. No. 95-1283, Pt. I, at 97 (1978); *see also Gill*, 2016 WL 3982450 at *7 n.4 (setting out criminal and civil liability under FISA).  But the Amended Complaint is devoid of any plausible allegations

---

[4] For judicial economy, McCabe joins the Motions to Dismiss of defendants James B. Comey, Kevin Clinesmith, Peter Strzok, Lisa Page, Joe Pientka III, Stephen Somma, and Brian J. Auten, and incorporates by reference all arguments in those motions that apply to McCabe.

regarding McCabe's intent, and this is fatal to Plaintiff's FISA claims against him.

In *Fazaga v. Federal Bureau of Investigation*, 965 F.3d 1015 (9th Cir. 2020), three Muslim plaintiffs brought FISA and *Bivens* claims against five FBI agents arising out of allegedly unlawful electronic surveillance, *id.* at 1024.  The plaintiffs claimed that they were targeted as part of a surveillance operation aimed primarily at collecting information on Muslims.  *Id.* at 1026.  As part of that operation, the FBI enlisted a paid confidential informant to pose as a Muslim convert.  *Id.*

The plaintiffs named as defendants the two FBI special agents who "closely supervised" the informant's work ("handling agents").  *Id.* at 1026.  The handling agents allegedly described the purpose of the investigation to the informant; described surveillance tactics; provided surveillance equipment; and set "goals" for the informant, such as collecting the contact information of or meeting with a certain number of people each day, entering specific buildings, and having meals and meetings with specific people.  *Id.*  The plaintiffs also named as defendants the Assistant Director in Charge of the FBI's Los Angeles Field Office, the Special Agent in Charge of the FBI's Santa Ana branch office, and a Special Agent assigned to the Santa Ana branch office (collectively, "non-handling agents"), *id.* at 1025.  The plaintiffs alleged that the non-handling agents had supervisory authority over the handling agents and/or directly monitored or directed the handling agents' actions.  *See id.* at 1039 n.21.

In pertinent part,[5] the court concluded that the plaintiffs had failed to state claims as to

---

[5]  The court grouped the FBI's surveillance into three categories:  "(1) recordings made by [the informant] of conversations to which he was a party; (2) recordings made by [the informant] of conversations to which he was not a party (i.e., the recordings of conversations in the mosque prayer hall); and (3) recordings made by devices planted by FBI agents in" certain of the plaintiffs' office, house, car, and phone.  *Fazaga*, 965 F.3d at 1032.  Having found that all of the defendants were entitled to qualified immunity for the first two categories, the court only assessed allegations regarding the individual defendants for purposes of the third category.  *See id.* at 1038 n.20.

the non-handling agents.  *Id.* at 1038-39.  Unlike with the handling agents,[6] the plaintiffs did not

plausibly allege that the non-handling agents were personally involved with or knew about the

planting of the electronic devices.  *Id.* at 1038.  Allegations that the non-handling agents had

some oversight of the informant because they read the informant's notes and received reports

from the handling agents were not enough because the plaintiffs had not alleged that *the*

*informant* had planted or was involved with planting the surveillance devices.  *Id.*  Instead,

"those actions [were] attributed only to unnamed FBI agents."  *Id.* at 1039.  The court therefore

concluded that there were no allegations supporting the claim that the non-handling agents knew

about the unlawful surveillance.  *Id.* at 1038-39.  Allegations showing that a defendant *intended*

to conduct *unlawful* electronic surveillance are therefore key to stating a FISA claim.  *See id.* at

1038-39; *see also* H.R. Rep. No. 95-1283, Pt. I, at 97 ("What is proscribed is an intentional

violation of an order or one of the specified provisions, not just intentional conduct.").

Here, there are no allegations at all regarding McCabe's personal intent.  Instead, the

Amended Complaint alleges only that he was "an original and primary participant in the

Crossfire Hurricane investigation."  Am. Compl. ¶ 24.  McCabe was allegedly "briefed" on

certain issues related to the investigation, including sometime in August 2016 when he allegedly

learned about Steele's research and "accusations."  *Id.* ¶¶ 61, 132.  On August 25, 2016, Plaintiff

---

[6] In contrast, the court concluded that there were sufficient factual allegations to support the plaintiffs' claim that the handling agents were responsible for unlawfully surveilling the home and office of certain plaintiffs.  *Fazaga*, 965 F.3d at 1038.  It pointed to specific allegations in the complaint:  that the handling agents told the informant that the FBI (1) had audio surveillance in the house of one plaintiff; (2) had other electronic surveillance in another plaintiff's office; and (3) and had other electronic surveillance "'spread indiscriminately' across 'at least eight area mosques . . .'" and that "'they could get in a lot of trouble if people found out what surveillance they had in the mosques.'"  *Id.* at 1038.  The plaintiffs further alleged that the handling agents had instructed the informant to wear a hidden video camera to give the FBI an understanding of one mosque's layout, and that one of the handling agents told the informant he had used that information to enter the mosque.  *Id.*  Unlike the conclusory allegations regarding the non-handling agents—and unlike the allegations Plaintiff asserts against McCabe here—these specific facts stated a plausible FISA claim because they showed both that the handling agents themselves had conducted unlawful electronic surveillance and that they knew that conduct was wrong.  *See id.*

alleges that McCabe instructed a member of the investigation team to contact the FBI's New York Field Office, *id.* ¶ 132, but makes no allegation of any improper intent.

On October 12, 2016, Plaintiff alleges another instance during which McCabe was allegedly "briefed" on matters relating to the Steele reporting and allegedly "brushed aside" concerns from a DOJ attorney that Steele's research was politically motivated and therefore potentially unreliable. *Id.* ¶ 73. However, the Amended Complaint makes clear in the very next paragraphs that (1) DOJ "held up the warrant application" due to these concerns; (2) a footnote addressing these concerns was added to the application for the warrant; and (3) the application was in fact "submitted to the FISC on October 21, 2016." *Id.* ¶¶ 74, 76. There are no allegations suggesting that McCabe was directly or personally involved in any way with drafting the contents of that footnote, and, in fact, the footnote must have been acceptable on its face to both the FBI and DOJ, who had "held up" the application in the first place, *id.* ¶ 74, and without whose approval the warrant application would not have gone forward, *id.* ¶ 135.

