# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CARTER PAGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-3460-KBJ |
| | ) | |
| JAMES COMEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF GOVERNMENT DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

BRIAN M. BOYNTON
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Director, Federal Programs Branch

AMY E. POWELL
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice

*Attorneys for Defendants Department of Justice and Federal Bureau of Investigation*

DANIEL P. CHUNG
CATE E. CARDINALE
Trial Attorneys, Torts Branch
Civil Division
United States Department of Justice

*Attorneys for the United States of America*

Dated:  May 18, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ...................................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 3

PLAINTIFF'S PRIOR RELATED LITIGATION ..................................................................... 9

    I.    *Page v. Oath, Inc., et al.*, 1:17-cv-6990-LGS (S.D.N.Y). ............................................. 9

    II.    *Page v. DOJ*, Case 1:19-cv-03149-KBJ (D.D.C.) ...................................................... 12

ARGUMENT ........................................................................................................................... 13

    I.    LEGAL STANDARDS ................................................................................................ 13

    II.    THE COURT SHOULD DISMISS COUNT 5 (FTCA CLAIM). .................................. 15

        A.    Plaintiff fails to state a claim for abuse of process and thus fails to establish subject matter jurisdiction. ................................................................................................... 16

        B.    Plaintiff's claim is time-barred under 28 U.S.C. § 2401(b). ..................................... 19

    III.    THE COURT SHOULD DISMISS COUNT 7 (PRIVACY ACT AMENDMENT CLAIM), OR IN THE ALTERNATIVE, DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT. ............................................................................................................... 22

        A.    Legal Framework for Privacy Act Access and Amendment Claims. ......................... 22

        B.    The Court Lacks Jurisdiction Over Count 7 Because Plaintiff Failed to Exhaust His Administrative Remedies. ......................................................................................... 23

        C.    The Complaint Fails to Allege an Error. .................................................................. 25

        D.    The OIG Report is Not in a System of Records. ...................................................... 26

        E.    OIG Investigative Files are Exempt. ....................................................................... 28

    IV.    THE COURT SHOULD DISMISS COUNT 8 (PRIVACY ACT DISCLOSURE). ...... 29

        A.    Count 8 Is Time-Barred. ......................................................................................... 30

        B.    Plaintiff Has Not Plausibly Pled Actual Damages Caused By the Alleged Disclosures. 34

CONCLUSION ........................................................................................................................ 38

## TABLE OF AUTHORITIES

Cases

*Agelli v. Burwell,*
    164 F. Supp. 3d 69 (D.D.C. 2016)..............................................................................34
*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................................17, 18
*Barouch v. DOJ,*
    962 F. Supp. 2d 30 (D.D.C. 2013)...........................................................................27
*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................................18, 40
*Brownback v. King,*
    141 S. Ct. 740 (2021)......................................................................................19, 20, 22
*Browning v. Clinton,*
    292 F.3d 235 (D.C. Cir. 2002).................................................................................38
*Callahan v. United States,*
    426 F.3d 444 (1st Cir. 2004)....................................................................................24
*Chichakli v. Tillerson,*
    882 F.3d 229 (D.C. Cir. 2018).................................................................................33
*Chung v. DOJ,*
    333 F.3d 273 (D.C. Cir. 2003).................................................................................37
*Ciralsky v. C.I.A.,*
    355 F.3d 661 (D.C. Cir. 2004).................................................................................37
*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013).................................................................................................21
*Dick v. Holder,*
    67 F. Supp. 3d 167 (D.D.C. 2014)..........................................................................27
*Dickson v. Off. of Pers. Mgmt.,*
    828 F.2d 32 (D.C. Cir. 1987)...................................................................................27
*Didban v. Pompeo,*
    435 F. Supp. 3d 168 (D.D.C. 2020).........................................................................19
*Donahue v. United States,*
    634 F.3d 615 (1st Cir. 2011)....................................................................................23
*E.E.O.C. v. St. Francis Xavier Parochial Sch.,*
    117 F.3d 621 (D.C. Cir. 1997).................................................................................18
*Erhard v. United States,*
    Civ. No. 93-0725-NHJ, 1994 WL 196755 (D.D.C. Mar. 29, 1994)........................25
*F.A.A. v. Cooper,*
    566 U.S. 284, (2012)................................................................................................38
*F.D.I.C. v. Meyer,*
    510 U.S. 471 (1994).................................................................................................19
*Farrero v. NASA,*
    180 F. Supp. 2d 92 (D.D.C. 2001)...........................................................................34
*Fox v. Gov't of D.C.,*
    794 F.3d 25 (D.C. Cir. 2015)...................................................................................18

*Goodall v. Frank R. Jelleff, Inc.*,
   130 A.2d 781 (D.C. 1957) ................................................................................. 22
*Hall v. Hollywood Credit Clothing Co.*,
   147 A.2d 866 (D.C. 1959) ................................................................................. 20
*Henke v. U.S. Dep't of Com.*,
   83 F.3d 1453 (D.C. Cir. 1996) ...................................................................... 26, 38
*Hill v. Dep't of Def.*,
   981 F. Supp. 2d 1 (D.D.C. 2013) ............................................................. 34, 35, 37
*Hill v. U.S. Dep't of Def.*,
   70 F. Supp. 3d 17 (D.D.C. 2014) ..................................................................... 38
*Hinton v. Corr. Corp. of Am.*,
   624 F. Supp. 2d 45 (D.D.C. 2009) ........................................................ 30, 31, 35
*In re OPM Data Sec. Breach Litig.*,
   928 F.3d 42 (D.C. Cir. 2019) ...................................................................... 38, 40
*James Madison Project v. DOJ*,
   No. 17-CV-00597 (APM), 2020 WL 1033301 (D.D.C. Mar. 3, 2020) ................ 11, 14, 35, 41
*Kokotis v. U.S. Postal Serv.*,
   223 F.3d 275 ................................................................................................. 25
*Kursar v. Transportation Sec. Admin.*,
   581 F. Supp. 2d 7 (D.D.C. 2008) , *aff'd*,  442 F. App'x 565 (D.C. Cir. 2011) ........................ 27
*Leighton v. C.I.A.*,
   412 F. Supp. 2d 30 (D.D.C. 2006) .................................................................. 27
*Lemon v. Kramer*,
   270 F. Supp. 3d 125 (D.D.C. 2017) ................................................................ 22
*Mackinac Tribe v. Jewell*,
   87 F. Supp. 3d 127 (D.D.C. 2015) .............................................................. 17, 18
*Maddox v. Wells Fargo Bank N.A.*,
   374 F. Supp. 3d 146, (D.D.C. 2019) .............................................................. 18
*Maydak v. United States*,
   630 F.3d 166 (D.C. Cir. 2010) ...................................................................... 26, 29
*McCready v. Nicholson*,
   465 F.3d 1 (D.C. Cir. 2006) ...................................................................... 29, 30, 31
*Moore v. United States*,
   213 F.3d 705 (D.C. Cir. 2000) .................................................................. 20, 21, 22
*Morowitz v. Marvel*,
   423 A.2d 196 (D.C. 1980) ............................................................................. 20
*Nader v. Democratic Nat'l Comm.*,
   567 F.3d 692 (D.C. Cir. 2009) ...................................................................... 23, 24
*Page v. Oath Inc.*,
   No. 17 CIV. 6990 (LGS), 2018 WL 1406622 (S.D.N.Y. Mar. 20, 2018) ................ 14, 15, 25
*Page v. United States Agency for Glob. Media*,
   797 F. App'x 550 (2d Cir. 2019) ............................................................... 15, 16, 25
*Paige v. Drug Enf't Admin.*,
   665 F.3d 1355 (D.C. Cir. 2012) .................................................................... 26, 38
*Phillips v. Generations Fam. Health Ctr.*,
   723 F.3d 144 (2d Cir. 2013) ......................................................................... 15

*Poulsen v. Dep't of Def.*,
  373 F. Supp. 3d 1249 (N.D. Cal. 2019) ................................................................. 35
*Richardson v. Bd. of Governors of Fed. Rsrv. Sys.*,
  288 F. Supp. 3d 231 (D.D.C. 2018), *aff'd*, No. 18-5063, 2018 WL 4103305 (D.C. Cir. Aug. 15, 2018) ...................................................................................................... 38
*Samtmann v. DOJ*,
  35 F. Supp. 3d 82 (D.D.C. 2014), *aff'd*, No. 14-5115, 2015 WL 236560 (D.C. Cir. Jan. 16, 2015) ................................................................................................................. 37
*Scott v. D.C.*,
  101 F.3d 748 (D.C. Cir. 1996) .................................................................. 20, 21
*Smith v. United States*,
  518 F. Supp. 2d 139 (D.D.C. 2007) .......................................................... 17
*Taylor v. Fed. Aviation Admin.*,
  No. 18-CV-00035 (APM), 2019 WL 3767512 (D.D.C. Aug. 9, 2019) ..................... 39
*Terveer v. Billington*,
  34 F. Supp. 3d 100 (D.D.C. 2014) ................................................................. 18
*Tijerina v. Walters*,
  821 F.2d 789 (D.C. Cir. 1987) ...................................................................... 34
*Washington Post v. Robinson*,
  935 F.2d 282 (D.C. Cir. 1991) ............................................................. 19, 36
*Welborn v. Internal Revenue Serv.*,
  218 F. Supp. 3d 64 (D.D.C. 2016) ................................................................. 38
*Williams v. City Stores Co.*,
  192 A.2d 534 (D.C. 1963) ........................................................................... 20
*Yusuf v. Jones*,
  No. 20-cv-1079-BMC, 2020 WL 4369641 (E.D.N.Y. July 30, 2020) ..................... 25
*Zandford v. Nat'l Ass'n of Sec. Dealers, Inc.*,
  19 F. Supp. 2d 4 (D.D.C. 1998) .................................................................. 22

Statutes

5 U.S.C. §552a ........................................................................................... 32
5 U.S.C. § 552a(a)(2)(D) .............................................................................. 35
5 U.S.C. § 552a(a)(5) ............................................................................ 26, 29
5 U.S.C. § 552a(b) ................................................................................. 26, 33
5 U.S.C. § 552a(d)(1) ............................................................................ 27, 30
5 U.S.C. § 552a(d)(2) .................................................................................. 27
5 U.S.C. § 552a(d)(3) .................................................................................. 27
5 U.S.C. § 552a(g)(1)(D) .............................................................................. 33
5 U.S.C. § 552a(g)(4) .................................................................................. 38
5 U.S.C. § 552a(g)(5) ............................................................................ 33, 34
5 U.S.C. § 552a(j) ................................................................................. 27, 31
18 U.S.C. § 2712 ....................................................................................... 13
28 U.S.C. § 1346(b) .................................................................................... 19
28 U.S.C. § 2401(b) .............................................................................. passim
50 U.S.C. § 1804(a)(6)(B) ............................................................................. 5
50 U.S.C. §§ 1801–1813 ............................................................................. 21

Rules

Fed. R. Civ. P. 8(a)(2)..................................................................................................... 18

Regulations

28 C.F.R. § 14.2(a) ......................................................................................................... 14
28 C.F.R. § 16.45 ............................................................................................................. 28
28 C.F.R. § 16.75 ......................................................................................................... 31, 32
72 Fed. Reg. 36725 (July 5, 2007) ................................................................................. 31
82 Fed. Reg. 24151 ......................................................................................................... 31

## INTRODUCTION

This is the latest of three lawsuits that Dr. Carter W. Page ("Plaintiff") has filed relating to an investigation, codenamed Crossfire Hurricane, that Plaintiff alleges the Federal Bureau of Investigation ("FBI") initiated "to determine whether 'individual(s) associated with the Trump campaign [we]re witting of and/or coordinating activities with the Government of Russia.'"  *See* Plaintiff's Amended Complaint ("Am. Compl.")  ¶ 5, ECF 51; *see also* Ex. A, Complaint for Damages, *Page v. Oath, Inc.*, No. 1:17-cv-6990 (S.D.N.Y Sept. 14, 2017), ECF 1; Ex. S, Complaint, *Page v. DOJ*, No. 19-cv-03149 (D.D.C. Oct. 21, 2019), ECF 1.

