# Exhibit J

**1:20-cv-003460-KBJ**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARTER PAGE, | : |
| Plaintiff, | : |
| v. | : Civ. No. 1:20-cv-03460-KBJ |
| JAMES COMEY, et al., | : |
| Defendants. | : |

**DECLARATION OF ELIJAH F. JENKINS**

In accordance with the provisions of 28 U.S.C. § 1746, I, Elijah F. Jenkins, hereby declare as follows with respect to the above-styled case:

1. I am employed as a Supervisory Technical Support Specialist within the United States Department of Justice (the Department), Washington, D.C. As such, I am familiar with the processing of administrative claims presented under 28 U.S.C. § 2672 to the Department, which are based on the activities of employees of the Department.

2. All administrative tort claims under the Federal Tort Claims Act pertaining to the Department's activities are handled by the Civil Division of the Department except for those claims specifically directed to activities of the Federal Bureau of Investigation, the Federal Bureau of Prisons, the Federal Prisons Industries, the United States Marshals Service, the Drug Enforcement Administration, and the Bureau of Alcohol, Tobacco, Firearms and Explosives.

3. I have caused the appropriate Records System within the Civil Division of the Department to be searched and found that on May 12, 2020, the Department did receive an administrative tort claim dated May 1, 2020, from Carter Page. A copy of this administrative

claim (12 pages) is attached hereto as Exhibit A.  The Department denied this administrative claim on May 26, 2020.  A copy of this denial letter (2 pages) is attached hereto as Exhibit B.

    4.   I declare under penalty of perjury that the foregoing is true and correct.  Executed this _____ day of March 2021, at Washington, D.C.

 

_____
ELIJAH F. JENKINS
Supervisory Technical Support Specialist
Civil Division

# EXHIBIT A



North America   Europe   Asia

1901 L Street, NW
Washington, DC 20036
T +1 202 282 5000
F +1 202 282 5100

**THOMAS M. BUCHANAN**
Partner
(202) 282-5787
tbuchana@winston.com

May 1, 2020

**VIA U.S. MAIL**

Mr. James G. Touhey
Director, Federal Tort Claims Act Section
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 888, Benjamin Franklin Station
Washington, D.C.  20044

   Re: **Carter Page**

Dear Mr. Touhey:

  We represent Carter Page with respect to his claims arising out of the FBI's *Crossfire Hurricane* investigation and related conduct.  Please find enclosed Mr. Page's administrative tort claim, which we submitted electronically to Alex Haas on April 29, 2020.  The enclosed version is in all respects identical, except it includes an original signature on Standard Form 95, as we were directed to do.  Please let us know if you have any questions.

             Very truly yours,

             Tom Buchanan

Enclosure



**WINSTON & STRAWN LLP**

North America   Europe   Asia

1901 L Street, NW
Washington, DC 20036
T +1 202 282 5000
F +1 202 282 5100

## CLAIM AUTHORIZATION FORM

I, Carter Page, hereby authorize Thomas M. Buchanan of Winston & Strawn to submit a claim under the Federal Tort Claims Act on my behalf against the United States, including the Department of Justice and the Federal Bureau of Investigation, seeking compensation for the unlawful actions of its employees against me.

April 29, 2020
Dated

_____
Signed

| CLAIM FOR DAMAGE, INJURY, OR DEATH | **INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| U.S. Department of Justice<br>Federal Bureau of Investigation | Carter W. Page<br>Care of: Global Natural Gas Ventures LLC<br>101 Park Ave, Suite 1300<br>Oklahoma City, OK 73102 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY  ☐ CIVILIAN | June 3, 1971 | Unmarried | See attachment. | See attachment. |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See attachment.

9. **PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

10. **PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See attachment.

11. **WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| See attachment. | |

12. (See instructions on reverse). **AMOUNT OF CLAIM** (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
|  | 75,000,000 |  | 75,000,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| *[signature]* (attorney for Carter Page) | (202) 282-5787 | May 1, 2020 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction  
Previous Edition is not Usable  
95-109

NSN 7540-00-634-4046

**STANDARD FORM 95** (REV. 2/2007)  
PRESCRIBED BY DEPT. OF JUSTICE  
28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

