# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CARTER PAGE,<br><br>        Plaintiff,<br><br>    v.<br><br>JAMES COMEY, ANDREW MCCABE, KEVIN CLINESMITH, PETER STRZOK, LISA PAGE, JOE PIENTKA III, STEPHEN SOMMA, BRIAN J. AUTEN, DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION, UNITED STATES OF AMERICA, JOHN DOES 1-10, JANE DOES 1-10,<br><br>        Defendants. | No. 20-cv-3460 (KBJ) |

## JOE PIENTKA III'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

James M. Koukios (#477072)
Vanshika Vij (#1029822)
Robin Smith (#1685989)
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, D.C. 20037
Phone:  (202) 887-1500
Fax:  (202) 887-0763
JKoukios@mofo.com
VVij@mofo.com
RSmith@mofo.com

*Attorneys for Joe Pientka III*

## Table of Contents

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

STANDARD OF REVIEW ................................................................................................. 5

ARGUMENT ...................................................................................................................... 6

    I.   The FISA Claims (Claims 1-4) Against Mr. Pientka Must Be Dismissed. ...................... 6

       A.  All of Plaintiff's FISA Claims Are Time-Barred. ...................................................... 6

       B.  Plaintiff Has Failed to Allege Facts to Support a FISA Claim Against Mr. Pientka.... 8

          i.   Plaintiff Concedes that Mr. Pientka Played No Role in the Renewal Warrants
             (Claims 2-4). ...................................................................................................... 9

          ii.  Plaintiff Has Failed to Adequately Allege that Mr. Pientka Intentionally Violated
             FISA with Respect to the Initial FISA Warrant (Claim 1). ................................. 11

          iii.  Plaintiff Has Failed to Establish a Causal Connection Between Mr. Pientka's
             Alleged Conduct and Plaintiff's Alleged Injuries (Claims 1-4). ........................ 15

       C.  Even if the FISA Claims Were Timely and Adequately Pled, Mr. Pientka Is Entitled
          to Dismissal of Claims 1-4 Under the FISA Safe Harbor or Qualified Immunity. .... 15

    II.  The *Bivens* Claim (Claim 6) Against Mr. Pientka Must Be Dismissed. ......................... 16

       A.  Plaintiff's *Bivens* Claim Is Time-Barred. ................................................................. 16

       B.  Plaintiff's Claim Would Impermissibly Extend *Bivens* to a New Context. ................ 17

       C.  Plaintiff Has Failed to Allege a *Bivens* Claim Against Mr. Pientka. ........................ 17

       D.  Mr. Pientka Is Entitled to Qualified Immunity. ......................................................... 19

    III. Mr. Pientka Is Entitled to Qualified Immunity Because Plaintiff Cannot Show a Violation
        of Clearly Established Rights. ..................................................................................... 19

CONCLUSION ................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al-Haramain Islamic Found., Inc. v. Obama*,
   705 F.3d 845 (9th Cir. 2012) ......................................................................9, 10, 14

*Albright v. United States*,
   732 F.2d 181 (D.C. Cir. 1984) ................................................................................13

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011) ................................................................................................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ *passim*

*Attkisson v. Holder*,
   No. 1:17-cv-364, 2017 WL 5013230 (E.D. Va. Nov. 1, 2017),
   *aff'd*, 925 F.3d 606 (4th Cir. 2019) ..................................................................9 n.8

*Bame v. Dillard*,
   No. CV 05-1833 (RMC), 2008 WL 11515525 (D.D.C. Mar. 28, 2008) ..................8

*Banneker Ventures, LLC v. Graham*,
   798 F.3d 1119 (D.C. Cir. 2015) ..........................................................................2 n.2

*Bates v. Nw. Hum. Servs., Inc.*,
   466 F. Supp. 2d 69 (D.D.C. 2006) ..............................................................10 n.9, 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..........................................................................5, 6, 10, 14

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,
   403 U.S. 388 (1971) ........................................................................................ *passim*

*Byrne v. Clinton*,
   410 F. Supp. 3d 109 (D.D.C. 2019) ........................................................................15

*Clapper v. Amnesty Int'l, USA*,
   568 U.S. 398 (2013) ................................................................................................15

*Corsi v. Mueller*,
   422 F. Supp. 3d 51 (D.D.C. 2019) ..........................................................................18

*District of Columbia v. Wesby*,
   138 S. Ct. 577 (2018) ..............................................................................................20

*Doe v. U.S. Dep't of Just.*,
 753 F.2d 1092 (D.C. Cir. 1985) ............................................................................8

*Dukore v. District of Columbia*,
 799 F.3d 1137 (D.C. Cir. 2015) ..........................................................................20

*Fazaga v. Fed. Bureau of Investigation*,
 965 F.3d 1015 (9th Cir. 2020) .........................................................................9, 15

*Franks v. Delaware*,
 438 U.S. 154 (1978) .......................................................................................18, 19

*Harlow v. Fitzgerald*,
 457 U.S. 800 (1982) .............................................................................................20

*Herring v. United States*,
 555 U.S. 135 (2009) .............................................................................................19

*Kapinski v. City of Albuquerque*,
 964 F.3d 900 (10th Cir. 2020) .............................................................................19

*Kelley v. FBI*,
 67 F. Supp. 3d 240 (D.D.C. 2014) .......................................................................14

*Lampon-Paz v. Dep't of Justice*,
 No. 16-cv-9071 (KM) (JBC), 2019 WL 2098831 (D.N.J. May 14, 2019),
 *aff'd*, 793 F. App'x 137 (3d Cir. 2019) ............................................................9 n.8

*Loumiet v. United States*,
 968 F. Supp. 2d 142 (D.D.C. 2013) ......................................................................17

*Lovelien v. United States*,
 422 F. Supp. 3d 341 (D.D.C. 2019) ..................................................................6, 10

