# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARTER PAGE,<br><br>          Plaintiff,<br><br>     v.<br><br>JAMES COMEY, ANDREW MCCABE, KEVIN CLINESMITH, PETER STRZOK, LISA PAGE, JOE PIENTKA III, STEPHEN SOMMA, BRIAN J. AUTEN, DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION, UNITED STATES OF AMERICA, JOHN DOES 1-10, JANE DOES 1-10,<br><br>          Defendants. | No. 20-cv-03460 (KBJ) |

# DEFENDANT BRIAN J. AUTEN'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

Patrick F. Linehan (D.C. Bar No. 472183)
Brian M. Heberlig (D.C. Bar No. 455381)
James M. Hobbs (D.C. Bar No. 1031106)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC  20036-1795
Tel: (202) 429-3000
Fax: (202) 429-3902
plinehan@steptoe.com
bheberlig@steptoe.com
jhobbs@steptoe.com


*Counsel for Defendant Brian J. Auten*

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

STANDARD OF REVIEW ................................................................................................. 6

ARGUMENT ...................................................................................................................... 7

I.      Plaintiff's *Bivens* Claim (Count 6) Must Be Dismissed as to Auten ................................. 7

      A.      Plaintiff Fails to Plead a Timely *Bivens* Claim ........................................... 7

      B.      Plaintiff's *Bivens* Claim Against Auten Is An Unwarranted Extension of *Bivens* .................................................................................... 9

            1.      Plaintiff Extends *Bivens* To An Entirely New Category of Defendants: Intelligence Analysts ............................................... 9

            2.      Auten's Foreign Intelligence Responsibilities Are "Special Factors" That Counsel Hesitation in Expanding *Bivens* ......................... 10

II.     The FISA Claims (Counts 1-4) Against Auten Must be Dismissed ................................. 11

      A.      Plaintiff Fails to Allege That Information Obtained By Electronic Surveillance of Him Was "Disclosed or Used" By Auten ........................................................... 11

      B.      The Complaint Fails To Allege that Auten "Engaged in Electronic Surveillance," Intentionally or Otherwise ................................................................... 12

III.    Auten is Entitled to Qualified Immunity From All Claims Because Plaintiff Cannot Show a Violation of Clearly Established Fourth Amendment or FISA Right ........................... 17

CONCLUSION .................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. al-Kidd,*
   563 U.S. 731 (2011)............................................................................................17, 18

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..............................................................................................6, 14

*Bame v. Dillard,*
   No. CV 05-1833 (RMC), 2008 WL 11515525 (D.D.C. Mar. 28, 2008) ...................8

*Banneker Ventures, LLC v. Graham,*
   798 F.3d 1119 (D.C. Cir. 2015)................................................................................3

* *Berman v. Crook,*
   293 F. Supp. 3d 48 (D.D.C. 2018) ...........................................................................8

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
   403 U.S. 388 (1971).......................................................................................... *passim*

*Broidy Cap. Mgmt. LLC v. Muzin,*
   No. 19-cv-150, 2020 WL 1536350 (D.D.C. Mar. 31, 2020) ...................................13

*Carlson v. Green,*
   446 U.S. 14 (1980)..................................................................................................10

*Correctional Services Corp. v. Malesko,*
   534 U.S. 61 (2001)....................................................................................................9

*Davis v. Passman,*
   442 U.S. 228 (1979)................................................................................................10

*Doe v. Rumsfeld,*
   683 F.3d 390 (D.C. Cir. 2012).................................................................................11

*Dukore v. Dist. of Columbia,*
   799 F.3d 1137 (D.C. Cir. 2015)...............................................................................17

* *Fazaga v. FBI,*
   965 F.3d 1015 (9th Cir. 2020) .................................................................................13

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,*
   529 U.S. 120 (2000)................................................................................................14

*Franks v. Delaware,*
    438 U.S. 154 (1978)............................................................................................18

*Greenpeace, Inc. v. Dow. Chem. Co.*,
    97 A.3d 1053 (D.C. 2014) ...................................................................................7

*Griffin v. Oceanic Contractors, Inc.*,
    458 U.S. 564 (1982)......................................................................................14, 15

*Haig v. Agee,*
    453 U.S. 280 (1981)............................................................................................11

*Hampton v. Comey,*
    No. 14-cv-1607 (ABJ), 2016 WL 471277 (D.D.C. Feb. 8, 2016) ...........................7

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982)............................................................................................17

*Hettinga v. United States*,
    677 F.3d 471 (D.C. Cir. 2012).............................................................................6

*Johnson v. Commission on Presidential Debates,*
    202 F. Supp. 3d 159 (D.D.C. 2016), *aff'd*, 869 F.3d 976 (D.C. Cir. 2017)...........16

*Kaempe v. Myers*,
    367 F.3d 958 (D.C. Cir. 2004).........................................................................6, 7

*Kelley v. FBI,*
    67 F. Supp. 3d 240 (D.D.C. 2014)......................................................................13

*Kerns v. United States,*
    No. 07-15769, 2009 WL 226207 (9th Cir. Jan. 28, 2009)....................................16

* *Loumiet v. United States,*
    948 F.3d 376 (D.C. Cir.), *cert. denied*, 141 S. Ct. 180 (2020) ..........................9, 10

*Loumiet v. United States,*
    968 F. Supp. 2d 142 (D.D.C. 2013) .................................................................7, 8

