# EXHIBIT 7

9/17/21, 12:05 PM        Russia Inquiry Review Is Said to Criticize F.B.I. but Rebuff Claims of Biased Acts - The New York Times

Case 1:20-cv-03460-KBJ   Document 81-8   Filed 09/17/21   Page 2 of 5

*The New York Times* | https://www.nytimes.com/2019/11/22/us/politics/russia-investigation-inspector-general-report.html

## *Russia Inquiry Review Is Said to Criticize F.B.I. but Rebuff Claims of Biased Acts*

A watchdog report will portray the pursuit of a wiretap of an ex-Trump adviser as sloppy, but it also debunks some accusations by Trump allies of F.B.I. wrongdoing.

 

By Adam Goldman and Charlie Savage

Nov. 22, 2019

WASHINGTON — A highly anticipated report by the Justice Department's inspector general is expected to sharply criticize lower-level F.B.I. officials as well as bureau leaders involved in the early stages of the Trump-Russia investigation, but to absolve the top ranks of abusing their powers out of bias against President Trump, according to people briefed on a draft.

Investigators for the inspector general, Michael E. Horowitz, uncovered errors and omissions in documents related to the wiretapping of a former Trump campaign adviser, Carter Page — including that a low-level lawyer, Kevin Clinesmith, altered an email that officials used to prepare to seek court approval to renew the wiretap, the people said.

Mr. Horowitz referred his findings about Mr. Clinesmith to prosecutors for a potential criminal charge. Mr. Clinesmith left the Russia investigation in February 2018 after the inspector general identified him as one of a handful of F.B.I. officials who expressed animus toward Mr. Trump in text messages and resigned about two months ago, after the inspector general's team interviewed him.

Though Mr. Trump's allies have seized on the messages from Mr. Clinesmith and his colleagues as proof of anti-Trump bias, Mr. Clinesmith has not been a prominent figure in the partisan firefight over the investigation. His lawyer declined to comment, as did a spokeswoman for Mr. Horowitz.

More broadly, Mr. Horowitz's report, to be made public on Dec. 9, portrays the overall effort to seek the wiretap order and its renewals as sloppy and unprofessional, according to the people familiar with it. He will also sharply criticize as careless one of the F.B.I. case agents in New York handling the matter and say that the bureau and the Justice Department displayed poor coordination during the investigation, they said.

At the same time, however, the report debunks a series of conspiracy theories and insinuations about the F.B.I. that Mr. Trump and his allies have put forward over the past two years, the people said, though they cautioned that the report is not complete. The New York Times has not reviewed the draft, which could contain other significant findings.

In particular, while Mr. Horowitz criticizes F.B.I. leadership for its handling of the highly fraught Russia investigation in some ways, he made no finding of politically biased actions by top officials Mr. Trump has vilified like the former F.B.I. director James B. Comey; Andrew G. McCabe, the former deputy who temporarily ran the bureau after the president fired Mr. Comey in 2017; and Peter Strzok, a former top counterintelligence agent.

The early accounts of the report suggest that it is likely to stoke the debate over the investigation without definitively resolving it, by offering both sides different conclusions they can point to as vindication for their rival worldviews.

The wiretap of Mr. Page emerged as a political flash point in early 2018, though it was one relatively narrow aspect of the sprawling inquiry that found that Moscow sought to help Mr. Trump win the election and that his campaign expected to benefit, but found insufficient evidence to charge any conspiracy with the Trump campaign.

Rod J. Rosenstein, the former deputy attorney general who oversaw legal matters related to the 2016 election, asked Mr. Horowitz to scrutinize the wiretap and broader issues related to the investigation, absorbing pressure from Mr. Trump and his allies.

The Foreign Intelligence Surveillance Court first approved wiretapping Mr. Page, who had close ties to Russia, as a suspected unregistered agent of a foreign power in October 2016, after he had left the campaign.

The Justice Department obtained three renewal orders. The paperwork associated with the renewal applications contained information that should have been left out, and vice versa, the people briefed on the draft report said.

The email Mr. Clinesmith handled was a factor during the wiretap renewal process, according to the people. Mr. Clinesmith took an email from an official at another federal agency that contained several factual assertions, then added material to the bottom that looked like another assertion from the email's author, when it was instead his own understanding.

Mr. Clinesmith included this altered email in a package that he compiled for another F.B.I. official to read in preparation for signing an affidavit that would be submitted to the court attesting to the facts and analysis in the wiretap application.

The details of the email are apparently classified and may not be made public even when the report is unveiled.

The investigators' referral of its findings on Mr. Clinesmith went to John H. Durham, a prosecutor assigned by Attorney General William P. Barr to also re-examine the Russia case and its origins. The referral from Mr. Horowitz's team appears to be at least in part the basis for the elevation of Mr. Durham's inquiry from an administrative review to a criminal investigation, the people said.

Additionally, Mr. Clinesmith worked on both the Hillary Clinton email investigation and the Russia investigation. He was among the F.B.I. officials removed by the special counsel, Robert S. Mueller III, after Mr. Horowitz found text messages expressing political animus against Mr. Trump.

