**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CARTER W. PAGE, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | )   Civil Action No. 20-3460 (KBJ) |
| | ) |
| JAMES COMEY, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT LISA PAGE'S**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

# <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION ........................................................................................................... 1

ALLEGATIONS IN THE COMPLAINT ...................................................................... 2

I.      First FISA Application ......................................................................................... 3

II.     Second FISA Application ..................................................................................... 4

III.    Third FISA Application ....................................................................................... 4

IV.     Fourth FISA Application ...................................................................................... 5

V.      Additional Allegations Relating to Media Leaks ............................................... 5

ARGUMENT ................................................................................................................ 6

I.      The Complaint Fails to Allege Any Actionable Conduct by Ms. Page ............. 6

        A.      None of the Conduct Attributed to Ms. Page Constitutes a Violation of FISA ...... 7

        B.      Plaintiff Does Not Allege That Ms. Page Personally Participated in a Violation of His Fourth Amendment Rights ............................................................. 13

        C.      Plaintiff May Not Fill the Gaps in His Claims Against Ms. Page with Indiscriminate Group Pleading ........................................................... 14

II.     All of Plaintiff's Claims Against Ms. Page Must Be Dismissed as Time-Barred .................................................................................................................. 14

III.    The Court Should Decline to Extend *Bivens* to This New Context ................. 15

IV.     Ms. Page Is Entitled to Qualified Immunity on Plaintiff's Claims .................. 17

CONCLUSION ............................................................................................................ 19

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Al-Haramain Islamic Found., Inc. v. Obama*,
   705 F.3d 845 (9th Cir. 2012) .................................................................................7

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011)............................................................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................13

*Attkisson v. Holder*,
   No. 17-cv-364, 2017 WL 5013230 (E.D. Va. Nov. 1, 2017) .................................8

*Banneker Ventures, LLC v. Graham*,
   798 F.3d 1119 (D.C. Cir. 2015).........................................................................11

*Berry v. Funk*,
   146 F.3d 1003 (D.C. Cir. 1998).........................................................................17

*Brunoehler v. Tarwater*,
   743 F. App'x 740 (9th Cir. 2018) ......................................................................17

*Corsi v. Mueller*,
   422 F. Supp. 3d 51 (D.D.C. 2019)......................................................................17

*Doe v. Dep't of Justice*,
   753 F.2d 1092 (D.C. Cir. 1985).........................................................................15

*Fazaga v. FBI*,
   965 F.3d 1015 (9th Cir. 2020) ...........................................................................18

*Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*,
   545 U.S. 409 (2005)............................................................................................14

*Greenpeace, Inc. v. Dow Chem. Co.*,
   97 A.3d 1053 (D.C. 2014) .................................................................................15

*Hernandez v. Mesa*,
   140 S. Ct. 735 (2020)...................................................................................15, 16

*Kareem v. Haspel*,
   986 F.3d 859 (D.C. Cir. 2021) .......................................................................9–10

ii

Page(s)

**Cases cont.**

*Kelley v. FBI,*
    67 F. Supp. 3d 240 (D.D.C. 2014) ...................................................................17

*Mead v. Holder,*
    766 F. Supp. 2d 16 (D.D.C. 2011) ...................................................................10

*In re Nat'l Sec. Agency Telecomm. Recs. Litig.,*
    564 F. Supp. 2d 1109 (N.D. Cal. 2008) ...........................................................18

*Ortiz-Contreras v. Holder,*
    126 F. Supp. 3d 127 (D.D.C. 2015) .................................................................13

*Simpkins v. D.C. Gov't,*
    108 F.3d 366 (D.C. Cir. 1997) .........................................................................13

*Tooley v. Napolitano,*
    586 F.3d 1006 (D.C. Cir. 2009) .......................................................................10

*Toumazou v. Turkish Republic of N. Cyprus,*
    71 F. Supp. 3d 7 (D.D.C. 2014) .......................................................................14

**United States v. Koyomejian,*
    946 F.2d 1450 (9th Cir. 1991) ............................................................................8

**Ziglar v. Abbasi,*
    137 S. Ct. 1843 (2017) ..........................................................................13, 15, 16

**Statutes**

18 U.S.C. § 2511(1)(a) ...........................................................................................16

18 U.S.C. § 2516 ....................................................................................................16

18 U.S.C. § 2520(a) ...............................................................................................16

18 U.S.C. § 2520(f) ................................................................................................16

18 U.S.C. § 2707(a) ...............................................................................................16

18 U.S.C. § 2707(d) ...............................................................................................16

18 U.S.C. § 2707(g) ...............................................................................................16

18 U.S.C. § 2712 ....................................................................................................16

iii

Page(s)

**Statutes cont.**

\*50 U.S.C. § 1809(a)(1) ................................................................................................7

\*50 U.S.C. § 1809(a)(2) ............................................................................................7, 11

50 U.S.C. § 1809(b) ....................................................................................................17

50 U.S.C. § 1810 ...........................................................................................................7

D.C. Code 12-301(a)(4) ..............................................................................................15

