# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CARTER PAGE,

               Plaintiff,

        v.

JAMES COMEY, ANDREW
MCCABE, KEVIN CLINESMITH,
PETER STRZOK, LISA PAGE, JOE
PIENTKA III, STEPHEN SOMMA,
BRIAN J. AUTEN, DEPARTMENT OF
JUSTICE, FEDERAL BUREAU OF
INVESTIGATION, UNITED STATES
OF AMERICA, JOHN DOES 1-10,
JANE DOES 1-10,

               Defendants.

No. 20-cv-3460

# JOE PIENTKA III'S MEMORANDUM OF LAW
# IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

James M. Koukios (#477072)
Vanshika Vij (#1029822)
Robin Smith (#1685989)
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, D.C. 20037
Phone:  (202) 887-1500
Fax:  (202) 887-0763
JKoukios@mofo.com
VVij@mofo.com
RSmith@mofo.com

*Attorneys for Joe Pientka III*

**Table of Contents**

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

STANDARD OF REVIEW .................................................................................................. 6

ARGUMENT ....................................................................................................................... 6

    I.      Plaintiff's Claims Against Mr. Pientka Are Time-Barred ..................................... 7

    II.     Plaintiff's Alleged Facts Fail to State a FISA or *Bivens* Claim Against Mr. Pientka ................................................................................................................ 11

          A.     Plaintiff Fails to Plead FISA Claims Against Mr. Pientka ..................... 11

               1.     Plaintiff Fails to Allege that Mr. Pientka Intentionally Violated FISA with Respect to the Initial FISA Warrant (Claim 1). .................................................................................. 11

               2.     Plaintiff Concedes that Mr. Pientka Played No Role in the Renewal Warrants (Claims 2-4) .................................................... 15

               3.     Plaintiff Fails to Establish a Causal Connection Between Mr. Pientka's Alleged Conduct and the Alleged Injuries (Claims 1-4). .................................................................................. 17

          B.     Plaintiff Fails to Plead a *Bivens* Claim Against Mr. Pientka .................. 18

    III.    The *Bivens* Claim (Claim 6) Would Impermissibly Extend *Bivens* to a New Context. ..................................................................................................... 19

    IV.    The *Bivens* and FISA Claims Must Be Dismissed Because Mr. Pientka Is Entitled to Qualified Immunity and the Protections of the FISA Safe Harbor ............................................................................................................... 20

CONCLUSION .................................................................................................................. 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al-Haramain Islamic Found., Inc. v. Obama,*
   705 F.3d 845 (9th Cir. 2012) ....................................................................11, 14, 16

*Ashcroft v. al-Kidd,*
   563 U.S. 731 (2011)..................................................................................................21

\*\**Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).................................................................... 2 fn.2, 6, 15, 18

\*\**Attkisson v. Holder,*
   No. 1:17-cv-364 (LMB/JFA), 2017 WL 5013230 (E.D. Va. Nov. 1, 2017),
   *aff'd,* 925 F.3d 606 (4th Cir. 2019)......................................................... 11 fn.14, 12

*Bame v. Dillard,*
   No. CV 05-1833 (RMC), 2008 WL 11515525 (D.D.C. Mar. 28, 2008) ...............................10

*Banneker Ventures, LLC v. Graham,*
   798 F.3d 1119 (D.C. Cir. 2015) .......................................................................... 2 fn.3

*Bates v. Nw. Hum. Servs., Inc.,*
   466 F. Supp. 2d 69 (D.D.C. 2006) ......................................................... 14, 16 fn.15

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)..............................................................................6, 14, 16

\*\**Berman v. Crook,*
   293 F. Supp. 3d 48 (D.D.C. 2018) ...................................................................8

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,*
   403 U.S. 388 (1971)...................................................................................... *passim*

*Byrne v. Clinton,*
   410 F. Supp. 3d 109 (D.D.C. 2019), *aff'd,* No. 19-7120, 2020 WL 1487757
   (D.C. Cir. 2020) ......................................................................................17

*Clapper v. Amnesty Int'l, USA,*
   568 U.S. 398 (2013)..............................................................................17

*Corsi v. Mueller,*
   422 F. Supp. 3d 51 (D.D.C. 2019), *aff'd,* 819 F. App'x 6 (D.C. Cir. 2020)..........................20

*District of Columbia v. Wesby,*
   138 S. Ct. 577 (2018)..............................................................................21

*Doe v. Dep't of Justice*,
    753 F.2d 1092 (D.C. Cir. 1985) ......................................................................7

**Fazaga v. Fed. Bureau of Investigation*,
    965 F.3d 1015 (9th Cir. 2020) .............................................................11, 15

*Francis v. Miligan*,
    530 F. App'x 138 (3d Cir. 2013) ..................................................................9

*Franks v. Delaware*,
    438 U.S. 154 (1978) ....................................................................................18

*Herring v. United States*,
    555 U.S. 135 (2009) ....................................................................................19

*James Madison Ltd. By Hecht v. Ludwig*,
    82 F.3d 1085 (D.C. Cir. 1996) .......................................................1 fn.1, 15, 17

*Kapinski v. City of Albuquerque*,
    964 F.3d 900 (10th Cir. 2020) ....................................................................19

*Kelley v. FBI*,
    67 F. Supp. 3d 240 (D.D.C. 2014) ..............................................................14

*Loumiet v. United States*,
    968 F. Supp. 2d 142 (D.D.C. 2013) ...............................................................7

*Lovelien v. United States*,
    422 F. Supp. 3d 341 (D.D.C. 2019) ..........................................................6, 16

*Ortiz-Contreras v. Holder*,
    126 F. Supp. 3d 127 (D.D.C. 2015) ............................................................18

*Paez v. Mulvey*,
    915 F.3d 1276 (11th Cir. 2019) ..................................................................19

*Powers v. U.S. Parole Comm'n*,
    296 F. App'x 86 (D.C. Cir. 2008) ...............................................................13

*Rainsberger v. Benner*,
    913 F.3d 640 (7th Cir. 2019) ......................................................................18

*Reichle v. Howards*,
    566 U.S. 658 (2012) ....................................................................................21

*Simpkins v. D.C. Gov't*,
    108 F.3d 366 (D.C. Cir. 1997) ....................................................................18

*Smith v. Nixon*,
    606 F.2d 1183 (D.C. Cir. 1979) ................................................................. 8 fn.11

