# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CARTER PAGE,<br><br>Plaintiff,<br><br>v.<br><br>JAMES COMEY, ANDREW MCCABE, KEVIN CLINESMITH, PETER STRZOK, LISA PAGE, JOE PIENTKA III, STEPHEN SOMMA, BRIAN J. AUTEN, DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION, UNITED STATES OF AMERICA, JOHN DOES 1-10, JANE DOES 1-10,<br><br>Defendants. | No. 20-cv-3460<br><br><br>**ORAL ARGUMENT REQUESTED** |

## DEFENDANT STEPHEN SOMMA'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

Meaghan VerGow (D.C. Bar #977165)
Andrew R. Hellman (D.C. Bar #1723887)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006-4001
Telephone: (202) 383-5300
Fax: (202) 383-5414
mvergow@omm.com
andrewhellman@omm.com

*Attorneys for Stephen Somma*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 2

    A.    INVESTIGATIVE BACKGROUND ......................................... 3

    B.    THE FIRST FISA APPLICATION ........................................... 4

    C.    THE SECOND FISA APPLICATION ...................................... 6

    D.    THE THIRD FISA APPLICATION ......................................... 7

    E.    THE FOURTH FISA APPLICATION ...................................... 8

    F.    PLAINTIFF'S CLAIMS ........................................................... 8

ARGUMENT ......................................................................................................... 9

    I.    ALL OF PLAINTIFF'S CLAIMS AGAINST AGENT SOMMA ARE
UNTIMELY ............................................................................................... 10

        A.    Plaintiff's *Bivens* Claim Is Untimely Under Any Conceivably
Applicable Limitations Period. ................................................. 10

        B.    Plaintiff's FISA Claims Against Agent Somma Accrued at Least
Three Years Ago. ...................................................................... 12

    II.    A *BIVENS* CAUSE OF ACTION DOES NOT EXTEND TO THIS
CONTEXT. ................................................................................................. 14

    III.    PLAINTIFF HAS FAILED TO STATE A VALID FISA CLAIM
AGAINST AGENT SOMMA. ................................................................... 14

        A.    Plaintiff Has Inadequately Alleged That Agent Somma
Intentionally Violated FISA (All Counts). ............................... 15

        B.    All of Agent Somma's Alleged Conduct Falls Within FISA's Safe
Harbor for Law Enforcement and Investigative Officers' Official
Acts. .......................................................................................... 18

        C.    Plaintiff Has Inadequately Alleged That Agent Somma Surveilled
Him Pursuant to the Third and Fourth Warrants (Counts 3 and 4) .......... 19

    IV.    PLAINTIFF HAS INADEQUATELY ALLEGED THAT HIS CLAIMED
DAMAGES ARE FAIRLY TRACEABLE TO AGENT SOMMA'S
CHALLENGED CONDUCT. ..................................................................... 19

    V.    AGENT SOMMA IS ENTITLED TO QUALIFIED IMMUNITY ON
ALL OF PLAINTIFF'S CLAIMS. .............................................................. 22

CONCLUSION ...................................................................................................... 24

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*ACLU v. NSA,*
  493 F.3d 644 (6th Cir. 2007) ..................................................... 20

*Albright v. United States,*
  732 F.2d 181 (D.C. Cir. 1984) .................................................. 16

*Andes v. Knox,*
  905 F.2d 188 (8th Cir. 1990) .................................................... 13

\*\**Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011) ......................................................... 22, 23

*Atkisson v. Holder,*
  925 F.3d 606 (4th Cir. 2019) .................................................. 22

*Banneker Ventures, LLC v. Graham,*
  798 F.3d 1119 (D.C. Cir. 2015) ................................................. 3

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................ 16

*Berman v. Crook,*
  293 F. Supp. 3d 48 (D.D.C. 2018) ............................................. 11

*Byrne v. Clinton,*
  410 F. Supp. 3d 109 (D.D.C. 2019) ........................................... 20

\*\**Clapper v. Amnesty Int'l, USA,*
  568 U.S. 398 (2013) ............................................................ 21

*Davis v. Zirkelbach,*
  149 F.3d 614 (7th Cir. 1998) .................................................. 13

*Doe v. Dep't of Justice,*
  753 F.2d 1092 (D.C. Cir. 1985) ............................................... 10

*Doe v. Se. Univ.,*
  732 F. Supp. 7 (D.D.C. 1990) ................................................. 11

*Dukore v. District of Columbia,*
  799 F.3d 1137 (D.C. Cir. 2015) ............................................... 22

*Edokobi v. U.S. Gen. Servs. Admin.,*
  2018 WL 4639102 (D. Md. Sept. 27, 2018) .................................. 11

\*\**Fazaga v. FBI,*
  965 F.3d 1015 (9th Cir. 2020) ....................................... 17, 22, 24

*Franks v. Delaware,*
  438 U.S. 154 (1978) ............................................................ 17

*Gill v. Dep't of Justice,*
  2016 WL 3982450 (D.D.C. July 22, 2016) ................................... 20

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Greenpeace, Inc. v. Dow Chem. Co.*,
   97 A.3d 1053 (D.C. 2014) ................................................................................................ 11

*In re Nat'l Sec. Agency Telecomm. Recs. Litig.*,
   564 F. Supp. 2d 1109 (N.D. Cal. 2008) .......................................................................... 22

*Kelley v. FBI*,
   67 F. Supp. 3d 240 (D.D.C. 2014) ............................................................................ 16, 17

*Lampon-Paz v. Dep't of Justice*,
   2019 WL 2098831 (D.N.J. May 14, 2019) ...................................................................... 23

*Lanier v. Bryant*,
   332 F.3d 999 (6th Cir. 2003) .......................................................................................... 13

*Laningham v. U.S. Navy*,
   813 F.2d 1236 (D.C. Cir. 1987) ...................................................................................... 16

*Loumiet v. United States*,
   968 F. Supp. 2d 142 (D.D.C. 2013) ................................................................................ 11

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................................ 19

*Messerschmidt v. Millender*,
   565 U.S. 535 (2012) ........................................................................................................ 23

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) ........................................................................................................ 22

*Mittleman v. United States*,
   104 F.3d 410 (D.C. Cir. 1997) ........................................................................................ 11

*Reed v. United Transp. Union*,
   488 U.S. 319 (1989) ........................................................................................................ 13

*Rehaif v. United States*,
   139 S. Ct. 2191 (2019) .................................................................................................... 15

*Reichle v. Howards*,
   566 U.S. 658 (2012) ........................................................................................................ 22

*Roark v. United States*,
   2013 WL 1071778 (D. Or. Mar. 12, 2013) ..................................................................... 11

*Sewell v. Bernardin*,
   795 F.3d 337 (2d Cir. 2015) ............................................................................................ 13

