# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARTER W. PAGE,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>JAMES COMEY, ANDREW MCCABE, KEVIN CLINESMITH, PETER STRZOK, LISA PAGE, JOE PIENTKA III, STEPHEN SOMMA, BRIAN J. AUTEN, DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION, UNITED STATES OF AMERICA, JOHN DOES 1-10, JANE DOES 1-10,<br><br>　　　　　　　Defendants. | No. 1:20-cv-03460<br><br>*Oral Argument Requested* |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT JAMES B. COMEY'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Amisha R. Patel (DC Bar No. 1005420)
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
Tel: (202) 261-3374
Fax: (202) 261-3333
amisha.patel@dechert.com

David N. Kelley (*pro hac vice*)
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 100036-6797
Tel: (212) 698-3580
Fax: (212) 698-3599
david.kelley@dechert.com

Stormie Mauck (*pro hac vice*)
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-2516
Fax: (215) 994-2222
stormie.mauck@dechert.com

*Counsel for Defendant James. B. Comey*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 2

    I.      Statutory and Regulatory Background.......................................................... 2

           A.      The Certification Requirement for FISA Warrant Applications............... 3

           B.      The Woods Procedures ...................................................................... 4

    II.     The Second Amended Complaint .................................................................. 4

           A.      Operation Crossfire Hurricane ........................................................... 4

           B.      Allegations Regarding Defendant James B. Comey............................... 10

           C.      Causes of Action Against Defendant Comey ......................................... 13

LEGAL STANDARD...................................................................................................... 14

ARGUMENT ................................................................................................................ 15

    I.      Page's FISA Claims Against Comey Must Be Dismissed................................. 15

           A.      Page's FISA Claims Against Comey Are Untimely............................... 15

           B.      Page Fails to State a FISA Claim......................................................... 20

           C.      The Certification of a FISA Warrant Application is Narrow ................. 28

    II.     Page's *Bivens* Claim Against Comey Should Also Be Dismissed ..................... 32

           A.      Page's *Bivens* Claim is Time-Barred. ................................................... 33

           B.      The Court Should Not Expand *Bivens* Into This New Context. .............. 35

           C.      Special Factors Implicated by the Second Amended Complaint Counsel Hesitation. ................................................................................... 36

           D.      Page Does Not Adequately Plead His *Bivens* Claim. ............................. 38

    III.    Page Does Not Adequately Plead That His Damages Arise from Comey's Conduct ................................................................................................... 39

    IV.    Defendant Comey is Entitled to Qualified Immunity ......................................... 39

CONCLUSION.............................................................................................................. 43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Haramain Islamic Found., Inc. v. Obama*,
  705 F.3d 845 (9th Cir. 2012) ...............................................................................21

*Al-Kidd v. Gonzales*,
  No. CV 05–093–EJL–MHW, 2008 WL 5123009 (D. Idaho Dec. 4, 2008) ...........................29

*Amobi v. D.C. Dep't of Corr.*,
  755 F.3d 980 (D.C. Cir. 2014) .............................................................................19

*Art & Drama Therapy., Inc. v. D.C.*,
  110 F. Supp. 3d 162 (D.D.C. 2015) ........................................................................3

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011)...................................................................................40, 41

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................*passim*

*Attkisson v. Holder*,
  925 F.3d 606 (4th Cir. 2019) ...............................................................................36

*Attkisson v. Holder*,
  No. 1:17–cv–364, 2017 WL 5013230 (E.D. Va. Nov. 1, 2017)...................................22, 24

*Banneker Ventures, LLC v. Graham*,
  798 F.3d 1119 (D.C. Cir. 2015) .......................................................................3, 12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................14, 39

*Berman v. Cook*
  293 F. Supp. 3d 48 (D.D.C. 2018) ...................................................................34, 35

*Berry v. Funk*,
  146 F.3d 1003 (D.C. Cir. 1998) .............................................................................27

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,
  403 U.S. 388 (1971)...............................................................................*passim*

*Broidy Cap. Mgmt. LLC v. Muzin*,
  No. 19-CV-0150, 2020 WL 1536350 (D.D.C. Mar. 31, 2020),
  *aff'd*, No. 20-7040, 2021 WL 3950185 (D.C. Cir. Sep. 03, 2021) ...........................24

ii

*Carlson v. Green*,
 446 U.S. 14 (1980)...................................................................................................33

*City of Escondido v. Emmons*,
 139 S. Ct. 500 (2019)..............................................................................................41

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013)................................................................................................39

*Corsi v. Muller*,
 422 F. Supp. 3d 51 (D.D.C. 2019), *aff'd*, 819 F. App'x 6 (D.C. Cir. 2020)...........39

*County of Hudson v. Janiszewski*,
 520 F. Supp. 2d 631 (D.N.J. 2007) .........................................................................19

*Davis v. Passman*,
 442 U.S. 228 (1979)................................................................................................33

*District of Columbia v. Wesby*,
 138 S. Ct. 577 (2018)..............................................................................................41

*Doe v. U.S. Dep't of Just.*,
 753 F.2d 1092 (D.C. Cir. 1985) ..............................................................................16

*Dukore v. District of Columbia*,
 799 F.3d 1137 (D.C. Cir. 2015) ..............................................................................41

*Edokobi v. U.S. Gen. Servs. Admin.*,
 No. CV TDC-17-2469, 2018 WL 4639102 (D. Md. Sept. 27, 2018),
 *aff'd*, 796 F. App'x 813 (4th Cir. 2020).................................................................34

*Fazaga v. Fed. Bureau of Investigation*,
 965 F.3d 1015 (9th Cir. 2020) ....................................................................... *passim*

*Franks v. Delaware*,
 438 U.S. 154 (1978).................................................................................................41

*Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*,
 545 U.S. 409 (2005).................................................................................................16

*Greenpeace, Inc. v. Dow Chemical Co.*,
 97 A.3d 1053 (D.C. 2014) .......................................................................................18

*Hernandez v. Mesa*,
 140 S. Ct. 735 (2020)...............................................................................................33

*Hunter v. Bryant*,
 502 U.S. 224 (1991).................................................................................................40

iii

*Kapinski v. City of Albuquerque*,
    964 F.3d 900 (10th Cir. 2020) ........................................................................42

*Kelley v. Fed. Bureau of Investigation*,
    67 F. Supp. 3d 240 (D.D.C. 2014) ..................................................................23

*Kowal v. MCI Commc'ns Corp.*,
    16 F.3d 1271 (D.C. Cir. 1994) ........................................................................14

*Lanier v. Bryant*,
    332 F.3d 999 (6th Cir. 2003) ..........................................................................19

*Loumiet v. United States*,
    948 F.3d 376 (D.C. Cir. 2020), *cert. denied*, 141 S. Ct. 180 (2020) .......................32

*Loumiet v. United States*,
    968 F. Supp. 2d 142 (D.D.C. 2013) ................................................................34

*Maib v. F.D.I.C.*,
    771 F. Supp. 2d 14 (D.D.C. 2011) ..................................................................12

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985) ........................................................................................40

*Owens v. BNP Paribas, S.A.*,
    897 F.3d 266 (D.C. Cir. 2018) ........................................................................22

*Roark v. United States*,
    No. 6:12-CV-01354-AA, 2013 WL 1071778 (D. Or. Mar. 12, 2013) ...................35

*In re Sealed Case*,
    310 F.3d 717 (FISA Ct. Rev. 2002) ....................................................26, 30, 31

*Sewell v. Bernardin*,
    795 F.3d 337 (2d Cir. 2015) ............................................................................18

*Simpkins v. D.C. Gov't*,
    108 F.3d 366 (D.C. Cir. 1997) ........................................................................39

*Sissel v. U.S. Dep't of Health & Human Servs.*,
    760 F.3d 1 (D.C. Cir. 2014) ............................................................................14

*Sparshott v. Feld Ent., Inc.*,
    311 F.3d 425 (D.C. Cir. 2002) ........................................................................18

*Sykes v. U.S. Att'y for D.C.*,
    770 F. Supp. 2d 152 (D.D.C. 2011) ................................................................16

*Toumazou v. Turkish Republic of N. Cyprus*,
  71 F. Supp. 3d 7 (D.D.C. 2014) ...............................................................................25, 27

*United States v. Alwan*,
  No. 1:11–CR–13–R, 2012 WL 399154 (W.D. Ky. Feb. 7, 2012) ...........................................31

*United States v. Elshinawy*,
  No. CR ELH-16-0009, 2017 WL 1048210 (D. Md. Mar. 20, 2017)..........................30, 31, 41

*United States v. Koyomejian*,
  946 F.2d 1450 (9th Cir. 1991) ....................................................................................24

*United States v. Mohammad*,
  339 F. Supp. 3d 724 (N.D. Ohio 2018)........................................................................30

*United States v. Turner*,
  840 F.3d 336 (7th Cir. 2016) ......................................................................................31

*United States v. Williams*,
  827 F.3d 1134 (D.C. Cir. 2016) ..................................................................................41

*Voinche v. Obama*,
  744 F. Supp. 2d 165 (D.D.C. 2010), *aff'd*, 744 F. App'x 2 (D.C. Cir. 2011)...................23, 26

*Wallace v. Kato*,
  549 U.S. 384 (2007).................................................................................................18

*Wikimedia Found. v. Nat'l Sec. Agency/Cent. Sec. Serv.*,
  335 F. Supp. 3d 772 (D. Md. 2018) ............................................................................22

*Ziglar v. Abbasi*
  137 S. Ct. 1843 (2017) ...................................................................................... *passim*

**Statutes**

18 U.S.C. § 3052 ........................................................................................................26

50 U.S.C. § 1804 .............................................................................................. *passim*

50 U.S.C. § 1809 .............................................................................................. *passim*

50 U.S.C. § 1810 ........................................................................................................21

50 U.S.C. § 1881 ...................................................................................................20, 30

D.C. Code § 12-301 .....................................................................................................18

**Other Authorities**

Matt Apuzzo et al., *Comey Tried to Shield the F.B.I. From Politics. Then He Shaped an Election.*, N.Y. TIMES (Apr. 22, 2017), https://www.nytimes.com/2017/04/22/us/politics/james-comey-election.html .....................11

*James Comey Testimony on Russia Investigation Transcript September 30*, Rev.com (Sept. 30, 2020), https://www.rev.com/blog/transcripts/james-comey-testimony-on-russia-investigation-transcript-september-30 ........................................12

David Corn, *A Veteran Spy Has Given the FBI Information Alleging a Russian Operation to Cultivate Donald Trump*, MOTHER JONES (Oct. 31, 2016), https://www.motherjones.com/politics/2016/10/veteran-spy-gave-fbi-info-alleging-russian-operation-cultivate-donald-trump/ .................................................8

H.R. Rep. No. 95-1283 (1978).........................................................................................21

Michael Isikoff, *U.S. intel officials probe ties between Trump adviser and Kremlin*, YAHOO! NEWS (Sept. 23, 2016), https://www.yahoo.com/news/u-s-intel-officials-probe-ties-between-trump-adviser-and-kremlin-175046002.html.....................6

Memorandum from Michael J. Woods, Unit Chief, Office of General Counsel, National Security Law Unit, to FBI Field Offices (April 5, 2001), https://fas.org/irp/agency/doj/fisa/woods.pdf ............................................................4

Ellen Nakashima et al., *FBI obtained FISA warrant to monitor former Trump adviser Carter Page*, WASH. POST (Apr. 11, 2017), https://www.washingtonpost.com/world/national-security/fbi-obtained-fisa-warrant-to-monitor-former-trump-adviser-carter-page/2017/04/11/620192ea-1e0e-11e7-ad74-3a742a6e93a7_story.html ................................................................11, 35

Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation" (Revised Dec. 2019), https://www.justice.gov/storage/120919-examination.pdf ............................................ *passim*

Josh Rogin, *Trump's Russia Adviser Speaks Out, Calls Accusations 'Complete Garbage,'* WASH. POST (Sept. 26, 2016), https://www.washingtonpost.com/news/josh-rogin/wp/2016/09/26/trumps-russia-adviser-speaks-out-calls-accusations-complete-garbage/ ................................................6

## INTRODUCTION

In July 2016 the Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI") initiated an investigation to determine whether individuals associated with Donald J. Trump's campaign for presidency were coordinating with the Russian government to interfere with the 2016 election.  In the run up to the election, the FBI turned its attention to Carter Page ("Page"),[1] an advisor to Trump, as a suspected foreign agent of Russia.  The FBI sought and obtained four sequential warrants to electronically surveil Page under the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801, *et seq.* ("FISA").  Plaintiff Page now brings this lawsuit against the DOJ, FBI, and several former government officials in their individual capacity to seek redress for purported misstatements in and omissions from those warrant applications.  The FBI's initial application to the Foreign Intelligence Surveillance Court ("FISC") was granted and then renewed three times after the expiration of each ninety-day period of electronic surveillance authorization.

