## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CARTER PAGE, )
)
    Plaintiff, )
)
v. )      Civil Action No. 1:20-cv-3460
)
JAMES COMEY, et al., )
)
    Defendants. )
)

---

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF GOVERNMENT DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

---

BRIAN M. BOYNTON
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J.  COPPOLINO
Deputy Director, Federal Programs Branch

MARCIA BERMAN
Assistant Director, Federal Programs Branch

AMY E. POWELL
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice

*Attorneys for Defendants Department of Justice and Federal Bureau of Investigation*

DANIEL P. CHUNG
CATE E. CARDINALE
Trial Attorneys, Torts Branch
Civil Division, Department of Justice

Dated:  September 17, 2021    *Attorneys for the United States of America*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND .............................................................................................. 3

PLAINTIFF'S PRIOR RELATED LITIGATION ............................................................ 13

I.      *Page v. Oath, Inc.,* et al., No. 1:17-cv-6990-LGS (S.D.N.Y.) ............................ 13

II.     *Page v. DOJ,* No. 1:19-cv-03149-KBJ (D.D.C.) ................................................. 15

ARGUMENT ..................................................................................................................... 16

I.      LEGAL STANDARDS. .......................................................................................... 16

II.     THE COURT SHOULD DISMISS COUNT 5 (FTCA CLAIM) .................................... 19

        A.      Plaintiff fails to state a claim for abuse of process and thus fails to
                establish subject matter jurisdiction .......................................................... 20

        B.      Plaintiff's claim is time-barred under 28 U.S.C. § 2401(b) ....................... 23

III.    THE COURT SHOULD DISMISS COUNT 7 (PRIVACY ACT AMENDMENT
        CLAIM), OR IN THE ALTERNATIVE, GRANT DEFENDANT SUMMARY
        JUDGMENT ON THIS CLAIM. ............................................................................. 28

        A.      Legal Framework for Privacy Act Access and Amendment Claims ........... 28

        B.      The Court Lacks Jurisdiction Over Count 7 Because Plaintiff Failed to
                Exhaust His Administrative Remedies. ....................................................... 29

        C.      The Complaint Fails to Identify an Error in the OIG Report ....................... 31

        D.      The OIG Report is Not in a System of Records ........................................... 32

        E.      OIG Investigative Files are Exempt from Access and Amendment Claims ......... 34

IV.     THE COURT SHOULD DISMISS COUNT 8 (PRIVACY ACT DISCLOSURE) ......... 36

        A.      Count 8 Is Time-Barred. ............................................................................. 36

        B.      Plaintiff Has Not Plausibly Pled Actual Damages Caused By the Alleged
                Disclosures. ................................................................................................. 41

V.      THE COURT SHOULD DISMISS COUNT 9 (PATRIOT ACT/FISA) ....................... 44

        A.      Statutory Framework for FISA Claims ........................................................ 44

B.      The Statute of Limitations Bars Plaintiff's Claims..................................................... 47

C.      The Court Should Dismiss Any Claim Regarding Unlawful Collection Under FISA Section 1810, for which Section 2712 Does Not Waive Sovereign Immunity........................................................................................... 50

D.      Plaintiff Otherwise Fails to Plead a Willful Use or Disclosure of FISA Information Without Lawful Purpose Under Section 2712................................. 51

CONCLUSION................................................................................................................. 59

# TABLE OF AUTHORITIES

## CASES

*Agelli v. Burwell,*
  164 F. Supp. 3d 69 (D.D.C. 2016) ........................................................................... 36

*\*Al-Haramain Islamic Found., Inc. v. Obama,*
  705 F.3d 845 (9th Cir. 2012) ......................................................... 44, 45, 49, 50

*Allen v. Brown,*
  320 F. Supp. 3d 16 (D.D.C. 2018) ......................................................................... 55

*\*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................... 17, 52, 57

*Barouch v. DOJ,*
  962 F. Supp. 2d 30 (D.D.C. 2013) ......................................................................... 29

*\*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................... 17, 43

*Bembenista v. United States,*
  866 F.2d 493 (D.C. Cir. 1989) ......................................................................... 55

*\*Brownback v. King,*
  141 S. Ct. 740 (2021) ........................................................................... 19, 20, 23

*Browning v. Clinton,*
  292 F.3d 235 (D.C. Cir. 2002) ......................................................................... 41

*\*Callahan v. United States,*
  426 F.3d 444 (1st Cir. 2004) ......................................................................... 26

*\*Chichakli v. Tillerson,*
  882 F.3d 229 (D.C. Cir. 2018) ......................................................................... 36

*Chung v. DOJ,*
  333 F.3d 273 (D.C. Cir. 2003) ......................................................................... 40

*Ciralsky v. CIA,*
  355 F.3d 661 (D.C. Cir. 2004) ......................................................................... 40

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ........................................................................... 21, 22

*Cox v. Dep't of the Treasury,*
  No. 20-CV-631 (TSC), 2021 WL 1268384 (D.D.C. Apr. 6, 2021) ........................................... 18

*Deloria v. Veterans Admin.*,
  927 F.2d 1009 (7th Cir. 1991) ........................................................... 55

*Dick v. Holder*,
  67 F. Supp. 3d 167 (D.D.C. 2014) ..................................................... 29

*\*Dickson v. Off. of Pers. Mgmt.*,
  828 F.2d 32 (D.C. Cir. 1987) ............................................................. 29

*Didban v. Pompeo*,
  435 F. Supp. 3d 168 (D.D.C. 2020) ................................................... 18

*\*Donahue v. United States*,
  634 F.3d 615 (1st Cir. 2011) .............................................................. 23

*\*Dormu v. D.C.*,
  795 F. Supp. 2d 7 (D.D.C. 2011) ....................................................... 21

*E.E.O.C. v. St. Francis Xavier Parochial Sch.*,
  117 F.3d 621 (D.C. Cir. 1997) ........................................................... 18

*Erhard v. United States*,
  Civ. No. 93-0725-NHJ, 1994 WL 196755 (D.D.C. Mar. 29, 1994) ........................................ 27

*F.A.A. v. Cooper*,
  566 U.S. 284, (2012) .......................................................................... 41

*F.D.I.C. v. Meyer*,
  510 U.S. 471 (1994) ........................................................................... 19

*Farrero v. NASA*,
  180 F. Supp. 2d 92 (D.D.C. 2001) ..................................................... 36

*Fikre v. FBI*,
  142 F. Supp. 3d 1152 (D. Ore. 2015) ................................................. 46

*Fox v. Gov't of D.C.*,
  794 F.3d 25 (D.C. Cir. 2015) ............................................................. 17

*\*GAF Corp. v. United States*,
  818 F.2d 901 (D.C. Cir. 1987) ...................................................... 26, 55

*Gill v. DOJ*,
  2016 WL 3982450 (D.D.C. 2016), *aff'd on other grounds*, 875 F.3d 677 (D.C. Cir. 2017).... 50

*Goodall v. Frank R. Jelleff, Inc.*,
  130 A.2d 781 (D.C. 1957) ............................................................. 22, 53

iv

*Hall v. Hollywood Credit Clothing Co.*,
   147 A.2d 866 (D.C. 1959) ................................................................... 20

*Henke v. U.S. Dep't of Commerce*,
   83 F.3d 1453 (D.C. Cir. 1996) .......................................................... 28, 29

*\*Hill v. Dep't of Def.*,
   981 F. Supp. 2d 1 (D.D.C. 2013) ................................................ 36, 37, 39

*Hill v. U.S. Dep't of Def.*,
   70 F. Supp. 3d 17 (D.D.C. 2014) ....................................................... 41

*Hinton v. Corr. Corp. of Am.*,
   624 F. Supp. 2d 45 (D.D.C. 2009) .................................................. 32, 37

*\*In re OPM Data Sec. Breach Litig.*,
   928 F.3d 42 (D.C. Cir. 2019) ........................................................ 41, 42

*In re Sealed Case*,
   310 F.3d 717 (Foreign Int. Surv. Ct. Rev. 2002) ................................. 45

*James Madison Project v. DOJ*,
   No. 17-CV-00597 (APM), 2020 WL 1033301 (D.D.C. Mar. 3, 2020) ....... 10, 38, 39

*Kareem v. Haspel*,
   986 F.3d 859 (D.C. Cir. 2021) ........................................................... 56

*Kelley v. FBI*,
   67 F. Supp. 3d 240 (D.D.C. 2014) ..................................................... 54

*Keohane v. United States*,
   669 F.3d 325 (D.C. Cir. 2012) ........................................................... 47

*\*Kokotis v. U.S. Postal Serv.*,
   223 F.3d 275 (4th Cir. 2000) ............................................................. 27

*Kursar v. Transp. Sec. Admin.*,
   581 F. Supp. 2d 7 (D.D.C. 2008), *aff'd*, 442 F. App'x 565 (D.C. Cir. 2011) ........... 29

*Leighton v. C.I.A.*,
   412 F. Supp. 2d 30 (D.D.C. 2006) ..................................................... 29

*\*Lemon v. Kramer*,
   270 F. Supp. 3d 125 (D.D.C. 2017) ................................................... 22

*Mackinac Tribe v. Jewell*,
   87 F. Supp. 3d 127 (D.D.C. 2015), *aff'd*, 829 F.3d 754 (D.C. Cir. 2016) ........... 17, 18

*Maddox v. Wells Fargo Bank N.A.*,
   374 F. Supp. 3d 146 (D.D.C. 2020) ...................................................................... 18

*\*Maydak v. United States*,
   630 F.3d 166 (D.C. Cir. 2010) .................................................................... 28, 31

*\*McCready v. Nicholson*,
   465 F.3d 1 (D.C. Cir. 2006) ................................................................. 31, 32, 33

*\*Moore v. United States*,
   213 F.3d 705 (D.C. Cir. 2000) ...................................................... 20, 21, 25, 53

*Morowitz v. Marvel*,
   423 A.2d 196 (D.C. 1980) ...................................................................... 20

*\*Nader v. Democratic Nat'l Comm.*,
   567 F.3d 692 (D.C. Cir. 2009) ........................................................... 23, 26

*Page v. Dem. Nat'l Comm.*,
   2 F.4th 630 (7th Cir. 2021) ..................................................................... 16

*Page v. Oath, Inc.*, C.A.,
   No. S20C-07-030 CAK, 2021 WL 528472 (Del. Supr. Ct. Feb. 11, 2021) ........................... 16

*Paige v. Drug Enf't Admin.*,
   665 F.3d 1355 (D.C. Cir. 2012) ...................................................................... 28

*Poulsen v. Dep't of Def.*,
   373 F. Supp. 3d 1249 (N.D. Cal. 2019) ...................................................................... 38

*Ratzlaf v. United States*,
   510 U.S. 135 (1994) ...................................................................... 46

*Return Mail, Inc. v. United States Postal Serv.*,
   139 S. Ct. 1853 (2019) ...................................................................... 44

*Richardson v. Bd. of Governors of Fed. Rsrv. Sys.*,
   288 F. Supp. 3d 231 (D.D.C. 2018), *aff'd*,
   No. 18-5063, 2018 WL 4103305 (D.C. Cir. Aug. 15, 2018) ...................................................................... 41

*Roma v. United States*,
   344 F.3d 352 (3d Cir. 2003) ...................................................................... 55

*Samtmann v. DOJ*,
   35 F. Supp. 3d 82 (D.D.C. 2014), *aff'd*,
   No. 14-5115, 2015 WL 236560 (D.C. Cir. Jan. 16, 2015) ...................................................................... 40

vi

*Schuler v. United States*,
  628 F.2d 199 (D.C. Cir. 1980) ............................................................................. 46

*Scott v. Dist. of Columbia*,
  101 F.3d 748 (D.C. Cir. 1996) ........................................................................ 20, 21

*Smith v. United States*,
  518 F. Supp. 2d 139 (D.D.C. 2007) ........................................................... 16, 17, 24

*Sparshott v. Feld Ent., Inc.*,
  311 F.3d 425 (D.C. Cir. 2002) ............................................................................. 47

*Sprint Commc'ns v. F.C.C.*,
  76 F.3d 1221 (D.C. Cir. 1996) ........................................................................ 47, 49

*Taylor v. F.A.A.*,
  No. 18-CV-00035 (APM), 2019 WL 3767512 (D.D.C. Aug. 9, 2019) ................. 41

*Terveer v. Billington*,
  34 F. Supp. 3d 100 (D.D.C. 2014) ........................................................................ 18

*Tijerina v. Walters*,
  821 F.2d 789 (D.C. Cir. 1987) ............................................................................. 36

*W. Sur. Co. v. U.S. Eng'g Constr., LLC*,
  955 F.3d 100 (D.C. Cir. 2020) ............................................................................. 18

*Wash. Post v. Robinson*,
  935 F.2d 282 (D.C. Cir. 1991) ........................................................................ 18, 39

*Welborn v. Internal Revenue Serv.*,
  218 F. Supp. 3d 64 (D.D.C. 2016) ........................................................................ 41

*Whitaker v. Barksdale Air Force Base*,
  No. 14-cv-2342, 2015 WL 574697 (W.D. La. Feb. 11, 2015) ............................ 50

*Wikimedia Found. v. Nat'l Sec. Agency Cent. Sec. Serv.*,
  335 F. Supp. 3d 772 (D. Md. 2018) ..................................................................... 49

*Williams v. City Stores Co.*,
  192 A.2d 534 (D.C. 1963) ................................................................................... 20

*Williams v. United States*,
  2017 WL 11493266 (D.D.C. Nov. 1, 2017) ......................................................... 20

*Yusuf v. Jones*,
  No. 20-cv-1079-BMC, 2020 WL 4369641 (E.D.N.Y. July 30, 2020) ................. 27

*Zandford v. Nat'l Ass'n of Sec. Dealers, Inc.*,
  19 F. Supp. 2d 4 (D.D.C. 1998) ............................................................ 22

## STATUTES

5 U.S.C. § 552 ........................................................................................... 38

*5 U.S.C. § 552a ................................................................................ *passim*

18 U.S.C. § 1001 ......................................................................................... 9

*18 U.S.C. § 2712 ............................................................................... *passim*

*28 U.S.C. § 1346 ...................................................................................... 19

*28 U.S.C. § 2401 ........................................................................... 2, 23, 27

50 U.S.C. § 1801 *et seq* ...................................................................... *passim*

50 U.S.C. §§ 1821–1829 ........................................................................... 22

## RULES

Fed. R. Civ. P. 8 ....................................................................................... 17

Fed. R. Civ. P. 12 ..................................................................................... 17

Fed. R. Civ. P. 56 ..................................................................................... 18

## REGULATIONS

28 C.F.R. § 16.45 ...................................................................................... 30

28 C.F.R. § 16.46 ...................................................................................... 30

28 C.F.R. § 16.75 ...................................................................................... 34

72 Fed. Reg. 36725 (July 5, 2007) ........................................................... 34

82 Fed. Reg. 24151 (May 25, 2017) ......................................................... 34

## OTHER AUTHORITIES

Administration's Draft Anti-Terrorism Act of 2001: Hearing Before the H. Comm. on the
  Judiciary, 107th Cong., 1st Sess. (2001) .................................................. 50

David S. Kris & J. Douglas Williams,
  *National Security Investigations & Prosecutions* (2d) ....................... 45, 46

FISC Rule 13(a),
    https://www.fisc.uscourts.gov/sites/default/files/FISC%20Rules%20of%20Procedure.pdf.... 11

H.R. Rep. No. 107–236 (2001) ........................................................................... 50

H.R. Rep. No. 109–174 (2005) ........................................................................... 50

Restatement (Second) of Torts § 682 (1977) ................................................. 20, 21

*Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane
    Investigation*, OIG Report (December 2019),
    https://www.oversight.gov/sites/default/files/oig-reports/o20012.pdf ............................ *passim*

Robert Mueller III, *Report On The Investigation Into Russian Interference In The 2016
    Presidential Election*, U.S. Department of Justice (March 2019),
    https://www.justice.gov/archives/sco/file/1373816/download ................................... 5

Senate Select Committee on Intelligence, *Russian Active Measures Campaigns and
    Interference in the 2016 U.S. Election*, Vol. 5,
    https://www.intelligence.senate.gov/sites/default/files/documents/report_volume5.pdf ........... 4

## INTRODUCTION

This is the latest of three lawsuits that Carter W. Page ("Plaintiff") has filed relating to an investigation, codenamed Crossfire Hurricane, that Plaintiff alleges the Federal Bureau of Investigation ("FBI") initiated during the 2016 presidential election "to determine whether 'individual(s) associated with the Trump campaign [we]re witting of and/or coordinating activities with the Government of Russia.'"  *See* Plaintiff's Second Amended Complaint ("SAC") ¶ 5, ECF 73; *see also* Ex. A, Complaint for Damages, *Page v. Oath, Inc.*, No. 1:17-cv-6990 (S.D.N.Y Sept. 14, 2017), ECF 1; Ex. B, Complaint, *Page v. DOJ*, No. 19-cv-03149 (D.D.C. Oct. 21, 2019), ECF 1.

