## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARTER PAGE,<br><br>          Plaintiff,<br><br>     v.<br><br>JAMES COMEY, ANDREW MCCABE, KEVIN CLINESMITH, PETER STRZOK, LISA PAGE, JOE PIENTKA III, STEPHEN SOMMA, BRIAN J. AUTEN, DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION, UNITED STATES OF AMERICA, JOHN DOES 1-10, JANE DOES 1-10,<br><br>          Defendants. | No. 20-cv-3460 |

## DEFENDANT STEPHEN SOMMA'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Meaghan VerGow (D.C. Bar #977165)
Andrew R. Hellman (D.C. Bar #1723887)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006-4001
Telephone: (202) 383-5300
Fax: (202) 383-5414
mvergow@omm.com
andrewhellman@omm.com

*Attorneys for Stephen Somma*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.     ALL OF PLAINTIFF'S CLAIMS AGAINST AGENT SOMMA ARE
UNTIMELY ........................................................................................................ 2

II.    A *BIVENS* CAUSE OF ACTION IS UNAVAILABLE HERE. ........................... 6

III.   PLAINTIFF FAILS TO ALLEGE A PLAUSIBLE FISA CLAIM
AGAINST AGENT SOMMA. ............................................................................ 8

    A.    FISA's Civil Cause of Action Does Not Apply to Unintentional
Violations of the Statute or Aiding and Abetting Violations of the
Statute. ................................................................................................. 9

    B.    Plaintiff Has Not Plausibly Alleged That Agent Somma Intended
to Engage in Surveillance Not Authorized by FISA (All Counts)........... 11

    C.    FISA's Statutory Safe Harbor Applies to All of Agent Somma's
Alleged Conduct. ................................................................................. 14

    D.    Plaintiff Concedes That Counts 3 and 4 Against Agent Somma
Must Be Dismissed. ............................................................................. 15

IV.   PLAINTIFF HAS NOT PLAUSIBLY ALLEGED THAT HIS INJURIES
ARE FAIRLY TRACEABLE TO AGENT SOMMA'S CONDUCT................. 16

V.    AGENT SOMMA IS ENTITLED TO QUALIFIED IMMUNITY ON
ALL OF PLAINTIFF'S CLAIMS. ................................................................... 17

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Annappareddy v. Lating,*
   2019 WL 12094026 (D. Md. Oct. 18, 2019) ............................................................. 5

*Annappareddy v. Pascale,*
   996 F.3d 120 (4th Cir. 2021) ............................................................................. 7

*Ashcroft v. al-Kidd,*
   563 U.S. 731 (2011) ......................................................................................... 18

*Berman v. Crook,*
   293 F. Supp. 3d 48 (D.D.C. 2018) .................................................................. 4, 5, 7

*Berry v. Funk,*
   146 F.3d 1003 (D.C. Cir. 1998) .................................................................. 18, 19, 20

*Bivens v. Six Unknown Fed. Narcotics Agents,*
   403 U.S. 388 (1971) ..................................................................................... 6, 7

*Blake v. Wright,*
   179 F.3d 1003 (6th Cir. 1999) ........................................................................... 19

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
   511 U.S. 164 (1994) ..................................................................................... 10, 11

*Chao v. Amalgamated Transit Union,*
   141 F. Supp. 2d 13 (D.D.C. 2001) ..................................................................... 19

*City & County of San Francisco v. Sheehan,*
   575 U.S. 600 (2015) ......................................................................................... 19

*City of Escondido v. Emmons,*
   139 S. Ct. 500 (2019) ....................................................................................... 19

*Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz,*
   891 F. Supp. 2d 13 (D.D.C. 2012) ..................................................................... 11

*Dukore v. District of Columbia,*
   799 F.3d 1137 (D.C. Cir. 2015) ......................................................................... 18

*Edokobi v. U.S. Gen. Servs. Admin.,*
   2018 WL 4639102 (D. Md. Sept. 27, 2018) ......................................................... 5

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Fazaga v. FBI,*
965 F.3d 1015 (9th Cir. 2020) ................................................................. 9

*FBI v. Fazaga,*
142 S. Ct. 1051 (2022).................................................................. 7, 19, 20

*Felter v. Salazar,*
679 F. Supp. 2d 1 (D.D.C. 2010)............................................................ 15

*Gill v. Dep't of Justice,*
2016 WL 3982450 (D.D.C. July 22, 2016) ............................................ 16

*Gilliam v. Dep't of Justice,*
128 F. Supp. 3d 134 (D.D.C. 2015)........................................................ 19

*Hernandez v. Mesa,*
140 S. Ct. 735 (2020).................................................................... 6, 7

*In re Toys R Us, Inc., Privacy Litig.,*
2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ....................................... 11

*John K. Maciver Inst. for Pub. Pol'y, Inc. v. Schmitz,*
885 F.3d 1004 (7th Cir. 2018) ........................................................ 15, 19

*Jones v. Horne,*
634 F.3d 588 (D.C. Cir. 2011) ............................................................... 18

*Kelley v. FBI,*
67 F. Supp. 3d 240 (D.D.C. 2014)............................................... 12, 14, 16

*Kursar v. TSA,*
751 F. Supp. 2d 154 (D.D.C. 2010)........................................................ 2

*LKQ Corp. v. United States,*
2019 WL 3304708 (D.D.C. July 23, 2019) ............................................. 8

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992)............................................................................... 16

*Malley v. Briggs,*
475 U.S. 335 (1986)............................................................................... 18

*Meeks v. Larsen,*
611 F. App'x 277 (6th Cir. 2015) ........................................................... 7

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Messerschmidt v. Millender,*
   565 U.S. 535 (2012)..................................................................................................... 18

*Mitchell v. Forsyth,*
   472 U.S. 511 (1985)..................................................................................................... 17

*Owens v. BNP Paribas, S.A.,*
   897 F.3d 266 (D.C. Cir. 2018) ............................................................................. 10, 11

*Pearson v. Callahan,*
   555 U.S. 223 (2009)..................................................................................................... 17

