**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CARTER W. PAGE, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-3460 (DLF) |
| | ) | |
| JAMES COMEY, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**DEFENDANT LISA PAGE'S REPLY IN SUPPORT OF HER**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION ..................................................................................................... 1

ARGUMENT ........................................................................................................... 2

I.     The Complaint Fails to Allege Any Conduct by Ms. Page That Is Actionable Under FISA, and Plaintiff's Efforts to Rewrite the Complaint Do Not Change This Analysis ................................................................................................................ 2

        A.     The Civil FISA Provision Does Not Provide for Secondary Liability .................. 3

        B.     Plaintiff Alleges No Conduct by Ms. Page That Would Violate FISA ................. 6

II.    Plaintiff Fails to Plausibly Plead a *Bivens* Claim Against Ms. Page ............................... 12

        A.     Plaintiff Misunderstands the Basic Requirements of the *Bivens* Cause of Action ...... 12

        B.     Plaintiff Concedes That Secondary Liability Is Unavailable Under *Bivens*, and the Complaint Does Not Allege That Ms. Page Personally Participated in a Violation of Plaintiff's Fourth Amendment Rights ....................................... 13

III.   Plaintiff's Claims Against Ms. Page Are Time-Barred ................................................... 14

IV.   Ms. Page Is Entitled to Qualified Immunity on Both the *Bivens* and FISA Claims ......... 16

CONCLUSION ......................................................................................................... 17

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Service*,
  297 F. Supp. 2d 165 (D.D.C. 2003) ...................................................................10

*\*Attkisson v. Holder*,
  No. 17-cv-364, 2017 WL 5013230 (E.D. Va. Nov. 1, 2017) .............................6, 12

*Berry v. Funk*,
  146 F.3d 1003 (D.C. Cir. 1998) ...................................................................16, 17

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
  403 U.S. 388 (1971) .............................................................................................12

*\*Boim v. Holy Land Found. for Relief & Dev.*,
  549 F.3d 685 (7th Cir. 2008) ...............................................................................3

*Bozgoz v. Blackwell*, Civil Action No. 19-2790 (RDM),
  2021 WL 4243402 (D.D.C. Sept. 17, 2021) .........................................................7

*\*Broidy Cap. Mgmt. LLC v. Muzin*,
  No. 19-CV-0150 (DLF), 2020 WL 1536350 (D.D.C. Mar. 31, 2020) .............3, 4, 6

*\*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994).........................................................................................3, 5

*Greenpeace, Inc. v. Dow Chem. Co.*,
  97 A.3d 1053 (D.C. 2014) ..................................................................................15

*Hernandez v. Mesa*,
  140 S. Ct. 735 (2020)..........................................................................................13

*Jones v. Bock*,
  549 U.S. 199 (2007)............................................................................................15

*Kareem v. Haspel*,
  986 F.3d 859 (D.C. Cir. 2021) ............................................................................10

*LKQ Corp. v. United States*,
  No. 18-cv-1562 (DLF), 2019 WL 3304708 (D.D.C. July 23, 2019)................12, 13

*Owens v. BNP Paribas S.A.*,
  235 F. Supp. 3d 85 (D.D.C. 2017) ........................................................................3

Page(s)

**Cases cont.**

*Rasul v. Myers,*
    512 F.3d 644 (D.C. Cir. 2008) ................................................................16

*Rothstein v. UBS AG,*
    708 F.3d 82 (2d Cir. 2013) ......................................................................3

*Smith-Haynie v. Dist. of Columbia,*
    155 F.3d 575 (D.C. Cir. 1998) ................................................................15

*Sprint Commc'ns Co., L.P. v. F.C.C.,*
    76 F.3d 1221 (D.C. Cir. 1996) ................................................................15

*Tooley v. Napolitano,*
    586 F.3d 1006 (D.C. Cir. 2009) ..............................................................10

*Wultz v. Islamic Republic of Iran,*
    755 F. Supp. 2d 1 (D.D.C. 2010) .............................................................3

*\*Ziglar v. Abbasi,*
    137 S. Ct. 1843 (2017) ......................................................................12, 13

**Statutes**

18 U.S.C. § 2 ..............................................................................................5

18 U.S.C. § 2701(a) ....................................................................................6

18 U.S.C. § 2707(a) ....................................................................................6

50 U.S.C. § 1801(b) ....................................................................................5

\*50 U.S.C. § 1809(a) ...........................................................................3, 4, 7

50 U.S.C. § 1809(b) ..................................................................................17

\*50 U.S.C. § 1810 ................................................................................3, 4, 7

D.C. Code 12-301(a)(4) ............................................................................15