While Plaintiff alleges intent and purpose as to "the FBI" or "the individual defendants," *see, e.g.*, Am. Compl. ¶¶ 13, 17, 69, 221, 225, 229, 233, 240-41, 245, 248, these general, group-pleading-type allegations are insufficient to state a claim where they are unsupported by specific *facts*. *See Toumazou v. Turkish Rep. of N. Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014) (internal quotations omitted) (explaining that "lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct" will generally not satisfy minimum pleading requirements of FRCP 8). The allegations as to McCabe's intent to "leak" protected information suffer from the same defective group-pleading and are either even more conclusory, *see id.* ¶ 123 (alleging that "Defendants, both known and unknown, . . . used and disclosed [] communications [obtained pursuant to the FISA Warrants], . . . for unlawful leaks to the media

and others"); *id.* ¶ 181 ("Defendants, known and unknown to Dr. Page, unlawfully leaked FISA and Privacy protected records and information concerning Dr. Page to the media."); *id.* ¶ 188 (alleging on information and belief that certain FBI agents "sought and obtained" McCabe's approval "to disclose protected information" to the media); *id.* ¶ 189 (alleging on information and belief that McCabe "leaked information and records concerning Dr. Page that were protected from disclosure under the FISA . . . to media outlets"), or do not show any individual action or intent on the part of McCabe at all, *see, e.g.*, *id.* ¶¶ 161, 183-84, 187.

Plaintiff's allegations quoting Washington Post, *id.* ¶ 184, and New York Times, *id.* ¶ 187, news articles from April 2017, do nothing to support any of his FISA claims, either.  As a threshold matter, Plaintiff has not alleged that the information in those news articles was obtained through any electronic surveillance.  *See id.* ¶¶ 184, 187; *see also* 50 U.S.C. § 1809(a)(2) (prohibiting the disclosure or use of information "obtained under color of law by *electronic surveillance*" that the person knew or had reason to know was unauthorized) (emphasis added).  Indeed, the articles, published in April 2017, refer to events from July 2016, *see* Am. Compl. ¶¶ 184, 187, well before any FISA surveillance took place, *see id.* ¶ 220 (alleging First FISA Warrant was issued on October 21, 2016).  Plaintiff similarly has not alleged what "protected" "information" or "records" McCabe supposedly disclosed, to whom McCabe supposedly disclosed them, or even that McCabe personally disclosed that information at all, let alone the requisite level of intent.  *See id.* ¶¶ 184, 187, 189.

Plaintiff therefore makes no plausible allegations as to McCabe's intent and, as such, his FISA claims should be dismissed.[7]  *See Twombly*, 550 U.S. at 570; *see also Fazaga*, 965 F.3d at

---

[7] Although the lack of plausible allegations regarding McCabe's intent alone is fatal to Plaintiff's FISA claims, that paucity of facts also means that Plaintiff has failed to plausibly allege that McCabe either "engage[d] in electronic surveillance" or "disclose[d] or use[d] information obtained" from unlawful electronic surveillance, as is also required under § 1809.  *See* 50 U.S.C. § 1809(a)(1)-(2).  As to the former, the Amended Complaint does not allege

1038-39 (dismissing FISA claims as to supervisory officers where there were no facts suggesting their personal involvement or knowledge of the alleged violations or intent to violate FISA).

## B.  McCabe Has an Affirmative Defense Under FISA

Even if Plaintiff had plausibly alleged a FISA claim, which he has not, his claims would still fail because the statute itself provides an affirmative defense for an officer who was "engaged in the course of his official duties and the electronic surveillance was authorized and conducted pursuant to a search warrant or court order of a court of competent jurisdiction."  50 U.S.C. § 1809(b).  Indeed, this defense was crucial to the inclusion of 50 U.S.C. § 1809(a)(2)— the provision making it a criminal offense to disclose or use information obtained through unlawful electronic surveillance.  *See* H.R. Rep. No. 95-1283, Pt. I, at 96 (explaining that "Section [1809(a)(2)] generated considerable debate within the committee and was adopted only after full consideration was given to its suggested deleterious effect on the morale of intelligence personnel").  The purpose of the defense is "to afford security to intelligence personnel so that if they act in accordance with the statute and the court order, they will be insulated from liability[.]"  *Id.*

Here, there is no doubt that the electronic surveillance of Plaintiff "was authorized and conducted pursuant to a . . . warrant."  *See* 50 U.S.C. § 1809(b); *see also* Am. Compl. ¶¶ 59-123.

---

that McCabe himself "performed" any surveillance.  *See United States v. Koyomejian*, 946 F.2d 1450, 1459 n.16 (9th Cir. 1991) (explaining that "§ 1809(a) is best understood as subjecting to criminal liability anyone who *performs* electronic surveillance as defined by FISA if that person" does so unlawfully); *see also Fazaga*, 965 F.3d at 1039 (dismissing FISA claims against non-handling agents because the complaint did not allege that they "knew of, much less ordered or arranged for, the planting of the devices" at issue); *Attkisson v. Holder*, No. 1:17-cv-364 (LMB/JFA), 2017 WL 5013230, at *4, 12 (E.D. Va. Nov. 1, 2017) (same as to U.S. Attorney General and U.S. Postmaster General in their individual capacities absent any allegations that they were "personally engaged in the alleged surveillance" because merely "signing-off" on a search warrant with "false representation" was not enough), *aff'd as amended*, 925 F.3d 606 (2019).  And, as to the latter, Plaintiff's allegations that McCabe improperly "disclosed or used" information he obtained pursuant to the FISA Warrants are, as discussed above, *supra* at 10-12, wholly conclusory group-pleading, are unsupported by allegations of fact, and should be disregarded.  *See Toumazou*, 71 F. Supp. 3d at 21; *Morrow*, 723 F. Supp. 2d at 76-77 (quoting Iqbal, 556 U.S. at 664).  Thus, even if Plaintiff's FISA claims passed muster on the threshold question of intent, they would nonetheless fail for these additional reasons.

Even though Plaintiff alleges that those warrants were improperly obtained, that was not through

any fault of the FISC judges who issued them or of McCabe.  And as discussed in Section V,

*infra*, McCabe's reliance on these facially valid warrants was reasonable.

Accordingly, because Plaintiff has failed to make any plausible allegations regarding

intentional misconduct on the part of McCabe and, independently, because FISA insulates from

liability those who relied on a court-issued warrant, as did McCabe, Plaintiff's FISA claims

against McCabe must be dismissed.

## II.   PLAINTIFF HAS FAILED TO STATE A *BIVENS* CLAIM AGAINST MCCABE

Plaintiff has failed to state a *Bivens* claim against McCabe for two reasons.  First,

Plaintiff has not plausibly alleged that McCabe himself violated Plaintiff's constitutional rights,

and second, Plaintiff improperly seeks to expand *Bivens* to a "new context."

### A.   The Amended Complaint Includes No Specific Factual Allegations Regarding McCabe's Actions

As a threshold matter, Plaintiff simply has not alleged that McCabe was personally

involved in the Fourth Amendment violation alleged in the Amended Complaint.  In *Bivens* and

its progeny, the U.S. Supreme Court found that private rights of action for damages are implied

for certain constitutional violations.  *See Bivens*, 403 U.S. at 389 (Fourth Amendment); *see also*

*Carlson v. Green*, 446 U.S. 14, 19 (1980) (Eighth Amendment); *Davis v. Passman*, 442 U.S.