In addition to a variety of claims against eight current or former officers or employees of the FBI and the Department of Justice ("DOJ" or the "Department"), each of whom Plaintiff has sued in their individual capacities ("individual Defendants"), Plaintiff makes three claims against the Government: a claim against the United States under the Federal Tort Claims Act ("FTCA") for abuse of process and claims against the Department and FBI under the Privacy Act.  The Government Defendants move to dismiss each of the claims asserted against the United States, DOJ, or FBI.

With respect to his FTCA claim, Plaintiff alleges that in obtaining four Foreign Intelligence Surveillance Act ("FISA") orders in October 2016, January 2017, April 2017, and June 2017, "[t]he individual Defendants, known and unknown to Dr. Page, committed an abuse-of-process because they acted with an ulterior purpose in using the FISA warrant process to accomplish an end unintended and not permitted by law, to wit, to spy on the Trump presidential campaign by unlawfully invading the privacy of Dr. Page without probable cause."  Am. Compl. ¶ 240.  Plaintiff's claim for abuse of process fails on two separate grounds:

First, to state a claim for abuse of process a plaintiff must allege not only the existence of an ulterior motive but also the use of process for some purpose other than what would be proper in the regular course of the proceedings. Thus, an ulterior motive is not enough to state a claim for abuse of process; the tort also requires the perversion of the judicial process to achieve some end other than that which is contemplated by the regular use of the process. Here, Plaintiff's allegation that the FISA process was misused to collect information through surveillance of the Trump campaign is legally insufficient because the collection of information for foreign intelligence purposes is precisely what FISA contemplates,[1] and using FISA orders to collect such information in the context of the Crossfire Hurricane investigation therefore is not a perversion of the judicial process as a matter of law.

Second, even if this Court were to conclude that Plaintiff has stated an actionable claim for abuse of process, his claim is forever barred because he failed to present it to the Department within two years after it accrued. *See* 28 U.S.C. § 2401(b). The facts alleged in the Complaint and in various judicially noticeable public documents establish that Plaintiff's claim accrued well more than the two years before he presented it administratively to the Department.

The Court should also dismiss Count 7, wherein Plaintiff claims that the DOJ Office of the Inspector General ("OIG") violated the Privacy Act by failing to amend a report entitled *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* ("OIG Report" or "Report"). *See* OIG Report (December 2019),

---

[1] FISA requires that a "significant purpose of the surveillance is to obtain foreign intelligence information." 50 U.S.C. § 1804(a)(6)(B). "Foreign intelligence information" is, in pertinent part, "information that relates to, and if concerning a United States person is necessary to, the ability of the United States to protect against … clandestine intelligence activities by an intelligence service or network of a foreign power or by an agent of a foreign power." *Id.* § 1801(e)

https://www.oversight.gov/sites/default/files/oig-reports/o20012.pdf.  The Court lacks

jurisdiction over this claim because Plaintiff failed to exhaust administrative remedies.  The

Court may also dismiss this claim, or in the alternative grant summary judgment for the

Government, because Plaintiff fails to identify any errors in the OIG Report, because the Report

is not in a system of records, and because drafts of the Report are exempt from the Privacy Act.

Finally, the Court should also dismiss Count 8, which alleges that FBI and DOJ

unlawfully disclosed information about Plaintiff to the media in April 2017.  This claim is time-

barred because the facts alleged in the Complaint and in various judicially noticeable public

documents establish that Plaintiff's cause of action arose more than two years before this action

was filed.  And Plaintiff also fails to state a claim because he has not plausibly pled specific

pecuniary damages that were proximately caused by Defendants' alleged actions.

## FACTUAL BACKGROUND[2]

As part of its Crossfire Hurricane investigation, which included investigation of Plaintiff,

the FBI began the process of obtaining a FISA order from the Foreign Intelligence Surveillance

Court ("FISC").  Am. Compl. ¶ 6.  The FISC issued a FISA order on October 21, 2016 ("First

FISA"), with subsequent renewal applications approved by the FISC on January 12, 2017

("Second FISA"), April 7, 2017 ("Third FISA"), and June 29, 2017 ("Fourth FISA"). Am.

Compl. ¶¶ 76, 92, 103, 114.

Before the FISC issued the First FISA, Plaintiff sent correspondence to then-Director of

the FBI James Comey on September 25, 2016 in which Plaintiff "den[ied] communications with

any sanctioned Russian officials" along with other assertions.  *See* Am. Compl. ¶¶ 12, 65, 126.

---

[2] For the purposes of this section, Government Defendants rely on the facts alleged in the
Amended Complaint (which are assumed to be true solely for purposes of this motion to
dismiss), and on judicially noticeable documents.

In January 2017, the Senate Select Committee on Intelligence announced an inquiry into Russian intelligence activities.  *See* Ex. B, Press Release (Jan. 13, 2017), https://www.intelligence.senate.gov/press/joint-statement-committee-inquiry-russian-intelligence-activities; *see generally* Senate Select Committee on Intelligence, *Russian Active Measures Campaigns and Interference in the 2016 U.S. Election*, Vol. 5, at 527–60, https://www.intelligence.senate.gov/sites/default/files/documents/report_volume5.pdf.  In March 2017, the House Permanent Select Committee on Intelligence ("HPSCI") also announced an investigation into "the Russian active measures campaign targeting the 2016 U.S. election."  *See* Ex. C at 1, Press Release, *Intelligence Committee Chairman, Ranking Member Establish Parameters for Russia Investigation* (Mar. 1, 2017), https://republicans-intelligence.house.gov/news/documentsingle.aspx?DocumentID=767.  As a result of the HPSCI investigation, the then-Director of the FBI testified in an open-session on March 20, 2017 that the FBI was "authorized by the Department of Justice to confirm that the FBI . . . is investigating the Russian government's efforts to interfere in the 2016 presidential election, and that includes investigating the nature of any links between individuals associated with the Trump campaign and the Russian government . . . ."  *See* Robert Muller III, *Report On The Investigation Into Russian Interference In The 2016 Presidential Election*, U.S. Department of Justice (March 2019), https://www.justice.gov/archives/sco/file/1373816/download.

On April 11, 2017, *The Washington Post* published an article describing the FBI and Department obtaining FISA Warrants targeting Plaintiff and the investigators' basis for "believing that Page was an agent of the Russian government and knowingly engaged in clandestine activities on behalf of Moscow."  Am. Compl. ¶ 184; *see also* Ex. D at 3, Ellen Nakashima, *FBI obtained FISA warrant to monitor former Trump adviser Carter Page*, The

Washington Post (Apr. 11, 2017), https://www.washingtonpost.com/world/national-security/fbi-obtained-fisa-warrant-to-monitor-former-trump-adviser-carter-page/2017/04/11/620192ea-1e0e-11e7-ad74-3a742a6e93a7_story.html.  The article stated, in pertinent part, that "[t]he FBI obtained a secret order in October 2016 to monitor the communications of a former adviser to presidential candidate Donald Trump . . . . the FBI and Justice Department obtained the warrant targeting Carter Page's communications after convincing a Foreign Intelligence Surveillance Court judge that there was probable cause to believe Page was acting as an agent of a foreign power, in this case Russia, according to the officials." *Id.* at 1.  The article also quoted Plaintiff as stating in an interview that, "[t]his confirms all of my suspicions about unjustified, politically motivated government surveillance."  *Id.* at 2.

On April 22, 2017, the *New York Times* published an article about then-Director James Comey.  *See* Am. Compl. ¶ 187; *see* Ex. E, Matt Apuzzo, *Comey Tried to Shield the F.B.I. From Politics. Then He Shaped an Election*, The New York Times (Apr. 22, 2017), https://nyti.ms/2pOUzpX.  The article is largely unrelated to Plaintiff, but states without attribution that the FBI "took notice" when Plaintiff "gave a speech in Moscow criticizing American foreign policy" because Page "had previously been under F.B.I. scrutiny years earlier, as he was believed to have been marked for recruitment by Russian spies." *Id.* at 10.  The article attributed to a "former senior American intelligence official" information that Page "met with a suspected intelligence officer on one of those trips and there was information that the Russians were still very interested in recruiting him."  *Id.*  Plaintiff's Complaint alleges that both of these two media stories resulted from unlawful disclosures by Defendant agencies.  *See* Am. Compl. ¶¶ 181–91.

In response to a request by the HPSCI for information regarding government measures directed at the 2016 Presidential elections, Plaintiff sent a correspondence dated May 22, 2017. *See* Ex. F at 4–26, https://docs.house.gov/meetings/IG/IG00/20171102/106559/HHRG-115-IG00-Transcript-20171102.pdf.  Plaintiff's letter stated in relevant part:  "I have recently been in contact with Deputy Attorney General Rod Rosenstein, Special Counsel Robert Mueller and other Justice Department officials regarding the multiple outstanding requests for immediate release of the illegitimate FISA warrants that were allegedly filed by the Obama administration against me in 2016." *Id.* at 4–5.  Plaintiff added that "[b]y all accounts, the Clinton/Obama regime's fake FISA warrant targeting me for exercising my First Amendment rights is the most unwarranted abuse of power that I and most Americans have witnessed in any election throughout our lifetimes."  *Id.* at 7.  In addition, he wrote that, "[b]ased on revelations in the press thus far, I was the primary known person allegedly put under the most intensive surveillance by the Obama administration as part of their 2016 domestic political intelligence operation."  *Id.* at 15.