**15. Do you carry accident Insurance?** ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   ☐ No

n/a

**16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?** ☐ Yes  ☐ No   **17. If deductible, state amount.**

n/a

**18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).**

n/a

**19. Do you carry public liability and property damage insurance?** ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☐ No

n/a

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.*

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) **BACK**



1901 L Street, NW<br>
Washington, DC 20036<br>
T +1 202 282 5000<br>
F +1 202 282 5100

North America   Europe   Asia

FTCA Form 95 – Attachment
Claimant: Carter Page

## 8. Basis of Claim

### A. Factual Basis of Claim

The details of the abuses of Mr. Page's rights during the Federal Bureau of Investigation's *Crossfire Hurricane* investigation are well documented in Inspector General Horowitz's report, which we incorporate here by reference.[1] One of the triggers of the investigation was the so-called "Steele Dossier," which the Central Intelligence Agency had dismissed as nothing more than an "internet rumor" that "did not merit inclusion in the body of the" intelligence community assessment.[2] A recently unredacted footnote from the Inspector General's report indicates that the *Crossfire Hurricane* team was aware that Steele's report had been linked to "a Russian disinformation campaign to denigrate U.S. foreign relations."[3]

The FBI opened an individual case as to Mr. Page in August 2016. As part of its investigation, between October 21, 2016, and June 29, 2017, the FBI, with assistance from the Justice Department, submitted four applications under the Foreign Intelligence Surveillance Act ("FISA") to the Foreign Intelligence Surveillance Court ("FISC"), seeking authority to target Mr. Page. The FISC granted the applications.

Each of the applications suffered from fatal flaws that were known to FBI agents and attorneys. Among other things, the FBI:

- "[D]id not have information corroborating the specific allegations against Carter Page in Steele's reports when it relied upon them in the FISA applications."[4]

- "[I]naccurate[ly] assert[ed] in the application that Steele's prior reporting had been 'corroborated and used in criminal proceedings,'" "which overstated the significance of Steele's past reporting and was not approved by Steele's handling agent."[5]

- "[F]ailed to meet the basic obligation to ensure that the Carter Page FISA applications were 'scrupulously accurate.'"[6]

---

[1] *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* (Dec. 2019) ("IG Report").
[2] *Id.* at 178.
[3] *Id.* at 197 n.350 (unredacted).
[4] *Id.* at 360.
[5] *Id.* at ix-x; *see id.* at 160-63.
[6] *Id.* at 413.



- Provided the FISA court with *seventeen* "factual assertions ... targeting Carter Page" that were "inaccurate, incomplete, or unsupported by appropriate documentation."[7]

    o Among these, the FBI deliberately omitted that Mr. Page "had been approved as an operational contact for the other agency from 2008 to 2013, and that Page had provided information to the other agency concerning his prior contacts with certain Russian intelligence officers, one of which overlapped with facts asserted in the FISA application."[8]

    o The FBI also "[o]mitted information relevant to the reliability of Person 1, a key Steele sub-source (who ... was attributed with providing [] information ... relied upon in the application), namely that (1) Steele himself told members of the Crossfire Hurricane team that Person 1 was a 'boaster' and an 'egoist' and 'may engage in some embellishment' and (2) the FBI had opened a counterintelligence investigation on Person 1 a few days before the FISA application was filed."[9]

- Violated Woods Procedures in "numerous instances," including some violations that "were repeated in [all] four applications."[10]

Using these warrants, the government conducted illegal surveillance against Mr. Page. In addition, it now appears that the government also conducted physical searches targeting Mr. Page, and failed to comply with the standard minimization procedures in doing so.[11]

After the Inspector General's report was released, the Justice Department admitted to the FISC that for *at least* two of the applications, "there was insufficient predication to establish probable cause to believe that [Carter] Page was acting as an agent of a foreign power."[12] The DOJ did not opine one way or the other as to the other two applications, but there is no reason to believe from the Inspector General's report that they were any different.[13] Given the weight of this admission, the FISC took the dramatic step of pointing out that the FISA statue "makes it a crime to 'intentionally ... disclose[] or use[] information obtained ... by electronic surveillance, knowing or having reason to know that the information was obtained through electronic surveillance not authorized' by FISA..."[14]

---

[7] *Id.* at 156 (first FISA application); *id.* at 197 (following three FISA applications).
[8] *Id.* at 364.
[9] *Id.*
[10] *Id.* at 374.
[11] *See id.* at 231 n.379 (unredacted).
[12] *See* Order Regarding Handling and Disposition of Information, 1, *In re Carter W. Page*, Nos. 16-1182, 17-52, 17-375, 17-679 (FISC Jan. 7, 2020) (alteration in original).
[13] *Id.*
[14] *Id.* at 2 (quoting 50 U.S.C. § 1809(a)(2)) (alterations in the FISC's order).



The Justice Department appears to recognize the severity of the misconduct. Attorney General Barr, for example, issued a formal statement acknowledging the gravity of Inspector General Horowitz's conclusions:[15]

> The Inspector General's report now makes clear that the FBI launched an intrusive investigation ... on the thinnest of suspicions that, in my view, were insufficient to justify the steps taken.... In the rush to obtain and maintain FISA surveillance of Trump campaign associates, FBI officials misled the FISA court, omitted critical exculpatory facts from their filings, and suppressed or ignored information negating the reliability of their principal source.