*Nw. Airlines, Inc. v. Fed. Aviation Admin.*,
 795 F.2d 195 (D.C. Cir. 1986) ............................................................................18

*Ortiz-Contreras v. Holder*,
 126 F. Supp. 3d 127 (D.D.C. 2015) ......................................................................18

*Paez v. Mulvey*,
 915 F.3d 1276 (11th Cir. 2019) ...........................................................................19

*Powers v. U.S. Parole Comm'n*,
 296 F. App'x 86 (D.C. Cir. 2008) ........................................................................13

*Rainsberger v. Benner*,
 913 F.3d 640 (7th Cir. 2019) ...............................................................................18

*Reichle v. Howards*,
566 U.S. 658 (2012)...........................................................................................................20

*Simpkins v. D.C. Gov't*,
108 F.3d 366 (D.C. Cir. 1997)..........................................................................................18

*Staub v. Proctor Hosp.*,
562 U.S. 411 (2011)...........................................................................................................13

*Stonecipher v. Valles*,
759 F.3d 1134 (10th Cir. 2014) .......................................................................................19

*United States v. Herring*,
492 F.3d 1212 (11th Cir. 2007), *aff'd*, 555 U.S. 135 (2009) .................................13

*Wikimedia Found. v. Nat'l Sec. Agency/Cent. Sec. Serv.*,
335 F. Supp. 3d 772 (D. Md. 2018).............................................................................9, 14

*Ziglar v. Abbasi*,
137 S. Ct. 1843 (2017)......................................................................................................18

**Statutes**

50 U.S.C. § 1809...................................................................................................................9, 16

50 U.S.C. § 1810...................................................................................................................8, 9

**Other Authorities**

Ellen Nakashima et al., *FBI Obtained FISA Warrant to Monitor Former Trump
Advisor Carter Page*, WASH. POST (Apr. 11, 2017), http://wapo.st/2pr7kpE .................5, 7

H.R. Rep. No. 95-1283 (1978)..........................................................................................9, 16

H.R. Rep. No. 95-1720 (1978)..........................................................................................9 n.8

Memorandum Regarding the Execution of Woods Procedures,
Office of the Inspector General, U.S. Dep't of Justice (March 2020),
https://oig.justice.gov/sites/default/files/reports/a20047.pdf...........................................12 n.12

## **<u>INTRODUCTION</u>**

Plaintiff brings a *Bivens* claim and four Foreign Intelligence Surveillance Act (FISA) claims against Defendant Joe Pientka, based on his role as an FBI Supervisory Special Agent (SSA) temporarily assigned to Crossfire Hurricane, an investigation into possible links between individuals associated with Donald Trump's presidential campaign and Russian interference in the 2016 election.  In particular, Plaintiff alleges that several defendants, including Mr. Pientka, violated FISA and the Fourth Amendment in connection with four FISA warrants authorizing the FBI to surveil Plaintiff for possible violations of the Foreign Agent Registration Act (FARA).  But Plaintiff concedes that Mr. Pientka was involved in just one aspect of one of the four FISA warrants at issue here.  Specifically, Plaintiff alleges that Mr. Pientka, as an FBI SSA, reviewed the Woods File for the initial FISA application.  Plaintiff does not (and cannot) allege that Mr. Pientka played a role in the three renewal FISA applications, all of which were submitted after Mr. Pientka had left the Crossfire Hurricane team and returned to his permanent position at the FBI's Washington Field Office (WFO).

Each of the five claims asserted against Mr. Pientka fails as a matter of law and should be dismissed with prejudice.  ***First***, all of Plaintiff's claims against Mr. Pientka are time-barred.  ***Second***, Plaintiff's claims against Mr. Pientka fail to allege sufficient facts that would establish a cause of action under either FISA or *Bivens*.  ***Third***, Plaintiff's *Bivens* claim also fails because it would impermissibly extend *Bivens* to a new context.  ***Finally***, even if Plaintiff had timely and sufficiently alleged FISA or *Bivens* claims, Mr. Pientka would be immune from liability under FISA's safe harbor, qualified immunity, or both.

## BACKGROUND

As a threshold matter and for the sake of judicial economy, Defendant Joe Pientka joins the Motions to Dismiss of Defendants James Comey, Andrew McCabe, Kevin Clinesmith, Peter Strzok, Lisa Page, Stephen Somma, and Brian Auten (the Co-Defendants), and incorporates herein by reference all arguments set forth in those motions that apply equally to Mr. Pientka. Mr. Pientka writes separately to address the factual allegations relevant to his motion to dismiss.[1]

From approximately Monday, August 1, 2016 until Friday, January 7, 2017, then-FBI SSA Joe Pientka was on a temporary duty assignment to Crossfire Hurricane, an investigation into possible links between individuals associated with Donald Trump's presidential campaign and Russian interference in the 2016 election. *See* Amended Complaint (AC) ¶¶ 5, 28, 162; DOJ Office of the Inspector General Report (OIG) at 81, 283.[2] Mr. Pientka "rotated off the Crossfire Hurricane team" and returned to his permanent assignment at the FBI's WFO on Monday, January 9, 2017. OIG at 283; *see also* AC ¶ 28.

While on the Crossfire Hurricane team, Mr. Pientka was involved in one FISA application involving Plaintiff Carter Page. Already the subject of a pre-existing Russian counterintelligence investigation being run out of the FBI's New York Field Office, Plaintiff, a former "volunteer

---

[1] This motion assumes, as it must, the "veracity" of any "well-pleaded factual allegations" in the Amended Complaint, but not "pleadings" that "are no more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Mr. Pientka reserves his right to contest Plaintiff's allegations, many of which are demonstrably false, should any of his claims survive this motion to dismiss.