*Meshal v. Higgenbotham,*
    804 F.3d 417 (D.C. Cir. 2015)............................................................................11

*Mittleman v. United States,*
    104 F.3d 410 (D.C. Cir. 1997)..............................................................................7

*Nat'l Treasury Emps. Union v. Chertoff,*
    452 F.3d 839 (D.C. Cir. 2006)............................................................................15

*Richardson v. Sauls*,
    319 F. Supp. 3d 52 (D.D.C. 2018) ............................................................6

*Slovinec v. Georgetown Univ.*,
    268 F. Supp. 3d 55 (D.D.C. 2017) ............................................................3

*Smith v. City of Jackson, Miss.*,
    544 U.S. 228 (2005) ...............................................................................15

*Strumsky v. Washington Post Co.*,
    842 F. Supp. 2d 215 (D.D.C. 2012) ..........................................................3

*Toumazou v. Turkish Republic of North Cyprus*,
    71 F. Supp. 3d 7 (D.D.C. 2014) .............................................................14

*United States v. Gonzalez*,
    922 F.2d 1044 (2d Cir. 1991) ...................................................................5

*United States v. Kelley*,
    36 F.3d 1118 (D.C. Cir. 1994) .................................................................5

*United States v. Koyomejian*,
    946 F.2d 1450 (9th Cir. 1991) ...............................................................13

*Wallace v. Kato*,
    549 U.S. 384 (2007) .................................................................................7

* *Wilson v. Libby*,
    535 F.3d 697 (D.C. Cir. 2008) ...............................................................11

* *Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) ........................................................................9, 11

**Statutes**

18 U.S.C. § 1512 .............................................................................................5

28 U.S.C. § 2680(h) ......................................................................................15

50 U.S.C. § 1801 *et seq.* ......................................................................*passim*

50 U.S.C. § 1809 ................................................................................*passim*

50 U.S.C. § 1809(a) ...........................................................................*passim*

50 U.S.C. § 1809(a)(2) .......................................................................*passim*

50 U.S.C. § 1809(b) ...........................................................................*passim*

50 U.S.C. § 1810 ................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 6

Federal Tort Claims Act ....................................................................................... 15

Stored Communications Act ................................................................................ 13

**Other Authorities**

Ellen Nakashima, Devlin Barrett, and Adam Entous, *FBI Obtained FISA Warrant to Monitor Former Trump Advisor Carter Page*, WASH. POST (Apr. 11, 2017), https://www.washingtonpost.com/world/national-security/fbi-obtained-fisa-warrant-to-monitor-former-trump-adviser-carter-page/2017/04/11/620192ea-1e0e-11e7-ad74-3a742a6e93a7_story.html. ............................................................ 8

Office of the Inspector General, U.S. Department of Justice, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* (Dec. 9, 2019), https://www.justice.gov/storage/120919-examination.pdf .............................................................................................. *passim*

U.S. Const. amend. IV ......................................................................................... *passim*

U.S. Office of Personnel Management, *Position Classification Standard Flysheet for Intelligence Series, GS-013*2, https://www.opm.gov/policy-data-oversight/classification-qualifications/classifying-general-schedule-positions/standards/0100/gs0132.pdf ...................................................................... 16

## INTRODUCTION

Brian J. Auten is a career civil servant who served as an FBI Supervisory Intelligence Analyst assigned by FBI leadership, due to his Russia expertise, to the Crossfire Hurricane investigation into allegations of the Trump Campaign's involvement in Russian interference in the 2016 election.  He was not, and never has been, a political appointee or member of the FBI's executive leadership.  In his nearly 20 years at the FBI, Auten has protected the American public and its institutions by analyzing information, exercising judgment, and making recommendations to support decision-makers to identify and mitigate potential threats.  His role in the intelligence analysis process has never involved drafting, approving, or signing any materials provided to the FISC.  He is not an attorney and he has not appeared before the FISC or signed any affidavits submitted to that court.  He also has no legal authority to execute searches or seize evidence.  His responsibilities, and the limitations on those responsibilities, were no different during the Crossfire Hurricane investigation.  Auten was at or near the bottom of the chain of command at all times during the course of the Crossfire Hurricane investigation.[1]

Yet, Plaintiff Carter Page ("Plaintiff") seeks to impose unsupported and unprecedented liability against Auten, under both *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801, *et seq*. ("FISA"), for Page having been subject to electronic surveillance under FISA as part of the Crossfire Hurricane investigation.  Aside from conclusory and undifferentiated allegations against the "Defendants" and formulaic recitations of the elements of the claims, Plaintiff asserts only threadbare allegations regarding the analytical work done by Auten on which others actually

---

[1] *See* Horowitz Report at 81-83 (showing position of "Supervisory Intel Analyst" at the three different phases of the Crossfire Hurricane investigation).

responsible for the FISA applications allegedly relied.  But none of Auten's alleged conduct included any direct involvement in electronic surveillance of the type covered by FISA or any false or incomplete statement made by him to the FISA court.  Moreover, there is not a single factual allegation supporting the claim that Auten's alleged conduct was reckless or even negligent, let alone intentional as required for private actions under FISA.  For good reason, federal courts have not imposed liability on government officials in similar circumstances.  Accordingly, Plaintiff's claims against Auten, for the reasons discussed in more detail herein and in the motion to dismiss submitted by Defendant Kevin E. Clinesmith ("Clinesmith Motion"), should be dismissed in their entirety.