**Sign Up for On Politics With Lisa Lerer**  A spotlight on the people reshaping our politics. A conversation with voters across the country. And a guiding hand through the endless news cycle, telling you what you really need to know. Get it sent to your inbox.

Shortly after Mr. Trump's election victory, for example, Mr. Clinesmith texted another official that "the crazies won finally," disparaged Mr. Trump's health care and immigration agendas, and called Vice President Mike Pence "stupid." In another text, he wrote, in the context of a question about whether he intended to stay in government, "viva la resistance."

In a June 2018 report by Mr. Horowitz about that and other politically charged texts, which identified him as "F.B.I. Attorney 2," Mr. Clinesmith said he was expressing his personal views but did not let them affect his official actions.

The inspector general apparently did not assert in the draft report that any of the problems he found were so material that the court would have rejected the Justice Department's requests to continue surveilling Mr. Page. But the people familiar with the draft were uncertain about whether Mr. Horowitz said the problems were immaterial, or instead avoided taking a position on that question.

CNN first reported that the draft accused a lower-level lawyer of altering a document. Mr. Clinesmith's identification and details about the findings have not previously been reported.

In a phone call on Friday to "Fox & Friends," Mr. Trump played up the initial revelations to claim that "they were spying on my campaign and it went right to the top and everybody knows it and now we're going to find out" and "they tried to overthrow the presidency." The accounts of Mr. Horowitz's findings do not support that assertion.

And in other crucial respects, the draft inspector general report is said not to corroborate conspiracy theories and insinuations offered by Mr. Trump and his allies about the early stages of the Russia investigation, before Mr. Mueller was appointed as special counsel and took it over.

For example, the draft report also concludes that the F.B.I. had enough evidence to meet the legal standard for opening the investigation, though Mr. Horowitz emphasized that the bar is low, the people said.

The report is also said to conclude that Joseph Mifsud, a Russia-linked professor who told a Trump campaign official that Russia had damaging information on Mrs. Clinton in the form of hacked Democratic emails — a key fact used to open the investigation — was not an F.B.I. informant. That undercuts an assertion of conservative critics of the inquiry.

9/17/21, 12:05 PM  Russia Inquiry Review Is Said to Criticize F.B.I. but Reject Claims of Biased Actions - The New York Times

Case 1:20-cv-03460-KBJ   Document 81-8   Filed 09/17/21   Page 4 of 5

None of the evidence used to open the investigation came from the C.I.A. or from a notorious dossier of claims about Trump-Russia ties compiled by Christopher Steele, a former British intelligence agent whose research was funded by Democrats, the report concludes, according to the people briefed on it.

Mr. Trump's allies have complained about how the Justice Department used information from the Steele dossier in the wiretap applications. Along with evidence from other sources, the filings cited some information from Mr. Steele's dossier about meetings that Mr. Page was rumored to have had with Kremlin representatives during a trip to Russia that year.

The report in particular is expected to scrutinize the process of obtaining and renewing court permission to wiretap Carter Page, a former Trump campaign adviser. Drew Angerer/Getty Images

Republicans have criticized any use of political opposition research in applications for Foreign Intelligence Surveillance Act wiretaps, which are among the most intrusive tools investigators have and are highly regulated. But the people briefed on the draft said Mr. Horowitz does not criticize them for the basic fact that they used the information.

Still, people familiar with questions asked by Mr. Horowitz's investigators have suggested that he is likely to conclude that the filings exaggerated Mr. Steele's track record in terms of the amount of value that the F.B.I. derived from information he supplied in previous investigations. The court filings in the Page wiretap application said his material was "used in criminal proceedings," but it was never part of an affidavit, search warrant or courtroom evidence.

But it remains unclear what other judgments Mr. Horowitz is preparing to render about related disputes related to the use of Mr. Steele's information in the surveillance materials.

The wiretap applications contained a lengthy footnote telling the judges that Mr. Steele's research was believed to have been commissioned by someone seeking information that would damage the Trump campaign. But it did not specifically identify the funders — the Democratic National Committee and the Clinton campaign.

The original October 2016 application said investigators did not know the identity of Mr. Steele's patrons. But even in 2017, after they specifically learned that Democrats paid a research firm to unearth material that could hurt Mr. Trump, law enforcement officials did not update the language in the renewal applications.

Defenders of the bureau's inaction argued that the original footnote was sufficient to alert the surveillance court that Mr. Steele gathered the information in a political context and noted that it is standard practice to keep names of individual Americans or organizations out of such documents.

It also remains unclear what the inspector general concluded about Mr. Steele's contacts with Bruce Ohr, a Justice Department official. Mr. Ohr, an expert on Russian organized crime and himself a frequent target of Mr. Trump, spoke with Mr. Steele several times after the F.B.I. terminated its relationship with him. Mr. Ohr briefed the bureau about those conversations. His wife also worked for the opposition research firm that hired Mr. Steele.

In his comments to Fox on Friday, Mr. Trump appeared to be looking past Mr. Horowitz's report and potentially anticipating its complex findings. "Perhaps even more importantly," he said, "you have Durham coming out shortly thereafter."