**Other Authorities**

ECF No. 14-4 ¶ 13, *Page v. U.S. Dep't of Justice*, No. 19-cv-3675-TSC
    (D.D.C. Mar. 13, 2020) ..........................................................................................12

Ellen Nakashima, Devlin Barrett & Adam Entous, *FBI obtained FISA warrant to
    monitor former Trump adviser Carter Page*, Wash. Post (Apr. 11, 2017),
    https://www.washingtonpost.com/world/national-security/fbi-obtained-fisa-
    warrant-to-monitor-former-trump-adviser-carter-page/2017/04/11/620192ea-
    1e0e-11e7-ad74-3a742a6e93a7_story.html .............................................................11

Matt Apuzzo, Michael S. Schmidt, Adam Goldman & Eric Lichtblau, *Comey
    Tried to Shield the F.B.I. from Politics.  Then He Shaped an Election*, N.Y.
    Times (Apr. 22, 2017), https://www.nytimes.com/2017/
    04/22/us/politics/james-comey-election.html .........................................................11

## INTRODUCTION

Plaintiff Carter Page brings FISA and *Bivens*/Fourth Amendment claims against eight former FBI officials, whom the complaint lumps together as the "individual Defendants," arising out of the FBI's investigation into the possibility of Russian interference in the 2016 presidential election and its electronic surveillance of Plaintiff under the Foreign Intelligence Surveillance Act ("FISA").  Defendant Lisa Page, then an FBI lawyer serving as counsel to Deputy Director Andrew McCabe, is among those eight named individual defendants.  However, the 67-page, 311-paragraph Second Amended Complaint hardly mentions Ms. Page, and the limited instances in which it does mention her do not come close to alleging any conduct that could possibly be actionable under *Bivens*, the Fourth Amendment, or the civil FISA provision.  All the complaint alleges about Ms. Page is that she was present at several meetings relating to the Russia investigation and that she exchanged a handful of e-mails and text messages with colleagues. Under well-settled pleading standards, these allegations fall far short of the threshold to state an actionable claim.

The Court should dismiss the claims against Ms. Page on the ground that they plead no conduct by her that violates any law, but they fail on multiple other grounds as well.  First, each claim is time-barred under the District of Columbia's one-year statute of limitations for libel, slander, and invasion of privacy, the causes of action most analogous to the claims against Ms. Page.  Second, the *Bivens* cause of action is not available in this context, and the Court should decline to extend it, including because Congress has comprehensively legislated in this area and FISA itself provides alternative remedies.  Finally, even if Plaintiff's claims against Ms. Page were sufficiently pleaded, Ms. Page would be entitled to qualified immunity.  Plaintiff has not alleged

that Ms. Page engaged in any violation of his rights at all, let alone rights that were clearly established either then or now.

## ALLEGATIONS IN THE COMPLAINT[1]

Plaintiff Carter Page, a former foreign policy advisor to Donald Trump's 2016 campaign, alleges that the government unlawfully surveilled him based on four FISA warrants he claims were illegally obtained.  SAC ¶¶ 21, 140.  Plaintiff alleges that he was "targeted" for this unlawful surveillance because of his association with the Trump campaign.  *Id.* ¶ 2.  Between October 2016 and June 2017, the FBI prepared and submitted an initial application and three renewals, and the Foreign Intelligence Surveillance Court ("FISC") granted each.  *Id.* ¶ 3.  According to Plaintiff, a group of employees he lumps together as the "individual Defendants" misled the FISC to obtain those warrants in violation of FISA and Plaintiff's Fourth Amendment rights.  *See, e.g.*, *id.* ¶ 20. Only a fraction of the complaint's 311 paragraphs so much as mention Ms. Page.  *See id.* ¶¶ 7, 30, 70-71, 91, 94, 106, 147, 158, 168, 195-97, 220, 222-23, 225-26.

The Complaint asserts five causes of action against "All Individual Defendants," which is defined to include Ms. Page.  In Counts 1-4, Plaintiff alleges four violations of FISA, each predicated on one of the four FISA applications.  *Id.* ¶¶ 256-274.  In Count 6, brought under the implied cause of action first recognized in *Bivens*, Plaintiff seeks damages from each individual defendant for violating his Fourth Amendment rights by allegedly making "false and misleading statements" in those same applications.  *Id.* ¶¶ 283-289.[2]

---

[1] For purposes of this motion, Ms. Page assumes that all allegations in the complaint are true.  This is not the case, however, and Ms. Page will vigorously contest many of these allegations should the claims against her proceed.

[2] In addition, the complaint contains claims against the United States under the Federal Tort Claims Act and Patriot Act, and against DOJ and FBI under the Privacy Act.  *Id.* ¶¶ 275-282 (Count 5), ¶¶ 290-302 (Counts 7 and 8), ¶¶ 303-311 (Count 9).  These claims are not relevant to Ms. Page.

The sections that follow summarize Plaintiff's allegations regarding the four FISA applications (Sections I-IV) and purported media leaks (Section V).