*Toumazou v. Turkish Republic of N. Cyprus*,
    71 F. Supp. 3d 7 (D.D.C. 2014) ........................................................................14

*United States v. Herring*,
    492 F.3d 1212 (11th Cir. 2007), *aff'd*, 555 U.S. 135 (2009) .................................13

*Wikimedia Found. v. Nat'l Sec. Agency/Cent. Sec. Serv.*,
    335 F. Supp. 3d 772 (D. Md. 2018) ........................................................14, 15, 16

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) ....................................................................................18

## Statutes

50 U.S.C. § 1809 ............................................................................................. *passim*

50 U.S.C. § 1810 ...............................................................................................11, 12

## Other Authorities

Ellen Nakashima et al., *FBI Obtained FISA Warrant to Monitor Former Trump
    Advisor Carter Page*, WASH. POST (Apr. 11, 2017) ..................................... *passim*

Federal Rule of Civil Procedure 8 .........................................................................14

Federal Rule of Civil Procedure 12(b)(6) .........................................................5, 6, 18

H.R. Rep. No. 95-1283 (1978)..............................................................................20

H.R. Rep. No. 95-1720 (1978)..............................................................................11

Letter from Carter Page to James Comey, Dir. of Fed. Bureau of Investigation
    (Sept. 25, 2016), https://perma.cc/D455-RT7Y ................................................9

Josh Rogin, *Trump's Russia adviser speaks out, calls accusations 'complete
    garbage,'* WASH. POST (Sept. 26, 2016) ....................................................... 9 fn.12

Michael Isikoff, *U.S. intel officials probe ties between Trump adviser and
    Kremlin*, YAHOO! NEWS (Sept. 23, 2006), https://www.yahoo.com/news/u-s-
    intel-officials-probe-ties-between-trump-adviser-and-kremlin-175046002.html.....................9

## INTRODUCTION

Plaintiff brings a *Bivens* claim and four Foreign Intelligence Surveillance Act (FISA) claims against Defendant Joe Pientka, based on his role as an FBI Supervisory Special Agent (SSA) temporarily assigned to Crossfire Hurricane, an investigation into possible links between individuals associated with Donald Trump's presidential campaign and Russian interference in the 2016 election.  Plaintiff alleges that several defendants, including Mr. Pientka, violated FISA and the Fourth Amendment in connection with four FISA warrants authorizing the FBI to surveil Plaintiff for possible violations of the Foreign Agent Registration Act (FARA).  But the sum of Plaintiff's allegations, taken as true, fails to amount to an actionable claim.  Despite the opportunity to amend his complaint, Plaintiff references Mr. Pientka by name in only six of the Second Amended Complaint's 311 paragraphs.  Plaintiff simply cannot offer more because, as Plaintiff concedes, Mr. Pientka was involved in just one aspect of one of the four FISA warrants at issue here.  Specifically, Plaintiff alleges only that Mr. Pientka, as an FBI SSA, reviewed the Woods File for the initial FISA application in October 2016.  Plaintiff does not (and cannot) plausibly allege that Mr. Pientka played a role in securing the three renewal FISA applications from the Foreign Intelligence Surveillance Court (FISC) or in conducting surveillance under the three renewal FISA warrants, all of which occurred after Mr. Pientka had left the Crossfire Hurricane team and returned to his permanent position at the FBI's Washington Field Office (WFO) in January 2017.

Each of the five claims asserted against Mr. Pientka fails as a matter of law and should be dismissed with prejudice.[1]  ***First***, all of Plaintiff's claims against Mr. Pientka are time-barred.

---

[1] Because further amendment of the Complaint would be futile, Plaintiff's claims should be dismissed with prejudice.  *James Madison Ltd. By Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).

***Second***, Plaintiff's claims against Mr. Pientka fail to allege sufficient facts that would establish a cause of action under either FISA or *Bivens*.  ***Third***, Plaintiff's *Bivens* claim also fails because it would impermissibly extend *Bivens* to a new context.  ***Finally***, even if Plaintiff had timely and sufficiently alleged FISA or *Bivens* claims, Mr. Pientka would be immune from liability under FISA's safe harbor, qualified immunity, or both.

## BACKGROUND[2]

From approximately Monday, August 1, 2016, until Friday, January 7, 2017, then-FBI SSA Joe Pientka was on a temporary duty assignment to Crossfire Hurricane.  *See* Second Amended Complaint (SAC) ¶¶ 5, 31, 198; DOJ Office of the Inspector General Report (OIG) at 81, 283.[3] Mr. Pientka "rotated off the Crossfire Hurricane team" and returned to his permanent assignment at the FBI's WFO on Monday, January 9, 2017.  OIG at 283; *see also* SAC ¶ 31.

Plaintiff, already the subject of a pre-existing Russian counterintelligence investigation being run out of the FBI's New York Field Office and a former "volunteer member of an informal foreign policy advisory committee" for the Trump campaign, was among those investigated as part of Crossfire Hurricane.  SAC ¶ 21; OIG at 61-63.  After the investigation began, the FBI sought

[2] For the sake of judicial economy, Defendant Joe Pientka joins the Motions to Dismiss of Defendants James Comey, Andrew McCabe, Kevin Clinesmith, Peter Strzok, Lisa Page, Stephen Somma, and Brian Auten (the Co-Defendants), and incorporates herein by reference all arguments set forth in those motions that apply equally to Mr. Pientka.  Mr. Pientka writes separately to address the factual allegations relevant to his renewed motion to dismiss.  This motion assumes, as it must, the "veracity" of any "well-pleaded factual allegations" in the Second Amended Complaint, but not pleadings that "are no more than conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Mr. Pientka reserves his right to contest Plaintiff's allegations should any of his claims survive this motion to dismiss.