*Simon v. E. Ky. Welfare Rts. Org.*,
   426 U.S. 26 (1976) .......................................................................................................... 19

*Sparshott v. Feld Ent., Inc.*,
   311 F.3d 425 (D.C. Cir. 2002) .................................................................................. 13, 14

\*\**Sykes v. U.S. Att'y for D.C.*,
   770 F. Supp. 2d 152 (D.D.C. 2011) ................................................................................ 10

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*United States v. Williams*,
  827 F.3d 1134 (D.C. Cir. 2016) ............................................................... 17

*Wallace v. Kato*,
  549 U.S. 384 (2007) ................................................................................. 12

*Wikimedia Found. v. NSA/Cent. Sec. Serv.*,
  335 F. Supp. 3d 772 (D. Md. 2018) ........................................................ 23

\*\**Ziglar v. Abbasi*,
  137 S. Ct. 1843 (2017) ............................................................................ 14

**Statutes**

5 U.S.C. § 552a ............................................................................................. 16

18 U.S.C. § 2520 .......................................................................................... 13

18 U.S.C. § 2707 .......................................................................................... 13

\*\*50 U.S.C. § 1809 .............................................................................. 15, 18, 23

\*\*50 U.S.C. § 1810 ..................................................................................... 15

**Other Authorities**

Ellen Nakashima et al., *FBI Obtained FISA Warrant to Monitor Former Trump
  Advisor Carter Page*, Wash. Post (Apr. 11, 2017), http://wapo.st/2pr7kpE
  [https://perma.cc/X76V-CJRH] .................................................... 7, 12, 14

H.R. Conf. Rep. No. 95-1720 (1978) ........................................................... 15

H.R. Rep. No. 95-1283 (1978) ......................................................... 15, 18, 23

**INTRODUCTION**

Beginning in 2016, the Federal Bureau of Investigation ("FBI") and Department of Justice ("DOJ") investigated possible links between individuals associated with Donald Trump's presidential campaign and Russian-sponsored efforts to interfere with the 2016 election. Defendant Stephen M. Somma is an FBI agent who worked on part of the investigation, codenamed "Crossfire Hurricane." Plaintiff Carter Page—whose longtime relationships with Russian intelligence officers had already made him known to the FBI—is one of the individuals whom the FBI and DOJ investigated. DOJ applied for authorization under the Foreign Intelligence Surveillance Act ("FISA") for the FBI to investigate suspected misconduct relating to plaintiff's Russian ties, and the Foreign Intelligence Surveillance Court ("FISC") issued four authorizing warrants. Plaintiff alleges that the government pursued these warrants improperly and seeks damages arising from the allegedly unlawful surveillance of him. He brings a *Bivens* claim and four FISA claims against the individual defendants, including Agent Somma.

All five claims against Agent Somma fail as a matter of law. Each is time barred, for one thing: plaintiff knew about the surveillance, considered it improper, and knew about Agent Somma's alleged role in it more than three years ago, the outer boundary of any limitations period applicable to plaintiff's claims. And the claims themselves are insubstantial. Plaintiff cannot assert a *Bivens* claim, as he seeks to extend that implied cause of action to a new context that would raise grave separation-of-powers concerns, and in which an adequate alternative remedy (FISA itself) already exists. Plaintiff's FISA claims fare no better: plaintiff fails to plausibly allege that Agent Somma intended to violate FISA; he fails to allege that Agent Somma's conduct falls outside a statutory safe harbor for investigative officers' acts in the course of their official duties; and as to two warrants he fails to allege that Agent Somma surveilled him at all. Plaintiff further fails to adequately allege that his asserted injuries are fairly traceable to Agent Somma's conduct.

If the complaint itself left any doubt that plaintiff's claims are insufficiently pleaded, Agent Somma would still be entitled to qualified immunity on all five counts.  The claims against Agent Somma should be dismissed accordingly.

## **BACKGROUND**

In the interest of judicial economy, defendant Stephen M. Somma joins and incorporates by reference the generally applicable factual, statutory, and regulatory background set forth in the Motion to Dismiss and Memorandum in Support filed by Kevin Clinesmith (the "Clinesmith Brief"), Dkt. 81-1, at 2-13.  Agent Somma further summarizes plaintiff's allegations as relevant to his motion to dismiss.[1]

Agent Somma is an FBI agent who worked on part of the Crossfire Hurricane investigation, which examined possible links between individuals involved with the Trump campaign and Russian interference in the 2016 election.  Second Amended Complaint ("AC") ¶¶ 5, 32, 201. Plaintiff was among the individuals investigated, and he now faults the United States, the FBI, the DOJ, and various individuals, including Agent Somma, for allegedly failing to approach their investigation of him with adequate skepticism and scrutiny of their sources, Christopher Steele in particular.  Plaintiff alleges that Agent Somma provided information that was used to obtain the warrants to surveil plaintiff.  While plaintiff does not allege that Agent Somma deliberately misrepresented any of that information, he contends that the information Agent Somma provided lacked important details or context.

Plaintiff's allegations are drawn substantially from a DOJ Office of the Inspector General ("OIG") report titled "Review of Four FISA Applications and Other Aspects of the FBI's Crossfire

---

[1] As required at this posture, this factual background is drawn from the allegations in the complaint, accepted as true, along with the documents incorporated by the complaint.  Of course, Agent Somma reserves his right to contest plaintiff's contentions should any of plaintiff's claims proceed.

Hurricane Investigation" (Revised Dec. 2019), *available at* https://www.justice.gov/storage/ 120919-examination.pdf [https://perma.cc/78UD-HAHM].[2]  OIG examined many aspects of the investigation—including the decision to open it, the investigation's reliance on Steele and other confidential sources, and the applications for the FISA warrants—for compliance with the law and DOJ and FBI policies.  *See* OIG at i.  OIG specifically investigated whether "political bias or other improper considerations" influenced the investigation of plaintiff, and found none.  *Id.* at iii-iv, vi.  The report identified certain errors and omissions in the FISA application process and concluded that the investigators did not satisfy FBI policy to "ensure that all factual statements in a FISA application are 'scrupulously accurate.'"  *Id.* at viii.  But OIG found no evidence that these errors involved intentional misconduct; rather, OIG concluded that FBI agents were unaware of certain procedures to ensure accuracy and completeness and that there was inadequate supervision over the agents' judgments about what information to convey in connection with the warrant applications.  *Id.* at xiii-xiv.