Defendant James B. Comey is the former Director of the FBI, who served in that role from September 2013 to May 2017, a time during which the FBI applied for the first three FISA warrants, each of which was granted by the FISC.  Dkt. 73, Second Amended Complaint ¶ 26 ("SAC").  Comey signed three FISA warrant applications to surveil Page, *id.* ¶ 150, solely in his capacity as a "certifying official" under 50 U.S.C. § 1804(a).  As discussed further below, under FISA those certifications are inherently limited in scope:  certifying only the purpose of and need for the requested surveillance.  Other officials in the chain of command verify and attest to the sufficiency and accuracy of information in each application, including compliance with FISA

---

[1] Unless otherwise specified as Co-Defendant Lisa Page, all references to "Page" are to Plaintiff Carter Page.

requirements.  The application ultimately is approved by the Attorney General before it is presented to the FISC for approval.

Page's claims as to Defendant Comey fail as a matter of law for several reasons, and Comey moves to dismiss them pursuant to Federal Rule of Civil Procedure 12(b)(6).  First, each of Page's FISA claims against Comey are time-barred and do not plausibly allege statutory violations with respect to Comey's involvement—or lack of involvement, as the case may be—with the four warrant applications because the Second Amended Complaint does not plausibly allege that Comey personally or intentionally "engage[d] in electronic surveillance" that was unlawful or "disclose[d] or use[d]" information obtained through such surveillance.  Further, even if Page plausibly alleged a FISA claim, Comey is entitled to protection under FISA's safe harbor provision.  Second, Page's *Bivens* claim is also untimely and, moreover, the Court should not accept the invitation to extend *Bivens* to this new context, particularly where several special factors weigh heavily against such an extension.  Finally, to the extent the Court believes Page's FISA and *Bivens* claims should lie, Comey is entitled to qualified immunity.

**BACKGROUND**

I.      **Statutory and Regulatory Background**

The statutory background of the Foreign Surveillance Intelligence Act, 50 U.S.C. § 1801, *et seq.*, and its requirements, as well as the related regulatory context of electronic surveillance authorized by federal law, are capably summarized in the motions to dismiss and accompanying memoranda of Defendant Kevin Clinesmith, which Defendant Comey hereby incorporates by reference.  Dkts. 81 & 81-1.  That background will not be repeated at length here.  Instead, Defendant Comey briefly addresses specific FISA statutory requirements and facts relevant to this motion.

2

A.     **The Certification Requirement for FISA Warrant Applications**

The detailed procedures and standards to obtain a warrant authorizing electronic surveillance under FISA are set forth in 50 U.S.C. § 1804(a). As relevant here, an application for an order from the FISC, which is empowered to authorize such surveillance, requires "approval of the Attorney General," and a written certification by a high-ranking official (a "certifying official"), such as the Director or Deputy Director of the FBI. 50 U.S.C § 1804(a); OIG Report at 36.[2] The certification must include, among other things, a statement that "a significant purpose" of the application is to obtain foreign intelligence information, which cannot be reasonably obtained by "normal investigative techniques." 50 U.S.C. § 1804(a)(6)(B)-(C). *See also* OIG Report at 36-37. Under FISA, the "certifying official" thus attests to the *purpose* and *logistical need* of the requested surveillance but does not certify or otherwise verify the underlying factual bases for the probable cause within the warrant application itself. *Id.* at 36. Indeed, the OIG Report highlights that "the [FBI] Director's certification is different from the approval of" other high-ranking officials in the chain of command for FISA warrant applications, "which require[] that the signatory find that the application satisfies the FISA's statutory requirements." *Id.* at 153.

---

[2] Page draws many of his allegations from the Department of Justice Office of the Inspector General Report titled "Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation" (Revised Dec. 2019), https://www.justice.gov/storage/120919-examination.pdf (the "OIG Report"), which concluded that Comey was not informed of any of the identified issues in the FISA applications. OIG Report at 156-57, 373. Given Page's extensive references to and reliance on the OIG Report, this Court may consider it in its entirety without converting this motion into one for summary judgment. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) ("Incorporation by reference can also amplify pleadings where the document is not attached by the plaintiff, but is referred to in the [Amended] [C]omplaint and integral to the plaintiff's claim." (alterations and quotations omitted)); *Art & Drama Therapy., Inc. v. D.C.*, 110 F. Supp. 3d 162, 173 n.10 (D.D.C. 2015) ("The court may consider a document incorporated by reference into the complaint on a motion to dismiss without converting it into one for summary judgment.").

B.      **The Woods Procedures**

The FBI's Woods Memorandum sets forth verification procedures, known as "Woods Procedures," under which investigating agents are required to verify the facts supporting applications for electronic surveillance under FISA.  *See generally* Ex. 1, Memorandum from Michael J. Woods, Unit Chief, Office of General Counsel, National Security Law Unit, to FBI Field Offices (April 5, 2001), https://fas.org/irp/agency/doj/fisa/woods.pdf; OIG Report at 42-45. Under these procedures, the case agent, and not the FBI Director, is assigned the responsibility of verifying the factual assertions in FISA warrant applications.  OIG Report at 44.  Specifically, The Woods Procedures require any FISA application that includes information from a confidential human source ("CHS") also include a verification by an investigating agent that he or she has reviewed the background of the CHS and that the facts set forth in the application supporting the FISA application are accurate.  *Id.* at 43-44.  Thus, under FBI procedure, the "Woods Form" is signed by the case agent tasked with verifying each factual assertion in the FISA application and the proffered probable cause to obtain the FISA warrant.  *See id.* at 44.

II.      **The Second Amended Complaint[3]**

A.      **Operation Crossfire Hurricane**

On July 31, 2016, the FBI initiated a counterintelligence investigation codenamed "Operation Crossfire Hurricane" to investigate whether "individual(s) associated with the Trump campaign [were] witting of and/or coordinating activities with the Government of Russia."  SAC ¶ 5; OIG Report at ii.  The Inspector General found that this attempt to "detect, obtain information

---

[3] For purposes of this motion and as required by Federal Rule of Civil Procedure 12(b)(6), Comey accepts the allegations in the Second Amended Complaint.  Many of Page's allegations, however, are demonstrably false and not likely to be substantiated or sustained should any of the claims against Comey survive this stage of the litigation.

about, or prevent or protect against federal crimes or threats to the national security or to collect foreign intelligence" was an "authorized purpose."  OIG Report at 350.  As part of this operation, the FBI began investigating Carter Page, a former foreign policy advisory for the Trump Campaign.  SAC ¶¶ 5, 21.  The FBI was particularly interested in Page's ties to the Russian Government.  *Id.* ¶ 74; OIG Report at 63.  In furtherance of the investigation, the FBI applied for and received four warrants from the FISC to electronically surveil Page—an initial application and three renewals.  SAC ¶ 3.  Page alleges generally that the FBI, DOJ, and several individuals intentionally misrepresented and omitted certain information from the FISA warrant applications to deceive the FISC into issuing the warrants.  *See*, *e.g.*, *id.* ¶¶ 85, 209.  The Second Amended Complaint alleges several causes of action against Defendant Comey in his individual capacity for conduct that allegedly occurred during his tenure as the Director of the FBI from September 2013 to May 9, 2017—a timeframe covering only the first three warrants.  *Id.* ¶ 26.

1.    *The Initial FISA Warrant Application*

Soon after the inception of Operation Crossfire Hurricane, the FBI began gathering information on Page to establish probable cause for a FISA warrant application that was ultimately filed in October 2016.  SAC ¶ 95.  On August 17, 2016, the investigative team received information from the Central Intelligence Agency ("CIA") documenting Page as an "operational contact" for the agency from 2008 until 2013.  *Id.* ¶¶ 11, 144.  Further, on September 19, 2016, confidential informant Christopher Steele provided information to the FBI regarding Page, including two documents alleging unlawful communications and activities involving Page and two Russian individuals who had close ties to Russian President Vladimir Putin.  *Id.* ¶ 14.  Steele also alleged that there was a "well-developed conspiracy of cooperation between the Trump Campaign and Russia," *Id.* ¶ 75, an allegation the Inspector General later found to be "entirely consistent" with

information "wholly separate and apart from the [Steele] reporting," OIG Report at 101.  Page alleges that the first FISA warrant application "focused on" the two documents furnished by Steele. SAC ¶ 14.

A Yahoo! News article published on September 23, 2016 reported that Page met with the two Russian individuals identified by Steele, thus apparently corroborating the account.  SAC ¶ 15; Ex. 1.[4]  Two days later, Page sent Comey a letter denying any communication with the two Russian individuals and documenting his prior cooperation with the CIA and FBI to combat Russian spying.  *Id.* ¶¶ 15, 81, 146; Ex. 2.[5]  At this point, it was more likely than not that Page understood the possibility that he was being investigated.  Moreover, the next day, the Washington Post published an article summarizing an interview with Page regarding the allegations in the Yahoo! article.  Page referred to that report as "complete garbage." Ex. 3.[6]  Page further described the allegations against him as "desperate and unfounded" and "based on nothing more than preposterous mainstream media reports."  *Id.*

On October 11, 2016, then Deputy Assistant Secretary of State Kathleen Kavalec interviewed Steele and forwarded notes of the meeting to the FBI, which "signal[ed] a political motivation" behind Steele's reporting.  SAC ¶ 83.  DOJ attorney Stuart Evans also raised concerns about Steele's possible political motivations.  *Id.* ¶¶ 89, 91, 159.  The next day, FBI Agent Peter Strzok briefed then Director Comey and then Deputy Director Andrew McCabe about Evans'

---

[4] Michael Isikoff, *U.S. intel officials probe ties between Trump adviser and Kremlin*, YAHOO! NEWS (Sept. 23, 2016), https://www.yahoo.com/news/u-s-intel-officials-probe-ties-between-trump-adviser-and-kremlin-175046002.html.