In addition to a variety of claims against eight current or former officers or employees of the FBI and the Department of Justice ("DOJ" or the "Department"), all sued in their individual capacities ("individual Defendants"), Plaintiff makes four claims against the Government (Counts 5, 7-9): a claim against the United States under the Federal Tort Claims Act ("FTCA") for abuse of process, two claims against the Department and FBI under the Privacy Act, and one claim against the United States under the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act ("PATRIOT Act") for violation of the Foreign Intelligence Surveillance Act ("FISA").  The Government Defendants move to dismiss each of the claims asserted against the United States, DOJ, or FBI.

With respect to his FTCA claim, Plaintiff alleges that in obtaining four FISA orders in October 2016, January 2017, April 2017, and June 2017, "[t]he individual Defendants, known and unknown to Dr. Page, committed an abuse of process because they acted with an ulterior motive to use the FISA warrant process to accomplish an end not permitted by law: to obtain the

surveillance of Dr. Page and the Trump presidential campaign *without probable cause*." SAC ¶ 280. Plaintiff's claim for abuse of process fails on two separate grounds:

First, to state a claim for abuse of process a plaintiff must allege not only the existence of an ulterior motive but also the use of process for some purpose other than what would be proper in the regular course of the proceedings., *i.e.*, the perversion of the judicial process to achieve some end other than what is contemplated by the regular use of the process. Here, Plaintiff's allegation that the FISA process was misused to obtain surveillance of the Plaintiff and the Trump campaign is legally insufficient on its face because Plaintiff does not and cannot allege, as is necessary, perversion of the judicial process. Conducting surveillance and collecting information for foreign intelligence purposes is precisely what FISA contemplates,[1] and using FISA orders to take such actions in the context of the Crossfire Hurricane investigation therefore is not a perversion of the judicial process as a matter of law.

Second, even if this Court were to conclude that Plaintiff has stated an actionable claim for abuse of process, his claim is forever barred because he failed to present it to the Department within two years after it accrued. *See* 28 U.S.C. § 2401(b).

The Court should also dismiss Count 7, wherein Plaintiff claims that the DOJ Office of the Inspector General ("OIG") violated the Privacy Act by failing to amend a report entitled *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* ("OIG Report" or "Report"). *See* OIG Report (December 2019),

---

[1] FISA requires that a "significant purpose of the surveillance is to obtain foreign intelligence information." 50 U.S.C. § 1804(a)(6)(B). "Foreign intelligence information" is, in pertinent part, "information that relates to, and if concerning a United States person is necessary to, the ability of the United States to protect against … clandestine intelligence activities by an intelligence service or network of a foreign power or by an agent of a foreign power." *Id*. § 1801(e).

https://www.oversight.gov/sites/default/files/oig-reports/o20012.pdf.  The Court lacks

jurisdiction over this claim because Plaintiff failed to exhaust administrative remedies.  The

Court may also dismiss this claim, or in the alternative grant summary judgment for the

Government, because Plaintiff fails to identify any errors in the OIG Report, because the Report

is not in a system of records, and because drafts of the Report are exempt from the Privacy Act.

      The Court should also dismiss Count 8, which alleges that FBI and DOJ unlawfully

disclosed information about Plaintiff to the media in April 2017.  This claim is time-barred

because the facts alleged in the Complaint and in various judicially noticeable public documents

establish that Plaintiff's cause of action arose more than two years before this action was filed.

And Plaintiff also fails to state a claim because he has not plausibly pleaded specific pecuniary

damages that were proximately caused by Defendants' alleged actions.

      Finally, the Court should dismiss the PATRIOT Act claim (Count 9).  First, any claim

Plaintiff has alleged under the PATRIOT Act is time-barred because any claim arose far more

than two years before the administrative claim was filed.  Second, there is no waiver of sovereign

immunity for claims regarding the unlawful collection of information, and the Second Amended

Complaint fails to plausibly allege that information obtained pursuant to FISA was willfully used

or disclosed for an unlawful purpose.

## FACTUAL BACKGROUND[2]

      As part of its Crossfire Hurricane investigation, which included investigation of Plaintiff,

the FBI began the process of obtaining a FISA order from the Foreign Intelligence Surveillance

Court ("FISC").  SAC ¶ 8.  Under FISA, the FISC may approve electronic surveillance and

---

[2] For the purposes of this section, Government Defendants rely on the facts alleged in the Second Amended Complaint (which are assumed to be true solely for purposes of the motion to dismiss), and on judicially noticeable documents.

physical search of a U.S. person for a period of up to 90 days, subject to renewal, if the Government's FISA application establishes probable cause to believe that the targeted individual is an agent of a foreign power because he or she has knowingly engaged in at least one of the five activities enumerated in the FISA statute, and if other procedural requirements are met. *See* 50 U.S.C. §§ 1801(b)(2)(A) through (E); *id*. §§ 1804-05; *see also* OIG Report, at 31-39. Here, the FISC issued a FISA order on October 21, 2016 ("First FISA Order"), with subsequent renewal applications approved by the FISC on January 12, 2017 ("Second FISA Order"), April 7, 2017 ("Third FISA Order"), and June 29, 2017 ("Fourth FISA Order"). SAC ¶¶ 95, 111, 122, 133.

Before the FISC issued the First FISA Order, Plaintiff sent correspondence to then-Director of the FBI James Comey on September 25, 2016, in which Plaintiff "den[ied] communications with any sanctioned Russian officials," along with other assertions. SAC ¶ 81.

In January 2017, the Senate Select Committee on Intelligence ("SSCI") announced an inquiry into Russian intelligence activities. *See* Ex. C, Press Release (Jan. 13, 2017), https://www.intelligence.senate.gov/press/joint-statement-committee-inquiry-russian-intelligence-activities; *see generally* Senate Select Committee on Intelligence, *Russian Active Measures Campaigns and Interference in the 2016 U.S. Election*, Vol. 5, at 527–60, https://www.intelligence.senate.gov/sites/default/files/documents/report_volume5.pdf. Plaintiff sent a letter to the SSCI dated March 8, 2017 and referenced "recent news alleg[ations] that FISA warrants and other U.S. intelligence community assets had been leveraged as a political stunt … against me." *See* Ex. D, at 1, Ali Watkins, *Former Trump Adviser Carter Page Is Offering To Help The Senate Investigate Russia* (Mar. 10, 2017), https://www.buzzfeednews.com/article/alimwatkins/former-trump-advisor-carter-page-is-

offering-to-help-the-sen.  Plaintiff also highlighted that his initial steps in "uncovering such

potential illegal activities" included attending a breakfast meeting on January 10, 2017, in which

he wanted to ask the then-Assistant to the President for Homeland Security and

Counterterrorism, about recent news reporting of the "intelligence arm of the FBI" seeking FISA

orders to surveil U.S. citizens on "baseless allegations."  *Id.* at 2.

In March 2017, the House Permanent Select Committee on Intelligence ("HPSCI") also

announced an investigation into "the Russian active measures campaign targeting the 2016 U.S.

election."  *See* Ex. E at 1, Press Release, *Intelligence Committee Chairman, Ranking Member

Establish Parameters for Russia Investigation* (Mar. 1, 2017), https://republicans-

intelligence.house.gov/news/documentsingle.aspx?DocumentID=767.  As a result of the HPSCI

investigation, then-Director of the FBI James Comey testified in an open-session on March 20,

2017 that the FBI was "authorized by the Department of Justice to confirm that the FBI . . . is

investigating the Russian government's efforts to interfere in the 2016 presidential election, and

that includes investigating the nature of any links between individuals associated with the Trump

campaign and the Russian government . . . ."  *See* Robert Mueller III, *Report On The

Investigation Into Russian Interference In The 2016 Presidential Election*, U.S. Department of

Justice (March 2019), at 8, https://www.justice.gov/archives/sco/file/1373816/download.

On April 11, 2017, *The Washington Post* published an article describing the FBI and

Department obtaining FISA orders targeting Plaintiff and the investigators' basis for "believing

that Page was an agent of the Russian government and knowingly engaged in clandestine

activities on behalf of Moscow."  SAC ¶ 221; *see also* Ex. F, at 3, Ellen Nakashima, *FBI

obtained FISA warrant to monitor former Trump adviser Carter Page*, The Washington Post

(Apr. 11, 2017), https://www.washingtonpost.com/world/national-security/fbi-obtained-fisa-

warrant-to-monitor-former-trump-adviser-carter-page/2017/04/11/620192ea-1e0e-11e7-ad74-3a742a6e93a7_story.html.  The article stated, in pertinent part, that "[t]he FBI obtained a secret court order in October 2016 to monitor the communications of a former adviser to presidential candidate Donald Trump . . . . The FBI and the Justice Department obtained the warrant targeting Carter Page's communications after convincing a Foreign Intelligence Surveillance Court judge that there was probable cause to believe Page was acting as an agent of a foreign power, in this case Russia, according to the officials."  *Id.* at 1.  The article also quoted Plaintiff as stating in an interview that, "[t]his confirms all of my suspicions about unjustified, politically motivated government surveillance."  *Id.* at 2.

On April 22, 2017, the *New York Times* published an article about then-Director James Comey.  *See* SAC ¶ 224; *see* Ex. G, Matt Apuzzo, *Comey Tried to Shield the F.B.I. From Politics. Then He Shaped an Election*, The New York Times (Apr. 22, 2017), https://nyti.ms/2pOUzpX.  The article is largely unrelated to Plaintiff, but states without attribution that the FBI "took notice" when Plaintiff "gave a speech in Moscow criticizing American foreign policy" because Page "had previously been under F.B.I. scrutiny years earlier, as he was believed to have been marked for recruitment by Russian spies."  *Id.* at 10.  The article attributed to a "former senior American intelligence official" information that Page "met with a suspected intelligence officer on one of those trips and there was information that the Russians were still very interested in recruiting him."  *Id.*  Neither article purports to include any information obtained from FISA surveillance.  Exs. F, G.

Plaintiff's Second Amended Complaint alleges that both of these two media stories resulted from unlawful disclosures by Defendant agencies, *see* SAC ¶¶ 220-226, and generally

that Defendants leaked "the existence of the FISA Warrants, the contents of the warrant applications, and the results of the Warrants . . . to media outlets," *id.* ¶ 226.

On April 27, 2017, when asked in a CNN interview how a federal judge could have found probable cause to allow law enforcement to surveil him, Plaintiff denied the existence of probable cause. Plaintiff credited news reports from *The Washington Post* and *New York Times* which pointed to a "dodgy dossier" as the potential basis for his surveillance. Plaintiff then reiterated "[a]gain there is no probable cause and there could be no probable cause based on anything I've ever done in Russia or with any Russian person…" *See* Ex. H at 8, http://transcripts.cnn.com/TRANSCRIPTS/1704/27/nday.04.html; http://transcripts.cnn.com /TRANSCRIPTS/1704/27/nday.05.html (the full transcript is divided and found on two separate URLs but combined into one exhibit).

In response to a request by the HPSCI for information regarding government measures directed at the 2016 Presidential elections, Plaintiff sent correspondence dated May 22, 2017. *See* Ex. I at 4–26, https://docs.house.gov/meetings/IG/IG00/20171102/106559/HHRG-115-IG00-Transcript-20171102.pdf. Plaintiff's letter stated in relevant part: "I have recently been in contact with Deputy Attorney General Rod Rosenstein, Special Counsel Robert Mueller and other Justice Department officials regarding the multiple outstanding requests for immediate release of the illegitimate FISA warrants that were allegedly filed by the Obama Administration against me in 2016." *Id.* at 4–5. Plaintiff added that, "[b]y all accounts, the Clinton/Obama regime's fake FISA warrant targeting me for exercising my First Amendment rights is the most unwarranted abuse of power that I and most Americans have witnessed in any election throughout our lifetimes." *Id.* at 7. In addition, he wrote that, "[b]ased on revelations in the press thus far, I was the primary known person allegedly put under the most intensive

surveillance by the Obama Administration as part of their 2016 domestic political intelligence operation." *Id.* at 15.

On November 2, 2017, Plaintiff appeared before the HPSCI and provided sworn testimony. His May 22, 2017 letter was incorporated into the record of this particular Congressional hearing. He testified that "the alleged U.S. cyber operations of wiretap against myself, as a previously unknown private citizen who volunteered as an informal, unpaid member of an early foreign policy advisory committee with the Trump campaign, marked a new low with this baseless domestic interference in our democracy prior to the 2016 election" and that information obtained by the government through "illicitly wire[tapping] and [hacking] of [Plaintiff's] computer systems" was based on "alleged FISA warrant[s]." *Id.* at 35, 184.

HPSCI's investigation and review led to the issuance of a classified memorandum dated January 18, 2018, which was prepared by the committee's majority staff and is popularly referred to as the "Nunes Memo." On February 2, 2018, President Trump authorized the declassification and disclosure of the Nunes Memo. *See* Ex. J, https://docs.house.gov/ meetings/IG/IG00/20180129/106822/HMTG-115-IG00-20180129-SD001.pdf. The Nunes Memo disclosed that DOJ and the FBI had "sought and received a FISA probable cause order" on October 21, 2016 which "authoriz[ed] electronic surveillance on Carter Page from the FISC." *Id.* at 3. The Nunes Memo further revealed that "[t]he FBI and DOJ obtained one initial FISA warrant targeting Carter Page and three FISA renewals from the FISC." *Id.* In addition, the Nunes Memo asserted that "the government had at least four independent opportunities before the FISC to accurately provide an accounting of the relevant facts" and went on to outline which "material and relevant information [were] omitted" in the applications before the FISC, according to the Memo's authors. *Id.* at 4. The Nunes Memo alleged, among other things,

specific instances of information omitted by the FBI and DOJ in the applications for four FISA orders.  *Id.* at 4–5.

On the same day as the public release of the Nunes Memo, Senator Charles E. Grassley of the Senate Judiciary Committee sent to the Department of Justice and the FBI a request to declassify the Senate Judiciary Committee's January 4, 2018 referral of Christopher Steele for potential violation of 18 U.S.C. § 1001.  In this request Senator Grassley explained that "[m]uch of the information in the declassified HPSCI memorandum overlaps with the information in the criminal referral made by Senator [Lindsey] Graham and me."  Ex. K,

https://www.grassley.senate.gov/imo/media/doc/2018-02-02%20CEG%20to %20FBI%20DOJ%20(Declassification%20of%20Steele%20Criminal%20Referral).pdf.  On February 5, 2018, Senator Grassley released a redacted version of the Grassley-Graham referral. Ex. L ("Redacted Grassley-Graham Referral"),

https://www.judiciary.senate.gov/imo/media/doc/2018-02-02%20CEG%20LG%20to%20DOJ%20FBI%20(Unclassified%20Steele%20Referral).pdf.

Senator Grassley's accompanying press release dated February 5, 2018 stated that "[t]he Grassley-Graham referral contains verbatim quotes from the FISA applications that are not included in the HPSCI memo" but clarified that those quotes were still redacted in the version approved for public release.  https://www.grassley.senate.gov/news/news-releases/after-house-gop-memo-fbi-oks-release-unclassified-steele-referral.  The unredacted portions of the Redacted Grassley-Graham Referral provided more detailed information about some of the alleged omissions made by the FBI and DOJ to the FISC described in the Nunes Memo, such as the description of how Steele should have been terminated for making false allegations to media outlets in September,  Ex. J,  at 4–5, while the Redacted Grassley-Graham Referral expanded on

this point by explaining that "Mr. Steele further stated [in British litigation] that journalists from 'the New York Times, the Washington Post, Yahoo News, the New Yorker, and CNN' were briefed at the end of September 2016 by [Steele] and Fusion at Fusion's instruction."  Ex. L, at 4–5.