*Rasul v. Myers,*
   512 F.3d 644 (D.C. Cir. 2008) .................................................................................... 19

*Roark v. United States,*
   2013 WL 1071778 (D. Or. Mar. 12, 2013) ................................................................. 3

*Simmons v. District of Columbia,*
   750 F. Supp. 2d 43 (D.D.C. 2011) .............................................................................. 5

*Simon v. E. Ky. Welfare Rts. Org.,*
   426 U.S. 26 (1976)....................................................................................................... 16

*Smith v. Nixon,*
   606 F.2d 1183 (D.C. Cir. 1979) ................................................................................... 4

*Sparshott v. Feld Ent., Inc.,*
   311 F.3d 425 (D.C. Cir. 2002) ..................................................................................... 3

*Sprint Commc'ns Co., L.P. v. FCC,*
   76 F.3d 1221 (D.C. Cir. 1998) ............................................................................. 3, 4, 5

*Tapley v. Collins,*
   211 F.3d 1210 (11th Cir. 2000) .................................................................................. 19

*Toolasprashad v. Bureau of Prisons,*
   286 F.3d 576 (D.C. Cir. 2002) ................................................................................... 13

*White v. Pauly,*
   137 S. Ct. 548 (2017).................................................................................................. 19

*Ziglar v. Abbasi,*
   137 S. Ct. 1843 (2017).................................................................................................. 6

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Statutes**

18 U.S.C. § 2520 .................................................................................................... 11

18 U.S.C. § 2707 .................................................................................................... 11

50 U.S.C. § 1801 .................................................................................................... 11

50 U.S.C. § 1805 .................................................................................................... 12

50 U.S.C. § 1809 ................................................................................ 8, 12, 14, 20

**Constitutional Provisions**

U.S. Const. amend. IV ............................................................................................ 7

**Other Authorities**

Ellen Nakashima et al., *FBI Obtained FISA Warrant to Monitor Trump Advisor
    Carter Page*, Wash. Post (Apr. 11, 2017), https://wapo.st/2pr7kpE
    [https://perma.cc/X76V-CJRH] ................................................................... 3, 5

## INTRODUCTION

Plaintiff publicly proclaimed himself the victim of wrongful government surveillance in April 2017 after learning that the FBI and DOJ were investigating his ties to Russian intelligence officers.[1]  The claims he filed against FBI Agent Stephen Somma more than three years later are neither timely nor meritorious.

Plaintiffs' claims accrued when he learned of the surveillance, not when he learned its particulars, as plaintiff's opposition ("Opp.") now argues.  Plaintiff's knowledge of the surveillance triggered the one-year statute of limitations that applies to his claims—but even under the three-year limitations period plaintiff prefers, his claims are untimely.

Plaintiff also cannot articulate any plausible claim against Agent Somma for his role in applying for FISA warrants to investigate whether plaintiff was acting as an agent of a foreign power.  To begin, plaintiff cannot assert this challenge through a *Bivens* claim: plaintiff proposes to extend *Bivens* for the first time to the FISA context, where surveillance was conducted pursuant to warrants and FISA provides its own remedial structure.  The Supreme Court authority plaintiff himself cites forecloses a new application of *Bivens* under these circumstances.

Plaintiff's efforts to bring claims against Agent Somma under FISA also fail.  Plaintiff does not plausibly allege that Agent Somma intended to engage in unauthorized surveillance, as the statute requires.  In his opposition, plaintiff offers conclusory accusations of Agent Somma's supposed bad faith, but the allegations in plaintiff's complaint depict nothing of the sort, instead alleging *at best* that Agent Somma made mistakes in the investigation.  Under settled D.C. Circuit law, mistakes do not establish illegal intent.  Moreover, plaintiff does not dispute that he has not alleged *any* conduct by Agent Somma relating to two of plaintiff's four FISA claims, which alone

---

[1] This reply memorandum uses the same conventions and abbreviations defined in Agent Somma's opening memorandum ("Mot.").

requires dismissing those claims.  And a statutory safe harbor for investigative officers' acts would apply to all of Agent Somma's conduct even if plaintiff had plausibly alleged it did not comport with FISA in the first place.

Plaintiffs' claims against Agent Somma also cannot proceed because qualified immunity precludes them.  Plaintiff's *Bivens* claim is foreclosed because no law clearly establishes the requirements for FISA warrant applications; plaintiff therefore cannot show that any reasonable officer would find the warrant applications obviously inadequate.  As for plaintiff's FISA claims, plaintiff concedes (as he must) that the applicable law is not clearly established, and so he argues that there is no qualified immunity here at all because the privilege is displaced by FISA.  But as the Supreme Court recently stressed, only clear statutory language can displace common law privileges such as qualified immunity.  Plaintiff has identified no such language here.

Because plaintiff's claims against Agent Somma are untimely brought, inadequately alleged, and barred by qualified immunity, the Court should dismiss them with prejudice.

## **ARGUMENT**[2]

### I.    **ALL OF PLAINTIFF'S CLAIMS AGAINST AGENT SOMMA ARE UNTIMELY.**

A court should grant a motion to dismiss when the pleaded facts show the plaintiff's claim is time barred.  *See, e.g.*, *Kursar v. TSA*, 751 F. Supp. 2d 154, 166 (D.D.C. 2010).  Here, the complaint conclusively establishes that plaintiff's claims against Agent Somma accrued more than three years ago, rendering all of plaintiff's claims untimely.  Mot. 10-14.  Plaintiff does not contest, and thus concedes, the pleaded facts underlying Agent Somma's limitations defense—namely, "that plaintiff learned of the surveillance, believed it to be improper, and knew of Agent Somma's

---

[2] Agent Somma joins and incorporates by reference the arguments set forth in the other individual defendants' reply memoranda that apply to him as well.

role in it more than three years ago." *Id.* at 10.  Plaintiff simply incorrectly argues that these facts do not show that his claims accrued outside the applicable limitations period.  *See* Opp. 64-67.[3]