**Other Authorities**

Wright & Miller, Federal Practice and Procedure § 1357, at n.69 (3d ed.) .....................................15

iii

## INTRODUCTION

As Defendant Lisa Page explained in her motion to dismiss the Second Amended Complaint (ECF No. 83), the claims against her should be dismissed on multiple grounds: (1) the complaint fails to state a claim under the civil provision of the Foreign Intelligence Surveillance Act ("FISA"), the Fourth Amendment, or *Bivens*; (2) the *Bivens* cause of action is not available in this context; (3) the claims are time-barred; and (4) even if the claims had been adequately pled, Ms. Page is entitled to qualified immunity.  Plaintiff cannot explain away these fatal defects, and his efforts to recharacterize the complaint only underscore the lack of any factual or legal basis for the claims.

First, and most importantly, the complaint fails to allege *any* actionable conduct by Ms. Page.  The limited conduct that Plaintiff attributes to her—serving as an FBI lawyer, attending several meetings related to the FBI's investigation into the possibility of Russian interference in the 2016 election, and exchanging a handful of e-mails and text messages with colleagues—does not come close to violating the civil provision of FISA or the Fourth Amendment, or to giving rise to an implied cause of action under *Bivens*.  Forced to confront the complete lack of well-pleaded allegations as to Ms. Page (or any other individual defendant), Plaintiff seeks to shoehorn his FISA claims into a theory of aiding-and-abetting liability, but this maneuver fails at the outset: FISA's private right of action does not provide for secondary liability.  Regardless, the complaint alleges no conduct by Ms. Page—primary, secondary, or otherwise—that could possibly incur liability under the civil FISA provision.

Second, as Ms. Page explained in her motion, the *Bivens* cause of action does not apply in this context, and the Court should decline to extend it into a space that is already regulated by

multiple federal statutes.  Plaintiff fundamentally misunderstands this issue and therefore does not even address it, focusing instead on election-of-remedies principles that have no bearing here.

Third, Plaintiff offers nothing to contradict Ms. Page's position that the claims are barred under the District of Columbia's one-year statute of limitations for libel, slander, and invasion of privacy, the state-law causes of action most analogous to the claims against her.  It is well-established that, even where a discovery rule applies, a claim accrues when the plaintiff first learns of the injury—*not* when he obtains the last piece of evidence he needs to prove his claim.  The Court should reject Plaintiff's position that the clock did not begin to run until DOJ's Office of the Inspector General published its report related to the Crossfire Hurricane investigation in December 2019.  The complaint itself alleges that "the Washington Post broke the story about the FISA Warrants targeting [Plaintiff]" in April 2017, SAC ¶ 221, yet Plaintiff waited to file his complaint until November 2020, more than three years later.

Finally, even if the claims against Ms. Page were sufficiently pleaded, she would be entitled to qualified immunity on both the FISA and *Bivens* claims.  Plaintiff has not alleged that Ms. Page engaged in any violation of his rights, let alone rights that were clearly established either then or now.  And Plaintiff offers no response to Ms. Page's argument that, as an FBI attorney, she is entitled to rely on the doctrine of qualified immunity notwithstanding FISA's statutory safe harbor for "law enforcement or investigative officer[s]."

## ARGUMENT

### I.     The Complaint Fails to Allege Any Conduct by Ms. Page That Is Actionable Under FISA, and Plaintiff's Efforts to Rewrite the Complaint Do Not Change This Analysis

As Ms. Page explained in her motion, the Complaint is devoid of any allegation that she "engage[d] in electronic surveillance" or "disclose[d] or use[d] information" that she knew or had reason to know was obtained through electronic surveillance that was not properly authorized.

50 U.S.C. § 1809(a); 50 U.S.C. § 1810.  Plaintiff makes only a cursory attempt to justify the FISA claims under a direct-liability standard, pointing to conclusory allegations that Ms. Page "facilitate[d]" the issuance of the initial FISA warrant and engaged in "media leak[s]."  Opp. 34, 37 (ECF No. 98).  At many points throughout the opposition, Plaintiff's characterization of the purported allegations departs from the language of the complaint; often, he does not even bother to cite to a complaint paragraph or other source.  *See, e.g.*, Opp. 33-38.

Instead, Plaintiff pivots to a new theory: Ms. Page is subject to *secondary* liability under FISA because she aided and abetted someone else in violating the statute.  *See* Opp. 16-18.  But FISA's civil cause of action does not provide for secondary liability, and, in any case, the complaint does not identify any primary violation that Ms. Page supposedly aided, let alone explain how she did so.