228, 248-49 (1979) (Fifth Amendment).  But, "'[t]he purpose of *Bivens* is to deter the *officer*[,]'"

and such claims are against "the individual officer for his or her own acts, not the acts of others."

*Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017) (citing *Iqbal*, 556 U.S. at 676 and *FDIC v. Meyer*,

510 U.S. 471, 485 (1994)) ("*Bivens* is not designed to hold officers responsible for acts of their

subordinates.").  To that end, "Government officials may not be held liable for the

unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *Iqbal*,

556 U.S. at 676; *see also Voinche v. Obama*, 744 F. Supp. 2d 165, 177 (D.D.C. 2010) (same). Instead, Plaintiff must allege that McCabe was "personally involved" in the allegedly illegal conduct. *Simpkins v. D.C. Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997).

Plaintiff's *Bivens* claim is predicated on the same alleged conduct underlying his FISA claims:  there was no probable cause supporting the FISA Warrants authorizing electronic surveillance of him because the underlying affidavits contained material misstatements and omissions, and thus any search or seizure in reliance on those warrants violated the Fourth Amendment.  *See, e.g.*, Am. Compl. ¶¶ 3-4, 58, 79-81, 97-99, 105-07, 118-22, 218, 244, 247.  At most, the Amended Complaint alleges that McCabe knew about Steele's research into Plaintiff, *see, e.g.*, *id.* ¶ 61 (McCabe was allegedly "briefed" in August 2016 about Steele's "accusations" related to Plaintiff), that such research might be politically motivated, *see e.g.*, *id.* ¶¶ 73, 135, 143 (alleging that McCabe was made aware that certain DOJ attorneys had concerns that the FISA applications should disclose Steele's background and potential political bias), and that McCabe "support[ed]" and "approved" relying on Steele's information over the objection of a DOJ colleague who thought there should be "more scrutiny of Steele's motives," *id.* ¶ 135.  But these allegations do not show that McCabe was personally responsible for any of the allegedly unconstitutional conduct.  He did not make any misstatements or omissions himself, he did not knowingly approve or condone any misstatements or omissions by others, nor did he make any decisions based on any improper motive such as political bias.  Thus, Plaintiff has failed to state a *Bivens* claim as to McCabe.  *See Iqbal*, 556 U.S. at 682-83 (dismissing *Bivens* claims against U.S. Attorney General and FBI Director where the complaint neither "show[ed] or suggest[ed]" how they condoned or approved of any of the "discrete wrongs" alleged because liability hinged on their own, personal constitutional violations).

14

To the extent Plaintiff claims that McCabe is liable for the acts or knowledge of his subordinates based on his supervisory role, that theory has been flatly rejected.  *See Abbasi*, 137 S. Ct. at 1860 ("*Bivens* is not designed to hold officers responsible for acts of their subordinates."); *Simpkins*, 108 F.3d at 369 ("*Bivens* claims cannot rest merely on respondeat superior."); *see also Corsi v. Mueller*, 422 F. Supp. 3d 51, 65-66 (D.D.C. 2019) (dismissing *Bivens* claim against then-special counsel Mueller based on bald allegations that Mueller "directed" the Fourth Amendment violations and that he was operating pursuant to a DOJ "mandate" that put him "in charge").

Plaintiff has therefore failed to state a *Bivens* claim against McCabe, and Count VI should be dismissed.

### B.   The Amended Complaint Impermissibly Seeks to Extend *Bivens* to a "New Context"

Since 1980, "the Supreme Court has carefully circumscribed *Bivens* and 'consistently refused to extend *Bivens* to any new context or new category of defendants.'"  *Loumiet v. United States*, 948 F.3d 376, 380 (D.C. Cir. 2020) (citing *Abbasi*, 137 S. Ct. at 1857), *cert. denied*, 141 S. Ct. 180 (2020).  Such expansion is now "disfavored" due to concerns about separation of powers and the Court's judgment that Congress is better situated to weigh the competing costs of imposing personal liability on federal officers.  *See id.* at 380-81 (citing *Abbasi*, 137 S. Ct. at 1856-57).  Indeed, not only has the Court not expanded *Bivens* since 1980, but it has also expressly declined to do so on at least "ten separate occasions," *id.* at 381 (collecting cases), including in the Fourth Amendment context, *see Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020).  Thus, when deciding whether to find an implied action under *Bivens*, a court must consider (1) "whether the plaintiff seeks to extend *Bivens* to a 'new context[,]'" and if so, (2) "whether there are any 'special factors counselling hesitation.'"  *Loumiet*, 948 F.3d at 381 (citing *Abbasi*, 137 S.

15

Ct. at 1857-60).  Plaintiff's *Bivens* claim as to McCabe fails both prongs of this test.

> **1.      Plaintiff's claims meaningfully differ from those in existing *Bivens* cases**

Plaintiff clearly seeks to extend *Bivens* to a new context.  Simply put, "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the U.S. Supreme Court], then the context is new."  *Abbasi*, 137 S. Ct. at 1859; *see also id.* at 1855 (concluding that "the only instances in which the Court has approved of an implied damages remedy under the Constitution itself" are *Bivens*, *Davis*, and *Carlson*); *see also Loumiet*, 948 F.3d at 380-82 (same).  Differences "meaningful enough" to constitute a new context include, *inter alia*, the federal officer's rank, the particular constitutional right at issue, the law pursuant to which the federal officer acted, the "risk" that judicial action will "disruptive[ly] intru[de] . . . into the functioning of other branches, "the presence of potential special factors" not considered in its prior *Bivens* cases, *Abbasi*, 137 S. Ct. at 1859-60, and the imposition of *Bivens* liability against a "new category of defendants," *Loumiet*, 948 F.3d at 382 (citing *Abbasi*, 137 S. Ct. at 1857 and *Meshal v. Higgenbotham*, 804 F.3d 417 F.3d 417, 424 (D.C. Cir. 2015)).  Plaintiff's efforts to seek damages against McCabe for alleged Fourth Amendment violations related to electronic surveillance under FISA implicate each of these "meaningful" differences.

*First*, Plaintiff's claim improperly seeks to extend *Bivens* liability against an entirely new "rank" of federal officer and "category of defendant."  No binding *Bivens* precedent imposed liability on department director-level executive officers like McCabe, who was the Deputy Director of the FBI.  *See Bivens*, 403 U.S. at 389 (narcotics agents); *Davis*, 442 U.S. at 230 (U.S. Congressman); *Carlson*, 446 U.S. at 16 (federal prison officials); *see also Attkisson v. Holder*, 925 F.3d 606, 621 (4th Cir. 2019) (affirming dismissal of Fourth Amendment *Bivens* claims brought against the Attorney General and Postmaster General in part because those positions

were "much higher ranks than the line-level FBI agents sued in *Bivens*").