On November 2, 2017, Plaintiff appeared before the HPSCI and provided sworn testimony.  His May 22, 2017 letter was incorporated into the record of this particular Congressional hearing.  He testified that "the alleged U.S. cyber operations of wiretap against myself, as a previously unknown private citizen who volunteered as an informal, unpaid member of an early foreign policy advisory committee with the Trump campaign, marked a new low with this baseless domestic interference in our democracy prior to the 2016 election" and that information obtained by the government through "illicitly wire[tapping] and [hacking] of [Plaintiff's] computer systems" was based on "alleged FISA warrant[s]." *Id.* at 35, 184.

HPSCI's review led to the issuance of a classified memorandum dated January 18, 2018, which was prepared by the committee's majority staff and is popularly referred to as the "Nunes Memo." On February 2, 2018, President Trump authorized the declassification and disclosure of the Nunes Memo. *See* Ex. G, https://docs.house.gov/meetings/IG/IG00/20180129/106822/HMTG-115-IG00-20180129-SD001.pdf. The Nunes Memo disclosed that DOJ and the FBI had "sought and received a FISA probable cause order" on October 21, 2016 which "authoriz[ed] electronic surveillance on Carter Page from the FISC." *Id.* at 3. The Nunes Memo further revealed that "[t]he FBI and DOJ obtained one initial FISA warrant targeting Carter Page and three FISA renewals from the FISC." *Id.* In addition, the Nunes Memo asserted that "the government had at least four independent opportunities before the FISC to accurately provide an accounting of the relevant facts" and went on to outline which "material and relevant information [were] omitted" in the applications before the FISC, according to the Memo's authors. *Id.* at 4.

On the same day the Nunes Memo was issued, Plaintiff issued a public statement referring to the Memo and stating "[t]he brave and assiduous oversight by Congressional leaders in discovering this unprecedented abuse of process represents a giant, historic leap in the repair of America's democracy." [3] *See* Ex. H at 1, ABC News (@abc), Twitter (February 2, 2018, 12:43 p.m.), https://twitter.com/ABC/status/959482517291196417. Approximately three weeks later, an unclassified, redacted version of a memorandum by HPSCI's ranking member, dated January 29, 2018, addressed to All Members of the House of Representatives, and entitled "Correcting the Record – The Russia Investigations" ("Schiff Memo"), was released. *See* Ex. I,

---

[3] As will be described in greater detail below, Plaintiff made additional statements about the Nunes Memo in filings he made in a damages suit he had instituted in the United States District Court for the Southern District of New York ("S.D.N.Y. lawsuit") against a federal agency called the Broadcast Board of Governors ("BBG") and another defendant. *See infra* at pp. 9–12.

https://intelligence.house.gov/uploadedfiles/redacted_minority_memo_2.24.18.pdf.  The Schiff

Memo disputes various conclusions of the Nunes Memo and includes additional information

about the FISA applications.

As a result of the declassification decisions relating to the Nunes and Schiff Memos, DOJ

was ultimately required to process and release the FISA applications in response to Freedom of

Information Act ("FOIA") requests.  *See, e.g.*, *James Madison Project v. DOJ*, No. 17-CV-

00597 (APM), 2020 WL 1033301, at *1 (D.D.C. Mar. 3, 2020) (describing background).[4]  In

July 2018, DOJ disclosed heavily redacted versions of the FISA applications and orders to

several FOIA requesters and posted them on the FBI website pursuant to FOIA.  *See*

https://vault.fbi.gov/d1-release/d1-release (last visited April 14, 2021).

In December 2019, DOJ OIG published its OIG Report.  *See* Am. Compl. ¶¶ 192–93.

OIG "undertook this review to examine certain actions by the Federal Bureau of Investigation

(FBI) and the Department during an FBI investigation opened on July 31, 2016, known as

'Crossfire Hurricane,' into whether individuals associated with the Donald J. Trump for

President Campaign were coordinating, wittingly or unwittingly, with the Russian government's

efforts to interfere in the 2016 U.S. presidential election."  OIG Report at i.  Among many other

findings (including that the Crossfire Hurricane investigation was properly predicated), the OIG

Report found several errors and omissions in the handling of the FISA applications.  *See* OIG

---

[4] At the time the Nunes and Schiff Memos were disclosed, there were multiple pending
FOIA requests that encompassed the FISA applications, some of which were in litigation.  *See
James Madison Project,* 2020 WL 1033301 (Status Report, Docket No. 34 & Minute Entry
Dated Mar. 19, 2018) (setting schedule for production of applications); *Poulsen v. Dep't of Def.,
et al.*, No. 17 Civ. 3531-WHO (N.D. Cal.) (Docket No. 46) (similar); *Gizmodo Media Group,
LLC v. DOJ*, 17 Civ. 3566-DLC (S.D.N.Y.) (Docket No. 44) (similar); *New York Times v. DOJ*,
18 Civ. 2054 (S.D.N.Y.) (Docket No. 11); *Judicial Watch v. DOJ*, No. 18 Civ. 245-CRC
(D.D.C.) (Docket No. 7) (similar).

Report at vi–xiv.  Prior to publication of the OIG Report, Plaintiff demanded access to the draft

Report, and was not provided such access.  *See* Am. Compl. ¶¶ 198–205.  Since its publication

he has not sought amendment of the Report.

There is no record that Plaintiff presented a legally sufficient administrative claim

alleging abuse of process until April 29, 2020, when Plaintiff electronically transmitted to DOJ

copies of a Standard Form 95 ("SF95") with attachments asserting an "abuse of process" claim

and demanding damages in the amount of $75 million.  The original SF95 bearing Plaintiff's

signature, together with a transmittal letter from Plaintiff's counsel and attachments to the claim,

were received by DOJ on May 12, 2020.[5]  On May 26, 2020, notice of final denial of Plaintiff's

claim by DOJ was mailed to Plaintiff's counsel by certified mail.  Am. Compl. ¶ 238.[6]

## PLAINTIFF'S PRIOR RELATED LITIGATION

I.     *Page v. Oath, Inc., et al.*, **1:17-cv-6990-LGS (S.D.N.Y).**

Plaintiff instituted a lawsuit against the Broadcasting Board of Governors ("BBG") and a

private media company, Oath, Inc., in the fall of 2017 in the Southern District of New York

("S.D.N.Y.").  *See* Ex. A.  (Compl., filed Sept. 14, 2017).  BBG is an independent federal agency

which is now known as the United States Agency for Global Media.  Plaintiff's complaint

asserted various tort claims against BBG based on the republication by a BBG grantee of

---

[5] At the time of the Amended Complaint, Plaintiff had a pending administrative claim
against the United States under the Patriot Act, 18 U.S.C. § 2712, and the Amended Complaint
indicated his intention to amend the complaint if that claim were denied, *see* Am. Compl. ¶ 215.
The FBI denied the pending administrative claim by letter dated April 22, 2021, more than three
weeks before this filing, and Plaintiff has not sought leave to amend the complaint.

[6] True and correct copies of the referenced materials received by the Department on May
12, 2020, and the notice of final denial mailed to Plaintiff's counsel on May 26, 2020, are
annexed to the declaration of Elijah Jenkins, attached hereto as Exhibit J.

allegedly defamatory news articles about the investigation of Plaintiff's ties to the Kremlin. *Id.* at 1.

BBG moved to dismiss the suit on various grounds, including Plaintiff's failure to exhaust his administrative remedies under the FTCA before instituting the action. *See* Ex. K at 9 n.4, *Page v. Oath, Inc.*, 1:17-cv-6990-LGS (S.D.N.Y) ("*Page v. Oath*"), ECF 29 (BBG Mem. of Law, filed Dec. 8, 2017). In a brief filed in opposition to BBG's motion to dismiss, Plaintiff argued that he had raised his claims administratively in the letter he sent to then FBI-Director Comey on September 25, 2016, a copy of which was attached to his complaint. *See Page v. Oath*, Ex. L at 15, ECF 38 (Pl. Mem. of Law, filed Jan. 19, 2018); Ex. M at 16, ECF 1-5 (Pl. Compl. Exh. 9, filed Sept. 14, 2017).

BBG's reply brief in turn argued that the letter Plaintiff sent to then FBI-Director Comey in September 2016 did not administratively exhaust his remedies under the FTCA because it failed to satisfy the requirements of 28 C.F.R. § 14.2(a), which provides that an administrative claim must provide "notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident." *Page v. Oath*, Ex. N at 4–5, ECF 39 (BBG Reply Mem. filed Jan. 31, 2018).

On February 5, 2018, three days after the release of the Nunes Memo, Plaintiff submitted a supplemental letter brief in opposition to BBG's pending motion to dismiss. *Page v. Oath*, Ex. O, ECF 42 (Pl. letter to Hon. Lorna G. Schofeld, D.J., filed Feb. 5, 2018). In this letter brief, Plaintiff argued that the Nunes Memo substantiated his contentions that he had been the victim of an "abuse of process," and that his September 2016 letter to then-Director Comey, which he

referred to as his "initial administrative claim," had been presented to the appropriate federal agency, namely, to the FBI.  *See id.* at 1–2.

The district court then granted BBG's motion to dismiss.  *See Page v. Oath*, Ex. P, ECF 48, *Page v. Oath Inc.*, No. 17 CIV. 6990 (LGS), 2018 WL 1406622 (S.D.N.Y. Mar. 20, 2018). The district court held that it lacked subject matter jurisdiction under the FTCA on several grounds, including that Plaintiff had failed to exhaust his administrative remedies.  *See id.* at *7 (specifically rejecting Plaintiff's argument that he had exhausted his administrative remedies by sending the September 2016 letter to then-Director Comey).

Prior to appealing the dismissal of his suit, Plaintiff filed a second letter brief in the district court requesting that he be permitted to file an amended complaint because the HPSCI's disclosure of evidence showed the defamatory articles "contributed to significant abuses of process."  *See Page v. Oath*, Ex. Q at 2, ECF 52 (Pl. letter to Hon. Lorna G. Schofield, D.J., filed Apr. 16, 2018).  In this letter brief, Plaintiff advised the district court that "I plan to present further facts in the amended Compl. that should make my fulfillment of the relevant notice requirement readily apparent."  *Id*.  In an endnote accompanying the just-quoted statement, Plaintiff added:

> Particularly in light of the severe acts or omissions of FBI investigative or law enforcement officers which enabled this disinformation campaign and extreme personal distress this dangerous wrongdoing by the Bureau caused, providing the Court with additional related information will make clear why the notice was appropriate.