Moreover, earlier this month, Attorney General Barr stated during a nationally televised interview that it was his view that the Russia probe underlying the *Crossfire Hurricane* investigation was initiated "without basis," and that the "people who abused FISA have a lot to answer for."[16]

Finally, on information and belief, the agents and attorneys pursuing the investigation against Mr. Page were motivated by political bias. In particular, there was a pattern of bias within the FBI during the relevant timeframe against candidate Trump and later, President Trump. For example, in an earlier report concerning text message exchanges between then Special Counsel to the Deputy Director Lisa Page and then Section Chief Peter Strzok, the Inspector General concluded that the texts, "most of which pertained to the Russia investigation," "included statements of hostility toward then candidate Trump and statements of support for then candidate Hillary Clinton."[17] The Inspector General further found that the messages "'were not only indicative of a biased state of mind but, even more seriously, impl[y] a willingness to take official action to impact [Trump's] electoral prospects.'"[18] Notably, Mr. Strzok "was directly involved in the decisions to open Crossfire Hurricane and the four individual cases."[19]

Although Inspector General Horowitz concluded that there was no evidence "that political bias or improper motivation influenced the FBI's decision to seek FISA authority on Carter Page,"[20] that cannot be conclusive. Most significantly, if not political bias, what could have motivated the FBI's extreme conduct tying Mr. Page into the investigation based on the uncorroborated statements in the Steele Dossier, and then seeking FISA applications riddled with known errors intended to obtain warrants based on virtually no evidence? To the extent these questions remain unanswered, Mr. Page is entitled to conduct his own investigation using the civil discovery process.

---

[15] Press Release, U.S. Dep't of Justice, Statement by Attorney General William P. Barr on the Inspector General's Report of the Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation (Dec. 9, 2019), *available at*: https://go.usa.gov/xdXM5.
[16] Fox News, *AG William Barr on the Russia investigation: 'There's something far more troubling here,'* video at 5:37, 6:56, *available at* https://fxn.ws/2VtJ2xX.
[17] IG Rep., 348.
[18] *Id.* at 348-49 (alterations in original).
[19] *Id.* at 349.
[20] *Id.* at 359.


April 29, 2020
Page 4

### B. Legal Basis of Claim – Abuse of Process

Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Consistent with the Fourth Amendment, the Foreign Intelligence Surveillance Act permits the FISC to issue warrants only upon probable cause, based on an application submitted "by a Federal officer in writing upon oath or affirmation."[21]

The Federal Bureau of Investigation agents and attorneys pursuing the *Crossfire Hurricane* investigation against Mr. Page had ulterior motives in opening the investigation, obtaining four FISA warrants against Mr. Page, and conducting surveillance pursuant to those warrants—namely, political bias. The investigation would not have proceeded as it did but for the involved persons' contempt for candidate—and then President—Trump. Because of that bias, the involved individuals utilized the FISA procedures to obtain warrants against Mr. Page without probable cause by misleading the FISC. Those officers then directed electronic surveillance and physical searches against Mr. Page based on the improvidently granted warrants.

### 10. Personal Injury

The government has caused significant harm to Mr. Page through its actions surrounding the *Crossfire Hurricane* investigation. For starters, but for the willfully inaccurate, incomplete, and unsupported statements in the FISA applications, the warrants never would have issued in the first place, and Mr. Page would not have been subjected to intrusive surveillance and searches by the government.

In addition, the personal and professional harms to Mr. Page as a result of the government's actions have been profound. As fully explained in our February 14, 2020 letter, Mr. Page was labeled by thousands of worldwide news outlets as a traitor and a likely Russian asset. For example, the Washington Post reported on April 11, 2017, well before the government improperly released the FISA applications, that "[t]he FBI and the Justice Department obtained the warrant targeting Carter Page's communications after convincing a Foreign Intelligence Surveillance Court judge that there was probable cause to believe Page was acting as an agent of a foreign power, in this case Russia, according to the officials."[22] Of course, we now know that the allegations in the warrant application were uncorroborated and untrue.

As a result of the false allegations against him, the government has transformed Mr. Page from a private citizen into a national pariah. His reputation is forever tarnished. Mr. Page has been barred from the academic community, and is effectively unemployable. Even worse, Mr. Page has been subjected to near-constant death threats for years. Put simply, Mr. Page will never be able to return to the quiet life he enjoyed before.

---

[21] 50 U.S.C. §§ 1804-05.
[22] Washington Post, *FBI Obtained FISA Warrant to Monitor Former Trump Adviser Carter Page* (Apr. 11, 2017), *available at* https://wapo.st/2HeJsQP.