[2] Plaintiff references and relies upon information contained in a Department of Justice Office of the Inspector General Report titled "Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation" (revised Dec. 2019) throughout the Amended Complaint. *See* AC ¶¶ 38, 39, 57, 193. This Court may therefore consider the entirety of the OIG Report in this motion without converting it into one for summary judgment. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) ("Incorporation by reference can also amplify pleadings where the document is not attached by the plaintiff, but is referred to in the complaint and integral to the plaintiff's claim." (alterations and citations omitted)). Mr. Pientka is referenced in the OIG Report as "SSA 1."

member of an informal foreign policy advisory committee" for the Trump campaign, was among those investigated as part of Crossfire Hurricane. AC ¶ 18; OIG at 61-63. After the investigation began, the FBI sought authorization from the Foreign Intelligence Surveillance Court (FISC) to conduct electronic surveillance of Plaintiff. AC ¶ 6. To establish the necessary probable cause, the FBI relied on information from Christopher Steele, a Confidential Human Source (CHS) for the FBI. *Id.* ¶ 7. Steele had provided the FBI with certain reports that alleged Plaintiff had improper or unlawful communications with two Russians with close ties to Russian President Vladimir Putin. *Id.* ¶ 62. The FBI and DOJ ultimately prepared and submitted four FISA applications to conduct electronic surveillance of Plaintiff—an initial application and three renewal applications, all of which were granted by the FISC. *Id.* ¶ 3.[3]

Mr. Pientka was involved in the initial FISA application, which was submitted to, and granted by, the FISC in October 2016 during his temporary duty assignment to Crossfire Hurricane. *Id.* ¶¶ 76, 81, 162, 163. Plaintiff does not allege that Mr. Pientka personally inserted false statements into, or withheld material information from, the initial FISA application. Indeed, Plaintiff does not allege that Mr. Pientka played any role whatsoever in writing the initial FISA application. Rather, Plaintiff alleges that "Pientka was responsible for compliance with the Woods Procedures by confirming the completion of the Woods File for the [initial] warrant application, and for double checking the factual accuracy review to confirm that the file contained appropriate documentation for each of the factual assertions in the [initial] FISA application." *Id.* ¶ 162.[4]

---

[3] The Amended Complaint describes the FISA warrants as the "First, Second, Third, and Fourth FISA Warrants." For clarity, as used in this brief, the "initial FISA warrant" corresponds with the "First FISA Warrant" and the "renewal FISA warrants" correspond with the "Second, Third, and Fourth FISA Warrants." References to the applications for these warrants follow the same convention.

[4] The Woods Procedures are discussed in detail in Section I.B.ii.

Plaintiff alleges that Mr. Pientka committed two errors in the course of his Woods review:  (1) he failed to verify a statement in the initial FISA application that Steele's reporting had been corroborated and used in criminal proceedings; and (2) he failed to confirm that Steele's handling agent had reviewed and approved that content.  *Id.* ¶ 163.  Thus, Plaintiff alleges, "[c]ontrary to Pientka's representation, the Woods File was inaccurate, incomplete, or unsupported by appropriate documentation." *Id.* ¶ 162.

Mr. Pientka was ***not*** involved in the renewal FISA applications.  The three renewal applications were submitted to the FISC between January 12, 2017 and June 29, 2017.  *Id.* ¶¶ 92, 103, 114.  Plaintiff does not allege—nor could he—that Mr. Pientka played any role in writing, reviewing, or completing the Woods Procedure for the renewal FISA applications.  *Id.* ¶¶ 162-63.  Similarly, Plaintiff does not and cannot allege that Mr. Pientka played any role in engaging in, disclosing, or using information obtained pursuant to the renewal FISA warrants.  This is because Mr. Pientka had already "rotated off the Crossfire Hurricane team" and returned to WFO by the time the renewal applications were submitted to the FISC.  OIG at 283; *see also* AC ¶ 28.

The FBI's activities did not go unnoticed by Plaintiff.  Plaintiff suspected that he was under surveillance at least as early as March 2017, when he told other FBI agents (not Mr. Pientka, who had already returned to WFO) "that he believed he was under surveillance."  OIG at 220.  Plaintiff's belief was publicly confirmed a month later, when, on April 11, 2017, the *Washington Post* reported that the FBI and the Justice Department had obtained an initial FISA warrant in October 2016 and at least one renewal warrant after that, allowing the FBI to monitor Plaintiff's communications.  AC ¶ 184.  Plaintiff was interviewed for the article, telling the *Post*, "This confirms all of my suspicions about unjustified, politically motivated government surveillance[.]" Ellen Nakashima et al., *FBI Obtained FISA Warrant to Monitor Former Trump Advisor Carter*

*Page*, WASH. POST (Apr. 11, 2017), http://wapo.st/2pr7kpE.

Almost four years later, Plaintiff initiated this lawsuit. Despite a dearth of allegations against Mr. Pientka, the Amended Complaint alleges five causes of action against him.[5] Four claims assert FISA violations—one claim corresponding to each FISA application, including the three renewal FISA applications in which Plaintiff concedes that Mr. Pientka played no part. AC ¶¶ 216-34 (Claims 1-4). The fifth claim against Mr. Pientka alleges violations of Page's Fourth Amendment rights under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). AC ¶¶ 243-50 (Claim 6). Mr. Pientka now moves to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the factual allegations in a plaintiff's complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a motion to dismiss, the Court must accept as true only the complaint's well-pleaded factual allegations. *Id.* at 537. Mere labels, conclusions, or formulaic recitations of the elements of a cause of action are insufficient to state an actionable claim. *Id.* at 555. To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Id.* at 570. A claim is plausible only if the complaint contains sufficient factual matter to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not met when a complaint merely "tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550

---

[5] Other than naming him as a defendant in five claims, Plaintiff references Mr. Pientka by name only five times in the Amended Complaint. *See* AC ¶ 28 (alleging that Mr. Pientka was an SSA at WFO and is being sued in his individual capacity); ¶¶ 87, 90 (alleging that Mr. Pientka and others met with officials from DOJ and the State Department, respectively, in November 2016 to discuss Steele); ¶¶ 162-63 (alleging that Mr. Pientka committed errors in the Woods review for the initial FISA application).