## **<u>BACKGROUND</u>**

In light of the number of Defendants, a common set of factual circumstances, and the number of generally applicable questions of law, Auten joins and incorporates by reference the statutory and regulatory background described in the Clinesmith Motion, Dkt. 60-1 at 2-8.  Below, however, this motion addresses allegations that are unique to the specific claims asserted against Auten.

As a preliminary matter, the Complaint includes very few specific allegations regarding Auten.  The allegations contained in the Complaint draw extensively on selected portions of public documents, including a December 2019 DOJ Office of the Inspector General report entitled *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* ("Horowitz Report" or "Report"), "the analysis from the Senate Select Committee on Intelligence, findings in Special Counsel Mueller's Report, and rulings of the Foreign Intelligence Surveillance Court ("FISC")."[2]  Am. Compl. ¶ 38 (Dkt. 51).  However, despite the massive volume of available

---

[2] While a court generally will not consider evidence extrinsic to the complaint when considering a motion to dismiss, it can and should consider factual findings contained in the

information, less than one and a half pages of the 59-page Complaint specifically mention Auten. Am. Compl. ¶¶ 146-152.  Aside from this brief section, and the identification of Auten as one of the Defendants, *see id*. ¶ 30, Auten's name appears nowhere else in the body of the Complaint, despite numerous allegations attributed to the undifferentiated group of "Defendants."

Plaintiff's general allegations and those applicable to all "Defendants" are aptly summarized in Section II of the Clinesmith Motion, Dkt. 60-1 at 8-14, which this Motion incorporates by reference.  However, as to Auten specifically, the allegations are scant, and fail to place him anywhere near the ambit of *Bivens* or FISA liability.  The Complaint alleges only that Auten:

- "[S]erved as a supervisory intelligence analyst in the FBI," as well as worked as "an adjunct professor and writer on spying ethics" (Am. Compl. ¶¶ 30, 146);

- "[W]as assigned to the Crossfire Hurricane investigation from its inception in July 2016 and supervised its analytical efforts throughout 2017," and "played a key supportive role for the agents preparing the FISA applications, including reviewing the probable-cause section of the applications," "providing the agents with information about Steele's sub-sources noted in the applications," and "help[ing] prepare and review the renewal drafts" (*id*. ¶ 147);

- "[A]ssisted the case agents in providing information on the reliability of Steele and his sources and reviewing for accuracy their information cited in the body of the applications, as well as all the footnotes," and that "[h]is job was also to fill gaps in the FISA applications or bolster weak areas" (*id*. ¶ 148);

- "[F]alsely enhanced the credibility of Steele," an alleged "Confidential Human Source" whose information helped form the basis of the FISA

Horowitz Report, given how integral that Report is to the Complaint.  *See Slovinec v. Georgetown Univ.*, 268 F. Supp. 3d 55, 59 (D.D.C. 2017); *Strumsky v. Washington Post Co.*, 842 F. Supp. 2d 215, 217-18 (D.D.C. 2012).  In doing so, Auten's motion to dismiss need not be converted into one for summary judgment.  *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015).  Moreover, in treating the Horowitz Report as part of the Complaint for purposes of this Motion, Auten neither admits, denies, agrees with, or proclaims direct knowledge of any particular finding and conclusions therein.

applications, and that "[w]hile most of Steele's past reporting as an informant for the FBI had not been corroborated and had never been used in a criminal proceeding, Auten wrote that it had in fact been 'corroborated and used in criminal proceedings'" (*id.* ¶ 149);

- "[F]ailed to disclose to the FISC negative feedback from British Intelligence Service colleagues of Steele," who "told Auten during a visit he made to London in December 2016 that Steele exercised 'poor judgment' and pursued as sources 'people with political risk but no intel value'" (*id.* ¶ 150);

- "[D]etermined that some of the allegations in Steele's reports were inaccurate, such as the allegation that Paul Manafort used Dr. Page as an intermediary," but "did not include this information in any of the applications for the FISA Warrants" (*id.* ¶ 151);

- "[I]dentified issues with Steele's sub-sources," that he "knew of, and met, with Steele's Primary Sub-source … and knew that [the Primary Sub-source] was based in the United States, yet intentionally misrepresented or failed to correct the statement in the applications for the Third and Fourth FISA Warrants that [the primary Sub-source] was Russia-based" (*id.* ¶ 152); and

- "[W]hile f[inding] [the primary Sub-source] to be truthful and cooperative, … also found that [the primary Sub-source] contradicted key claims in Steele's reports," and that "[e]ven though Auten knew Steele was working for the Clinton campaign by early January 2017, he did not seek to include this information in the applications for the Third and Fourth FISA Warrants" (*id.*).

Moreover, although the Complaint draws numerous allegations from the Horowitz Report, it does so selectively, omitting a number of critical facts that contradict the allegations against Auten in the Complaint.  For example, the Complaint fails to note several important findings in the Report:

- Auten wrote that Steele's past reporting was corroborated and used in past criminal proceedings *in an intelligence memorandum entirely unrelated to the FISA application process*, and that the language at issue was borrowed from the memorandum for use in the FISA application by others.  *See, e.g.*, Horowitz Report at 161.