**I.     First FISA Application**

Shortly after the initiation of the Russia investigation, also known as "Crossfire Hurricane," the FBI prepared the first application to conduct electronic surveillance of Plaintiff under FISA. *Id*. ¶¶ 8, 95.  This application was submitted to the FISC on October 21, 2016.  *Id*. ¶ 95.  Plaintiff alleges that the application relied on inaccurate information provided by Christopher Steele, a confidential source who had provided the FBI with six reports alleging that Plaintiff had improper or unlawful communications with "two sanctioned Russians with close ties to Russian President Vladimir Putin."  *Id*. ¶¶ 9, 74.  Plaintiff alleges that Steele was "politically motivated" and that the FBI failed to conduct "any meaningful investigation" of Steele's allegations.  *Id*. ¶¶ 74, 75.

The complaint alleges that Ms. Page was involved in two exchanges relating to the first FISA application.  *See id.* ¶ 91 (alleging that, on October 12, 2016, "Lisa Page emailed McCabe that she had communicated to [DOJ attorney Stuart] Evans that both McCabe and Comey had given a 'green light' to applying for the FISA warrant and had asked Evans where things stood. She added that 'This might take a high-level push.  Will keep you posted.'"); *id.* ¶ 94 (alleging that "[o]n October 18, 2016, then-Associate Attorney General Bruce Ohr, whose wife worked for political opposition research firm Fusion GPS, briefed Steele's accusations regarding [Plaintiff] to McCabe and Lisa Page," advising them that "Steele's work product was not for the U.S. Government, but rather for a private political party, and was political opposition research").

The complaint also quotes from several text messages exchanged between Ms. Page and Peter Strzok in August 2016.  *Id.* ¶¶ 70-71.  Although Plaintiff chose to include these allegations in the section of the complaint titled "The First FISA Warrant," none of the quoted messages refer

to Plaintiff, FISA, or the Crossfire Hurricane investigation.  In addition, these communications occurred prior to any of the other alleged conduct, including Steele's provision of the six reports to the FBI "[o]n or about September 19, 2016."  *Id.* ¶ 74; *see also id.* ¶¶ 76-95.

## II.    Second FISA Application

The application for the second FISA warrant was submitted on January 12, 2017.  *Id.* ¶ 111.  The complaint alleges that this application, like the first one, was "false and misleading." *Id.* ¶ 117; *see also id.* ¶¶ 111-14.  According to the complaint, on November 17, 2016, the FBI terminated Steele's status as a source after learning that he had violated protocol by providing information to the press.  *Id.* ¶¶ 101, 104-05.  On November 21, 2016, "DOJ official Bruce Ohr met with Lisa Page, Peter Strzok, Joe Pientka, and other FBI officials to discuss 'Steele's background and reliability as a source and to identify his source network.'"  *Id.* ¶ 106.  According to the complaint, "Ohr advised them that Steele 'was desperate that Donald Trump not get elected and was passionate about him not becoming the U.S. president.'"  *Id.*  In addition, Ohr allegedly said that "Steele had been hired by 'a lawyer who does opposition research' and the information about Trump and Russia was being relayed to Hillary Clinton's presidential campaign."  *Id.*  The complaint does not contain any other allegations mentioning Ms. Page in connection with the second FISA application.

## III.   Third FISA Application

According to the complaint, surveillance conducted under the first and second FISA warrants revealed no evidence that Plaintiff was acting as a foreign agent of Russia.  *Id.* ¶ 123. The application for the third FISA warrant was submitted on April 7, 2017.  *Id.* ¶ 122.  The complaint alleges that this application, like the first two, was "false and misleading."  *Id.* ¶ 125. Specifically, the complaint alleges that "[t]he FBI" received information that "contradicted or

undermined the allegations" about Plaintiff in the first two FISA applications, but it did not disclose that information in the third application. *Id.* ¶¶ 120-21. *The complaint does not contain any allegations regarding Ms. Page in connection with the third FISA application.*

## IV.    Fourth FISA Application

The application for the fourth FISA warrant was submitted on June 29, 2017. *Id.* ¶ 133. The complaint alleges that this application, like the others, was "false and misleading," *id.* ¶ 138—in particular, because it "did not advise the FISC that [Plaintiff] had been an operational contact for the CIA," *see id.* ¶ 134. The complaint further alleges that the FBI Supervisory Special Agent who signed the application relied on an altered e-mail provided by an attorney with the National Security and Cyber Law Branch of the FBI's Office of General Counsel, which purported to state that Plaintiff was "not a source" for the CIA. *Id.* ¶¶ 131-32. *The complaint does not contain any allegations regarding Ms. Page in connection with the fourth FISA application.*