[3] Plaintiff references and relies upon information contained in a Department of Justice Office of the Inspector General Report titled "Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation" (revised Dec. 2019) throughout the Second Amended Complaint.  *See* SAC ¶¶ 41, 42, 60, 233.  This Court may therefore consider the entirety of the OIG Report in this motion without converting it into one for summary judgment.  *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) ("Incorporation by reference can also amplify pleadings where the document is not attached by the plaintiff, but is referred to in the complaint and integral to the plaintiff's claim." (alterations and citations omitted)).  Mr. Pientka is referenced in the OIG Report as "SSA 1."

authorization from the FISC to conduct electronic surveillance of Plaintiff.  SAC ¶ 8.  To establish the necessary probable cause, the FBI relied on information from Christopher Steele, a Confidential Human Source (CHS) for the FBI.  *Id.* ¶ 9.  Steele had provided the FBI with certain "politically motivated" reports that alleged Plaintiff had improper or unlawful communications with two Russians with close ties to Russian President Vladimir Putin.  *Id.* ¶¶ 15, 74.  The FBI and DOJ ultimately prepared and submitted four FISA applications to conduct electronic surveillance of Plaintiff—an initial application and three renewal applications, all of which were granted by the FISC.  *Id.* ¶ 3.[4]

Mr. Pientka was involved only in the initial FISA application, which was submitted to, and granted by, the FISC in October 2016 during his temporary duty assignment to Crossfire Hurricane.  *Id.* ¶¶ 95, 100, 198, 199.  Plaintiff does not allege that Mr. Pientka played any role in writing the initial FISA application and, thus, does not allege that Mr. Pientka personally inserted false statements into, or intentionally withheld material information from, the initial FISA application.  Nor does Plaintiff allege that Mr. Pientka engaged in surveillance authorized by the resulting warrant, or that he used or disclosed any information derived from such surveillance.  Rather, Plaintiff alleges that "Pientka was responsible for compliance with the Woods Procedures by confirming the completion of the Woods File for the [initial] warrant application, and for double checking the factual accuracy review to confirm that the file contained appropriate documentation for each of the factual assertions in the [initial] FISA application."  *Id.* ¶ 198.[5]  According to Plaintiff's allegations, Mr. Pientka committed two errors in the course of his Woods review:  (1) he

---

[4] The Second Amended Complaint describes the FISA warrants as the "First, Second, Third, and Fourth FISA Warrants."  For clarity, as used in this brief, the "initial FISA warrant" corresponds with the "First FISA Warrant" and the "renewal FISA warrants" correspond with the "Second, Third, and Fourth FISA Warrants."  References to the applications for these warrants follow the same convention.

[5] The Woods Procedures are discussed in detail in Section II.A.i.

failed to verify a statement in the initial FISA application that Steele's reporting had been corroborated and used in criminal proceedings; and (2) he failed to confirm that Steele's handling agent had reviewed and approved that content. *Id.* ¶ 199. From this, Plaintiff concludes, "[c]ontrary to Pientka's representation, the Woods File was inaccurate, incomplete, or unsupported by appropriate documentation." *Id.* ¶ 198.

Mr. Pientka was ***not*** involved in the renewal FISA applications or any surveillance pursuant to the renewal FISA warrants. The three renewal applications were submitted to the FISC between January 12, 2017, and June 29, 2017. *Id.* ¶¶ 111, 122, 133. Plaintiff does not allege—nor could he—that Mr. Pientka played any role in writing, reviewing, or completing the Woods Procedure for the renewal applications. *Id.* ¶¶ 198-99. Similarly, Plaintiff does not and cannot allege any facts to show that Mr. Pientka personally played any role in engaging in, or in disclosing or using information obtained from, surveillance pursuant to the renewal FISA warrants. This is because Mr. Pientka had already "rotated off the Crossfire Hurricane team" and returned to WFO by the time the renewal applications were submitted to the FISC. OIG at 283; *see also* SAC ¶ 31.

Despite the general secrecy of FISA investigations, the FBI's surveillance activities did not go unnoticed by Plaintiff. Plaintiff suspected that he was under surveillance at least as early as March 2017, when he told other FBI agents (not Mr. Pientka, who had already returned to WFO) "that he believed he was under surveillance." OIG at 220. Plaintiff's belief was publicly confirmed a month later, when, on April 11, 2017, the *Washington Post* reported that the FBI and the Justice Department had obtained an initial FISA warrant in October 2016 and multiple renewal warrants after that, allowing the FBI to monitor Plaintiff's communications. SAC ¶ 221.[6] Plaintiff

---

[6] Similar to the OIG Report, the Court may consider the entirety of the *Post* article, which Plaintiff references and relies upon in the Second Amended Complaint. The same is true for the *Yahoo! News* article and Plaintiff's letter to Mr. Comey, discussed below.

was interviewed for the article, telling the *Post*, "This confirms all of my suspicions about unjustified, politically motivated government surveillance[.]"  Ellen Nakashima et al., *FBI Obtained FISA Warrant to Monitor Former Trump Advisor Carter Page*, WASH. POST (Apr. 11, 2017), http://wapo.st/2pr7kpE [hereinafter, April 2017 *Post* article].  Plaintiff also suggested to the *Post* that the surveillance was based, at least in part, on what he called "the dodgy dossier" of Steele allegations.  *Id.*

Almost four years after speaking to the *Post* about the FISA warrants and surveillance, Plaintiff initiated this lawsuit.  Mr. Pientka and the other defendants filed motions to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See, e.g.*, Dkt. No. 68. After filing notice of his intent to amend his complaint yet again, Dkt. No. 72, Plaintiff filed a Second Amended Complaint on June 8, 2021.  Dkt. No. 73.  The Second Amended Complaint alleges the same five causes of action against Mr. Pientka, all of which suffer from the same factual and legal deficiencies as their predecessors.  Indeed, Plaintiff references Mr. Pientka by name in only six of the Second Amended Complaint's 311 paragraphs.[7]   Four claims assert FISA violations—one claim corresponding to each FISA application, including the three renewal FISA applications in which Plaintiff concedes that Mr. Pientka played no part.   SAC ¶¶ 256-74 (Claims 1-4).  The fifth claim against Mr. Pientka alleges violations of Page's Fourth Amendment rights under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  SAC ¶¶ 283-89 (Claim 6).  Mr. Pientka again moves to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[7] *See* SAC ¶ 31 (alleging that Mr. Pientka was an SSA at WFO being sued in his individual capacity); ¶¶ 106, 109 (alleging that Mr. Pientka and others met with officials from DOJ and the State Department, respectively, in November 2016, to discuss Steele); ¶¶ 198-200 (alleging that Mr. Pientka committed errors in the Woods review for the initial FISA application and that Mr. Pientka was aware of Plaintiff's support to the FBI in a 2016 criminal case against a Russian spy).