## A.   INVESTIGATIVE BACKGROUND

Plaintiff has maintained relationships with "known Russian intelligence officer[s]" since at least 2009.  *Id.* at 61-62.  In a 2013 interview with the FBI about his contacts with Russian agents, plaintiff stated that he regarded his acquaintance with a Russian agent as "a 'positive' for him."  *Id.* at 62.  That Russian agent, among others, was indicted in early 2013 "for conspiring to act in the United States as unregistered agents of the Russian Federation," including by "attempt[ing] to recruit 'Male-1' as an asset for gathering intelligence on behalf of Russia."  *Id.*  Plaintiff acknowledged he was "Male-1" in a 2016 interview, and suggested that he had "identified

---

[2] This motion cites the report as "OIG at __."  The OIG report refers to Agent Somma as "Case Agent 1."  AC ¶ 201. As the Clinesmith Brief explains, Dkt. 81-1, at 8 n.2, the complaint relies on the report extensively, frequently verbatim, and incorporates it by reference, so the Court may consider the report in full without converting this motion into one for summary judgment.  *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015).

himself as Male-1 to a Russian Minister and various Russian officials at a United Nations event 'in the spirit of openness.'" *Id.*

In the spring and summer of 2016, the FBI became aware of Russia-sponsored cyber intrusions into election and Democratic Party–related systems, and hacked material began to surface online. *Id.* at 50-51. The FBI learned in July 2016 that a member of Trump's foreign policy team had "'suggested the Trump team had received some kind of suggestion' from Russia" that it could provide assistance "with the anonymous release of information during the campaign that would be damaging to candidate Clinton and President Obama." *Id.* at 50-51. The FBI opened the Crossfire Hurricane investigation three days later. *Id.* at 50. For the FBI, plaintiff—who by that point had affiliated with the presidential campaign benefited by the interference—was of obvious interest. Plaintiff was one of only "three individuals" identified by the FBI who were "associated with the Trump campaign [and had] either ties to Russia or a history of travel to Russia." *Id.* at 59. The FBI believed that the available evidence amounted to "an articulable factual basis that [plaintiff] 'may wittingly or unwittingly be involved in activity on behalf of the Russian Federation which may constitute a federal crime or threat to national security.'" *Id.* at 60.

## B.     THE FIRST FISA APPLICATION

Plaintiff alleges that in August 2016, Agent Somma contacted the FBI's Office of the General Counsel to inquire about applying for a FISA warrant to conduct electronic surveillance of plaintiff, and the Office requested more information to establish the necessary probable cause. AC ¶¶ 202-03. The next month, Steele gave the FBI information suggesting troubling links between plaintiff and Russia, including "improper or unlawful communications or activities between [plaintiff] and two sanctioned Russians with close ties to Russian President Vladimir Putin." *Id.* ¶ 74. Agent Somma provided this information to DOJ attorneys, who began work on

a FISA application based on probable cause derived in part through the Steele information.  *Id.*
¶¶ 14, 203.

Plaintiff alleges that Agent Somma, in responding to the drafting attorneys' questions as
they prepared the first warrant, gave answers that in two instances were inadequate.  In the first, a
DOJ attorney asked Agent Somma whether plaintiff had been a "source" for the CIA.  *Id.* ¶¶ 84,
205; OIG at 157.  Drawing on his memory of information the CIA had provided to the Crossfire
Hurricane team, Agent Somma responded that plaintiff had met with the CIA in Moscow but
characterized the contact as "dated" and arguably "outside scope," though he offered to get the
precise language the CIA had used.  AC ¶¶ 72, 204-05; OIG at 157.  Plaintiff alleges that Agent
Somma's response was "incomplete" and "inaccurate," since the CIA had told the Crossfire
Hurricane team that plaintiff was an "operational contact" from 2008 to 2013.  AC ¶ 84.

Second, in October, another DOJ attorney working on the FISA application asked Agent
Somma about Steele's political affiliations and campaign contributions.  *Id.* ¶¶ 89, 207.  Plaintiff
asserts that Agent Somma did not completely answer the question in responding that "Steele was
most likely a foreign national and therefore unable to contribute to either campaign."  *Id.* ¶ 207.
The DOJ attorney followed up and got a further response, *viz.*, that the FBI "assumed Steele had
been paid to develop political opposition research."  *Id.*  That response prompted further scrutiny
of the warrant application by DOJ (though plaintiff alleges it was still inadequate).  OIG at 136-
38; AC ¶¶ 89, 92.

DOJ filed the first warrant application with the FISC on October 21, 2016.  AC ¶ 95.
Plaintiff alleges that the application was misleading, because—while it included a footnote
explaining that an "identified U.S. person" had hired Steele for the "likely" purpose of "looking
for information that could be used to discredit [Donald Trump's] campaign"—it did not identify

the precise source and path of funds used to pay Steele, did not disclose plaintiff's alleged prior status as an "operational contact" for the CIA, and did not warn the court of possible false reports of ties between Russian individuals and U.S. citizens.  *Id.* ¶¶ 92-93, 95.  The FISC ultimately issued the FISA warrant.  *Id.* ¶ 105.

### C.     THE SECOND FISA APPLICATION

In November 2016, the FBI closed Steele as a source.  *Id.* ¶ 104.  Plaintiff alleges that later that month, an FBI liaison informed Agent Somma and other members of the Crossfire Hurricane team that Steele had reported inaccurate information in a recent meeting with a State Department official, but the Crossfire Hurricane team did not follow up.  *Id.* ¶ 109.  Plaintiff also alleges that the Crossfire Hurricane team "was told Steele 'may have some judgment problems,'" as Agent Somma's notes purportedly put it, but that the DOJ did not include this information in subsequent FISA warrant renewal applications.  *Id.* ¶ 208.  The OIG report clarifies that the same officials who allegedly told the team about Steele's "judgment problems" also informed the agents that they could "continue to rely on [Steele's] reports for FISA" purposes.  OIG at 257.

DOJ filed the application for the second FISA warrant with the FISC in January 2017.  AC ¶ 111.  Plaintiff alleges omissions in the second warrant application, including its description of the FBI's relationship with Steele as "suspended" rather than "terminated," *id.*; insufficient detail about Steele's affiliations and reliability, *id.* ¶ 112; and the failure to disclose the purported suspicion of some officials that Steele's primary sub-source "might well be a Russian intelligence officer," *id.* ¶ 113.  Plaintiff also alleges that the second warrant application failed to describe any intelligence gathered pursuant to the first FISA warrant.  *Id.* ¶ 114.  The FISC issued the second FISA warrant on January 12, 2017.  *Id.* ¶ 118; OIG at 209.

Plaintiff alleges that FBI agents, including Agent Somma, interviewed Steele's primary sub-source for three days in January 2017.  AC ¶¶ 120, 209.  According to the complaint, the sub-

source denied or contradicted much of Steele's reporting about the information the sub-source had provided, but subsequent FISA warrant renewal applications never disclosed the "inconsistencies" that emerged in these interviews, and only described the sub-source as "truthful and cooperative." *Id.* ¶¶ 120-21, 209.