[5] Letter from Carter Page to James Comey, Dir. of Fed. Bureau of Investigation (Sept. 25, 2016), https://perma.cc/D455-RT7Y (hereinafter "Sept. 25, 2016 Letter").

[6] Josh Rogin, *Trump's Russia adviser speaks out, calls accusations 'complete garbage,'* WASH. POST (Sept. 26, 2016), https://www.washingtonpost.com/news/josh-rogin/wp/2016/09/26/trumps-russia-adviser-speaks-out-calls-accusations-complete-garbage/.

concerns and desire to delay the filing of the FISA warrant application, originally planned to be filed that day, until Evans could further assess the bias. *Id.*; OIG Report at 139. Ultimately, the initial application included a footnote disclosing the possible political motivations behind Steele's research, including linking him to a law firm possibly seeking research to discredit the Trump campaign. SAC ¶ 92.

The FBI finally submitted the initial FISA warrant application to the FISC on October 21, 2016. *Id*. ¶ 95. It documented the FBI's knowledge of Page's July 2016 meetings with at least two Russian officials. *Id*. It was also "reviewed by numerous FBI agents, FBI attorneys, and [National Security Division] attorneys." OIG Report at 6. Consistent with FISA requirements, Defendant Comey signed the certification in support of the initial application in his capacity as a "certifying official," attesting that "the information sought through the requested FISA authority [was] foreign intelligence information that [could not] reasonably be obtained by normal investigative techniques and [was] necessary to protect the United States against clandestine intelligence activities." OIG Report at 6, 153; SAC ¶ 150. The FISC subsequently issued the FISA warrant. SAC ¶ 100; OIG Report at 156.

Importantly, Defendant Comey was not involved in the gathering of any evidence in support of, and did not select the information included in or omitted from this application. Nor does the Second Amended Complaint allege as much. In fact, the OIG Report recounts that Comey "did not recall playing a role in making any significant investigative decisions" during the Crossfire Hurricane investigation. OIG Report at 69. Rather, a case agent signed a Woods Form verifying each factual assertion in the application. *Id.* at 151.[7]

---

[7] The OIG Report further notes the lack of evidence to suggest that, at the time Comey certified the warrant application(s), he was aware of any issues with respect to the factual assertions in the application. OIG Report at 156-57.

7

2.      *The Second FISA Warrant Application (First Renewal)*

On October 31, 2016, the online publication Mother Jones featured an article entitled "A Veteran Spy Has Given the FBI Information Alleging a Russian Operation to Cultivate Donald Trump."  SAC ¶ 101; Ex. 4.[8]  Though Steele was instructed not to discuss with the media the investigation or his involvement with the FBI, he was confirmed as the article's source.  *Id.* ¶¶ 76, 101.  Shortly thereafter, the FBI instructed Steele to stop collecting information for the agency. *Id.* ¶¶ 101, 104.  The second FISA warrant application (the first renewal) disclosed the FBI's suspension of its relationship with Steele as a result of his unauthorized disclosure of information to a reporter.  *Id.* ¶ 111.  The Second Amended Complaint alleges, however, that the FBI omitted two key pieces of information from this FISA renewal application: (a) that the FBI learned additional facts about Steele's political motivations yet continued to receive information from him through other individuals acting as intermediaries, *Id.* ¶¶ 106-108; and (b) that the FBI learned in December 2016 that Steele's primary sub-source, Igor Danchenko, was previously the subject of an FBI investigation as a possible Russian spy, *id.* ¶¶ 110, 113.[9]

The FBI submitted the second FISA warrant application (first renewal) to the FISC on January 12, 2017, and the FISC subsequently renewed the warrant.  SAC ¶¶ 111, 118; OIG Report at 209.  Defendant Comey, again as a "certifying official," attested that "the information sought through the requested FISA authority [was] foreign intelligence information that [could not] reasonably be obtained by normal investigative techniques and [was] necessary to protect the

---

[8] David Corn, *A Veteran Spy Has Given the FBI Information Alleging a Russian Operation to Cultivate Donald Trump*, MOTHER JONES (Oct. 31, 2016), https://www.motherjones.com/politics/2016/10/veteran-spy-gave-fbi-info-alleging-russian-operation-cultivate-donald-trump/.

[9] Notably, the Second Amended Complaint does not explain how the warrant application would have been fatally weakened by indications that a key source about Russian intelligence activity had a close connection to Russian intelligence.

8

United States against clandestine intelligence activities." OIG Report at 208-09; SAC ¶ 150. A case agent again signed the Woods Form verifying each factual assertion in the application. OIG Report at 207. As was the case for the initial warrant application, Defendant Comey was not involved in the gathering of any of the evidence in support and did not select the information that was included in or omitted from this renewal application. Nor does the Second Amended Complaint allege otherwise.

3.   *The Third FISA Warrant Application (Second Renewal)*

Less than two weeks after the FISC issued the second FISA warrant, the FBI interviewed Igor Danchenko over the course of three days in January 2017 (from January 24th through January 26th). SAC ¶ 120. During this interview, information from Danchenko contradicted or undermined Steele's allegations against Page. *Id.* The Second Renewal application stated that the FBI deemed Danchenko truthful and cooperative, but did not disclose the inconsistencies between the information provided by Danchenko and Steele. *Id.* ¶ 121. In March 2017, FBI agents interviewed Page multiple times for a total of approximately ten hours. *Id.* ¶ 122. Page denied any accusation that he was acting as an agent of a foreign power. *Id.* The FBI disclosed these interviews in the third FISA warrant application. OIG Report at 213.

On April 7, 2017, the FBI submitted the third FISA warrant application (second renewal) to the FISC. SAC ¶ 122. The application asserted that the third warrant would continue to produce foreign intelligence information, even though the first six months of FISA surveillance of Page allegedly revealed no evidence of him acting as a foreign agent of Russia. *Id.* ¶ 123. The FISC subsequently issued a third FISA warrant. *Id.* ¶ 126; OIG Report at 219.

Acting in his capacity as a "certifying official," Defendant Comey again submitted a certification consistent with FISA requirements, attesting that "the information sought through the requested FISA authority [was] foreign intelligence information that [could not] reasonably be

obtained by normal investigative techniques and [was] necessary to protect the United States against clandestine intelligence activities."  OIG Report at 218; SAC ¶ 150.  A case agent again signed the Woods Form verifying each factual assertion in the application.  OIG Report at 217. Defendant Comey was not involved in the gathering of any of the evidence in support and did not select the information included in or omitted from this renewal application.  Nor does the Second Amended Complaint allege otherwise.

4.      *The Fourth FISA Warrant Application (Third Renewal)*

On June 29, 2017, almost two months after Comey was fired, the FBI submitted the fourth FISA warrant application (the third renewal of the initial application).  It was subsequently granted by the FISC.  SAC ¶¶ 133, 139; OIG Report at 227.  The Second Amended Complaint recognizes that Defendant Comey was not involved in this application because he was no longer associated with the FBI at this time, having been dismissed by the President the previous month.  SAC ¶ 26, 150.

B.      **Allegations Regarding Defendant James B. Comey**

Page's Second Amended Complaint includes several allegations against Defendant Comey.  *See* SAC § VI.A.  Specifically, Page alleges that Comey was aware of the following information which was omitted from the FISA warrant applications: (a) Page served as an "operational contact" for the CIA during the period of 2008 through 2013, *id.* ¶¶ 144, 149; (b) Comey received an investigative referral from the CIA explaining that Hillary Clinton was attempting to divert attention from herself by alleging that Russian hackers were working with the Trump Campaign to interfere in the 2016 election, *id.* ¶ 145; (c) Comey was aware that Page denied allegations that he was an agent of Russia and did not interview Page before submitting the initial FISA warrant application, *id.* ¶¶ 146, 148, 149; and (d) Comey was aware of the results of the Danchenko interview in late 2017 and still signed the third FISA warrant application, *id.* ¶ 153.

Page further alleges that in the same month Defendant Comey signed the certification in support

of the third FISA warrant application, he characterized the information from Steele as "unverified"

in a conversation with former President Trump.  *Id.* ¶ 152.  All told, Page alleges generally that

Comey's endorsement of the three FISA warrant applications falsely assured the FISC that the FBI

complied with the Woods Procedures.  *Id.* ¶ 154.

The Second Amended Complaint also alleges generally that Defendant Comey and others

"unlawfully leaked FISA and Privacy Act protected records and information concerning Page to

the media."  SAC ¶¶ 218, 226.  These allegations are presented in the context of two articles

published in April 2017: (1) an April 11, 2017 Washington Post article detailing information from

the first two FISA warrant applications and confirming that the FISC issued the warrants, *id.* ¶ 221;

Ex. 5[10] and (2) an April 22, 2017 New York Times article discussing Page's conduct in Russia and

Steele's allegations against Page, *id.* ¶ 224; Ex. 6.[11]  Page does not identify, however, what, if any

of the information obtained through the FISA warrants was purportedly disclosed, who disclosed

it, to whom the information was disclosed, or how and when it was allegedly disclosed.  Nor does

Page plausibly allege any facts indicating that any misconduct in relation to the Operation

Hurricane Crossfire investigation during Comey's tenure was intentional.  In fact, the OIG Report

did not conclude there was any intentional misconduct during Comey's tenure, much less conclude

that Comey personally participated in any such intentional misconduct.

---

[10] Ex. 5, Ellen Nakashima et al., *FBI obtained FISA warrant to monitor former Trump adviser Carter Page*, WASH. POST (Apr. 11, 2017),https://www.washingtonpost.com/world/national-security/fbi-obtained-fisa-warrant-to-monitor-former-trump-adviser-carter-page/2017/04/11/620192ea-1e0e-11e7-ad74-3a742a6e93a7_story.html    (hereinafter "April 11, 2017 WaPo Article").

[11] Ex. 6, Matt Apuzzo et al., *Comey Tried to Shield the F.B.I. From Politics. Then He Shaped an Election.*, N.Y. TIMES (Apr. 22, 2017), https://www.nytimes.com/2017/04/22/us/politics/james-comey-election.html.

Last but not least, the Second Amended Complaint includes excerpts of Defendant Comey's September 30, 2020 testimony before the Senate Judiciary Committee to cast his actions with respect to the warrant applications in a negative light.[12]  Crucially, however, the Second Amended Complaint omits key portions of Comey's testimony concerning the nature of his involvement in the applications.  Comey explained that the certification he signed for each of the three FISA warrant applications is "very narrow":

**Senator Lee:**

. . . Why do you not think that you had a duty to provide all the information to the Foreign Intelligence Surveillance Court? I mean, you signed the renewal application. Did you not?

**Mr. Comey:**

I signed a certification which is very narrow.

**Senator Lee:**

Got it. What does that mean? What the heck does the certification mean if you weren't required to know, and in fact did not know what was in there, and if you didn't have any duty to provide all the information to the court, what does that certification mean?