Also on the same day the Nunes Memo was issued, Plaintiff issued a public statement referring to the Memo and stating "[t]he brave and assiduous oversight by Congressional leaders in discovering this unprecedented abuse of process represents a giant, historic leap in the repair of America's democracy."  *See* Ex. M at 1, ABC News (@abc), Twitter (February 2, 2018, 12:43 p.m.), https://twitter.com/ABC/status/959482517291196417.  Approximately three weeks later, an unclassified, redacted version of a memorandum by HPSCI's ranking member, dated January 29, 2018, addressed to All Members of the House of Representatives, and entitled "Correcting the Record – The Russia Investigations" ("Schiff Memo"), was released.  *See* Ex. N, https://intelligence.house.gov/uploadedfiles/redacted_minority_memo_2.24.18.pdf.  The Schiff Memo disputes various conclusions of the Nunes Memo and includes additional information about the FISA applications.

As a result of the declassification decisions relating to the Nunes and Schiff Memos, DOJ was ultimately required to process the FISA applications in response to Freedom of Information Act ("FOIA") requests.  *See, e.g.*, *James Madison Project v. DOJ*, No. 17-CV-00597 (APM), 2020 WL 1033301, at *1 (D.D.C. Mar. 3, 2020) (describing background).[3]  In July 2018, DOJ

---

[3] At the time the Nunes and Schiff Memos were disclosed, there were multiple pending FOIA requests that encompassed the FISA applications, some of which were in litigation.  *See James Madison Project v. DOJ,* 17-cv-597, 2020 WL 1033301 (D.D.C.) (Status Report, Dkt. No. 34 & Minute Entry Dated Mar. 19, 2018) (setting schedule for production of applications); *Poulsen v. Dep't of Def., et al.*, No. 17 Civ. 3531-WHO (N.D. Cal.) (Dkt. No. 46) (similar); *Gizmodo Media Grp., LLC v. DOJ*, 17 Civ. 3566-DLC (S.D.N.Y.) (Dkt. No. 44) (similar); *New*

disclosed redacted versions of the FISA applications and orders to several FOIA requesters and posted them on the FBI website pursuant to FOIA.  *See* https://vault.fbi.gov/d1-release/d1-release (last visited Sept. 13, 2021).

In December 2019, the Department of Justice Office of Inspector General ("DOJ OIG") published the OIG Report regarding Crossfire Hurricane.  *See* SAC ¶¶ 232-33; *see generally* OIG Report.  OIG "undertook this review to examine certain actions by the Federal Bureau of Investigation (FBI) and the Department during an FBI investigation opened on July 31, 2016, known as 'Crossfire Hurricane,' into whether individuals associated with the Donald J. Trump for President Campaign were coordinating, wittingly or unwittingly, with the Russian government's efforts to interfere in the 2016 U.S. presidential election."  OIG Report at i. Among many other findings (including that the Crossfire Hurricane investigation was properly predicated), the OIG Report found several errors and omissions in the handling of the FISA applications.  *See* OIG Report at iii-iv, vi–xiv.  Prior to publication of the OIG Report, Plaintiff demanded access to the draft Report, and was not provided such access.  *See* SAC ¶¶ 238-45. Since its publication, he has not sought amendment of the Report.

The Government notified the FISC of the findings of the OIG Report on December 9, 2019, one of several classified Rule 13(a) letters advising the FISC of errors and omissions in the relevant FISA applications.[4]  *See generally* Ex. O, Corrected Opinion and Order, *In Re Accuracy Concerns Regarding FBI Matters Submitted to the FISC*, No. 19-02, at 2-4 (FISC Mar. 5, 2020),

---

*York Times v. DOJ*, 18 Civ. 2054 (S.D.N.Y.) (Docket No. 11) (similar); *Judicial Watch v. DOJ*, No. 18 Civ. 245-CRC (D.D.C.) (Docket No. 7) (similar).

[4] FISC Rule 13(a) provides that "[i]f the government discovers that a submission to the Court contained a misstatement or omission of material fact, the government . . . must immediately inform the" court of, *inter alia*, the misstatement or omission, the facts and circumstances around it, and any necessary corrective action.  *See* FISC Rule 13(a), https://www.fisc.uscourts.gov/sites/default/files/FISC%20Rules%20of%20Procedure.pdf.

https://www.fisc.uscourts.gov/public-filings/corrected-opinion-and-order (describing background on relevant FISC dockets in unclassified manner); Ex. P, Opinion and Order Regarding Use and Disclosure of Information, *In Re Carter W. Page, a U.S. Person*, Nos. 16-1182, 17-52, 17-375, 17-679, at 1-2 (June 25, 2020) ("June 2020 FISC Op."), https://www.intelligence.gov/assets/documents/702%20Documents/declassified/June_2020_FISC_Opinion.pdf (similar); *see also* SAC ¶¶ 45-51 (describing portions of some of the publicly available FISC orders); OIG Report at 8, 230-31 (describing Rule 13(a) letter filed in July 2018). The Government assessed that, for the Third and Fourth FISA Orders, there was insufficient predication to establish probable cause to believe Plaintiff was acting as an agent of a foreign power, and reported to the FISC that it would sequester any information obtained as a result of all four of the orders. *See* Ex. P, at 2.[5] The FISC has specifically authorized ongoing use and disclosure of any information obtained via these FISA orders in five limited circumstances described by the Court, for example, the good-faith conduct of litigation brought by this Plaintiff, and for assessment of the implementation of a recommendation in the OIG Report. *See id*. at 20-21. The FISC directed the Government to report on use and disclosure of Plaintiff's FISA information every six months. *Id*.[6]

---

[5] As noted by the FISC, although the Government assessed that the Third and Fourth FISA Orders lacked sufficient probable cause, the Government did not advance a similar assessment with respect to the First or Second FISA Order. *See* June 2020 FISC Op., at 2 (stating that the Government had not addressed whether restrictions on use or disclosure caused by the lack of probable cause for the Third and Fourth FISA Orders applied to the First and Second FISA Orders). Although prior to issuance of the FISC's June 2020 opinion the Government volunteered that it would sequester *all* collection, the FISC did not opine that the Government was incorrect in asserting that it had probable cause for the First and Second FISA Orders.

[6] *See also* Ex. Q, Notice of Potential Use and Disclosure of FISA Information, *In Re Carter W. Page, a U.S. Person*, Nos. 16-1182, 17-0052, 17-0375, 17-0679 (Nov. 3, 2020) (updating FISC regarding litigation hold related to Page matters),

Plaintiff did not present a legally sufficient administrative claim alleging abuse of process until April 29, 2020, when Plaintiff electronically transmitted to DOJ copies of a Standard Form 95 ("SF95") with attachments asserting an "abuse of process" claim and demanding damages in the amount of $75 million.  The original SF95 bearing Plaintiff's signature, together with a transmittal letter from Plaintiff's counsel and attachments to the claim, were received by DOJ on May 12, 2020.  On May 26, 2020, notice of final denial of Plaintiff's claim by DOJ was sent to Plaintiff's counsel by certified mail.  SAC ¶ 278.[7]

Plaintiff presented a second administrative claim to DOJ with respect to a claim under the PATRIOT Act by letter dated September 30, 2020, also seeking $75 million in damages.  SAC ¶ 306; Ex. T, Declaration of Ethan Don, dated Sept. 17, 2021, ¶ 5 & Exs.  By letter dated April 22, 2021 and sent by certified mail, the FBI denied Plaintiff's claim.  *Id.*

## PLAINTIFF'S PRIOR RELATED LITIGATION

### I.   *Page v. Oath, Inc., et al.*, No. 1:17-cv-6990-LGS (S.D.N.Y.)

On September 14, 2017, Plaintiff filed suit against the Broadcasting Board of Governors ("BBG") (an independent federal agency) and Oath, Inc. (a private media company) in the Southern District of New York.  *See Page v. Oath, Inc.*, 17-cv-6990 (S.D.N.Y), ECF 1 (Ex. A).

_____

https://www.fisc.uscourts.gov/public-filings/notice-potential-use-or-disclosure-fisa-information; Ex. R, Order Regarding Further Disclosures of Information, *In Re Carter W. Page, a U.S. Person*, Nos. 16-1182, 17-52, 17-375, 17-679 (Nov. 23, 2020) (approving Government's reasonable steps to seek return of information provided to two U.S. Attorney's Offices, and concluding that a disclosure to the Senate Committee on the Judiciary was consistent with the June 2020 FISC Op.), https://www.fisc.uscourts.gov/public-filings/order-regarding-further-disclosures-information.  There are additional classified filings and orders related to use and disclosure of information, including the above-mentioned semi-annual use and disclosure reports.

[7] True and correct copies of the referenced materials received by the Department on May 12, 2020, and the notice of final denial mailed to Plaintiff's counsel on May 26, 2020, are annexed to the declaration of Elijah Jenkins, attached hereto as Exhibit S.

Plaintiff asserted various tort claims based on a BBG grantee's republication of allegedly defamatory news articles concerning the investigation of Plaintiff's ties to the Kremlin.  *Id.* at 1.  BBG moved to dismiss the complaint for, *inter alia*, Plaintiffs' failure to exhaust his administrative remedies under the FTCA.  *See Oath*, ECF 29 at 9 n.4 (Ex. U).   In opposition, Plaintiff argued that he had raised an administrative claim through the letter he sent to then FBI-Director Comey on September 25, 2016, a copy of which was attached to his complaint.  *See Oath*, ECF 38 (Ex. V, at 16); *see also Oath*, ECF 1-5 (Ex. W, at 16).   In his filing, Plaintiff also noted that "[t]he wide-scale news coverage related to the otherwise-ludicrous Dodgy Dossier, of which Dr. Page was the first direct target in 2016 … can similarly be reasonably assumed to have provided some further false legitimacy and other encouragement to the alleged abuse of process before the FISC."  *Id.* at 13. On February 5, 2018, three days after the release of the Nunes Memo, Plaintiff submitted a supplemental letter brief in opposition to BBG's pending motion to dismiss.  *Oath*, ECF 42 (Ex. X).  Plaintiff argued that the Nunes Memo substantiated his contentions that he had been the victim of an "abuse of process."  *Id.* at 1–2.  He further argued that his September 2016 letter to then-Director Comey, which he referred to as his "initial administrative claim," had been presented to the appropriate federal agency, namely, to the FBI. *See id*.

The district court granted BBG's motion to dismiss.  *See Oath*, ECF 48 (Ex. Y), 2018 WL 1406622 (S.D.N.Y. Mar. 20, 2018).  The court held that Plaintiff had failed to exhaust his administrative remedies and specifically rejected his argument that his September 2016 letter to then-Director Comey constituted an administrative claim.  *See id.* at 7.  On April 16, 2018, Plaintiff then requested permission to amend his complaint because the HPSCI's disclosure of evidence through the Nunes Memo showed the defamatory articles "contributed to significant

abuses of process." *See Oath*, ECF 52 (Ex. Z, at 2).  Plaintiff advised the court that "I plan to

present further facts in the amended Compl. that should make my fulfillment of the relevant

notice requirement readily apparent."  *Id.*  In an endnote, Plaintiff added:

> Particularly in light of the severe acts or omissions of FBI investigative or law
> enforcement officers which enabled this disinformation campaign and extreme
> personal distress this dangerous wrongdoing by the Bureau caused, providing the
> Court with additional related information will make clear why the notice was
> appropriate.

*Id.* at 6 n.xvii.  The court denied Plaintiff's request.  *Oath*, ECF 59 (Ex. AA).  On appeal, the

Second Circuit affirmed the district court's judgment, holding that Plaintiff had failed to exhaust

his administrative remedies.  *Page v. U.S. Agency for Glob. Media*, 797 F. App'x 550 (2d Cir.

2019), Ex. BB.  The Court noted:

> Curiously, Page asserts that his 2016 letter to then-FBI Director James Comey
> satisfies the exhaustion requirement for his defamation claims against BBG.  But
> even aside from the fact that BBG is an entity as to which Comey had no apparent
> connection or control, nothing in Page's letter suggested he was seeking damages
> resulting from the publication of articles by BBG.  And Page's vague assertions
> that he contacted the DOJ to inquire about the investigation against him and to
> complain about the allegedly defamatory statements also fail to meet the
> exhaustion requirement for the same reason – he did not allege that he was
> seeking damages from BBG (or anyone else) in any of those communications.

*Id.* at 555.

## II.     *Page v. DOJ*, No. 1:19-cv-03149-KBJ (D.D.C.)

Plaintiff filed another lawsuit against the Government in 2019.  *See* Complaint Ex. B,

*Page v. DOJ*, No. 19-cv-03149, ECF 1 (Oct. 21, 2019) ("2019 Complaint").  Among other

things, the 2019 Complaint alleged that DOJ "leaked" the redacted FISA applications and orders

by providing them to FOIA requestors in 2018, ¶ 7; that Page was unable to "amend" his records,

*id.* ¶ 12; and that he had "frequently experienced life-threatening damages following publication

of news articles which stemmed from the false information compiled and distributed with the

direct support of the Defendant," *id*. ¶¶ 14, 17–18.  Although the allegations were wide-ranging, the Complaint only raised three specific causes of action:  Count 1 purported to raise a claim for denial of access to records under FOIA and the Privacy Act, based on Page's May 2017 request to DOJ Office of Information Policy and for access to several categories of records about himself, *id*. ¶¶ 19–24.  Count 2 purported to raise a claim under the Privacy Act for "improper dissemination" based on dissemination of "information protected by the Privacy Act concerning Dr. Page to the NY Times and other media organizations[, including] Dr. Page's unverified redacted FISA affidavits." *Id*. ¶¶ 25–27 (appearing to raise a claim based solely on the release of the redacted applications pursuant to FOIA).  Count 3 purported to raise a claim for improper dissemination based on DOJ's alleged failure "to make reasonable efforts to ensure that the information and records were accurate, complete, timely and relevant for agency purposes." *Id*. ¶¶ 28–32.  Plaintiff ultimately voluntarily stipulated to dismissal without prejudice.  *See* Ex. CC, Stipulation of Dismissal, *Page v. DOJ*, 19-cv-03149, ECF 19 (Sept. 11, 2020).[8]

## ARGUMENT

### I.    LEGAL STANDARDS.

A motion to dismiss under Rule 12(b)(1) is a threshold challenge to the Court's subject matter jurisdiction.  *Smith v. United States*, 518 F. Supp. 2d 139, 145 (D.D.C. 2007).  The

---

[8] Plaintiff has brought at least three other lawsuits revolving around similar facts against private entities.  In two cases, he brought claims against the Democratic National Committee and attorneys he believed were responsible for the Steele Dossier, and made allegations about FISA surveillance.  *See Page v. Dem. Nat'l Comm.*, No. 5:18-cv-01019 (W.D. Okl.) (filed Oct. 15, 2018, dismissed Jan. 31, 2019, for lack of personal jurisdiction); *Page v. Dem. Nat'l Comm.*, 2 F.4th 630 (7th Cir. 2021) (re-filed in new district in Jan. 2020, ultimately dismissed for lack of subject matter jurisdiction).  A third suit was brought after his S.D.N.Y. claims were dismissed, bringing state law defamation claims against the private entities and making allegations about FISA surveillance.  *See generally Page v. Oath, Inc.,* C.A. No. S20C-07-030 CAK, 2021 WL 528472 (Del. Supr. Ct. Feb. 11, 2021) (filed July 2020, dismissed for failure to state a claim).

plaintiff bears the burden to establish the court's jurisdiction over the complaint. *Mackinac Tribe v. Jewell*, 87 F. Supp. 3d 127, 136 (D.D.C. 2015), *aff'd*, 829 F.3d 754 (D.C. Cir. 2016). Rule 12(b)(1) motions fall into two categories: facial attacks and factual attacks. *Smith*, 518 F. Supp. 2d at 145. In a facial attack, as the United States brings here, a "[c]ourt must accept as true the allegations in the complaint and consider the factual allegations of the complaint in the light most favorable to the non-moving party." *Id.*; *see also Mackinac Tribe*, 87 F. Supp. 3d at 136.