Under federal law, "a cause of action accrues when the injured party discovers—or in the exercise of due diligence should have discovered—that it has been injured."  *Sprint Commc'ns Co., L.P. v. FCC*, 76 F.3d 1221, 1228 (D.C. Cir. 1998).  A cause of action arising from an allegedly unlawful search (such as the surveillance plaintiff alleges here) accrues when the plaintiff has notice of the search.  *See Sparshott v. Feld Ent., Inc.*, 311 F.3d 425, 429 (D.C. Cir. 2002) (statutory claim arising out of allegedly unlawful wiretap accrued no later than when plaintiff "received outside warnings of … wiretapping"); *Roark v. United States*, 2013 WL 1071778, at *3 (D. Or. Mar. 12, 2013) (*Bivens* claims arising out of "search and seizure, or the prior illegal surveillance upon which the warrant for that search was allegedly based, accrued" on the date of the search).

The complaint leaves no doubt that plaintiff was fully aware of the surveillance he alleges more than three years before filing suit.  As discussed in Agent Somma's motion, Mot. 12-14, an April 2017 *Washington Post* article incorporated by reference in the complaint quotes plaintiff: "This confirms all of my suspicions about unjustified, politically motivated government surveillance."  *See* Ellen Nakashima et al., *FBI Obtained FISA Warrant to Monitor Trump Advisor Carter Page*, Wash. Post (Apr. 11, 2017), https://wapo.st/2pr7kpE [https://perma.cc/X76V-CJRH], *incorporated by reference in* AC ¶ 221.  Plaintiff does not dispute that he made these statements and that the complaint incorporates the article by reference.  From the face of the

---

[3] Plaintiff contends that a three-year limitations period applies, but he borrows it from the wrong local law, D.C.'s residual statute of limitations for unenumerated torts.  *See* Opp. 65.  Plaintiff's claims most closely resemble libel or invasion of privacy, so a one-year limitations period applies. *See* Mot. 10-12.  Even if the three-year period applied, however, plaintiff's claims against Agent Somma would still be untimely, as explained in the text.

complaint, then, undisputed facts show that no later than April 11, 2017, plaintiff knew about the surveillance he alleges and believed it was wrongful.  His claims are therefore time barred.

Plaintiff's only response fails.  Plaintiff contends that his claims did not accrue until he knew the *details* of the wrongdoing he alleges—not "until December 2019[] at the earliest when he obtained information that revealed both the material misrepresentations or omissions in the FISA warrant applications and which individuals made them or caused them to be made."  Opp. 67.  Plaintiff is mistaken.  The injury plaintiff alleges here is surveillance, so the statute of limitations on his claims began to run when he learned of the surveillance, *see* Mot. 10-14—*not* when he learned of "the facts underlying the FISA warrants" that authorized it, Opp. 66.

"Accrual does not wait until the injured party has access to or constructive knowledge of all the facts required to support its claim"; rather, "[o]nce the prospective plaintiff is on notice that it might have a claim, it is required to make a diligent inquiry into the facts and circumstances that would support that claim."  *Sprint*, 76 F.3d at 1228.  Plaintiff's own cases confirm that a claim accrues upon a plaintiff's discovery of her injury, not the details of the defendants' underlying conduct.  In *Smith v. Nixon*, 606 F.2d 1183 (D.C. Cir. 1979), for example, the D.C. Circuit reversed the district court's grant of summary judgment to the defendants under the statute of limitations because disputed issues of fact remained as to whether the defendants "foreclosed the [plaintiffs] from learning of the wiretap."  *Id.* at 1191.  The dispositive question was when the plaintiffs could "through the exercise of due diligence have discovered the *existence of the wiretap*"—the fact that they were under surveillance, not the circumstances surrounding it.  *Id.* at 1190 (emphasis added).  The court in *Berman v. Crook*, 293 F. Supp. 3d 48 (D.D.C. 2018), likewise held that the plaintiff's knowledge that a search had occurred triggered the limitations period.  *See id.* at 56.  The court *rejected* the plaintiff's argument that his claims did not accrue until he had full knowledge of the

circumstances that purportedly made the search unlawful; rather, his claims accrued no later than when he became aware of the search and believed it to be improper.  *See id.* ("Mr. Berman was aware of the search in 2000 and believed at the time that the affidavit contained false allegations. Thus, his claims … must be dismissed as time barred.").[4]  Plaintiff here undisputedly knew by April 2017 that he was under surveillance, and believed it to be improper.[5]

Plaintiff also does not allege that he took any steps to try to vindicate his rights until the purported basis for his claims presented itself in the OIG report.  That is fatal to plaintiff's arguments, whatever his actual knowledge in April 2017.  "A claim accrues when the plaintiff has inquiry notice, not when the plaintiff has easy access to all the information necessary to support a viable claim."  *Sprint*, 76 F.3d at 1229-30; *see also Edokobi v. U.S. Gen. Servs. Admin.*, 2018 WL 4639102, at *4 (D. Md. Sept. 27, 2018) ("Thus, even though Edokobi did not necessarily know that he could prove the improprieties with the search warrant, where he was aware of the search and, from the outset, claimed that the search was unjustified, his causes of action relating to the unlawful search accrued when he received notice of the search.").  Plaintiff gestures toward the secrecy of the FISA process, but that secrecy undisputedly did not prevent plaintiff from having

---

[4] Plaintiff also cites *Annappareddy v. Lating*, 2019 WL 12094026 (D. Md. Oct. 18, 2019), *rev'd in part on other grounds*, 996 F.3d 120 (4th Cir. 2021), but in that case the defendants had allegedly illegally "suppressed information" sought by the plaintiff that would have revealed a Fourth Amendment violation.  *Id.* at *18.  Plaintiff offers no analogous allegations here.