### A.  The Civil FISA Provision Does Not Provide for Secondary Liability

Following *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), courts in this circuit (and many others) have recognized that "statutory silence on the subject of secondary liability means there is none."  *See, e.g.*, *Broidy Cap. Mgmt. LLC v. Muzin*, No. 19-cv-0150 (DLF), 2020 WL 1536350, at *11 (D.D.C. Mar. 31, 2020), *aff'd*, 12 F.4th 789 (D.C. Cir. 2021); *Owens v. BNP Paribas S.A.*, 235 F. Supp. 3d 85, 93 (D.D.C. 2017); *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008) (en banc); *Rothstein v. UBS AG*, 708 F.3d 82, 98 (2d Cir. 2013).  Because "Congress has not enacted a general civil aiding and abetting statute" and "instead has taken a statute-by-statute approach," *Cent. Bank*, 511 U.S. at 182, absent express statutory language "there is no general presumption that the plaintiff may also sue aiders and abettors" in the civil context, *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 55 (D.D.C. 2010) (quoting *Cent. Bank*, 511 U.S. at 182).

Here, because the civil FISA provision is silent on the subject of aiding-and-abetting liability, the presumption is that "there is none." *Broidy Cap. Mgmt.*, 2020 WL 1536350, at *11 (quoting *Owens*, 235 F. Supp. 3d at 93). The text and structure of the statute contain no indication that Congress meant to expand liability beyond those who engage in primary violations of FISA, and "[p]olicy considerations cannot override" text and structure "except to the extent that they may help to show that adherence to the text and structure would lead to a result so bizarre that Congress could not have intended it." *Id.* (quoting *Cent. Bank*, 511 U.S. at 188). Of course, limiting FISA liability to primary violators would hardly produce a result "so bizarre" that Congress could not have intended it.

FISA's civil cause of action, which appears in Section 1810, provides as follows:

> An aggrieved person, other than a foreign power or an agent of a foreign power, as defined in section 1801(a) or (b)(1)(A) of this title, respectively, *who has been subjected to an electronic surveillance or about whom information obtained by electronic surveillance of such person has been disclosed or used in violation of section 1809* of this title shall have a cause of action *against any person who committed such violation* and shall be entitled to recover . . . .

50 U.S.C. § 1810 (emphases added).

Section 1809, in turn, provides for *criminal* liability under FISA where a person "intentionally . . . engages in [unauthorized] electronic surveillance under color of law" or "discloses or uses information obtained under color of law by electronic surveillance, knowing or having reason to know that the information was obtained through [unauthorized] electronic surveillance." 50 U.S.C. § 1809(a).

Thus, FISA provides for a civil cause of action in two situations—when a person "engages" in unauthorized surveillance and when a person "discloses or uses" information that was knowingly obtained from unauthorized surveillance—but only against the person who *committed* the violation of Section 1809. 50 U.S.C. §§ 1809(a), 1810. Neither Section 1809 nor Section 1810

4

mentions aiding-and-abetting liability, and the language of Section 1810 arguably forecloses it. As FISA itself shows, Congress knows how to reference secondary liability when it wants to do so, *see, e.g.*, 50 U.S.C. § 1801(b) (defining "[a]gent of a foreign power" to include a person who "knowingly aids or abets any person in the conduct of such activities or knowingly conspires with any person to engage in such activities"), and it could easily have expanded the civil cause of action to encompass "any person who committed, knowingly aided and abetted, or knowingly conspired in" a violation of Section 1809.  Instead, it limited such actions to claims against persons who "committed" the violation.

Tellingly, Plaintiff does not even mention *Central Bank*, the controlling case on the availability of secondary liability in the federal civil context.  Rather, he contends that because federal *criminal* law gives rise to aiding-and-abetting liability under 18 U.S.C. § 2, and because FISA's civil provision references parts of FISA's criminal provision, Congress must have intended to incorporate 18 U.S.C. § 2 into FISA's civil provision.  *See* Opp. 16-18.  But the *Central Bank* Court expressly rejected the argument that civil liability statutes incorporate background principles of criminal aiding-and-abetting liability.  *Cent. Bank*, 511 U.S. at 180-81.  Although 18 U.S.C. § 2 dates back to 1909, the Court declined to import those long-established principles into the civil context.  *See id.* at 181.  Rather, it was dispositive that Congress has not enacted an analogous statute providing for "general civil aiding and abetting" liability and "instead has taken a statute-by-statute approach."  *Id.* at 182.