      *Second*, although Plaintiff's claim implicates the Fourth Amendment as in *Bivens*, that case addressed a violation in the context of a warrantless physical search of the plaintiff's home and forceful arrest in front of his family, not electronic surveillance as alleged here.  *See Bivens*, 403 U.S. at 389.  But "even a modest extension is still an extension," *see Abbasi*, 137 S. Ct. at 1864, and *Bivens* cannot be extended to apply here where Plaintiff's claim involves electronic surveillance pursuant to a warrant, *see Attkisson*, 925 F.3d at 621 ("[A] claim based on unlawful electronic surveillance presents wildly different facts and a vastly different statutory framework from a warrantless search and arrest.").

      *Third*, the Amended Complaint alleges that McCabe is acting under a new and different legal mandate or statutory framework than those at issue in any established *Bivens* precedent.  In *Bivens*, federal agents acted under federal drug laws.  403 U.S. at 389.  In *Davis*, an administrative assistant fired on the basis of her sex challenged a U.S. congressman's employment decision under the Due Process Clause of the Fifth Amendment.  442 U.S. at 230-31.  And in *Carlson*, at issue was the adequacy of medical care under the Eighth Amendment.  446 U.S. at 16.  In contrast, Plaintiff here alleges that he was unlawfully surveilled pursuant to a FISA warrant obtained through a false and misleading affidavit.  *See, e.g.*, Am. Compl. ¶ 3.  Thus, Plaintiff's claims involve an entirely different statute and legal mandate not previously considered by the Court for purposes of a *Bivens* claim.  *See, e.g.*, *Annappareddy v. Pascale*, __ F.3d __, 2021 WL 1603987, at *9 (4th Cir. 2021) (concluding that plaintiff impermissibly sought to extend *Bivens* to a new context by alleging Fourth Amendment violations for "searches and a seizure conducted *with* a warrant" issued based on an affidavit containing material misstatements because *Bivens* implicated a different legal standard—"the Fourth Amendment right to be free of

unreasonable *warrantless* searches and seizures").

*Fourth*, judicial involvement in this context will be a "disruptive intrusion" into the functioning of the Executive Branch. *See Abbasi*, 137 S. Ct. at 1860. The Court in *Abbasi* considered the scope of this disruption in dismissing *Bivens* claims brought against "high level" DOJ officials. *Id.* It expressed concern that discovery and litigation against high-level executives necessarily implicates the discussions and deliberations behind the particular policy or law at issue, even when claims are limited to a specific individual's actions in a discrete situation. *See id.* at 1860-61 (citing *Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 360 (1979) (explaining that sensitive Executive Branch documents might be disclosed, thereby hindering "the free flow of advice, including analysis, reports, and expression of opinion within an agency")).

*Fifth and finally*, Plaintiff's claim that McCabe committed FISA violations implicates several special factors that the prior *Bivens* line of cases did not consider. Because Plaintiff's claims against McCabe arising under FISA seek to extend *Bivens* to a new context, those factors will be discussed below as part of "step 2" of the *Bivens* analysis.

### 2.     An existing comprehensive remedial scheme and FISA's implication of sensitive areas such as national security counsel against expanding *Bivens*

Several special factors counsel against expanding *Bivens* to impose personal liability here. *First*, Congress has already established a "comprehensive remedial scheme" to address the Fourth Amendment violations arising out of a FISA warrant that Plaintiff alleges here. Indeed, the Court has noted that the availability of an alternative remedy may alone be enough to justify not extending *Bivens* to new contexts. *Abbasi*, 137 S. Ct. at 1858 (reasoning that a congressionally-created process that protects the plaintiff's interests is "convincing" evidence that Congress does not want the courts to interfere); *Loumiet*, 948 F.3d at 383 ("'[W]hen

alternative methods of relief are available, a *Bivens* remedy usually is not.'").

Several courts—including from this circuit—have already declined to extend *Bivens* liability in circumstances analogous to FISA involving other types of wire or electronic surveillance on the ground that other remedies were available to redress plaintiffs' injuries stemming from unauthorized electronic surveillance. *See, e.g.*, *Attkisson*, 925 F.3d at 621 (declining to recognize a *Bivens* action for allegedly unlawful electronic surveillance because "Congress has legislated extensively" in that area "without authorizing damages for a Fourth Amendment violation" and had instead "created several private causes of action" under several statutes, including the Stored Communications Act, FISA, and the Computer Fraud and Abuse Act); *Corsi*, 422 F. Supp. 3d at 66 ("alternative, existing process[es]" under Wiretap Act, Stored Communications Act, and FISA cautioned against expanding *Bivens* liability for unlawful FISA surveillance) (collecting cases); *see also Mitchell v. Forsyth*, 472 U.S. 511, 542 (1985) (Stevens, J., concurring) (submitting that it is "highly doubtful" that there could be an implied *Bivens* action because "Congress has enacted legislation comprehensively regulating the field of electronic surveillance" including the Wiretap Act, the Stored Communications Act, and FISA). Indeed, Plaintiff's own Amended Complaint makes plain that Plaintiff has an alternative remedy because his *Bivens* claim arises out of exactly the same alleged conduct as his four FISA claims. *See* Am. Compl. ¶¶ 216-30 (Counts I-IV for FISA violations); *id.* ¶¶ 243-50 (Count VI for a *Bivens* claim related to the FISA Warrants).

*Second* and relatedly, Congress's extensive legislation governing electronic surveillance, including by providing multiple private rights of action as described above, suggests that the absence of a damages remedy for Fourth Amendment violations is intentional. *See Abbasi*, 137 S. Ct. at 1861-62 (explaining that "congressional silence" in this situation "might be more than

'inadvertent,'" which "counsels hesitation" for the courts); *see also Attkisson*, 925 F.3d at 621 (same).

*Third*, courts often find it inappropriate to extend *Bivens* liability when doing so implicates sensitive areas such as national security. *See, e.g.*, *Loumiet*, 948 F.3d at 381 (citing *Abbasi*, 137 S. Ct. at 1860-63 (explaining that inquiring into issues of national security raises separation-of-powers issues because national security is "the prerogative of the Congress and President")). The Amended Complaint makes clear that issues of national security are intimately bound up with FISA and FISA warrants. Indeed, the warrants were issued in furtherance of the FBI's "counterintelligence investigation . . . concerning the Foreign Agent Registration Act (FARA), to determine whether 'individual(s) associated with the Trump campaign are witting of and/or coordinating activities with the Government of Russia.'" Am. Compl. ¶ 5. Moreover, in Plaintiff's telling, the validity of the FISA Warrant renewals hinged in large part on whether the FBI had obtained foreign intelligence indicating that Plaintiff was "acting as a foreign agent of Russia." *See id.* ¶¶ 96, 104, 117. There is a need to balance the important and substantial interests of national security implicated here against the right to be protected against unlawful surveillance, but "[t]he proper balance is one for the Congress, not the Judiciary to undertake." *Abbasi*, 137 S. Ct. at 1863.