*Id.* at 6 n.xvii.

Thereafter, Plaintiff noticed an appeal of the district court's dismissal of his S.D.N.Y lawsuit.  Following briefing and oral argument, the United States Court of Appeals for the Second Circuit affirmed the district court's judgment.  *See Page v. United States Agency for*

11

*Glob. Media*, 797 F. App'x 550 (2d Cir. 2019), Ex. R (Summary Order).  Addressing the

dismissal of Plaintiff's tort claims, the Court of Appeals' summary order stated in relevant part:

> With respect to Page's FTCA claims, the district court properly dismissed them
> principally because Page failed to exhaust his administrative remedies.  Before
> bringing suit under the FTCA, a plaintiff must exhaust administrative remedies by
> filing a claim for monetary damages with the appropriate federal agency within
> two years of accrual of the injury.  28 U.S.C. § 2401(b); *Phillips v. Generations
> Fam. Health Ctr.*, 723 F.3d 144, 147 (2d Cir. 2013).  Curiously, Page asserts that
> his 2016 letter to then-FBI Director James Comey satisfies the exhaustion
> requirement for his defamation claims against BBG.  But even aside from the fact
> that BBG is an entity as to which Comey had no apparent connection or control,
> nothing in Page's letter suggested he was seeking damages resulting from the
> publication of articles by BBG.  And Page's vague assertions that he contacted the
> DOJ to inquire about the investigation against him and to complain about the
> allegedly defamatory statements also fail to meet the exhaustion requirement for
> the same reason – he did not allege that he was seeking damages from BBG (or
> anyone else) in any of those communications.

*Id.* at 555.

## II.    *Page v. DOJ*, Case 1:19-cv-03149-KBJ (D.D.C.)

Plaintiff filed another lawsuit against the Government in 2019.  The Complaint in this

matter made a variety of allegations related to various components of DOJ.  *See* Complaint Ex.

S, *Page v. DOJ*, No. 19-cv-03149, ECF 1 (Oct. 21, 2019) ("2019 Complaint").  Among other

things, the 2019 Complaint alleged that DOJ "leaked" the redacted FISA applications and orders

by providing them to FOIA requestors in 2018, ¶ 7; that Page was unable to "amend" his records,

*id.* ¶ 12; and that he had "frequently experienced life-threatening damages following publication

of news articles which stemmed from the false information compiled and distributed with the

direct support of the Defendant," *id.* ¶¶ 14, 17–18.  Although the allegations were wide-ranging,

the Complaint only raised three specific causes of action:  Count 1 purported to raise a claim for

denial of access to records under FOIA and the Privacy Act, based on Page's May 2017 request

to DOJ Office of Information Policy and for access to several categories of records about

himself, *id*. ¶¶ 19–24.  Count 2 purported to raise a claim under the Privacy Act for "improper

dissemination" based on dissemination of "information protected by the Privacy Act concerning

Dr. Page to the NY Times and other media organizations[, including] Dr. Page's unverified

redacted FISA affidavits." *Id*. ¶¶ 25–27 (appearing to raise a claim based solely on the release of

the redacted applications pursuant to FOIA).  Count 3 purported to raise a claim for improper

dissemination based on DOJ's alleged failure "to make reasonable efforts to ensure that the

information and records were accurate, complete, timely and relevant for agency purposes." *Id*.

¶¶ 28–32.  DOJ filed a partial motion to dismiss, *see Page v. DOJ*, 19-cv-03149, ECF 9 (Dec. 23,

2019), and following multiple extensions, Plaintiff ultimately voluntarily stipulated to dismissal

without prejudice.  *See* Ex. T, Stipulation of Dismissal, *Page v. DOJ*, 19-cv-03149, ECF 19

(Sept. 11, 2020).[7]

## ARGUMENT

### I.     LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(1) is a threshold challenge to the Court's subject

matter jurisdiction.  *Smith v. United States*, 518 F. Supp. 2d 139, 145 (D.D.C. 2007).  The

plaintiff bears the burden to establish the court's jurisdiction over the complaint.  *Mackinac*

*Tribe v. Jewell*, 87 F. Supp. 3d 127, 136 (D.D.C. 2015).  Rule 12(b)(1) motions fall into two

---

[7] Plaintiff has brought at least three other lawsuits revolving around similar facts against private entities.  In two cases, he brought claims against the Democratic National Committee and attorneys he believed were responsible for the Steele Dossier, and made allegations about FISA surveillance.  *See Page v. Dem. Nat'l Comm.*, No. 5:18-cv-01019 (W.D. Okl.) (filed October 15, 2018, dismissed Jan. 31, 2019, for lack of personal jurisdiction); *Page v. Dem. Nat'l Comm.*, No. 20-671 (N.D. Ill.) (re-filed in new district Jan. 30, 2020, dismissed Aug. 17, 2020 for lack of personal jurisdiction, appeal pending)).  A third suit was brought after his SDNY claims were dismissed, bringing state law defamation claims against the private entities and making allegations about FISA surveillance.  *See Page v. Oath, Inc.*, C.A. No. S20C-07-030 CAK (Del. Supr. Ct.) (dismissed Feb. 11, 2021, for failure to state a claim).

categories: facial attacks and factual attacks.  *Smith*, 518 F. Supp. 2d at 145.  In a facial attack, as the United States brings here, a "court must accept as true the allegations in the complaint and consider the factual allegations of the complaint in the light most favorable to the non-moving party."  *Smith*, 518 F. Supp. 2d at 145; *see also Mackinac Tribe*, 87 F. Supp. 3d at 136.

Under Rule 12(b)(6), "a party may challenge the sufficiency of a complaint on the grounds that it '[f]ails to state a claim upon which relief can be granted.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, a complaint must, at a minimum, assert nonconclusory factual matter sufficient to "nudge [its] claims across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007).  The complaint cannot overcome the United States' Motion to Dismiss for failure to state a claim unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,' such that a court may 'draw reasonable inference that the defendant is liable for misconduct alleged.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556, 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  When considering a motion to dismiss for failure to state a claim, the court accepts as true the facts alleged in the complaint. *See Fox v. Gov't of D.C.*, 794 F.3d 25, 27 (D.C. Cir. 2015).

In deciding a Rule 12(b)(6) motion a court should "not consider matters outside the pleadings, but a court may consider a motion to dismiss on the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the

plaintiff in the complaint but by the defendant in a motion to dismiss." *Terveer v. Billington*, 34 F. Supp. 3d 100, 110 (D.D.C. 2014) (internal quotations and citations omitted).  However, a court may consider extrinsic documents not expressly referenced in the complaint without converting the motion to dismiss into a motion for summary judgment if the document is a matter of public record which the court may take judicial notice.  *See Mackinac Tribe*, 87 F. Supp. 3d at 136 (citing *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997)); *see also Maddox v. Wells Fargo Bank N.A.*, 374 F. Supp. 3d 146, (D.D.C. 2019) ("The court may also rely on matters of public record, including judicial proceedings and the opinions of other courts."); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 n.5 (D.D.C. 2020) (taking judicial notice of congressional testimony); *Washington Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991) ("[A] court may take judicial notice of the existence of newspaper articles.").

## II.    THE COURT SHOULD DISMISS COUNT 5 (FTCA CLAIM).

In an action against the Federal Government, a plaintiff must identify a claim as to which the Government has waived its sovereign immunity.  "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (describing sovereign immunity as "jurisdictional in nature").  In Count 5, Plaintiff invokes the FTCA, which waives the United States' sovereign immunity for certain torts committed by federal employees while acting within the scope of their employment.  28 U.S.C. § 1346(b).  "Federal courts have jurisdiction over these claims if they are actionable under 1346(b)." *Brownback v. King*, 141 S. Ct. 740, 746 (2021) (quoting *Meyer*, 510 U.S. at 477). Section 1346(b) contains the following six requirements—all of which must be satisfied in order for an action to qualify within the FTCA's jurisdictional grant: the claim must be "'[1] against

the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal

injury or death [4] caused by the negligent or wrongful act or omission of any employee of the

Government [5] while acting within the scope of his office or employment, [6] under

circumstances where the United States, if a private person, would be liable to the claimant in

accordance with the law of the place where the act or omission occurred.'" *Meyer*, 510 U.S. at

477 (quoting 28 U.S.C. § 1346(b) (bracketed numerals added by the Court)).

As the Court recently held in *Brownback*, "a plaintiff must plausibly allege all six FTCA

elements not only to state a claim upon which relief can be granted but also for a court to have

subject-matter jurisdiction over the claim." 141 S. Ct. at 749.  "That means a plaintiff must

plausibly allege that 'the United States, if a private person, would be liable to the claimant' under

state law both to survive a merits determination under Rule 12(b)(6) and to establish subject-

matter jurisdiction." *Id.*  And it also follows, as the Court held, that "where a plaintiff fails to

plausibly allege an element that is both a merit element of a claim and a jurisdictional element,

the district court may dismiss the claim under Rule 12(b)(1) or Rule 12(b)(6)." *Id.* at 749 n.8.

### A.  Plaintiff fails to state a claim for abuse of process and thus fails to establish subject matter jurisdiction.

Plaintiff's only theory for why the United States, if a private person, would be liable, is

an alleged abuse of process.  But Plaintiff has not plausibly pleaded abuse of process.  To state a

claim for abuse of process, Plaintiff must allege the "existence of an ulterior motive" and "the

perversion of the court process to accomplish an end which the process was not intended to bring

about." *Hall v. Hollywood Credit Clothing Co.*, 147 A.2d 866, 868 (D.C. 1959).

"[T]he fact that a person acts spitefully, maliciously, or with an ulterior motive in

instituting a legal proceeding is insufficient to establish abuse of process." *Scott v. D.C.*, 101

F.3d 748, 755 (D.C. Cir. 1996) ((citing Restatement (Second) of Torts § 682 cmt. b (1977)).

Instead, Plaintiff must allege that Defendants used the process to "'accomplish an end unintended by law.'" *Moore v. United States*, 213 F.3d 705, 712 (D.C. Cir. 2000) (quoting *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980)).  The initiation of the process is irrelevant to an abuse-of-process claim because it is the improper use *after* the process is issued that creates a claim for abuse of process.  *Cf. Williams v. City Stores Co.*, 192 A.2d 534, 536 (D.C. 1963) (holding that abuse of process will lie "regardless of whether there was probable cause for its issuance.") "'The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it.'"  *Scott*, 101 F.3d at 755–56  (quoting Restatement (Second) of Torts § 682 cmt. B (1977)).