April 29, 2020<br>Page 5

## 11. Witnesses

Possible witnesses include, but are not limited to, the following:

- President Donald J. Trump,
    - The White House, 1600 Pennsylvania Avenue, NW, Washington, DC 20500
- Attorney General William Barr,
    - U.S. Dep't of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530
- Federal Bureau of Investigation Director Christopher Wray,
    - FBI Headquarters, 935 Pennsylvania Avenue, NW, Washington, DC 20535
- U.S. Department of Justice Inspector General Michael Horowitz,
    - U.S. Dep't of Justice, Office of the Inspector General, 950 Pennsylvania Avenue, NW, Washington, DC 20530
- Individuals interviewed as part of Inspector General Horowitz's report on the *Crossfire Hurricane* investigation.

## 13. Contact Information of Signatory

Thomas Buchanan  
Winston & Strawn LLP  
1901 L Street, NW  
Washington, DC 20036  
Tel. (202) 282-5000  
Fax (202) 282-5100  
tbuchana@winston.com



Retail

US POSTAGE PAID
Origin: 21022
05/07/20
2311520222-04

**$7.75**

PRIORITY MAIL 1-DAY®

0 Lb 3.50 Oz

1006

EXPECTED DELIVERY DAY: 05/08/20

B900

SHIP TO:
PO BOX 888
WASHINGTON DC 20044-0888

USPS TRACKING®NUMBER

9505 5105 5852 0128 4826 81

# PRIORITY MAIL

**FROM:**

Tom Buchanan
Winston & Strawn LLP
1901 L St. NW
Washington, DC 20036

X-RAYED
MAY 12 2020
DOJ MAILROOM

**TO:**

James G. Touhey
U.S. Dep't of Justice, Civil Div.
Torts Branch
PO Box 888, Benjamin Franklin Sta.
Washington DC 20044

Label 228, March 2016    FOR DOMESTIC AND INTERNATIONAL USE

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F-P-PP © U.S. Postal Service; June 2012; All rights reserved.

EP14F-P-PP June 2012 © U.S. Postal Service

Schedule package pickup right from your home or office at usps.com/pickup
Print postage online

**PLEASE PRESS FIRMLY**



**PRIORITY MAIL**
**UNITED STATES POSTAL SERVICE**

Flat Rate Mailing Envelope

Visit us at usps.com

**PRIORITY ★ MAIL ★**

FROM:

Tom Buchanan
Winston & Strawn LLP
1901 L St. NW
Washington, DC 20036

X-RAYED
MAY 12 2020
DOJ MAILROOM

SHIP TO: PO BOX 8
WASHING



9505

TO:

James G. Touhey
U.S. Dep't of Justice, Civil Div.
Tort Branch
PO Box 888, Benjamin Franklin Sta.
Washington, DC 20044

Label 228, March 2016    FOR DOMESTIC AND INTERNATIONAL USE



DOJ-FASS
Tracking No: 420200449505510558520128482681
1100 L ST
MAILROOM # CIVIL DIVISION - 1100 L STREET - 8TH - MAILROOM
Building: 1100 L STREET
Room:
Dept: CIVIL DIVISION
Received On: 05-12-2020 11:49am
Route:

# EXHIBIT B

**U.S. Department of Justice**

Civil Division, Torts Branch
Federal Tort Claims Act Staff

JGT:GKJ:GKJohnson:gkj
157-16-NEW

*Post Office Box 888*
*Benjamin Franklin Station*
*Washington, D.C. 20044*

May 26, 2020

CERTIFIED MAIL – 7004 0550 0001 2028 9090
RETURN RECEIPT REQUESTED

Mr. Tom M. Buchanan
Winston & Strawn, LLP
1901 L Street, N.W.
Washington, D.C. 20036

Re: Administrative Tort Claim of Carter W. Page

Dear Mr. Buchanan:

We have reviewed your letter dated May 1, 2020, transmitting an administrative tort claim on behalf of your client, Carter W. Page, under the Federal Tort Claims Act (FTCA).

After reviewing your letter and your client's claim and request for $75 million, I have determined that your client's claim and request are hereby denied.

As a consequence, under the FTCA, your client is now authorized to file suit in an appropriate United States District Court no later than six months after the date of mailing of this notification. 28 U.S.C. § 2401(b).

Very truly yours,

JAMES G. TOUHEY, JR.
Director, Torts Branch

cc:  Ms. Cecilia Bessee
   Acting Deputy General Counsel
   U.S. Department of Justice
   Federal Bureau of Investigation
   Office of the General Counsel
   OTC - Litigation Branch