U.S. at 557).

When bringing a claim against government actors, a plaintiff must plausibly allege "that each Government-official defendant, through the official's own individual actions, has violated the Constitution" or other applicable law. *Id*. at 676. Failing to plead facts that would establish that an official "personally participated" in the alleged misconduct requires dismissal. *See Lovelien v. United States*, 422 F. Supp. 3d 341, 349–50 (D.D.C. 2019) (dismissing *Bivens* claims against government officials due to failure to allege that the officials "personally participated" in the alleged conduct).

## ARGUMENT

### I.   The FISA Claims (Claims 1-4) Against Mr. Pientka Must Be Dismissed.

Plaintiff's FISA claims against Mr. Pientka should be dismissed for several separate and independent reasons. *First*, all of the FISA claims are time-barred. *Second*, Plaintiff has failed to adequately plead a FISA claim against Mr. Pientka for any of the FISA warrants because Plaintiff has failed to plausibly allege that: (i) Mr. Pientka engaged in, disclosed, or used information obtained from the electronic surveillance authorized by the renewal FISA warrants (Claims 2-4); (ii) Mr. Pientka intentionally violated 50 U.S.C. § 1809(a) with respect to any of the four FISA warrants (Claims 1-4); and (iii) the alleged FISA violations were causally connected to his alleged injuries (Claims 1-4). *Third*, even assuming that the FISA claims were timely and adequately pled, Mr. Pientka is entitled to the protections of FISA's safe harbor provision, qualified immunity, or both as to all four FISA warrants (Claims 1-4).

### A.   All of Plaintiff's FISA Claims Are Time-Barred.

Plaintiff was aware of the FISA surveillance that forms the gravamen of his claims at least three years and 231 days before he filed his original complaint on November 27, 2020. As Plaintiff alleges, "On Tuesday, April 11, 2017, the Washington Post broke the story about the FISA

warrants targeting Dr. Page, including that a FISA warrant had been issued in 2016 and had been renewed at least once." AC ¶ 184. Indeed, the very first sentence of the *Post* article references the FISA warrant at the heart of Claim 1, the only FISA warrant in which Mr. Pientka was involved: "The FBI obtained a secret court order in October 2016 to monitor the communications of a former adviser to presidential candidate Donald Trump, part of an investigation into possible links between Russia and the campaign, law enforcement and other U.S. officials said." Ellen Nakashima et al., *FBI Obtained FISA Warrant to Monitor Former Trump Advisor Carter Page*, WASH. POST (Apr. 11, 2017), http://wapo.st/2pr7kpE.[6] There is no doubt that Plaintiff was aware of the *Post* article at the time: he was interviewed for the article, telling the *Post*, "This confirms all of my suspicions about unjustified, politically motivated government surveillance[.]"[7] *Id*. Thus, Plaintiff was on notice of the FISA warrants and surveillance, including the initial FISA warrant underlying Claim 1, over three-and-a-half years before filing the original complaint.

Mr. Pientka joins and incorporates by reference the generally applicable arguments regarding the statute of limitations for a FISA claim as set forth in Section II.A of the Clinesmith Brief. Dkt. 60-1 at 38-39. In short, Plaintiff filed his FISA claims over three years after they accrued, rendering them time-barred under any potentially applicable limitations period. That Plaintiff might not have known the precise identities of the agents involved in the FISA applications on April 11, 2017 is of no moment. As he has done (belatedly) in the Amended Complaint, Plaintiff could have filed suit against the FBI, the Justice Department, and "JOHN

---

[6] The next sentence explains, "The FBI and the Justice Department obtained the warrant targeting Carter Page's communications after convincing a Foreign Intelligence Surveillance Court judge that there was probable cause to believe Page was acting as an agent of a foreign power, in this case Russia, according to the officials." *Id*.

[7] Because Plaintiff had expressed his suspicions to FBI agents in March 2017, telling them "that he believed he was under surveillance" then, OIG at 220, his FISA claims arguably accrued even earlier than April 11, 2017.

DOES 1-10" as soon as the *Post* article was published, and amended the complaint when he later learned the individual defendants' identities. *Bame v. Dillard*, No. CV 05-1833 (RMC), 2008 WL 11515525, at *3 (D.D.C. Mar. 28, 2008) (dismissing claims with prejudice where plaintiffs "offered no reason for failing to institute this action years earlier, which would have enabled them to ascertain the identities of the 'unknown' defendants well before the limitations period ran").  He did not do so, and Claims 1 through 4 should be dismissed.  *Doe v. U.S. Dep't of Just.*, 753 F.2d 1092, 1115 (D.C. Cir. 1985) (a claim must be dismissed "when it appears from the face of the complaint that the relevant statute of limitation bars the action").

**B.      Plaintiff Has Failed to Allege Facts to Support a FISA Claim Against Mr. Pientka.**

In addition to being dismissed as time-barred, Plaintiff's FISA claims against Mr. Pientka should be dismissed because they are unsupported by the factual allegations in the Amended Complaint.