- Steele's reporting in fact provided leads to the FBI in its FIFA investigation, which Auten understood to be a "criminal proceeding" at the time he wrote the statement. *See, e.g.*, *id*. at 162.[3]

- Auten documented each of the facts regarding the Primary Sub-source that are alleged to have been omitted from the FISA applications in multiple internal memoranda received by those more directly involved in the FISA application process. *See, e.g.*, *id*. at 211 (noting that Auten drafted a lengthy summary of the January 2017 interview in which the Primary Sub-source made statements that contradicted Steele).

Moreover, the Complaint is more notable for what it does ***not*** allege as to Auten.  In particular, it

does not allege anywhere that Auten:

- Had any direct involvement in the implanting of any instrument of electronic surveillance allegedly used on Plaintiff;

- Listened in on or otherwise observed Plaintiff communicating with anyone else through any such instrument of electronic surveillance;

- Signed or otherwise affirmed to the FISA court the accuracy or completeness of any of the four FISA applications at issue, or for that matter made ***any*** representation to the FISA court in connection with any of the four applications;

- Had any responsibility to ensure the accuracy or completeness of, or for the final approval of, any of the four FISA applications; or[4]

- Had any understanding as to what information is material enough to require disclosure in a FISA application.

---

[3] Indeed, Auten's understanding of "criminal proceeding" was consistent with that of multiple federal courts of appeal.  *Compare* Horowitz Report at 162*, with, e.g., United States v. Kelley*, 36 F.3d 1118, 1128 (D.C. Cir. 1994) (noting that grand jury investigation is "official proceeding" under 18 U.S.C. § 1512), *and United States v. Gonzalez*, 922 F.2d 1044, 1056 (2d Cir. 1991) (narcotics investigation an "official proceeding" under § 1512).

[4] As described in the Horowitz Report, the FBI's verification of the accuracy and completeness of FISA applications is governed by a set of procedures known as "Woods Procedures."  Horowitz Report at 42.  That process is undertaken by the case agent seeking the FISA application, and does not assign any responsibility to FBI intelligence personnel.  *Id.* at 43-44.

In addition, the Complaint fails to identify any information obtained through the alleged electronic surveillance of Plaintiff that was "disclosed" or "used" by Auten in any way.  And it fails to allege any fact evidencing that Auten's alleged conduct was intended to evade the requirements under FISA.

## STANDARD OF REVIEW

Rule 12(b)(6) provides a vehicle for parties to challenge the sufficiency of a complaint on the ground that it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Plaintiffs must offer "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Although the Court must "assume the[ ] veracity" of any "well-pleaded factual allegations," *id.* at 679, the Court need not accept "legal conclusions cast as factual allegations," or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint."  *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012).  Moreover, "'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (citation omitted).

Moreover, "[i]n deciding a motion under Rule 12(b)(6), a court may consider not only the allegations in the complaint," but also "documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice," *Richardson v. Sauls*, 319 F. Supp. 3d 52, 61 (D.D.C. 2018), and need not "accept as true the

complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice." *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004).

## ARGUMENT

I.     **Plaintiff's *Bivens* Claim (Count 6) Must Be Dismissed as to Auten**

As explained below, Plaintiff's *Bivens* claims against Auten fail in several respects. *First*, Plaintiff has failed to state his *Bivens* claim within any of the potentially applicable statute of limitations periods. *Second*, even if Plaintiff has made a timely claim, his *Bivens* claim presents the Court with a stark new context, and one that special factors weigh heavily against. *Third*, even if the Court were to permit Plaintiff to pursue his *Bivens* action, he has failed to allege that Auten personally participated in the Fourth Amendment violation he claims to have injured him.

### A.     **Plaintiff Fails to Plead a Timely *Bivens* Claim**

As to whether Plaintiff's *Bivens* claim is time-barred, Auten joins and incorporates by reference the authorities and arguments set forth in the Clinesmith Motion, Dkt. 60-1, at 15-23. As argued in that Motion, the statute of limitations for Plaintiff's *Bivens* claim derives from analogous applicable state (here, D.C.) law—specifically, it derives from the 1-year period that applies to actions grounded in libel, slander, or invasion of privacy under D.C. law. *See* Clinesmith Motion, Dkt. 60-1 at 17-20 (libel); *see also Greenpeace, Inc. v. Dow Chem. Co.*, 97 A.3d 1053, 1061-62 (D.C. 2014) (invasion of privacy); *Mittleman v. United States*, 104 F.3d 410, 415-16 (D.C. Cir. 1997) (same). "However, while state law provides the applicable statute of limitations, federal law controls when a *Bivens* claim accrues." *Hampton v. Comey*, No. 14-cv-1607 (ABJ), 2016 WL 471277, at *13 (D.D.C. Feb. 8, 2016) (quoting *Loumiet v. United States*, 968 F. Supp. 2d 142, 150 (D.D.C. 2013) ("*Loumiet I*"), citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).

Under federal law, a *Bivens* claim accrues when a plaintiff has "'a complete and present cause of action.'" *Id.* (citation omitted). Because Plaintiff asserts that Auten violated his Fourth

Amendment rights by engaging in electronic surveillance without a properly authorized warrant, Plaintiff's claim necessarily accrued when he first learned that he was being surveilled.  *See Loumiet I*, 968 F. Supp. 2d at 150.  Thus, for the *Bivens* claim to be timely, Plaintiff must have first learned that he was being surveilled no earlier than November 28, 2019, one year before the date of his filing of the Complaint.