## V.    Additional Allegations Relating to Media Leaks

Separate from its allegations relating to the four FISA applications, the complaint alleges that Ms. Page "facilitated the leaks of information about the FBI's FISA warrants regarding [Plaintiff]" to the media. *Id.* ¶ 196. According to the complaint, Ms. Page received text messages from FBI agent Peter Strzok on April 10, 12, and 22, 2017 (after the submission of the third FISA application, but before the submission of the fourth). One message, from April 10, referenced a "media leak strategy" and stated "I had literally just gone to find this phone to tell you I want to talk to you about media leak strategy with DOJ before you go." *Id.* ¶ 220. The second message, from April 12, allegedly informed Ms. Page that "two media articles were coming out about her 'namesake' Carter Page and one was worse than the other." *Id.* ¶ 222. The third message, from April 22, allegedly "stat[ed] that the 'article is out!'" and "congratulat[ed] her on a job well done,

5

saying 'Well done, Page.'" *Id.* ¶ 223.  After describing these three messages, the complaint alleges on "information and belief" that "Strzok and Lisa Page collaborated to disclose protected information regarding [Plaintiff] to the media and sought and obtained approval to do so from McCabe." *Id.* ¶ 225*; see also id.* ¶ 226 (alleging on "information and belief" that "Defendants, known and unknown to [Plaintiff], but including but not limited to, Comey, McCabe, Strzok, and Page, leaked information and records concerning [Plaintiff], including but not limited to the existence of the FISA Warrants, the contents of the warrant applications, and the results of the Warrants, that were protected from disclosure under the FISA and the Privacy Act to media outlets, including the New York Times, the Washington Post, and possibly others").

## ARGUMENT

The complaint does not allege any actionable conduct by Ms. Page.  Instead, it indiscriminately lumps her together with other defendants, speculates on "information and belief" that she participated in leaking information to the media, and seeks to recast routine activities like attending meetings and exchanging messages with colleagues as violations of FISA and Plaintiff's Fourth Amendment rights.  These allegations simply do not state a claim under either FISA or the *Bivens* cause of action.  Moreover, the claims are time-barred, the extension of *Bivens* into this new context is not warranted, and Ms. Page would be entitled to qualified immunity on Plaintiff's claims even if they were sufficiently pleaded.  For all of these reasons, the claims against Ms. Page must be dismissed.

## I.  The Complaint Fails to Allege Any Actionable Conduct by Ms. Page

Plaintiff fails to state a claim against Ms. Page under either FISA or *Bivens*.  As noted above, only a fraction of the complaint's 311 paragraphs even mention Ms. Page.  Aside from a paragraph in the "Parties" section of the complaint identifying Ms. Page as an individual

defendant, these allegations fall into two categories: (1) allegations that simply describe briefings and communications between Ms. Page and DOJ or FBI colleagues, without alleging that she took any affirmative action of her own; and (2) conclusory and speculative allegations, including allegations on "information and belief" that Ms. Page was involved in leaking information to the media.  Collectively, these allegations fall far short of the plausibility threshold set by *Twombly* and *Iqbal*.  To the extent Plaintiff premises his claims against Ms. Page on allegations that do not mention her specifically—including allegations that "the FBI," "the government," or "the individual Defendants" engaged in actionable conduct—these allegations constitute impermissible group pleading and cannot fill the gaps in Plaintiff's otherwise deficient claims.

### A.  None of the Conduct Attributed to Ms. Page Constitutes a Violation of FISA

To state a FISA claim against Ms. Page, Plaintiff must plead that she committed a violation of Section 1809, the section providing for criminal liability under the statute.  50 U.S.C. § 1810; *see Al-Haramain Islamic Found., Inc. v. Obama*, 705 F.3d 845, 851 (9th Cir. 2012).  Liability under Section 1809 is available in two situations: (1) when a person intentionally "engages in electronic surveillance," unless authorized by other provisions of FISA, the Wiretap Act, or the Stored Communications Act, 50 U.S.C. § 1809(a)(1); and (2) when a person intentionally "discloses or uses information" that the person knew or had reason to know was obtained through electronic surveillance that was not properly authorized, *id.* § 1809(a)(2).  The complaint fails to state a claim against Ms. Page under either theory.

Indeed, the vast majority of allegations mentioning Ms. Page describe no action on her part at all, let alone conduct that could give rise to criminal liability under FISA.  Rather, they simply describe her receipt of briefings and exchange of e-mails and text messages with colleagues; they do not allege that she took any related action.  SAC ¶¶ 7, 70, 71, 91, 94, 106, 147, 158, 168, 197,

220, 222, 223.  This alleged conduct simply does not constitute "engag[ing] in electronic surveillance" or "disclos[ing] or us[ing] information" obtained through electronic surveillance under FISA, nor does it provide the necessary factual predicate for Plaintiff's conclusory assertion that Ms. Page "facilitated obtaining the initial FISA warrant for [Plaintiff] in the face of doubts voiced by the DOJ and others." *Id.* ¶ 195.

The remaining allegations—all of which are generalized and conclusory in nature—relate to Ms. Page's alleged participation in "media leaks." *Id.* ¶¶ 196, 225, 226.  For the reasons explained below, these allegations fail to state a claim as well, even under the most strained interpretation of FISA's "disclose[] or use[]" provision.