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the factual allegations in a plaintiff's complaint.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering a motion to dismiss, the Court must accept as true only the complaint's well-pleaded factual allegations.  *Id.* at 537.  Mere labels, conclusions, or formulaic recitations of the elements of a cause of action are insufficient to state an actionable claim.  *Id.* at 555.  To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face."  *Id.* at 570.  A claim is plausible only if the complaint contains sufficient factual matter to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plausibility standard is not met when a complaint merely "tenders 'naked assertions' devoid of 'further factual enhancement.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

When bringing a claim against government actors, a plaintiff must plausibly allege "that each Government-official defendant, through the official's own individual actions, has violated the Constitution" or other applicable law.  *Id.* at 676.  Failing to plead facts that would establish that an official "personally participated" in the alleged misconduct requires dismissal.  *See Lovelien v. United States*, 422 F. Supp. 3d 341, 349–50 (D.D.C. 2019) (dismissing *Bivens* claims against government officials due to failure to allege that the officials "personally participated" in the alleged conduct).

## ARGUMENT

Plaintiff's claims against Mr. Pientka should be dismissed for several separate and independent reasons.  ***First***, all of the claims are time-barred.  ***Second***, even if the claims were not time-barred, Plaintiff has failed to adequately plead either a FISA claim or a *Bivens* claim against Mr. Pientka.  ***Third***, Plaintiff's allegations would impermissibly extend *Bivens* into a new context.

**Fourth**, even assuming that Plaintiff's claims were timely and well-pleaded, Mr. Pientka is entitled to the protections of FISA's safe-harbor provision, qualified immunity, or both.

## I.  Plaintiff's Claims Against Mr. Pientka Are Time-Barred.

Mr. Pientka joins and incorporates by reference the statute-of-limitations argument set forth in Sections I.A and II.A of the Clinesmith Brief.  In short, a one-year limitations period applies because the "gist" of the FISA and *Bivens* claims most closely resembles libel, slander, or invasion of privacy.  *Doe v. Dep't of Justice*, 753 F.2d 1092, 1114 (D.C. Cir. 1985).  Even if the two-year limitations period for the Wiretap Act or the Stored Communications Act or D.C.'s three-year catch-all limitations period applied, however, Plaintiff's claims are still time-barred.  Because Plaintiff was aware of the FISA surveillance at least three years and 231 days before he filed his original complaint on November 27, 2020, far beyond the bounds of any applicable statute of limitations, his claims should be dismissed as time-barred.

Plaintiff had a "complete and present cause of action" no later than April 11, 2017.  *Loumiet v. United States*, 968 F. Supp. 2d 142, 150 (D.D.C. 2013) (quotation omitted).  As Plaintiff alleges, "On Tuesday, April 11, 2017, the Washington Post broke the story about the FISA warrants targeting Dr. Page, including that a FISA warrant had been issued in 2016 and had been renewed at least once." SAC ¶ 221.  The very first sentence of the *Post* article references the FISA warrant at the heart of Claim 1, the only FISA warrant in which Mr. Pientka was involved:  "The FBI obtained a secret court order in October 2016 to monitor the communications of a former adviser to presidential candidate Donald Trump, part of an investigation into possible links between Russia and the campaign, law enforcement and other U.S. officials said."  April 2017 *Post* article.[8]  The

---

[8] The next sentence explains, "The FBI and the Justice Department obtained the warrant targeting Carter Page's communications after convincing a Foreign Intelligence Surveillance Court judge that there was

article also revealed the existence of the renewal warrants, reporting that, "[s]ince the 90-day warrant was first issued, it has been renewed more than once by the FISA court[.]" *Id.* There is no doubt that Plaintiff was aware of the *Post* article at the time: he was interviewed for the article, telling the *Post*, "This confirms all of my suspicions about unjustified, politically motivated government surveillance[.]"[9] *Id.* Plaintiff was thus on notice of the FISA surveillance underlying Claims 1-4 no later than April 11, 2017, over three-and-a-half years before filing the original complaint. *Berman v. Crook*, 293 F. Supp. 3d 48, 56 (D.D.C. 2018) (holding that plaintiff's *Bivens* claim accrued "when he learned of the search of his office"). Thus, under any potentially applicable limitations period, Plaintiff's claims are time-barred and should be dismissed with prejudice.

Attempting to avoid the time bar,[10] Plaintiff alleges that the "secrecy" of the FISA process prevented him from discovering "any unlawful or unauthorized acts by DOJ and FBI employees[.]" SAC ¶ 65. This attempt to resuscitate his FISA claims fails. Regardless of whether the FISA process is generally kept secret, any secrecy regarding the FISA warrants here disappeared emphatically with the April 11, 2017 *Post* article. It is beyond dispute that Plaintiff knew that he had been surveilled pursuant to those warrants as of April 11, 2017, and that knowledge in and of itself triggered accrual of his claims. *Berman*, 293 F. Supp. 3d at 56.[11]

---

probable cause to believe Page was acting as an agent of a foreign power, in this case Russia, according to the officials." *Id.*

[9] Because Plaintiff had expressed his suspicions to FBI agents in March 2017, telling them "that he believed he was under surveillance" then, OIG at 220, his FISA claims arguably accrued even earlier than April 11, 2017.

[10] Plaintiff added the allegations in paragraphs 62 through 69 in response to the statute-of-limitations arguments in the Defendants' first set of motions to dismiss. *See, e.g.*, Dkt. No. 68 at 6-8.

[11] Because Plaintiff was aware of the FISA warrants and surveillance as a result of the *Post* article, this case is very different than *Smith v. Nixon*, 606 F.2d 1183, 1191 (D.C. Cir. 1979), where government secrecy and other circumstances prevented the plaintiff from discovering the surveillance.

Plaintiff further alleges that the OIG Report was "the first official authoritative source to disclose that the FISA warrants in their entirety lacked probable cause and due to materials [sic] errors and omissions were unlawfully obtained." SAC ¶ 233. Whether the OIG Report was "authoritative," and whether it provided additional detail regarding the substance and procurement of the FISA warrants, is irrelevant to the statute-of-limitations analysis. *See Francis v. Miligan*, 530 F. App'x 138, 139 (3d Cir. 2013) (holding that plaintiff was on notice when he learned that his car had been searched without consent even if "he did not know he was injured, i.e., that the search and seizure were allegedly illegal" at the time).