In March 2017, Agent Somma and another FBI agent interviewed plaintiff five times, for a total of approximately ten hours. *Id.* ¶¶ 122, 210. Plaintiff describes himself as "candid and cooperative" during these interviews. *Id.* ¶ 122. At the interviews, plaintiff told Agent Somma and the other agent "that he believed he was under surveillance." OIG at 220.

### D.   THE THIRD FISA APPLICATION

In March 2017, Agent Somma "was promoted to a supervisory position," and a different agent out of the New York field office assumed primary responsibility for the Page investigation. *Id.* at 210; *see also id.* at 82 (chart identifying Crossfire Hurricane team over time). DOJ filed the application for the third FISA warrant in April 2017. AC ¶ 122. The agent who took over from Agent Somma emailed him a draft of the third application; OIG did not find any response from Agent Somma. OIG at 212. At the new lead agent's request, Agent Somma assisted with the Woods Procedures[3] for the application on April 3—the last work he did on the investigation. *Id.* at 217. The FISC issued the third warrant on April 7, 2017. AC ¶ 126; OIG at 219.

Four days later, the Washington Post published an article, referenced and incorporated in the complaint, discussing the investigation into plaintiff, including the FISA warrants. AC ¶ 221. In an interview quoted in the article, plaintiff stated, "[t]his confirms all of my suspicions about unjustified, politically motivated government surveillance," comparing himself to Dr. Martin Luther King, Jr. Ellen Nakashima et al., *FBI Obtained FISA Warrant to Monitor Former Trump*

---

[3] The Woods Procedures are steps the FBI takes to verify the factual assertions in a FISA warrant application before DOJ files the application. *See generally* OIG at 42-45.

*Advisor Carter Page*, Wash. Post (Apr. 11, 2017), http://wapo.st/2pr7kpE [https://perma.cc/X76V-CJRH]. The article also reported that the FBI and DOJ had obtained the FISA warrants "after convincing a [FISC] judge that there was probable cause to believe Page was acting as an agent of a foreign power." *Id.*

### E.   THE FOURTH FISA APPLICATION

DOJ filed the fourth FISA warrant application in June 2017. AC ¶ 133. Plaintiff does not allege that Agent Somma participated in preparing the fourth warrant application. *Id.* ¶¶ 107-39. The OIG report similarly does not describe Agent Somma as having any role in the fourth warrant application. OIG at 219-27; *see also id.* at 83 (organizational chart). The FISC went on to issue the fourth FISA warrant on June 29, 2017, authorizing a final 90-day period of surveillance ending on September 22, 2017. AC ¶ 139; OIG at 219, 227.

### F.   PLAINTIFF'S CLAIMS

Plaintiff alleges that the FBI's surveillance of him was unlawful and that the individual defendants are liable to him for damages based on their alleged roles in the investigation. Mirroring the elements of the FISA cause of action, plaintiff alleges in conclusory terms that each individual defendant surveilled plaintiff, obtained his electronic communications, and used and disclosed his communications. AC ¶¶ 140-42. Plaintiff's complaint largely focuses on alleged errors in the process used to obtain the FISA warrants under which he was surveilled, though plaintiff also alleges that defendants "unlawfully leaked FISA and Privacy Act protected records and information," *id.* ¶ 218. Plaintiff does not identify the information obtained via FISA surveillance that was supposedly made public, nor does he contend that Agent Somma was responsible for any of these alleged leaks. *Id.* ¶¶ 218-31. Plaintiff also does not allege any facts contradicting the OIG's finding that the members of the Crossfire Hurricane team did not intentionally engage in any misconduct in relation to their investigation.

Plaintiff claims a host of personal, economic, and emotional injuries relating to the publicity surrounding the investigation—such as alleged threats against him, loss of business, and "damage to his reputation"—but he does not specify any harm resulting from the surveillance itself. *Id.* ¶ 254. Indeed, while plaintiff recites in passing that his Fourth Amendment rights were violated, *id.* ¶ 58, the complaint focuses on alleged reputational harms, such as being "portrayed as a traitor," *id.* ¶¶ 262, 266, 270, 274.

Plaintiff asserts nine claims in total, five against the individual defendants. Plaintiff pleads four claims for FISA violations, one for each FISA application and warrant. *Id.* ¶¶ 256-74. Plaintiff also asserts a *Bivens* claim against the individual defendants based on the same alleged conduct as the FISA claims. *Id.* ¶¶ 283-89. All told, plaintiff seeks at least $75 million in damages.

## ARGUMENT[4]

The complaint stumbles out of the gate on limitations grounds: accepting all of plaintiff's allegations as true and construing them in his favor, the face of the complaint conclusively shows that all of plaintiff's claims against Agent Somma accrued years ago and are now time barred. And even if plaintiff's claims were timely brought, they would still fall short. The law precludes extending *Bivens* to this new context, where significant separation-of-powers concerns and an adequate alternative remedy (invoked by plaintiff himself) render *Bivens* unavailable. Plaintiff's FISA claims fare no better: he does not plausibly allege that Agent Somma intended to violate FISA by surveilling him; he does not allege any conduct by Agent Somma that would fall outside the scope of a statutory defense to liability; and the complaint does not (and could not) allege that Agent Somma conducted any surveillance under two of the warrants. Plaintiff further fails to adequately allege that his asserted injuries can be fairly traced to Agent Somma's own challenged

---

[4] Agent Somma joins and incorporates by reference the arguments set forth in the other individual defendants' motions that apply to him as well.

conduct.  Last, even if plaintiff had timely brought and adequately alleged any of his claims, Agent Somma still would be entitled to qualified immunity on each.  The claims against Agent Somma should be dismissed with prejudice.

## I.     ALL OF PLAINTIFF'S CLAIMS AGAINST AGENT SOMMA ARE UNTIMELY.

A claim must be dismissed as barred by the statute of limitations "when the face of the complaint conclusively indicates it is time-barred."  *Sykes v. U.S. Att'y for D.C.*, 770 F. Supp. 2d 152, 154 (D.D.C. 2011).  The complaint itself forecloses the timeliness of plaintiff's claims against Agent Somma.

A one-year statute of limitations applies to all plaintiff's claims, and there is not even an argument that a limitations period longer than three years could apply.  Plaintiff's claims are based on the allegedly improper surveillance of him, and plaintiff's knowledge of the allegedly improper surveillance triggered the limitations period for his claims.  Plaintiff's complaint establishes that plaintiff learned of the surveillance, believed it to be improper, and knew of Agent Somma's role in it more than three years ago.  Plaintiff's claims accrued, and the statute of limitations started running, outside the limitations period.  Indulging each and every possibility in plaintiff's favor, not one of his claims against Agent Somma is timely.