**Mr. Comey:**

I was trying to say, Senator, when you started speaking again, the certification is narrow that the FBI Director has to sign, but that doesn't change the fact that the FBI has a duty of candor, of heightened candor, to the FISA Court, and it wasn't met according to the Inspector General here. That's a separate question from

---

[12] The United States Senate Committee on the Judiciary held a hearing on the Oversight of the Crossfire Hurricane Investigation that took place over multiple days.  SAC ¶¶ 212, 213; *James Comey Testimony on Russia Investigation Transcript September 30*, Rev.com (Sept. 30, 2020), https://www.rev.com/blog/transcripts/james-comey-testimony-on-russia-investigation-transcript-september-30 ("Sept. 30, 2020 Hr'g Tr.").  Page directly quotes large portions of Defendant Comey's and Defendant McCabe's testimony.  SAC ¶¶ 211-217.  Thus, this Court may consider the entirety of the September Transcript.  *Banneker Ventures*, 798 F.3d at 1133; *Maib v. F.D.I.C.*, 771 F. Supp. 2d 14, 17 (D.D.C. 2011) (a court may consider documents "upon which the plaintiff's complaint necessarily relies even if the document is produced . . . by the defendant in a motion to dismiss").

whether the FBI Director should have been briefed on the individual portions of the Carter Page investigation. I know people care about that. Much more important, why were there material omissions, not just in this application, but in all the applications that the Inspector General looked at? So I think that's a really important question.

Sept. 30, 2020 Hr'g Tr. at 01:25:35-01:26:15.

## C.    Causes of Action Against Defendant Comey

The Second Amended Complaint alleges eight total causes of action, five of which are against Defendant Comey, pleaded as claims against all individual defendants.  The first three causes of action allege FISA violations related to the October 21, 2016, January 12, 2017, and April 7, 2017 warrant applications.  SAC ¶¶ 256-270.  The fourth cause of action asserts a FISA violation with respect to the June 29, 2017 FISA warrant application, even though Comey was no longer with the FBI when the agency submitted this application and when the FISC issued a warrant.  *Id.* ¶¶ 26, 271-274.  The fifth cause of action against Defendant Comey (the sixth cause of action in the Second Amended Complaint) is a *Bivens* claim alleging that Comey violated Page's civil rights by subjecting him to unreasonable searches in violation of the Fourth Amendment.  *Id.* ¶¶ 283-289.  Page claims a number of harms and damages as a result of the collective Defendants' actions in relation to the investigation and related publicity thereto, including economic and reputational harm.  *Id.* ¶ 254.  He does not, however, specify any particular harm resulting from the actual surveillance that occurred pursuant to the FISA warrants, or specifically which of Comey's alleged actions caused any such harm or damages.  Page also broadly alleges a violation of his Fourth Amendment rights, *id.* ¶ 61, but the thrust of his Second Amended Complaint alleges reputational harm and attendant economic damages due to harm to his business reputation.  *Id.* ¶ 262, 266, 270, 274.  Each of Page's claims against Comey fail as a matter of law.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," to encourage brevity and, at the same time, "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipses in original; internal quotations and citations omitted).  A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint with respect to the factual averments set forth by a plaintiff.  In adjudicating a motion on this basis, a court must accept well-pled allegations and construe reasonable inferences from those allegations in plaintiff's favor.  *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014). A court need not, however, accept inferences drawn by a plaintiff if they are not supported by the facts set out in the complaint.  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Plaintiff must offer "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  To the extent a complaint "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

14

## ARGUMENT

Page's claims against Comey are insufficient as a matter of law and should be dismissed. As a threshold matter and for the sake of judicial economy, Comey joins the Motions to Dismiss of Individual Defendants Kevin Clinesmith, Stephen Somma, Peter Strzok, Andrew McCabe, Lisa Page, Brian Auten, and Joseph Pientka (the "Co-Defendants"), and incorporates herein by reference all arguments set forth in those motions that apply equally to Comey.  Specifically, Comey joins in the following of the Co-Defendants' arguments, which similarly apply to him: (1) Page's claims are barred by the statutes of limitations applicable to them; (2) Page's FISA claims fail because he does not plausibly allege that Comey personally or intentionally "engaged in electronic surveillance" that was unlawful or "disclosed or used" information obtained as a result of such surveillance as required by 50 U.S.C. § 1810, and even if that were plausibly alleged, Comey is entitled to FISA's statutory defense; (3) Likewise, Page's *Bivens* claim should not be permitted in this new context where special factors counsel against such an extension, and in any event is inadequately pleaded; and (4) Even had Page adequately pleaded his FISA and *Bivens* claims, Comey is entitled to qualified immunity.

## I.    Page's FISA Claims Against Comey Must Be Dismissed

The Second Amended Complaint asserts four FISA claims against Comey in his individual capacity.  SAC ¶¶ 256-274.  These claims are both untimely and inadequately pleaded.

### A.    Page's FISA Claims Against Comey Are Untimely.

Comey joins and incorporates by reference the Co-Defendants' arguments regarding the statute of limitations on Page's FISA claims.  *See* Dkts. 81-1 at §§ I.A., I.B; 82-1 at § I.A.; 83-1 at § II; 84-1 at § I; 85-1 at § I.B.  A claim must be dismissed "when it appears from the face of the complaint that the relevant statute of limitations bars the action."  *Doe v. U.S. Dep't of Just.*, 753 F.2d 1092, 1115 (D.C. Cir. 1985); *see also Sykes v. U.S. Att'y for D.C.*, 770 F. Supp. 2d 152, 154

(D.D.C. 2011).  Where a federal statue does not provide a statute of limitations period for a cause of action, as here, courts generally borrow the most closely analogous state limitations period, or in rare cases, borrow analogous federal limitations periods.  *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 414-15 (2005).  Under either approach, Page's FISA claims against Comey fail.

Both elements of Page's FISA claims—that Comey allegedly "engaged in" electronic surveillance or allegedly "disclosed or used" information obtained from such surveillance—are time barred and must be dismissed because Page was fully aware that he was being surveilled more than three years before he filed the Complaint.  According to his own complaint, Page was aware as early as September 25, 2016 that the FBI was possibly investigating his ties to Russia.  *See* SAC ¶¶ 76-81 (describing Yahoo! News article detailing the FBI's investigation into Page and Page's responsive letter to Comey); Ex. 2 (Sept. 25, 2016 Letter).  He found the threat sufficient enough to warrant writing a letter to the FBI denying any connection to Russian officials and to sit for an interview with the Washington Post to deny the allegations in recent news reports.  SAC ¶ 81, 221.  Page's letter to Comey requested "the prompt end of the purported inquiry regarding [Page's] personal trip to Russia."  Ex. 2 (Sept. 25, 2016 Letter).  In fact, Page welcomed a call from FBI agents to "put [the] outrageous allegations to rest."  *Id.*

Page unsuccessfully attempts to toll the statute of limitations period by alleging that the FISA warrant process is "secretive" and non-public and that these measures concealed from him the Defendants' alleged unlawful acts.  SAC ¶¶ 62-66.  But these new allegations of "secrecy" fall flat in the face of Page's well-plead allegations that he knew he could be the target of an investigation as early as September 25, 2016.  *See* SAC ¶ 15.  And even if the Court does not use that date as the starting point of its analysis, the April 11, 2017 Washington Post article reports

16

publicly that the FBI obtained FISA warrants to monitor Carter Page.[13]  SAC ¶ 221.  Page is quoted

in this article: "This confirms all my *suspicions* about unjustified, politically motivated

government surveillance."  Ex. 5 (April 11, 2017 WaPo Article).  The article also describes the

"lengthy declaration" that laid out the FBI's basis for believing Page was an agent of the Russian

government which Page described as the "dodgy dossier."  *Id.*

By April 22, 2017, Page also understood that Comey was aware of and briefed on

information as part of the investigation.  *Id.* ¶ 224 (detailing April 22, 2017 New York Times

article).  Page filed his initial Complaint in this action on November 27, 2020.  Dkt. 1.  As set forth

below, because Page knew that he was being surveilled pursuant to FISA more than three years

before filing this action, his claims under the statute are untimely.

As noted in Defendant Clinesmith's brief, Dkt. 81-1 at 15-18, a one-year limitations period

should apply to Page's FISA claim, running from when Page learned that he was being surveilled.

---

[13] Page reconfirmed his knowledge of the alleged unlawful surveillance on the following dates:

1.  May 22, 2017, Page wrote a letter to the House Permanent Select Committee on
    Intelligence ("HPSCI") requesting the release of the "illegitimate FISA warrants" relating
    to him (Testimony of Carter Page (May 22, 2017) at 4-5, available at
    https://docs.house.gov/meetings/IG/IG00/20171102/106559/HHRG-115-IG00-
    Transcript-20171102.pdf. (hereinafter "Page HPSCI Testimony");

2.  November 2, 2017, Page testified before the HPSCI and described the wiretapping of his
    electronic devices as a "baseless domestic interference in our democracy" (HPSCI
    Testimony at 36);

3.  February 2, 2018, Page acknowledged the "Nunes Memo" (a memorandum declassified
    by President Trump on February 2, 2018 which disclosed alleged omissions from the
    initial FISA warrant application) and described the FISA warrant as "an unprecedented
    abuse of process" (ABC News (@ABC), TWITTER (Feb. 2, 2018, 12:43 PM),
    https://twitter.com/ABC/status/959482517291196417); and

4.  February 5, 2018, Paged stated publicly in a court filing that the Nunes Memo
    substantiated his view that he was the victim of an "abuse of process" (*Page v. Oath, Inc.*,
    No. 1:17-cv-6990-LGS, ECF No. 42 at 1-2 (S.D.N.Y. Feb. 5, 2018)).

There are a number of closely analogous state law claims with one-year limitations periods for libel, slander, and invasion of privacy. *See* D.C. Code § 12-301(a)(4) (libel and slander); *Greenpeace, Inc. v. Dow Chemical Co.*, 97 A.3d 1053, 1061-62 (D.C. 2014) (invasion of privacy). Further, as noted in Defendant Somma's brief, Dkt. 85-1 at 12-14, the two-year limitations periods of the Wiretap Act, 18 U.S.C. § 2520 (civil liability for the unauthorized interception, use, or disclosure of wire, oral, or electronic communications) and the Stored Communications Act, 18 U.S.C. § 2707 (civil liability for unauthorized access to stored wire or electronic communications), are the closest federal analogues. *See Sparshott v. Feld Ent., Inc.*, 311 F.3d 425, 428 (D.C. Cir. 2002) (Wiretap Act); *Sewell v. Bernardin*, 795 F.3d 337, 340 (2d Cir. 2015) (Stored Communications Act). The statutes' limitations periods are triggered by inquiry notice—i.e., when the complainant learns they are being surveilled. *Sparshott*, 311 F.3d at 429 (finding that wiretap claim accrued when plaintiff received "warnings with considerable objectivity"); *Sewell*, 795 F.3d at 340-41 (explaining that the limitations period began to run when plaintiff "first . . . had a reasonable opportunity to discover that someone had intentionally access[ed] [her stored electronic communication] without authorization") (quotations and citations omitted). But even giving Page the benefit of the doubt, the latest the limitations period would run from is when Page had a complete and present cause of action. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) (describing "the standard rule that accrual occurs when the plaintiff has a complete and present cause of action") (alterations and quotations omitted).