Under Rule 12(b)(6), "a party may challenge the sufficiency of a complaint on the grounds that it '[f]ails to state a claim upon which relief can be granted.'" Fed. R. Civ. P. 12(b)(6); *see generally Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must, at a minimum, assert nonconclusory factual matter sufficient to "nudge [its] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). The complaint cannot overcome the United States' Motion to Dismiss for failure to state a claim unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,' such that a court may 'draw the reasonable inference that the defendant is liable for misconduct alleged.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556, 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss for failure to state a claim, the court accepts as true the facts alleged in the complaint. *See Fox v. Gov't of D.C.*, 794 F.3d 25, 27 (D.C. Cir. 2015).

In deciding a Rule 12(b)(6) motion a court should "not consider matters outside the pleadings, but a court may consider on a motion to dismiss the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Terveer v. Billington*, 34 F. Supp. 3d 100, 110 (D.D.C. 2014) (citation omitted).  However, a court may consider extrinsic documents not expressly referenced in the complaint without converting the motion to dismiss into a motion for summary judgment if the document is a matter of public record of which the court may take judicial notice.  *See Mackinac Tribe*, 87 F. Supp. 3d at 136 (citing *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997)); *see also Maddox v. Wells Fargo Bank N.A.*, 374 F. Supp. 3d 146, 147 n.1(D.D.C. 2019) ("The court may also rely on matters of public record, including judicial proceedings and the opinions of other courts."); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 n.5 (D.D.C. 2020) (taking judicial notice of congressional testimony); *Wash. Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991) ("[A] court may take judicial notice of the existence of newspaper articles.").

If the Court looks beyond the complaint and those matters subject to judicial notice, summary judgment is appropriate if, viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *W. Sur. Co. v. U.S. Eng'g Constr., LLC*, 955 F.3d 100, 104 (D.C. Cir. 2020); *Cox v. Dep't of the Treasury*, No. 20-CV-631 (TSC), 2021 WL 1268384, at *3 (D.D.C. Apr. 6, 2021).

## II.       THE COURT SHOULD DISMISS COUNT 5 (FTCA CLAIM).

In an action against the Federal Government, a plaintiff must identify a claim as to which

the United States has waived its sovereign immunity.  "Absent a waiver, sovereign immunity

shields the Federal Government and its agencies from suit."  *F.D.I.C. v. Meyer*, 510 U.S. 471,

475 (1994) (describing sovereign immunity as "jurisdictional in nature").  In Count 5, Plaintiff

invokes the FTCA, which waives the United States' sovereign immunity for certain torts

committed by federal employees while acting within the scope of their employment.  28 U.S.C.

§ 1346(b).  "Federal courts have jurisdiction over these claims if they are actionable under

1346(b)."  *Brownback v. King*, 141 S. Ct. 740, 746 (2021) (quoting *Meyer*, 510 U.S. at 477).

Section 1346(b) contains the following six requirements—all of which must be satisfied for an

action to qualify within the FTCA's jurisdictional grant: The claim must be "'[1] against the

United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or

death [4] caused by the negligent or wrongful act or omission of any employee of the

Government [5] while acting within the scope of his office or employment, [6] under

circumstances where the United States, if a private person, would be liable to the claimant in

accordance with the law of the place where the act or omission occurred.'"  *Meyer*, 510 U.S. at

477 (quoting 28 U.S.C. § 1346(b) (bracketed numerals added by the Court)).

As the Court recently held in *Brownback,* "a plaintiff must plausibly allege all six FTCA

elements not only to state a claim upon which relief can be granted but also for a court to have

subject-matter jurisdiction over the claim." 141 S. Ct. at 749.  "That means a plaintiff must

plausibly allege that 'the United States, if a private person, would be liable to the claimant' under

state law both to survive a merits determination under Rule 12(b)(6) and to establish subject-

matter jurisdiction." *Id.*  And it also follows, as the Court held, that "where a plaintiff fails to

plausibly allege an element that is both a merit element of a claim and a jurisdictional element, the district court may dismiss the claim under Rule 12(b)(1) or Rule 12(b)(6)." *Id.* at 749 n.8.

This Court should dismiss Count 5 because Plaintiff fails to state a claim for abuse of process. In the alternative, the Court should dismiss this Count as time-barred.[9]

### A. Plaintiff fails to state a claim for abuse of process and thus fails to establish subject matter jurisdiction.

Plaintiff's only theory for why the United States, if a private person, would be liable, is an alleged abuse of process. But Plaintiff has not plausibly pleaded abuse of process. To state such a claim, Plaintiff must allege the "existence of an ulterior motive" and "the perversion of the court process to accomplish an end which the process was not intended to bring about." *Hall v. Hollywood Credit Clothing Co.*, 147 A.2d 866, 868 (D.C. 1959). "[T]he fact that a person acts spitefully, maliciously, or with an ulterior motive in instituting a legal proceeding is insufficient to establish abuse of process." *Scott v. Dist. of Columbia*, 101 F.3d 748, 755 (D.C. Cir. 1996) ((citing Restatement (Second) of Torts § 682 cmt. b (1977)). Instead, Plaintiff must allege that Defendants used the process to "'accomplish an end unintended by law.'" *Moore v. United States*, 213 F.3d 705, 712 (D.C. Cir. 2000) (quoting *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980)). The initiation of the process is irrelevant to an abuse-of-process claim because it is the improper use *after* the process is issued that creates a claim for abuse of process. *Cf. Williams v. City Stores Co.*, 192 A.2d 534, 537 (D.C. 1963) (holding that abuse of process will lie "regardless of whether there was probable cause for its issuance."); *see also Chatterton v.*

---

[9] Although dismissal would be appropriate under either argument, the court typically "begins with the FTCA exceptions because it must answer jurisdictional questions first," whereas "time-barred FTCA claims . . . are dismissed for failure to state a claim, rather than for lack of subject-matter jurisdiction." *Williams v. United States*, 2017 WL 11493266, at *3 (D.D.C. Nov. 1, 2017).

*Janousek*, 280 F.2d 719, 721 (D.C. Cir. 1960), *cert. denied*, 364 U.S. 902 (1960) (the Court held

that it "[i]n an action for abuse of 'process,' it is unnecessary to allege that the suit in which the

process was issued was brought without probable cause . . . ."). Thus, "D.C. courts have been

hesitant to find any relationship between the existence of probable cause and a claim of abuse of

process." *Dormu v. D.C.*, 795 F. Supp. 2d 7, 33 (D.D.C. 2011). "'The usual case of abuse of

process is one of some form of extortion, using the process to put pressure upon the other to

compel him to pay a different debt or to take some other action or refrain from it.'" *Scott*, 101

F.3d at 755–56 (quoting Restatement (Second) of Torts § 682 cmt. B (1977)).

Plaintiff alleges that after the Defendants obtained the process—the FISA orders—

Defendants used it "to obtain the surveillance of Dr. Page and the Trump presidential campaign

*without probable cause*." SAC ¶ 280 (emphasis in the original). Here, Plaintiff has attacked the

initiation of the process for lack of probable cause, but he has not alleged that the legal process

obtained was used for a purpose for which it was not intended —a necessary element of abuse of

process. Plaintiff therefore fails to state a claim for abuse of process, because conducting

surveillance and collecting information for foreign intelligence are what FISA orders are

intended to be used for; that is, they are the end intended by law. And, as the Second Amended

Complaint alleges, the FBI initiated the Crossfire Hurricane investigation "to determine whether

'individual(s) associated with the Trump campaign [we]re witting of and/or coordinating

activities with the Government of Russia.'" SAC ¶ 5. As the D.C. Circuit has made clear,

"'there is no action for abuse of process when the process is used for the purpose for which it is

intended.'" *Scott*, 101 F.3d at 755–56 (quoting Restatement (Second) of Torts § 682 cmt. b

(1977)); *see also Moore*, 213 F.3d at 712  ("'For abuse of process to occur there must be use of

the process for an immediate purpose other than that for which it was designed and intended.'"

(quoting Restatement (Second) of Torts § 682 cmt. b (1977))).

Congress designed FISA "to authorize and regulate certain governmental electronic

surveillance of communications for foreign intelligence purposes." *Clapper v. Amnesty Int'l*

*USA*, 568 U.S. 398, 402 (2013) (citing 50 U.S.C. § 1801 *et seq.*).  Thus, when the Government

obtains an order pursuant to FISA, the Government may conduct electronic surveillance and

physical searches of United States persons in accordance with the order.  *See* 50 U.S.C. §§ 1801–

1813, 1821–1829.

Here, as alleged by Plaintiff, Defendants used the FISA orders to engage in surveillance

of Plaintiff and obtain his electronic communications "in the manner and for the time periods

prescribed in the four warrants."  SAC ¶¶ 140–141.  But as explained above, conducting

surveillance and collecting information in the manner prescribed by the FISA orders are

precisely what FISA contemplates.  Thus, Plaintiff has failed to allege Defendants used "the

process for an immediate purpose other than that for which it was designed and intended."

*Moore*, 213 F.3d at 712.

Courts applying D.C. law have routinely dismissed abuse-of-process claims that fail to

sufficiently plead this critical element.  *See Lemon v. Kramer*, 270 F. Supp. 3d 125, 144 (D.D.C.

2017) (finding plaintiff's complaint failed to state a claim for abuse of process where defendants

availed themselves of the judicial process and only sought relief as the system legitimately

offered); *Zandford v. Nat'l Ass'n of Sec. Dealers, Inc.*, 19 F. Supp. 2d 4, 8 (D.D.C. 1998)

(finding plaintiff's complaint failed to state a claim for abuse of process where defendants'

actions, as pled by the plaintiff, did not achieve some end not contemplated in the regular

prosecution of the charge); *Goodall v. Frank R. Jelleff, Inc.*, 130 A.2d 781, 782 (D.C. 1957)

22

(affirming the dismissal of a claim finding that "[p]roper use of the machinery of the law, though

with an improper motive, is not tortious[.]").

For these reasons, Plaintiff has failed to state a claim for abuse of process under D.C. law.

Because Plaintiff fails to state a claim under Rule 12(b)(6), he has not satisfied the requirements

for a waiver of sovereign immunity, so this Court also lacks subject-matter jurisdiction.  *See*

*Brownback*, 141 S. Ct. at 749.  Accordingly, this Court should dismiss the claim under Rule

12(b)(1), Rule 12(b)(6), or both.  *See id.* at 749 n.8.

## B.  Plaintiff's claim is time-barred under 28 U.S.C. § 2401(b).

Plaintiff's claim of abuse of process is independently deficient because it is time-barred.

Plaintiff presented that claim to the Department on April 29, 2020, more than two years after it

accrued.  *See* 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred

unless it is presented in writing to the appropriate Federal agency within two years after such

claim accrues . . . .").

"[F]or abuse of process," the limitations period "ordinarily run[s] from the date on which

the abusive process last issued."  *Nader v. Democratic Nat'l Comm.,* 567 F.3d 692, 699 (D.C.

Cir. 2009).  Here, the last allegedly abusive process (the June 2017 fourth issued FISA order)

was issued nearly three years before Plaintiff submitted his administrative tort claim.  While

Plaintiff may argue that he was unaware of any of the FISA orders targeting him at the time they

were issued, it was publicly reported that he had been the target of FISA collection while

collection was still ongoing pursuant to the FISA orders.  Further, beyond public reporting, this

critical fact (that he was the target of FISA collection) was officially confirmed more than two

years prior to his claim, when the Nunes and Schiff Memos, along with the redacted Grassley-

Graham Referral, were declassified and publicly released in February 2018.  *See, e.g.*, *Donahue*

*v. United States*, 634 F.3d 615, 626 (1st Cir. 2011) (plaintiffs had enough information through public reporting of sworn testimony corroborated by independent accounts that was "considerably more than a mere hunch, hint, suspicion, or rumor about what had transpired" to lead a person in his position to seek advice about a possible claim against the government).

Indeed, on several occasions well more than two years before he presented his claim to the Department, Plaintiff publicly asserted that he had been unlawfully targeted for FISA surveillance as part of an alleged plot to spy on the Trump campaign, including in submissions filed in his S.D.N.Y. litigation against BBG. *See, e.g.*, *Page v. Oath,* Ex. V, at 13 (admitting, in his January 19, 2018 opposition motion, that he was aware of "wide-scale news coverage related to the otherwise-ludicrous Dodgy Dossier, of which Dr. Page was the first direct target in 2016" and claiming that its republication "provided some further false legitimacy and other encouragement to the alleged abuse of process before the FISC"); Ex. I, at 6, Carter Page Letter to the HPSCI, May 22, 2017 (informing HPSCI of the "unfortunate front-page *Washington Post* article about the civil rights abuses committed against me"); Ex. F, at 2 (*The Washington Post* article quoting Plaintiff "[t]his confirms all of my suspicions about unjustified, politically motivated government surveillance"). Plaintiff was clearly on notice that the accrual period was running.

As probable cause is not an element of abuse of process under District of Columbia law, Plaintiff's assertion that no probable cause existed is immaterial for accrual analysis. *See* SAC ¶ 3. However, assuming *arguendo* that this Court accepts Plaintiff's claim that the lack of probable cause to support the issuance of FISA orders constitutes the misuse of the process (*i.e.*, the injury), this Court may take judicial notice of documented public records and of Plaintiff's own admissions that show he was sufficiently aware of this information even before February

2018 when the Nunes Memo and the redacted Grassley-Graham Referral were both publicly released. *See Smith v. United States*, 518 F. Supp. 2d 139, 150-51 (D.D.C. 2007) (plaintiff's cause of action against the government accrued when she knew or should have known sufficient facts to permit a reasonable person to believe that there is a causal connection between the government and her injury). Plaintiff acknowledged the aforementioned reporting from April 2017 in *The Washington Post* and *New York Times* to Chris Cuomo on April 27, 2017. He further publicly stated in that same interview that "the most recent dodgy dossier of 2016 was used as a false basis, saying that there was probable cause when there is absolutely zero probable cause" which resulted in a federal court authorizing surveillance against him. *See* Ex. H, at 10. In his Second Amended Complaint, Plaintiff cites the December 2019 OIG Report as the first instance in which the lack of probable cause for the FISA orders was disclosed. SAC ¶ 3. Yet the OIG Report documented the fact that public discussions in DOJ's July 12, 2018 Rule 13(a) letter submitted to the FISC "cited to the memoranda from the House Permanent Select Committee on Intelligence (HPSCI) majority and HPSCI minority regarding the Carter Page FISA applications [the Nunes and Schiff Memos], and a memorandum from Senators Charles Grassley and Lindsay Graham [the Grassley-Graham Referral] to DAG Rosenstein and FBI Director Christopher Wray concerning Steele and his reporting, which were all publicly released in February 2018." OIG Report, at 231 n 378. The Nunes Memo and the redacted Grassley-Graham Referral both publicly disclosed the fact of FISA orders targeting Page, along with the detailed list of various pieces of information that were not presented by the FBI and DOJ to the FISC during the FISA application process. Both memoranda served to confirm Plaintiff's public assertions in April 2017 about the lack of probable cause to support FISA orders targeting him.

Plaintiff cannot invoke the fraudulent concealment doctrine as a basis for arguing that the accrual of his claim was delayed given several demonstrable factors.  First, there are documented public admissions made by Plaintiff that he knew he had been the target of a series of FISA orders obtained by the United States.  Furthermore, Plaintiff had access to public reporting, as well as public disclosures made in the Nunes Memo and the Redacted Grassley-Graham Referral (about information omitted by the FBI and DOJ to the FISC that supported his own theories regarding a lack of probable cause).  *See Nader*, 567 F.3d at 700–701 (rejecting plaintiff's argument that accrual of his claim for abuse of process was delayed by defendants' efforts to fraudulently conceal their wrongdoing because allegations of complaint belied assertion plaintiff remained ignorant of defendant's wrongdoing); *see also Callahan v. United States*, 426 F.3d 444, 454–455 (1st Cir. 2004) (certainty is "not required for a claim to accrue" and the FBI's refusal to disclose information was superseded by publicly available information for purposes of establishing knowledge under the discovery rule).