[5] Plaintiff's argument that his claims did not accrue until he learned the specific identities of the defendants, *see* Opp. 67, also fails because he *had* the information needed to plead his claims.  By April 2017, plaintiff was aware at the very least of the involvement of the institutional defendants. *See* Nakashima et al., *supra* ("[Plaintiff] compared surveillance of him to the eavesdropping that the FBI and Justice Department conducted against civil rights leader Martin Luther King Jr."). Plaintiff could have filed a complaint against those agencies and "unknown John Doe defendants" to be identified through discovery—as he *in fact did*.  *Simmons v. District of Columbia*, 750 F. Supp. 2d 43, 45 (D.D.C. 2011).  And plaintiff cannot argue that he did not discover Agent Somma's involvement by April 2017 in any event because the complaint itself alleges that plaintiff met with Agent Somma, a known FBI agent, "during a series of meetings in March 2017."  AC ¶ 32.

inquiry notice of his claims; plaintiff long ago not only discussed his alleged injury in the *Washington Post* but also sent the government a letter attacking the investigation on the same grounds he raises now. *See* AC ¶¶ 15, 81. The OIG report at most offered plaintiff additional details about claims that had already accrued and that are now time barred by any measure. The Court should dismiss the claims against Agent Somma accordingly.

## II. A *BIVENS* CAUSE OF ACTION IS UNAVAILABLE HERE.

Plaintiff cannot sustain a *Bivens* claim both because doing so would impermissibly extend *Bivens* into a new context and because plaintiff has an adequate alternative remedy available (one the complaint itself invokes). *See* Mot. 14. Plaintiff's opposition fails to correct either deficiency.

*First*, plaintiff contends that this case does not present a new *Bivens* context, Opp. 58, but only by defining the "context"—search and seizure—so generally as to be meaningless. Supreme Court precedent forecloses plaintiff's broad definition—the Court itself has rejected attempts to apply *Bivens* in novel *search-and-seizure* contexts. *See Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (finding new context where plaintiff asserted Fourth Amendment claim for unreasonable seizure); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1865 (2017) ("[T]he new-context inquiry is easily satisfied."). A case involves a new context if it is factually or legally "different in a meaningful way from previous *Bivens* cases." *Abbasi*, 137 S. Ct. at 1859. The meaningful differences here include not only the specific "constitutional right at issue" but also "the statutory or other legal mandate under which the officer was operating"; "the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted"; and "the risk of disruptive intrusion by the Judiciary into the functioning of other branches." *Id.* at 1860.

Plaintiff argues that this case is like *Bivens* itself, but that case involved a *warrantless* physical search and seizure, as agents of the Federal Bureau of Narcotics entered the plaintiff's home, handcuffed (and later strip-searched) him, and searched the residence for drugs. *See Bivens*

*v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 389 (1971). Here, by contrast, FISA warrants authorized the surveillance plaintiff complains about. Thus, while *Bivens* involved "the Fourth Amendment right to be free of unreasonable *warrantless* searches and seizures," this case "implicates a distinct Fourth Amendment guarantee—that 'no Warrants shall issue, but upon probable cause.'" *Annappareddy v. Pascale*, 996 F.3d 120, 135 (4th Cir. 2021) (quoting U.S. Const. amend. IV). The narcotics agents in *Bivens* were not operating under FISA's legal mandate, as Agent Somma was—and judicial guidance on warrantless searches is far more extensive than judicial guidance on FISA warrants. Finally, as the Supreme Court recently reiterated, the "foreign intelligence surveillance" at issue here "presents special national-security concerns." *FBI v. Fazaga*, 142 S. Ct. 1051, 1057 (2022). National security "is the prerogative of the Congress and President," and the risk of disruptive judicial intrusion "provides reason to hesitate before extending *Bivens* into this field." *Mesa*, 140 S. Ct. at 746-47 (quotation marks omitted). Each of these meaningful differences is independently fatal to plaintiff's argument.[6]

*Second*, plaintiff denies that FISA offers an "alternative remedy" for his alleged harm that "foreclose[s] a *Bivens* cause of action here," Mot. 14, but his response falls flat. *Bivens* rests on the premise that a court may recognize an implied cause of action for damages in the rare case where a plaintiff would have no other way to seek redress for a violation of her rights. *See Bivens*, 403 U.S. at 410 (Harlan, J., concurring in the judgment) (recognizing an implied cause of action for damages where no other remedy is plausible and "it is damages or nothing"); *see also id.* at 396 (majority opinion) (noting absence of express cause of action). Thus, as this Court has held,

---

[6] Though plaintiff tries to elide these differences, he fails to cite a single case extending *Bivens* to similar circumstances. Plaintiff's cited authorities, like *Bivens* itself, involved physical searches and seizures in an investigation of domestic criminal offenses—and no statutory mandate like FISA. *See Meeks v. Larsen*, 611 F. App'x 277, 279-80 (6th Cir. 2015); *Berman* 293 F. Supp. 3d at 51.

"the presence of a comprehensive statutory scheme governing" the official conduct at issue—especially a statutory scheme that "provide[s] a remedy for alleged[]" violations of a plaintiff's rights—"counsels strongly against expanding the implied *Bivens* cause of action." *LKQ Corp. v. United States*, 2019 WL 3304708, at *11 (D.D.C. July 23, 2019).  When a plaintiff can seek redress via an express statutory cause of action that Congress created, there is no need for the judiciary to invent another cause of action; doing so would frustrate Congress's intent.  *See id.*  Plaintiff here can (and does) seek relief for the harms he alleges via FISA's civil cause of action, so he cannot also bring a claim under an implied *Bivens* cause of action.

Plaintiff responds that the doctrine of election of remedies allows him to bring claims under both FISA and *Bivens*, *see* Opp. 60, but the argument misses the point: plaintiff's *Bivens* claim fails in its own right, not because plaintiff is also asserting FISA claims.  The fact that plaintiff has claims under FISA to assert simply reinforces that there is no place for *Bivens* here.  *See, e.g.*, *LKQ*, 2019 WL 3304708, at *11 (dismissing claim that would impermissibly extend *Bivens* because of available alternative remedy).  Because Congress afforded plaintiff an express cause of action in FISA's comprehensive statutory scheme, his *Bivens* claim should be dismissed.