Consistent with these principles, we are aware of no case—nor does plaintiff cite one—in which a court has recognized secondary liability under FISA's civil provision.  To the contrary, courts addressing the scope of liability under Section 1810 have emphasized that it covers situations where the defendant *personally* engages in the prohibited conduct, without mentioning

the possibility of aiding-and-abetting liability or otherwise qualifying these descriptions. *See, e.g.*, *Attkisson v. Holder*, No. 1:17-cv-364 (LMB/JFA), 2017 WL 5013230, at *12 (E.D. Va. Nov. 1, 2017) (dismissing FISA claims where the complaint failed to allege that the defendants "personally engaged in the alleged surveillance").

Decisions rejecting secondary liability under similar statutes are also instructive. The Stored Communications Act ("SCA"), like FISA, creates civil liability for conduct violating the statute's criminal provisions.[1] In *Broidy Capital Management*, however, this Court declined to recognize secondary liability under the SCA, reasoning that the statute's plain language "shows that Congress had one category of offenders in mind—*i.e.*, those who directly access, or exceed their authority to access, a facility through which an electronic communication service is provided." *Broidy Cap. Mgmt.*, 2020 WL 1536350, at *11 (quoting *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 26 (D.D.C. 2012)). In short, Plaintiff's proposed approach cannot be reconciled with *Central Bank* and its progeny, which flatly reject the idea that criminal aiding-and-abetting principles should be imported wholesale into civil causes of action.

### B.  Plaintiff Alleges No Conduct by Ms. Page That Would Violate FISA

Even if FISA's civil provision could somehow be construed to provide for aiding-and-abetting liability, the Complaint fails to allege any conduct by Ms. Page that would constitute a violation of the statute, whether under a theory of primary or secondary liability.

---

[1] The SCA provides for criminal penalties for anyone who "obtains, alters, or prevents authorized access to a wire or electronic communication" by "intentionally access[ing] without authorization" or "exceed[ing] an authorization to access" certain facilities. 18 U.S.C. § 2701(a). The SCA also contains a civil cause of action, which provides that an "aggrieved" person may sue any person who "engaged" in a "violation of this chapter" with a knowing or intentional state of mind. 18 U.S.C. § 2707(a).

As Ms. Page explained in her motion, the vast majority of allegations that mention her describe no action on her part at all, let alone conduct that could give rise to liability under FISA. These allegations simply identify her as an FBI lawyer, SAC ¶¶ 30, 195; allege that she attended several briefings related to the Russia investigation, *id.* ¶¶ 94, 106; and allege that she exchanged a handful of e-mails and text messages with colleagues, *id.* ¶¶ 7, 70, 71, 91, 147, 158, 168, 197, 220, 222, 223.  The remaining allegations are "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that are entitled to no deference.  *See Bozgoz v. Blackwell*, Civil Action No. 19-2790 (RDM), 2021 WL 4243402, at *6 (D.D.C. Sept. 17, 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see* SAC ¶ 195 (alleging, without any factual predicate, that Ms. Page "facilitated obtaining the initial FISA warrant for [Plaintiff] in the face of doubts voiced by the DOJ and others"); *id.* ¶ 196 (alleging, without any factual predicate, that Ms. Page "facilitated the leaks of information about the FBI's FISA warrants"); *id.* ¶¶ 225-26 (alleging, without any factual predicate and "[o]n information and belief," that Ms. Page and others participated in media leaks). This alleged conduct simply does not constitute "engag[ing] in electronic surveillance" or "disclos[ing] or us[ing] information" obtained through electronic surveillance, as required to state a violation of FISA.  50 U.S.C. §§ 1809(a), 1810.

The complaint is also devoid of any allegation that Ms. Page aided and abetted such a violation.  The extent of the complaint's aiding and abetting allegations is that "the individual Defendants and others, known and unknown to Dr. Page, engaged in [violations of FISA] and aided and abetted one another in doing so."  SAC ¶¶ 260, 264, 268, 272.  This boilerplate language falls far short of providing Ms. Page with adequate notice of the claims against her.  Who was the primary actor Ms. Page supposedly assisted?  What was the primary violation?  Did it relate to a particular FISA warrant?  Multiple FISA warrants?  The disclosure of information to the media?

What did she do to aid in the alleged violation?  The complaint provides none of these details.

Rather, if the conclusory allegations at Paragraphs 260, 264, 268, and 272 are to be believed, *every*

individual defendant—from the Director of the FBI to attorneys to analysts—aided and abetted

*each* of the others, whether or not their roles had anything to do with each other.  Even if FISA

provided for aiding-and-abetting liability, these generalized allegations simply do not state a claim.

Although Plaintiff devotes significant space in his opposition to cataloguing the claims

against Ms. Page, *see* Opp. 33-38, he falls far short of pleading either a primary-liability or

secondary-liability violation, as explained further below.