Plaintiff has therefore failed to state a claim for damages under *Bivens*, and Count VI against McCabe must be dismissed for each of these independent reasons.

## III.    PLAINTIFF'S CLAIMS ARE TIME-BARRED

In any event, all of Plaintiff's claims against McCabe must also be dismissed because they are barred by the District's statute of limitations. A statute of limitations defense is appropriately raised in a Rule 12(b)(6) motion to dismiss when it is clear from the face of the complaint that the plaintiff's claims are time-barred. *Sykes v. U.S. Att'y for D.C.*, 770 F. Supp.

2d 152, 154 (D.D.C. 2011) (citing, *inter alia*, *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998)).  Such is the case here where the applicable statutes of limitations are, at most, three years[8] for Plaintiff's FISA and *Bivens* claims, and the Amended Complaint clearly indicates that each of the claims against McCabe accrued more than three years before Plaintiff filed this lawsuit.

"When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law" when not inconsistent with federal law or policy.[9]  *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985), *superseded by statute in nonrelevant part as stated in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).  Here, because Congress has not created a statute of limitations for either FISA or *Bivens* claims, the proper statute of limitations is set forth in D.C. Code § 12-301.  *See, e.g.*, *Earle v. District of Columbia*, 707 F.3d 299, 305 (D.C. Cir. 2012) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)) (explaining that the proper statute of limitations for § 1983 claims[10] is the analogous

---

[8] To the extent the Amended Complaint sounds in libel or invasion of privacy because it alleges reputational harm and damages, *see* Am. Compl. ¶ 214, then Plaintiff's claims are subject to a one-year statute of limitations and are even more untimely, *see, e.g.*, *Greenpeace, Inc. v. Dow Chem., Co.*, 97 A.3d 1053, 1061-62 (D.C. 2014) (citing D.C. Code § 12-301) (collecting decisions by the federal district court for the District of Columbia applying the District's one-year limitations period to claims alleging injury to plaintiff's reputation and psyche).  McCabe therefore joins and incorporates by reference the arguments set forth in defendant Kevin Clinesmith's Motion to Dismiss and Memorandum in Support §§ I.A, II.A (Dkt. 60-1), and defendant Stephen Somma's Motion to Dismiss and Memorandum in Support § I ("Somma Brief").

[9] In "rare case[s]," the U.S. Supreme Court has "borrowed analogous federal limitations periods in the absence of an expressly applicable one," *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 415 (2005), but that approach would not render Plaintiff's claims timely.  Other federal statutes creating causes of action for unlawful use, disclosure, interception, or access of certain wire and electronic communications have two-year limitations periods, subject to inquiry notice.  *See Sparshott v. Feld Entm't, Inc.*, 311 F.3d 425, 428-29 (D.C. Cir. 2002) (Wiretap Act, 18 U.S.C. § 2520(e)); *Sewell v. Bernardin*, 795 F.3d 337, 338 (2d Cir. 2015) (Stored Communications Act, 18 U.S.C. § 2707(f)).  Because Plaintiff's claims are untimely under a three-year limitations period, they are necessarily also untimely under the shorter, two-year limitations period available under these analogous federal statutes.

[10] *Bivens* and § 1983 claims are governed by the same statute of limitations.  *See Jones v. Kirchner*, 835 F.3d 74, 82 n.7 (D.C. Cir. 2016).

state law governing "personal-injury torts"); *see also, e.g.*, *Zhao v. Unknown Agent of CIA*, 411

F. App'x 336, 336-37 (D.C. Cir. 2010) (per curiam) (dismissing *Bivens* claims as time-barred

and citing D.C. Code § 12-301); *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1114-15 (D.C. Cir.

1985) (same).  Section 12-301 of the D.C. Code sets forth two potentially applicable statutes of

limitations:  a one-year period for intentional torts, D.C. Code § 12-301(4), and a three-year

period for all other "residual" actions with no prescribed limitations period, *id.* § 12-301(8).

When a claim accrues, however, is a matter of federal law.  *See, e.g.*, *Hampton v. Comey*,

No. 14-cv-1607 (ABJ), 2016 WL 471277, at * 13 (D.D.C. Feb. 8, 2016) (citing *Kato*, 549 U.S. at

388) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not*

resolved by reference to state law.")).  A *Bivens* claim accrues "'when the plaintiff has a

complete and present cause of action.'"  *Id.* (citing *Kato*, 549 U.S. at 388).  A Fourth

Amendment violation[11] accrues once an individual knows or has reason to know of the improper

search or seizure.  *See, e.g.*, *Berman v. Crook*, 293 F. Supp. 3d 48, 56 (D.D.C. 2018) (*Bivens*

claim based on search warrant accrued when plaintiff became aware of the allegedly unlawful

search and "believed at the time" that it was based on an affidavit with false allegations);

*Hampton*, 2016 WL 471277 at *13 (*Bivens* claim based on allegations of false arrest, false

imprisonment, and unlawful search and seizure accrued when plaintiff was held pursuant to

process).  Thus, Plaintiff's FISA and *Bivens* claims accrued when he knew or had reason to know

that he was subject to unlawful surveillance.

Plaintiff filed this suit on November 27, 2020, which means that his claims must have

accrued on or after November 28, 2017, to be timely under the District's three-year statutory

---

[11] Because Plaintiff's FISA and *Bivens* claims are premised on identical allegations, *see, e.g.*, Am. Compl. ¶¶ 3-4, 58, 79-81, 97-99, 105-07, 118-22, 218, 244, 247, his FISA claims accrued at the same time as his *Bivens* claims.

period.  *See* D.C. Code § 12-301(8).  But it is clear from the face of the Amended Complaint that Plaintiff's claims accrued long before that date.  According to Plaintiff, he became aware he was being surveilled under the FISA Warrants "[o]n Tuesday, April 11, 2017, [when] the Washington Post broke the story about the FISA Warrants targeting [him], including that a FISA warrant had been issued in 2016 and had been renewed at least once."  Am. Compl. ¶ 184; *see also* Ellen Nakashima, Devlin Barrett, & Adam Entous, *FBI obtained FISA warrant to monitor former Trump advisor Carter Page*, WASH. POST, Apr. 11, 2017, https://www.washingtonpost.com/world/national-security/fbi-obtained-fisa-warrant-to-monitor-former-trump-adviser-carter-page/2017/04/11/620192ea-1e0e-11e7-ad74-3a742a6e93a7_story.html (quoting Plaintiff saying that the reporting "confirm[ed] all of [his] suspicions about unjustified, politically motivated government surveillance").[12]

The Amended Complaint also makes plain that Plaintiff knew or had reason to know that this surveillance and the underlying justification for it were allegedly improper.  Plaintiff alleges that in response to a September 23, 2016, news article reporting that "meetings had occurred between [Plaintiff] and two sanctioned Russian individuals," Am. Compl. ¶¶ 12, 64, he "categorically denied" any such communications in a letter to FBI Director James Comey two days later, *id.* ¶¶ 12, 65, and instead "documented his previous cooperation with the CIA and the FBI to combat Russian spying[,]" *id.* ¶ 12.  Thus, Plaintiff's claims accrued on April 11, 2017, when he knew or had reason to know that he was being subjected to unlawful FISA surveillance.