Plaintiff alleges that after the Defendants obtained the process—the FISA orders—Defendants used it "to spy on the Trump presidential campaign by unlawfully invading the privacy of Dr. Page without probable cause."  Am. Compl. ¶ 240.  Even taken as true, which Defendants do not concede, Plaintiff fails to state a claim for abuse of process because conducting surveillance and collecting information for foreign intelligence purposes are exact purposes for which FISA orders are intended; that is, they are the end intended by law.  And, as the Amended Complaint alleges, the FBI initiated the Crossfire Hurricane investigation "to determine whether 'individual(s) associated with the Trump campaign [we]re witting of and/or coordinating activities with the Government of Russia.'"  Am. Compl. ¶ 5.  As the D.C. Circuit has made clear, "'there is no action for abuse of process when the process is used for the purpose for which it is intended.'"  *Scott*, 101 F.3d at 755–56 (quoting Restatement (Second) of Torts § 682 cmt. b (1977)); *see also Moore*, 213 F.3d at 712  ("'For abuse of process to occur there must

be use of the process for an immediate purpose other than that for which it was designed and intended.'" (quoting Restatement (Second) of Torts § 682 cmt. b (1977))).

Congress designed FISA "to authorize and regulate certain governmental electronic surveillance of communications for foreign intelligence purposes." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013) (citing 50 U.S.C. § 1801 et seq.). Thus, when the Government obtains an order pursuant to FISA, the Government may conduct electronic surveillance and physical searches of United States persons in accordance with the order. *See* 50 U.S.C. §§ 1801–1813, 1821–1829.

Here, as alleged by Plaintiff, Defendants used the FISA orders to engage in surveillance of Plaintiff and obtain his electronic communications "in the manner and for the time periods prescribed in the four warrants." Am. Compl. ¶¶ 121–22. As explained above, conducting surveillance and collecting information in the manner prescribed by the FISA warrants is precisely what FISA contemplates. Thus, Plaintiff has failed to allege Defendants used "the process for an immediate purpose other than that for which it was designed and intended." *Moore*, 213 F.3d at 712.

Courts applying D.C. law have routinely dismissed abuse-of-process claims that fail to sufficiently plead this critical element. *See Lemon v. Kramer*, 270 F. Supp. 3d 125, 144 (D.D.C. 2017) (finding plaintiff's complaint failed to state a claim for abuse of process where defendants availed themselves of the judicial process and only sought relief as the system legitimately offered); *Zandford v. Nat'l Ass'n of Sec. Dealers, Inc.*, 19 F. Supp. 2d 4, 8 (D.D.C. 1998) (finding plaintiff's complaint failed to state a claim for abuse of process where defendants' actions, as pled by the plaintiff, did not achieve some end not contemplated in the regular prosecution of the charge); *Goodall v. Frank R. Jelleff, Inc.*, 130 A.2d 781, 782 (D.C. 1957)

18

(affirming the dismissal of a claim finding that "[p]roper use of the machinery of the law, though with an improper motive, is not tortious.").

For these reasons, Plaintiff has failed to state a claim for abuse of process under D.C. law. Because Plaintiff fails to state a claim under Rule 12(b)(6), he has not satisfied the requirements for a waiver of sovereign immunity, so this Court also lacks subject-matter jurisdiction. *See Brownback*, 141 S. Ct. at 749. Accordingly, this Court should dismiss the claim under Rule 12(b)(1), Rule 12(b)(6), or both. *See id.* at 749 n.8.

**B. Plaintiff's claim is time-barred under 28 U.S.C. § 2401(b).**

Even if the Court finds that Plaintiff has stated a claim for abuse of process, his claim is time-barred because he presented it to the Department more than two years after it accrued. *See* 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . .").

"[F]or abuse of process" the limitations period "ordinarily run[s] from the date on which the abusive process last issued." *Nader v. Democratic Nat'l Comm.,* 567 F.3d 692, 699 (D.C. Cir. 2009). Here, the last allegedly abusive process issued in June 2017, when the fourth FISA order was issued—nearly three years before Plaintiff submitted his administrative tort claim. While Plaintiff may argue that he was unaware of any of the FISA orders targeting him at the time they were issued, it was publicly reported while collection was ongoing pursuant to the FISA orders that he had been the target of FISA surveillance, and this critical fact was confirmed more than two years prior to his claim, when the Nunes and Schiff Memos were declassified and publicly released. *See, e.g.*, *Donahue v. United States*, 634 F.3d 615, 626 (1st Cir. 2011) (plaintiffs had enough information through public reporting of sworn testimony corroborated by

independent accounts that was "considerably more than a mere hunch, hint, suspicion, or rumor about what had transpired" to lead a person in his position to seek advice about a possible claim against the government) (internal citations omitted).  The fact of FISA orders targeting Page was again widely reported later in February 2018 after the Schiff Memo was released.

Indeed, on several occasions well more than two years before he presented his claim to the Department, Plaintiff publicly asserted that he had been unlawfully targeted for FISA surveillance as part of a plot to spy on the Trump campaign, including in submissions filed in his aforementioned S.D.N.Y. litigation against BBG.  *See, e.g.*, *Page v. Oath,* Ex. L at 13 (in Plaintiff's opposition motion filed on January 19, 2018 he admitted he was aware of "wide-scale news coverage related to the otherwise-ludicrous Dodgy Dossier, of which Dr. Page was the first direct target in 2016" and how its republication "provided some further false legitimacy and other encouragement to the alleged abuse of process before the FISC"); Ex. F at 6, Carter Page Letter to the HPSCI, May 22, 2017 (informing HPSCI of the "unfortunate front-page *Washington Post* article about the civil rights abuses committed against me"); Ex. D at 2 (*Washington Post* article quoting Plaintiff "[t]his confirms all of my suspicions about unjustified, politically motivated government surveillance").

Given Plaintiff's documented awareness that he in fact had been the target of a series of FISA orders obtained by the United States, he cannot plausibly invoke the fraudulent concealment doctrine as a basis for arguing that the accrual of his claim was delayed.  *See Nader*, 567 F.3d at 700–701 (rejecting plaintiff's argument that accrual of his claim for abuse of process was delayed by defendants' efforts to fraudulently conceal their wrongdoing because allegations of complaint belied assertion plaintiff remained ignorant of defendant's wrongdoing); *see also Callahan v. United States*, 426 F.3d 444, 454–455 (1st Cir. 2004) (certainty is "not required for a

claim to accrue" and the FBI's refusal to disclose information was superseded by publicly available information for purposes of establishing knowledge under the discovery rule).

Furthermore, any argument by Plaintiff that his letter to then-FBI Director Comey constituted an administrative claim which was later amended by the administrative claim submitted and received by the Department on May 12, 2020, must be rejected.  In her ruling dismissing Plaintiff's S.D.N.Y. lawsuit, which was issued on March 20, 2018, more than two years before Plaintiff filed his administrative claim in the instant matter, Judge Schofield specifically noted that Plaintiff's letter to then-Director Comey did not demand damages, but rather asked the FBI to end its reported inquiry into Plaintiff's trip to Russia in July 2016.  *Page v. Oath*, Ex. P at 7; *see also Page*, 2018 WL 1406622, at *4, *aff'd*, 797 Fed. Appx. 550 (2d Cir. 2019).  Thus, the September 25, 2016 letter was not an administrative claim which could be amended by the administrative claim submitted and received by the Department on May 12, 2020 "because plaintiff had no claim to amend." *Erhard v. United States*, Civ. No. 93-0725-NHJ, 1994 WL 196755, at *3 (D.D.C. Mar. 29, 1994); *see also Yusuf v. Jones*, No. 20-cv-1079-BMC, 2020 WL 4369641, at *2 (E.D.N.Y. July 30, 2020) ("[T]imely filing a noncompliant SF 95 does not extend the statutory deadline to perfect presentment by amendment"). Consequently, Plaintiff's first administrative claim containing a demand for damages in a sum certain, which was electronically transmitted to DOJ on April 29, 2020, and the original signed version of which was not received until May 12, 2020, was presented more than two years after the claim accrued.  Any assertion that this submission was an amendment of a previously submitted deficient claim has no merit.  *See Kokotis v. U.S. Postal Serv.*, 223 F.3d 275, 280 ("A rule allowing amendments to incomplete claims after the statute of limitations had expired would

undermine Congress' intent to have FTCA claims presented within two years of the relevant

incident").

Thus, Plaintiff's abuse-of-process claim is time-barred by 28 U.S.C. § 2401(b).

### III.   THE COURT SHOULD DISMISS COUNT 7 (PRIVACY ACT AMENDMENT CLAIM), OR IN THE ALTERNATIVE, DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT.

The Complaint alleges that the DOJ OIG declined Plaintiff's request to review the draft

version of the OIG report (about the FISA applications related to Plaintiff) before the Report was

made public.  *See* Am. Compl. ¶¶ 192-213 (allegations about the OIG report); ¶¶ 251-56 (Count

7 Failure to Amend).  The Report was published in December 2019.  *See generally* OIG Report.

The Complaint does not identify any specific errors in the final Report, but notes that the OIG

Report "contains numerous errors," Am. Compl. ¶ 210, and the Complaint seeks unspecified

injunctive relief, apparently with respect to the final Report, *id*. ¶ 255.[8]  Defendant DOJ moves to

dismiss this claim for lack of jurisdiction and for failure to state a claim.  In the alternative,

Defendant is entitled to summary judgment.

### A.  Legal Framework for Privacy Act Access and Amendment Claims.

The Privacy Act imposes various requirements on agencies concerning the maintenance,

collection, use, and dissemination of information contained in a "system of records."  *See, e.g.*, 5

U.S.C. § 552a(b) ("Conditions of disclosure"), *id*. § 552a(d) ("Access to records"), *id*. § 552a(e)

---

[8] Under this Count of the Complaint, Plaintiff also seeks attorney's fees for this matter
and for the previously filed and voluntarily dismissed matter.  Such a claim is appropriately
addressed, if at all, after the Court has fully ruled on this claim.  It is hard to imagine, however,
how Plaintiff could conceivably make an argument for fees with respect to his previously
dismissed lawsuit, which never raised any claims with respect to the OIG Report.  That
Complaint alleged a failure by DOJ to respond to his separate request for records, and an
improper disclosure of the FISA applications in a FOIA release.  *See generally* Ex. S.  Although
he repeatedly discussed amending the Complaint in that matter, he never did so, and eventually
dismissed the matter voluntarily.  *See* Ex. T.