In Claims 1 through 4, Plaintiff claims that all of the individual defendants, including Mr. Pientka, should be held liable under 50 U.S.C. § 1810.  That section provides that "[a]n aggrieved person . . . who has been subjected to an electronic surveillance or about whom information obtained by electronic surveillance of such person has been disclosed or used in violation of section 1809 of this title" may bring "a cause of action against any person who committed such violation[.]"  50 U.S.C. § 1810.  Thus, a cause of action under § 1810 is "predicated on" a violation of § 1809.  *See Al-Haramain Islamic Found., Inc. v. Obama*, 705 F.3d 845, 851 (9th Cir. 2012).[8]

---

[8] *See also* H.R. Rep. No. 95-1720 (1978), at 34 (1810 gives a "cause of action to any aggrieved person about whom information has been disclosed or used in violation of the criminal penalty provisions;" thus, "the civil liability of intelligence agents under this act should coincide with the criminal liability"); *Attkisson v. Holder*, No. 1:17-cv-364 (LMB/JFA), 2017 WL 5013230, at *12 (E.D. Va. Nov. 1, 2017), *aff'd*, 925 F.3d 606 (4th Cir. 2019) ("Any 'aggrieved person' has a 'cause of action against any person who committed' a 'violation' of § 1809.") (quoting 50 U.S.C. § 1810); *Lampon-Paz v. Dep't of Justice*, No. 16-cv-9071 (KM) (JBC), 2019 WL 2098831, at *7

To state a claim against Mr. Pientka under § 1810, Plaintiff must plausibly allege that (1) he is an "aggrieved person[,]" (2) he was "subjected to an electronic surveillance," and (3) Mr. Pientka violated § 1809 by either (a) intentionally engaging in unauthorized electronic surveillance or (b) intentionally disclosing or using information obtained through electronic surveillance that Mr. Pientka knew was not properly authorized. *Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1030 (9th Cir. 2020); 50 U.S.C. § 1809(a); H.R. Rep. No. 95-1283, at 97 (1978) (explaining that "intentionally" as used in § 1809 "is intended to reflect the most strict standard for criminal culpability" and that the offense requires proof "both that the conduct engaged in was in fact a violation, and that it was engaged in with a conscious objective or desire to commit a violation"). Plaintiff fails to adequately plead such a claim.

### i.      Plaintiff Concedes that Mr. Pientka Played No Role in the Renewal Warrants (Claims 2-4).

First, Plaintiff concedes that Mr. Pientka was not personally involved with the three renewal warrants in any way.  This is fatal to the claims related to those warrants.  *See Iqbal¸* 556 U.S. at 676 (plaintiff must plausibly allege "that each Government-official defendant, through the official's own individual actions, has violated the Constitution" or other applicable law); *Wikimedia Found. v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 335 F. Supp. 3d 772, 784 (D. Md. 2018) ("[T]he civil cause of action in § 1810 is premised upon the ***individual agent's*** 'violation of section 1809'") (emphasis added, quoting *Al-Haramain*, 705 F.3d at 854)); *Lovelien*, 422 F. Supp. 3d at 349-50 (failure to allege that the officials "personally participated" in the alleged conduct resulted in dismissal).

The Amended Complaint alleges only that Mr. Pientka reviewed the Woods File for the

---

(D.N.J. May 14, 2019), *aff'd*, 793 F. App'x 137 (3d Cir. 2019) (liability under § 1810 "must be premised on a prior criminal conviction under [FISA]").

*initial* FISA application (Claim 1).  AC ¶¶ 162-63.  Plaintiff does not allege that Mr. Pientka wrote or reviewed the Woods File for the renewal applications, engaged in any electronic surveillance pursuant to the renewal warrants, or used or disclosed any information obtained as a result of the renewal warrants.  Nor can he.  Mr. Pientka "rotated off the Crossfire Hurricane team in January 2017," before the first renewal application was submitted to the FISC.  OIG at 283.  Plaintiff's "formulaic recitation" of the elements of a FISA claim against all of the individual defendants in Claims 2 through 4 is plainly insufficient. [9]  *See Twombly*, 550 U.S. at 555.  In short, Plaintiff has failed to allege facts establishing that Mr. Pientka engaged in, used, or disclosed electronic surveillance or that Mr. Pientka intended to violate § 1809 in connection with the renewal warrants, and Claims 2 through 4 should be dismissed.

Plaintiff's inclusion of two allegations against Mr. Pientka in the section labeled "The Second FISA Warrant" in the Amended Complaint does not save Claim 2 from dismissal.[10]  This is because neither allegation is actually related to that warrant.  Plaintiff alleges that in November 2017, roughly two months before the first renewal application that led to the second FISA warrant was filed with the FISC, Mr. Pientka and others met with a DOJ official, AC ¶ 87, and a State Department official, *id.* ¶ 90, to discuss the CHS.  Neither paragraph mentions the renewal application or warrant, nor is there any reasonable basis to infer from them that Mr. Pientka intentionally violated § 1809 with respect to that warrant.

---

[9]  Similarly, and especially in light of the facts described above, Plaintiff's conclusory and undifferentiated electronic surveillance allegations in paragraphs 121-23 do not save these claims from dismissal.  *See Bates v. Nw. Hum. Servs., Inc.*, 466 F. Supp. 2d 69, 85 (D.D.C. 2006).

[10]  Plaintiff does not name Mr. Pientka at all in the sections labeled "The Third FISA Warrant" and "The Fourth FISA Warrant."

### ii. Plaintiff Has Failed to Adequately Allege that Mr. Pientka Intentionally Violated FISA with Respect to the Initial FISA Warrant (Claim 1).

Plaintiff has also failed to adequately allege that Mr. Pientka intentionally violated § 1809 with respect to the initial FISA warrant.  Crucially, Plaintiff does *not* allege that Mr. Pientka authored the application for the initial FISA warrant (in whole or in part), compiled the "Woods File" supporting that application, or engaged in, disclosed, or used information obtained through electronic surveillance of Plaintiff pursuant to the resulting FISA warrant.  Rather, Plaintiff challenges only Mr. Pientka's review of the Woods File for the initial FISA application.