Plaintiff's Complaint comes too late.  While Plaintiff makes no assertion regarding when he learned of the surveillance, it is clear from the Complaint that he was aware of the FBI's surveillance of him at least as early as April 2017.  *See* Am. Compl. ¶ 184 (describing an April 11, 2017 *Washington Post* article reporting both on the nature of and investigators' basis for the FISA warrants at issue).  Indeed, the article quotes Plaintiff as admitting as much: "***This confirms all of my suspicions about unjustified, politically motivated government surveillance***."[5]  Plaintiff cannot evade the applicable statute of limitations having sat idly on his claim for over three years.  *See Bame v. Dillard*, No. CV 05-1833 (RMC), 2008 WL 11515525, at *3 (D.D.C. Mar. 28, 2008) (dismissing claims with prejudice where plaintiffs "offered no reason for failing to institute this action years earlier, which would have enabled them to ascertain the identities of the 'unknown' defendants well before the limitations period ran").[6]  Plaintiff's *Bivens* claim must therefore be dismissed as time-barred.

---

[5] *See* Ellen Nakashima, Devlin Barrett, and Adam Entous, *FBI Obtained FISA Warrant to Monitor Former Trump Advisor Carter Page*, WASH. POST (Apr. 11, 2017), https://www.washingtonpost.com/world/national-security/fbi-obtained-fisa-warrant-to-monitor-former-trump-adviser-carter-page/2017/04/11/620192ea-1e0e-11e7-ad74-3a742a6e93a7_story.html.

[6] Even if the 3-year statute of limitations that a court in this district has applied to *physical* searches, *see Berman v. Crook*, 293 F. Supp. 3d 48, 56 (D.D.C. 2018), were to apply here (which it does not), Plaintiff's claims would fail to meet even this longer limitations period.

**B.      Plaintiff's *Bivens* Claim Against Auten Is An Unwarranted Extension of *Bivens***

Even if not time-barred, Plaintiff's *Bivens* claim, as argued in the Clinesmith Motion incorporated herein by reference, would impermissibly extend *Bivens*, a judicially created implied right of action, into a new context not permitted under *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001) and *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017).  *See* Clinesmith Motion, Dkt. 60-1 at 15-16, 23-25.  Indeed, it would be especially inappropriate to extend a *Bivens* action to Auten, who, as an FBI intelligence analyst, represents a category of defendants against whom *Bivens* has ***never*** been applied, and who works in an occupational field into which courts have roundly rejected extending *Bivens*.

**1.      Plaintiff Extends *Bivens* To An Entirely New Category of Defendants: Intelligence Analysts**

A "new category of defendants" suffices to establish a "new context" warranting dismissal of a *Bivens* claim.  *Loumiet v. United States*, 948 F.3d 376, 381 (D.C. Cir. 2020) ("*Loumiet II*"), *cert. denied*, 141 S. Ct. 180 (2020).  In *Loumiet II*,  the D.C. Circuit declined to extend *Bivens* to four officials of the Office of Comptroller of Currency (OCC) in spite of allegations that each were integral to initiating an improper OCC enforcement action against the plaintiff.  *Id.*  Auten should prompt no different outcome.  Even assuming that the Complaint contains allegations that would allow the Court to plausibly conclude that Auten was integral to the alleged improper surveillance of Plaintiff, which it does not, the Complaint makes clear that Auten is an "analyst" in the FBI who served in a supervisory intelligence role throughout 2017, and in support of FBI case agents.  Am. Compl. ¶¶ 146-149.  This position plainly does not align with that of defendants before the *Bivens* court, nor in any subsequent case extending *Bivens*.[7]

---

[7] As the Court recognized in *Loumiet II*, *Bivens* has only been extended beyond the defendants in that case (federal narcotics agents) to two other defendant categories: (1) federal

2.  **Auten's Foreign Intelligence Responsibilities Are "Special Factors" That Counsel Hesitation in Expanding *Bivens***

For the reasons set forth in the Clinesmith Motion, special factors counsel hesitation in expanding *Bivens* to the new context the Complaint presents, including the incompatibility of a *Bivens* claim with FISA's comprehensive statutory scheme (Clinesmith Motion, Dkt. 60-1 at 25-29), and national security and intelligence concerns at issue in the Complaint (*id*. at 29-31).[8]  The national security and intelligence concerns highlighted in the Clinesmith Motion apply with even greater force to Auten, whose responsibilities almost exclusively related to national security and foreign intelligence.  As a Supervisory Intelligence Analyst, Auten was squarely focused on making intelligence assessments in connection with the investigation.  The allegations in the Complaint do not allege otherwise.  Indeed, the Complaint describes his role in terms of intelligence analysis, *id.* ¶¶ 146-148, and refers to statements allegedly attributable to Auten that were included in an "Intelligence Memorandum," *id.* ¶ 149, Horowitz Report at 161.  Even the conclusory allegations regarding Auten's alleged omissions suggest that Plaintiff's claim against him was borne out of what Plaintiff views as flawed *intelligence* assessments.  *Id*. ¶¶ 149-152.

Allowing the private right of action under *Bivens* to extend to members of the intelligence community dealing with sensitive issues of national security would contravene an abundance of caselaw cautioning against this precise application.  For instance, in *Wilson v. Libby*, 535 F.3d 697 (D.C. Cir. 2008), the D.C. Circuit deemed the "judicial intrusion" and public scrutiny into national

---

prison officials, *Carlson v. Green*, 446 U.S. 14, 19 (1980), and (2) former members of Congress, *Davis v. Passman*, 442 U.S. 228, 248-49 (1979).  *See Loumiet II*, 948 F.3d at 382 (citing *Carlson* and *Davis*).