Regarding the first FISA application, the sole allegations relating to Ms. Page are that she sent a status update to McCabe and, along with McCabe, received a briefing from Associate Attorney General Bruce Ohr on "Steele's accusations regarding [Plaintiff]." *Id.* ¶¶ 91, 94.  The complaint does not allege that Ms. Page participated in the preparation or submission of the first FISA application in any way.  Nor does it allege that she participated in subsequent surveillance pursuant to the FISA warrant.  Because these allegations do not plausibly indicate that Ms. Page "engage[d] in electronic surveillance" or "disclose[d] or use[d] information" obtained through such surveillance, the claim must be dismissed.  *See United States v. Koyomejian*, 946 F.2d 1450, 1459 n.16 (9th Cir. 1991) (explaining that the phrase "engage in electronic surveillance" "is best understood as subjecting to criminal liability anyone *who performs electronic surveillance*" without statutory authorization) (emphasis added); *Attkisson v. Holder*, No. 17-cv-364, 2017 WL 5013230, at *12 (E.D. Va. Nov. 1, 2017) (dismissing FISA claims where the complaint failed to allege that the defendant "personally engaged in the alleged surveillance").

Regarding the second FISA application, the only allegation relating to Ms. Page is that "DOJ official Bruce Ohr met with Lisa Page, Peter Strzok, Joe Pientka, and other FBI officials to discuss 'Steele's background and reliability as a source and to identify his source network.'"  SAC ¶ 106.  The complaint does not allege that Ms. Page participated in the preparation or submission of the second FISA application, or in subsequent surveillance, in any way.  Because merely being present at a meeting with at least five others does not plausibly indicate that Ms. Page "engage[d] in electronic surveillance" or "disclose[d] or use[d] information" obtained through such surveillance, the claim must be dismissed.

Regarding the third and fourth FISA applications, the complaint contains no allegations relating to Ms. Page at all.  Thus, Plaintiff has failed to plead any facts to the effect that Ms. Page committed a criminal violation by "engag[ing] in [illegal] electronic surveillance" or "disclos[ing] or us[ing] information" obtained through such surveillance in connection with those warrants.

The only remaining question is whether the allegations regarding media leaks somehow could be deemed to state a viable theory that Ms. Page "disclose[d] or use[d] information" obtained through electronic surveillance, which Ms. Page knew or should have known was not properly authorized.  They do not.  The bald assertions in Paragraphs 196, 225, and 226—that Ms. Page, by herself or with others, "facilitated" leaks of information about the warrants; "collaborated" to disclose protected information regarding Plaintiff to the media; and, along with an unspecified number of "known and unknown" defendants, leaked information and records concerning Plaintiff to media outlets—are conclusory allegations entitled to no weight.  Notably, two of the three assertions (Paragraphs 225 and 226) are alleged on "information and belief."  While "on information and belief" pleading is not categorically prohibited, such allegations must "be accompanied by a statement of the facts upon which the allegations are based."  *Kareem v. Haspel*,

986 F.3d 859, 866 (D.C. Cir. 2021) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994)); *see also Tooley v. Napolitano*, 586 F.3d 1006, 1007-08, 1010 (D.C. Cir. 2009) (dismissing complaint where the alleged facts did not plausibly support the inference that the government had surveilled plaintiff, despite plaintiff's allegation "on information and belief" that at least nine phones connected to him had been illegally wiretapped).  Plaintiff has provided no such "statement of the facts" here.

While not prefaced with the phrase "on information and belief," the allegation in Paragraph 196 that Ms. Page "facilitated the leaks" is just as defective because it too is wholly conclusory. That allegation does not reference or rely on a single underlying fact.   If anything, Paragraph 196 contradicts Plaintiff's theory of FISA liability that, by leaking information, Ms. Page "disclose[d] or use[d]" information *obtained through surveillance*.   To the contrary, it avers that the leaked information was "about the FBI's FISA warrants" themselves, not about information learned through surveillance conducted pursuant to the warrants.

Moreover, the Court should not accept "unwarranted deductions of fact or unreasonable inferences" as true.  *Mead v. Holder*, 766 F. Supp. 2d 16, 38 n.13 (D.D.C.), *aff'd sub nom. Seven-Sky v. Holder*, 661 F.3d 1 (D.C. Cir. 2011) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).  For example, while Paragraph 223 alleges that "[o]n Saturday, April 22, 2017, Peter Strzok sent another text to Lisa Page stating that the 'article is out!' congratulating her on a job well done, saying 'Well done, Page,'" the notion that Mr. Strzok was "congratulating" Ms. Page for some unspecified action that led to publication of the article is rank speculation.  Like the other allegations regarding text messages from Mr. Strzok to Ms. Page, Paragraph 223 fails to create a plausible inference that Ms. Page "disclose[d] or use[d]" any information.