But even assuming *arguendo* that more was required to put him on notice, Plaintiff's allegations provide more than enough detail to do so. The Second Amended Complaint alleges that Plaintiff was aware of the FBI's reliance on the Steele dossier—which underpins his allegation that the surveillance was unlawful—as early as September 23, 2016. Plaintiff alleges that on that date, a *Yahoo! News* article reported on Steele's allegations that Plaintiff had met with two Russians with close ties to Russian President Vladimir Putin. SAC ¶ 15; Michael Isikoff, *U.S. intel officials probe ties between Trump adviser and Kremlin*, YAHOO! NEWS (Sept. 23, 2006), https://www.yahoo.com/news/u-s-intel-officials-probe-ties-between-trump-adviser-and-kremlin-175046002.html. In response to the *Yahoo! News* article, Plaintiff wrote a letter to then-FBI Director James Comey on September 25, 2016, in which he "categorically denied that he had any such communications with the Russian individuals," and stated that he believed that Steele's allegations were politically motivated. SAC ¶ 15;[12] Letter from Carter Page to James Comey, Dir.

---

[12] The next day, the *Washington Post* published an opinion piece describing an interview with Plaintiff in which he called the allegations of his meeting with two Russians "complete garbage." Josh Rogin, *Trump's Russia adviser speaks out, calls accusations 'complete garbage,'* WASH. POST (Sept. 26, 2016), https://www.washingtonpost.com/news/josh-rogin/wp/2016/09/26/trumps-russia-adviser-speaks-out-calls-accusations-complete-garbage/. Plaintiff made it clear during the interview that he had read "the

of Fed. Bureau of Investigation (Sept. 25, 2016), https://perma.cc/D455-RT7Y.  Thus, Plaintiff

had reason to believe by at least September 2016 that the FBI was investigating what he believed

to be false, politically motivated claims made by Steele.  And Plaintiff connected those claims to

the FISA warrants in April 2017, "dismiss[ing] [in his interview with the *Post*] what he called 'the

dodgy dossier' of false allegations."  April 2017 *Post* article.  In other words, Plaintiff was on

notice at least by April 2017, not only of the FISA surveillance itself but also of what he alleges

to be the fundamental flaw of the FISA warrants:  their reliance on the allegations in the Steele

dossier.[13]

Finally, it is irrelevant that Plaintiff might not have known the precise identities of the

agents involved in the FISA applications on April 11, 2017.  As he has done (belatedly) in the

Second Amended Complaint, Plaintiff could have filed suit against the FBI, the Justice

Department, and "JOHN DOES 1-10" as soon as the *Post* article was published, and amended the

complaint when he later learned the individual defendants' identities.  *See Bame v. Dillard*, No. CV

05-1833 (RMC), 2008 WL 11515525, at *3 (D.D.C. Mar. 28, 2008) (dismissing claims with

prejudice where plaintiffs "offered no reason for failing to institute this action years earlier, which

would have enabled them to ascertain the identities of the 'unknown' defendants well before the

limitations period ran").  He did not do so, and Claims 1 through 4 and 6 should be dismissed.

---

various articles" and that he had asked the FBI Director to "swiftly dispose of the investigation into his
meetings in Moscow, if such an investigation even exists."  *Id.*

13 *See, e.g.*, SAC ¶ 9 (alleging that the FBI used "political opposition research" from Steele "to
unlawfully conceal" the lack of probable cause for the FISA warrants); ¶ 74 (alleging that Steele had
provided the FBI with certain reports that alleged Plaintiff had improper or unlawful communications
with two Russians with close ties to Russian President Vladimir Putin); ¶ 95 (alleging that the First FISA
Warrant application contained Steele's allegations that Plaintiff had met with the two Russian officials).
In total, the Second Amended Complaint uses the word "Steele" over 80 times.

## II. Plaintiff's Alleged Facts Fail to State a FISA or *Bivens* Claim Against Mr. Pientka.

### A.    Plaintiff Fails to Plead FISA Claims Against Mr. Pientka.

Plaintiff's FISA claims against Mr. Pientka are not only time-barred, but also wholly unsupported by the factual allegations in the Second Amended Complaint.  To state a claim under 50 U.S.C. § 1810, Plaintiff must plausibly allege that (1) he is an "aggrieved person[,]" (2) he was "subjected to an electronic surveillance," and (3) Mr. Pientka violated 50 U.S.C. § 1809 by either (a) intentionally engaging in unauthorized electronic surveillance or (b) intentionally disclosing or using information obtained through electronic surveillance that Mr. Pientka knew was not properly authorized.  *Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1030 (9th Cir. 2020); *Al-Haramain Islamic Found., Inc. v. Obama*, 705 F.3d 845, 851 (9th Cir. 2012) (holding that a cause of action under § 1810 is "predicated on" a violation of 50 U.S.C. § 1809(a)). [14]  Nowhere in the Second Amended Complaint does Plaintiff allege a single fact that would establish that Mr. Pientka—whose only role was to conduct the Woods Review for the initial FISA application— intentionally "engage[d] in electronic surveillance" of Plaintiff or "disclose[d] or use[d]" the fruits of the FISA surveillance.  All four claims should therefore be dismissed.

### 1.    Plaintiff Fails to Allege that Mr. Pientka Intentionally Violated FISA with Respect to the Initial FISA Warrant (Claim 1).

Plaintiff's allegations fail to state a claim against Mr. Pientka with respect to the initial FISA warrant.  To satisfy the third element of 50 U.S.C. § 1810, Plaintiff must allege that Mr. Pientka (a) intentionally engaged in unauthorized electronic surveillance or (b) intentionally

---

[14] *See also* H.R. Rep. No. 95-1720 (1978), at 34 (1810 gives a "cause of action to any aggrieved person about whom information has been disclosed or used in violation of the criminal penalty provisions;" thus, "the civil liability of intelligence agents under this act should coincide with the criminal liability"); *Attkisson v. Holder*, No. 1:17-cv-364 (LMB/JFA), 2017 WL 5013230, at *12 (E.D. Va. Nov. 1, 2017), *aff'd*, 925 F.3d 606 (4th Cir. 2019) ("Any 'aggrieved person' has a 'cause of action against any person who committed' a 'violation' of § 1809.") (quoting 50 U.S.C. § 1810).

disclosed or used information obtained through electronic surveillance that Mr. Pientka knew was not properly authorized.   But reviewing a Woods File for a FISA application—the only act attributed to Mr. Pientka—does not constitute "engag[ing] in electronic surveillance" or "disclos[ing] or us[ing] information obtained . . . by electronic surveillance."   We are aware of no § 1809 or § 1810 cases based on an allegedly faulty Woods review, and it would stretch the meaning of § 1809 beyond its limits to find liability based solely on purported errors in the Woods Process.   *See Attkisson v. Holder*, No. 17-cv-364 (LMB/JFA), 2017 WL 5013230, at *12 (E.D. Va. Nov. 1, 2017) (dismissing FISA claims where the complaint failed to allege that the defendant "personally engaged in the alleged surveillance").   Claim 1 should therefore be dismissed.