### A.     Plaintiff's *Bivens* Claim Is Untimely Under Any Conceivably Applicable Limitations Period.

For plaintiff's *Bivens* claim, Agent Somma joins and incorporates by reference the argument set forth in the Clinesmith Brief, Dkt. 81-1, at 25-27.  To briefly reiterate, the statute of limitations for this claim must be borrowed from D.C. law, looking to the "gist" of plaintiff's allegations and the "most analogous" local cause of action.  *Doe v. Dep't of Justice*, 753 F.2d 1092, 1114 (D.C. Cir. 1985).  The gist of plaintiff's complaint is most closely analogous to libel or invasion of privacy, so a one-year statute of limitations applies.  *See* Clinesmith Brief, Dkt. 81-1,

at 15-16, 26 (libel); *Greenpeace, Inc. v. Dow Chem. Co.*, 97 A.3d 1053, 1061-62 (D.C. 2014) (invasion of privacy); *Mittleman v. United States*, 104 F.3d 410, 415-16 (D.C. Cir. 1997) (same); *Doe v. Se. Univ.*, 732 F. Supp. 7, 8 (D.D.C. 1990) (same).  While a three-year limitations period might apply to a *Bivens* action based on a physical search, *see Berman v. Crook*, 293 F. Supp. 3d 48, 56 (D.D.C. 2018), plaintiff's allegations—focused on electronic surveillance resulting in alleged reputational harms—are akin to a reputational or privacy tort.  Regardless, plaintiff's claims are untimely even under a three-year statute:  A *Bivens* claim accrues "when the plaintiff has a complete and present cause of action"—that is, "when the plaintiff knows or has reason to know of the harm." *Loumiet v. United States*, 968 F. Supp. 2d 142, 150 (D.D.C. 2013) (quotation omitted).

When, as here, a plaintiff claims "from the outset … that [a] search was unjustified, his causes of action relating to the unlawful search accrue[] when he receive[s] notice of the search." *Edokobi v. U.S. Gen. Servs. Admin.*, 2018 WL 4639102, at *4 (D. Md. Sept. 27, 2018); *accord Berman*, 293 F. Supp. 3d at 56 (plaintiff's *Bivens* "claim accrued … when he learned of the search … and believed at the time that the affidavit contained false allegations").  The search triggers the limitations period regardless whether the plaintiff "know[s] that he [can] prove the improprieties with the search warrant" that he alleges make the search unlawful. *Edokobi*, 2018 WL 4639102, at *4.  Even when a plaintiff alleges that "a deliberate conspiracy against her" conducted "surreptitious searches and surveillance," "a *Bivens* claim arising out of a search accrues on the date of the search." *Roark v. United States*, 2013 WL 1071778, at *3 (D. Or. Mar. 12, 2013) (quotation marks omitted) (rejecting plaintiff's argument "that any *Bivens* claim did not begin to accrue until she became aware of the full nature of the government's constitutional torts" (footnote omitted)).

Plaintiff here filed suit on November 27, 2020.  Applying the one-year limitations period from that date, plaintiff's *Bivens* claim is timely only if it accrued on or after November 28, 2019, and under the longest possible limitations period of three years from filing, the claim would be timely only if it accrued on or after November 28, 2017.  Plaintiff's *Bivens* claim against Agent Somma accrued by September 2017 at the latest and so is untimely by any measure.

Plaintiff knew of the surveillance in March 2017.  Plaintiff met Agent Somma in March 2017, AC ¶¶ 122, 210, and at that time plaintiff himself told Agent Somma "that he believed he was under surveillance," OIG at 220.  On April 11, 2017, the *Washington Post* published an article, AC ¶ 221, that quoted plaintiff:  "This confirms all of my suspicions about unjustified, politically motivated government surveillance."  Nakashima et al., *supra*.  At least as early as April 2017, then, plaintiff knew he was under surveillance pursuant to a FISA warrant and believed this surveillance to be improper—the basis for all of the claims he now asserts against Agent Somma. Under the fourth FISA warrant, the surveillance concluded by September 22, 2017.  AC ¶ 139; OIG at 219, 227.  Plaintiff's claim was thus perfected by September 2017 *at the absolute latest*. Plaintiff could have brought the exact claim then that he brings now, but waited for more than three years.  Whatever statute of limitations applies, it bars plaintiff's *Bivens* claim against Agent Somma.

### B.    Plaintiff's FISA Claims Against Agent Somma Accrued at Least Three Years Ago.

Agent Somma also joins and incorporates by reference the Clinesmith Brief's argument with respect to the statute of limitations on plaintiff's FISA claims.  Dkt. 81-1, at 14-16.  As discussed there, a one-year limitations period should also apply to the FISA claims.  The federal rule controls when a statute of limitations imported from state law begins to run, *see Wallace v. Kato*, 549 U.S. 384, 388 (2007), so the clock started running on plaintiff's FISA claims at the same

time it started running on his *Bivens* claim: when plaintiff believed he was under surveillance.  *See*

*supra* at 11.  Once again, under any conceivable approach, plaintiff's claims against Agent Somma

would be time barred.

 If the Court borrowed a rule from federal law instead of D.C. law, *see Reed v. United*

*Transp. Union*, 488 U.S. 319, 324 (1989), the best analogies would be the Wiretap Act, 18 U.S.C.

§ 2520 (which imposes liability for the unauthorized interception, use, or disclosure of wire, oral,

or electronic communications), and the Stored Communications Act (SCA), 18 U.S.C. § 2707

(which imposes liability for unauthorized access to stored wire or electronic communications).

Both statutes have a two-year limitations period triggered by inquiry notice.  *See Sparshott v. Feld*

*Ent., Inc.*, 311 F.3d 425, 428-29 (D.C. Cir. 2002) (finding that when the plaintiff "received outside

warnings of … wiretapping," "notice was plainly sufficient" to trigger the Wiretap Act limitations

period); *Sewell v. Bernardin*, 795 F.3d 337, 340 (2d Cir. 2015) (SCA "limitations period begins to

run when the plaintiff discovers that, or has information that would motivate a reasonable person

to investigate whether, someone has … obtained unauthorized access to a stored electronic

communication").

 "Like many statutes of limitation," these do "not require the claimant to have actual

knowledge of the violation"; the limitations period begins to run when the plaintiff has only

"reason to know that something [is] afoot." *Davis v. Zirkelbach*, 149 F.3d 614, 618 (7th Cir. 1998);

*accord Lanier v. Bryant*, 332 F.3d 999, 1004 (6th Cir. 2003) (claim accrued when plaintiff "knew,

or at least suspected, that his telephone conversations were being taped"); *see also Andes v. Knox*,

905 F.2d 188, 189 (8th Cir. 1990) ("[T]he cause of action accrues when the claimant has a

reasonable opportunity to discover the violation, not when she discovers the true identity of the

violator or all of the violators.").  Plaintiff not only suspected but *actually knew* about all the

alleged surveillance more than three years ago, and in April 2017 even shared his suspicions about its impropriety with the *Washington Post*.  Nakashima, *supra*; *see Sparshott*, 311 F.3d at 429 ("warnings with considerable objective credibility" triggered limitations period on wiretap claim). And with no surveillance occurring beyond September 22, 2017, plaintiff had a complete and present cause of action no later than that.