Even if a discovery rule applied here—which it does not—Page's claims would still have accrued in April 2017 when Page indisputably learned he was being surveilled. While a discovery rule delays the accrual of a claim, it does so only until "the plaintiff knows or by the exercise of reasonable diligence should know (1) of the injury, (2) its cause in fact, and (3) of some evidence

of wrongdoing." *Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 994 (D.C. Cir. 2014) (finding the statute of limitations on plaintiff's defamation claim began to run on the date the plaintiff learned of the first defamatory statement despite the defendant's repeated defamatory statements).  By April 11, 2017, Page himself stated his suspicions of "unjustified, politically motivated government surveillance" were confirmed when the Washington Post disclosed the existence of the FISA warrants based on a "dossier."  Ex. 5 (April 11, 2017 WaPo Article); *Cf. Lanier v. Bryant*, 332 F.3d 999, 1004 (6th Cir. 2003) (plaintiff's wiretapping claim accrued when plaintiff "knew, or at least suspected, that his telephone conversations were being taped"); *County of Hudson v. Janiszewski*, 520 F. Supp. 2d 631, 643 (D.N.J. 2007) (finding that plaintiffs' inquiry notice was triggered when the media reported on the fraudulent scheme as the reports gave plaintiffs sufficient knowledge that they suffered a general injury and "nothing more was required").

Page attempts to save his claims by alleging that the statute of limitations did not begin to run until the December 2019 publication of the OIG Report because he alleges the report was "the first official authoritative source to disclose that the FISA warrants . . . lacked probable cause and due to material[] errors and omissions were unlawfully obtained."  SAC ¶ 233.  This allegation does not save Page's claim.  As explained above, a claim accrues when the plaintiff knew or should have known of the injury and "*some* evidence of wrongdoing," not when the injury is confirmed by an "authoritative source."  *See Amobi*, 755 F.3d at 994 (emphasis added).  Page cannot credibly argue that he was unaware of the allegedly unlawful surveillance after the Washington Post published its April 11, 2017 article.  The publication of the OIG Report did not impact the statute of limitations.

Thus, to be timely under even the most generous limitations period conceivably available to Page, he had to learn he was being surveilled or the surveillance had to have been completed *on*

*or after* November 28, 2018.  Neither is true.[14]  Page's claims of alleged disclosure or use of information obtained from the electronic surveillance are also untimely, as Page learned of the investigation into his ties with Russia by September 2016 and the alleged "leaks" by April 2017, as noted above, which is more than three years before Page brought his Complaint.  *See* SAC ¶¶ 221, 224.  Though none of the information in the articles Page references included information obtained from the FISA warrants, as explained *infra* § I.B.2, the information in the April 2017 articles would necessarily have been disclosed before they were published.  Thus, Page's FISA claims are untimely because all of the following occurred well before his claims accrued (more than two years before he filed his Complaint): (a) he knew of the surveillance against him; (b) the FBI completed its surveillance of him; and (c) the press published information allegedly obtained from the FISA warrants.

### B.    Page Fails to State a FISA Claim

Even if the Court does not dismiss Page's FISA claims as untimely, they are not adequately pleaded for several reasons.

FISA includes "a private right of action for an individual subjected to electronic surveillance in violation of FISA's procedures."  *Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1030 (9th Cir. 2020).  Section 1810 of the Act provides that "[a]n aggrieved person . . . who has been subjected to an electronic surveillance or about whom information obtained by electronic surveillance of such person has been disclosed or used in violation of section 1809 of this title shall have a cause of action against any person who committed such violation . . . ."  50 U.S.C. § 1810.  Thus, to sufficiently plead a cause of action under this section, Page must plausibly allege (1) that

---

[14] The surveillance of Page under the Third FISA Warrant (the Second Renewal), which is the last warrant for which he presents allegations against Comey, concluded as of July 6, 2017, ninety-days after its issuance.  50 U.S.C. § 1881b(b)(1)(J).

he is an "aggrieved person" who was subjected to "electronic surveillance;" and (2) that Comey

violated Section 1809. *See Fazaga*, 965 F.3d at 1030. To establish a violation of Section 1809,

"an aggrieved person" must demonstrate two prohibited activities: (1) that the defendant in

question *intentionally* engaged in unlawful electronic surveillance; and (2) that defendant

*intentionally* "disclose[d] or use[d]" the information obtained through such surveillance. 50

U.S.C. § 1809(a)(1)-(2).[15] *See also Al-Haramain Islamic Found., Inc. v. Obama*, 705 F.3d 845,

854 (9th Cir. 2012) ("[A] violation of § 1809 is a criminal offense, and occurs when a person

*intentionally* . . . engages in electronic surveillance under color of law in a manner that violates

certain statutory provisions.") (emphasis added) (internal quotation and citation omitted).

The explicit scienter requirement in the statute is important, as FISA's legislative history

confirms that Congress intended for criminal liability to attach only upon a showing that the

defendant satisfied this requirement—i.e., violated the statute "*intentionally*." *See* H.R. Rep. No.

95-1283, at 97 (1978) (noting that the incorporation of the term "intentionally" in § 1809 "is

intended to reflect the most strict standard for criminal culpability" requiring proof that the conduct

was a violation and "was engaged in with a conscious objective or desire to commit a violation")

(quotation omitted). Page's FISA claims must therefore plausibly allege that Comey *intentionally*

"engaged in" unlawful electronic surveillance or "disclose[d] or use[d]" its fruits. *See*

50 U.S.C. § 1809(a)(1)-(2).

Page must also plausibly plead that Comey *personally* engaged in such conduct, as it cannot

be imputed to Comey in his supervisory capacity over subordinates. *See Fazaga*, 965 F.3d at 1039

---

[15] The Act includes a safe harbor provision in section 1809(b), which provides that "[i]t is a defense
to prosecution under subsection (a) that the defendant was a law enforcement or investigative
officer engaged in the course of his official duties and the electronic surveillance was authorized
by and conducted pursuant to a search warrant or court order of a court of competent jurisdiction."
50 U.S.C. § 1809(b).

("[A] plaintiff must plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution.") (emphasis added) (quoting *Iqbal*, 556 U.S. at 676). *See also Wikimedia Found. v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 335 F. Supp. 3d 772, 784 (D. Md. 2018) ("[T]he civil cause of action in § 1810 is premised upon the individual agent's violation of section 1809.") (internal quotation and citation omitted); *Attkisson v. Holder*, No. 1:17–cv–364, 2017 WL 5013230, at *12 (E.D. Va. Nov. 1, 2017) ("Any 'aggrieved person' has a 'cause of action against any person who committed' a 'violation' of § 1809.") (quoting 50 U.S.C. § 1810), *aff'd*, 925 F.3d 606 (4th Cir. 2019).   Nor can Comey be held liable under an aiding and abetting theory of liability (or *respondeat superior*) absent a clear directive from Congress, which does not exist here.  *See Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 279 (D.C. Cir. 2018) ("[W]hen Congress is silent as to aiding and abetting liability, it has unambiguously foreclosed that theory of recovery."); *Iqbal*, 556 U.S. at 676-77 (government official defendants "may not be held liable for the unconstitutional conduct of their subordinates").

The Second Amended Complaint, however, fails to allege a violation of § 1809 because it does not plausibly plead that Comey engaged in these prohibited activities, or that he did so intentionally.  Page does not plausibly allege that Comey *personally* and/or *directly engaged* in unlawful electronic surveillance or otherwise disclosed or used the fruits of the surveillance of Page.  At most, Page asserts, in conclusory fashion no less, that Comey "approved the FBI's monitoring and surveillance of Dr. Page," SAC ¶ 148, "signed the first three FISA Warrant Applications to surveil Dr. Page," *id.* ¶ 150, and "leaked information and records" to the press, *id.* ¶ 226.  Page's conclusory allegations that the individual Defendants "intentionally disregarded critical evidence," SAC ¶ 20, and "intentionally . . . caused to be made false and misleading

statements," *id.* at ¶ 285, likewise fail to adequately allege a FISA violation.[16]  *See Kelley v. Fed. Bureau of Investigation*, 67 F. Supp. 3d 240, 257-58 (D.D.C. 2014) (using "the talismanic words 'willful' and 'intentional'" alone cannot satisfy plaintiff's pleading burden).

Further, Page pleads FISA violations against Comey only as to the first three warrants.[17] SAC ¶ 150 (alleging Comey's involvement in only the "first three FISA Warrant applications to surveil Dr. Page").  This fatal defect alone counsels dismissal of the Fourth Cause of Action against Comey, as it relates to a FISA warrant application that the Second Amended Complaint admits did not involve Comey.

This court has recognized that "[a] court must not . . . accept inferences drawn by [a] plaintiff[] if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations." *Voinche v. Obama*, 744 F. Supp. 2d 165, 170-71 (D.D.C. 2010) (internal quotations and citations omitted), *aff'd*, 744 F. App'x 2 (D.C. Cir. 2011).  Because the Second Amended Complaint does not allege sufficient facts to make a plausible claim that Comey personally and intentionally engaged in the alleged surveillance or disclosed information obtained therefrom, Page's FISA claims must be dismissed.

> 1.   The Second Amended Complaint Fails to Allege that Comey Engaged in Electronic Surveillance.

Courts interpreting criminal liability under 50 U.S.C. § 1809(a) typically examine whether an individual actually "performs" the surveillance.  *See United States v. Koyomejian*, 946 F.2d

---

[16] Page's Second Amended Complaint adds the word "intentional" several new times with respect to the Defendants' use or disclosure of information obtained by electronic surveillance. Page's inclusion of this buzz word without any plausible allegations of intentional conduct do not magically transform his allegations into plausible claims against Comey.  *See e.g.*, SAC ¶¶ 264, 265.

[17] Comey's dismissal by the President on May 9, 2017 further forecloses his involvement in the June 29, 2017 warrant application.  SAC ¶ 26.

1450, 1459 n.16 (9th Cir. 1991). In addressing FISA claims in similar contexts, courts have dismissed such claims where the complaint failed to "plausibly allege that [the former Attorney General] actually engaged in the alleged unauthorized surveillance" because it did not allege that he "personally engaged in the alleged surveillance," even though the complaint included allegations of his personal involvement through *inter alia*, "signing-off" on search warrants. *Attkisson*, 2017 WL 5013230, at *4, *12. *cf. Broidy Cap. Mgmt. LLC v. Muzin*, No. 19-CV-0150, 2020 WL 1536350, at *11 (D.D.C. Mar. 31, 2020) (similar language in Stored Communications Act applied only to defendants who "themselves accessed [complainant's] computer systems"), *aff'd*, No. 20-7040, 2021 WL 3950185 (D.C. Cir. Sep. 03, 2021). The circumstances here counsel the same result.

As explained *infra* § I.C, Comey's signature on three FISA warrant applications as a "certifying official" is narrow and does not constitute "approval" or "authorization" for the surveillance itself. Rather, the certification attests to the purpose and need for the information sought through non-traditional investigatory methods. 50 U.S.C. § 1804(a)(6). Moreover, because Page fails to plead even one allegation at all as to Comey with respect to the third renewal of the FISA warrant (his Fourth Cause of Action), that count must be dismissed. *See Attkisson*, 2017 WL 5013230, at *12.

Further, as Defendant Clinesmith aptly points out, FISA's statutory text and history support a narrow reading of the phrase "engages in electronic surveillance." Dkt. 81-1 at 19-22. For the same reasons articulated in Clinesmith's brief, Page has not sufficiently pleaded a FISA claim as to Comey with respect to the first three applications to the FISC.