Furthermore, any argument by Plaintiff that his letter to then-FBI Director Comey constituted an administrative claim which was later amended by the administrative claim submitted and received by the Department on May 12, 2020, should be rejected.  In its ruling dismissing Plaintiff's S.D.N.Y. lawsuit, which was issued on March 20, 2018, more than two years before Plaintiff filed his administrative claim in the instant matter, that court specifically noted that Plaintiff's letter to then-Director Comey did not demand damages, but rather asked the FBI to end its reported inquiry into Plaintiff's trip to Russia in July 2016.  *Oath*, ECF 48 (Ex. Y, at 7); *see also Page v. Oath*, 2018 WL 1406622, at *4, *aff'd*, 797 F. App'x 550 (2d Cir. 2019). The district court (and Second Circuit) in *Oath* squarely ruled that the Plaintiff's letter to then-FBI Director Comey, which contained no demand for damages whatsoever, did not constitute a

proper administrative claim under the FTCA (and thus could not serve to administratively

exhaust his remedies). Those rulings preclude the Plaintiff from relitigating that issue in this

action. *See GAF Corp. v. United States,* 818 F.2d 901, 912 (D.C. Cir. 1987) (dismissal for lack

of jurisdiction "preclude[s] relitigation of the precise issue of jurisdiction that led to the initial

dismissal").

Thus, the September 25, 2016 letter to then-FBI Director Comey was not an

administrative claim which could have then been amended by the administrative claim received

by the Department on May 12, 2020, "because plaintiff had no claim to amend." *Erhard v.

United States*, Civ. No. 93-0725-NHJ, 1994 WL 196755, at *3 (D.D.C. Mar. 29, 1994); *see also

Yusuf v. Jones*, No. 20-cv-1079-BMC, 2020 WL 4369641, at *2 (E.D.N.Y. July 30, 2020)

("[T]imely filing a noncompliant SF 95 does not extend the statutory deadline to perfect

presentment by amendment").

Consequently, Plaintiff's first administrative claim containing a demand for damages in a

sum certain, which was electronically transmitted to DOJ on April 29, 2020, and the original

signed version of which was not received until May 12, 2020, was presented more than two years

after the claim accrued. Any assertion that this submission was an amendment of a previously

submitted deficient claim has no merit. *See Kokotis v. U.S. Postal Serv.*, 223 F.3d 275, 280 (4th

Cir. 2000) ("A rule allowing amendments to incomplete claims after the statute of limitations

had expired would undermine Congress' intent to have FTCA claims presented within two years

of the relevant incident").

Thus, Plaintiff's amended abuse-of-process claim is time-barred by 28 U.S.C. § 2401(b).

### III.   THE COURT SHOULD DISMISS COUNT 7 (PRIVACY ACT AMENDMENT CLAIM), OR IN THE ALTERNATIVE, GRANT DEFENDANT SUMMARY JUDGMENT ON THIS CLAIM.

The SAC alleges that the DOJ OIG declined Plaintiff's request to review the draft version of the OIG Report (about the FISA applications related to Plaintiff) before the Report was made public.  *See* SAC ¶¶ 232-53 (allegations about the OIG Report); ¶¶ 290-95 (Count 7 Failure to Amend).  The Report was published in December 2019.  *See generally* OIG Report.  The Complaint does not identify any specific errors in the final Report, but alleges that the OIG Report "contains numerous errors," SAC ¶ 250, and the Complaint seeks injunctive relief "compelling Defendant DOJ to amend inaccurate records concerning him," apparently with respect to the final Report, *id*. ¶ 294.[10]  Defendant DOJ moves to dismiss this claim for lack of jurisdiction and for failure to state a claim.  In the alternative, Defendant is entitled to summary judgment because indisputable facts establish that the OIG Report is not in a system of records.

#### A.  Legal Framework for Privacy Act Access and Amendment Claims

The Privacy Act imposes various requirements on agencies concerning the maintenance, collection, use, and dissemination of information contained in a "system of records."  *See, e.g.*, 5 U.S.C. § 552a(b) ("Conditions of disclosure"), *id*. § 552a(d) ("Access to records"), *id*. § 552a(e) ("Agency requirements").  "[T]he extensive statutory requirements of section 552a(e) of the Act come into play only with respect to information that is maintained in a 'system of records.'"

---

[10] Under this Count of the Complaint, Plaintiff also seeks attorney's fees for this matter and for the previously filed and voluntarily dismissed matter.  Such a claim is appropriately addressed, if at all, only after the Court has fully ruled on this claim.  It is hard to imagine, however, how Plaintiff could conceivably make an argument for fees with respect to his previously dismissed lawsuit, which never raised any claims with respect to the OIG Report.  That Complaint alleged a failure by DOJ to respond to his separate request for records, and an improper disclosure of the FISA applications in a FOIA release.  *See generally* Ex. B.  Although he repeatedly discussed amending the Complaint in that matter, he never did so, and eventually dismissed the matter voluntarily.  *See* Ex. CC.

*Maydak v. United States*, 630 F.3d 166, 178 (D.C. Cir. 2010).  The statute defines a "system of records" as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual[.]"  5 U.S.C. § 552a(a)(5).  "A system of records exists only if the information contained within the body of material is both '*retrievable* by personal identifier' and '*actually retrieved* by personal identifier.'"  *Maydak*, 630 F.3d at 178; *see also Paige v. Drug Enf't Admin.*, 665 F.3d 1355, 1359 (D.C. Cir. 2012) (same); *Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453, 1460 (D.C. Cir. 1996) ("[R]etrieval capability is not sufficient to create a system of records.").  The Act authorizes different civil remedies depending on the nature of the claim.

As relevant here, a plaintiff may request access to records pertaining to him or her in a system of records pursuant to 5 U.S.C. § 552a(d)(1), and may seek amendment under 5 U.S.C. § 552a(d)(2).  If the agency makes a final determination refusing a request to amend, 5 U.S.C. § 552a(d)(3), the affected individual may bring a claim seeking injunctive relief to amend the records under § 552a(g)(1)(A), (g)(2).  The Privacy Act also grants agencies the power to exempt systems of records from many of the Act's requirements.  Pursuant to 5 U.S.C. § 552a(j) and (k), an agency head may promulgate rules exempting systems of records meeting certain criteria from, for example, the rights of access and amendment contained in Section 552a(d).

## B.  The Court Lacks Jurisdiction Over Count 7 Because Plaintiff Failed to Exhaust His Administrative Remedies.

Count 7 should be dismissed because Plaintiff failed to exhaust administrative remedies.  Access and amendment claims under the Privacy Act require administrative exhaustion, including completion of an administrative appeal.  *See, e.g.*, *Dickson v. Off. of Pers. Mgmt.*, 828 F.2d 32, 41 (D.C. Cir. 1987); *Leighton v. C.I.A.*, 412 F. Supp. 2d 30, 34 (D.D.C. 2006).  Only if

the agency refuses a request and affirms that decision on administrative appeal may a party bring

suit under Section 552(a)(g)(2).  *See* 5 U.S.C. § 552a(d)(3); *id*. § 552a(g)(2) (referring to the

exhaustion requirements in (d)(3)).  This requirement is jurisdictional and cannot be forfeited or

waived.  *See, e.g.*, *Dick v. Holder*, 67 F. Supp. 3d 167, 187 (D.D.C. 2014); *Barouch v. DOJ*, 962

F. Supp. 2d 30, 67 (D.D.C. 2013); *Kursar v. Transp. Sec. Admin.,* 581 F. Supp. 7, 18 (D.D.C.

2008), *aff'd*, 442 F. App'x 565 (D.C. Cir. 2011).  DOJ regulations set out the process for

appealing an administrative determination on Privacy Act requests for access or amendment.  *See*

28 C.F.R. § 16.45 (process for appeals "[i]f you are dissatisfied with a component's response to

your request for access to records"); *id*. § 16.46(d) (similar process for appeals of requests for

amendment).

   Plaintiff alleges that the OIG Report contains unspecified errors and he seeks to have it

amended.  *See* SAC ¶ 294 (seeking "injunctive relief compelling Defendant DOJ to amend

inaccurate records concerning him"); *id.* ¶ 250 (alleging that the Report contains errors).  OIG

has not received a request from Plaintiff to amend the final OIG Report, however, and has not

denied any such request.  *See* Ex. DD, Declaration of Jonathan M. Malis, ¶ 8 (dated May 17,

2021).  Because Plaintiff has not exhausted a request to amend the OIG Report, the Court lacks

jurisdiction over Plaintiff's Privacy Act amendment claim.

   Plaintiff also alleges that OIG denied him access to review the draft report prior to its

finalization and publication.  *See* SAC ¶¶ 240-47, 292; Ex. DD ¶¶ 4–6.  Plaintiff communicated

several requests to access the draft OIG Report prior to its publication.  *See* Ex. DD ¶ 4

(including attached selection of communications from Plaintiff).  But his allegations regarding a

previous request to *access* the *draft* Report are not exhaustion of this specific claim to *amend* the

*final* Report.  The agency has not had the opportunity to consider any allegations of error or

requests for amendment of the final Report.  Because Plaintiff has not contacted OIG with

respect to any errors in the OIG Report, this Court lacks jurisdiction over his claim.  Moreover,

Plaintiff does not appear to have any interest in seeking access to the *draft* at this point (the only

request he even arguably exhausted); he wants amendment of the final OIG Report.

Accordingly, the Court need not consider any hypothetical claim for access to the draft OIG

Report.  Plaintiff has had access to the final Report since December 2019, and he has not asked

the agency to amend it.

### C.  The Complaint Fails to Identify an Error in the OIG Report.

Even if Plaintiff somehow exhausted his administrative remedies with respect to his

claim for amendment of the OIG Report, he still has not stated a claim for amendment at this

time because he has not identified any errors in the OIG Report.  Section 552a(d)(2) permits an

individual to request "amendment" and requires the agency to either make "any correction"

required or deny the request.  Section 552a(g)(2) authorizes a Court upon review of such a

demand to "order the agency to amend the individual's record."  Inherent in the concept of

"amendment" and "correction" is a finding that the record is *inaccurate*.  And in considering a

claim under a different section of the Privacy Act, the D.C. Circuit has explained that "the

Privacy Act allows for correction of facts but not correction of opinions or judgments."  *Cf.*

*McCready v. Nicholson*, 465 F.3d 1, 19 (D.C. Cir. 2006).  Accordingly, in order to state a claim,

Plaintiff must make some plausible allegation that the record in question is inaccurate.

Plaintiff, having seen the final Report, does not identify any inaccuracy in it, nor request

any specific amendment.  On the contrary, Plaintiff summarizes and specifically relies on

information in the OIG Report in the Complaint.  SAC ¶¶ 3, 41-42.  Plaintiff's vague and

conclusory allegation that the Report also "contains numerous errors," *see id*. ¶ 250, is not

sufficient to state a claim, where, as here, Plaintiff has seen the record in question and has not identified any inaccuracies with respect to "the individual's record."

### D. The OIG Report is Not in a System of Records.

Moreover, the OIG Report is not within a system of records for the purposes of this claim because it is not retrieved by Plaintiff's name. *See* 5 U.S.C. § 552a(a)(5). A system of records exists only if the information contained within the body of material is both "*retrievable* by personal identifier" and "actually *retrieved* by personal identifier." *See Maydak*, 630 F.3d at 178. It is well-established that an agency record that is not in fact retrieved by a person's name is not in a "system of records" and therefore cannot be the basis for Privacy Act access or amendment claims. *See, e.g.*, *McCready*, 465 F.3d at 12 (granting summary judgment without discovery because Veterans Affairs Inspector General reports were not retrieved by personal identifier). Additionally, by its terms, Section 552a(d) only permits a person to "request amendment of a record pertaining to him," if the record is in a system of records. 5 U.S.C. § 552a(d)(1), (2).

Here, the OIG Report is not in a system of records in which information is retrieved by Plaintiff's personal identifiers. The investigation into DOJ's compliance with relevant policies and procedures was not an investigation of Plaintiff or his actions. There are no allegations in the Complaint (and no indication in the report) that OIG was investigating Plaintiff. This was not a file, an investigation, or a report about Plaintiff or his actions. And in fact, the OIG Report explains that OIG "undertook this review to examine certain actions by the Federal Bureau of Investigation (FBI) and the Department during an FBI investigation opened on July 31, 2016, known as 'Crossfire Hurricane,' into whether individuals associated with the Donald J. Trump for President Campaign were coordinating, wittingly or unwittingly, with the Russian

government's efforts to interfere in the 2016 U.S. presidential election."  OIG Report at i.  As

accessible on the OIG website, the Report is indexed by the title and number of the report, not by

Plaintiff's personal identifiers.  *See* OIG, All Reports, available at

https://oig.justice.gov/reports/all.htm.[11]

  To the extent the Court finds it needs to consider more than what is alleged in the

pleadings, the Malis Declaration confirms that neither the draft nor final OIG Report is in a

system of records.  With respect to the draft version of the Report, the Malis Declaration explains

that "[t]he OIG's Oversight and Review Division (O&R), which conducted the review that led to

the issuance of the Report, generally does not index its investigative records relating to reviews

or retrieve them by use of a personal identifier."  Ex. DD ¶ 9.  Rather, draft versions of the

Report "are saved by working title of the report in the OIG's classified electronic records" and

agency employees "would access such records by reference to the title of the report or OIG

investigation file number."  *Id*.  Similarly, the Malis Declaration confirms that the final OIG

Report is "accessible on the public OIG website and filed in O&R's electronic files."  *Id*. ¶ 10.

In both locations, "OIG reports are indexed by the title and number of the Report, not Mr. Page's

personal identifier."  *Id*.  And although "one could conceivably run a text search for Mr. Page's

name, that is not how the agency accesses or retrieves the Report."  *Id*.  Undisputable evidence

---

[11] The Court may consider the OIG Report on the motion to dismiss standard because it is
incorporated within the Complaint.  *See, e.g.*, *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45,
46 (D.D.C. 2009) ("Matters that are not 'outside' the pleadings a court may consider on a motion
to dismiss include 'the facts alleged in the complaint, documents attached as exhibits or
incorporated by reference in the complaint,' . . . or documents 'upon which the plaintiff's
complaint necessarily relies' even if the document is produced not by the plaintiff in the
complaint but by the defendant in a motion to dismiss." (citation omitted)).

thus further establishes what is apparent from the face of the Report; the OIG Report is not retrieved from a system of records.  *See McCready*, 465 F.3d at 12.[12]

### E.  OIG Investigative Files are Exempt from Access and Amendment Claims.

If the draft OIG Report were the proper subject of a claim here, and if it were contained in a system of records, it would still be exempt from the access and amendment portions of the Privacy Act because it falls within the OIG's investigative files.

As noted above, an agency may promulgate rules exempting systems of records meeting certain criteria from, for example, the rights of access and amendment contained in Section 552a(d).  *See* 5 U.S.C. § 552a(j), (k).  The Attorney General invoked three specific subsections to exempt OIG investigative files from the access and amendment portions of the Privacy Act.  *See* 28 C.F.R. § 16.75 (exempting OIG files); *cf.* 72 Fed. Reg. 36725 (July 5, 2007) (Systems of Record Notice), *as amended by* 82 Fed. Reg. 24151, 24160 (May 25, 2017).  In particular, Section 552a(j)(2) permits an agency or component "which performs as its principal function any activity pertaining to the enforcement of criminal laws" to exempt from 552a(d) a system of records which contains criminal investigative information.  Moreover, Section 552a(k)(1) permits an agency to exempt a system of records that is classified.  And Section 552a(k)(2) permits an agency to exempt a system of records containing "investigatory material compiled for law enforcement purposes" subject to limited exceptions.  The regulation provides that "[t]hese exemptions apply only to the extent that information in this system is subject to exemption

---

[12] The SAC alleges that the OIG Report "identifies Dr. Page by name" and repeatedly uses his name.  *See* SAC ¶¶ 252-53.  That the Report repeatedly references Plaintiff by name is unsurprising, of course, because one subject of the OIG Report related to DOJ conduct with respect to the FISA applications related to Plaintiff.  But using Plaintiff's name does not transform the Report into a record about Plaintiff, and it does not make it a record that is retrieved by his personal identifier.

pursuant to 5 U.S.C. § 552a(j)(2), (k)(1) and (k)(2)" and further states that "[w]here compliance would not appear to interfere with or adversely affect the law enforcement process, and/or where it may be appropriate to permit individuals to contest the accuracy of the information collected, e.g., public source materials, the applicable exemption may be waived, either partially or totally" by OIG.  *See* 28 C.F.R. § 16.75(a)(1).