## III.    PLAINTIFF FAILS TO ALLEGE A PLAUSIBLE FISA CLAIM AGAINST AGENT SOMMA.

FISA requires plaintiff to plausibly allege that Agent Somma engaged in electronic surveillance *intending* to violate the statute, and the complaint here fails to do so.  *See* Mot. 14-19.[7]  Plaintiff's opposition does not salvage his FISA claims.  Plaintiff tries to ratchet down the required showing of intent, but he cannot rewrite the statute, and his conclusory allegations of

---

[7] FISA also proscribes the intentional use or disclosure of information obtained by unauthorized electronic surveillance, but the complaint does not assert any factual allegations that would support a "use or disclose" claim against Agent Somma.  *See* Mot. 17 n.5.  Plaintiff concedes this point by failing to address it, and Agent Somma accordingly focuses on plaintiff's "engages in electronic surveillance" claim under 50 U.S.C. § 1809(a)(1).

improper intent fall short.   Agent Somma's alleged conduct falls within FISA's safe harbor provision in any event—and plaintiff does not deny that the complaint fails to allege *any* facts to support two of his four FISA claims against Agent Somma.  All four claims should be dismissed accordingly.

> ### A.      FISA's Civil Cause of Action Does Not Apply to Unintentional Violations of the Statute or Aiding and Abetting Violations of the Statute.

Plaintiff tries to water down the statutory requirement of intent in two ways: first, by eliding the intent requirement altogether; and second, by rewriting the civil cause of action to apply to not only a defendant whose own conduct violates the statute, but also a defendant who aids and abets other individuals' violations of the statute.  Both efforts fail.

*First*, FISA's text and legislative history, as well as case law on analogous statutes, confirm that FISA's civil cause of action requires a showing of unlawful intent.  *See* Mot. 15-16.  Plaintiff does not grapple with any of this authority but tries to jettison the intent requirement completely. Plaintiff contends that "[s]urveillance pursuant to an invalid warrant is necessarily unauthorized by FISA and gives rise to civil liability under § 1810."  Opp. 15 (citing *Fazaga v. FBI*, 965 F.3d 1015, 1050 (9th Cir. 2020), *rev'd on other grounds*, 142 S. Ct. 1051).  Not so.  An investigator who conducted surveillance pursuant to a warrant he *believed* to be valid would not *intentionally* engage in surveillance not authorized by the statute.  There is simply no support for plaintiff's strict liability reading of the statute.  Plaintiff offers only *Fazaga*, but that case addressed allegations of *warrantless* surveillance.  *See id.* at 1031 ("If, as the complaint alleges, no warrant was in fact obtained, such electronic surveillance would constitute a violation of § 1809.").  Surveillance conducted *without* any warrant may imply a defendant's intent to engage in unauthorized surveillance, but to show that a defendant improperly engaged in surveillance *with* a

warrant the plaintiff would have to allege facts showing that the defendant intended to obtain an invalid warrant that would not lawfully authorize the surveillance.  The complaint offers none.

*Second*, plaintiff tries to stretch FISA's civil cause of action far beyond its proper scope, contending without support that § 1810 applies to not only primary conduct that violates the statute but also conduct that aids and abets violations of the statute.  *See* Opp. 16-18.  According to plaintiff, because § 1809 is a criminal offense, and 18 U.S.C. § 2 extends criminal liability to those who aid and abet others' crimes, FISA's civil cause of action must extend civil liability to aiding and abetting as well.  As a result, plaintiff contends that he need only show a defendant's "recklessness" to recover, even if the defendant "is unaware that he is assisting illegal conduct," *id.* at 17—and that such a showing of recklessness allows him to hold *any* defendant liable for *every* defendant's conduct, *id.* at 18.

This argument stretches the text of the statute beyond recognition.  "[W]hen Congress creates a private cause of action, aiding and abetting liability is not included in that cause of action unless Congress speaks to it explicitly."  *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 277 (D.C. Cir. 2018).  Congress did not do so in FISA.  Neither § 1810 nor § 1809 mentions aiding and abetting or any other form of secondary liability, confirming that Congress did not intend to impose civil liability for aiding and abetting violations of the statute, much less under a lesser showing than is necessary for primary liability.  *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994) ("If … Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text.  But it did not."); *see also id.* at 182-83 (collecting examples of civil statutes with express aiding and abetting provisions).  This omission from both the criminal offense and civil cause of action is especially significant because Congress *did* contemplate aiding and abetting in a different provision of FISA,

which defines an "[a]gent of a foreign power" to include one who "knowingly aids or abets any person in the conduct of" certain activities on behalf of a foreign power.  50 U.S.C. § 1801(b). "Congress knew how to impose aiding and abetting liability when it chose to do so," *Central Bank*, 511 U.S. at 176—and it chose to allow surveillance of individuals who aid or abet conduct on behalf of a foreign power, but it chose not to impose liability for aiding and abetting violations of FISA.

Plaintiff does not identify any statute that operates as he imagines FISA does.  The statutes most analogous to FISA, the Stored Communications Act (SCA), 18 U.S.C. § 2707, and Wiretap Act, 18 U.S.C. § 2520, similarly create civil causes of action for violations of their criminal provisions, and neither civil cause of action currently extends to aiding and abetting.  *See, e.g.*, *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 26-27 (D.D.C. 2012) (SCA); *In re Toys R Us, Inc., Privacy Litig.*, 2001 WL 34517252, at *7 (N.D. Cal. Oct. 9, 2001) (Wiretap Act).  There is no statutory indication that Congress intended to impose aiding and abetting liability under FISA, and plaintiff cannot create such liability by cutting and pasting "the general *criminal* aiding and abetting statute" into this civil context, where "Congress has not enacted a general *civil* aiding and abetting statute."  *Owens*, 897 F.3d at 277-78 (quotation marks and citations omitted).  Though "it is true that an aider and abettor of a criminal violation of any provision of" the statute may be held criminally liable under "18 U.S.C. § 2, it does not follow that a private civil aiding and abetting cause of action must also exist."  *Central Bank*, 511 U.S. at 190.