**Description of Ms. Page's role.**  Plaintiff states in his opposition that Ms. Page "at all

times relevant to the SAC was involved in the FBI's preparation of the FISA warrant applications

as part of the investigation known as Crossfire Hurricane." Opp. 33.  But the complaint paragraphs

he cites for that proposition (SAC ¶¶ 30, 106, 147, and 158) say nothing about such involvement.

Plaintiff also quotes several text messages allegedly exchanged between Ms. Page and Mr. Strzok,

*id.* ¶¶ 7, 70, 71, none of which mention Plaintiff or the relevant FISA applications.

**First FISA application.**  Regarding the first FISA application, Plaintiff asserts without

any citation that Ms. Page "facilitated the issuance of the First FISA warrant for electronic

surveillance of Dr. Page despite knowing there were serious issues with the application." Opp. 34.

Plaintiff points to allegations that Ms. Page received several text messages from Mr. Strzok, SAC

¶¶ 147, 158, 168; accompanied Mr. McCabe to a briefing by Associate Attorney General Bruce

Ohr, *id.* ¶ 94; and provided a status update to Mr. McCabe after asking DOJ attorney Stuart Evans

"where things stood," *id.* ¶ 91.  Opp. 34-35.  None of these allegations suggest that Ms. Page

"facilitated the issuance of the First FISA warrant," Opp. 34, and the complaint does not allege

that she participated in the preparation or submission of the first FISA application, or in subsequent surveillance, in any way.

**Second FISA application.**  Regarding the second FISA application, the only allegations relating to Ms. Page appear in Paragraph 106, which alleges that "DOJ official Bruce Ohr met with Lisa Page, Peter Strzok, Joe Pientka, and other FBI officials to discuss 'Steele's background and reliability as a source and to identify his source network.'"  SAC ¶ 106.  Plaintiff relies on this allegation to argue that "[t]his information from Bruce Ohr plainly advised Defendant Lisa Page and the others that Steele was not a reliable source for truthful, unbiased information to use in the FISA warrants."  Opp. 36.  Yet as with the first FISA application, the complaint does not allege that Ms. Page participated in the preparation or submission of the second FISA application, or in subsequent surveillance, in any way.

**Third and fourth FISA applications.**  As shown in Ms. Page's opening brief, Mot. 4-5, the complaint does not contain any allegations regarding Ms. Page in connection with the third and fourth FISA applications.[2]  Plaintiff's opposition is silent on this point, and he therefore concedes it.

**Allegations relating to media leaks.**  In support of the claim that Ms. Page "disclose[d] or use[d] information" obtained through illegal surveillance, Plaintiff's only non-conclusory allegations are that Ms. Page received several text messages from Peter Strzok, *see* Opp. 37 (citing SAC ¶¶ 220, 222, 223), and that the Washington Post and New York Times published articles related to Plaintiff in April 2017, *see* Opp. 37 (citing SAC ¶¶ 221, 224).  The complaint does not allege that Ms. Page took any action in connection with these text messages or news articles.

---

[2] References to "Mot." are to ECF No. 83-1, Ms. Page's memorandum in support of her motion to dismiss the Second Amended Complaint.

Rather, Plaintiff's claim that Ms. Page participated in "media leaks" hinges exclusively on two conclusory assertions—both alleged "[o]n information and belief"—that Ms. Page "collaborated to disclose protected information regarding [Plaintiff] to the media" and, together with known and unknown defendants, "leaked information and records . . . to media outlets." *See* Opp. 37-38 (citing SAC ¶¶ 225, 226).[3]

      **Plaintiff's mischaracterization of the complaint.**  None of these allegations comes close to showing that Ms. Page unlawfully "engage[d] in electronic surveillance," "disclose[d] or use[d] information" obtained through such surveillance, or aided and abetted a primary violation by another actor.  In the absence of any well-pleaded allegations, Plaintiff—who has already amended his complaint twice—seeks to constructively amend a third time by manufacturing new allegations in his opposition brief, in stark violation of the principle that "a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Service*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003).  The below examples show just how far the opposition has strayed from any factual support.

- Plaintiff argues, without citing to any complaint paragraph, that "Defendant Lisa Page was at the crossroads of the information stream learning of the problems with the first warrant application."  Opp. 34-35.  This "crossroads of the information stream" appears to consist of a text message that Ms. Page received on September 26, 2016 and a meeting that Ms. Page attended on October 18, 2016.  *See* Opp. 34.