Even viewing the four FISA Warrants separately, the result is the same.  The Amended

---

[12] Because this article was identified and quoted in the Amended Complaint, *see* Am. Compl. ¶¶ 184, 187, the Court may consider it in this 12(b)(6) motion to dismiss without converting it to a motion for summary judgment, *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015); *see also Klayman v. Obama*, 125 F. Supp. 3d 67, 74, 74 n.7 (D.D.C. 2015) (declining to credit factual allegations that were "flatly contradicted" by a news article incorporated by reference into the complaint).

Complaint alleges that the FISA Warrants were issued on October 21, 2016, *id.* ¶ 220, January 12, 2017, *id.* ¶ 224, April 7, 2017, *id.* ¶ 228, and June 29, 2017, *id.* ¶ 232.  Plaintiff does not and cannot allege that he was subjected to any other surveillance.  Because these FISA warrants were valid for 90 days at most, *see* 50 U.S.C. § 1805(d), the latest Plaintiff's claims could have accrued was on September 27, 2017, which was 90 days from when the last FISA Warrant issued on June 29, 2017.  But both April 11, 2017, and September 27, 2017, are well outside even the longer three-year statutory period beginning on November 28, 2017.

Because Plaintiff alleges both that the allegedly unlawful surveillance occurred and that he knew about it before November 28, 2017, each of his claims must be dismissed as time-barred as a matter of law.  *See Sykes*, 770 F. Supp. 2d at 154.

## IV.   PLAINTIFF HAS NOT PLAUSIBLY ALLEGED THAT HIS DAMAGES ARE FAIRLY TRACEABLE TO ANY UNLAWFUL ELECTRONIC SURVEILLANCE

The Amended Complaint also fails to state any claim against McCabe because it does not adequately allege any "causal connection" between Plaintiff's claimed damages and the purportedly unlawful electronic surveillance of him.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  McCabe therefore adopts and incorporates by reference the applicable arguments set forth in Section IV of the Somma Brief.

## V.   QUALIFIED IMMUNITY BARS PLAINTIFF'S FISA AND *BIVENS* CLAIMS AGAINST MCCABE

Qualified immunity largely shields government officials from civil liability for performing discretionary functions.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  It "gives government officials breathing room to make reasonable but mistaken judgments," *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011), and shields "all but the plainly incompetent or those who

knowingly violate the law" from liability, *Malley v. Briggs*, 475 U.S. 335, 341 (1986).[13]  Thus, a plaintiff must plausibly allege "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *al-Kidd*, 563 U.S. at 735; *Barnes v. District of Columbia*, 238 F. Supp. 3d 106, 112 (D.D.C. 2017); *see also Fazaga*,[14] 965 F.3d at 1031 (citing *al-Kidd*, 563 U.S. at 735 and *Harlow*, 457 U.S. at 818) (applying the same qualified immunity analysis to FISA claims).  The Court has "discretion to decide which of the two prongs of qualified-immunity analysis to tackle first."  *Lash v. Lemke*, 786 F.3d 1, 5 (D.C. Cir. 2015).  Here, Plaintiff's claims fail both prongs.

## A.    Plaintiff Has Not Plausibly Alleged a "Clearly Established" Fourth Amendment Right

To overcome McCabe's qualified immunity, Plaintiff must plausibly allege that McCabe violated a "clearly established" Fourth Amendment right.  A right is clearly established when its contours are clear enough that "a reasonable official" would know that his or her actions were violating that right.  *Fox v. Gov't of D.C.*, 794 F.3d 25, 29-30 (D.C. Cir. 2015) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also al-Kidd*, 563 U.S. at 741 ("[E]xisting precedent must have placed the statutory or constitutional question beyond debate."); *Johnson v. District of Columbia*, 927 F.3d 539, 546 (D.C. Cir. 2019) (same).  Thus, a particular right cannot be established generally.  *al-Kidd*, 563 U.S. at 742.  Rather, it should be defined "in a manner

---

[13] Although *Malley* is a § 1983 case against state officials, there is no meaningful difference between those claims and claims brought against federal officials directly under the Constitution, for purposes of assessing official immunity.  *See* 475 U.S. at 340 n.2 (finding such a distinction "untenable").

[14] As the court noted in *Rasul v. Myers*, 512 F.3d 644 (D.C. Cir. 2008), "[b]oth the Supreme Court and our court have recognized qualified immunity is available to counter not only constitutional claims, but also certain statutory claims[,]" *id.* at 668 n.20 (citing *Harlow*, 457 U.S. at 818 and *Berry v. Funk*, 146 F.3d 1003, 1014 (D.C. Cir. 1998)) (declining to reach issue of whether qualified immunity was available in Religious Freedom Restoration Act context).  To counsel's knowledge, this Circuit has not considered whether qualified immunity applies in the FISA context.  *See, e.g.*, *Fazaga*, 965 F.3d at 1031 n.7 (explaining that the Ninth Circuit panel had only found one unpublished case from the United States District for the District of Minnesota addressing the availability of qualified immunity to a FISA claim and that the panel was declining to reach the issue since the parties did not raise it).

'particularized to the [pertinent] facts.'"  *Johnson*, 927 F.3d at 546 (citing *White v. Pauly*, 137 S.

Ct. 548, 551 (2017) (per curiam), and *Hedgpeth v. Rahim*, 893 F.3d 802, 806 (D.C. Cir. 2018))

(alteration in original).

Plaintiff relies upon *Franks v. Delaware*, 438 U.S. 154, 164-65 (1978), for the sweeping

proposition that under the Fourth Amendment, "[s]urveillance is not authorized when the

authorization for it has been obtained by false and misleading statements."  *See* Am. Compl. ¶

218 (quoting *Franks*, 438 U.S. at 164-65) ("[W]hen the Fourth Amendment demands a factual

showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a

truthful showing.").  But Plaintiff takes that statement out of context and ignores the

exclusionary rule-context of *Franks* and the Court's careful balancing of costs to society from

excluding such evidence against the need to deter unlawful searches and seizures.

In *Franks*, the Court considered whether a criminal defendant had a Fourth Amendment

right to challenge the truth of statements in an affidavit supporting a warrant.  438 U.S. at 155.