("Agency requirements").  "[T]he extensive statutory requirements of section 552a(e) of the Act

come into play only with respect to information that is maintained in a 'system of records.'"

*Maydak v. United States*, 630 F.3d 166, 178 (D.C. Cir. 2010).  The statute defines a "system of

records" as "a group of any records under the control of any agency from which information is

retrieved by the name of the individual or by some identifying number, symbol, or other

identifying particular assigned to the individual[.]"  5 U.S.C. § 552a(a)(5).  "A system of records

exists only if the information contained within the body of material is both 'retrievable by

personal identifier' and 'actually retrieved by personal identifier.'"  *Maydak*, 630 F.3d at 178; *see

also Paige v. Drug Enf't Admin.*, 665 F.3d 1355, 1359 (D.C. Cir. 2012) (same); *Henke v. U.S.

Dep't of Com.*, 83 F.3d 1453, 1460 (D.C. Cir. 1996) ("[R]etrieval capability is not sufficient to

create a system of records.").  The Act authorizes different civil remedies depending on the

nature of the claim.

As relevant here, a plaintiff may request access to records pertaining to him or her in a

system of records pursuant to 5 U.S.C. § 552a(d)(1), and seek amendment under 5 U.S.C.

§ 552a(d)(2).  If the agency makes a final determination refusing a request to amend, *id*.

§ 552a(d)(3), a plaintiff can bring a claim seeking injunctive relief to amend the records under

§ 552a(g)(1)(A), (g)(2).  The Privacy Act also grants agencies the power to exempt systems of

records from many of the Act's requirements.  Pursuant to 5 U.S.C. § 552a(j) and (k), an agency

head may promulgate rules exempting systems of records meeting certain criteria from, for

example, the rights of access and amendment contained in Section 552a(d).

**B.  The Court Lacks Jurisdiction Over Count 7 Because Plaintiff Failed to Exhaust His
    Administrative Remedies.**

Count 7 should be dismissed because Plaintiff failed to exhaust administrative remedies.

Access and amendment claims under the Privacy Act require administrative exhaustion,

including completion of an administrative appeal.  *See, e.g.*, *Dickson v. Off. of Pers. Mgmt.*, 828 F.2d 32, 41 (D.C. Cir. 1987); *Leighton v. C.I.A.*, 412 F. Supp. 2d 30, 34 (D.D.C. 2006).  Only if the agency refuses a request and affirms that decision on administrative appeal may a party bring suit under Section 552(a)(g)(2).  *See* 5 U.S.C. § 552a(d)(3); *id.* § 552a(g)(2) (referring to the exhaustion requirements in (d)(3)).  This requirement is jurisdictional and cannot be forfeited or waived.  *See, e.g.*, *Dick v. Holder*, 67 F. Supp. 3d 167, 187 (D.D.C. 2014); *Barouch v. DOJ*, 962 F. Supp. 2d 30, 67 (D.D.C. 2013); *Kursar v. Transportation Sec. Admin.,* 581 F. Supp. 2d 7, 18 (D.D.C. 2008), *aff'd*, 442 F. App'x 565 (D.C. Cir. 2011).  DOJ regulations set out the process for appealing an administrative determination on Privacy Act requests for access or amendment.  *See* 28 C.F.R. § 16.45 (process for appeals "[i]f you are dissatisfied with a component's response to your request for access to records"); *id.* § 16.46(d) (similar process for appeals of requests for amendment).

Plaintiff alleges that the OIG Report contains unspecified errors and seeks to amend it.  *See* Am. Compl. ¶ 255 (seeking "injunctive relief compelling Defendant DOJ to amend inaccurate records concerning him"); *id.* ¶ 210 (alleging that the Report contains errors).  OIG has not received a request from Plaintiff to amend the final OIG Report, however, and has not denied any such request.  *See* Ex. U, Declaration of Jonathan M. Malis, ¶ 8 (dated May 17, 2021).  Because Plaintiff has not exhausted a request to amend the OIG report, the Court lacks jurisdiction over Plaintiff's Privacy Act amendment claim.

Plaintiff also alleges that OIG denied him access to review the draft report prior to its finalization and publication.  *See* Am. Compl. ¶¶ 251-56; Ex. U ¶¶ 4–6.  Plaintiff communicated several requests to access the draft OIG report prior to its publication.  *See* Ex. U ¶ 4 (including attached communications from Plaintiff).  But his allegations regarding a previous request to

24

review the *draft* Report are not exhaustion of this specific claim to *amend* the *final* Report.  The

agency has not had the opportunity to consider any allegations of error or requests for

amendment.  Because Page has not contacted OIG with respect to any errors in the OIG Report,

this Court lacks jurisdiction over his claim.  Moreover, Plaintiff does not appear to have any

interest in seeking access to the *draft* at this point; he wants amendment of the final OIG Report.

Accordingly, the Court need not consider any hypothetical claim for access to the draft OIG

Report.  He has access to the final Report and has not asked the agency to amend it.

### C.  The Complaint Fails to Allege an Error.

Even if Plaintiff somehow exhausted his administrative remedies with respect to the OIG

Report, he still has not stated a claim for amendment at this time because he has not identified

any errors in the OIG Report.  Section 552a(d)(2) permits an individual to request "amendment"

and requires the agency to either make "any correction" required or deny the request.  Section

552a(g)(2) authorizes a Court upon review of such a demand to "order the agency to amend the

individual's record."  Inherent in the concept of "amendment" and "correction" is a finding that

the record is *inaccurate*.  And in considering a claim under a different section of the Privacy Act,

the D.C. Circuit has explained that "the Privacy Act allows for correction of facts but not

correction of opinions or judgments."  *Cf. McCready v. Nicholson*, 465 F.3d 1, 19 (D.C. Cir.

2006).  Accordingly, in order to state a claim, Plaintiff must make some plausible allegation that

the record in question is inaccurate.

Plaintiff, having seen the final Report, does not identify any inaccuracy in it, nor request

any specific amendment.  On the contrary, Plaintiff summarizes and specifically relies on

information in the OIG Report in the Complaint.  Am. Compl. ¶¶ 38-39, 57, 164.  Plaintiff's

vague and conclusory allegation that the Report also "contains numerous errors," *see id*. ¶ 210, is

not sufficient to state a claim, where, as here, Plaintiff has seen the record in question and has not identified any inaccuracies with respect to "the individual's record."

**D.  The OIG Report is Not in a System of Records.**

Moreover, the OIG Report is not within a system of records for the purposes of this claim because it is not retrieved by Plaintiff's name.  *See* 5 U.S.C. § 552a(a)(5).  A system of records exists only if the information contained within the body of material is both "retrievable by personal identifier" and "actually retrieved by personal identifier."  *See Maydak*, 630 F.3d at 178. It is well-established that an agency record that is not in fact retrieved by a person's name is not in a "system of records" and therefore cannot be the basis for Privacy Act access or amendment claims.  *See, e.g.*, *McCready*, 465 F.3d at 12 (granting summary judgment without discovery because Veterans Affairs Inspector General reports were not retrieved by personal identifier). Additionally, by its terms, Section 552a(d) only permits a person to "request amendment of a record pertaining to him," if the record is in a system of records.  *Id*. § 552a(d)(1), (2).

Here, the OIG Report is not in a system of records in which information is retrieved by Plaintiff's personal identifiers.  The investigation into DOJ's compliance with relevant policies and procedures was not an investigation of Plaintiff or his actions.  There are no allegations in the Complaint (and no indication in the report) that OIG was investigating Plaintiff.  This was not a file, an investigation, or a report about Page or his actions.  And in fact, the OIG Report explains that OIG "undertook this review to examine certain actions by the Federal Bureau of Investigation (FBI) and the Department during an FBI investigation opened on July 31, 2016, known as 'Crossfire Hurricane,' into whether individuals associated with the Donald J. Trump for President Campaign were coordinating, wittingly or unwittingly, with the Russian government's efforts to interfere in the 2016 U.S. presidential election."  OIG Report at i.  As

accessible on the OIG website, the Report is indexed by the title and number of the report, not by

Plaintiff's personal identifiers.  *See* https://oig.justice.gov/reports/all.htm.[9]

To the extent the Court finds it needs to consider more than what is alleged in the

pleadings, the Malis Declaration confirms that neither the draft nor final OIG Report is in a

system of records.  With respect to the draft version of the Report, the Malis Declaration explains

that "[t]he OIG's Oversight and Review Division (O&R), which conducted the review that led to

the issuance of the Report, generally does not index its investigative records relating to reviews

or retrieve them by use of a personal identifier."  Ex. U ¶ 9.  Rather, draft versions of the Report

"are saved by working title of the report in the OIG's classified electronic records" and agency

employees "would access such records by reference to the title of the report or OIG investigation

file number."  *Id*.  Similarly, the Malis Declaration confirms that the final OIG Report is

"accessible on the public OIG website and filed in O&R's electronic files."  *Id*. ¶ 10.  In both

locations, "OIG reports are indexed by the title and number of the Report, not Mr. Page's

personal identifier."  *Id*.  And although "one could conceivably run a text search for Mr. Page's

name, that is not how the agency accesses or retrieves the Report."  *Id*.  Undisputable evidence

thus further establishes what is apparent from the face of the Report; the OIG Report is not

retrieved from a system of records.  *See McCready*, 465 F.3d at 12.

---

[9] The Court may consider the OIG Report on the motion to dismiss standard because it is incorporated within the Complaint.  *See, e.g.*, *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) ("Matters that are not 'outside' the pleadings a court may consider on a motion to dismiss include 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint,' . . . or documents 'upon which the plaintiff's complaint necessarily relies' even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss.").

## E.  OIG Investigative Files are Exempt.

If the draft OIG Report were the proper subject of a claim here, and if it were contained in a system of records, it would still be exempt from the access and amendment portions of the Privacy Act because it falls within the OIG's investigative files.

As noted above, an agency may promulgate rules exempting systems of records meeting certain criteria from, for example, the rights of access and amendment contained in Section 552a(d).  *See* 5 U.S.C. § 552a(j), (k).  The Attorney General invoked three specific subsections to exempt OIG investigative files from the access and amendment portions of the Privacy Act.  *See* 28 C.F.R. § 16.75 (exempting OIG files); *cf.* 72 Fed. Reg. 36725 (July 5, 2007) (Systems of Record Notice), as amended by 82 Fed. Reg. 24151, 160 (May 25, 2017).  In particular, Section 552a(j)(2) permits an agency or component "which performs as its principal function any activity pertaining to the enforcement of criminal laws" to exempt from 552a(d) a system of records which contains criminal investigative information.  Moreover, Section 552a(k)(1) permits an agency to exempt a system of records that is classified.  And Section 552a(k)(2) permits an agency to exempt a system of records containing "investigatory material compiled for law enforcement purposes" subject to limited exceptions.  The regulation provides that "[t]hese exemptions apply only to the extent that information in this system is subject to exemption pursuant to 5 U.S.C. 552a (j)(2), (k)(1) and (k)(2)" and further states that "[w]here compliance would not appear to interfere with or adversely affect the law enforcement process, and/or where it may be appropriate to permit individuals to contest the accuracy of the information collected, e.g., public source materials, the applicable exemption may be waived, either partially or totally" by OIG.  *See* 28 C.F.R. § 16.75.