Claim 1 should be dismissed in the first instance because reviewing a Woods File for a FISA application does not constitute "engag[ing] in electronic surveillance" or "disclos[ing] or us[ing] information obtained . . . by electronic surveillance" under § 1809.[11]  We are aware of no § 1809 or § 1810 cases based on an allegedly faulty Woods review, and it would stretch the meaning of § 1809 to find liability based on alleged errors in the Woods Process, which is described below.  But even assuming *arguendo* that reviewing a Woods File constitutes "engag[ing] in electronic surveillance," Plaintiff's factual pleadings fall far short of the standard necessary to establish that Mr. Pientka intentionally violated § 1809.

As explained in the OIG Report, the FBI's Woods Procedures require the case agent who requested the FISA application to create and maintain a "Woods File" that contains:  (1) supporting documentation for every factual assertion contained in a FISA application; and (2) supporting documentation and the results for a number of searches and verifications required under the Woods Procedures.  OIG at 43.  When the FISA application contains reporting from a CHS, the Woods

---

[11] Moreover, Plaintiff alleges no facts that would establish that Mr. Pientka intentionally violated § 1809 in connection with engaging in, disclosing, or using information obtained through any surveillance conducted pursuant to the initial FISA warrant.

File must contain documentation from the CHS's handling agent, CHS coordinator, or either of their immediate supervisors stating that: (1) this individual has reviewed the facts presented in the FISA application regarding the CHS's reliability and background; and (2) based on this review of the CHS file documentation, the facts presented in the FISA application are accurate. *Id*. at 43-44. After the Woods File is created, the case agent must verify each factual assertion in the FISA application and ensure that the supporting documentation is placed in the Woods File. *Id*. at 44. "Verification" of a fact attributed to a source means verifying that the fact came from the source and that the application accurately stated what the source said; the Woods Procedures do not require that the FBI have corroboration or a second source for the same information. *Id*. at 45. Moreover, the Woods Procedures focus on the facts actually asserted in a FISA application, not on facts that are missing from an application. *Id.* at 374.

After the case agent completes these steps, he or she submits the Woods Form[12] and the Woods File to his or her SSA. *Id*. at 44. The SSA is then responsible for reviewing the Woods File and confirming that it contains supporting documentation for each factual assertion in the FISA application. *Id*. After the SSA completes this review, the SSA signs the Woods Form, which is transmitted to FBI Headquarters. *Id*. After other officials complete a number of additional steps, the FISA application is submitted to the FISC.

Here, Plaintiff correctly alleges that Mr. Pientka was the SSA responsible for reviewing the Woods File compiled by the case agent for the initial FISA application. AC ¶ 162. According to the Amended Complaint, "Pientka was responsible for compliance with the Woods Procedures

---

[12] In the Woods Form, the case agent affirms that the factual assertions in the application are accurate and backed up by documentation in the Woods File. *See also* Memorandum Regarding the Execution of Woods Procedures, Office of the Inspector General, U.S. Dep't of Justice (March 2020), https://oig.justice.gov/sites/default/files/reports/a20047.pdf.

by confirming the completion of the Woods File for the [initial] warrant application, and for double checking the factual accuracy review to confirm that the file contained appropriate documentation for each of the factual assertions in the [initial] FISA application." *Id*.  Plaintiff specifically alleges that Mr. Pientka's review of the Woods File fell short in two ways:  (1) he failed to verify that Steele's reporting had been corroborated and used in criminal proceedings; and (2) he failed to confirm that Steele's handling agent had reviewed and approved the content in the application for the first FISA application.

But Plaintiff pleads no facts to establish that these shortcomings were the result of Mr. Pientka's **intent** to violate § 1809.  Allegations establishing negligence are insufficient to state a FISA claim.  *See Staub v. Proctor Hosp*., 562 U.S. 411, 417 (2011) (noting the higher standard required for proving intentional torts); *Powers v. U.S. Parole Comm'n*, 296 F. App'x 86, 87 (D.C. Cir. 2008) (dismissing claim under the Privacy Act because plaintiff "fail[ed] to allege the requisite willfulness"); *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984) (a plaintiff may recover only for "the intentional or willful failure … to abide by the [Privacy] Act, and not [for] all voluntary actions which might otherwise inadvertently contravene one of the Act's strictures"); *United States v. Herring*, 492 F.3d 1212, 1217-18 (11th Cir. 2007), *aff'd*, 555 U.S. 135 (2009) (failure of a law enforcement official to update records was conduct that was "negligent failure to act, not a deliberate or tactical choice to act").  Plaintiff's "talismanic" allegation that "[t]he individual Defendants' acts were willful, knowing, deliberate and malicious," AC ¶ 221, is nothing more than "labels and conclusions" insufficient to state a claim upon which relief can be granted. *Kelley v. FBI*, 67 F. Supp. 3d 240, 257 (D.D.C. 2014) (quoting *Twombly*, 550 U.S. at 555). Especially where, as here, "the civil cause of action . . . is premised upon the **individual agent's** 'violation of section 1809,'" *Wikimedia Found.*, 335 F. Supp. 3d at 784 (emphasis added, quoting

*Al-Haramain*, 705 F.3d at 854), a plaintiff must "distinguish between the defendants when describing the factual underpinnings of the complaint" and cannot rely on a generalized allegation of the individual defendants' collective intent "as if they were a single, undifferentiated mass," *Bates*, 466 F. Supp. 2d at 85.

Plaintiff's failure to adequately plead intent is not the result of oversight or sloppiness: it is because there are no facts to plead. Indeed, while OIG was troubled by the errors it found in the application process for the FISA warrants at issue here, OIG was nevertheless clear that it "did not find documentary or testimonial evidence of intentional misconduct on the part of the case agents who assisted OI in preparing the applications, or the agents and supervisors who performed the Woods Procedures[.]" OIG at 376-77, 413; *see also id*. at 359 (finding no "documentary or testimonial evidence that political bias or improper motivation influenced the FBI's decision to seek FISA authority on Carter Page"). The OIG also acknowledges that Mr. Pientka told OIG that it was "his 'intent' as the case supervisor to provide accurate information in the FISA application about Steele's history with the FBI." *Id*. at 162.