[8] Auten also incorporates by reference the argument made in the Clinesmith Motion that adequate alternative remedies offered by the Patriot Act, Wiretap Act and Stored Communication Act provide further reason not to extend *Bivens* to this new context.  *See* Clinesmith Motion, Dkt. 60-1 at 32-33.

security and intelligence that would be required to adjudicate a *Bivens* claim against Executive

Branch officials as a special factor cautioning against allowing a *Bivens* action.  *Id.* at 710; *see*

*also Abbasi*, 137 S. Ct. at 1861 (rejecting *Bivens* action in part because the action would necessarily

require "an inquiry into sensitive issues of national security"); *Meshal v. Higgenbotham*, 804 F.3d

417, 425-26 (D.C. Cir. 2015) ("[S]pecial factors counseling hesitation have foreclosed *Bivens*

remedies in cases involving the military, national security or intelligence.") (internal quotations

and citation omitted); *Doe v. Rumsfeld*, 683 F.3d 390, 395 (D.C. Cir. 2012) ("In the context of

national security and intelligence, the Court has cautioned that '[m]atters intimately related to . . .

national security are rarely proper subjects for judicial intervention.'") (quoting *Haig v. Agee*, 453

U.S. 280, 292 (1981)).  These concerns are manifest with respect to the claims against Auten, given

his sensitive responsibilities as an intelligence analyst, and warrant dismissal of Count 6.

## II.     The FISA Claims (Counts 1-4) Against Auten Must be Dismissed

Plaintiff's FISA claims against Auten must also be dismissed.  *First*, for the reasons

discussed in the Clinesmith Motion and incorporated here by reference, Plaintiff's FISA claims

are time-barred.  *See* Clinesmith Motion Dkt. 60-1 at 38-39.  *Second*, the Complaint does not

adequately allege that Auten "engaged in electronic surveillance" of Plaintiff, or that he "disclosed

or used" information obtained through such alleged surveillance.  The arguments below address

this second basis for dismissal as applied specifically to Auten.

### A.     Plaintiff Fails to Allege That Information Obtained By Electronic
         Surveillance of Him Was "Disclosed or Used" By Auten

To bring a private cause of action under 50 U.S.C. § 1810, a plaintiff must allege that

information obtained by electronic surveillance of him has been disclosed or used in violation of

§ 1809.  50 U.S.C. § 1810; *see also id.* § 1809(a)(2).[9]  Plaintiff, however, fails to allege that any information was disclosed or used by any Defendant, let alone by Auten, and instead focus exclusively on *the fact of Defendants' alleged electronic surveillance of him.*  Plaintiff's description of his alleged damages confirms this, as he alleges, without reference to any private fact exposed as a result of the alleged surveillance, that "[h]e was falsely portrayed as a traitor to his country, lost at least tens of millions of dollars of business opportunities and future lifetime earning potential, and has suffered and will continue to suffer mental and emotional pain for his lifetime."  Am. Compl. ¶¶ 222, 226; *see also id.* ¶ 214.  These are all harms clearly sounding in the disclosure of ***the fact that he was surveilled***, and not in the disclosure or use of any information obtained through such surveillance.  Plaintiff has thus failed to state a "disclose or use" claim under § 1810.[10]

## B.   The Complaint Fails To Allege that Auten "Engaged in Electronic Surveillance," Intentionally or Otherwise

Plaintiff's claim that Auten "engaged in electronic surveillance" fares no better.  Auten joins and incorporates by reference the argument regarding the proper reading of the phrase "engages in electronic surveillance" as set forth in the Clinesmith Motion, Dkt. 60-1 at 39-43.  As that Motion argues, FISA defines "engages in electronic surveillance" as covering "the acquisition" of information "by an electronic, mechanical, or other surveillance device" and "the installation or use of an electronic, mechanical, or other surveillance device."  50 U.S.C. § 1801(f).

---

[9] Indeed, some courts have recognized that "civil liability [under FISA] must be premised on a prior criminal conviction under the Act."  *Lampon-Paz v. Dep't of Justice*, No. 16-9071 (KM) (JBC), 2019 WL 2098831, at *7 (D.N.J. May 14, 2019); *see also Wikimedia Found. v. NSA/Cent. Sec. Serv.*, 335 F. Supp. 3d 772, 785 (D. Md. 2018) (reiterating that "§ 1810 is intended to track an individual agent's criminal liability").

[10] Notably, Plaintiff does not allege that any information obtained through any of the first three FISA warrants served as a basis for the applications for the subsequent warrants.

Under a common sense reading of this definition, liability under § 1809 (and, by extension, § 1810) is limited to only those individuals who "engage" in surveillance by participating in the actual "acquisition" of intelligence or "installation of use of" devices used to collect intelligence. *Clinesmith Motion*, Dkt. 60-1 at 40.  Moreover, persons held liable under §§ 1809 and 1810 for engaging in improper electronic surveillance also must have done so ***intentionally*** with respect to each element under § 1809(a).  *Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019); *see also Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011) ("when Congress creates a federal tort it adopts the background of general tort law . . . [i]ntentional torts such as this, as distinguished from negligent or reckless torts . . . generally require that the actor intend ***the consequences*** of an act, not simply the act itself") (emphasis added) (internal quotations and citation omitted).