Finally, Plaintiff has failed to plausibly plead that Ms. Page disclosed or used such information while "knowing or having reason to know that the information was obtained through electronic surveillance not authorized by this chapter." 50 U.S.C. § 1809(a)(2). The complaint is at least three steps removed from what would be necessary to sustain a claim: there are simply no well-pleaded allegations in the complaint that Ms. Page disclosed *any* information to the media at all, let alone information "obtained through electronic surveillance" of Plaintiff, much less information that she knew was obtained through surveillance that was not properly authorized. Indeed, even if the complaint adequately pleaded that Ms. Page contributed to either of the April 2017 articles—which it does not—there is no content in either article that conveys or reflects any information "obtained through electronic surveillance" of Plaintiff.[3]

In the absence of any facts that could satisfy the requirements of Section 1809(a)(2), Plaintiff's theory of "media leaks" fails to state a FISA claim as to Ms. Page. Indeed, the lack of well-pleaded allegations as to *any* actionable conduct by Ms. Page—regarding media leaks or anything else—is brought into sharp focus by the section of the complaint titled "Individual Defendants' Actions, Omissions and Misrepresentations," which lists the conduct attributable to each individual defendant. Other than the ultra-conclusory, substance-less allegations about "facilitat[ing] obtaining" the initial warrant (Paragraph 195) and "facilitat[ing] the leaks"

---

[3] Ellen Nakashima, Devlin Barrett & Adam Entous, *FBI obtained FISA warrant to monitor former Trump adviser Carter Page*, Wash. Post (Apr. 11, 2017), https://www.washingtonpost.com/world/national-security/fbi-obtained-fisa-warrant-to-monitor-former-trump-adviser-carter-page/2017/04/11/620192ea-1e0e-11e7-ad74-3a742a6e93a7_story.html; Matt Apuzzo, Michael S. Schmidt, Adam Goldman & Eric Lichtblau, *Comey Tried to Shield the F.B.I. from Politics. Then He Shaped an Election*, N.Y. Times (Apr. 22, 2017), https://www.nytimes.com/2017/04/22/us/politics/james-comey-election.html. The Court may consider the entirety of these articles, which Plaintiff identifies and quotes from in the complaint (¶¶ 221, 224), without converting this motion into one for summary judgment. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015).

(Paragraph 196) addressed above, the relevant subsection for Ms. Page consists of nothing more than the following:

- "Lisa Page was an FBI attorney and was Special Counsel to Andrew McCabe." (Paragraph 195)

- "She was intent on stopping Donald Trump from being elected President." (Paragraph 195)

- "The text messages between Lisa Page and Strzok about Donald Trump during the Crossfire Hurricane investigation and preparation of the FISA warrants against [Plaintiff] 'were so inappropriate and intertwined with their FBI work that they raised concerns about political bias influencing official duties,' according to the Department of Justice." (Paragraph 197)

SAC ¶¶ 195, 197.  As this subsection of the complaint unmistakably reveals, Plaintiff cannot marshal a single non-conclusory allegation specific to Ms. Page.  Of course, Ms. Page's job title and status cannot be an unlawful "action," "omission," or "misrepresentation."  Nor could Ms. Page's alleged political beliefs or distaste for Donald's Trump's candidacy possibly give Plaintiff a cognizable basis to recover damages from Ms. Page under FISA.  Plaintiff's allegations fail to identify any plausible connection between the issues mentioned in Paragraph 197 and any harm to Plaintiff.  Moreover, Plaintiff's insinuation that text messages between Ms. Page and Peter Strzok were somehow related to preparation of the FISA applications at issue in this case, or that DOJ made any such finding, is disingenuous.  The quotation in Paragraph 197 appears to be lifted from a declaration by a former DOJ official filed in separate Privacy Act litigation brought by Ms. Page, in which the official purports to explain the thought process leading to his decision to authorize public release of the text messages.  ECF No. 14-4 ¶ 13, *Page v. U.S. Dep't of Justice*, No. 19-cv-3675-TSC (D.D.C. Mar. 13, 2020).  The declaration does not conclude, nor have DOJ or any of its components ever found, that views expressed in Ms. Page's text messages affected any investigative decision, let alone the FISA warrants at issue in this case.  The complaint alleges nothing of substance against Ms. Page, and the claims against her should be dismissed.

**B.  Plaintiff Does Not Allege That Ms. Page Personally Participated in a Violation of His Fourth Amendment Rights**

With respect to the *Bivens* claims, Plaintiff must plausibly plead, among other things, that Ms. Page *personally participated* in the alleged violations of his Fourth Amendment rights by "ma[king] or caus[ing] to be made false and misleading statements in the applications for the FISA Warrants against [Plaintiff]."  SAC ¶ 285.  Not a single allegation in the complaint supports this theory.  "[A] *Bivens* claim is brought against the individual officer for his or her own acts, not the acts of others."  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017).  Thus, "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (emphasis added); *see also Simpkins v. D.C. Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997) ("The complaint must at least allege that the defendant federal official was personally involved in the illegal conduct."); *Ortiz-Contreras v. Holder*, 126 F. Supp. 3d 127, 130 (D.D.C. 2015) (dismissing action against individual defendants in part because the complaint "alleged no facts that would support a claim that any of these Defendants were individually involved in the constitutional violations Plaintiff alleges").