But even assuming *arguendo* that reviewing a Woods File could somehow constitute "engag[ing] in electronic surveillance," Plaintiff's factual pleadings fall far short of the standard necessary to establish an intentional violation of § 1809.   As explained in the OIG Report, the FBI's Woods Procedures require the case agent who requested the FISA application to create and maintain a "Woods File" that contains:   (1) supporting documentation for every factual assertion contained in a FISA application; and (2) supporting documentation and the results for a number of searches and verifications required under the Woods Procedures.   OIG at 43.   When the FISA application contains reporting from a CHS, the Woods File must contain documentation from the CHS's handling agent, CHS coordinator, or either of their immediate supervisors stating that: (1) this individual has reviewed the facts presented in the FISA application regarding the CHS's reliability and background; and (2) based on this review, the facts presented in the FISA application are accurate.   *Id*. at 43-44.   After the Woods File is created, the case agent must verify each factual assertion in the FISA application and ensure that the supporting documentation is placed in the Woods File.   *Id*. at 44.   "Verification" of a fact attributed to a source means verifying that the fact

came from the source and that the application accurately stated what the source said; the Woods Procedures do not require independent corroboration. *Id*. at 45.  Moreover, the Woods Procedures focus on the facts actually asserted in a FISA application, not those that are missing. *Id.* at 374.

After the case agent completes these steps, he or she submits the Woods Form and the Woods File to his or her SSA.  *Id*. at 44.  The SSA is then responsible for reviewing the Woods File and confirming that it contains supporting documentation for each factual assertion in the FISA application.  *Id*.  After the SSA completes this review, the SSA signs the Woods Form, which is transmitted to FBI Headquarters.  *Id*.  After other officials complete a number of additional steps, the FISA application is submitted to the FISC.

Here, Plaintiff correctly alleges that Mr. Pientka was the SSA responsible for reviewing the Woods File compiled by the case agent and "double checking . . . the file contained appropriate documentation for each of the factual assertions in the [initial] FISA application."  SAC ¶ 198.  Plaintiff specifically alleges that Mr. Pientka's review fell short in two ways:  (1) he failed to verify that Steele's reporting had been corroborated and used in criminal proceedings; and (2) he failed to confirm that Steele's handling agent had reviewed and approved the content in the first FISA application.

Plaintiff pleads no facts to establish that these shortcomings were the result of **Mr. Pientka's intent** to violate § 1809.  Allegations establishing negligence are insufficient to state a FISA claim.  *See Powers v. U.S. Parole Comm'n*, 296 F. App'x 86, 87 (D.C. Cir. 2008) (dismissing claim under the Privacy Act because plaintiff "fail[ed] to allege the requisite willfulness"); *United States v. Herring*, 492 F.3d 1212, 1217-18 (11th Cir. 2007), *aff'd*, 555 U.S. 135 (2009) (failure of a law enforcement official to update records was conduct that was "negligent failure to act, not a deliberate or tactical choice to act").

Plaintiff's "talismanic" allegation that "[t]he individual Defendants' acts were willful, knowing, deliberate and malicious," SAC ¶ 261, is nothing more than "labels and conclusions" insufficient to state a claim upon which relief can be granted. *Kelley v. FBI*, 67 F. Supp. 3d 240, 257 (D.D.C. 2014) (quoting *Twombly*, 550 U.S. at 555). Especially where, as here, "the civil cause of action . . . is premised upon the ***individual agent's*** 'violation of section 1809,'" *Wikimedia Found. v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 335 F. Supp. 3d 772, 784 (D. Md. 2018) (emphasis added, quoting *Al-Haramain*, 705 F.3d at 854), a plaintiff must "distinguish between the defendants when describing the factual underpinnings of the complaint" and cannot rely on a generalized allegation of the individual defendants' collective intent "as if they were a single, undifferentiated mass," *Bates v. Nw. Hum. Servs., Inc.*, 466 F. Supp. 2d 69, 85 (D.D.C. 2006). To the contrary, it is inconsistent with Federal Rule of Civil Procedure 8 to "lump[] all the defendants together" and thus deprive the court of a "factual basis to distinguish their conduct." *Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014) (quotation omitted).

Plaintiff's failure to plead intent is not the result of oversight or sloppiness: it is because there are no facts to plead. Indeed, while OIG was troubled by the errors it found in the FISA warrant application process, OIG was nevertheless clear that it "did not find documentary or testimonial evidence of intentional misconduct on the part of the case agents who assisted [the National Security Division's Office of Intelligence] in preparing the applications, or the agents and supervisors who performed the Woods Procedures[.]" OIG at 376-77, 413; *see also id*. at 359 (finding no "documentary or testimonial evidence that political bias or improper motivation influenced the FBI's decision to seek FISA authority on Carter Page"). The OIG also acknowledges that Mr. Pientka told OIG that it was "his 'intent' as the case supervisor to provide accurate information in the FISA application about Steele's history with the FBI." *Id*. at 162.

14

Nothing in the Second Amended Complaint, let alone the prior pleadings, is to the contrary.

To the extent that Plaintiff intends to impute to Mr. Pientka the intent of the case agent who assembled the Woods File, this would also fail.  First, Plaintiff fails to allege facts that would establish that the case agent intentionally violated § 1809.  As noted above, OIG found no evidence of intentional misconduct in performance of the Woods Procedures.  Second, "government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *Fazaga*, 965 F.3d at 1039 (quoting *Iqbal*, 556 U.S. at 676).

Plaintiff's new allegation that "Pientka was aware [at the time of the initial FISA warrant] of Dr. Page's prior support to the FBI in a 2016 federal case in New York involving the incarceration and later deportation of a Russian spy," SAC ¶ 200, also fails to provide a basis for finding Mr. Pientka liable on Claim 1.  This allegation does not establish that Mr. Pientka "engage[d] in electronic surveillance" or "disclose[d] or use[d]" the fruits of the FISA surveillance.  Nor would this allegation establish a failure in the Woods Procedures.  *See* OIG at 374 (explaining that Woods Procedures focus on the facts actually asserted in a FISA application, not those that are missing).  Because further amendment of the pleadings would be futile, the Court should dismiss Claim 1 with prejudice.  *James Madison Ltd. By Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).