More than three years on, regardless whether a one-year or two-year limitations period applies, plaintiff's FISA claims against Agent Somma are untimely.

## II.     A *BIVENS* CAUSE OF ACTION DOES NOT EXTEND TO THIS CONTEXT.

Agent Somma joins and incorporates by reference the Clinesmith Brief's argument explaining that a *Bivens* cause of action is unavailable to plaintiff, Dkt. 81-1, at 31-39.  Plaintiff's claim would extend *Bivens* into a new context; the separation-of-powers concerns that doing so would raise and the adequate alternative remedy (which plaintiff himself invokes) foreclose a *Bivens* cause of action here.  *See, e.g.*, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857-58 (2017) (separation-of-powers concerns are "special factors counseling hesitation" in extending *Bivens*); *id.* at 1858 ("In a related way, if there is an alternative remedial structure in a present case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.").

## III.    PLAINTIFF HAS FAILED TO STATE A VALID FISA CLAIM AGAINST AGENT SOMMA.

Plaintiff's four FISA claims against Agent Somma fail on multiple grounds.  All of them are inadequately pleaded because plaintiff does not plausibly allege, contrary to the findings of the OIG, that Agent Somma undertook any actions proscribed by FISA with improper intent—and intent is a necessary element of any FISA violation.  The claims also fail because FISA affords a defense for surveillance by law enforcement or officers engaged in the course of their official duties, and all of Agent Somma's alleged conduct falls within the scope of that protection.  Finally,

two of the FISA claims asserted against Agent Somma involve surveillance that Agent Somma did

not conduct, because the surveillance occurred after he left the Crossfire Hurricane team.  Those

claims must be dismissed for that reason alone.

### A.   Plaintiff Has Inadequately Alleged That Agent Somma Intentionally Violated FISA (All Counts).

FISA creates a civil cause of action for an "aggrieved person … who has been subjected to

an electronic surveillance or about whom information obtained by electronic surveillance of such

person has been disclosed or used in violation of section 1809 of this title … against any person

who committed such violation."  50 U.S.C. § 1810.  Section 1809 is FISA's criminal provision,

and Congress intended "that the civil liability of intelligence agents under this Act should coincide

with the criminal liability."  H.R. Conf. Rep. No. 95-1720 (1978), at 34.  Section 1809 provides:

> A person is guilty of an offense if he *intentionally*—
>
> (1) engages in electronic surveillance under color of law except as authorized by this chapter [or others permitting electronic surveillance];
>
> (2) discloses or uses information obtained under color of law by electronic surveillance, knowing or having reason to know that the information was obtained through electronic surveillance not authorized by this chapter [or others permitting electronic surveillance].

50 U.S.C. § 1809(a) (emphasis added).

When Congress includes a general mens rea provision in a criminal statute, it typically

intends for that provision to apply to every element of the offense.  *See, e.g.*, *Rehaif v. United

States*, 139 S. Ct. 2191, 2195 (2019).  The legislative history confirms that Congress intended

criminal liability to attach under FISA only on a showing that the defendant intended to violate the

statute.  *See* H.R. Rep. No. 95-1283, at 97 (1978) (explaining that "intentionally" as used in § 1809

"is intended to reflect the most strict standard for criminal culpability" and that the offense requires

proof "both that the conduct engaged in was in fact a violation, and that it was engaged in with a

conscious objective or desire to commit a violation").  Accordingly, to state a civil FISA claim against Agent Somma, plaintiff must plausibly allege that Agent Somma intended to *unlawfully* engage in (or use or disclose information obtained by) electronic surveillance—that obtaining surveillance in violation of FISA was Agent Somma's aim.

Plaintiff's does not satisfy his pleading burden by using "the talismanic words 'willful' and 'intentional,'" which "are nothing more than 'labels and conclusions, and a formulaic recitation of the elements of a cause of action.'" *Kelley v. FBI*, 67 F. Supp. 3d 240, 257 (D.D.C. 2014) (citations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Rather, plaintiff must allege *facts* showing intent.  On that score, precedents under the analogous Privacy Act, which plaintiff also invokes, are instructive.  That Act permits a plaintiff to recover against an agency that "acted in a manner which was intentional or willful" in violating the Act.  5 U.S.C. § 552a(g)(4).  As with FISA, the mens rea provision of this statute applies to every element of the claim; the plaintiff may recover only for "the intentional or willful failure … to abide by the Act, and not [for] all voluntary actions which might otherwise inadvertently contravene one of the Act's strictures."  *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984).  The D.C. Circuit has cautioned that for a plaintiff to show the requisite intent, "the violation must be so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful." *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (quotation omitted).

Plaintiff's complaint does not make any such showing.  The OIG report specifically found no evidence that Agent Somma intentionally engaged in misconduct—much less misconduct so "patently egregious and unlawful" that anyone would have known it to be unlawful—and the complaint includes no facts supporting a contrary inference.  OIG at 377.  Indeed, the complaint does not show that the two warrants that authorized the surveillance conducted while Agent

Somma worked on the investigation were unlawfully issued at all—the OIG report itself details the history of Russian contacts that raised legitimate suspicions about plaintiff's conduct. *Id.* at 62. Even assuming the truth of all of plaintiff's allegations and construing them in his favor, the complaint at most alleges that Agent Somma made a handful of mistakes in connection with certain FISA warrants under which plaintiff was surveilled, not purposeful misconduct. AC ¶¶ 201-210. And "summary allegations that defendants should have known that their conduct was improper cannot themselves create an inference of intentional and willful misconduct." *Kelley*, 67 F. Supp. 3d at 258.[5]

Defendants here undisputedly went to great lengths to seek lawful authorization to conduct targeted surveillance in the interest of national security. Those efforts would be puzzling if defendants intended to conduct unlawful surveillance all the while. It is one thing to infer, as one court has, that a defendant intended to violate FISA by engaging in *warrantless* surveillance. *See Fazaga v. FBI*, 965 F.3d 1015, 1031 (9th Cir. 2020), *cert. granted on other grounds*, 2021 WL 2301971 (U.S. June 7, 2021). It is quite another to infer criminal intent from alleged missteps in trying to obtain a lawful warrant. The OIG found no basis to do so, and plaintiff's complaint offers this Court none either. Not one of Agent Somma's alleged oversights supports an inference that he intended to surveil plaintiff in violation of FISA, and all the FISA claims against him must accordingly be dismissed.[6]

---

[5] Plaintiff alleges in conclusory terms that defendants "disclose[d] or use[d] information" in violation of the statute, AC ¶¶ 140-42, but the complaint does not identify any "information … obtained by electronic surveillance" that Agent Somma "disclose[d] or use[d]" at all, *see id.* ¶¶ 218-31; *see also infra* at 20 n.7. To the extent plaintiff asserts a "use or disclose" claim under § 1809(a)(2) against Agent Somma, the deficiency of his intent showing is only more pronounced—plaintiff asserts no factual allegations at all.