Page alleges generally that "the individual Defendants . . . engaged in electronic surveillance" and "disclosed or used information obtained by that electronic surveillance" knowing

that it was "not lawfully authorized by FISA." SAC ¶¶ 260, 264, 268, 272. Initially, this conclusory, collectively-plead allegation runs afoul of the prohibition against "lumping all the defendants together" without "factual basis to distinguish their conduct." *Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014) (discussing minimum pleading requirements under Federal Rule of Civil Procedure 8). The Court should not credit this broad allegation that lacks factual support and mirrors the elements of the FISA statute. *Iqbal*, 556 U.S. at 678 (admonishing against "formulaic recitation[s] of the elements of a cause of action").

Page's only attempts to distinguish Comey are to include additional allegations regarding Comey's participation in the FISA warrant application process. Page alleges that Comey was aware of the political motivations surrounding the Steele dossier, SAC ¶ 146, that Comey received periodic updates regarding the Crossfire Hurricane investigation, SAC ¶ 151, and that Comey knew the results of the Danchenko interview in June 2017, SAC ¶ 153. Even assuming the truth of these allegations, Page does not and cannot allege that Comey was responsible for selecting the information in the FISA warrant applications or verifying that information. As fully explained *infra* § I.C, Comey's role as "certifying official" was simply to certify that the FISA warrants had a significant foreign intelligence purpose and a logistical need. 50 U.S.C. § 1804(a)(6). *See also* OIG Report at 36-37. Comey was not required to (a) ensure that every piece of information on which he was briefed was included in the FISA warrant applications; or (b) verify the accuracy of the information contained within. *See* OIG Report at 36-37. Indeed, this would be impossible given the sheer number of applications certified by the FBI Director each year. *Id.* at 133 (explaining the FBI submits approximately 1,300 applications to the FISC each year). Thus, simply alleging that Comey was briefed on the issues listed above does not adequately state a claim against Comey.

Page also fails to plausibly plead that Comey personally surveilled Page or that Comey was involved in any of the practical logistics to conduct the surveillance.  To the extent Page alleges that Comey "caused" or "authorized" the electronic surveillance, that unsupported contention also is not plausibly pleaded and is presented improperly as a legal conclusion that this Court should not accept as true.  *See Voinche*, 744 F. Supp. 2d at 170-71.

Moreover, even if this Court somehow agreed with Page's conclusory contention that Comey "engaged in" unlawful electronic surveillance, Comey would be entitled to protection under FISA's safe harbor provision.  Section 1809(b) provides that "[i]t is a defense to a prosecution under subsection (a) that the defendant was a law enforcement or investigative officer engaged in the course of his official duties and the electronic surveillance was authorized by and conducted pursuant to a search warrant or court order of a court of competent jurisdiction." 50 U.S.C. § 1809(b).  The FISC has recognized that the FBI Director is a "law enforcement . . . officer."  *In re Sealed Case*, 310 F.3d 717, 734 (FISA Ct. Rev. 2002) ("The Director of the FBI . . . is both a law enforcement and counterintelligence officer.").  *See also* 18 U.S.C. § 3052 (outlining scope of authority of FBI directors, inspectors, and agents).  To the extent this Court finds that Comey "engaged in" unlawful electronic surveillance of Page, though he did not, any such surveillance would have been "authorized by and conducted pursuant to a search warrant or court order of a . . . competent jurisdiction."  50 U.S.C. § 1809(b).  And even if the Court does not find that Comey is entitled to a complete defense under this section, Comey is entitled to a qualified immunity defense, as explained *infra* § IV.[18]

---

[18] *Cf. Berry v. Funk*, 146 F.3d 1003, 1013 (D.C. Cir. 1998) (declining to apply qualified immunity to statutory claim under Title III where statutory safe harbor provides complete defense).

2.      The Second Amended Complaint Fails to Allege that Comey Used or
            Disclosed Information Obtained from Such Surveillance.

Page's additional generalized allegation, on information and belief, that defendants "used and disclosed [communications obtained through surveillance], to among other things, obtain the subsequent FISA warrants, unlawfully pursue investigative ends, and for unlawful leaks to the media and others," SAC ¶ 142, fares no better.  This conclusory and collectively-plead allegation also runs afoul of the prohibition against "lumping all the defendants together" without "factual basis to distinguish their conduct," *Toumazou*, 71 F. Supp. 3d at 21, and should be rejected, *Iqbal*, 556 U.S. at 678.

These generalized claims are also precisely the type of threadbare conclusory allegations the *Iqbal* court squarely rejected.  *Iqbal*, 556 U.S. at 687.  Indeed, Page's claim lacks key factual assertions in support, such as *what* information was leaked, under *which* warrant the information was collected, to *whom* the information was leaked, *when* the information was leaked, or *how* it was leaked.  The Second Amended Complaint does not contain a single paragraph explaining Page's allegation that the defendants used information obtained through surveillance to obtain the subsequent FISA warrants or unlawfully pursue investigative ends.  In fact, Page's own complaint admits that the defendants did not use FISA information to obtain the subsequent FISA warrants. The Second Amended Complaint explicitly states that the FISA renewal applications did not "outline any foreign intelligence information that had been gathered" under the previous warrants. *Id.* ¶¶ 114, 123, 136.

Even more, as to the information reported in the two articles cited in the Second Amended Complaint, Page fails to identify any information that conceivably could have been disclosed from electronic surveillance pursuant to the FISA warrants.  Indeed, information in the New York Times article references the events leading up to the initiation of the Crossfire Hurricane Operation.  SAC

27

¶ 224.  And the reference to the Washington Post article suffers from the same fatal flaw.  While that article discloses the *existence* of the FISA warrants, it too references events that occurred prior to their issuance, none of which could have been obtained *through* the electronic surveillance of Page.  *Id.* ¶ 221.

Last, to the extent Page alleges that Comey "disclosed" information in violation of FISA in his conversation with President Trump in January 2017, that argument similarly falls flat because Page alleges that Comey described information that was "*relied on by the FBI*" to support the probable cause to obtain the FISA warrants.  *Id.* ¶ 152 (emphasis added).  As such, the information Comey disclosed to Trump—which had absolutely nothing to do with Page—could not constitute information obtained *as a result of* the FISA warrants to electronically surveil Page.

3.     <u>The Second Amended Complaint Does Not Plausibly Plead that Comey Acted with Requisite Intent.</u>

Defendant Somma's brief capably summarizes the required showing for an intentional violation of § 1809(a).  Dkt. 85-1 at 15-16.  For the reasons set forth therein, Dkt. 85-1 at 16-17, which Comey adopts and incorporates by reference, Page has not satisfied the requisite showing to plausibly allege that Comey *intentionally* engaged in unlawful conduct under FISA.  He alleges no facts suggesting that Comey acted with intent to violate FISA, nor did the Inspector General find any evidence that Comey intentionally engaged in any misconduct.  Rather, for the reasons outlined in the next section, Comey's actions were consistent with his lawful obligations under FISA.

**C.     The Certification of a FISA Warrant Application is Narrow.**

Page's FISA allegations against Comey rest on a basic misunderstanding of the FBI Director's statutory role.  FISA applications require, *inter alia*, an affidavit from an FBI special agent that serves as the basis for the application, certification by the Director of the FBI, and

approval by the Attorney General. *See Al-Kidd v. Gonzales*, No. CV 05–093–EJL–MHW, 2008

WL 5123009, at *5 (D. Idaho Dec. 4, 2008). Section 1804 of the Act outlines the components of

an application for a court order from the FISC to surveil a person of interest. As relevant here, it

provides that:

> Each application shall require the approval of the Attorney General based upon his
> finding that it satisfies the criteria and requirements of such application as set forth in this
> subchapter. It shall include—
>
> . . . .
>
> (6) a certification or certifications by the Assistant to the President for National Security
> Affairs, an executive branch official or officials designated by the President from among
> those executive officers employed in the area of national security or defense and
> appointed by the President with the advice and consent of the Senate, or the Deputy
> Director of the Federal Bureau of Investigation, if designated by the President as a
> certifying official—
>
>> (A) that the certifying official deems the information sought to be foreign
>> intelligence information;
>>
>> (B) that a significant purpose of the surveillance is to obtain foreign intelligence
>> information;
>>
>> (C) that such information cannot reasonably be obtained by normal investigative
>> techniques;
>>
>> (D) that designates the type of foreign intelligence information being sought
>> according to the categories described in section 1801(e) of this title; and
>>
>> (E) including a statement of the basis for the certification that—
>>
>>> (i) the information sought is the type of foreign intelligence information
>>> designated; and
>>>
>>> (ii) such information cannot reasonably be obtained by normal
>>> investigative techniques.

50 U.S.C. § 1804(a)(6). *See also In re Sealed Case*, 310 F.3d at 723 ("To be sure, section 1804,

which sets forth the elements of an application for an order, required a national security official in

the Executive Branch—typically the Director of the FBI—to certify that 'the purpose' of the

surveillance is to obtain foreign intelligence information (amended by the Patriot Act to read 'a significant purpose').").

The certification component of a FISA warrant application is purposely limited by statute. Even where district courts have reviewed such certifications in the context of challenges to the evidence obtained through FISA warrants, courts recognize that "certifications submitted in support of a FISA application . . . are subjected only to minimal scrutiny" and "presumed valid." *United States v. Elshinawy*, No. CR ELH-16-0009, 2017 WL 1048210, at *10 (D. Md. Mar. 20, 2017) (internal citations omitted); *See United States v. Mohammad*, 339 F. Supp. 3d 724, 736 (N.D. Ohio 2018) (same); OIG Report at 37 n.136 ("The certifications submitted in support of a FISA application are presumed valid.").  Specifically, "[w]hen a FISA application is presented to the FISC, the FISA judge, in reviewing the application, is not to second-guess the executive branch official's certification that the objective of the surveillance is foreign intelligence information." *Elshinawy*, 2017 WL 1048210, at *10; *Mohammad*, 339 F. Supp. 3d at 736.  "[C]ertifications are upheld absent a 'substantial preliminary showing' that the application knowingly and intentionally, or with reckless disregard for the truth, included a false statement, and that the allegedly false statement was 'necessary' to the approval of the application."  OIG Report at 37 n.136.  *See* 50 U.S.C. § 1881b(c)(1)(D) (explaining that a FISA warrant shall issue so long as certification(s) are not clearly erroneous as to statements that the information sought is the type of foreign intelligence information designated and cannot reasonably be obtained by normal investigative techniques).

In reviewing a certification, a district court determines only whether it was made in accordance with FISA's requirements.  *Elshinawy*, 2017 WL 1048210, at *10.  *See also United States v. Turner*, 840 F.3d 336, 342 (7th Cir. 2016) ("In reviewing the adequacy of the FISA application, this court conducts the same review as the FISC, and our role is not to second-guess

30

the executive branch official's certification.") (internal quotation and citation omitted); *United States v. Alwan*, No. 1:11–CR–13–R, 2012 WL 399154, at *7 (W.D. Ky. Feb. 7, 2012) ("The [c]ourt is not to second-guess whether the certifications were correct, but merely to ensure they were properly made.") (internal quotation and citation omitted). The FISC has recognized that the purpose of a § 1804 certification "is to be judged by the national security official's articulation and not by a FISA court inquiry into the origins of an investigation nor an examination of the personnel involved." *In re Sealed Case*, 310 F.3d at 736. *See also* OIG Report at 37 (citing *In re Sealed Case*). The FISC has further explained that "it is up to the Director of the FBI, who typically certifies, to determine the government's national security purpose, as approved by the Attorney General or Deputy Attorney General." *In re Sealed Case*, 310 F.3d at 736.