Pursuant to this authority, DOJ regulations exempt OIG investigative files from the access and amendment portions of the Privacy Act.  This exemption falls within the plain language of Sections 552a(j) and 552a(k) and encompasses the draft OIG report, and OIG properly determined that these exemptions would not be waived.  The Malis Declaration confirms that "a draft Report would be 'investigatory material compiled for law enforcement purposes' under Section 552a(k)(2)" and that "the draft Report, if it is in a system of records at all, would be subject to this exemption, and the exemption would not be waived."  Ex. DD ¶ 12. OIG determined that such a waiver would be inappropriate because at the time of Plaintiff's request, the draft Report was still classified and was still undergoing review and revision; "[t]he deliberative, non-final draft Report reflects the then-ongoing deliberations and investigative activity related to the final Report."  *Id*.  Moreover, "[a] waiver for the non-public draft would be particularly inappropriate now because a public version of the final Report is available, providing a final, accurate, fully reviewed and publicly accessible version of the Report."  *Id.*  Accordingly, the draft OIG Report is exempt from the access and amendment provisions of the Privacy Act.

For the foregoing reasons, the Court should dismiss Count 7, or in the alternative, grant summary judgment to Defendants.

## IV.     THE COURT SHOULD DISMISS COUNT 8 (PRIVACY ACT DISCLOSURE).

Count 8 alleges that Defendants DOJ and FBI improperly disclosed information about Plaintiff in violation of the Privacy Act.  In particular, it alleges that FBI or DOJ disclosed Plaintiff's information from a system of records in violation of 5 U.S.C. § 552a(b), which sets forth the conditions for disclosure of such information.  A plaintiff may bring a claim for improper disclosure in violation of Section 552a(b) pursuant to subsection (g)(1)(D)—the Act's "catch-all" provision, which also authorizes a civil remedy of money damages against the agency under certain circumstances.  *See* 5 U.S.C. § 552a(g)(1)(D), (g)(4)(A).  To state a claim for money damages under subsection (g)(1)(D), "a plaintiff must establish that (1) the agency violated a provision of the Act; (2) the violation was intentional or willful; and (3) the violation had an 'adverse effect' on the plaintiff in the form of actual damages." *Chichakli v. Tillerson*, 882 F.3d 229, 233 (D.C. Cir. 2018).[13]  With respect to each alleged disclosure, this claim is time-barred because Plaintiff was aware of the allegedly unlawful disclosures more than two years before bringing suit.  And with respect to each alleged disclosure, Plaintiff does not adequately allege actual damages, a required element of a Privacy Act disclosure claim.

### A.  Count 8 Is Time-Barred.

Section (g)(5) of the Privacy Act provides that "[a]n action to enforce any liability ... may be brought ... within two years from the date on which the cause of action arises."  5 U.S.C. § 552a(g)(5).  "[T]he cause of action does not arise and the statute of limitation does not begin to run until the plaintiff knows or should know of the alleged violation." *Tijerina v. Walters*, 821

---

[13] Plaintiff appears to mistakenly cite different sections of the Privacy Act.  *See, e.g.*, SAC ¶¶ 297-300 (citing 5 U.S.C.§§ 552a(d)(3)(D), 552a(d)(4)).  Section 552a(d) relates to requests for access and amendment, which presumably is not relevant to Count 8.  The disclosure conditions are governed by 5 U.S.C. § 552a(b), and civil remedies are governed by 5 U.S.C. § 552a(g).

F.2d 789, 798 (D.C. Cir. 1987). "In order to determine when the statute of limitations begins to run, courts in this circuit have accordingly focused on a plaintiff's awareness that a disclosure has occurred, rather than knowledge of precise details of the disclosure." *Hill v. Dep't of Def.,* 981 F. Supp. 2d 1, 7 (D.D.C. 2013); *see also Agelli v. Burwell*, 164 F. Supp. 3d 69, 75 (D.D.C. 2016) ("A Privacy Act claim starts to accrue when the plaintiff has inquiry notice of the alleged violation, not when she acquires actual knowledge of the agency's alleged misconduct."); *Farrero v. NASA*, 180 F. Supp. 2d 92, 95–96 (D.D.C. 2001) (same). When multiple disclosures in violation of the Privacy Act are alleged, an event might put a plaintiff on notice of some but not all of the violations. *Hill*, 981 F. Supp. 2d at 8. In determining when the statute of limitations begins to run on multiple distinct claims of disclosure, "the inquiry into when the 'cause of action arises,' 5 U.S.C. § 552a(g)(5), should distinguish carefully among distinct disclosures because each gives rise to potential liability." *Id*. For each disclosure, the limitations period begins to run when "plaintiff has fair notice that some disclosure has occurred." *Id*. at 10.

Here, each of the alleged disclosures happened well over two years before this action was filed, and Plaintiff was aware of them at or near the time of disclosure. Count 8 of the Complaint does not set forth any specific disclosures, *see* SAC ¶¶ 296-302, but there is a separate section in the SAC titled "Unlawful disclosure or use of FISA and Privacy Act protected records and information" that purports to describe unlawful disclosures under the Privacy Act, *id*. ¶¶ 218-31. Plaintiff alleges generally that Defendants "unlawfully leaked FISA and Privacy Act protected records and information concerning Dr. Page to the media," and describes alleged media leaks. *Id*. ¶ 218. More specifically, Plaintiff describes several messages exchanged between two individual defendants (Lisa Page and Peter Strzok) that he mistakenly believes constitute evidence of leaks to the media in April 2017. *Id*. ¶¶ 220, 222-23, 225-26. The Complaint

describes only two newspaper articles that purportedly contained leaked information: an April

11, 2017 article in *The Washington Post* about the FISA matter, and an April 22, 2017 article in

the *New York Times* about James Comey.[14]  *Id*. ¶¶ 221, 224.  The *Washington Post* article cites

unnamed "law enforcement and other U.S. officials" for confirming the existence of a FISA

order and unidentified "officials" for the vague confirmation that Plaintiff was "part of" the

Russia investigation.  *See* Ex. F at 1.  The *New York Times* article about Comey mentions the

controversy surrounding Plaintiff's trip to Russia and his purported meeting with a Russian

intelligence figure but does not describe an official source.  *See* Ex. G, at 10.[15]

All of these April 2017 disclosures pre-date the complaint by more than two years.

Plaintiff was aware of these allegedly unlawful disclosures at the time, and he failed to file this

lawsuit until November 2020.  Indeed, Plaintiff appears to be quoted in both articles, and it is not

plausible to suggest that he was not aware of them at the time.  *See* Ex. F, at 2, 4 ("Page has

repeatedly denied any wrongdoing in his dealings with the Trump campaign or Russia" and "[o]n

---

[14] As previously discussed, the Court can take judicial notice of the newspaper articles or, alternatively, consider them on the motion to dismiss standard because it is incorporated within the Complaint.  *See, e.g., Hinton*, 624 F. Supp. 2d at 46.

[15] Plaintiff does not appear to raise any disclosure claim related to the submission of the FISA applications to the FISC in 2016; nor does he raise any claim related to the disclosure of the FISA applications themselves, which were disclosed pursuant to FOIA in July 2018.  He does not specifically identify those disclosures, and thus has not pled a claim with respect to them.  In any event, any such claim would also be time-barred.  He was aware of the FISA applications as of at least February 2018, as set forth in Part I.B, and the FOIA disclosure was in July 2018.  Thus, any claim had arisen more than two years before this lawsuit was filed on November 27, 2020.  Regardless, DOJ properly disclosed these applications and orders in redacted form in response to multiple FOIA requests in July 2018, after their existence was formally declassified by the then President and disclosed by Congress.  *See* FBI Records:The Vault, *FISA Surveillance Court Orders and Applications*, https://vault.fbi.gov/d1-release/d1-release/view; *see also* 5 U.S.C. § 552(a)(2)(D) (requiring publication to Vault); *see generally Poulsen v. Dep't of Def*., 373 F. Supp. 3d 1249, 1278 (N.D. Cal. 2019) (adjudicating FOIA response to requestor); 2020); *James Madison Project*, 2020 WL 1033301, at *1 (describing background of adjudication of FOIA response to a different requestor).

Tuesday, Page dismissed what he called 'the dodgy dossier' of false allegations."); Ex. G, at 10

("Mr. Page has not said whom he met during his July visit to Moscow, describing them as

'mostly scholars.'").  Notably, Plaintiff makes no allegation that he was unaware of the alleged

disclosures when they occurred.  Nor could he.  In his testimony before the HPSCI in November

2017, he submitted a letter dated May 22, 2017 that described the *Washington Post* article and

what he called "Illegal leaking of classified information surrounding the completely unjustified

FISA warrant against me."  *See* Ex. I, at 24–26 (Carter Page Letter to the HPSCI, May 22, 2017).

In November 2018, more than two years before this action was filed, Plaintiff filed an appellate

brief in the *Page v. Oath* matter in which he referred to "criminal leakers within USG agencies"

and a "series of illegal leaks concerning his now-verified FISA warrants to the press."  *See* Ex.

EE, at 19, 28, Appellant's Br., *Page v. Oath*, No. 18-2295, Dkt. No. 38 (2d Cir. Nov. 21,

2018).[16]  Plaintiff was thus aware that the disclosure had occurred in April 2017, and has been

publicly complaining about alleged FBI leaks ever since; that he lacked "knowledge of precise

details of the disclosure" does not mean that his claim did not arise at that time.  *See Hill*, 981 F.

---

[16] Plaintiff made several media appearances more than two years ago in which he accused the Government of illegal leaks and illegal surveillance. *See, e.g.*, Ex. FF, *Carter Page on Papadopoulos Guilty Plea Tr., All In with Chris Hayes*, MSNBC (Oct. 30, 2017), https://www.msnbc.com/transcripts/all-in/2017-10-30-msna1034101 (asserting that information was leaked to the press); *Carter Page's Entire Interview with Jake Tapper*, CNN (Nov. 3, 2017), https://www.cnn.com/videos/politics/2017/11/03/carter-page-jake-tapper-interview-full-lead.cnn (similar); *Carter Page: FBI Shredded Constitution by Eavesdropping on Me*, ABC News (Feb. 6, 2018), https://abcnews.go.com/Politics/carter-page-fbi-shredded-constitution-eavesdropping/story?id=52870319 (responding to Nunes Memo); *Carter Page Returns to All In*, MSNBC (Mar. 29, 2018), https://youtu.be/m77IHhEV6aY (asserting that FBI interviews of him were leaked to the Washington Post); *Jake Tapper Presses Carter Page on Russian Contacts*, CNN (July 22, 2018), https://www.cnn.com/videos/politics/2018/07/22/sotu-carter-page-interview--full.cnn (discussing allegations in the FISA applications).  The Court can take judicial notice of the existence of media reporting, as proof that Plaintiff had notice. *Cf. Washington Post*, 935 F.2d at 291.

Supp. 2d at 7.  It is of no moment whether Plaintiff ever had information about the identities of

the alleged leakers.  A Privacy Act complaint runs against the agency, not the individuals, and

Plaintiff publicly accused the Defendants of leaks more than two years before this lawsuit was

filed.[17]

Plaintiff has not made any allegations that would support a theory of equitable tolling or

equitable estoppel to delay the start of limitations period to some unspecified later date.  *See*

*Chung v. DOJ*, 333 F.3d 273, 278–79 (D.C. Cir. 2003); *Samtmann v. DOJ*, 35 F. Supp. 3d 82, 90

(D.D.C. 2014), *aff'd*, No. 14-5115, 2015 WL 236560 (D.C. Cir. Jan. 16, 2015).  In *Samtmann*,

the Court declined to extend the statute of limitations for a plaintiff based on later discovery of

additional evidence because "the critical inquiry when applying the limitations provisions of the

Privacy Act is when plaintiff had or should have had knowledge of a document's existence or

disclosure, not when he obtained definitive proof."  35 F. Supp. 3d at 90.  The same is true here.

Plaintiff did not need the specific identities of the alleged leaker to file a complaint; he had

ample time and opportunity to file suit and did not do so.[18]  The Court should therefore conclude

---

[17] To the extent Plaintiff is relying on the text messages about a supposed "media leak strategy" described in the SAC, *see* SAC ¶ 220, media reporting and Plaintiff's own statements on Twitter confirm that Plaintiff was on notice of those allegations more than two years before this lawsuit was filed.  *See, e.g.*, Ex. GG, John Solomon, Leaking lovers and an FBI smear job of Carter Page? *The Hill* (Sept. 10, 2018), *available at* https://thehill.com/opinion/white-house/405956-leaking-lovers-and-an-fbi-smear-job-of-carter-page (discussing same alleged texts and quoting Plaintiff as saying it was "pretty obvious" the texts were about him and that "[t]here will be civil liability but all I really want is for DOJ just to do the right thing"); Ex. HH, Tweet (Sept. 20, 2018), *available at* https://twitter.com/carterwpage/status/1042747424928874496 ("The Threats continued last April, thanks to a 'Media Leak Strategy'"); Ex. II, Tweet (Oct. 20, 2018), *available at* https://twitter.com/carterwpage/status/1053657343664185344  ("They weren't too worried about my so-called 'privacy interests' when criminals initiated their media leak strategies, in or around April 2017.").

[18] Plaintiff's prior lawsuit, voluntarily dismissed without prejudice, does not assist him here.  It was filed more than two years after the alleged disclosure, alleged different illegal acts (namely, that the FOIA disclosure was unlawful), and was dismissed without prejudice.  *See* Ex.

that Plaintiff's Privacy Act claim is barred because he failed to bring it within the applicable two-year statute of limitations.

**B.  Plaintiff Has Not Plausibly Pled Actual Damages Caused By the Alleged Disclosures.**

Count 8 should also be dismissed for failure to state a claim because Plaintiff has not plausibly pled actual damages.  A Privacy Act plaintiff seeking damages under Section 552a(g)(4) must plead "actual damages."  *See* 5 U.S.C. § 552a(g)(4).  "Actual damages" within the meaning of the Privacy Act are limited to proven pecuniary or economic harm.  *In re OPM Data Sec. Breach Litig.*, 928 F.3d 42, 64 (D.C. Cir. 2019).  In *F.A.A. v. Cooper*, 566 U.S. 284, (2012), the Supreme Court held that the term "actual damages" in the Privacy Act are analogous to "special damages," *id.* at 295-98, meaning they are proven damages for "pecuniary or material" harm that must be specifically pleaded and proved.  *Id.* at 296.  And the Court specifically held that the Privacy Act does not authorize damages for "mental or emotional distress."  *Id.* at 304.  A court in this district explained that "special damages must be 'specifically stated' and alleged with 'particularity,' and must 'specify facts showing that such special damages were the natural and direct result of the defendant's conduct.'"  *Richardson v. Bd. of Governors of Fed. Rsrv. Sys.*, 288 F. Supp. 3d 231, 237 (D.D.C. 2018), *aff'd*, No. 18-5063, 2018 WL 4103305 (D.C. Cir. Aug. 15, 2018) (quoting *Browning v. Clinton*, 292 F.3d 235, 246 (D.C. Cir. 2002) (discussing "special damages" in a non-Privacy Act context)); *see also Welborn v. Internal Revenue Serv.*, 218 F. Supp. 3d 64, 82 (D.D.C. 2016) (finding allegations inadequate).

---

S, Complaint, *Page v. DOJ*, Case No. 1:19-CV-03149-KBJ, Docket No. 1 (Oct. 21, 2019); *see also* Ex. T, Stipulation of Dismissal, Docket No. 19 (Sept. 11, 2020).  "[O]nce a suit is dismissed, even if without prejudice, the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing."  *Ciralsky v. CIA*, 355 F.3d 661, 672 (D.C. Cir. 2004) (citation omitted).

Moreover, to survive a motion to dismiss a Privacy Act claim for damages, Plaintiff must "plausibly allege" that the violation was the "proximate cause" of the damages. *See In re OPM Data Sec. Breach Litig*., 928 F.3d at 67; *Hill v. U.S. Dep't of Def.*, 70 F. Supp. 3d 17, 22 (D.D.C. 2014). "A showing of actual damages sustained 'as a result of' the Privacy Act violation is required to unlock the government's waiver of sovereign immunity, and ambiguities in the scope of the waiver must be construed in favor of the sovereign." *Taylor v. F.A.A.*, No. 18-CV-00035 (APM), 2019 WL 3767512, at *6 (D.D.C. Aug. 9, 2019) (quoting *Cooper*, 566 U.S. at 289-91).

In one paragraph in the Complaint, Plaintiff alleges various harms stemming from all of the allegations of wrongdoing in this case, without tying any of them specifically to the two alleged media leaks. *See* SAC ¶ 254. Several of these listed harms are not economic harm at all, including: "Receiving death and kidnapping threats;" "Inability to travel safely and freely"; "Irreparable damage to his reputation;" and "pain and suffering damages." *Id*. These are not "actual damages" for the purposes of the Privacy Act.