**B.    Plaintiff Has Not Plausibly Alleged That Agent Somma Intended to Engage in Surveillance Not Authorized by FISA (All Counts).**

The complaint, stripped of its legal conclusions, does not allege facts that would give rise to a plausible inference that Agent Somma intended to engage in unauthorized surveillance.  *See* Mot. 16-17.  Plaintiff's opposition—shorn of its own legal conclusions and mischaracterizations

of the complaint (not to mention the incorporated record)—only confirms the complaint's fatal deficiencies.

Plaintiff seems to claim that Agent Somma intended to engage in surveillance not authorized by FISA by applying for warrants without sufficient probable cause as the statute requires.[8]  *See* 50 U.S.C. § 1805(a)(2) (requiring the application to establish "probable cause to believe that … the target of the electronic surveillance is a foreign power or an agent of a foreign power"); Opp. 46 (claiming that Agent Somma's "desired purpose" was for "the FISC [to] ma[k]e findings of probable cause even though in reality there was none").  But the complaint faults Agent Somma for alleged missteps in his efforts *to develop* probable cause—it does not allege that Agent Somma intentionally proceeded without it.  Plaintiff alleges, for example, that when Agent Somma "first proposed surveillance on" plaintiff, "the FBI's OGC told [Agent] Somma that he needed more to establish probable cause for a FISA warrant"—and that Agent Somma proceeded to seek additional evidence, as OGC instructed.  AC ¶¶ 202-03.  Plaintiff now contends these allegations somehow show unlawful intent, *see* Opp. 42, but they show just the opposite: when told that he had not yet established probable cause, rather than conduct surveillance anyway, Agent Somma went back to work on developing a sufficient showing.  Plaintiff takes issue with aspects of the warrant application process, but going through that lengthy process before engaging in any surveillance reflects Agent Somma's intent to obtain lawful authorization—not the unlawful intent FISA requires to sustain a civil claim.

---

[8] Plaintiff also alleges that Agent Somma violated "FBI procedures," Opp. 43, and "FISC Rules," *id.* at 45, but these allegations would not support plaintiff's FISA claims.  FISA forbids "electronic surveillance under color of law except as authorized by *this chapter*," 50 U.S.C. § 1809(a) (emphasis added), and FBI policies and FISC rules are external to FISA's statutory chapter.  *Cf. Kelley v. FBI*, 67 F. Supp. 3d 240, 262 n.11 (D.D.C. 2014) (doubting that an "agency's breach of its internal policies would give rise to a private right of action under the Privacy Act").

Nor do the missteps plaintiff alleges Agent Somma made in the course of seeking lawful authorization to conduct surveillance give rise to a plausible inference that Agent Somma never intended to obtain valid authorization at all.  *See* Mot. 16-17.  Although plaintiff's *opposition* baldly accuses Agent Somma of "repeated outright lying," Opp. 45 n.7 (citing no examples), the *complaint* does not allege that Agent Somma intentionally made a single false statement.  Rather, the complaint alleges omissions and statements purportedly lacking details or context, none of which can be construed to suggest that Agent Somma flagrantly intended to violate the law.  *See* AC ¶¶ 201-10.  Plaintiff alleges, for example, that Agent Somma "did not accurately describe the nature and extent of the information the FBI received" about plaintiff's relationship with the CIA. *Id.* ¶ 205.  Plaintiff draws this allegation from the OIG report, which reveals that Agent Somma in fact shared his recollection of that information with a DOJ attorney and offered to "get the language [the FBI] was provided" with if the attorney wanted the exact quote.  OIG at 157.  To give another example, the complaint alleges that Agent Somma "answered only the second part" of a DOJ attorney's two-part question.  AC ¶ 207.  But failing to fully answer a question immediately is hardly indicative of illicit intent, particularly when (as the complaint itself alleges), a complete response was soon obtained.  *Id.*

These alleged omissions fall far short of "a violation so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful."  *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 584 (D.C. Cir. 2002) (addressing analogous Privacy Act).  Plaintiff does not dispute that his admitted ties to Russian intelligence officers—which plaintiff maintained even after learning that these officers were indicted for their attempts to recruit him as an asset—raised legitimate suspicions about his conduct.  *See* Mot. 3-4, 17; OIG at 61-62.  That valid basis for suspicion makes it especially implausible that Agent Somma secretly harbored an illegitimate

purpose and went through the process of obtaining lawful authorization to conduct surveillance while privately intending to conduct unauthorized surveillance. Plaintiff stresses that the *outcome* of the investigation did not reveal him to be a Russian agent, but "that does not mean that it was obviously improper to conduct the investigation in the first place, or that defendants should have known that their conduct was illegal." *Kelley v. FBI*, 67 F. Supp. 3d 240, 262 (D.D.C. 2014). The OIG report specifically found no evidence of intentional misconduct by Agent Somma, OIG at 377, and the allegations in the complaint do not permit a plausible inference to the contrary. Plaintiff's FISA claims against Agent Somma thus must be dismissed.[9]

### C.   FISA's Statutory Safe Harbor Applies to All of Agent Somma's Alleged Conduct.

Plaintiff's FISA claims also fail because the statute's safe harbor provision—which applies when "the defendant was a law enforcement or investigative officer engaged in the course of his official duties and the electronic surveillance was authorized by and conducted pursuant to a search warrant or court order of a court of competent jurisdiction," 50 U.S.C. § 1809(b)—shields Agent Somma from liability for all the conduct plaintiff alleges. *See* Mot. 18-19. The allegations in the complaint undisputedly reflect that Agent Somma was a law enforcement or investigative officer; that any electronic surveillance he conducted was in the course of his official duties and authorized by a FISA warrant; and that the FISC is a court of competent jurisdiction, *see* Opp. 53-54, establishing that the defense is satisfied.