- Plaintiff argues, without citing to any complaint paragraph, that "[w]hether or not Defendant Lisa Page was the individual who officially requested the First FISA warrant, she clearly participated, facilitated, and 'pushed' for it."  Opp. 36.  Setting

---

[3] Ms. Page argued in her motion that "[w]hile 'on information and belief' pleading is not categorically prohibited, such allegations must 'be accompanied by a statement of the facts upon which the allegations are based.'"  Mot. 9-10 (citing *Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021); *Tooley v. Napolitano*, 586 F.3d 1006, 1007-08, 1010 (D.C. Cir. 2009)).  Plaintiff does not address this argument.

aside conclusory allegations and impermissible group pleading, the complaint contains no such allegations.[4]

- Plaintiff argues, without citing to any complaint paragraph, that "[i]n numerous instances, [Ms. Page] operated as an intermediary, coordinating efforts of various parties united in the common goal of obtaining the First FISA warrant to spy on [Plaintiff]." Opp. 36. The complaint does not identify a single instance in which Ms. Page operated in such a role.

- Plaintiff argues, without citing to any complaint paragraph, that Ms. Page acted "not as a low-level functionary, but rather as an attorney for the FBI, giving guidance to the overall effort, participating in decision level meetings, and making arguments about the strength of the effort." Opp. 36. While the complaint alleges that Ms. Page attended meetings and exchanged text messages and e-mails with colleagues, it does not allege that she provided any guidance, participated in any decisions, or made any arguments in connection with any effort.

- Plaintiff argues, without citing to any complaint paragraph, that Ms. Page was "an active participant, personally motivated to fully engage in the unlawful effort, possessing the training to understand the FISA requirements, and having the position from which to object, yet permitting the misleading information to be presented to the FISC anyway." Opp. 36-37. The complaint contains no allegations whatsoever regarding Ms. Page's personal motivations, training history at the FBI, or authority within the Department. Nor does it allege that she had any role in deciding what information should be presented to the FISC.

- Plaintiffs argues, without any factual support, that Ms. Page "had already engaged in a media leak strategy" and was "the established leaker on the team." Opp. 37-38. He sources these claims to Paragraphs 225 and 226 of the complaint, *see* Opp. 38, which simply allege "[o]n information and belief" that Ms. Page participated in media leaks.

As these examples show, Plaintiff's claims against Ms. Page lack any basis in fact or law,

and Plaintiff's attempt to constructively amend the complaint only highlight those deficiencies.

This Court should dismiss all four FISA counts for failure to state a claim.

---

[4] Plaintiff fails entirely to address Ms. Page's argument that he may not fill the gaps in his claims with indiscriminate group pleading. *See* Mot. 14. To the contrary, by pivoting to a theory that Ms. Page and other individual defendants each aided and abetted some undefined primary actor, he ensures that group pleading is indispensable to his case. *See* Opp. 18 ("They are therefore all liable *qua* principals . . . regardless of whether each individually personally conducted any specific portion or the entirety of the illegal conduct.").

II.    **Plaintiff Fails to Plausibly Plead a *Bivens* Claim Against Ms. Page**

A.  **Plaintiff Misunderstands the Basic Requirements of the *Bivens* Cause of Action**

As explained in Ms. Page's opening brief, courts will not extend *Bivens* to new contexts where special factors counsel hesitation.  *See* Mot. 15-16.  Plaintiff appears to fundamentally misunderstand both the "new context" and "special factors" components of the *Bivens* analysis, and as a result falls totally short in dealing with them.  *See* Opp. 58-61.

First, Plaintiff insists that his *Bivens* claims do not arise in a new context because, like the plaintiff in *Bivens*, he brings claims that can be characterized as "Fourth Amendment" or "search and seizure" claims.  *See* Opp. 58.  But the case law is clear that courts do not conduct the "new context" analysis at so high a level of generality.  Rather, "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new," *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859 (2017), and "even 'small' differences with prior *Bivens* cases can be meaningful such that the 'new context' analysis 'is easily satisfied,'" *LKQ Corp. v. United States*, No. 18-cv-1562 (DLF), 2019 WL 3304708, at *11 (D.D.C. July 23, 2019) (quoting *Abbasi*, 137 S. Ct. at 1865).  The claims that Plaintiff asks the Court to recognize here—Fourth Amendment claims for injuries caused by false and misleading FISA applications, *see* SAC ¶¶ 283-89—differ meaningfully from the search-and-seizure claims the Supreme Court recognized in *Bivens*.[5]

Plaintiff points to this Court's decision in *LKQ Corp. v. United States* for the proposition that "*Bivens* remains settled 'in the search-and-seizure context in which it arose.'"  Opp. 58

---

[5] *Compare Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389, 397 (1971) (recognizing an implied cause of action under the Constitution where plaintiff alleged that federal narcotics agents entered his apartment, searched it, and arrested him without a warrant or probable cause), *with Attkisson v. Holder*, No. 1:17-cv-364 (LMB/JFA), 2017 WL 5013230, at *6 (E.D. Va. Nov. 1, 2017) (holding that plaintiffs' claims presented a new context because, among other things, they "involve[d] a significantly different factual setting (electronic surveillance) . . . and a connection to national security that was not present in any of the previous [*Bivens*] cases").