There, the criminal defendant alleged that in the underlying affidavit for a search warrant, the

affiant (1) falsely stated that the affiant obtained relevant information by personally interviewing

two individuals, and (2) mischaracterized the information the individuals shared with the affiant.

*Id.* at 157-58.  The defendant sought to suppress the evidence obtained pursuant to that warrant

on the basis that the warrant could not have issued for probable cause when the underlying

affidavit included false statements.  *See id.*  The motion to suppress was denied, and the Supreme

Court of Delaware eventually held that attacks on the accuracy of a warrant were *per se*

prohibited.  *Id.* at 159-60.

The U.S. Supreme Court reversed, finding that Delaware's blanket prohibition against

collateral attacks on the truth of supporting affidavits violated the criminal defendant's Fourth

Amendment rights. *Id.* at 155-56. Instead, the Court held that the Fourth Amendment required an evidentiary hearing be available where the defendant could sufficiently allege that the warrant issued upon an affidavit in which the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement, and such false statement was "necessary to the finding of probable cause[.]" *Id.* While the *Franks* Court noted that the Fourth Amendment assumes "there will be a *truthful* showing" of the facts necessary to support a finding of probable cause, *see* Am. Compl. ¶ 218 (citing *Franks*, 438 U.S. at 164-65), the Court clarified immediately thereafter that it "does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct," *Franks*, 438 U.S. at 165. It explicitly acknowledged that probable cause may be found based on information from sources that may not be completely reliable, such as informants, hearsay, and the affiant's own knowledge and experience. *See id.* Rather, "truthful" in this sense simply required that the information in the affidavit be "believed or appropriately accepted *by the affiant* as true." *Id.* (emphasis added). The Court reasoned that this approach struck the appropriate balance between competing considerations—in that case, the risk that guilty criminals might go free if otherwise probative evidence were excluded, versus the risk of stripping "probable cause" of any real meaning. *See id.* at 165-71.

The Court weighed similar considerations in *United States v. Leon*, 468 U.S. 897 (1984) when, due to "a strong preference for warrants" best achieved by "according 'great deference' to a magistrate's [probable cause] determination[,]" *id.* at 914, it created a "good-faith exception" to the Fourth Amendment exclusionary rule, *id.* at 923-24. It held that evidence obtained pursuant to a warrant later invalidated need not be excluded if the officer's reliance on the warrant was objectively reasonable. *Id.* at 922. The Court reasoned that in such circumstances, the exclusionary rule would have no effect on an officer's conduct because a reasonable officer

would not question the magistrate's probable-cause determination or judgment. *See id.* at 921. Moreover, the objectively reasonable standard would again achieve the appropriate balance between the exclusionary rule's purpose—to deter future Fourth Amendment violations by law enforcement, *see id.* at 916—and the rule's "substantial social costs[,]" such as permitting some guilty defendants to "go free or receive reduced sentences[,]" *see id.* at 907-08.

The Court identified three exceptions to its rule, noting that reliance on a warrant is not objectively reasonable when (1) the issuing magistrate's decision is based on "an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," (2) the issuing magistrate "wholly abandon[s]" his or her role as a neutral judicial officer, and (3) the warrant itself is so deficient on its face that "executing officers cannot reasonably presume" its validity. *Id.* at 923. The Court later extended this analytic framework to define the scope of qualified immunity for officers whose warrant applications allegedly result in constitutional violations. *See, e.g.*, *Barnes*, 238 F. Supp. 3d at 113-14, 114 n.2 (citing *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986)); *see also Malley*, 475 U.S. at 344-45 (citing *Leon*, 468 U.S. at 923) ("Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost.") (internal citation omitted).

Plaintiff has failed to plausibly allege a clearly established Fourth Amendment right under the *Franks* line of cases. *First*, Plaintiff's suggestion that the *Franks* Court found a *per se* Fourth Amendment violation when surveillance is authorized upon an affidavit with false or misleading statements grossly overstates the *Franks* holding. Indeed, as explained above, *Franks* expressly rejects that conclusion. *See* 438 U.S. at 165 (explaining that "truthful" does not require every that fact in a warrant application ultimately prove correct); *see also Leon*, 468 U.S.

at 922-23 (observing that it is appropriate for an officer to rely on a warrant that later turns out to

be invalid so long as that reliance was objectively reasonable); *Barnes*, 238 F. Supp. 3d at 114

(explaining that if there is probable cause to issue a warrant notwithstanding any misstatements

or omissions, then a plaintiff will have failed to state the requisite violation of a constitutional

right to overcome qualified immunity).

*Second*, to the extent courts have found a clearly established Fourth Amendment

violation in claims arising out of warrants premised on false statements and/or omissions, they

have, consistent with *Franks*, only imposed civil liability on the *affiant*. In *S.H. v. District of

Columbia*, 270 F. Supp. 3d 260 (D.D.C. 2017), for instance, an officer obtained a warrant based

on his own affidavit to search the house of a suspected drug dealer, *id.* at 266-68. Pursuant to

this warrant, the affiant and some twenty other officers searched the target residence. *Id.* at 268-

69. The suspected drug dealer was not at the location, but the plaintiff was, along with her three

minor children and teenaged brother. *Id.* at 269. Despite ransacking the home, the officers

found no evidence of criminal activity. *Id.*

The occupants of the home later sued the officers, alleging that the affiant-officer

knowingly and recklessly misled the issuing court by including materially false or misleading

statements in his affidavit, and omitting other material information. *Id.* All of the officers

invoked qualified immunity, but the court held that the doctrine only shielded the non-affiant

officers. *See id.* at 285-87. Because the plaintiffs had alleged that the affiant-officer was the one

who actually prepared and submitted the warrant application containing the false and misleading

statements, the court reasoned that the affiant-officer was "in a fundamentally different posture

than the other officers, who merely executed the warrant." *Id.* at 286; *see also, e.g.*, *Sherrod v.

McHugh*, 334 F. Supp. 3d 219, 250-51 (D.D.C. 2018) (finding a Fourth Amendment violation for

purposes of piercing qualified immunity as to an affiant when a search warrant was issued and executed in reliance upon the affiant knowingly and intentionally, or with reckless disregard for the truth, including materially false or misleading statements in their supporting affidavit); *Pitts v. District of Columbia*, 177 F. Supp. 3d 347, 359-61 (D.D.C. 2016) (same); *but see Pierce v. Mattis*, 256 F. Supp. 3d 7, 14 (D.D.C. 2017) (qualified immunity applied to affiant where plaintiff failed to allege that affiant knowingly made any omissions or misrepresentations).