Pursuant to this authority, DOJ regulations exempt OIG investigative files from the access and amendment portions of the Privacy Act.  This exemption falls within the plain language of 552a(j) and 552a(k), and encompasses the draft OIG report, and OIG properly determined that these exemptions would not be waived.  The Malis Declaration confirms that "a draft Report would be 'investigatory material compiled for law enforcement purposes' under Section 552a(k)(2)' and that "the draft Report, if it is in a system of records at all, would be subject to this exemption, and the exemption would not be waived."  Ex. U ¶ 12.  OIG determined that such a waiver would be inappropriate because at the time of Plaintiff's request, the draft report was still classified and was still undergoing review and revision; "[t]he deliberative, non-final draft Report reflects the then-ongoing deliberations and investigative activity related to the final Report."  *Id*.  Moreover, "[a] waiver for the non-public draft would be particularly inappropriate now because a public version of the final Report is available, providing a final, accurate, fully reviewed and publicly accessible version of the Report."  *Id*.  Accordingly, the draft OIG Report is exempt from the access and amendment provisions of the Privacy Act.

For the foregoing reasons, the Court should dismiss Count 7, or in the alternative, grant summary judgment to Defendants.

## IV.    THE COURT SHOULD DISMISS COUNT 8 (PRIVACY ACT DISCLOSURE).

Count 8 of the Complaint alleges that Defendants DOJ and FBI improperly disclosed information about Plaintiff in violation of the Privacy Act.  In particular, it alleges that FBI or DOJ disclosed Plaintiff's information from a system of records in violation of 5 U.S.C. § 552a(b), which sets forth the conditions for disclosure of such information.  A plaintiff may bring a claim for improper disclosure in violation of Section 552a(b) pursuant to subsection (g)(1)(D)—the Act's "catch-all" provision, which also authorizes a civil remedy of money

damages against the agency under certain circumstances.  *See* 5 U.S.C. § 552a(g)(1)(D),

(g)(4)(A).  To state a claim for money damages under subsection (g)(1)(D), "a plaintiff must

establish that (1) the agency violated a provision of the Act; (2) the violation was intentional or

willful; and (3) the violation had an 'adverse effect' on the plaintiff in the form of actual

damages." *Chichakli v. Tillerson*, 882 F.3d 229, 233 (D.C. Cir. 2018).  With respect to each

alleged disclosure, this claim is time-barred because Plaintiff was aware of the allegedly

unlawful disclosures more than two years before bringing suit.  And with respect to each alleged

disclosure, Plaintiff does not adequately allege actual damages, a required element of a Privacy

Act disclosure claim.

## A.  Count 8 Is Time-Barred.

Section (g)(5) of the Privacy Act provides that "[a]n action to enforce any liability ... may

be brought ... within two years from the date on which the cause of action arises."  5 U.S.C.

§ 552a(g)(5).  "[T]he cause of action does not arise and the statute of limitation does not begin to

run until the plaintiff knows or should know of the alleged violation." *Tijerina v. Walters*, 821

F.2d 789, 798 (D.C. Cir. 1987) (emphasis added).  "In order to determine when the statute of

limitations begins to run, courts in this circuit have accordingly focused on a plaintiff's

awareness that a disclosure has occurred, rather than knowledge of precise details of the

disclosure." *Hill v. Dep't of Def.,* 981 F. Supp. 2d 1, 7 (D.D.C. 2013); *see also Agelli v. Burwell*,

164 F. Supp. 3d 69, 75 (D.D.C. 2016) ("A Privacy Act claim thus starts to accrue when the

plaintiff has inquiry notice of the alleged violation, not when she acquires actual knowledge of

the agency's alleged misconduct."); *Farrero v. NASA*, 180 F. Supp. 2d 92, 95–96 (D.D.C. 2001)

(same).  When multiple disclosures in violation of the Privacy Act are alleged, an event might

put a plaintiff on notice of some but not all of the violations. *Hill*, 981 F. Supp. 2d at 8.  In

determining when the statute of limitations begins to run on multiple distinct claims of

disclosure, "the inquiry into when the 'cause of action arises,' 5 U.S.C. § 552a(g)(5), should

distinguish carefully among distinct disclosures because each gives rise to potential liability."

*Id*.  For each disclosure, the limitations period begins to run when "plaintiff has fair notice that

some disclosure has occurred."  *Id*. at 10.

Here, each of the alleged disclosures happened well over two years before this action was

filed, and Plaintiff was aware of them at or near the time of disclosure.  Count 8 of the Complaint

does not set forth any specific disclosures, *see* Am. Compl. ¶¶ 257–63, but there is a separate

section in the Complaint titled "Unlawful disclosure of FISA and Privacy Act protected records

and information" that purports to describe unlawful disclosures under the Privacy Act, *id*.

¶¶ 181–91.  Plaintiff alleges generally that Defendants "unlawfully leaked FISA and Privacy Act

protected records and information concerning Dr. Page to the media," and describes alleged

media leaks.  *Id*.  More specifically, Plaintiff describes several messages exchanged between two

individual defendants (Lisa Page and Peter Strzok) that he mistakenly believes constitute

evidence of leaks to the media in April 2017. *Id*. ¶¶ 183, 185–86.  The Complaint describes only

two newspaper articles that purportedly contained leaked information: an April 11, 2017 article

in the *Washington Post* about the FISA matter, and an April 22, 2017 article in the *New York

Times* about James Comey.[10]  *Id*. ¶¶ 184, 187.  The *Washington Post* article cites unnamed "law

enforcement and other U.S. officials" for confirming the existence of a FISA warrant and

unidentified "officials" for the vague confirmation that Plaintiff was "part of" the Russia

---

[10] As previously discussed, the Court can take judicial notice of the newspaper articles or,
alternatively, consider them on the motion to dismiss standard because it is incorporated within
the Complaint.  *See, e.g., Hinton*, 624 F. Supp. 2d at 46.

investigation.  *See* Ex. D at 1.  The *New York Times* article about Comey mentions the

controversy surrounding Plaintiff's trip to Russia and his purported meeting with a Russian

intelligence figure but does not describe an official source.  *See* Ex. E, at 10.[11]

All of these April 2017 disclosures pre-date the complaint by more than two years.

Plaintiff was aware of these allegedly unlawful disclosures at the time, and he failed to file this

lawsuit until November 2020.  Indeed, Plaintiff appears to be quoted in both articles, and it is not

plausible to suggest that he was not aware of them at the time.  *See* Ex. D at 2, 4 ("Page has

repeatedly denied any wrongdoing in his dealings with the Trump campaign or Russia" and "[o]n

Tuesday, Page dismissed what he called 'the dodgy dossier' of false allegations."); Ex. E at 10

("Mr. Page has not said whom he met during his July visit to Moscow, describing them as

'mostly scholars.'").  Notably, Plaintiff makes no allegation that he was unaware of the alleged

disclosures when they occurred.  Nor could he.  In his testimony before the HPSCI in November

2017, he submitted a letter dated May 22, 2017 that described the *Washington Post* article and

what he called "Illegal leaking of classified information surrounding the completely unjustified

---

[11] Plaintiff does not appear to raise any disclosure claim related to the submission of the FISA applications to the FISC in 2016; nor does he raise any claim related to the disclosure of the FISA applications themselves, which were disclosed pursuant to FOIA in July 2018.  He does not specifically identify those disclosures, and thus has not pled a claim with respect to them.  In any event, any such claim would also be time-barred.  He was aware of the FISA applications as of at least February 2018, as set forth in Part I.B, and the FOIA disclosure was in July 2018.  Thus, a claim had arisen more than two years before this lawsuit was filed on November 27, 2020.  In any event, DOJ properly disclosed these applications and orders in heavily redacted form in response to multiple FOIA requests in July 2018, after their existence was formally declassified by the President and disclosed by Congress.  *See FISA Surveillance Court Orders and Applications*, FBI, https://vault.fbi.gov/d1-release/d1-release/view; *see also* 5 U.S.C. § 552(a)(2)(D) (requiring publication to Vault); *see generally Poulsen v. Dep't of Def.*, 373 F. Supp. 3d 1249, 1278 (N.D. Cal. 2019) (adjudicating FOIA response to requestor); 2020); *James Madison Project*, 2020 WL 1033301, at *1 (describing background of adjudication of FOIA response to a different requestor).

FISA warrant against me." *See* Ex. F at 24–26 (Carter Page Letter to the HPSCI, May 22, 2017). In November 2018, more than two years before this action was filed, Plaintiff filed an appellate brief in the *Page v. Oath* matter in which he referred to "criminal leakers within USG agencies" and a "series of illegal leaks concerning his now-verified FISA warrants to the press." *See* Ex. V at 19, 28, Appellant's Br., *Page v. Oath*, No Case 18-2295, Docket No. 38, at 12, 28 (2d Cir. Nov. 21, 2018).[12]   Plaintiff was thus aware that the disclosure had occurred in April 2017, and has been publicly complaining about alleged FBI leaks ever since; that he lacked "knowledge of precise details of the disclosure" does not mean that his claim did not arise at that time. *See Hill*, 981 F. Supp. 2d at 7.  It is of no moment whether Plaintiff ever had information about the identities of the alleged leakers.  A Privacy Act complaint runs against the agency, not the individuals, and Plaintiff publicly accused the Defendants of leaks more than two years before this lawsuit was filed.