To the extent that Plaintiff intends to impute to Mr. Pientka the intent of the case agent who assembled the Woods File, this would also fail. First, just as with Mr. Pientka, Plaintiff fails to plead facts that would establish that the case agent intentionally violated § 1809. As noted above, OIG found no evidence of intentional misconduct by either the case agents or the supervisors who performed the Woods Procedures. Second, "government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Fazaga*, 965 F.3d at 1039 (quoting *Iqbal*, 556 U.S. at 676).

iii.     **Plaintiff Has Failed to Establish a Causal Connection Between Mr. Pientka's Alleged Conduct and Plaintiff's Alleged Injuries (Claims 1-4).**

Mr. Pientka joins and incorporates by reference the argument regarding the lack of a causal connection between Plaintiff's alleged injuries and the Defendants' alleged conduct set forth in the Somma Brief, Dkt. 63-1 at 18-20. Specifically as to Mr. Pientka, Plaintiff fails to allege facts that would plausibly connect Mr. Pientka's alleged failure to detect two errors in the Woods File to the reputational and financial harm that Plaintiff allegedly suffered. *See Byrne v. Clinton*, 410 F. Supp. 3d 109, 118 (D.D.C. 2019) (alleged reputational harms not fairly traceable to defendants where the complaint "is devoid of any allegedly defamatory statement actually *made* by [the defendants], or facts allowing the Court reasonably to infer a connection between those defendants and the allegedly defamatory statements allegedly made by . . . others"). At most, Plaintiff "can only speculate as to whether" the initial FISA application would have been submitted to the FISC had Mr. Pientka detected the errors in the Woods File and, had it been submitted without the alleged errors, whether the FISC would have authorized the initial FISA warrant. *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 413-14 (2013). By relying on such "guesswork," *id.* at 413, the complaint fails to adequately allege that Plaintiff's injuries are fairly traceable to Mr. Pientka's conduct. This, too, is grounds for dismissal.

C.     **Even if the FISA Claims Were Timely and Adequately Pled, Mr. Pientka Is Entitled to Dismissal of Claims 1-4 Under the FISA Safe Harbor or Qualified Immunity.**

Finally, the allegations in the Amended Complaint establish that Mr. Pientka is entitled to either the statutory defense under § 1809(b) or qualified immunity (discussed in Section III) for the FISA claims. Mr. Pientka joins and incorporates by reference the argument with respect to FISA's statutory safe harbor set forth in the Somma Brief, Dkt. 63-1 at 16. As discussed there, § 1809(b) establishes as a "defense to a prosecution under [§ 1809(a)] that the defendant was a law

enforcement or investigative officer engaged in the course of his official duties and the electronic surveillance was authorized and conducted pursuant to a search warrant or court order of a court of competent jurisdiction."  50 U.S.C. § 1809(b).  This defense applies equally to FISA's criminal and civil provisions.  *See* H.R. Rep. No. 95-1283, at 98 (1978) (explaining that because the criminal and civil provisions are coextensive, "the statutory good faith defense, though applicable, does not have to be restated" in the civil provision).  No court has ever held to the contrary.  Mr. Pientka was clearly engaged in the course of his official duties when he (as Plaintiff alleges) reviewed the Woods File, and the FISC ultimately authorized the initial FISA warrant.  Claims 1 through 4 should be dismissed for this additional reason.

## II.   The *Bivens* Claim (Claim 6) Against Mr. Pientka Must Be Dismissed.

Plaintiff's *Bivens* claim against Mr. Pientka should be dismissed for four separate and independent reasons:  ***First***, the claim is time-barred.  ***Second***, the claim would impermissibly extend *Bivens* to a new context.  ***Third***, Plaintiff has failed to plead facts that would establish a *Bivens* claims against Mr. Pientka.  ***Fourth***, Mr. Pientka is entitled to qualified immunity.

### A.   Plaintiff's *Bivens* Claim Is Time-Barred.

As discussed in Section I.A, Plaintiff was aware of the FISA surveillance and warrant that forms the gravamen of his claims against Mr. Pientka at least three years and 231 days before he filed his original complaint on November 27, 2020.  *See Loumiet v. United States*, 968 F. Supp. 2d 142, 150 (D.D.C. 2013) (a *Bivens* claim accrues "when the plaintiff knows or has reason to know of the harm" (quotation marks omitted)).  Mr. Pientka joins and incorporates by reference the generally applicable arguments regarding the statute of limitations for a *Bivens* claim as set forth in Section I.A of the Clinesmith Brief.  Dkt. 60-1 at 17-23.  In short, because Plaintiff filed his *Bivens* claim over three years after it accrued as to Mr. Pientka, it should be dismissed as time-barred, regardless of whether D.C.'s one-year or three-year limitations period applies.

**B.      Plaintiff's Claim Would Impermissibly Extend *Bivens* to a New Context.**

Mr. Pientka also joins and incorporates by reference the generally applicable *Bivens* arguments set forth in Sections I.B – I.C of the Clinesmith Brief.  Dkt. 60-1 at 23-33.  In summary, because the Supreme Court has never recognized a *Bivens* action for Fourth Amendment violations arising from a FISA application, Plaintiff's *Bivens* claim arises in a "new context."  More specific to Mr. Pientka, the Supreme Court has never recognized a *Bivens* action in the context of the Woods Procedure.  Numerous special factors "counsel hesitation" in expanding *Bivens* to this context, including FISA's comprehensive statutory scheme for remediating FISA violations and the national security and counterintelligence interests at play here.  The existence of alternative remedies further precludes the expansion of *Bivens* into this new context.  Plaintiff's *Bivens* claim against Mr. Pientka should be dismissed for these reasons as well.