In Auten's case, the Complaint does not allege any facts suggesting that Auten participated in the acquisition of intelligence or the "installation or use of" devices to collect intelligence, as the plain meaning of the terms in that phrase dictates.  Nor is there any allegation that Auten "performed" the electronic surveillance,[11] "ordered or arranged for" the planting of the [surveillance] devices,"[12] or himself "accessed" the device targeted by the surveillance at issue.[13]  Moreover, the Complaint alleges no facts even raising *an inference* that Auten engaged in any of the conduct alleged against him intentionally.  *See Kelley v. FBI*, 67 F. Supp. 3d 240, 257 (D.D.C.

---

[11] *See United States v. Koyomejian*, 946 F.2d 1450, 1459 n.16 (9th Cir. 1991) ("50 U.S.C. § 1809(a) is best understood as subjecting to criminal liability anyone who ***performs*** electronic surveillance as defined by FISA . . . .") (emphasis added).

[12] *See Fazaga v. FBI*, 965 F.3d 1015, 1039 (9th Cir. 2020) (dismissing FISA claims against defendants that supervised defendants engaged in FISA violation but neither "ordered [n]or arranged for" the "planting of the recording devices" at issue).

[13] *See Broidy Cap. Mgmt. LLC v. Muzin*, No. 19-cv-150 (DLF), 2020 WL 1536350, at *11 (D.D.C. Mar. 31, 2020) (reading similar language in the Stored Communications Act as applying only to those defendants who "themselves accessed [plaintiff's] computer systems").

2014) (holding that use of "the talismanic words 'willful' and 'intentional' . . . cannot satisfy plaintiff['s] pleading burden because they are nothing more than 'labels, conclusions, and a formulaic recitation of the elements of a cause of action"). Without alleging any facts beyond those allegations that "'lump[] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct,'" *Toumazou v. Turkish Republic of North Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014) (citation omitted), Plaintiff falls far short of stating a FISA claim against Auten. *See also Iqbal*, 556 U.S. at 678 ("[A] formulaic recitation of the elements of a cause of action will not do.'") (citation omitted).[14]

Moreover, as the Clinesmith Motion argues, the scope of FISA's safe harbor, 50 U.S.C. § 1809(b), demonstrates the limited reach of § 1809(a) (and by extension the private right of action under § 1810). Subsection (b)'s reference to "law enforcement or investigative officers" is a strong indication that the scope of liability under Section 1809(a) is limited to that category of individuals —"law enforcement or investigative officer"—as it would be illogical to protect only some individuals where the electronic surveillance was "authorized by and conducted pursuant to a search warrant or court order of a court of competent jurisdiction," but not others in that same scenario. *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("A court must therefore interpret the statute 'as a symmetrical and coherent regulatory scheme," and 'fit, if possible, all parts into an harmonious whole.'") (citations omitted); *see also Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute

---

[14] Moreover, as noted in footnote 3 *supra*, Auten's allegedly untrue statement in an intelligence memorandum, which another individual inserted into the first FISA application, that Steele's information was "corroborated and used in criminal proceedings," Am. Compl. ¶ 149, reflected a reasonable interpretation of "criminal proceeding" as a matter of law. Because this statement is the only allegation attributed to Auten that relates to the first FISA application, Count 1 fails to state a claim against Auten and should be dismissed for that reason alone.

which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.")*. The only common-sense reading of this scheme is that the scope of Section 1809(b)'s safe harbor is co-extensive with the scope of liability under §§ 1809(a) and 1810.

Although FISA does not define "law enforcement or investigative officer," 50 U.S.C. § 1801, Chapter 119 of Title 18, which governs the interception of wire and electronic communications, defines that identical term as "any officer of the United States or of a State or political subdivision thereof, who is *empowered by law to conduct investigations* of or to make arrests for offenses enumerated in this chapter, and any attorney authorized by law to prosecute or participate in the prosecution of such offenses." 18 U.S.C. § 2510(7) (emphasis added). Similarly, the Federal Tort Claims Act defines "investigative or law enforcement officer"—as "any officer of the United States who is *empowered by law* to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h) (emphasis added). Given the identical (or near identical) terminology and overlapping concerns of these laws, Congress likely intended the same general meaning to apply to "law enforcement or investigative officer" as used in FISA—*i.e.*, an individual empowered by law to conduct investigations and gather evidence through formal legal mechanisms. *See Nat'l Treasury Emps. Union v. Chertoff*, 452 F.3d 839, 857 (D.C. Cir. 2006) ("There is a presumption that Congress uses the same term consistently in different statutes."); *see also Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233 (2005) (emphasizing the "premise that when Congress uses the same language in two statutes having similar purposes . . . it is appropriate to presume that Congress intended that text to have the same meaning in both statutes.").