While the complaint alleges that Ms. Page received information related to certain FISA applications, and makes a half-hearted attempt to allege that she "facilitated" leaking of unspecified information to the press, there is not even the slightest suggestion that she contributed to the content of any FISA application.  *Cf.* SAC ¶ 195 (alleging, without identifying any factual basis, that Ms. Page "facilitated obtaining the initial FISA warrant for [Plaintiff] in the face of doubts voiced by the DOJ and others").  Because Plaintiff has failed to plead that Ms. Page, through her own actions, violated his Fourth Amendment rights, the *Bivens* claim must be dismissed.

### C. Plaintiff May Not Fill the Gaps in His Claims Against Ms. Page with Indiscriminate Group Pleading

Plaintiff cannot save his claims against Ms. Page through conclusory, collective allegations that "the FBI," "the government," or "Defendants" engaged in unlawful conduct. *See, e.g.*, SAC ¶¶ 20, 52, 55, 58-61, 140-42, 218-19, 226, 260, 264, 268, 272. To the contrary, it is inconsistent with Federal Rule of Civil Procedure 8 to "lump[] all the defendants together" and thus deprive the court of a "factual basis to distinguish their conduct." *Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014).

Plaintiff's approach is especially improper because the complaint's limited allegations regarding Ms. Page absolve her of the conduct that is attributed to "the individual Defendants" generally. For example, the complaint alleges that "[t]he individual Defendants fabricated or intentionally disregarded critical evidence . . . in order to obtain the FISA warrants," SAC ¶ 20, but the complaint fails to allege that Ms. Page authored, revised, or even reviewed the substance of any FISA application. The Court is, of course, not required to credit facially contradictory allegations. For purposes of the 12(b)(6) analysis, the Court should consider only the conduct that Plaintiff specifically attributes to Ms. Page.

## II.   All of Plaintiff's Claims Against Ms. Page Must Be Dismissed as Time-Barred

Even if Plaintiff's claims against Ms. Page were sufficiently pleaded, they must be dismissed as time-barred.

For both the FISA and *Bivens* claims, a one-year statute of limitations applies. Where, as is the case with FISA, a federal statute does not "expressly suppl[y] a limitations period," courts "generally 'borrow' the most closely analogous state limitations period." *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 414 (2005). Regarding the *Bivens* claims, courts likewise look to the "gist" of the plaintiff's allegations to determine the "most

14

analogous" cause of action under state law.  *Doe v. Dep't of Justice*, 753 F.2d 1092, 1114 (D.C. Cir. 1985).  Here, the "gist" of Plaintiff's claims against Ms. Page is that she facilitated the exchange of information related to the initial FISA warrant and engaged in improper disclosures to the media, with the last-in-time alleged conduct occurring in April 2017.  SAC ¶¶ 195-96, 220-26.  Thus, the most closely analogous state law claims are libel, slander, and invasion of privacy, all of which have a one-year statute of limitations under D.C. law.  *See* D.C. Code 12-301(a)(4) (libel and slander); *Greenpeace, Inc. v. Dow Chem. Co.*, 97 A.3d 1053, 1061-62 (D.C. 2014) (invasion of privacy).  Because the latest alleged conduct by Ms. Page occurred in April 2017— yet Plaintiff did not file suit until November 27, 2020, far more than one year after those claims accrued—each of Plaintiff's five claims against Ms. Page is untimely and must be dismissed.

## III.   The Court Should Decline to Extend *Bivens* to This New Context

Plaintiff asks this Court to recognize a new type of *Bivens* claim: Fourth Amendment violations caused by false and misleading FISA applications.  As discussed, the complaint does not allege that Ms. Page played any role in the preparation or submission of these applications. Even if it did, however, the Court should not recognize this novel form of *Bivens* claim because "special factors" counsel hesitation and the availability of alternative remedies makes a judicially created cause of action unnecessary and improper.

Before recognizing a *Bivens* claim, courts must consider whether the claim "arises in a 'new context.'"  *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).  If the context is new, courts will not extend *Bivens* to that context if "any special factors . . . counsel hesitation."  *Id.* (brackets and quotation marks omitted); *see also Abbasi*, 137 S. Ct. at 1857.  "[S]eparation-of-powers principles" are "central" to the special-factors analysis.  *Abbasi*, 137 S. Ct. at 1857.  In addition, the existence of alternative

15

remedies, by itself, "may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* at 1858; *see Hernandez*, 140 S. Ct. at 750 & n.12.

Here, "special factors" counsel hesitation because extending *Bivens* into this new context would raise significant separation-of-powers concerns.  As Plaintiff acknowledges, Congress has enacted multiple, detailed statutory schemes that comprehensively govern the use of electronic surveillance in circumstances like those present here.  *See* SAC ¶ 10 ("Congress and the executive branch have enacted rigorous requirements that must be met before electronic surveillance of a U.S. citizen is legally permitted.").  For example, the Wiretap Act establishes procedures for federal officials to obtain court authorization to conduct electronic surveillance, 18 U.S.C. § 2516, criminalizes unlawful surveillance, *id.* § 2511(1)(a), creates a civil cause of action, *id.* § 2520(a), and establishes a process for administrative discipline, *id.* § 2520(f).  The Stored Communications Act creates a civil cause of action to address statutory violations, *id.* §§ 2707(a), (g), and provides for the discipline of government employees who engage in misconduct, *id.* § 2707(d).  The Patriot Act, which Plaintiff's complaint invokes, includes a civil cause of action against the United States for violations of the surveillance laws.  *Id.* § 2712.  And, as Plaintiff's complaint also reflects, FISA itself is available to remedy abuses of the FISA process.  Where Congress has chosen to regulate the relevant sphere through comprehensive legislative schemes, the creation of a judicial remedy under *Bivens* raises serious separation-of-powers concerns.