### 2.    Plaintiff Concedes that Mr. Pientka Played No Role in the Renewal Warrants (Claims 2-4).

As to Claims 2 through 4, Plaintiff concedes that Mr. Pientka was not personally involved with the three renewal warrants in any way.  This is fatal to the claims related to those warrants.  *See Iqbal¸* 556 U.S. at 676 (plaintiff must plausibly allege "that each Government-official defendant, through the official's own individual actions, has violated the Constitution" or other applicable law); *Wikimedia Found.*, 335 F. Supp. 3d at 784 ("[T]he civil cause of action in § 1810

is premised upon the ***individual agent's*** 'violation of section 1809'") (emphasis added, quoting

*Al-Haramain*, 705 F.3d at 854)); *Lovelien*, 422 F. Supp. 3d at 349-50 (failure to allege that the

officials "personally participated" in the alleged conduct resulted in dismissal).

The Second Amended Complaint, like the Amended Complaint, alleges only that

Mr. Pientka reviewed the Woods File for the ***initial*** FISA application (Claim 1).  SAC ¶¶ 198-99.

Plaintiff does not allege any facts that would establish that Mr. Pientka engaged in any electronic

surveillance pursuant to the renewal warrants, used or disclosed any information resulting from

such surveillance, or even reviewed the Woods File for the renewal applications.  Nor can he.

Mr. Pientka "rotated off the Crossfire Hurricane team in January 2017," before the first renewal

application was submitted to the FISC.  OIG at 283.  Plaintiff's "formulaic recitation" of the

elements of a FISA claim against all of the individual defendants in Claims 2 through 4 is plainly

insufficient to state a claim against Mr. Pientka.[15]  *See Twombly*, 550 U.S. at 555.  In short, Plaintiff

has failed to allege facts establishing that Mr. Pientka engaged in, used, or disclosed the products

of any electronic surveillance of Plaintiff or that Mr. Pientka intended to violate § 1809 in

connection with the renewal warrants.  Claims 2 through 4 should be dismissed with prejudice.

Plaintiff's two allegations against Mr. Pientka in the section labeled "The Second FISA

Warrant" in the Second Amended Complaint do not save Claim 2 from dismissal.  This is because

neither allegation is actually related to that warrant.  Plaintiff alleges that in November 2016,

roughly two months before the first renewal application that led to the second FISA warrant was

filed with the FISC, Mr. Pientka and others met with a DOJ official, SAC ¶ 106, and a State

Department official, *id.* ¶ 109, to discuss the CHS.  These allegations have nothing to do with

---

[15]  Similarly, and especially in light of the facts described above, Plaintiff's conclusory and undifferentiated electronic surveillance allegations in paragraphs 121-23 do not save these claims from dismissal.  *See Bates v. Nw. Hum. Servs., Inc.*, 466 F. Supp. 2d 69, 85 (D.D.C. 2006).

electronic surveillance.  Neither paragraph mentions the renewal application or warrant, nor is there any reasonable basis to infer from them that Mr. Pientka intentionally violated § 1809 with respect to that warrant.  Plaintiff does not name Mr. Pientka even once in the sections labeled "The Third FISA Warrant" and "The Fourth FISA Warrant."

Mr. Pientka raised his lack of involvement in the FISA renewals in his original Motion to Dismiss, Dkt. No. 68-1 at 9-11, yet Plaintiff failed to allege *any* new facts in the Second Amended Complaint that suggest Mr. Pientka was personally involved in the FISA renewals.  Because further amendment of the pleadings would be futile, the Court should dismiss Claims 2-4 with prejudice.  *James Madison Ltd.*, 82 F.3d at 1099.

### 3.    Plaintiff Fails to Establish a Causal Connection Between Mr. Pientka's Alleged Conduct and the Alleged Injuries (Claims 1-4).

Mr. Pientka joins and incorporates by reference the argument regarding the lack of a causal connection between Plaintiff's alleged injuries and the Defendants' alleged conduct set forth in Part IV of the Somma Brief.  Specifically as to Mr. Pientka, Plaintiff fails to allege facts that would plausibly connect Mr. Pientka's alleged failure to detect two errors in the Woods File to the reputational and financial harm that Plaintiff allegedly suffered.  *See Byrne v. Clinton*, 410 F. Supp. 3d 109, 118 (D.D.C. 2019) (alleged reputational harms not fairly traceable to defendants where the complaint "is devoid of any allegedly defamatory statement actually *made* by [the defendants]"), *aff'd*, No. 19-7120, 2020 WL 1487757 (D.C. Cir. 2020) (emphasis in original).  At most, Plaintiff "can only speculate as to whether" the initial FISA application would have been submitted to the FISC had Mr. Pientka detected the Woods File errors and as to whether the FISC would have authorized the initial FISA warrant had it been error free.  *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 413-14 (2013).  By relying on such "guesswork," *id*. at 413, the Second Amended Complaint fails to adequately allege that Plaintiff's injuries are fairly traceable to Mr.

Pientka's conduct.  This, too, is grounds for dismissal.

> **B.      Plaintiff Fails to Plead a *Bivens* Claim Against Mr. Pientka.**

Plaintiff's *Bivens* claim should also be dismissed under Rule 12(b)(6) for failing to adequately allege facts that, if proved, would establish a *Bivens* claim against Mr. Pientka.  "[A] *Bivens* claim is brought against the individual officer for his or her own acts, not the acts of others." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017).  Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Simpkins v. D.C. Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997) ("The complaint must at least allege that the defendant federal official was personally involved in the illegal conduct."); *Ortiz-Contreras v. Holder*, 126 F. Supp. 3d 127, 130 (D.D.C. 2015) (dismissing action against individual defendants in part because the complaint "alleged no facts that would support a claim that any of these Defendants were individually involved in the constitutional violations Plaintiff alleges").

Plaintiff fails to establish a Fourth Amendment violation by Mr. Pientka.  Plaintiff does not allege any facts that would establish that Mr. Pientka engaged in surveillance under any of the FISA warrants.  Plaintiff acknowledges that Mr. Pientka did not write the initial FISA application, and the Woods Procedures do not call upon an SSA to evaluate a FISA application for missing facts.  Thus, Plaintiff does not and cannot allege that Mr. Pientka intentionally or recklessly included material false statements in, or withheld material information from, the initial FISA application.  *See Rainsberger v. Benner*, 913 F.3d 640, 643 (7th Cir. 2019) (discussing *Franks v. Delaware*, 438 U.S. 154, 168 (1978)).  Nor, as discussed above, does Plaintiff allege any facts connecting Mr. Pientka to the renewal FISA applications or warrants.  Accordingly, Plaintiff plainly cannot establish that Mr. Pientka violated his Fourth Amendment rights, or caused him any damages, with respect to any of the four warrants.