[6] For the same reasons, even if *Bivens* could be extended here, that claim would founder on plaintiff's failure to plausibly allege—as he must to plead a Fourth Amendment violation—that Agent Somma made "a false statement knowingly and intentionally, or with reckless disregard for the truth," and that the false statement was "necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *see also United States v. Williams*, 827 F.3d 1134, 1146 (D.C. Cir. 2016) (discussing circuit precedent applying *Franks* "where a defendant alleges that the Government knowingly and intentionally (or with reckless disregard) omitted a fact that would have defeated

**B.     All of Agent Somma's Alleged Conduct Falls Within FISA's Safe Harbor for Law Enforcement and Investigative Officers' Official Acts.**

Regardless whether plaintiff has adequately pleaded a violation of § 1809(a), the complaint also fails to state a claim as all of Agent Somma's alleged conduct falls within the scope of FISA's defense to both criminal and civil liability.  50 U.S.C. § 1809(b) provides: "It is a defense to a prosecution under subsection (a) that the defendant was a law enforcement or investigative officer engaged in the course of his official duties and the electronic surveillance was authorized by and conducted pursuant to a search warrant or court order of a court of competent jurisdiction."  FISA's legislative history makes clear that this defense applies equally to FISA's civil cause of action.  *See* H.R. Rep. No. 95-1283, at 98 (1978) (explaining that because the criminal and civil provisions are coextensive, "the statutory good faith defense, *though applicable*, does not have to be restated" in the civil provision (emphasis added)).

Plaintiff's own complaint establishes that this statutory defense applies, and that it forecloses civil liability for Agent Somma here.  Agent Somma is undisputedly an investigative officer.  Plaintiff does not allege that he engaged in any surveillance outside the course of his official duties.  Plaintiff's complaint likewise explicitly establishes that the electronic surveillance of him was "authorized by and conducted pursuant to a search warrant or court order of" the FISC, "a court of competent jurisdiction"; plaintiff contends that the FISC should not have authorized this surveillance but cannot deny that it did.  Congress enacted this defense "to afford security to intelligence personnel so that if they act in accordance with the statute and the court order, they will be insulated from liability."  H.R. Rep. No. 95-1283, at 96 (1978).  Because the complaint

---

probable cause" (quotation omitted)).  Plaintiff does not reckon with the abundant evidence—starting with his own admissions—*supporting* probable cause, and he does not and cannot show that any alleged misstatements or omissions were necessary to the finding of probable cause.

does not allege that Agent Somma ever engaged in any surveillance other than pursuant to the FISA warrants, plaintiff has failed to state a claim against him.

> **C.     Plaintiff Has Inadequately Alleged That Agent Somma Surveilled Him Pursuant to the Third and Fourth Warrants (Counts 3 and 4).**

The complaint does not allege with any specificity that *any* particular individual defendant ever surveilled plaintiff, but it cannot even be inferred from the complaint and incorporated OIG report that Agent Somma surveilled plaintiff under the third or fourth warrants.  Agent Somma was promoted to another position before that surveillance occurred, and a different agent assumed primary responsibility over the investigation into plaintiff in March 2017.  OIG at 210.  Neither the complaint nor the OIG report states that Agent Somma continued to work on the investigation under the third and fourth warrants.  *Id.* at 217 (last mention of Agent Somma, on April 3), 219 (third warrant issued on April 7, and surveillance occurred pursuant to third and fourth warrants from April 7 through September 22, 2017).  Because the statute is concerned with unlawful *surveillance* and Agent Somma was not involved in surveillance under the third and fourth warrants, that ends the inquiry.

## IV.    PLAINTIFF HAS INADEQUATELY ALLEGED THAT HIS CLAIMED DAMAGES ARE FAIRLY TRACEABLE TO AGENT SOMMA'S CHALLENGED CONDUCT.

Plaintiff claims $75 million in damages arising from the alleged unlawful surveillance of him, but cannot trace any such injury to Agent Somma.  A "federal court [may] act only to redress injury that fairly can be traced to the challenged action of the defendant."  *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41 (1976).  The plaintiff must show that the defendant's alleged violation of the law—not some external condition or the acts of a third party—caused the asserted injury. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (requiring "a causal connection between the injury and the conduct complained of").  "Therefore, to show causation," plaintiff "must show

that, but for" a defendant's conduct, he "would not [have] incur[red]" the injury.  *ACLU v. NSA*, 493 F.3d 644, 667 (6th Cir. 2007).  Plaintiff cannot do so.

To start, plaintiff's claimed damages are not fairly traceable to the surveillance of him at all.  Plaintiff derives these damages from alleged "damage to his reputation" and associated "[e]conomic losses" and "[p]ain and suffering."  AC ¶ 254.  But plaintiff does not identify any damaging information—or, for that matter, *any* information—obtained by surveillance and publicly disclosed.  *Cf. Byrne v. Clinton*, 410 F. Supp. 3d 109, 118 (D.D.C. 2019) (alleged reputational harms not fairly traceable to defendants where the complaint "is devoid of any allegedly defamatory statement actually *made* by [the defendants], or facts allowing the Court reasonably to infer a connection between those defendants and the allegedly defamatory statements allegedly made by … others").  Rather, the complaint's contentions about purported unlawful disclosures, AC ¶¶ 218-31, rest on media reports on the investigation *leading up to* the alleged FISA surveillance—for example, reporting on a speech plaintiff gave in Moscow in July 2016, well before the first FISA warrant application was even submitted, *id.* ¶¶ 221, 224.  Plaintiff cannot show that "but for" the allegedly unlawful surveillance itself, these disclosures and the alleged resulting reputational harm would not have occurred.  Put differently, plaintiff's claimed injuries would look just the same even if no one had ever conducted any surveillance of plaintiff.[7]  *Cf. Gill v. Dep't of Justice*, 2016 WL 3982450, at *8 n.6 (D.D.C. July 22, 2016) (plaintiff's firing and loss of security clearance not fairly traceable to FISA violations where information prompting those decisions not obtained through FISA surveillance).

---

[7] Plaintiff points to the information contained in the warrant applications and the existence of the warrants themselves as alleged unlawful disclosures.  AC ¶¶ 226, 229.  But neither is "information obtained … by electronic surveillance," 18 U.S.C. § 1809, so any losses plaintiff allegedly suffered from such disclosures are not cognizable under FISA.  Had defendants merely applied for and obtained the warrants and never engaged in any surveillance, those alleged damages would not look any different.