The Second Amended Complaint conveniently blurs the stark and legally significant lines between the agent's affidavit containing facts supporting the warrants (the Woods Form) and the limited and narrow role the Director plays under applicable law in certifying not those facts but the need for and purpose of the surveillance. In his capacity as FBI Director at the time, Comey certified that "a significant purpose of the surveillance [of Page] was to obtain foreign intelligence information" and that such information could not "reasonably be obtained by normal investigative techniques." 50 U.S.C § 1804(a)(6). *See* OIG Report at 153, 208-09, 218. Comey also explained the limited import of this certification in his Congressional testimony. *See* Sept. 30, 2020 Hr'g Tr. at 1:25:53 ("I signed a certification which is very narrow."). The certification does not constitute approval or verification of the veracity of the underlying evidence presented in support of the FISA warrant application. Rather, it is limited by statute as an attestation of the warrant's purpose and the need to surveil in the method proposed. 50 U.S.C. § 1804(a)(6). The Woods Procedures further confirm the certification's limited import, as it is the case agent who verifies the factual

31

bases supporting the probable cause required for the FISA warrant application.  OIG Report at 44.

Here, in light of Comey's limited role under applicable law and his lack of personal involvement

in conducting the electronic surveillance, Page's threadbare allegations fail to plausibly allege a

FISA violation and should be dismissed.  *Iqbal*, 556 U.S. at 687.

## II.    Page's *Bivens* Claim Against Comey Should Also Be Dismissed

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388

(1971), the Supreme Court "recognized for the first time an implied private action for damages

against federal officers alleged to have violated a citizen's constitutional rights."  *Iqbal*, 556 U.S.

at 675.  For nearly forty years, however, the Supreme Court has been reluctant to extend *Bivens*

liability "to any new context or new category of defendants."  *Id.*; *See Loumiet v. United States*,

948 F.3d 376, 381 (D.C. Cir. 2020), *cert. denied*, 141 S. Ct. 180 (2020) (noting that the Supreme

Court has declined to extend *Bivens* on ten separate occasions).  In *Ziglar v. Abbasi*, the Supreme

Court held that courts lack the authority to expand the *Bivens* remedy substantially beyond those

instances in which the Supreme Court has already recognized such an implied right of action.  137

S. Ct. 1843, 1856-57 (2017).  The *Abbasi* Court established a two-part analytical framework to

assess *Bivens* claims.  *Id.* at 1859.  First, courts must determine "whether a case presents a new

*Bivens* context."  *Id.*  A case "presents a [new] context," whenever "the case is different in a

meaningful way from previous *Bivens* cases decided by this Court."[19]  *Id.*  Such "meaningful"

---

[19] The *Abbasi* Court explained that it had only approved of a cause of action brought against federal officials implied directly from the Constitution on three separate occasions, *see id.* at 1854-55—in *Bivens* itself (described as "a claim against FBI agents for handcuffing a man in his own home without a warrant," *id.* at 1860), in *Davis v. Passman*, 442 U.S. 228 (1979) ("a claim against a Congressman for firing his female secretary," *Abbasi*, 137 S. Ct. at 1860), and in *Carlson v. Green*, 446 U.S. 14 (1980) ("a claim against prison officials for failure to treat an inmate's asthma," Abbasi, 137 S. Ct. at 1860).  The Court also noted that these decisions were issued during an "ancient regime" in which the judicial creation of an implied cause of action was deemed appropriate.  The Court recognized, however, that in modern times, its jurisprudence has evolved to disfavor significantly such implied claims.  *See id.* at 1855-56.  Indeed, the Court openly

differences included the following:

> [T]he rank of the officers involved; the constitutional right at issue; the generality
> or specificity of the official action; the extent of judicial guidance as to how an
> officer should respond to the problem or emergency to be confronted; the statutory
> or other legal mandate under which the officer was operating; the risk of
> disrupti[on] by the Judiciary into the functioning of other branches; or the presence
> of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860.  A "meaningful" difference may still be "small, at least in practical terms," and thus,

this part of the analysis "is easily satisfied."  *Id.* at 1865.  Once a court concludes that a particular

case concerns a context not addressed in one of the Supreme Court's three prior *Bivens* decisions

(and thus is "new"), it must proceed to the second step of the analysis to determine whether "special

factors counsel[] hesitation."  *Id.* at 1857.  *See also Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)

(same).

Page seeks to assert a *Bivens* claim against Comey in the context of an alleged Fourth

Amendment violation stemming from alleged misrepresentations and omissions from four FISA

warrant applications.  His claim, however, not only is untimely, and should be dismissed at the

outset for this reason alone, but this Court also should not accept Page's invitation to extend *Bivens*

to this new context.  Nonetheless, even if *Bivens* were to be extended here, Page's claim would

still fail miserably.

### A.      Page's *Bivens* Claim is Time-Barred.

For the reasons articulated in the Defendant Clinesmith's brief in support of his motion to

dismiss, incorporated herein by reference, Page's *Bivens* claim as to Defendant Comey is time

barred.  Dkt. 81-1 at 25-30.  In particular, Comey agrees that D.C.'s one-year limitations period

under D.C. Code § 12-301(a)(4) applies here because Page's claims that Comey (i) misrepresented

---

questioned whether those three *Bivens* decisions "might have been different if they were decided
today."  *Id.* at 1856.

and/or omitted information from the FISA warrant applications that resulted in a violation of his Fourth Amendment rights, and (ii) leaked FISA protected information to the press, SAC ¶¶ 85, 209, 218, 226, sound in libel or slander.  Dkt. 81-1 at 25-30.  Though Page alleges that Comey "signed" the first three FISA warrant applications, SAC ¶ 150, for the reasons stated *supra*, § I.C, the limited import of the certification counsels the same analysis as in the Clinesmith brief.

Defendant Clinesmith's brief also succinctly summarizes the multiple decisions by courts in this District confirming that allegations similar to those alleged in Page's Complaint are analogous to a claim for libel or defamation.  Dkt. 81-1 at 26-27.  Comey agrees that the Court should not apply D.C.'s residual three-year statute of limitations because the circumstances in *Berman v. Cook* are readily distinguishable insofar as that case involved an actual physical search. 293 F. Supp. 3d 48, 56 (D.D.C. 2018).  Here, Page's allegations concern electronic surveillance and alleged resulting reputational harms.  SAC ¶¶ 93, 254.  Further, applying a three-year statute of limitations to the reputational tort here would create incongruity in Fourth Amendment jurisprudence in this District.  Dkt. 81-1 at 27.

A Bivens claim accrues "when the plaintiff has a complete and present cause of action"— that is, "when the plaintiff knows or has reason to know of the harm" alleged, *Loumiet v. United States*, 968 F. Supp. 2d 142, 150 (D.D.C. 2013) (quotation marks omitted), or the defendant's conduct, *Berman*, 293 F. Supp. 3d at 56 (plaintiff's claim accrued when he learned of the offending search); *Edokobi v. U.S. Gen. Servs. Admin.*, No. CV TDC-17-2469, 2018 WL 4639102, at *4 (D. Md. Sept. 27, 2018) (finding that a cause of action based on an unlawful search "accrue[s] when [the plaintiff] receive[s] notice of the search"), *aff'd*, 796 F. App'x 813 (4th Cir. 2020); *Roark v. United States*, No. 6:12-CV-01354-AA, 2013 WL 1071778, at *3 (D. Or. Mar. 12, 2013) ("[A] Bivens claim arising out of a search accrues on the date of the search.").

Page initiated this lawsuit on November 27, 2020 and named Comey as the lead defendant. Dkt. 1. Thus, his *Bivens* claim against Comey is timely only if it accrued in the preceding year—i.e., on or after November 28, 2019. Per the Second Amended Complaint, however, Page learned that he was being surveilled, and thus his *Bivens* claim accrued, well before that date. *See Berman*, 293 F. Supp. 3d at 56. As Page admits in his Second Amended Complaint, he learned he was a target of FISA warrants by at least April 11, 2017, when the Washington Post reported on the fact he was being surveilled. SAC ¶ 221. By this point, not only was Page aware that he was being surveilled, but he understood the basis of said surveillance and believed it to be improper. Ex. 5 (April 11, 2017 WaPo Article) (Page stated that the Washington Post's reporting "confirm[ed] all of [his] suspicions about unjustified, politically motivated government surveillance."). Page was also fully aware of Comey's participation in the FISA warrant application process as the Director of the FBI. *Id.* Not even a discovery rule saves Page's claims (it does not apply here), because Page was fully aware of the surveillance more than a year before he filed. And under the residual three-year limitations period, Page would have had to allege that he learned he was being surveilled on or after November 28, 2017. He has not so alleged. Therefore, under either limitations period, Page's *Bivens* claim against Comey is time-barred.

## B. The Court Should Not Expand *Bivens* Into This New Context.

For the same reasons articulated in Defendant Clinesmith's brief, Page's *Bivens* claim as to Comey should not be extended into a new context that the Supreme Court has not previously recognized. Dkt. 81-1 at 31-33. There is no question that Page seeks to extend *Bivens* relief in this new context of an alleged violation of his Fourth Amendment rights through "misleading statements" and/or or omissions in the FISA warrant applications. SAC ¶ 285. Not only has the Supreme Court not previously recognized a *Bivens* claim in this context, but there are significant "meaningful differences" between Page's proposed *Bivens* claim against Comey and the Supreme

Court's three prior decisions recognizing such a claim.  At a minimum, Page's instant claims—like those presented in *Abbasi*— (i) "involve" high-ranking officials with the federal government and decisions putatively made by those high-ranking officials, (ii) implicate national security information as well as the acquisition of that information under FISA, and (iii) rely upon a different constitutional provision than those at issue in the Supreme Court's prior decisions (i.e., First Amendment) or the same constitutional provision (i.e., Fourth Amendment) but within a significantly-different factual setting than that presented in those prior decisions.  Put simply, Plaintiff's claim "bear[s] little resemblance to the three *Bivens* claims the Court has approved in the past." *Abbasi*, 137 S. Ct. at 1860.  Defendant Clinesmith's brief similarly provides a point-by-point list of meaningful differences between Page's claims and prior *Bivens* claims, including that the search in *Bivens* was a warrantless one, all of which Comey incorporates by reference.  Dkt. 81-1 at 32-33.  *See Attkisson v. Holder*, 925 F.3d 606, 621 (4th Cir. 2019) ("[A] claim based on unlawful electronic surveillance presents wildly different facts and a vastly different statutory framework from a warrantless search and arrest.").