With respect to pecuniary losses, in Count 8, Plaintiff states "As a direct and proximate result of Defendants' actions, Dr. Page . . . [lost] at least tens of millions of dollars of business opportunities and future lifetime earning potential, in addition to other pecuniary harms such as costs, fees, attorneys' fees and other losses." *Id*. ¶ 301. And the pecuniary losses that he alleges in the "Damages" section include: "Economic losses . . . from the destruction of his ability to continue conducting any kind of business through his own companies, because for example, persons, governments and entities would not contract with him, including banks and other business entities with whom he had previously worked"; "Economic losses . . . from being rendered effectively unemployable"; "Economic losses due to previously unnecessary expenses directly caused from having to relocate and travel and other security measures in response to

42

death and kidnapping threats"; and "Economic losses due to the otherwise unnecessary expenses of responding to government investigations and being involved in litigation." *Id.* ¶ 254. These allegations also fail to plausibly plead actual damages for at least two reasons. First, they are insufficiently specific to constitute special damages. Plaintiff does not claim any specific opportunity lost, nor any particular loss or expense that can be specifically calculated, and fails to meet the standard described by the D.C. Circuit. *Compare with OPM Data Sec. Breach Litig.*, 928 F.3d at 65-66 (detailing specific allegations about particular losses and expenses specifically tied to the alleged violations).

Second, the Complaint does not plausibly allege that any of these damages are caused by the specific alleged disclosures in the SAC. Although the SAC alleges that losses were "a direct and proximate result of Defendants' actions," that is merely a recitation of the legal standard. *See Twombly*, 550 U.S. at 545 (finding a "formulaic recitation" of the elements insufficient to state a claim). Plaintiff acknowledges, as he must, that suspicions about his involvement with Russia were a subject of public discussion long before the alleged leaks in April 2017. *See* SAC ¶¶ 15 (describing September 2016 news article Plaintiff attributes to Steele).[19] And after the alleged "leaks," there have been additional, lawful disclosures. Plaintiff himself testified before

---

[19] The three articles mentioned in the Complaint, *see* SAC ¶¶ 15, 221, 224, are not, of course, the only articles about Plaintiff's involvement with Russia in the press. For example, Plaintiff's own September 2016 letter to the FBI mentioned that the investigation regarding his mid-2016 trip to Russia has been "widely mentioned in the media" by that time. *See* Ex. I at 13. And his September 2017 Complaint in a matter filed in the Southern District of New York *Page v. Oath, Inc.*, describes a slew of allegedly defamatory news articles about Plaintiff. *See generally* Ex. A, Compl., *Page v. Oath, Inc.*, No. 1:17-cv-06990-LGS, ECF 1 ¶¶ 98-120 (S.D.N.Y. Sept. 14, 2017). As a result of allegedly defamatory publications in 2016, he alleged that he had suffered a "life-threatening" loss to both his and his corporation's professional reputation, *id.* ¶ 136, as well as the threat of "terrorizations," *id.* ¶ 119, and "death or serious bodily injury," *id.* ¶ 174. *See also supra* n.13 (identifying a few of Plaintiff's own media appearances and public statements).

Congress in mid-2017 regarding his ties to Russia.  *See, e.g.*, Ex. I at 46–48, 52–54, 70–75.

Pursuant to a Presidential declassification decision, Congress disclosed the existence of and

significant information about the FISA applications in early 2018.  *See* Exs. J and N (Nunes and

Schiff Memos).  As a result, DOJ was required to process and release the FISA applications and

orders under FOIA.  *See, e.g.*, *James Madison Project*, 2020 WL 1033301, at *1.  And the OIG

Report contained yet more information related to this matter.  *See generally* OIG Report.  In

short, not only has Plaintiff failed to allege that any specific disclosure caused any specific

injury, he cannot do so in light of other public information available both before and after the

allegedly unlawful acts.

## V.      THE COURT SHOULD DISMISS COUNT 9 (PATRIOT ACT/FISA).

In Count 9, Plaintiff claims that the United States is liable under 18 U.S.C. § 2712, which

authorizes actions to recover money damages for certain willful violations of FISA.  Plaintiff

alleges that the individual Defendants allegedly "obtained, disclosed, or used information

obtained by electronic surveillance of Mr. Page knowing or having reason to know that the

information was obtained through electronic surveillance not lawfully authorized by the FISA."

SAC ¶ 307.  Count 9 should be dismissed both because it is time-barred and because Plaintiff has

not plausibly alleged that the Government unlawfully used or disclosed information obtained

pursuant to FISA.

### A.  Statutory Framework for FISA Claims

As set forth above, under FISA, the FISC may approve electronic surveillance of a U.S.

person if certain standards are met.  *See supra* pp 3-4.  A criminal provision of FISA makes

unlawful, among other things, engaging in electronic surveillance except as authorized by the

FISA or other electronic surveillance statutes, and the use or disclosure of information obtained

without such authorization.  *See* 50 U.S.C. § 1809.  A separate provision, Section 1810, provides a civil cause of action against any "person" who has violated Section 1809, *id.* § 1810, but the definition of "person" does not include the federal government, 50 U.S.C. § 1801(m); *see Al-Haramain Islamic Found., Inc. v. Obama*, 705 F.3d 845, 853 (9th Cir. 2012) ("*AHIF*") (finding no waiver of sovereign immunity for claims against the Government under Section 1809 or Section 1810); *see also Return Mail, Inc. v. United States Postal Serv.*, 139 S. Ct. 1853, 1861–62 (2019) ("the Court applies a "longstanding interpretive presumption that 'person' does not include the sovereign.").

Section 2712, on the other hand, provides for civil actions against the United States to recover money damages for certain specified willful violations of FISA, the Wiretap Act, and the Electronic Communications Privacy Act ("ECPA").  With respect to FISA, Section 2712 only permits an action for violations of "sections 106(a) [§ 1806(a)], 305(a) [§ 1825(a)], or 405(a) [§ 1845(a)]" of FISA.  Thus, "[w]hile § 2712 creates United States liability for certain FISA violations such as those of 50 U.S.C. § 1806, it does not include claims under § 1810." *AHIF*, 705 F.3d at 851-52 (reviewing legislative history).  Plaintiff here alleges a violation related to electronic surveillance, *see* SAC ¶ 307, for which the relevant provision is Section 1806(a), which relates to the use or disclosure of information obtained via electronic surveillance. Section 1806(a) provides that information acquired from FISA electronic surveillance may be used or disclosed only in accordance with statutory minimization procedures and for lawful purposes.  50 U.S.C. § 1806(a); *see also id.* § 1801(h) (defining minimization procedures), § 1805(h) (requiring FISC judge issuing a surveillance order to make a finding that "the proposed minimization procedures meet the definition of minimization procedures under section 1801(h)").  By statute, applications for FISA electronic surveillance must contain "a statement of

the proposed minimization procedures," which may vary depending on the nature of the investigation and the type of foreign intelligence sought.  50 U.S.C. § 1804(a)(4); *see also* David S. Kris & J. Douglas Williams, *National Security Investigations & Prosecutions* (2d) § 9:1; *In re Sealed Case*, 310 F.3d 717, 730-32 (Foreign Int. Surv. Ct. Rev. 2002); OIG Report at 38.

Under Section 2712, a person who is "aggrieved by any willful violation" of the specified statutory sections may sue the United States to recover "money damages," to include "actual damages, but not less than $10,000"; and "litigation costs, reasonably incurred."  18 U.S.C. § 2712(a).  With respect to the willfulness requirement, Plaintiff must allege not only that a Government agent voluntarily engaged in conduct that constituted a violation, but also that the agent engaged in the conduct with the conscious objective of committing a violation.  *See Ratzlaf v. United States*, 510 U.S. 135, 141–42 (1994) (a willful violation is a violation of a known legal duty).[20]

Reading these statutory provisions together, then, a person "aggrieved" by the alleged violation must plead all of these elements of a claim under 18 U.S.C. § 2712(a) and 50 U.S.C. § 1806(a): (1) a willful (2) disclosure or use (3) of information acquired from an electronic surveillance conducted pursuant to FISA (4) without the consent of the person who was the subject of the surveillance and (5) without the required minimization procedures, or without any lawful purpose.  *Fikre v. FBI*, 142 F. Supp. 3d 1152, 1169 (D. Or. 2015).

---

[20] Congress understood "willful" in this context as being synonymous with "intentional," as that term is used in FISA's criminal provisions.  *See* David S. Kris & J. Douglas Wilson, *National Security Investigations and Prosecutions (2d)* § 14:9.  *But see Fikre v. FBI*, 142 F. Supp. 3d 1152, 1169-70 (D. Ore. 2015) (reasoning that common law "willfulness" includes "recklessness" and finding that allegations failed to meet even the more lenient standard).  Under either standard, Plaintiff's allegations fail.

Section 2712 imposes additional procedural requirements, as well, for the exercise of jurisdiction.  An action under Section 2712 "may be commenced only after a claim is presented to the appropriate department or agency under the procedures of the [FTCA]."  *See* 18 U.S.C. § 2712(b)(1).  Moreover, an action under Section 2712 "shall be forever barred unless it is presented in writing to the appropriate Federal agency within 2 years after such claim accrues or unless action is begun within 6 months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."  *Id*. § 2712(b)(2); *see also Schuler v. United States*, 628 F.2d 199, 201 (D.C. Cir. 1980) (interpreting identical language in FTCA context).  The statute provides that the "claim shall accrue on the date upon which the claimant first has a reasonable opportunity to discover the violation."  18 U.S.C. § 2712(b)(2).

## B.  The Statute of Limitations Bars Plaintiff's Claims.

Plaintiff's claims are barred by the two-year statute of limitations, which bars "a suit if the plaintiff had such notice as would lead a reasonable person either to sue or to launch an investigation that would likely uncover the requisite facts." *Sparshott v. Feld Ent., Inc.*, 311 F.3d 425, 429 (D.C. Cir. 2002) (interpreting similar standard in a different Wiretap Act provision); *see also Keohane v. United States*, 669 F.3d 325, 329 (D.C. Cir. 2012) (describing "reasonable opportunity" as a "relatively low bar"); *Sprint Commc'ns v. F.C.C.*, 76 F.3d 1221, 1228 (D.C. Cir. 1996) (interpreting FTCA discovery rule and explaining that "[a]ccrual does not wait until the injured party has access to or constructive knowledge of all the facts required to support its claim.").

Here, then, any claim under Section 2712 accrued when Plaintiff had notice that would lead a reasonable person to investigate whether Defendants "obtained, disclosed, or used

information obtained by electronic surveillance of Mr. Page knowing or having reason to know that the information was obtained through electronic surveillance not lawfully authorized."  SAC ¶ 307.  Plaintiff here had notice at least as early as February 2018 as to each category of this claim, but his administrative claim is dated Sept. 30, 2020.

First, even assuming Plaintiff has adequately pleaded that the results of FISA electronic surveillance were leaked to the media, those claims are time-barred.  *See* SAC ¶¶ 218-29.  As set forth in Part IV.A, Plaintiff has been aware of, and making allegations about, the alleged leaks in the *Washington Post* and *New York Times* articles in 2017 since mid-2017, more than two years before his PATRIOT Act claim was presented to DOJ.  For example, in his May 7, 2017 letter to SSCI, Page alleged the disclosure to the *Washington Post* was a "felony" and a "nonsensical invasion of privacy."  Ex. I, at 19, 24.  Any claim related to alleged media leaks is therefore time-barred under Section 2712.

Second, as set forth in Part V.C below, unlawfully "obtain[ing]" FISA information and other alleged violations of Sections 1809 or 1810 are not a basis for a Section 2712 claim here; but, even if such allegations were a proper basis for a claim, the claim would be time-barred.  As explained above, the FISA orders were obtained in 2016 and 2017, and Plaintiff was aware of the FISA orders at least since those orders were officially confirmed in February 2018 and released in July 2018, and likely sooner.  *See* Part II.B, *supra*.  Plaintiff has in fact been arguing that those orders were unlawfully obtained and for an unlawful purpose since at least 2017, and he alleged as much in Congressional testimony and court filings more than two years before presenting a claim.  *Id*.  Any claim premised on unlawful collection, then, is plainly time-barred because Plaintiff had a reasonable opportunity to discover the alleged violation more than two years before submitting his administrative claim in September 2020.

48

Third, any allegation that FISA information was "disclosed" or "used" in order to obtain the renewal orders is time-barred for the same reason. *See* SAC ¶¶ 229-30. Plaintiff premises his allegation solely on the fact that there were renewal orders, a fact that was officially confirmed and of which he had notice in at least February 2018, and after redacted versions of all four applications were released pursuant to FOIA in July 2018. *See* Part II.B, *supra*. While the Government has not publicly confirmed or denied whether information obtained via FISA appears in the renewal applications, even assuming *arguendo* that allegation is accurate, the uncertainty on whether the applications contained FISA-acquired information did not prevent him from having sufficient information regarding the nature of the conduct at issue, his alleged injury, or its cause to file a claim. That is, Plaintiff had no more information about the FISA applications targeting him on September 30, 2020 – the day his Section 2712 claim was filed – than he did in July 2018 after their public release. *See Sprint Commc'ns*, 76 F.3d at 1128. Accordingly, any claim he premises on these renewal orders is time-barred.

Plaintiff's other allegations about alleged unlawful use or disclosure are vague and not connected to any identified or dated use or disclosure. *See* SAC ¶¶ 229-231. This includes Plaintiff's allegations that FISA information was used "to conceal" earlier errors, and that it was used to "obtain or justify additional investigative measures"; "to request investigative assistance from other law enforcement and intelligence agencies"; "to include the information in government databases"; "to justify the on-going or prior unlawful surveillance to other government officials"; or some other unspecified "use" disclosed in FISC filings. *Id*. Given the lack of any other identified factual basis, Plaintiff appears to presume these claimed "uses" or "disclosures" solely from the existence of the FISA orders. Again, Plaintiff was on notice of

those orders, and any deductions he could attempt to make from them, far more than two years before presenting a claim.

### C. The Court Should Dismiss Any Claim Regarding Unlawful Collection Under FISA Section 1810, for which Section 2712 Does Not Waive Sovereign Immunity.

As set forth above in Part V.A, Section 2712 provides a waiver of sovereign immunity for certain willful violations of Section 1806(a) but does not provide a waiver of sovereign immunity for violations of Sections 1809 or 1810.  As the Ninth Circuit held in *AHIF*, the civil liability provision for unlawful collection and use of unlawfully obtained information in Section 1810 excludes the United States on its face, and the waiver of sovereign immunity in Section 2712 specifies different statutory sections for which immunity is waived.  705 F.3d at 850-55; *see also Wikimedia Found. v. Nat'l Sec. Agency/Cent. Sec. Serv*., 335 F. Supp. 3d 772, 784 (D. Md. 2018) (agreeing with *AHIF*); *Whitaker v. Barksdale Air Force Base*, No. 14-cv-2342, 2015 WL 574697, *7 (W.D. La. Feb. 11, 2015) (similar); *Gill v. DOJ*, 2016 WL 3982450, at *8 (D.D.C. 2016) (similar), *aff'd on other grounds*, 875 F.3d 677 (D.C. Cir. 2017).  The *AHIF* Court found that the legislative history supported this reading of the plain text as well.  705 F.3d at 852 (citing H.R. Rep. No. 107–236, at 12–13, 42 (2001)) (explaining that an earlier version proposed a waiver of sovereign immunity for violations of Section 1810, but that text was deleted and a waiver of sovereign immunity was incorporated into Section 2712 instead).  Accordingly, Section 2712 permits actions against the United States to recover money damages for willful violations of FISA provisions concerning the unauthorized *use and disclosure* of information obtained from electronic surveillance, not for a Section 1810 claim.[21]

---

[21] Additional legislative history confirms that Section 2712 is essentially an anti-leaking statute.  Section 223 of the PATRIOT Act (which became 18 U.S.C § 2712) was an amendment proposed by Representative Barney Frank during the consideration of the PATRIOT Act before

Thus, while Plaintiff purports to bring a claim under Section 2712, *see* SAC ¶¶ 303-311,

his pleading regarding the alleged violation tracks the language of Section 1809, for which

Section 2712 does not provide a remedy.  *Compare* SAC ¶ 307 (alleging that Defendants

"obtained, disclosed or used" FISA information "knowing or having reason to know that the

information was obtained through electronic surveillance not lawfully authorized by FISA") *with*

50 U.S.C. § 1809(a) (prohibiting unlawful collection and prohibiting disclosure or use of

information obtained by electronic surveillance, "knowing or having reason to know that the

information was obtained through electronic surveillance not authorized" by law).  Accordingly,

Plaintiff cannot seek relief under Section 2712 for Defendants' allegedly "obtain[ing]"

information from electronic surveillance in violation of FISA Section 1809.