Plaintiff in response argues that the statutory defense requires a showing of subjective good faith and insists that the individual defendants did not act in good faith. *See id.* This argument doubly fails. First, the requirement plaintiff grafts onto the defense lacks any support in the

---

[9] As Agent Somma argued in his motion, even if *Bivens* could be extended here, plaintiff's *Bivens* claim against Agent Somma would have to be dismissed for the same reasons as his FISA claims. *See* Mot. 17 n.6.

statutory text.  Plaintiff appeals to legislative history, but the statute speaks for itself.  Second, even if the defense required a distinct showing of subjective good faith, the complaint does not plausibly allege that Agent Somma acted in anything other than good faith, as discussed above.  *See supra* at 11-14.  Plaintiff contends that "the entire tenor of the [complaint] is that none of the Individual Defendants acted in good faith," Opp. 54, but the "tenor" plaintiff invokes cannot compensate for the lack of well-pleaded factual allegations in the complaint that would give rise to a plausible inference of bad faith.  Should any of plaintiff's FISA claims survive the threshold hurdles plaintiff faces, the Court should dismiss them as barred by this statutory defense, as it evinces Congress's intent to allow investigative officers like Agent Somma to perform their official duties without fear of litigation.  *Cf. John K. Maciver Inst. for Pub. Pol'y, Inc. v. Schmitz*, 885 F.3d 1004, 1014 (7th Cir. 2018) (affirming dismissal based on analogous defense under SCA).

### D.   Plaintiff Concedes That Counts 3 and 4 Against Agent Somma Must Be Dismissed.

The OIG report makes clear that Agent Somma did not surveil plaintiff pursuant to the third and fourth warrants, and indeed was no longer working on the investigation at all by the time the third warrant issued on April 7, 2017.  *See* Mot. 19.  The complaint does not allege otherwise and plaintiff's opposition does not argue otherwise.  *See* Opp. 45-46 (not discussing any conduct by Agent Somma after March 2017).  Plaintiff thus has conceded that Counts 3 and 4, which allege that the defendants surveilled him pursuant to the third and fourth warrants, must be dismissed as to Agent Somma.  *See Felter v. Salazar*, 679 F. Supp. 2d 1, 3 n.2 (D.D.C. 2010) (concluding that where "the plaintiffs' opposition did not address the defendants' motion to dismiss as to Counts 1 through 7," "the defendants' motion is deemed conceded as to Counts 1 through 7").

## IV.   PLAINTIFF HAS NOT PLAUSIBLY ALLEGED THAT HIS INJURIES ARE FAIRLY TRACEABLE TO AGENT SOMMA'S CONDUCT.

A plaintiff seeking redress for an injury in federal court must show "a causal connection between the injury and the conduct complained of," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)—that is, the plaintiff must show that the alleged "injury … fairly can be traced to the challenged action of the defendant," *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41 (1976). Plaintiff here fails to allege that the reputational injuries he claims are fairly traceable to Agent Somma's challenged conduct because those alleged harms stem from reports on the investigation *leading up to* the alleged surveillance rather than from the surveillance itself—and the alleged surveillance is the only conduct within the scope of FISA.  *See* Mot. 19-21.

Plaintiff responds that the complaint "specifically alleges under the heading of each Count that [plaintiff] suffered damages as a result of that legal claim and specifies the type of damages is seeking [sic] for that specific cause of action."  Opp. 60-61.  The trouble for plaintiff is that the complaint does not describe any damages suffered "*as a result*" of the conduct he challenges as unlawful.  *See Gill v. Dep't of Justice*, 2016 WL 3982450, at *8 (D.D.C. July 22, 2016) (finding that the plaintiff had "adequately claim[ed] a concrete injury—the loss of his security clearance—[but] fail[ed] to allege facts that link the loss of the security clearance to the alleged violation of FISA's notice requirement").  Plaintiff does not deny that the reputational injuries he claims here— that he "was falsely portrayed as a traitor to his country" and so on, AC ¶ 262—allegedly stem from disclosures about the investigation *leading up to* the surveillance, such as the existence of the warrants.  *See* Mot. 20.  But his FISA claims are necessarily confined to the surveillance itself, and because plaintiff does not allege that the injury he claims results from *that* conduct, he has failed to allege the requisite causal connection.  *Cf. Kelley*, 67 F. Supp. 3d at 262 n.12 (stressing that "the Privacy Act is not implicated whenever an individual suffers an undesirable consequence").

Plaintiff also protests that "how exactly [his] specific damages relate to which of his claims and the detailed delineation of damage amounts and kinds are issues to be explored in discovery, not resolved on motions to dismiss."  Opp. 60.  But this response is similarly beside the point. Plaintiff need not detail amounts of damages to survive a motion to dismiss, but he must plausibly allege an injury fairly traceable to the allegedly unlawful conduct rather than some other conduct or the acts of third parties.  Plaintiff here has failed to do so, especially as to Agent Somma; indeed, plaintiff's opposition does not address Agent Somma's argument that the causal chain between his own acts and plaintiff's asserted injuries is too attenuated and speculative to support plaintiff's claims.  *See* Mot. 21.  His claims against Agent Somma fail accordingly.

## V.    AGENT SOMMA IS ENTITLED TO QUALIFIED IMMUNITY ON ALL OF PLAINTIFF'S CLAIMS.

Qualified immunity shields Agent Somma against all of plaintiff's claims because the complaint does not allege that Agent Somma violated any statutory or constitutional rights that were clearly established at the time of the alleged violation.  *See* Mot. 22-24.  Plaintiff contends that the individual defendants' entitlement to qualified immunity cannot be determined until the facts are litigated, *see* Opp. 63-64, but plaintiff has it backwards.  "Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'"  *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  The Supreme Court has "made clear that the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery" and "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible state in litigation."  *Id.* at 231-32 (quotation marks and alteration omitted).  Plaintiff bears the "burden to show that the particular right in question—narrowly described to fit the factual pattern confronting the officers—was clearly established," and a complaint that fails to plausibly

allege a violation of a clearly established right should be dismissed. *Dukore v. District of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015) (citation omitted); *see also, e.g.*, *Jones v. Horne*, 634 F.3d 588 (D.C. Cir. 2011) (affirming dismissal of a complaint that failed to do so). Just so here.