(quoting *LKQ Corp.*, 2019 WL 3304708, at *10).  This statement, while true, is simply another way of saying that a court considering a *Bivens* claim must begin with the "new context" analysis: does the claim fall within a "settled" context that courts have previously recognized, or does it present a new context?  In *LKQ*, this Court concluded that the context was new and went on to dismiss the claims.  *LKQ Corp.*, 2019 WL 3304708, at *11.  The same result is appropriate here.

Plaintiff's second major misunderstanding relates to the "special factors" analysis.  Courts will decline to extend *Bivens* to a new context if "any special factors . . . counsel hesitation." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (brackets and quotation marks omitted); *see also Abbasi*, 137 S. Ct. at 1857.  "[S]eparation-of-powers principles" are "central" to the special-factors analysis.  *Abbasi*, 137 S. Ct. at 1857.  As Ms. Page explained in her motion, "special factors" counsel hesitation here because Congress has enacted multiple, detailed statutory schemes— including the Wiretap Act, the Stored Communications Act, the Patriot Act, and FISA itself—that comprehensively govern the use of electronic surveillance in circumstances like those present here. *See* Mot. 16.  Plaintiff appears to misconceive the "special factors" issue as an "election of remedies" matter, believing that he can prosecute *Bivens* claims alongside other claims through trial and need only elect between remedies at the end to avoid duplicative recovery.  *See* Opp. 60- 61.  That is not the law.  If special factors counsel hesitation, as they do here, *Bivens* claims must be dismissed at the outset.

### B.  Plaintiff Concedes That Secondary Liability Is Unavailable Under *Bivens*, and the Complaint Does Not Allege That Ms. Page Personally Participated in a Violation of Plaintiff's Fourth Amendment Rights

Plaintiff acknowledges that *Bivens* requires him to "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Opp. 55 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).  Under this standard, Plaintiff must plausibly

plead, among other things, that Ms. Page *personally participated* in the alleged violations of his Fourth Amendment rights by "ma[king] or caus[ing] to be made false and misleading statements in the applications for the FISA Warrants against [Plaintiff]." SAC ¶ 285 (*Bivens* claim). He has not done so. While the complaint alleges that Ms. Page received information related to certain FISA applications, it does not even attempt to allege that she authored or contributed in any way to the content of those applications.

None of Plaintiff's arguments are to the contrary. *See* Opp. 55-58. Plaintiff suggests that liability might be available when the defendant is a supervisor or when information "passed through a chain of . . . police officers" before it was incorporated into a warrant application, Opp. 55-56, but the complaint includes no factual allegations that Ms. Page supervised any relevant conduct or that information incorporated into any FISA application passed through her. Plaintiff also raises the prospect of joint and several liability, Opp. 57, but that is a theory of damages recovery, not liability.

Because Plaintiff has failed to plead that Ms. Page, through her own actions, violated his Fourth Amendment rights, the *Bivens* claim must be dismissed.

## III.   Plaintiff's Claims Against Ms. Page Are Time-Barred

Even if Plaintiff's claims against Ms. Page were sufficiently pleaded, they must be dismissed as time-barred because the one-year statute of limitations has run.

As Ms. Page explained in her motion, the "gist" of Plaintiff's claims against Ms. Page is that she facilitated the exchange of information related to the initial FISA warrant and engaged in improper disclosures to the media, with the last-in-time alleged conduct occurring in April 2017. *See* Mot. 15 (citing SAC ¶¶ 195-96, 220-26). Thus, the most closely analogous state law claims are libel, slander, and invasion of privacy, all of which have a one-year statute of limitations under

14

D.C. law.  *See* D.C. Code 12-301(a)(4) (libel and slander); *Greenpeace, Inc. v. Dow Chem. Co.*, 97 A.3d 1053, 1061-62 (D.C. 2014) (invasion of privacy).  Ms. Page argued that, because the latest alleged conduct attributed to her occurred in April 2017—yet Plaintiff did not file suit until November 27, 2020, far more than one year after those claims accrued—each of Plaintiff's five claims against her is untimely and must be dismissed.  *See* Mot. 15.