Here, the Amended Complaint is devoid of any plausible allegations that McCabe violated any "clearly established" right of the Plaintiff because it does not allege that McCabe was the *affiant* for *any* of the FISA Warrants. *See Franks*, 468 U.S. at 155-56; *Sherrod*, 334 F. Supp. 3d at 250-51; *S.H.*, 238 F. Supp. 3d at 285-86; *Pierce*, 256 F. Supp. 3d at 14; *Pitts*, 177 F. Supp. 3d at 361. In fact, the Amended Complaint belies any such conclusion, revealing that the individual who would sign FISA warrant affidavits was "an FBI Supervisory Special Agent ('SSA')." *See* Am. Compl. ¶ 110. McCabe was not an SSA. *See id.* ¶¶ 24, 131 (noting that McCabe was Deputy Director of the FBI).[15] Imposing civil liability on non-affiants like McCabe in these circumstances would do nothing to deter similar future violations because the non-affiant is not making any false statements in the first place, and would thus flout the careful balancing of competing interests that the Court struck in *Leon*. *See* 468 U.S. at 907-08 (explaining that vindicating Fourth Amendment rights can impose significant and unacceptable social costs, "[p]articularly when . . . officers have acted in objective good faith").

---

[15] Indeed, the only warrant for which McCabe is alleged to have signed anything is the Fourth FISA Warrant, *see* Am. Compl. ¶¶ 24, 137, but he did not sign the affidavit supporting the warrant application because the Amended Complaint explicitly alleges that that was signed by an SSA, *see id.* ¶¶ 110, 112-13, 157.

### B.     Plaintiff Has Not Plausibly Alleged that McCabe Personally and Unreasonably Infringed on Plaintiff's Fourth Amendment Rights

Plaintiff cannot overcome McCabe's qualified immunity for the additional reason that there are no facts showing that McCabe committed a constitutional violation through his own *individual* actions. *See Iqbal*, 556 U.S. at 676.  As discussed above, qualified immunity protects officers from incorrect, though ultimately mistaken, conclusions of probable cause, so long as doing so was objectively reasonable. *See Malley*, 475 U.S. at 344-45.  Further, "'[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*' or vicarious liability." *Klay v. Panetta*, 924 F. Supp. 2d 8, 20-21 (quoting *Iqbal*, 556 U.S. at 676); *see also Cameron v. Thornburgh*, 983 F.2d 253, 257-58 (D.C. Cir. 1993)) (holding that prisoner failed to state a *Bivens* claim against the Attorney General and Director of the Bureau of Prisons where the complaint did not allege any specific involvement on the part of either).

Again, Plaintiff's claims boil down to Fourth Amendment violations where the FISA Warrants authorizing the electronic surveillance issued without probable cause because they were based on material misstatements and omissions.[16] *See* Am. Compl. ¶¶ 3-4, 58, 79-81, 97-99, 105-07, 118-22, 218, 244, 247.  But the Amended Complaint contains no plausible allegations showing that McCabe personally and unreasonably violated Plaintiff's Fourth

---

[16] As a practical matter, "[p]robable cause is an objective standard to be met by applying a totality-of-the-circumstances analysis[,]" *Johnson*, 927 F.3d at 547 (quoting *United States v. Burnett*, 827 F.3d 1108, 1114 (D.C. Cir. 2016)), and an officer need not "rule out" every "innocent explanation of suspicious facts," *see id.* at 548 (citing *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018)).  The appropriate question, rather, is "whether a reasonable officer could conclude—considering all of the surrounding circumstances, including the plausibility of the explanation itself—that there was a 'substantial chance of criminal activity.'" *Wesby*, 138 S. Ct. at 588.  Thus, McCabe was not required to personally eliminate or investigate every alternative explanation for Plaintiff's potentially unlawful behavior before he could reasonably believe that there was enough factual evidence to support a finding of probable cause. *See Leon*, 468 U.S. at 914 (explaining that judicial deference to warrants is premised on the fact that "[r]easonable minds frequently may differ on the question of whether a particular affidavit establishes probable cause").  Moreover, any suggestion that McCabe should have verified the factual underpinnings of the Fourth FISA Warrant is belied by the statute itself, which specifies the certifying official's obligations. *See* 50 U.S.C. § 1804(a)(6).

Amendment rights.

The specific allegations as to McCabe generally fall into two categories.  The first is allegations regarding what McCabe knew.  For example, Plaintiff alleges that McCabe was "an original and primary participant in the Crossfire Hurricane investigation," Am. Compl. ¶ 24.  In that role, McCabe was allegedly "briefed" about issues related to the investigation, including the existence of Steele's allegations regarding Plaintiff, *id.* ¶ 61, and concerns from DOJ attorneys about whether to disclose Steele's potential political bias, *id.* ¶¶ 73, 135, 143.  But none of these allegations even suggest that McCabe was *personally* responsible for the false or misleading statements at issue.  *See, e.g.*, *Barnes*, 238 F. Supp. 3d at 113-14 (explaining that qualified immunity would not protect an intentionally dishonest affiant, regardless of whether a magistrate found probable cause).

The second category consists of allegations that McCabe did not act as a reasonable supervisor would have acted.  The Amended Complaint alleges, for instance, that McCabe approved using Steele's allegations in the Crossfire Hurricane investigation and "ignored warnings" from a DOJ counterpart that the FISA application should have more information about Steele's background, *id.* ¶ 133; on October 12, 2016, "support[ed]" and "approved" moving forward with seeking DOJ's approval for the first FISA warrant despite being briefed that a DOJ attorney wanted additional "scrutiny of Steele's motives" and not pursuing said scrutiny, *id.* ¶ 135; "approved" the Second FISA Warrant application incorrectly stating that the previous surveillance had been "very productive," *id.* ¶ 136; and "signed the Fourth FISA Warrant," *id.* ¶ 137.  But the fact is, FISC judges *did* issue the warrants and found probable cause.  Thus, because he was a non-affiant, McCabe was entitled to a presumption that the FISA Warrants were valid and he could reasonably rely upon them.  *See, e.g.*, *Barnes*, 238 F. Supp. 3d

at 113 (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)) ("[T]he fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner,' as required for . . . qualified immunity to apply."); *see also Leon*, 468 U.S. at 922 (explaining that an officer's reliance on a warrant only later determined to be invalid is usually objectively reasonable).

Because Plaintiff has not plausibly alleged that McCabe personally and unreasonably violated a "clearly established" or any "particularized" Fourth Amendment right, qualified immunity bars all of Plaintiff's claims as to McCabe, and they should therefore be dismissed on these independent grounds.

## CONCLUSION

For all the foregoing reasons, McCabe respectfully requests that Counts I-IV and Count VI of the Amended Complaint be dismissed with prejudice.

Dated: May 18, 2021

Respectfully submitted,

/s/ Brigida Benitez

Brigida Benitez (DC Bar No. 446144)
Lisa M. Southerland (application pending)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone:    (202) 429-3000
Fax:              (202) 429-3902
bbenitez@steptoe.com
lsoutherland@steptoe.com

*Counsel for Defendant Andrew McCabe in his individual capacity*