Plaintiff has not made any allegations that would support a theory of equitable tolling or equitable estoppel to delay the start of limitations period to some unspecified later date.  *See*

---

[12] Plaintiff made several media appearances more than two years ago in which he accused the Government of illegal leaks and illegal surveillance. *See, e.g.*, Ex. W, *Carter Page on Papadopoulos Guilty Plea Tr., All In with Chris Hayes*, MSNBC (Oct. 30, 2017), https://www.msnbc.com/transcripts/all-in/2017-10-30-msna1034101 (asserting that information was leaked to the press); *Carter Page's Entire Interview with Jake Tapper*, CNN (Nov. 3, 2017), https://www.cnn.com/videos/politics/2017/11/03/carter-page-jake-tapper-interview-full-lead.cnn (similar); *Carter Page: FBI Shredded Constitution by Eavesdropping on Me*, ABC News (Feb. 6, 2018), https://abcnews.go.com/Politics/carter-page-fbi-shredded-constitution-eavesdropping/story?id=52870319 (responding to Nunes Memo); *Carter Page Returns to All In*, MSNBC (Mar. 29, 2018), https://youtu.be/m77IHhEV6aY (asserting that FBI interviews of him were leaked to the Washington Post); *Jake Tapper Presses Carter Page on Russian Contacts*, CNN (July 22, 2018), https://www.cnn.com/videos/politics/2018/07/22/sotu-carter-page-interview--full.cnn (discussing allegations in the FISA applications).  The Court can take judicial notice of the existence of media reporting, as proof that Plaintiff had notice. *Cf. Washington Post*, 935 F.2d at 291.

*Chung v. DOJ*, 333 F.3d 273, 278–79 (D.C. Cir. 2003); *Samtmann v. DOJ*, 35 F. Supp. 3d 82, 90 (D.D.C. 2014), *aff'd*, No. 14-5115, 2015 WL 236560 (D.C. Cir. Jan. 16, 2015). In *Samtmann*, the Court declined to extend the statute of limitations for a plaintiff based on later discovery of additional evidence because "the critical inquiry when applying the limitations provisions of the Privacy Act is when plaintiff had or should have had knowledge of a document's existence or disclosure, not when he obtained definitive proof." 35 F. Supp. 3d at 90. The same is true here. Plaintiff did not need the specific identities of the alleged leaker to file a complaint; he had ample time and opportunity to file suit and did not do so.[13] The Court should therefore conclude that Plaintiff's Privacy Act claim is barred because he failed to bring it within the applicable two-year statute of limitations.

**B. Plaintiff Has Not Plausibly Pled Actual Damages Caused By the Alleged Disclosures.**

Count 8 should also be dismissed for failure to state a claim because Plaintiff has not plausibly pled actual damages. A Privacy Act plaintiff seeking damages under Section 552a(g)(4) must plead "actual damages." *See* 5 U.S.C. § 552a(g)(4). "Actual damages" within the meaning of the Privacy Act are limited to proven pecuniary or economic harm. *In re OPM Data Sec. Breach Litig.*, 928 F.3d 42, 64 (D.C. Cir. 2019). In *F.A.A. v. Cooper*, 566 U.S. 284, (2012), the Supreme Court held that the term "actual damages" in the Privacy Act are analogous to "special damages", *id.* at 1451–53, meaning they are proven damages for "pecuniary or

---

[13] Plaintiff's prior lawsuit, voluntarily dismissed without prejudice, does not assist him here. It was filed more than two years after the alleged disclosure, alleged different illegal acts (namely, that the FOIA disclosure was unlawful), and was dismissed without prejudice. *See* Ex. S, Complaint, *Page v. DOJ*, Case No. 1:19-CV-03149-KBJ, Docket No. 1 (Oct. 21, 2019); *see also* Ex. T, Stipulation of Dismissal, Docket No. 19 (Sept. 11, 2020). "[O]nce a suit is dismissed, even if without prejudice, the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing." *Ciralsky v. C.I.A.*, 355 F.3d 661, 672 (D.C. Cir. 2004).

material" harm that must be specifically pleaded and proved. *Id*. at 1451. And the Court

specifically held that the Privacy Act does not authorize damages for "mental or emotional

distress." *Id*. at 1456. A court in this district explained that "special damages must be

'specifically stated' and alleged with 'particularity,' and must 'specify facts showing that such

special damages were the natural and direct result of the defendant's conduct.'" *Richardson v.*

*Bd. of Governors of Fed. Rsrv. Sys.*, 288 F. Supp. 3d 231, 237 (D.D.C. 2018), *aff'd*, No. 18-5063,

2018 WL 4103305 (D.C. Cir. Aug. 15, 2018) (quoting *Browning v. Clinton*, 292 F.3d 235, 246

(D.C. Cir. 2002) (discussing "special damages" in a non-Privacy Act context)); *see also Welborn*

*v. Internal Revenue Serv.*, 218 F. Supp. 3d 64, 82 (D.D.C. 2016) (finding allegations inadequate).

Moreover, to survive a motion to dismiss a Privacy Act claim for damages, Plaintiff must

"plausibly allege" that the violation was the "proximate cause" of the damages. *See In re OPM*

*Data Sec. Breach Litig.*, 928 F.3d at 67; *Hill v. U.S. Dep't of Def.*, 70 F. Supp. 3d 17, 22 (D.D.C.

2014). "A showing of actual damages sustained 'as a result of' the Privacy Act violation is

required to unlock the government's waiver of sovereign immunity, and ambiguities in the scope

of the waiver must be construed in favor of the sovereign." *Taylor v. Fed. Aviation Admin.*, No.

18-CV-00035 (APM), 2019 WL 3767512, at *6 (D.D.C. Aug. 9, 2019).

In one paragraph in the Complaint, Plaintiff alleges various harms stemming from all of

the allegations of wrongdoing in this case, without tying any of them specifically to the two

alleged media leaks. *See* Am. Compl. ¶ 214. Several of these listed harms are not economic

harm at all, including: "Receiving death and kidnapping threats;" "Inability to travel safely and

freely"; "Irreparable damage to his reputation;" "pain and suffering damages." *Id*. These are not

"actual damages" for the purposes of the Privacy Act.

35

With respect to pecuniary losses, in Count 8, Plaintiff states "As a direct and proximate result of Defendants' actions, Dr. Page . . . lost at least tens of millions of dollars of business opportunities and future lifetime earning potential, and has suffered and will continue to suffer mental and emotional pain for his lifetime, in addition to other pecuniary harms such as costs, fees, attorneys' fees and other losses." *Id*. ¶ 262.  And the pecuniary losses that he alleges in the "Damages" section include: "Economic losses . . . from the destruction of his ability to continue conducting any kind of business through his own companies, because for example, persons, governments and entities would not contract with him, including banks and other business entities with whom he had previously worked"; "Economic losses . . . from being rendered effectively unemployable"; "Economic losses due to previously unnecessary expenses directly caused from having to relocate and travel and other security measures in response to death and kidnapping threats"; and "Economic losses due to the otherwise unnecessary expenses of responding to government investigations and being involved in litigation." *Id*. ¶ 214.  These allegations also fail to plausibly plead actual damages for at least two reasons.  First, they are insufficiently specific to constitute special damages.  Plaintiff does not specify any specific opportunity lost, nor any particular loss or expense that can be specifically calculated, and fails to meet the standard described by the D.C. Circuit.  *Compare with OPM Data Sec. Breach Litig.*, 928 F.3d at 65-66 (detailing specific allegations about particular losses and expenses specifically tied to the alleged violations).

Second, the Complaint does not plausibly allege that any of these damages are caused by the specific alleged disclosures in the Complaint.  Although the Complaint alleges that losses were "a direct and proximate result of Defendants' actions," that is merely a recitation of the legal standard.  *See Twombly*, 550 U.S. at 545 (finding a "formulaic recitation" of the elements

insufficient to state a claim).  Plaintiff acknowledges, as he must, that suspicions about his involvement with Russia were a subject of public discussion long before the alleged leaks in April 2017.  *See* Am. Compl. ¶¶ 12, 64 (describing September 2016 news article Plaintiff attributes to Steele).[14]  And after the alleged "leaks," there have been additional, lawful disclosures.  Plaintiff himself testified before Congress in mid-2017 regarding his ties to Russia.  *See*, *e.g.*, Ex. F at 46–48, 52–54, 70–75.  Pursuant to a Presidential declassification decision, Congress disclosed the existence of and significant information about the FISA applications in early 2018.  *See* Exs. G and I (Nunes and Schiff Memos).  As a result, DOJ was required to process and release the FISA applications and orders under FOIA.  *See, e.g.*, *James Madison Project*, 2020 WL 1033301, at *1.  And the OIG Report contained yet more information related to this matter.  *See generally* OIG Report.  In short, not only has Plaintiff failed to allege that any specific disclosure caused any specific injury, he likely cannot do so in light of other public information available both before and after the allegedly unlawful acts.

The Court should dismiss Count 8.

---

[14] The three articles mentioned in the Complaint, *see* Am. Compl. ¶¶ 12, 184, 187, are not, of course, the only articles about Plaintiff's involvement with Russia in the press.  For example, Plaintiff's own September 2016 letter to the FBI mentioned that the investigation regarding his mid-2016 trip to Russia has been "widely mentioned in the media" by that time.  *See* Ex. F at 13, HPSCI Transcript.  And his September 2017 Complaint in a matter filed in the Southern District of New York *Page v. Oath, Inc.*, describes a slew of allegedly defamatory news articles about Plaintiff.  *See generally* Ex. A, Compl., *Page v. Oath, Inc.*, No. 1:17-cv-06990-LGS, ECF 1 ¶¶ 98-120 (S.D.N.Y. Sept. 14, 2017).  As a result of allegedly defamatory publications in 2016, he alleged that he had suffered a "life-threatening" loss to both his and his corporation's professional reputation, *id.* ¶ 136, as well as the threat of "terrorizations," *id.* ¶ 119, and "death or serious bodily injury," *id.* ¶ 174.  *See also supra* n.13 (identifying a few of Plaintiff's own media appearances and public statements).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the claims against the United States,

the FBI and DOJ.

Dated:  May 18, 2021                          Respectfully Submitted,

                                              BRIAN M. BOYNTON
                                              Acting Assistant Attorney General

                                              MARCIA BERMAN
                                              Assistant Director, Federal Programs Branch

                                              /s/Amy E. Powell
                                              AMY E. POWELL
                                              Trial Attorney, Federal Programs Branch
                                              Civil Division, Department of Justice
                                              c/o U.S. Attorney's Office
                                              150 Fayetteville St., Suite 2100
                                              Raleigh, NC 27601
                                              Phone: 919-856-4013
                                              Email:  amy.powell@usdoj.gov

                                              *Attorneys for Defendants Department of
                                              Justice and Federal Bureau of Investigation*

                                              /s/  Daniel P. Chung
                                              DANIEL P. CHUNG
                                              CATE E. CARDINALE
                                              Trial Attorneys, Torts Branch
                                              Civil Division
                                              United States Department of Justice
                                              P.O. Box 888 Ben Franklin Station
                                              Washington, DC 20044
                                              Phone: (202) 616-4258
                                              Email: Daniel.P.Chung@usdoj.gov

                                              *Attorneys for the United States of America*