**C.      Plaintiff Has Failed to Allege a *Bivens* Claim Against Mr. Pientka.**

Plaintiff's *Bivens* claim should also be dismissed under Rule 12(b)(6) for failing to adequately plead facts that, if proved, would establish a *Bivens* claim against Mr. Pientka.

"[A] *Bivens* claim is brought against the individual officer for his or her own acts, not the acts of others."  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017).  Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676; *see also Simpkins v. D.C. Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997) ("The complaint must at least allege that the defendant federal official was personally involved in the illegal conduct."); *Nw. Airlines, Inc. v. Fed. Aviation Admin.*, 795 F.2d 195, 203–04 (D.C. Cir. 1986) (a court may only redress injury "that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court"); *Ortiz-Contreras v. Holder*, 126 F. Supp. 3d 127, 130 (D.D.C. 2015) (dismissing action against individual defendants in part because the complaint "alleged no

facts that would support a claim that any of these Defendants were individually involved in the constitutional violations Plaintiff alleges"); *Corsi v. Mueller*, 422 F. Supp. 3d 51, 65-66 (D.D.C. 2019) (same).

As discussed in Section I.B.i, Plaintiff does not allege any facts connecting Mr. Pientka to the renewal FISA applications or warrants. Accordingly, Plaintiff plainly cannot establish that Mr. Pientka violated his Fourth Amendment rights, or caused him any damages, with respect to these three warrants.

Plaintiff also fails to establish a Fourth Amendment violation by Mr. Pientka with respect to the initial FISA warrant. *See also* Section I.B.ii. Mr. Pientka did not write the initial FISA application. Thus, Plaintiff does not and cannot allege that Mr. Pientka intentionally or recklessly included material false statements in, or intentionally or recklessly withheld material information from, the FISA application. *See Rainsberger v. Benner*, 913 F.3d 640, 647 (7th Cir. 2019) (discussing *Franks v. Delaware*, 438 U.S. 154, 168 (1978)).

Nor are we aware of any authority that a Fourth Amendment violation can be premised on a violation of the Woods Procedures. Even setting this aside, Plaintiff still fails to plausibly allege that Mr. Pientka intentionally or recklessly violated the Woods Procedures. *See* Section I.B.ii; OIG at 359 ("we did not find documentary evidence or testimonial evidence of intentional misconduct on the part of . . . the agents and supervisors who performed the Woods Procedures"); *Kapinski v. City of Albuquerque*, 964 F.3d 900, 908 (10th Cir. 2020) ("To establish recklessness, 'there must exist evidence that the officer in fact entertained serious doubts as to the truth of his allegations.'" (quoting *Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014)). Allegations of negligence do not give rise to a Fourth Amendment violation. *See, e.g.*, *Herring v. United States*, 555 U.S. 135, 145 (2009) ("In *Franks*, we held that police negligence in obtaining a warrant

18

did not even rise to the level of a Fourth Amendment violation . . . ."); *Paez v. Mulvey*, 915 F.3d 1276 (11th Cir. 2019) ("Intentional or reckless material misstatements or omissions in a warrant affidavit thus could violate the Fourth Amendment.  Negligent misstatements or omissions, on the other hand, do not." (citations omitted)).   Plaintiff's "talismanic" and "undifferentiated" allegations of the individual defendants' collective bad intent with respect to the FISA Warrants, *see* AC ¶ 245, are no more sufficient in the *Bivens* context than they are in the FISA context and do not compel a different outcome.  *See* Section I.B.ii.

Finally, just as with the FISA claims, Plaintiff fails to plausibly establish a causal connection between Mr. Pientka's alleged failure to detect two errors in the Woods File and the reputational and financial harm that Plaintiff allegedly suffered.  *See* Section I.B.iii.

**D.      Mr. Pientka Is Entitled to Qualified Immunity.**

As discussed in the following Section, Plaintiff's *Bivens* claim against Mr. Pientka should also be dismissed because Mr. Pientka is entitled to qualified immunity.

**III.    Mr. Pientka Is Entitled to Qualified Immunity Because Plaintiff Cannot Show a Violation of Clearly Established Rights.**

Even had Plaintiff timely and adequately stated either a FISA or a *Bivens* claim, those claims should nevertheless be dismissed because Mr. Pientka is entitled to qualified immunity. Qualified immunity protects public officials from civil liability so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To determine whether an official is entitled to qualified immunity, courts ask:  (1) whether the facts illustrate that the official violated the plaintiff's constitutional or statutory right; and (2) whether the right was clearly established law at the time of the alleged event such that "every reasonable officer would understand that what he is doing is unlawful."  *District of Columbia v. Wesby*, 138 S. Ct. 577, 589

(2018) (internal quotation marks omitted).  Plaintiff bears the burden of showing that the right was

clearly established based on existing precedent.  *Reichle v. Howards*, 566 U.S. 658, 664 (2012);

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Dukore v. District of Columbia*, 799 F.3d 1137,

1145 (D.C. Cir. 2015).

Plaintiff fails at each step of the qualified immunity analysis.  First, for the reasons

discussed above, Plaintiff has failed to allege that Mr. Pientka violated his rights under either FISA

or the Fourth Amendment.  Second, Plaintiff cannot demonstrate that his alleged constitutional

violation was clearly established.  No court has held that a failure to correctly complete the Woods

Procedure violates either the Fourth Amendment or FISA.

## CONCLUSION

For the reasons set forth above, Plaintiff's claims against Mr. Pientka should be dismissed

with prejudice.

Dated:   May 18, 2021

Respectfully submitted,

/s/ James M. Koukios
James M. Koukios
Vanshika Vij
Robin Smith
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, D.C. 20037
Phone:  (202) 887-1500
Fax:  (202) 887-0763
JKoukios@mofo.com
VVij@mofo.com
RSmith@mofo.com

*Attorneys for Joe Pientka III*