When read this way, Auten would not qualify as a "law enforcement or investigative officer" under § 1809; he is an FBI intelligence ***analyst***, and as such he is not empowered by law to conduct investigations, execute searches or seize evidence.[15] *See also Kerns v. United States*, No. 07-15769, 2009 WL 226207, at *1 (9th Cir. Jan. 28, 2009) ("[A] plain reading of the statutory definition of "investigative or law enforcement officer" indicates that the intelligence analyst defendants are not such officers."). And because § 1809(a) is most fairly read as covering only individuals in the category more expressly identified in § 1809(b), the Complaint thus cannot establish that Auten "engaged in electronic surveillance" under FISA.[16]

In sum, because civil liability under §§ 1809 and 1810 does not reach analysts like Auten who, unlike "law enforcement and investigative officers," have no legal authority to conduct

---

[15] The Office of Personnel Management ("OPM") Position Classification Standards, which the Court can take judicial notice of, *Johnson v. Commission on Presidential Debates*, 202 F. Supp. 3d 159, 167 (D.D.C. 2016), *aff'd*, 869 F.3d 976 (D.C. Cir. 2017), is instructive on the distinction between analysts and law enforcement and investigative officers. Auten is a GS-0132 series employee. GS-0132 covers positions "concerned with advising on, administering, supervising, or performing work in the collection, analysis, evaluation, interpretation and dissemination of information on political, economic, social, cultural, physical, geographic, scientific or military conditions, trends, and forces in foreign and domestic areas that directly and indirectly affect the national security." *See* U.S. Office of Personnel Management, *Position Classification Standard Flysheet for Intelligence Series, GS-0132*, at https://www.opm.gov/policy-data-oversight/classification-qualifications/classifying-general-schedule-positions/standards/0100/gs0132.pdf. GS-0132 specifically excludes "positions concerned with intelligence investigations." *Id*. at p. 2.

[16] It would be an especially absurd result if Auten, an individual far removed from the FISA warrant application and execution process, was covered by § 1809(a) but could not avail himself of § 1809(b)'s safe harbor the same way "law enforcement or investigative officer[s]," who are more centrally involved in that process, could. Accordingly, should the Court find that § 1809(a) covers individuals like Auten, it should construe § 1809(b) to apply to Auten as well.

investigations, and because the Complaint fails to allege facts sufficient to state a FISA claim against Auten in any event, Counts 1-4 should be dismissed as to him.[17]

### III.    Auten is Entitled to Qualified Immunity From All Claims Because Plaintiff Cannot Show a Violation of Clearly Established Fourth Amendment or FISA Right

For the reasons discussed in the Clinesmith Motion, Dkt. 60-1 at 43-45, which Auten incorporates here by reference, even if Plaintiff's *Bivens* and FISA claims against Auten were to withstand legal scrutiny (which they do not), he would nonetheless be entitled to qualified immunity.

As set forth in the Clinesmith Motion, Dkt. 60-1 at 43, government officials are entitled to qualified immunity "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Plaintiff bears the burden of showing that his right, "narrowly described to fit the factual pattern confronting the officers," was clearly established.  *Dukore v. Dist. of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015).  For a right to be "clearly established," existing precedent must "place the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741; *see also* Clinesmith Motion, Dkt. 60-1 at 43-44.

The Fourth Amendment question posed by Plaintiff's *Bivens* claim against Auten— whether his alleged "supportive role" in providing intelligence to the team of FBI agents who sought a FISA warrant and executed the surveillance of Plaintiff constituted an illegal search under

---

[17] For the reasons discussed in this Section, the Complaint also fails to establish that Auten personally participated in any Fourth Amendment violation giving rise to Plaintiff's *Bivens* claim against him.  *See* Clinesmith Motion, Dkt. 60-1 at 33 (citing cases).

the Fourth Amendment—is far from "beyond debate."  *al-Kidd*, 563 U.S. at 735.[18]  As explained

above, there is no suggestion by the text of 50 U.S.C. § 1810 that the phrase "engages in

surveillance" covers analysts who provide secondary support to those preparing the FISA

applications, and no case suggests the contrary.  Moreover, as the Clinesmith Motion, Dkt. 60-1,

at 45, observes, and Auten hereby joins and incorporates by reference, there is not a single case

holding any government official, let alone an intelligence analyst, liable under FISA for engaging

in surveillance pursuant to a duly authorized FISC warrant, even if the warrant application was

later found defective.  On this basis, it cannot possibly be that the illegality of the conduct as

alleged against Auten was at the time of the relevant conduct "beyond debate."  Auten is therefore

also entitled to qualified immunity on the FISA claims.

---

[18] Plaintiff's reliance on *Franks v. Delaware*, 438 U.S. 154 (1978), for this point (Am. Compl. ¶ 218) is misplaced.  In *Franks*, the Supreme Court held that the intentional, knowing, or reckless submission of false information in a warrant affidavit violates the Fourth Amendment when that information is material to a finding of probable cause.  438 U.S. 154 at 171-73. However, even as alleged in the Complaint, Auten's conduct falls outside of *Franks*.  The Complaint neither alleges that Auten determined which information to include in the FISA applications, nor that he signed any affidavit or application submitted to the FISC, which even the most generous reading of *Franks* would require.

## **CONCLUSION**

For the reasons stated above, all claims against Brian J. Auten should be dismissed with prejudice.


Dated:   May 18, 2021                                    Respectfully submitted,

                                                         */s/ Patrick F. Linehan*
                                                         Patrick F. Linehan (D.C. Bar No. 472183)
                                                         Brian M. Heberlig (D.C. Bar No. 455381)
                                                         James M. Hobbs (D.C. Bar No. 1031106)
                                                         STEPTOE & JOHNSON LLP
                                                         1330 Connecticut Avenue, N.W.
                                                         Washington, DC  20036-1795
                                                         Tel: (202) 429-3000
                                                         Fax: (202) 429-3902
                                                         plinehan@steptoe.com
                                                         bheberlig@steptoe.com
                                                         jhobbs@steptoe.com


                                                         *Counsel for Defendant Brian J. Auten*