The existence of "alternative methods of relief" independently precludes extension of *Bivens* to this setting.  *Abbasi*, 137 S. Ct. at 1863; *see Hernandez*, 140 S. Ct. at 750 n.12 (clarifying that the "alternative remedies" analysis is distinct from the "special factors" analysis).  "[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not."  *Abbasi*, 137 S. Ct. 1863.  Here, the statutory schemes identified above—including the civil causes of action under

FISA and the Patriot Act, which Plaintiff's complaint presently invokes—preclude a new cause of action under *Bivens*.

A number of courts have relied on the existence of comprehensive statutory schemes in declining to extend *Bivens* to the context of illegal electronic surveillance.  *See, e.g.*, *Corsi v. Mueller*, 422 F. Supp. 3d 51, 66-67 (D.D.C. 2019) (dismissing *Bivens* claim to hold Special Counsel Robert Mueller personally liable for alleged Fourth Amendment and FISA violations, based in part on the statutory schemes laid out in the Wiretap Act, the Stored Communications Act, and FISA), *aff'd*, 819 F. App'x 6 (D.C. Cir. 2020); *Brunoehler v. Tarwater*, 743 F. App'x 740, 742 (9th Cir. 2018) (declining to extend *Bivens* to an alleged unlawful wiretap in part because the Wiretap Act "provides for damages when agents improperly obtain wiretaps"); *Kelley v. FBI*, 67 F. Supp. 3d 240, 270 (D.D.C. 2014) (holding that, in light of alternative statutory schemes, "it would not be appropriate to imply a *Bivens* remedy" for the claim that individual defendants searched and seized plaintiffs' e-mails without their consent or judicial authorization).  The same result is warranted here.

## IV.  Ms. Page Is Entitled to Qualified Immunity on Plaintiff's Claims

Even if Plaintiff had sufficiently alleged that Ms. Page had personally participated in the violation of his Fourth Amendment rights or violated FISA, Ms. Page would be entitled to qualified immunity.[4]  Qualified immunity shields government officials from suit "unless a plaintiff pleads

---

[4] In the context of civil claims under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, the D.C. Circuit has held that qualified immunity is not available as a defense because the statute contains a safe harbor from liability based on good-faith reliance on a court warrant or order.  *Berry v. Funk*, 146 F.3d 1003, 1013 (D.C. Cir. 1998).  To the extent Plaintiff may seek to extend the reasoning of *Berry* to the FISA context based on FISA's statutory defense for "law enforcement or investigative officer[s]," 50 U.S.C. § 1809(b), it would not deprive Ms. Page of a qualified immunity defense because she was an FBI lawyer rather than a "law enforcement or investigative officer."  Thus, Ms. Page has a dispositive qualified immunity defense against the FISA claims as well as the *Bivens* claims.

facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  No court has ever ruled on whether or to what extent a government employee may be personally liable under FISA or the Fourth Amendment for electronic surveillance authorized by the FISC.  *Cf. Fazaga v. FBI*, 965 F.3d 1015, 1037-38 (9th Cir. 2020) (holding that FBI agents were entitled to qualified immunity on FISA claims arising from alleged warrantless surveillance because, "[a]s of 2006 and 2007, . . . no federal or state court decision had held that individuals generally have a reasonable expectation of privacy from surveillance in places of worship"), *cert. granted*, 2021 WL 2301971, --- U.S. --- (June 7, 2021); *see also In re Nat'l Sec. Agency Telecomm. Recs. Litig.*, 564 F. Supp. 2d 1109, 1111 (N.D. Cal. 2008) (referring to a "lack of precedents interpreting the remedial provisions of FISA").  Far from being "clearly established" in 2016 and 2017, the rights Plaintiff asserts *still* have not been recognized by a single court, and no reasonable official involved in the alleged events—let alone an official in Ms. Page's position—would have been on notice that she was engaging in a potential violation of Plaintiff's statutory or constitutional rights.

## CONCLUSION

For the reasons explained above, the Court should dismiss all of the claims against Ms. Page with prejudice.

Dated: Sept. 17, 2021

Respectfully submitted,

/s/ Amy Jeffress
Amy Jeffress (D.C. Bar No. 449258)
Robert J. Katerberg (D.C. Bar No. 466325)
Kaitlin Konkel (D.C. Bar No. 1021109)
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
Fax: (202) 942-5999

*Counsel for Defendant Lisa Page*