We are not aware of any authority that a Fourth Amendment violation can be premised on a violation of the Woods Procedures.  Even setting this aside, Plaintiff still fails to plausibly allege that Mr. Pientka intentionally or recklessly violated the Woods Procedures.  OIG at 376-77 ("we did not find documentary evidence or testimonial evidence of intentional misconduct on the part of . . . the agents and supervisors who performed the Woods Procedures"); *Kapinski v. City of Albuquerque*, 964 F.3d 900, 908 (10th Cir. 2020) ("To establish recklessness, 'there must exist evidence that the officer in fact entertained serious doubts as to the truth of his allegations.'" (quotation omitted)).  Allegations of negligence do not give rise to a Fourth Amendment violation. *See, e.g.*, *Herring v. United States*, 555 U.S. 135, 145 (2009) ("In *Franks*, we held that police negligence in obtaining a warrant did not even rise to the level of a Fourth Amendment violation . . . ."); *Paez v. Mulvey*, 915 F.3d 1276, 1287 (11th Cir. 2019) ("Intentional or reckless material misstatements or omissions in a warrant affidavit thus could violate the Fourth Amendment. Negligent misstatements or omissions, on the other hand, do not."   (citations omitted)).[16] Plaintiff's "talismanic" and "undifferentiated" allegations of the individual defendants' collective bad intent with respect to the FISA Warrants, *see* SAC ¶ 285, are no more sufficient in the *Bivens* context than they are in the FISA context and do not compel a different outcome.

### III. The *Bivens* Claim (Claim 6) Would Impermissibly Extend *Bivens* to a New Context.

Mr. Pientka also joins and incorporates by reference the generally applicable *Bivens* arguments set forth in Sections II.B and II.C of the Clinesmith Brief.  Plaintiff asserts that a *Bivens* action may arise from "violations related to unlawfully obtained warrants and/or warrants lacking

---

[16] Plaintiff's new allegation that Mr. Pientka was aware of Plaintiff's involvement in a 2016 FBI case that was not included in the FISA application ignores the fact that the Woods Procedure only required Mr. Pientka to confirm that there was support for the assertions in the FISA application.  SAC ¶ 200; *see* OIG at 188.  In any event, the allegation fails to raise an inference that Mr. Pientka *intended* to violate the Woods Procedures by not inserting this fact into FISA application.

probable cause." SAC ¶ 287.  However, as relevant here, the Supreme Court has never recognized a *Bivens* action for Fourth Amendment violations arising from a FISA application.  *See, e.g.*, *Corsi v. Mueller*, 422 F. Supp. 3d 51, 66-67 (D.D.C. 2019) (dismissing *Bivens* claim to hold Special Counsel Robert Mueller personally liable for alleged Fourth Amendment and FISA violations), *aff'd*, 819 F. App'x 6 (D.C. Cir. 2020).  It has also never recognized a *Bivens* action in the context of the Woods Procedure, as Plaintiff seeks to do here.   Plaintiff's *Bivens* claim therefore undoubtedly arises in a "new context."   Numerous special factors also "counsel hesitation" in expanding *Bivens* to this context, including FISA's comprehensive statutory scheme for remediating FISA violations and the national security and counterintelligence interests at play here.  Plaintiff's *Bivens* claim against Mr. Pientka should be dismissed for these reasons as well.

## IV.   The *Bivens* and FISA Claims Must Be Dismissed Because Mr. Pientka Is Entitled to Qualified Immunity and the Protections of the FISA Safe Harbor.

Finally, even had Plaintiff timely and adequately stated either a FISA or a *Bivens* claim, the allegations in the Second Amended Complaint establish that Mr. Pientka is entitled to either the statutory defense under § 1809(b) for the FISA claims or qualified immunity for both the FISA and *Bivens* claims.

Mr. Pientka joins and incorporates by reference the argument with respect to FISA's statutory safe harbor set forth in Part V of the Somma Brief.  As discussed there, § 1809(b) establishes as a "defense to a prosecution under [§ 1809(a)] that the defendant was a law enforcement or investigative officer engaged in the course of his official duties and the electronic surveillance was authorized and conducted pursuant to a search warrant or court order of a court of competent jurisdiction."  50 U.S.C. § 1809(b).  This defense applies equally to FISA's criminal and civil provisions.  *See* H.R. Rep. No. 95-1283, at 98 (1978).  No court has ever held to the contrary.  Thus, even if a deficient Woods Review could give rise to FISA liability (though it

cannot), Mr. Pientka would be entitled to the § 1809 defense, as he was clearly engaged in the course of his official duties when he reviewed the Woods File.  Claims 1 through 4 should be dismissed for this additional reason.

Plaintiff's FISA and *Bivens* claims should further be dismissed because Mr. Pientka is also entitled to qualified immunity.  To determine whether an official is entitled to qualified immunity, courts ask:  (1) whether the facts illustrate that the official violated the plaintiff's constitutional or statutory right; and (2) whether the right was clearly established law at the time of the alleged event such that "every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotation marks omitted). Plaintiff bears the burden of showing that the right was clearly established based on existing precedent.  *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Plaintiff fails at each step of the qualified immunity analysis.  First, for the reasons discussed above, Plaintiff has failed to allege that Mr. Pientka violated his rights under either FISA or the Fourth Amendment.  Second, Plaintiff cannot demonstrate that the constitutional violation he alleges was clearly established such that every reasonable officer would understand that what Mr. Pientka did was unlawful.  No court has held that an alleged failure to correctly complete the Woods Procedure violates either the Fourth Amendment or FISA.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's claims against Mr. Pientka should be dismissed with prejudice.

Dated:    September 17, 2021                    Respectfully submitted,

/s/ James M. Koukios
James M. Koukios
Vanshika Vij
Robin A. Smith
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, D.C. 20037
Phone:  (202) 887-1500
Fax:  (202) 887-0763
JKoukios@mofo.com
VVij@mofo.com
RSmith@mofo.com

*Attorneys for Joe Pientka III*

22