Plaintiff especially cannot fairly trace any claimed damages to Agent Somma. The complaint itself refutes the possibility that Agent Somma's alleged failure to fully disclose Steele's political affiliations was the but-for cause of any eventual surveillance, as the FBI *did* provide the very answer that plaintiff alleges Agent Somma should have given. AC ¶ 207. Neither can plaintiff show that Agent Somma's other alleged omissions caused the harms plaintiff claims, which depend on layers of conjecture; plaintiff "can only speculate as to whether" and how any of the disclosures he alleges should have been made would have affected the applications that were eventually filed and the decisions the FISC eventually made. *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 413-14 (2013). The complaint alleges a "speculative chain of possibilities"—that the individuals drafting the warrant applications would have modified them to incorporate any of these disclosures, that the individuals reviewing the applications would have retained any of these changes, and that the FISC would decline to issue any of the warrants based on any of these retained changes—and does not fairly trace the FISC decisions (much less plaintiff's alleged injuries) to conduct of Agent Somma's. *Id.* at 414. The causal chain for Agent Somma's purported misdescription of plaintiff's relationship with the CIA is equally attenuated; plaintiff can only speculate about how the surveillance would have differed had Agent Somma been asked to provide the precise language the CIA used, as Agent Somma offered to do. AC ¶ 205; OIG at 157. Link after link in the chain from Agent Somma's conduct to plaintiff's injuries "rest[s] on speculation about the decisions of independent actors." *Clapper*, 568 U.S. at 414. Offering only "guesswork," *id.* at 413, the complaint fails to adequately allege that plaintiff's injuries are fairly traceable to Agent Somma's conduct.

## V.     AGENT SOMMA IS ENTITLED TO QUALIFIED IMMUNITY ON ALL OF PLAINTIFF'S CLAIMS.

Agent Somma joins and incorporates by reference the argument on qualified immunity set forth in the Clinesmith Brief, Dkt. 81-1, at 43-45.  To summarize:  Qualified immunity shields Agent Somma, a federal official, from liability for money damages unless plaintiff pleads facts showing both (1) that Agent Somma violated his statutory or constitutional right, and (2) "that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).  Plaintiff bears the burden of showing that his right, "narrowly described to fit the factual pattern confronting the officers," was clearly established, *Dukore v. District of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015), meaning that plaintiff must show that "existing precedent … placed the statutory or constitutional question beyond debate," *Reichle v. Howards*, 566 U.S. 658, 664 (2012).  Qualified immunity provides "*immunity from suit* rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), and plaintiff's claims against Agent Somma must be dismissed to effect that guarantee.

A "lack of settled precedent" supporting a claim "demonstrates that [defendants] are now entitled to qualified immunity."  *Atkisson v. Holder*, 925 F.3d 606, 623 (4th Cir. 2019).  Just so here.  "The lack of precedents interpreting the remedial provisions of FISA" preclude plaintiff from showing that his FISA rights were clearly established.  *In re Nat'l Sec. Agency Telecomm. Recs. Litig.*, 564 F. Supp. 2d 1109, 1111 (N.D. Cal. 2008); *see also Fazaga*, 965 F.3d at 1037-38 (finding FBI agents entitled to qualified immunity on FISA claim in absence of clearly established law and reversing denial of motion to dismiss).  Plaintiff does not cite a single case describing the contours of civil liability under FISA for alleged omissions in a warrant application, much less a case clearly establishing that Agent Somma's alleged omissions of degree could expose him to liability for money damages.

First off, no law clearly establishes a plaintiff's right to civil recovery for alleged FISA violations in the absence of a criminal conviction for the same conduct.  FISA's legislative history shows that Congress intended that "the civil cause of action only arises in connection with a violation of the criminal provision."  H.R. Rep. No. 95-1283, at 98 (1978).  Some courts have explained that "civil liability must be premised on a prior criminal conviction under the Act," which of course is absent here.  *Lampon-Paz v. Dep't of Justice*, 2019 WL 2098831, at *7 (D.N.J. May 14, 2019); *see also Wikimedia Found. v. NSA/Cent. Sec. Serv.*, 335 F. Supp. 3d 772, 785 (D. Md. 2018) (reiterating "that § 1810 is intended to track an individual agent's criminal liability").

What's more, it was at the very least not clearly established that Agent Somma's official conduct on behalf of the government would be at his own risk.  Agent Somma is eligible for FISA's safe harbor provision, 50 U.S.C. § 1809(b), because plaintiff does not allege that any of Agent Somma's conduct was outside the scope of his duties or contrary to the terms of the FISA warrants, as discussed *supra* at 16-17.  But if § 1809(b) did not shield Agent Somma from suit, qualified immunity would.  Congress enacted FISA's safe harbor provision to protect officers from criminal and civil liability for such good-faith mistakes in the course of lawful investigations, *see* H.R. Rep. No. 95-1283, at 96-98 (1978), and qualified immunity similarly "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," *al-Kidd*, 563 U.S. at 743.

Agent Somma is equally entitled to qualified immunity on plaintiff's *Bivens* claim.  Qualified immunity protects an officer from civil liability for a search conducted pursuant to a warrant unless "it is obvious that no reasonably competent officer would have concluded that a warrant should issue."  *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012).  Plaintiff alleges no facts permitting the inference that Agent Somma or any other officer should have concluded

that these warrants should not issue, particularly where plaintiff can point to no law clearly establishing the disclosures that must be included in a FISA warrant application.

No court has ever ruled on when liability attaches under FISA in circumstances like these. The only case in the general vicinity, *Fazaga v. FBI*, 965 F.3d 1015, turned on *warrantless* surveillance, not at issue here. Not only is there no law *clearly* establishing when a federal officer may be held liable under FISA for surveillance conducted under the authority of a warrant; there is no case law on that subject *at all*. Plaintiff's claims against Agent Somma fail in their own right, but were there any doubt that those claims must be dismissed, qualified immunity would resolve it. From the face of the complaint, Agent Somma is entitled to qualified immunity.

## **CONCLUSION**

For the reasons stated above, all claims against Stephen Somma should be dismissed with prejudice.

Dated: September 17, 2021                 Respectfully submitted,


                                          /s/ *Meaghan VerGow*
                                          Meaghan VerGow (D.C. Bar #977165)
                                          Andrew R. Hellman (D.C. Bar #1723887)
                                          O'MELVENY & MYERS LLP
                                          1625 Eye Street, N.W.
                                          Washington, D.C. 20006-4001
                                          Telephone: (202) 383-5300
                                          Fax: (202) 383-5414
                                          mvergow@omm.com
                                          andrewhellman@omm.com

                                          *Attorneys for Stephen Somma*