### C.     Special Factors Implicated by the Second Amended Complaint Counsel Hesitation.

An analysis of the "special factors" implicated by Page's *Bivens* claim further yields the inescapable conclusion "that whether a damages action should be allowed is a decision for [] Congress to make, not the courts." *Abbasi*, 137 S. Ct. at 1860.  Page's *Bivens* claim seeks to hold Comey liable for his actions as a high-ranking federal official for signing three FISA warrant applications as a "certifying official," SAC ¶ 150, and claims that "Comey's endorsement of the[] applications falsely assured the FISC that the Woods Procedures had been followed." *Id.* 154

Yet, as explained *supra*, § I.C, § 1804 of FISA provides that the FBI Director may certify an application for a FISA warrant, and outlines specifically the matters being certified—i.e., the

*purpose* of the information being sought and the *need* to obtain the information through special investigatory methods. 50 U.S.C. § 1804(a)(6). Under FISA, the FBI Director does not make any certification or "verification" of the facts supporting the application. Given the *Abbasi* court's admonition that implied *Bivens* remedies do not serve to challenge the legitimacy of federal policies—especially outside of the typical "law enforcement" context—this "special factor" alone requires rejection of Page's *Bivens* claim against Comey. This conclusion is only bolstered by the fact that the statute and the actions in question do not concern law enforcement activity in the course of a criminal investigation, but the collection and dissemination of foreign intelligence in connection with the FBI's national security responsibilities. *See Abbasi*, 137 S. Ct. at 1861-62.

Indeed, in addition to the rationales outlined in Defendant Clinesmith's brief, Dkt. 81-1 at 33-38, there is little doubt that the following special factors counsel hesitation: (a) Comey's rank as a high-ranking official (i.e., FBI Director); (b) the constitutional right asserted in the new context—i.e., a Fourth Amendment violation under FISA; (c) the comprehensive statutory scheme governing FISA and electronic surveillance generally; (d) that Comey acted pursuant to his responsibilities as a "certifying official" under 50 U.S.C. § 1804(a); (e) that the extension of this implied right of action in these circumstances would risk the judiciary disrupting the legislation of Congress in the area of electronic surveillance; and (f) the availability of adequate alternative remedies under FISA. *See Abbasi*, 137 S. Ct. at 1858 ("[A]n alternative remedial structure . . . alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."). For the same reasons set forth in Defendant Clinesmith and Lisa Page briefs, the Supreme Court's decision in *Abbasi* compels that this Court reject Page's attempt to proceed with an implied *Bivens* claim against Comey. Dkts. 81-1 at § II.B, 83-1 at § I.B.

## D.   Page Does Not Adequately Plead His *Bivens* Claim.

Even if the Court does recognize an implied *Bivens* claim in this new context, Page's allegations fall short of the plausibility mark; indeed, his claim bears much in common with the complaint the Supreme Court found deficient in *Iqbal* itself.  In that case—a companion to that which would ultimately become *Abbasi*—the Supreme Court confronted a *Bivens* action brought against the former Attorney General of the United States alleging that he was the "principal architect" of a policy concerning the detention conditions to which aliens would be subjected, and that he "'knew of, condoned, and willfully and maliciously agreed to subject' [plaintiff] to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'"  *Iqbal*, 556 U.S. at 669.  The Supreme Court held that both of these allegations were conclusory in nature—because they represented nothing more than "a formulaic recitation of the elements of a cause of action"—and were thus insufficient to render plausible the Attorney General's personal involvement.  *Id.* at 678.  In simple terms, the Court held that the *Iqbal* complaint left one only to speculate regarding whether the Attorney General was personally involved in the actual unconstitutional conduct.  *Id.* at 680.

Page's *Bivens* claim against Comey here is remarkably similar.  Plaintiff alleges that Comey "approved the FBI's monitoring and surveillance of Dr. Page," SAC ¶ 148, and "verified under penalty of perjury three false FISA warrant affidavits regarding Dr. Page in October 2016, January 2017, and April 2017," *id.* ¶ 26.  Such generalized averments, however, besides being grossly inaccurate, are nothing more than the exact type of legally "formulaic" terms and phrases that the Supreme Court held insufficient in *Iqbal*.  556 U.S. at 678.  Comey also cannot be held liable for the actions of his subordinates.  *Corsi v. Muller*, 422 F. Supp. 3d 51, 65 (D.D.C. 2019) ("It is well established that '*Bivens* claims cannot rest merely on respondeat superior.'"), *aff'd*, 819 F. App'x 6 (D.C. Cir. 2020).  *See also Simpkins v. D.C. Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997)

("The complaint must at least allege that the defendant federal official was personally involved in the illegal conduct.").

Nor does the remainder of the Second Amended Complaint overcome this deficiency, as the cited Congressional testimony of Defendant Comey only reinforces the lack of his personal involvement in obtaining the warrant application.  SAC ¶ 212; OIG Report at 156-57.  These generic allegations do not nudge Plaintiff's claim—which requires a demonstration that Defendant Comey was actually and personally involved in the illegal incursion—"across the line" from speculative to plausible.  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

## III.  Page Does Not Adequately Plead That His Damages Arise from Comey's Conduct.

For the reasons outlined in Defendant Somma's brief, which Comey adopts and incorporates by reference, Page similarly has failed to plausibly plead that his alleged damages are fairly traceable to any conduct by Comey.  Dkt. 85-1 at 19-21.  Page's claims include a "speculative chain of possibilities" that he seeks to impute to Comey as FBI Director.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413-14 (2013) (causation not established on "theories that rest on speculation about the decisions of independent actors").  But such allegations do not pass muster for the reasons articulated in Somma's brief, Dkt. 85-1 at 19-21, and for the additional reason that Comey's involvement in obtaining the first three FISA warrants was inherently limited by his statutory role as the "certifying official" as to the purpose of and need for the electronic surveillance.

## IV.  Defendant Comey is Entitled to Qualified Immunity

Even if the Court determines that Page has adequately pleaded his FISA claims and recognizes a *Bivens* cause of action in this new context, Comey is entitled to qualified immunity and Page's claims must still be dismissed.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   A clearly established right exists where "existing precedent must have placed the statutory or constitutional question beyond debate."   *al-Kidd*, 563 U.S. at 741.   The doctrine of qualified immunity permits government officials "to make reasonable but mistaken judgments about open legal questions," and "[w]hen properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'"   *Id.* at 743.   Thus, "if a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability."   *Abbasi*, 137 S. Ct. at 1867; *see al-Kidd*, 563 U.S. at 741 (to defeat qualified immunity, "every 'reasonable official'" in defendant's position must have known conduct was unlawful).

Qualified immunity is not "a mere defense to liability" but rather "an immunity from suit." *Mitchell v. Forsyth*, 472 U.S. 511, 526-27 (1985).   As a result, the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).   Government officials also cannot be held liable for constitutional claims on a *respondeat superior* theory; rather, courts have long recognized that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," and that such defendants "may not be held liable for the unconstitutional conduct of their subordinates." *Iqbal*, 556 U.S. at 676-77.

The Supreme Court has clarified that a clearly established right "must be defined with specificity," *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam), and has

cautioned courts against defining "clearly established law at a high level of generality," *al-Kidd*, 563 U.S. at 742.  Page woefully fails to meet the "demanding standard" required to show his clearly established right.  *See District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018); *see Dukore v. District of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015).  Likewise, Page's inclusion of the words "clearly established" in his Second Amended Complaint does not make it so or save his claim.  SAC ¶¶ 61, 287.

Page premises his claim of a Fourth Amendment violation based on Comey's alleged misrepresentations and omissions in the FISA warrant application process.  But existing precedent does not clearly establish that Comey's *certification* of the FISA warrant applications as part of that process could have conceivably violated Page's Fourth Amendment rights, particularly where the certifications (i) are presumed valid, *Elshinawy*, 2017 WL 1048210, at *10; (ii) make no representation about the veracity of the facts supporting the applications; and (iii) have no plausible connection to the alleged damages.  *See Fazaga*, 965 F.3d at 1039 (non-agent defendants "entitled to qualified immunity on the FISA claim"); *id.* at 1031 ("Plaintiffs accept[ed] that qualified immunity can apply under FISA.").

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court implied that misrepresentations in a warrant affidavit may violate the Fourth Amendment, *id.* at 171-72, but nowhere in the Second Amended Complaint is it alleged that Comey actually falsified information in or purposefully omitted information from the FISA warrant applications that would have impacted the probable cause determination.  *See also United States v. Williams*, 827 F.3d 1134, 1146 (D.C. Cir. 2016) ("This court has extended *Franks* to apply not only where the Government is alleged to have made false statements but also where a defendant alleges that the Government

knowingly and intentionally (or with reckless disregard) omitted a fact that would have defeated probable cause.")  (quotation and citation omitted).

Moreover, not only—as the OIG Report concluded—was Comey not involved in the compilation of any evidence used to support the probable cause determination in the application, but the Inspector General found no evidence that Comey actually knew, at the time of his certifications, that the factual information submitted in support of the applications was false or misleading.  OIG Report at 156-57.  Nor, as set forth above, was he certifying the veracity of those factual bases.  Indeed, it would be impossible that "every reasonable official" would know that certifying the purpose and need for a FISA warrant to conduct a search outside of the normal investigative processes would proximately cause a Fourth Amendment violation, particularly where the application remains subject to approval by the Attorney General and review by the FISC before issuance.  *Cf. Kapinski v. City of Albuquerque*, 964 F.3d 900, 909-12 (10th Cir. 2020) (not clearly established that material omissions in warrant application violated Fourth Amendment). Moreover, Page does not plausibly claim that Comey took any action that actually ran afoul of his duties under FISA.

That Comey allegedly later described certain information from Steele as "unverified" to President Trump, SAC ¶ 150, does not magically transform Comey's certification into a Fourth Amendment violation.[20]  *See* OIG Report at 154 (describing Comey's view that simply because the information regarding Page was uncorroborated at the time of the application did not mean it

---

[20] Page misleadingly cherry-picks language from Comey's testimony and the OIG Report on this score.  The information Comey described to President Trump was described as "*salacious* and unverified" and did not concern Page at all.  OIG Report at 4 n.7 (emphasis added).  Rather, Comey's conversation with President Trump concerned allegations regarding the President's activities in Russia which were purportedly captured by Russian intelligence.  *Id.* at 4 n.7, 95, 180-81 & n.324.

was unreliable).  Page's additional claims that Comey omitted information from the FISA warrant applications do not change this analysis, particularly given the remoteness in time of the subject information—that Page was an "operational contact" for the CIA in 2008-2013, years before the FBI initiated Operation Crossfire Hurricane.  SAC ¶ 84.  Moreover, not one case suggests that a high-ranking "certifying official" who signs a FISA warrant application somehow "engages in electronic surveillance," nor has any case held that an official who engages in surveillance pursuant to a FISA warrant violates the statute, even if that warrant is later deemed defective.

## CONCLUSION

For the foregoing reasons, the Court should dismiss all claims against James B. Comey (Counts 1-4, and 6) with prejudice.

Dated:  September 17, 2021

Respectfully submitted,

**DECHERT LLP**

*/s/ Amisha R. Patel*
Amisha R. Patel (DC Bar No. 1005420)
1900 K Street, NW
Washington, D.C. 20006
Tel: (202) 261-3374
Fax: (202) 261-3333
amisha.patel@dechert.com

David N. Kelley (*pro hac vice*)
Three Bryant Park
1095 Avenue of the Americas
New York, NY 100036-6797
Tel: (212) 698-3580
Fax: (212) 698-3599
david.kelley@dechert.com

Stormie Mauck (*pro hac vice*)
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-2516
Fax: (215) 994-2222
stormie.mauck@dechert.com

*Counsel for Defendant James B. Comey*