### D.  Plaintiff Otherwise Fails to Plead a Willful Use or Disclosure of FISA Information Without Lawful Purpose Under Section 2712.

Because Plaintiff's Section 2712 claim in Count 9 is time-barred and does not attempt to

plead the elements of a violation of Section 1806(a), it can be dismissed for either of those

reasons alone.  But even if a Section 2712 claim could be discerned from the allegations in the

---

the House Committee on the Judiciary.  Citing the historical example of leaks of information
obtained through surveillance about Dr. Martin Luther King, Jr.'s personal life, Representative
Frank explained that an individual subjected to such "inappropriate release of information
garnered by surveillance" should have the right to "get damages from the Federal Government."
He elaborated as follows: "We have got to build into this a bureaucratic departmental incentive
to crack down on this kind of leaking, and I think if we are able to ensure people that we have
done the maximum to prevent the inappropriate disclosure of this information, there is less
concern about [it] being gathered." Administration's Draft Anti-Terrorism Act of 2001: Hearing
Before the H. Comm. on the Judiciary, 107th Cong., 1st Sess., at 17 (2001).  In approving
Representative Frank's amendment, the House Judiciary Committee described it as providing
"increased civil liability for unlawful disclosures of information" obtained by electronic
surveillance.  *See* H.R. Rep. No. 107-236 (Part I), at 42 (2001).  Four years later, when Congress
reauthorized Section 2712 and other provisions of the PATRIOT Act, it recognized that Section
2712 "[i]ncreases civil liability for unauthorized disclosure of pen trap, wiretap, stored
communications or FISA information."  H.R. Rep. No. 109-174 (Part I), at 496 (2005).

factual sections of the SAC, Plaintiff's other allegations, taken as true, still do not establish all five elements of a claim for violation of FISA Section1806(a) under Section 2712.  *See* SAC ¶¶ 218-31 (alleging various uses and disclosures related to the relevant FISAs).

1.      **Alleged Leaks**.  First, Plaintiff alleges generally that Defendants "leaked FISA and Privacy Act protected records and information concerning Dr. Page to the media," citing as examples the *NY Times* and *Washington Post* articles from April 2017.  *See* SAC ¶¶ 218-26. Plaintiff's Section 2712 claim, however, is based on a civil cause of action for the alleged misuse and disclosure of information obtained pursuant to FISA (*i.e.*, the information obtained from electronic surveillance of the plaintiff, also referred to as the results of the surveillance), not information generally concerning the occurrence of the FISA surveillance.  The SAC, however, contains no allegations that either of these articles contained information obtained from FISA, and an examination of the articles shows that they do not say anything at all about the results of the surveillance.  *Id*.; *see also* Exs. F, G.  The *Washington Post* article describes the FISA orders in general terms, but not the results; the *New York Times* article says nothing about the surveillance itself.  While the SAC adds a generic and conclusory assertion that Defendants disclosed "the results of the surveillance," SAC ¶ 229, there are no factual allegations in the SAC that would support that bare conclusion.  *See Iqbal*, 556 U.S. at 678 ("a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). Indeed, the SAC contains no reason to suspect that there is *any* information in the public sphere about the results of the electronic surveillance.  Accordingly, any claim based on these purported leaks fails to allege a "use[] or disclos[ure]" of "information acquired from an electronic surveillance" under FISA.  *See* 50 U.S.C. § 1806(a).

52

2.      **Renewal Applications**.  Second, the SAC includes an allegation that Defendants disclosed and used FISA-acquired information in the renewal applications themselves submitted to the FISC.  *See* SAC ¶¶ 229-30.  There is no apparent factual basis for this "use" in the SAC either, and in any event the "use" of such information in the renewal applications would not state a claim for a Section 1806(a) violation.

First, the SAC contains no factual support for the conclusion that the renewal applications contained FISA-obtained information.  Even if the Plaintiff could simply assume its use in that context, he has not plausibly alleged that any particular use or disclosure of FISA obtained information was in violation of minimization procedures or without lawful purpose.  Minimization procedures would not prohibit the Government from providing relevant information to the FISC itself, and the SAC sections on disclosure contain no mention of minimization procedures.

Moreover, Plaintiff has not alleged that any such particular use would be for an "unlawful purpose" or described any factual support for that conclusion.  Section 1806(a) cannot be read to permit challenges to the sufficiency of evidence submitted to the FISC to support authorization for FISA collection.  After all, even if all four applications were ultimately determined to be legally deficient, seeking authorization from the FISC for electronic surveillance is not *an unlawful purpose*, and thus Plaintiff has not plausibly alleged that the Government used FISA-acquired information in those renewal applications for an unlawful purpose.  The SAC contains no allegations at all about the allegedly unlawful use of FISA-acquired information in renewal orders, beyond seeking authorization to conduct surveillance.  The obvious purpose of those applications was to obtain an order from the FISC to conduct surveillance.  That is not an unlawful purpose under Section 1806(a).  Thus, even if the renewal applications contained

information obtained from FISA electronic surveillance, and even if that information allegedly rendered the applications unsupported, the *use* of that information in the applications would not have been unlawful.  As with the abuse of process claim, the Court should examine whether the Plaintiff has alleged that the uses of information were "for an immediate purpose other than that for which it was designed and intended[,]" not whether the legal action itself was well-grounded.  *Cf.* Part II.A, *supra*; *Moore*, 213 F.3d at 712; *Goodall*, 130 A.2d at 782.  Plaintiff's claim is trying to fit a square peg into a round hole – he seeks to challenge the sufficiency of the FISA applications to conduct the surveillance, but any use of FISA-acquired information in the renewal applications presented to the FISC would not have been an *unlawful* use or disclosure for purposes of Section 1806(a).

Moreover, to the extent that Plaintiff has alleged a use or disclosure in the renewal applications and an unlawful purpose, Plaintiff has not adequately alleged willfulness with respect to the alleged violation.  The SAC contains no factual allegations from which one could infer the state of mind of individuals allegedly adding FISA obtained information to FISA applications, and Plaintiff has provided no basis for concluding that the many DOJ and FBI officials involved in drafting, reviewing, and approving the applications were committing an intentional violation of the law with respect to the alleged use, as opposed to using the information in good faith.  *See, e.g., Kelley v. FBI*, 67 F. Supp. 3d 240, 257 (D.D.C. 2014) (use of "the talismanic words 'willful' and 'intentional'" does not suffice to satisfy a pleading burden).[22]

---

[22] To the extent the Plaintiff is relying on the Government's later assessment that probable cause was lacking for the Third and Fourth FISA Orders, a lack of probable cause does not constitute an unlawful purpose, as established above.  Moreover, Plaintiff has not pleaded that information obtained specifically from the Third and Fourth FISA Orders was used at all.

3.     **Other Investigative Uses.**  Plaintiff's other allegations about supposed unlawful use or disclosure are also vague and not connected to any specifically identified or dated use or disclosure.  *See* SAC ¶¶ 229-231.  Plaintiff speculates that information obtained via FISA was used to "obtain[] additional surveillance and investigative information without probable cause," *id.* ¶ 229, "to conceal" earlier errors, and that it was used to "obtain or justify additional investigative measures"; "to request investigative assistance from other law enforcement and intelligence agencies"; "to include the information in government databases"; and "to justify the on-going or prior unlawful surveillance to other government officials," *id.*

First, no claim based on these allegations was "presented" to the agency, and Plaintiff's claim is therefore barred under Section 2712(b)(2).  The requirement of agency presentment under Section 2712 is governed by the FTCA standards.  *See* 18 U.S.C. § 2712(b)(1).  "[A] jurisdictionally adequate presentment is one which provides to the appropriate agency (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim."  *GAF Corp. v. United States*, 818 F.2d 901, 905 (D.C. Cir. 1987); *Allen v. Brown*, 320 F. Supp. 3d 16, 32 (D.D.C. 2018).  A claim may be inadequate, for example, where it is based on different incidents than those alleged in the complaint, *see, e.g., Deloria v. Veterans Admin.*, 927 F.2d 1009, 1012 (7th Cir. 1991) (finding administrative notice of conspiracy to alter medical records was not sufficient notice of subsequent FTCA claims of medical malpractice and negligence because the "allegations involve wholly different incidents"); where it is based on different operative facts than those appearing in the complaint, *see, e.g.*, *Roma v. United States* 344 F.3d 352, 362–63 (3d Cir. 2003) (finding that "facts concerning how a fire started and any negligence by federal employees in failing to prevent it are entirely distinct from the conduct" the plaintiff alleged in his administrative claim

55

related to "supervising the firefighting operations"); or where the plaintiff expects the agency to piece together a claim from prolix and unfocused documents, *see, e.g. Bembenista v. United States*, 866 F.2d 493 (D.C. Cir. 1989).

Here, Plaintiff's cover letter focuses on the allegedly unlawful FISA electronic surveillance and allegedly improper FOIA release, and notes that the claim is "based on the same conduct" and "nearly identical" to the previous FTCA claim, adding Section 2712 as the legal basis for the claim. *See* Ex. T ¶ 5 & Ex. 1. The legal and factual basis for the administrative claim itself appears to be based primarily on allegations regarding inadequacies of the FISA orders, political bias of the process, and the FISA surveillance of Plaintiff. *Id*. The media reporting regarding the FISA orders is mentioned in the "personal injury" section. *Id*. Even assuming this is adequate to present Plaintiff's claims with respect to alleged unlawful collection, use in the renewal orders, and media leaks – all of which are at least mentioned in the administrative claim – it is not adequate to present any new claims about improper use of FISA-acquired information for other investigative uses. Such "uses" would involve a separate incident and separate set of operative facts regarding the alleged use, and the allegations cannot be fairly deduced from the administrative claim.

In any event, even if the "other investigative uses" claim had been adequately presented administratively, the allegations fail to state a claim. The basic lack of factual matter is even more pronounced with respect to these allegations because, unlike with the renewal applications, Plaintiff cites no factual basis for the belief that such additional investigative measures were taken, much less that they were taken based on allegedly unlawful collection. The D.C. Circuit requires that the allegations based on information and belief, *see* SAC ¶ 230, "be accompanied by a statement of the facts upon which the allegations are based" so that the Court may

determine "whether the complaint's allegations create a plausible inference." *See Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021). The SAC is devoid of any facts on which such allegations of additional investigative steps deriving from FISA collection may be based.[23]

Even if the Court were willing to assume that there may be a factual basis for Plaintiff's speculation that additional investigative steps were taken based on FISA collection with respect to him or others, Plaintiff still has not plausibly alleged that such hypothetical uses were in violation of minimization procedures or without lawful purpose subject to a claim under Section 1806(a). Again, there are "obvious alternative explanation[s]", *Iqbal*, 556 U.S. at 682: that any use of the FISA information would have adhered to the governing minimization procedures and been for the lawful purpose of conducting national security or criminal investigations. *See Iqbal*, 556 U.S. at 682. Nor has Plaintiff adequately pled that any such violations were "willful"; Plaintiff has offered no reason to assume that additional investigative steps such as those Plaintiff describes would necessarily constitute an intentional violation of Section 1806(a).[24]

---

[23] Two allegations are particularly puzzling. The allegation that the Government included unspecified FISA information in unspecified databases, *see* SAC ¶ 230, does not appear to be a "use" or "disclosure" at all, absent additional facts. Having information is quite different than using or disclosing it. *See* Ex. P, at 7 ("retention must be distinguished from use or disclosure"). Moreover, the allegation that FISA-acquired information was used to "conceal" earlier problems with FISA applications, *see* SAC ¶ 230, is simply unclear as to how the inclusion of information in a FISA application would have been an unlawful use of FISA information, let alone how its inclusion would have concealed anything. Again, Plaintiff is trying to use a Section 1806(a) claim to challenge the sufficiency of the application – not an unlawful use or disclosure of FISA obtained information.

[24] To the extent Plaintiff is relying on alleged investigative steps taken based on FISA collection with respect to other individuals, Plaintiff lacks constitutional or statutory standing to complain about unspecified investigative steps taken with respect to *others*. He is not conceivably injured by unknown actions taken with respect to unspecified third parties. Moreover, Plaintiff may be an "aggrieved person" with respect to the FISA electronic surveillance of him, *see* 50 U.S.C. § 1801(k), but he is not "aggrieved by any willful violation" of 1806(a) with respect to alleged uses pertaining to another person , *see* 18 U.S.C. § 2712(a).

4.    **FISC Filings**.  Finally, Plaintiff asserts that the Government "has conceded in several filings with the FISC that it has used and disclosed the information obtained from the unlawful FISA warrants on Dr. Page in numerous ways, some of which were then specifically prohibited by the FISC."  SAC ¶ 231.  But the SAC does not identify any such filings, concessions, or prohibitions.  *Cf.* SAC ¶¶ 40-51 (describing various FISC rulings); Exs. O-R.

The Government and the FISC have been exceptionally transparent with respect to the ongoing use and disclosure of Plaintiff's FISA information.  Public FISC orders cited in the SAC confirm that on December 9, 2019, the Government advised the FISC that it was sequestering collection associated with Plaintiff's FISA applications based upon its assessment that the Third and Fourth FISAs targeting Plaintiff lacked sufficient predication to establish probable cause that Plaintiff was an agent of a foreign power.  *See* Ex. P, at 2.  While the Government strictly limited access to Plaintiff's FISA collection, the Government sought to temporarily retain this collection for the purposes of reviewing and remediating the issues revealed by the OIG Report, as well as for any related litigation or investigations regarding the Government's conduct.  *See id.*  On January 7, 2020, the FISC ordered the Government to explain why any retention, use, or disclosure of information collected under the Plaintiff's FISA applications was necessary and lawful.  *Id.*  In its June 2020 opinion, the FISC approved and set parameters for the temporary retention, use, and disclosure of information acquired pursuant to Plaintiff's FISA applications, as requested by the Government.  *Id.* at 20-21.

Plaintiff has not plausibly pleaded that any uses or disclosures were in violation of minimization procedures or without lawful purpose, or that any such violations were willful. Indeed, the very documents quoted by Plaintiff in the SAC show that the Government voluntarily

restricted access to Plaintiff's FISA information and has aggressively taken steps to limit its use and disclosure.

The Court should dismiss Count 9.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the claims against the United States, the FBI, and DOJ.

Dated:  September 17, 2021

Respectfully Submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

MARCIA BERMAN
Assistant Director, Federal Programs Branch

*/s/Amy E. Powell*
AMY E. POWELL
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
c/o U.S. Attorney's Office
150 Fayetteville St., Suite 2100
Raleigh, NC 27601
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

*Attorneys for Defendants Department of*
*Justice and Federal Bureau of Investigation*

*/s/  Daniel P. Chung*
DANIEL P. CHUNG
CATE E. CARDINALE
Trial Attorneys, Torts Branch
Civil Division
United States Department of Justice
P.O. Box 888 Ben Franklin Station

Washington, DC 20044
Phone: (202) 616-4258
Email: Daniel.P.Chung@usdoj.gov

*Attorneys for the United States of America*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 17, 2021, I electronically filed the foregoing GOVERNMENT DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF GOVERNMENT DEFENDANT'S MOTION and EXHIBITS A–II (in compliance with LCvR 7-1(n)(1)) with the Clerk of Court by using the CM/ECF system, which will provide electronic notice and an electronic link to this document, which suffices for service to the attorneys of record who have entered an appearance.  *See* L.R. 5.4(d).

DATED:   September 17, 2021

                                        */s/ Amy E. Powell*
                                        AMY E. POWELL
                                        Trial Attorney
                                        United States Department of Justice
                                        Civil Division, Federal Programs Branch

                                        */s/ Daniel P. Chung*
                                        DANIEL P. CHUNG
                                        Trial Attorney
                                        United States Department of Justice
                                        Civil Division, Torts Branch