Qualified immunity defeats plaintiff's *Bivens* claim, and plaintiff's only response misstates the applicable standard. *See* Opp. 61. When an officer conducts a search pursuant to a warrant, qualified immunity shields the officer from civil liability unless "it is *obvious* that *no reasonably competent officer* would have concluded that a warrant should issue." *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (emphases added); *accord Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). Qualified immunity attaches, in other words, whenever there is any room for debate over whether the warrant application establishes probable cause. *See Malley*, 475 U.S. at 341 ("[I]f officers of reasonable competence could disagree on this issue, immunity should be recognized."); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (to overcome qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate"). As discussed, the complaint does not allege that Agent Somma made any false statements; it alleges only that Agent Somma omitted information plaintiff deems important. No law clearly establishes the extent of disclosures required in a FISA warrant application, and it is far from obvious that the warrant applications here were inadequate—particularly the applications for the two warrants issued while Agent Somma worked on the investigation, which no one (other than plaintiff) has ever deemed insufficient.

As for the FISA claims, plaintiff contends that the statutory defense precludes the individual defendants from invoking qualified immunity, citing *Berry v. Funk*, 146 F.3d 1003, 1013 (D.C. Cir. 1998). *See* Opp. 62. But *Berry* held that qualified immunity is not an available

defense to claims under a different statute, Title III.[10]   The D.C. Circuit has since cited *Berry* for the proposition that qualified immunity *is* an available defense to claims under other statutes.  *See Rasul v. Myers*, 512 F.3d 644, 668 n.20 (D.C. Cir. 2008) ("Both the Supreme Court and our court have recognized qualified immunity is available to counter not only constitutional claims but also certain statutory claims." (citing *Berry*, 146 F.3d at 1003)), *vacated and remanded on other grounds*, 555 U.S. 1083 (2008).

Neither the D.C. Circuit nor any other court has ever extended *Berry* beyond Title III, and this Court should not be the first to do so.  Since *Berry*, the Supreme Court has repeatedly cautioned against narrowing the availability of qualified immunity.  *See, e.g.*, *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (collecting cases); *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (explaining that the Court frequently issues "opinions reversing federal courts in qualified immunity cases" because "qualified immunity is important to society as a whole" and its benefits are "effectively lost if a case is erroneously permitted to go to trial" (quotation marks omitted)); *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 611 n.3 (2015) (explaining that "the Court often corrects lower courts when they wrongly subject individual officers to liability," and collecting cases).  *Berry* especially should not be extended beyond Title III to FISA; as the Supreme Court recently stressed, the two statutes address very different concerns.  *See Fazaga*, 142 S. Ct. at 1057 ("Electronic surveillance for ordinary criminal law enforcement purposes is

---

[10] While *Berry* binds this Court as to Title III, Agent Somma respectfully submits that the case was wrongly decided and raises this objection to preserve it for appellate review.  *Cf., e.g.*, *Chao v. Amalgamated Transit Union*, 141 F. Supp. 2d 13, 19 (D.D.C. 2001).  As other courts have agreed, the statutory affirmative defense in Title III does not displace qualified immunity.  *See Tapley v. Collins*, 211 F.3d 1210, 1216 (11th Cir. 2000); *Blake v. Wright*, 179 F.3d 1003, 1012 (6th Cir. 1999); *John K. Maciver Inst. for Pub. Pol'y, Inc. v. Schmitz*, 885 F.3d 1004, 1015 (7th Cir. 2018); *see also Gilliam v. Dep't of Justice*, 128 F. Supp. 3d 134, 144-46 (D.D.C. 2015) (concluding that qualified immunity defeated claims under Title III).

governed by Title III … , but foreign intelligence surveillance presents special national-security concerns, and Congress therefore enacted FISA to provide special procedures for use when the Government wishes to conduct such surveillance.").  And while plaintiff argues that "the common law defense of qualified immunity does not apply" here in light of the express statutory defense, Opp. 62, the Court also recently reiterated that such a common law "privilege should not be held to have been abrogated or limited unless Congress has at least used clear statutory language," *Fazaga*, 142 S. Ct. at 1060-61.  "The absence of any statutory reference to" qualified immunity in FISA "is strong evidence that the availability of the privilege was not altered in any way."  *Id.* at 1060.

Even if *Berry*'s reasoning applied beyond the context of Title III, the reasoning would not support the conclusion that FISA repudiated qualified immunity. The D.C. Circuit in *Berry* reasoned that Congress in Title III had "provide[d] for a good faith defense that is more limited than the qualified immunity good faith doctrine the judiciary has devised," so Congress had effectively "occupied the field."  *Berry*, 146 F.3d at 1013 (quotation marks omitted).  FISA, in contrast, does not require a subjective showing.  50 U.S.C. § 1809(b); *see supra* at 14-15.  Because Congress did not narrow the defense to FISA claims as it did in Title III it did not evince an intent to displace qualified immunity under FISA.  Thus, even if plaintiff had stated any claims against Agent Somma, the face of the complaint shows that qualified immunity would defeat them all. *See* Mot. 22-24.

## CONCLUSION

All claims against Stephen Somma should be dismissed with prejudice.

Dated: April 1, 2022                              Respectfully submitted,


                                                 /s/ *Meaghan VerGow*
                                                 Meaghan VerGow (D.C. Bar #977165)
                                                 Andrew R. Hellman (D.C. Bar #1723887)
                                                 O'MELVENY & MYERS LLP
                                                 1625 Eye Street, N.W.
                                                 Washington, D.C. 20006-4001
                                                 Telephone: (202) 383-5300
                                                 Fax: (202) 383-5414
                                                 mvergow@omm.com
                                                 andrewhellman@omm.com

                                                 *Attorneys for Stephen Somma*