In response, Plaintiff argues that he "had no knowledge of the[ ] key facts, and no reasonable opportunity to discover them . . . until they were first made public by the release of the Horowitz Report in December 2019."  Opp. 66.  But it is well-established that, even where a discovery rule applies, a claim accrues when the plaintiff first learns of the injury—not when the plaintiff obtains the last piece of evidence he needs to prove his case.  *See Sprint Commc'ns Co., L.P. v. F.C.C.*, 76 F.3d 1221, 1228 (D.C. Cir. 1996) ("Accrual does not wait until the injured party has access to or constructive knowledge of all the facts required to support its claim.").  Based on Plaintiff's own allegations, the claims against Ms. Page accrued, at the latest, when the Washington Post "broke the story" regarding the FBI's surveillance of Plaintiff in April 2017.  *See* SAC ¶ 221.

Moreover, Plaintiff is wrong that the Court cannot address these issues at the motion to dismiss stage.  *See* Opp. 64-65.  To the contrary, "if the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."  *Jones v. Bock*, 549 U.S. 199, 215 (2007); *see* Wright & Miller, Federal Practice and Procedure § 1357, at n.69 (3d ed.) (collecting hundreds of "illustrative cases" dismissed on Rule 12(b)(6) grounds because "the face of the pleading" showed that "the governing statute of limitations has run"); *Smith-Haynie v. Dist. of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998) (statute-of-limitations defense "may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint").  Here, the relevant

facts are clear from the face of the complaint, and all five claims against Ms. Page should be dismissed.

## IV.    Ms. Page Is Entitled to Qualified Immunity on Both the *Bivens* and FISA Claims

As Ms. Page argued in her motion, she is entitled to qualified immunity because the rights Plaintiff asserts were not clearly established, either then or now.  *See* Mot. 17-18.  The Court should grant Ms. Page qualified immunity on both the *Bivens* and FISA claims, for the same reason: the rights Plaintiff asserts *still* have not been recognized by any court, and no reasonable official in Ms. Page's position in 2016 and 2017 would have been on notice that she was participating in the potential violation of Plaintiff's rights.

Regarding the *Bivens* claim, Plaintiff relies on cases involving routine warrant applications by police officers, arguing that qualified immunity is unavailable when an officer makes material misrepresentations or omissions in the warrant application, or when a reasonably well-trained officer would have known the warrant failed to demonstrate probable cause.  *See* Opp. 61.  These cases simply do not speak to the question at issue: whether a government employee may be personally liable under the Fourth Amendment for electronic surveillance authorized by the FISC. *See* Mot. 18.  This is particularly true for Ms. Page, who is not accused or preparing or submitting any warrant applications.

Regarding the FISA claim, Ms. Page is likewise entitled to qualified immunity.  *See Rasul v. Myers*, 512 F.3d 644, 668 n.20 (D.C. Cir. 2008) ("Both the Supreme Court and our court have recognized qualified immunity is available to counter not only constitutional claims but also certain statutory claims." (citing *Berry v. Funk*, 146 F.3d 1003, 1014 (D.C. Cir. 1998))), *vacated and remanded on other grounds*, 555 U.S. 1083 (2008).  Plaintiff argues that a *different* defendant, Mr. Clinesmith, cannot invoke qualified immunity because that defense supposedly is displaced

by FISA's statutory defense for "law enforcement or investigative officer[s]," 50 U.S.C. § 1809(b). *See* Opp. 62-64. Plaintiff limits that argument to Mr. Clinesmith, however, and does not argue that the statutory defense precludes Ms. Page's argument that she is entitled to qualified immunity.[6] *See* Mot. 17-18 & n.4. Thus, she is entitled to qualified immunity on both sets of claims.

## CONCLUSION

For the reasons explained above, the Court should dismiss all of the claims against Ms. Page with prejudice.

Dated: April 1, 2022

Respectfully submitted,

/s/ Amy Jeffress
Amy Jeffress (D.C. Bar No. 449258)
Robert J. Katerberg (D.C. Bar No. 466325)
Kaitlin Konkel (D.C. Bar No. 1021109)
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
Fax: (202) 942-5999

*Counsel for Defendant Lisa Page*

---

[6] Even if Plaintiff did make such an argument as to Ms. Page, however—and even if this Court were to extend *Berry*'s holding in the Title III context to FISA, which it should not—Plaintiff's position would be unavailing. The complaint repeatedly alleges that Ms. Page was a "lawyer" or "attorney," SAC ¶¶ 30, 195, and it contains no suggestion that she was operating as a "law enforcement or investigative officer" whose eligibility for the safe harbor would preclude qualified immunity.

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on April 1, 2022, I caused a copy of the foregoing to be served via CM/ECF on all counsel of record.

/s/ Amy Jeffress        
Amy Jeffress
