**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CARTER W. PAGE,<br><br>                    Plaintiff,<br><br>         v.<br><br>JAMES B. COMEY, *et al.*,<br><br>                    Defendants. | Case No.: 1:20-cv-03460 (DLF)<br><br><br>ORAL ARGUMENT REQUESTED |

**REPLY IN SUPPORT OF DEFENDANT ANDREW MCCABE'S**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Brigida Benitez (DC Bar No. 446144)
Lisa M. Southerland (DC Bar No. 198412)
**STEPTOE & JOHNSON LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone:     (202) 429-3000
Fax:               (202) 429-3902
bbenitez@steptoe.com
lsoutherland@steptoe.com

*Counsel for Defendant Andrew McCabe in*
*his individual capacity*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.   Plaintiff's Claims Are Time-Barred.......................................................................... 2

II.  Plaintiff Has Failed to State a FISA Claim Against McCabe ................................... 6

    A.   There Is No Aiding and Abetting Liability for Civil FISA Claims ............................6

    B.   The SAC Does Not Plausibly Allege that McCabe Personally or Intentionally
        Violated FISA ...........................................................................................................11

    C.   McCabe Has an Affirmative Defense Under FISA....................................................15

III. Plaintiff Has Failed to State a *Bivens* Claim Against McCabe ........................... 16

    A.   Plaintiff Has Not Plausibly Alleged that McCabe Personally Violated Plaintiff's
        Constitutional Rights.................................................................................................16

    B.   Plaintiff Impermissibly Seeks to Extend *Bivens* to a "New Context" .....................19

IV. Plaintiff's Damages Are Not Fairly Traceable to Any Unlawful Electronic Surveillance.. 20

V.  Qualified Immunity Bars Plaintiff's FISA and *Bivens* Claims as to McCabe.................... 21

CONCLUSION................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011)................................................................22

*\*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................16

*Bame v. Dillard,*
  Civ. Action No. 05-1833 (RMC), 2008 WL 11515525 (D.D.C. Mar. 28, 2008)......................5

*\*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007).................................................................6

*Berman v. Crook,*
  293 F. Supp. 3d 48 (D.D.C. 2018) ...............................................3, 4

*Berry v. Funk,*
  146 F.3d 1003 (D.C. Cir. 1998) ....................................................22

*Boim v. Holy Land Found. for Relief & Dev.,*
  549 F.3d 685 (7th Cir. 2008) .......................................................9

*Broidy Capital Mgmt. LLC v. Muzin,*
  No. 19-cv-0150 (DLF), 2020 WL 1536350 (D.D.C. Mar. 31, 2020), *aff'd,* 12
  F.4th 789 (D.C. Cir. 2021)..........................................................8

*Cauman v. George Wash. Univ.,*
  630 A.2d 1104 (D.C. 1993) .........................................................6

*\*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
  511 U.S. 164 (1994)..........................................................7, 8, 9, 10

*Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz,*
  891 F. Supp. 2d 13 (D.D.C. 2012) .................................................8

*\*District of Columbia v. Wesby,*
  138 S. Ct. 577 (2018)............................................................18, 19

*Fazaga v. FBI,*
  965 F.3d 1015 (9th Cir. 2020) (*en banc*), *rev'd and remanded on other
  grounds,* 142 S. Ct. 1051 (2022).............................................11, 12, 14

*Fletcher v. U.S. Parole Comm'n,*
  550 F. Supp. 2d 30 (D.D.C. 2008) ...............................................17, 18

*Franks v. Delaware,*
  438 U.S. 154 (1978)...........................................................................................13, 15

*Freeman v. DirecTV, Inc.,*
  457 F.3d 1001 (9th Cir. 2006) .......................................................................8

*Halberstam v. Welch,*
  705 F.2d 472 (D.C. Cir. 1983)......................................................................10

*Hampton v. Comey,*
  No. 14-cv-1607 (ABJ), 2016 WL 471277 (D.D.C. Feb. 8, 2016), *aff'd*, No.
  16-5058, 2016 WL 6238558 (D.C. Cir. Sept. 8, 2016) ............................3

*Howard v. SEC,*
  376 F.3d 1136 (D.C. Cir. 2004).....................................................................10

*Hunter v. Bryant,*
  502 U.S. 224 (1991)........................................................................................22

*Illinois v. Gates,*
  462 U.S. 213 (1983)........................................................................................15

*Johnson v. District of Columbia,*
  927 F.3d 539 (D.C. Cir. 2019).................................................................13, 21

*Kirch v. Embarq Mgmt. Co.,*
  702 F.3d 1245 (10th Cir. 2012) .....................................................................8

*Klahr v. District of Columbia,*
  576 A.2d 718 (D.C. 1990) ...............................................................................6

*LKQ Corp. v. United States,*
  No. 18-cv-1562 (DLF), 2019 WL 3304708 (D.D.C. July 23, 2019)......................20

*Loumiet v. United States,*
  948 F.3d 376 (D.C. Cir. 2020)........................................................................16

*Loumiet v. United States,*
  968 F. Supp. 2d 142 (D.D.C. 2013), *partial reconsideration*, 65 F. Supp. 3d
  19 (D.D.C. 2014) ..............................................................................................3

*Miller v. Prince George's County, Md.,*
  475 F.3d 621 (4th Cir. 2007) ....................................................................19, 21

*Noble v. Weinstein,*
  335 F. Supp. 3d 504 (S.D.N.Y. 2018)............................................................9

*Nye & Nissen v. United States,*
    336 U.S. 613 (1949)................................................................................................9

*Owens v. BNP Paribas S.A.,*
    235 F. Supp. 3d 85 (D.D.C. 2017), *aff'd*, 897 F.3d 266 (D.C. Cir. 2018),
    *superseded in nonrelevant part by statute* JASTA § 2(b), *as recognized in*
    *Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 215 (D.C. Cir. 2022 .......................9

*Pa. Ass'n of Edwards Heirs v. Rightenour,*
    235 F.3d 839 (3d Cir. 2000)..................................................................................9

*Rasul v. Myers,*
    512 F.3d 644 (D.C. Cir. 2008), *judgment vacated on other grounds*, 555 U.S.
    1083 (2008)..........................................................................................................22

*Rothstein v. UBS AG,*
    708 F.3d 82 (2d Cir. 2013), *superseded in nonrelevant part by statute*, Justice
    Against Sponsors of Terrorism Act, Pub. L. No. 114-222 § 2(b), 130 Stat. 852,
    853 (2016) (Amendment) .......................................................................................9

*Smith v. Nixon,*
    606 F.2d 1183 (D.C. Cir. 1979)..........................................................................4, 5

*Smith-Haynie v. District of Columbia,*
    155 F.3d 575 (D.C. Cir. 1998).............................................................................6

*United States v. Calisto,*
    838 F.2d 711 (3d Cir. 1988)................................................................................18

*United States v. Heinlein,*
    490 F.2d 725 (D.C. Cir. 1973).............................................................................10

*United States v. North,*
    716 F. Supp. 644 (D.D.C. 1989)..........................................................................10

*United States v. Sampol,*
    636 F.2d 621 (D.C. Cir. 1980).............................................................................10

*United States v. Staten,*
    581 F.2d 878 (D.C. Cir. 1978) ............................................................................10

*Voinche v. Obama,*
    744 F. Supp. 2d 165 (D.D.C. 2010), *aff'd*, 428 F. App'x 2 (D.C. Cir. 2011).........16

*Wesby v. District of Columbia,*
    765 F.3d 13 (D.C. Cir. 2014), *rev'd*, 138 S. Ct. 577 (2018)..................................18

*Ziglar v. Abbassi*ˌ
    137 S. Ct. 1843 (2017) .................................................................................................16

**Statutes**

Securities Exchange Act of 1934. 15 U.S.C. § 78j(b) ("§ 10(b)") .......................................7, 9, 10

Securities Exchange Act of 1934, 15 U.S.C. § 78o(b) ("§ 15(b)") ................................................10

Securities Exchange Act of 1934, 15 U.S.C. § 78u-2(a)(2) ("§ 21B") .........................................10

18 U.S.C. § 2 ................................................................................................................1, 7, 9

Trafficking Victims Protection Act, 18 U.S.C. § 1591 ..................................................................9

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 .......................................9

Anti-Terrorism Act, 18 U.S.C. § 2331 *et seq.* ..........................................................................9

Stored Communications Act and/or the Electronic Communications Privacy Act,
    18 U.S.C. §§ 2510-2712 .........................................................................................8

50 U.S.C. § 1809 ............................................................................................................*passim*

50 U.S.C. § 1810 .................................................................................................6, 8, 9, 11

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................................................3, 6

**Legislative History**

H.R. Rep. No. 95-1283, Pt. I (1978) ...........................................................................9, 11, 15

**Other Authorities**

Ellen Nakashima et al., *FBI obtained FISA warrant to monitor former Trump
    advisor Carter Page*, WASH. POST (Apr. 11, 2017) ..............................................................4, 5

Defendant Andrew McCabe ("McCabe") hereby submits this Reply in support of his Motion to Dismiss, Dkts. 80 through 80-2 ("Motion" or "Mot."),[1] and responsive to Plaintiff's Omnibus Opposition to Individual Defendants' Motions to Dismiss, Dkt. 98 ("Opposition" or "Opp.").

## INTRODUCTION

Plaintiff's Opposition underscores why McCabe's Motion should be granted. Plaintiff simply offers no valid argument to defeat any of the grounds detailed in McCabe's Motion.

As a threshold matter, Plaintiff provides no plausible response to the argument that all of his claims are time-barred. Instead, the Opposition improperly conflates the time Plaintiff knew or had reason to know that he had a cause of action against anyone, which is the applicable standard, with the time Plaintiff knew he had "a cause of action against *any of the Individual Defendants*," which is the standard he invents.[2] *See* Opp. at 66 (emphasis added). Viewed in light of when his claims actually accrued, each and every one of Plaintiff's claims is time-barred and all must be dismissed.

Even if the applicable statutes of limitations did not preclude Plaintiff's claims, they would still fail because Plaintiff's other arguments are similarly without merit:

First, the Opposition improperly seeks to expand aiding and abetting liability in the criminal context under 18 U.S.C. § 2 to civil FISA claims. Congress contemplated no such liability, and thus, aiding and abetting liability does not rescue the Second Amended Complaint,

---

[1] References to McCabe's "Motion" or to "Mot." refer specifically to the Memorandum of Points & Authorities in Support of Defendant Andrew McCabe's Motion to Dismiss the Second Amended Complaint, Dkt. 80-1.

[2] Plaintiff also incorrectly argues that his claims did not accrue until he was aware of the underlying facts necessary to state his claim, but this argument similarly falls short under the correct accrual analysis.

Dkt. 73 ("SAC") from its fatal lack of factual allegations as to McCabe's individual conduct, or remove McCabe from the statute's safe harbor.

Second, the Opposition offers no argument that avoids the principles of well-settled law that all but forecloses the expansion of *Bivens* liability into new contexts, as would be required here for Plaintiff to prevail.  Plaintiff's *Bivens* claim also fails for the separate reason that it is predicated on the same implausible allegations as the FISA claims.

Third, the Opposition does not and cannot remedy the SAC's failure to plausibly allege that McCabe's allegedly improper conduct was the "but for" cause of Plaintiff's claimed injuries. This flaw, too, dooms each of Plaintiff's claims.

Finally, qualified immunity shields McCabe from liability with respect to each of the claims against him for the same reasons set forth in his Motion.  The Opposition does not meaningfully refute this point, and thus, the claims against McCabe must be dismissed.

ARGUMENT[3]

## I.     PLAINTIFF'S CLAIMS ARE TIME-BARRED

Plaintiff's efforts to avoid the statutes of limitations for each of his claims are not persuasive.  The parties agree that the longest possible limitations period is three years.[4]  *See* Mot. at 23-24, 24 n.9; Opp. at 65.  And as Plaintiff necessarily concedes, dismissal of claims

---

[3] For judicial economy, McCabe again joins the Replies in Support of the Motions to Dismiss of co-defendants James B. Comey, Kevin E. Clinesmith, Peter Strzok, Lisa Page, Joe Pientka III, Stephen Somma, and Brian J. Auten, and incorporates by reference all arguments therein that apply to McCabe.

[4] Plaintiff's claims are arguably subject to an even shorter limitations period:  a one-year period to the extent they sound in libel or invasion of privacy, *see* Mot. 24 n.9, and a two-year period subject to inquiry notice to the extent the Court borrows from analogous limitations periods, *see* Mot. 24 n.10.  But because Plaintiff's claims are time-barred even under a three-year limitations period, this analysis focuses on that longer period.

based on a time bar on a Rule 12(b)(6) motion is proper when "'the facts that give rise to the defense are clear from the face of the complaint.'"  Opp. at 64 (quoting *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998)).  That is plainly the case here.  *See* Mot. at 23-28.

　　None of Plaintiff's counterarguments are availing.  Plaintiff first argues that his FISA and *Bivens* claims did not begin to accrue until the U.S. Department of Justice Office of the Inspector General issued its December 2019 report relating to the Crossfire Hurricane Investigation (the "Horowitz Report") because that was when he was first able to ascertain "the information that would give rise to a cause of action against *any of the Individual Defendants*."  *See* Opp. at 66-67 (emphasis added).  But this is not the standard; rather, a claim accrues "when the plaintiff knows or has reason to know of the harm" alleged.  *Loumiet v. United States*, 968 F. Supp. 2d 142, 150 (D.D.C. 2013) (citation omitted), *partial reconsideration*, 65 F. Supp. 3d 19 (D.D.C. 2014); *see also, e.g.*, *Hampton v. Comey*, No. 14-cv-1607 (ABJ), 2016 WL 471277, at *13 (D.D.C. Feb. 8, 2016) (explaining that a *Bivens* claim accrues "when the plaintiff has a complete and present cause of action") (citation omitted), *aff'd*, No. 16-5058, 2016 WL 6238558 (D.C. Cir. Sept. 8, 2016).

　　*Berman v. Crook*, 293 F. Supp. 3d 48 (D.D.C. 2018), upon which both parties rely, is instructive here.  In that case, a plaintiff brought a *Bivens* claim against a special agent who allegedly executed a search warrant based on an affidavit containing "'numerous false allegations that were known to be false at the time.'"  *Id.* at 54 (citation omitted).  The court held that the plaintiff's claim accrued in 2000, when the plaintiff became aware of the improper search and received a copy of the affidavit that included the allegedly false statements, even though these were redacted.  *Id.* at 56.  The court flatly rejected the plaintiff's argument that his

claim did not accrue until 2013, when he received an unredacted version of the affidavit.  *Id.*  It reasoned that the plaintiff's knowledge of the improper search in 2000, and the mere belief at that time that the affidavit included false statements, were enough to show that the plaintiff knew or should have known that he had a claim.  *See id.*  The plaintiff's ability to identify individual defendants did not factor in the court's analysis.

Here, Plaintiff's knowledge of the harms alleged in the SAC is enshrined in the April 11, 2017, *Washington Post* article that "confirm[ed] all of [his] suspicions" that he was being illegally surveilled pursuant to a FISA warrant.  *See* Ellen Nakashima et al., *FBI obtained FISA warrant to monitor former Trump advisor Carter Page*, WASH. POST (Apr. 11, 2017), http://wapo.st/2pr7kpE [hereinafter WASH. POST Article].  April 11, 2017, is therefore the latest his claims could accrue.

Equally unconvincing is Plaintiff's contention that the statute of limitations was tolled until December 2019, because secrecy or fraud "prevent[ed] [him] from learning of the existence of his cause of caution."  Opp. at 65-66 (citing *Smith v. Nixon*, 606 F.2d 1183, 1190-91 (D.C. Cir. 1979)).  Indeed, the *Smith* court rejected the defendant's statute of limitations argument, in part because the plaintiffs alleged in their complaint that the government and its agents "engaged in affirmative acts of concealment that *prevented the* [*plaintiffs*] *from discovering*" the allegedly improper surveillance.  606 F.2d at 1191 (emphasis added).  The court held that there was a genuine issue of material fact as to whether plaintiffs could have discovered the allegedly improper surveillance through "due diligence," given the "extraordinary efforts" to conceal that surveillance.  *Id.*

*Smith* is inapposite here.  There is no genuine issue of material fact as to whether Plaintiff *could* have discovered the conduct underlying his FISA and *Bivens* claims; he has in fact alleged

that he *did* discover it.  The SAC makes clear that Plaintiff was aware of the allegedly improper surveillance by at least April 11, 2017.  *See* SAC ¶ 221; *see also supra* WASH. POST Article.  The confidential nature inherent to the FISA warrant application process is not the same as "affirmative acts of concealment" as to the existence of Plaintiff's *claims*.  *See Smith*, 606 F.2d at 1191.

Finally, any argument that tolling the statute of limitations is appropriate because Plaintiff was unable to "learn[] the information that would give rise to a cause of action against any of the Individual Defendants," is simply unfounded.  *See* Opp. at 66.  The same April 11, 2017, *Washington Post* article "confirm[ing]" Plaintiff's "suspicions" that he was being improperly surveilled also reported that it was the FBI and Department of Justice that had sought and obtained the FISA warrants authorizing the conduct Plaintiff complains of here.  *See supra* WASH. POST Article.  Nothing prevented Plaintiff from bringing his claims in 2017, naming these agencies as defendants, and including "John/Jane Doe" defendants in lieu of specific individuals while he sought to ascertain their identities.  *Cf. Bame v. Dillard*, Civ. Action No. 05-1833 (RMC), 2008 WL 11515525, at *3 (D.D.C. Mar. 28, 2008) (denying plaintiffs' motion to substitute named individuals for John Doe defendants where plaintiffs offered no explanation for "s[itting] on their rights" by "failing to institute th[eir] action years earlier, which would have enabled them to ascertain the identities of the 'unknown' defendants well before the limitations period ran").  Indeed, Plaintiff clearly understands how to name "Doe" defendants because the Complaint, Dkt. 1, First Amended Complaint, Dkt. 29, and the SAC do just that.

At bottom, Plaintiff initiated this action on November 27, 2020, and his claims thus had to accrue on or after November 28, 2017 to be timely under even a three-year statutory period.  They did not.  *See* SAC ¶ 221 (citing an April 11, 2017, news article reporting that Plaintiff was

the target of FISA surveillance, and which article quoted Plaintiff as saying his suspicions regarding allegedly illegal surveillance were confirmed and "dismiss[ing] . . . 'the dodgy [Steele] dossier' of false allegations"). Therefore, they must be dismissed as untimely.[5] *See Smith-Haynie*, 155 F.3d at 578 (holding that a statutory of limitations defense is proper on a Rule 12(b)(6) motion when the facts "giv[ing] rise to the defense are clear from the face of the complaint").

## II. PLAINTIFF HAS FAILED TO STATE A FISA CLAIM AGAINST MCCABE[6]

### A. There Is No Aiding and Abetting Liability for Civil FISA Claims

Plaintiff's efforts to save his FISA claims on the merits fare no better. To state a civil FISA claim, Plaintiff must allege that McCabe personally either *intentionally* engaged in improper electronic surveillance, or *knowingly* disclosed or used information obtained through improper surveillance. *See* 50 U.S.C. §§ 1809(a), 1810. Unable to meaningfully refute that the

---

[5] The Opposition also seems to argue that the applicable statutes of limitations should be tolled because Plaintiff was unable to learn of the "key facts" underlying *his claim*, rather than the identities of individual defendants such as McCabe. *See* Opp. at 66 (suggesting, too, that Plaintiff's claims did not accrue until he learned "that [the FISA Warrants] were obtained *without* probable cause by the inclusion of numerous, material misrepresentations and omissions"). But that argument fails for the same reasons already discussed here and in Section III of McCabe's Motion: Plaintiff knew or had reason to know that the surveillance complained of in the SAC was allegedly improper. *See* Mot. at 23-28; *see also* § I of co-defendant Kevin E. Clinesmith's Reply in Support of His Motion to Dismiss Plaintiff's Second Amended Complaint, which McCabe joins and incorporates by reference.

[6] The Opposition incorrectly suggests that dismissal pursuant to Rule 12(b)(6) is only appropriate "when it appears, beyond doubt, that the plaintiff[] can prove no set of facts in support of [its] claim which would entitle it to relief." *See* Opp. at 14 (citing *Cauman v. George Wash. Univ.*, 630 A.2d 1104, 1105 (D.C. 1993) and *Klahr v. District of Columbia*, 576 A.2d 718, 721 (D.C. 1990)). But these District of Columbia Court of Appeals cases have no bearing here because (1) they apply D.C. procedural rules, not the Federal Rules of Civil Procedure, *see Cauman*, 630 A.2d at 1104 (citing D.C. Super. Ct. Civ. R. 12(b)(6)); *Klahr*, 576 A.2d at 718 (same), and (2) even if they had applied Fed. R. Civ. P 12(b)(6), the "no set of facts" standard was abrogated by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). The SAC must plausibly allege facts to support the claims stated therein, as explained in McCabe's Motion. *See* Mot. at 7-8.

SAC lacks sufficient plausible allegations as to any intent or knowledge on McCabe's part, the Opposition invokes 18 U.S.C. § 2 for the erroneous proposition that "there is no need for Plaintiff" to allege that "each [individual defendant], *personally*, engaged in electronic surveillance of Dr. Page or disclosed or used information obtained from the surveillance" to state a FISA claim.  *See* Opp. at 16.

While 18 U.S.C. § 2 provides for general aiding and abetting liability in the criminal context,[7] it is well-settled that there is no such general secondary liability in the civil context; rather, "aiding and abetting" liability must be expressly set forth in the text of the statute itself. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177-78 (1994).

In *Central Bank of Denver*, the Supreme Court examined whether a private civil claim would lie against one who did not personally violate § 10(b) of the Securities Exchange Act of 1934, "but who aid[ed] and abet[ted] the violation."  *Id.* at 167.  The Court's analysis was simple—there was no aiding and abetting liability because "the text of the 1934 Act does not itself reach those who aid and abet a § 10(b) violation."  *Id.* at 177.  It reasoned that if Congress "intended to impose aiding and abetting liability, . . . it would have used the words 'aid' and 'abet' in the statutory text.  But it did not."  *Id.*  "The issue is not whether imposing private civil liability on aiders and abettors is good policy but whether aiding and abetting is covered by the statute."  *Id.*

---

[7] 18 U.S.C. § 2 states:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, or induces or procures its commission, is punishable as a principal.
> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

The Court also held that congressional intent as to aiding and abetting liability could not be implied.  It observed that, unlike in the criminal context,

> Congress has not enacted a general *civil* aiding and abetting statute . . . .  Thus, when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, *there is no general presumption that the plaintiff may also sue aiders and abettors*.

*Id.* at 182 (emphases added).  Rather, Congress has imposed aiding and abetting liability on a "statute-by-statute" basis.  *See id.* at 182-83 (collecting statutes).  As the Court aptly noted,

> Aiding and abetting is 'a method by which courts create secondary liability' in persons *other than the violator of the statute*.  The fact that Congress chose to impose some forms of secondary liability, but not others, indicates a deliberate congressional choice with which the courts should not interfere.

*Id.* at 184 (emphasis added).  Thus, while the absence of any "aiding and abetting" language in the statute alone means that there is no such secondary liability for Plaintiff's FISA claims, it is also "not plausible to interpret the statutory silence as tantamount to an implicit congressional intent to impose [§ 1810] aiding and abetting liability."  *See id.* at 185.

Courts around the country—including this Court—have held that *Central Bank of Denver* forecloses reading any implied civil aiding and abetting liability into a variety of statutes, including the Stored Communications Act and/or the Electronic Communications Privacy Act,[8] 18 U.S.C. §§ 2510-2712, *see, e.g.*, *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246-47 (10th Cir. 2012); *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1006, 1006 n.1 (9th Cir. 2006); *Broidy Capital Mgmt. LLC v. Muzin*, No. 19-cv-0150 (DLF), 2020 WL 1536350, at *11 (D.D.C. Mar. 31, 2020) (Friedrich, J.), *aff'd*, 12 F.4th 789 (D.C. Cir. 2021); *Council on Am.-Islamic Rels.*

---

[8] The Stored Communications Act is a "commonly used shorthand[] for . . . [Title II] of the Electronic Communications Privacy Act of 1986[.]"  *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 16 n.1 (D.D.C. 2012).

*Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 27 (D.D.C. 2012), the Anti-Terrorism Act,

18 U.S.C. § 2331 *et seq.*, *see, e.g.*, *Rothstein v. UBS AG*, 708 F.3d 82, 97-98 (2d Cir. 2013),

*superseded in nonrelevant part by statute*, Justice Against Sponsors of Terrorism Act, Pub. L.

No. 114-222 § 2(b), 130 Stat. 852, 853 (2016) (Amendment) ("JASTA"); *Boim v. Holy Land*

*Found. for Relief & Dev.*, 549 F.3d 685, 689-90 (7th Cir. 2008) (*en banc*); *Owens v. BNP*

*Paribas S.A.*, 235 F. Supp. 3d 85, 90-95 (D.D.C. 2017), *aff'd*, 897 F.3d 266 (D.C. Cir. 2018),

*superseded in nonrelevant part by statute*, JASTA § 2(b), *as recognized in Atchley v.*

*AstraZeneca UK Ltd.*, 22 F.4th 204, 215 (D.C. Cir. 2022), the Racketeer Influenced and Corrupt

Organizations Act, 18 U.S.C. § 1962, *see, e.g.*, *Pa. Ass'n of Edwards Heirs v. Rightenour*, 235

F.3d 839, 840 (3d Cir. 2000), and the Trafficking Victims Protection Act, 18 U.S.C. § 1591, *see,*

*e.g.*, *Noble v. Weinstein*, 335 F. Supp. 3d 504, 525 (S.D.N.Y. 2018).

Under *Central Bank of Denver*, the Court's inquiry here is simple:  it need only determine

"whether aiding and abetting is covered by the statute."  511 U.S. at 177.  Like § 10(b) of the

Securities Exchange Act, §§ 1809 and 1810 of FISA are silent as to secondary liability.  *See* 50

U.S.C. §§ 1809-10.  That alone is enough to "resolve[] the case."[9]  *See* 511 U.S. at 177.

Nor does the authority cited by Plaintiff suggest a different result.  Virtually all the cases

Plaintiff cites are inapposite because they consider aiding and abetting liability in the criminal,

not civil, context.  *See Nye & Nissen v. United States*, 336 U.S. 613, 615-16 (1949) (conspiracy

---

[9] Plaintiff faults McCabe and the other defendants for "assiduously ignor[ing] the theory of aiding and abetting," and chastises them for "cit[ing] no authority for the proposition that . . . 18 U.S.C. § 2 is inapplicable to violations of 18 U.S.C. § 1809(a)."  Opp. at 52, 52 n.9.  To be clear, §§ 1809 and 1810 of FISA are not in Title 18 of the U.S. Code—they are in Title 50.  Moreover, the legislative history of FISA makes clear that the civil and criminal provisions were included in the "body" of Title 50 to minimize cross-referencing and to avoid the need to amend other statutes.  H.R. Rep. No. 95-1283, Pt. I, at 97 (1978).  All § 1810 does is "impose[] civil liability for violations of [§ 1809.]"  *Id.* at 98.  Thus, § 1810's reference to § 1809 merely makes the *scope* of impermissible behavior under both provisions the same.

to defraud the United States and false statements to the United States); *United States v. Heinlein*, 490 F.2d 725, 727 (D.C. Cir. 1973) (various murder charges under D.C. law); *United States v. Sampol*, 636 F.2d 621, 629 (D.C. Cir. 1980) (various murder charges under federal and D.C. law); *United States v. North*, 716 F. Supp. 644, 646 (D.D.C. 1989) (felony aiding and abetting an obstruction of congress); *United States v. Staten*, 581 F.2d 878, 880 (D.C. Cir. 1978) (D.C. and federal drug charges).

The Opposition cites two civil cases in support of Plaintiff's position, but they are also unavailing. The first, *Howard v. SEC*, 376 F.3d 1136 (D.C. Cir. 2004), is not even a civil suit. It involved judicial review of an order entered in an SEC enforcement action, not a private right of action for damages such as Plaintiff brings here. *See id.* at 1138. But even if it had been a civil suit, the two provisions of the Securities Exchange Act at issue expressly contemplated secondary liability for aiders and abettors. *See id.* at 1142 (explaining that §§ 15(b)(6) and 15(b)(4) can suspend certain individuals "who 'ha[ve] willfully aided, [and] abetted' any violation of the securities laws" and that § 21B permits "monetary penalties against persons who have 'willfully aided, [and] abetted' another's violation of the securities laws"). Thus, consistent with *Central Bank of Denver*, aiding and abetting liability was available because it was "covered by the statute" itself. *See* 511 U.S. at 177; *see also Howard*, 376 F.3d at 1142 n.6 (distinguishing the circumstances at bar from those in *Central Bank of Denver*, where the Court considered whether aiding and abetting liability was available in a private action for damages under § 10(b)).

The second case, *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), is likewise inapt because it considers aiding and abetting liability and civil conspiracy liability in the civil *tort* context of a wrongful death claim. *Id.* at 474. It has absolutely no bearing on a statutory claim

such as the one Plaintiff asserts here.

Thus, any argument that aiding and abetting liability is available to relieve Plaintiff of his burden to plausibly allege that McCabe personally and intentionally violated the provisions of FISA is utterly without legal support.

### B.  The SAC Does Not Plausibly Allege that McCabe Personally or Intentionally Violated FISA

Plaintiff cannot avoid that the SAC must plausibly allege that McCabe personally and intentionally engaged in the surveillance or improperly disclosed any information obtained pursuant to such surveillance.  *See* 50 U.S.C. §§ 1809-10; *Fazaga v. FBI*, 965 F.3d 1015, 1038-39, 1039 n.21 (9th Cir. 2020) (*en banc*) (dismissing civil FISA claims against individuals whose personal involvement was supported only by conclusory allegations that they had "actively monitored, directed, and authorized the actions" of others), *rev'd and remanded on other grounds*, 142 S. Ct. 1051 (2022).  Congress left no doubt that "intentional" conduct was meant to "reflect the most strict standard for criminal culpability" and required a showing that conduct was committed "with 'a conscious objective or desire' to commit a violation."  H.R. Rep. No. 95-1283, Pt. I, at 97.

The few allegations in the SAC that are specific to McCabe fail to meet this high standard.[10]  The Opposition primarily rehashes the same allegations that McCabe previously addressed in his Motion.  First, Plaintiff suggests that as "an original and primary participant in" and "the overall leader" of the Crossfire Hurricane investigation who "condoned and approved" the FISA Warrant applications, McCabe was "personally responsible" for any alleged FISA violations.  *See, e.g.*, SAC ¶ 27; Opp. at 23-24.  But the *Fazaga* court already rejected a theory of

---

[10] As discussed in McCabe's Motion, allegations regarding actions by "the FBI" and "the individual defendants" amount to conclusory group pleading and will not support a claim where they are not supported by specific facts.  *See* Mot. at 12-13.

558supervisory liability for FISA claims.  *See* 965 F.3d at 1039 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

Next, the Opposition reiterates that McCabe was "briefed" on the allegedly biased Steele reporting, *see* Opp. at 24; *see also* SAC ¶¶ 91, 94, 159-60, 170, and hosted meetings with other members of the Crossfire Hurricane team, *see* Opp. at 24; SAC ¶¶ 71.  But *Fazaga* also illustrates the insufficiency of Plaintiff's allegations purportedly showing McCabe's personal and intentional conduct with regard to the alleged FISA violations.  As explained in McCabe's Motion, the *Fazaga* court only upheld FISA claims against officers for whom there were particular factual allegations of knowing, intentional improper surveillance.  *See* Mot. at 9-10, 10 n.6 (citing *Fazaga*, 965 F.3d at 1038-39 (crediting allegations that officers had referenced certain communications that they could only have heard through surveillance in these locations, admitted that they had installed these surveillance systems, stated that the surveillance systems were "spread indiscriminately" across a variety of locations, and acknowledged that "they could get in a lot of trouble if people found out" about the surveillance)).  By contrast, the court dismissed claims against officers who were merely alleged to have "actively monitored, directed, and authorized" the actions of others.  *See Fazaga*, 965 F.3d at 1038-39, 1039 n.21; Mot. at 10-11.

Here, taking as true that McCabe received briefings and attended and/or hosted meetings with the Crossfire Hurricane team, all the SAC establishes is that McCabe supervised the investigation and directed his team.  It does not support any argument that *McCabe* intentionally violated FISA, such as by *knowingly* using false intelligence or reporting, or "order[ing] or arrang[ing]" such use by others.  *See Fazaga*, 965 F.3d at 1039.

Allegations that McCabe "brushed aside" a DOJ attorney's concerns about the Steele

reporting are equally flawed.  *See* Opp. at 24; *see also* SAC ¶ 91.  In particular, the SAC claims

that McCabe had been informed that the Steele reporting was "paid political opposition research

and not for use by the U.S. Government," *see* Opp. at 24 (citing SAC ¶ 94), and that the DOJ

initially "held up the warrant application" on account of these concerns until a footnote providing

additional context about the genesis of the Steele report was added, *see* Opp. at 24; *see also* SAC

¶¶ 91-92.  The Opposition seems to argue that it was unreasonable for anyone to believe there

was probable cause, and that everyone involved therefore should have known that the footnote

was misleading.  In essence, Plaintiff argues that the mere possibility that evidence arose out of

political opposition research precluded any finding of probable cause.  *See* Opp. at 24 (arguing

that submitting a FISA warrant application premised even in part on information tied to a

political campaign and election was evidence of McCabe's "'principal' liability for the FISA

violations").

Plaintiff cites no authority for such a per se rule, which would fly in the face of well-

established law that probable cause is determined by an objective totality-of-the-circumstances

analysis that in no way requires officers to "rule out" every possible "'innocent explanation for

suspicious facts.'"[11]  *See Johnson v. District of Columbia*, 927 F.3d 539, 547-48 (D.C. Cir. 2019)

(quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018)) (stating probable cause "is

'more than bare suspicion but is less than beyond a reasonable doubt, and, indeed, is less than a

preponderance of the evidence'" (citation omitted)).

---

[11] In reality, "'[o]nce a police officer has a reasonable basis for believing there is probable cause,
he is not required to explore and eliminate every theoretically plausible claim of
innocence . . . .'"  *Johnson*, 927 F.3d at 548 (quoting *Amobi v. D.C. Dep't of Corr.*, 755 F.3d
980, 990 (D.C. Cir. 2014) (alteration in original)); *see also Franks v. Delaware*, 438 U.S. 154,
165 (1978) (acknowledging that a probable cause determination can rest on sources that are not
always completely reliable, such as informants and hearsay).

Deviating from the governing standard in cases involving high-ranking officials like McCabe would be even more inappropriate.  McCabe was not personally responsible for interviewing witnesses, conducting surveillance, reviewing surveillance, drafting any portion of the warrant application or affidavit, or signing any underlying affidavits, and the SAC does not and cannot make any such allegations.  Thus, requiring McCabe to independently verify each underlying fact in the FISA Warrant applications, as Plaintiff suggests, would in effect require that McCabe personally reconduct the entire investigation.  This is far beyond the duty prescribed by FISA.  *See* Mot. at 12, 35 n.17 (explaining the limited nature of the certifying official's role).

In a final effort to save his FISA claims, Plaintiff again invokes aiding and abetting liability to suggest that McCabe's personal engagement "in the actual surveillance is irrelevant" because McCabe submitted "the false applications."  *See* Opp. at 25.  McCabe did not "submit" the applications—he signed the certification for a single FISA Warrant application.  SAC ¶ 163.  More importantly, this argument fails because aiding and abetting liability is not available in a civil FISA claim, for the same reasons discussed above.[12]  *See supra* Section II.A.

With no plausible allegations that McCabe personally and intentionally violated FISA, Plaintiff has failed to state a claim and Counts I-IV must be dismissed.[13]  *See Fazaga*, 965 F.3d

---

[12] This argument also implicitly concedes that McCabe was not personally aware of or involved with decisions surrounding the "omitted material facts" Plaintiff cites in support of this argument.  *See* Opp. at 25 (citing SAC ¶¶ 71-72, 81, 86-87).  If the SAC alleged facts sufficient to tie these alleged material omissions to McCabe, there would be no need for Plaintiff to argue that McCabe's liability for any such omissions arose from the fact that "McCabe aided, abetted and counseled the preparation of the false applications to the FISC" and "caus[ed] [them] to be approved."  *Id.* at 24-25.  Thus, none of these omissions can be said to support any intentional conduct by McCabe, either.

[13] Furthermore, Plaintiff does not meaningfully refute (nor can he) the fact that the SAC has also failed to satisfy the other elements of a FISA claim, namely that McCabe "engage[d] in electronic surveillance" and/or that he "disclose[d] or use[d] information obtained" from

at 1039; H.R. Rep. No. 95-1283, Pt. I, at 97 ("What is proscribed in an *intentional violation of an order or one of the specified provisions*, not just intentional conduct." (emphasis added)).

### C.      McCabe Has an Affirmative Defense Under FISA

Plaintiff's weak efforts to rebut the statutory defense also fail.  Plaintiff's argument is that the defense does not apply because "the entire tenor of the SAC" precludes any argument that any of the individual defendants acted in good faith.  *See* Opp. at 54.  That is not the standard set forth in the statute.  *See* 50 U.S.C § 1809(b) (creating safe harbor for FISA violations when committed by a law enforcement officer acting in his official capacity in accordance with a FISA warrant).

Moreover, Plaintiff's reliance on *Illinois v. Gates*, 462 U.S. 213, 264 (1983) (White, J., concurring) (citing *Franks v. Delaware*, 438 U.S. 154 (1978)), is misplaced.  The *Franks* case did not involve FISA or its statutory defense.  Moreover, Plaintiff's attempt to use *Franks* for the proposition that there is no "good-faith exception" when a warrant is issued based on false or misleading material, *see* Opp. at 54, ignores a significant limitation in the Court's opinion: the exception applies to *affiants* who knowingly sign false or misleading affidavits.  438 U.S. at 171 ("The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant[.]")]; *see* Mot. at 30-34.  The SAC explicitly alleges that it was a Supervisory Special Agent—not McCabe—who signed the supporting affidavits for the FISA Warrant applications, *see, e.g.*, SAC ¶¶ 129, 188.  Thus, *Franks* is inapplicable, and Plaintiff's attempt to

---

unlawful surveillance.  *See* Mot. at 14 n.7 (citing, *inter alia*, 50 U.S.C. § 1809(a)(1)-(2)) (explaining that Plaintiff has not plausibly alleged that McCabe, personally and intentionally, performed any electronic surveillance or disclosed information obtained from any unlawful surveillance).  Thus, the dearth of plausible allegations as to McCabe's intent also dooms Plaintiff's FISA claims on these additional grounds.

rebut the statutory defense fails.[14]  *See* Mot. at 34-35.

In sum, Plaintiff's FISA claims fail both because the SAC has not plausibly alleged any intentional misconduct by McCabe and because the statutory defense in FISA itself squarely applies.  Counts I-IV should therefore be dismissed for these two additional, independent reasons.

## III.  PLAINTIFF HAS FAILED TO STATE A *BIVENS* CLAIM AGAINST MCCABE

McCabe's Motion made clear that to state a *Bivens* claim, Plaintiff has to both allege that McCabe personally violated his constitutional rights, *see Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."),[15] and establish that he was not seeking to extend *Bivens* to a "new context," *see Loumiet v. United States*, 948 F.3d 376, 380 (D.C. Cir. 2020) (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017)).  Plaintiff has done neither, and therefore, his *Bivens* claim must also be dismissed.

### A.   Plaintiff Has Not Plausibly Alleged that McCabe Personally Violated Plaintiff's Constitutional Rights

Plaintiff concedes, as he must, that a *Bivens* claim will not lie against McCabe on a theory of vicarious liability.  *See* Opp. at 55 (quoting *Iqbal*, 556 U.S. at 676).  Instead, he

---

[14] Plaintiff also attempts to avoid the obvious application of FISA's statutory defense by turning to the broad proposition that affirmative defenses are inappropriate in a motion to dismiss unless "the facts that give rise to the defense are clear from the face of the complaint."  *See* Opp. at 54 (citing *United States v. First City Nat'l Bank of Houston*, 386 U.S. 361 (1967) and *Smith-Haynie*, 155 F.3d at 578).  This argument is a red herring, as McCabe's Motion plainly applies this exact standard.  *See* Mot. at 14-15 (stating explicitly that "[t]he *SAC* makes clear that McCabe falls within [FISA's] safe harbor" and citing solely facts alleged in the SAC in support) (emphasis added).

[15] *See also Ziglar v. Abbasi*¸ 137 S. Ct. 1843, 1860 (2017) ("The purpose of *Bivens* is to deter the *officer*.") (citation omitted); *Voinche v. Obama*, 744 F. Supp. 2d 165, 177 (D.D.C. 2010), *aff'd*, 428 F. App'x 2 (D.C. Cir. 2011).

advances a theory of "supervisory liability," in which a supervisor may be held liable based on his or her "direct involvement in a plan or policy that expressly or impliedly authorizes a constitutional violation."  *See Fletcher v. U.S. Parole Comm'n*, 550 F. Supp. 2d 30, 39 (D.D.C. 2008); Opp. at 55-56 (citing *Fletcher*).  But the theory does not apply here.

In *Fletcher*, a parolee brought *Bivens* and § 1983 claims against the members of the U.S. Parole Commission for promulgating and applying retroactively new parole regulations that improperly subjected him to a less favorable parole eligibility standard, thereby putting him at risk of being detained in prison longer than he would have under prior regulations.  550 F. Supp. 2d at 34.  He alleged that the commissioners were liable because they "directed, authorized and approved the reparole procedures used in [his] case . . . ."  *Id.* (citation omitted).  Specifically, he alleged that the commissioners were involved in a "seamless causal chain of events" because each of them "*personally* made or approved an administrative policy decision to make the [new parole regulations] retroactively applicable to all D.C. Code offenders, including [him,]" and those regulations, once enacted, resulted in his delayed release.  *Id.* at 37 (emphasis added).

The court concluded that supervisory liability was available to impose liability on the commissioners because the plaintiff had alleged that each commissioner authorized and approved the regulations at issue, and then used those regulations to damage the plaintiff.  *See id.* at 39.  The court reasoned that such behavior evidenced their "*direct involvement* in a plan or policy that expressly or impliedly authorize[d] a constitutional violation."  *Id.* (emphasis added). However, the court also cautioned that supervisory liability did not create liability for "general inaction" because it risked improperly subjecting officials to respondeat superior liability.  *Id.* (citing, *inter alia*, *Int'l Action Ctr. v. United States*, 365 F.3d 20, 28 (D.C. Cir. 2004) (Roberts, J.)).  Supervisor liability only attaches, therefore, when an official "know[s] about the conduct

and facilitate[s] it, approve[s] it, condone[s] it, or turn[s] a blind eye" to it.  *Id.* (citing *Int'l Action*, 365 F.3d at 28).

Because Plaintiff's *Bivens* claim arises from the same conduct as his FISA claims, supervisory liability fails to save the *Bivens* claim for the same reasons discussed above—there are no plausible allegations that McCabe directly, personally, or intentionally knew that information in the FISA Warrant applications was false or misleading.  *See supra* Section II.A; *see also* Mot. at 17-18.  The conclusory allegations in the SAC that McCabe was a "primary participant in" and "the overall leader of" the investigation into Plaintiff, *see, e.g.* SAC ¶¶ 27; Opp. at 23, are simply not comparable to those in *Fletcher*, where the plaintiff asserted *Bivens* claims against the specific commissioners he alleged were personally responsible for voting on, enacting, and applying the challenged regulations, *see* 550 F. Supp. 2d at 39-40.

In support of his argument, Plaintiff cites three cases—mostly from outside of this Circuit—that are easily distinguishable.  In *United States v. Calisto*, 838 F.2d 711, 714 (3d Cir. 1988), the court considered the role of an *affiant's* belief as to statements in an affidavit supporting a warrant application, *see id.* at 714.  McCabe never signed such an affidavit for any FISA Warrant application.  And that case arose in the context of a suppression hearing, not *Bivens* liability.  *See id.* at 712.

*Wesby v. District of Columbia*, 765 F.3d 13 (D.C. Cir. 2014), *rev'd*, 138 S. Ct. 577 (2018), is also factually inapposite.  That case involved warrantless arrests of partygoers for alleged unlawful entry by officers on the scene conducting a real-time investigation prior to arrest.  *Id.* at 18, 28-29.  The duties of officers on the scene investigating, like the officers in *Wesby*, are vastly different from those alleged for a supervisor like McCabe.  The SAC does not allege that he carried out the day-to-day tasks of the investigation; rather, it alleges that he was a

supervisor who was the "overall leader," held meetings, and received briefings on the investigation.  *See, e.g.*, SAC ¶¶ 151, 161; Opp. at 23-24.

Finally, in *Miller v. Prince George's County, Md.*, 475 F.3d 621 (4th Cir. 2007), the officer being sued was himself alleged to have intentionally or with knowing disregard included false statements or made material omissions in the supporting affidavit for a warrant application. *See id.* at 624-26.  The officer argued that he was not liable because the officer who actually executed the warrant was unaware of the misleading information used to obtain the warrant.  *See id.* at 630.  The court held that qualified immunity was not available to shield the defendant from *his own* unconstitutional behavior merely because an unknowing third-party executed the warrant.  *Id.*  Thus, *Miller* speaks only to the actions of "an officer *who makes* deliberately or recklessly false material misrepresentations or omissions to obtain a warrant, for which there would otherwise be no probable cause."  *Id.* at 630 n.4 (emphasis added).  It does not consider the actions of individuals who reasonably rely on a facially valid warrant.

For these reasons, and as set forth in McCabe's Motion, *see* Mot. at 16-18, Plaintiff's claim fails and Count VI should be dismissed.  *See also Wesby*, 138 S. Ct. at 590 (stressing that it is "'especially important in the Fourth Amendment context'" that a right be defined with specificity because "[p]robable cause 'turn[s] on the assessment of probabilities in particular factual contexts' and cannot be 'reduced to a neat set of legal rules'" (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015) (*per curiam*), and *Gates*, 462 U.S. at 232)).

### B.    Plaintiff Impermissibly Seeks to Extend *Bivens* to a "New Context"

Plaintiff also seeks to expand *Bivens* to a new context.  The Opposition correctly points out that "[t]his Court recently noted that "*Bivens* remains settled 'in the search-and-seizure context in which it arose[,]'" *see* Opp. at 58 (quoting *LKQ Corp. v. United States*, No. 18-cv-1562 (DLF), 2019 WL 3304708, at *10 (D.D.C. July 23, 2019)), but it ignores the rest of the

19

Court's sentence acknowledging that "the [Supreme] Court 'has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity.'"  2019 WL 3304708, at *10 (quoting *Abbasi*, 137 S. Ct. at 1855).  In fact, the analysis in McCabe's Motion is entirely consistent with that of this Court in dismissing the *Bivens* claim in *LKQ*.  *Compare id.* Mot. at 18-23 (examining whether the claim differed "in a meaningful way" from the Supreme Court's prior *Bivens* cases, such as by involving a new rank of officer, a new statutory or legal authority, and the presence of potential special factors cautioning against extension), *with* 2019 WL 3304708, at *10-11 (same).  Thus, to create *Bivens* liability against a high-ranking government official like McCabe for a FISA violation in light of an existing comprehensive statutory scheme[16] would run counter to *Abbasi*.  Plaintiff failed to address the explanation in McCabe's Motion as to how Plaintiff seeks to extend *Bivens* liability here, and therefore his claim should be dismissed.  *See* Mot. at Sec. II.B.

## IV.  PLAINTIFF'S DAMAGES ARE NOT FAIRLY TRACEABLE TO ANY UNLAWFUL ELECTRONIC SURVEILLANCE

Each of Plaintiff's claims as to McCabe also fails because, as explained in § IV of McCabe's Motion, the SAC does not plausibly allege the "causal connection" between any conduct by McCabe and Plaintiff's alleged damages.  *See* Mot. at 28 (incorporating by reference § IV of co-defendant Stephen Somma's ("Somma") Memorandum of Law in Support of Motion to Dismiss).  The Opposition's argument that the SAC need not specify "how exactly

---

[16] The Opposition's argument that a comprehensive statutory framework merely implicates the election of remedies doctrine is misplaced.  *See* Opp. at 60-61.  McCabe is not suggesting that Plaintiff cannot choose which claim to recover under, if he were to prevail, but that a *Bivens* claim is simply not available to Plaintiff at all.  As this Court is aware, "the presence of a comprehensive statutory scheme" regulating electronic surveillance is a "crucial[]" factor that "counsels strongly against expanding" *Bivens* beyond its current boundaries.  *LKQ*, 2019 WL 3304708, at *11 (collecting cases).

[Plaintiff's] specific damages relate to which of his claims" is entirely misplaced, and McCabe therefore adopts and incorporates by reference the applicable arguments set forth in § IV of Somma's Reply Memorandum of Law in Support of Motion to Dismiss.

## V.   QUALIFIED IMMUNITY BARS PLAINTIFF'S FISA AND *BIVENS* CLAIMS AS TO MCCABE

Even if the SAC had otherwise stated claims as to McCabe, Plaintiff's claims would still fail because McCabe is entitled to qualified immunity for the reasons discussed in his Motion, *see* Mot. at Section V, which reasons the Opposition does not effectively counter.

First, the SAC does not allege that McCabe personally violated Plaintiff's "clearly established" Fourth Amendment rights.  Plaintiff points again to *Miller*, a Fourth Circuit case, for the proposition that it is well established that an officer cannot "'deliberately, or with reckless disregard for the truth, [] make material misrepresentations or omissions to seek a warrant that would otherwise be without probable cause,'" Opp. at 61 (quoting *Miller*, 475 F.3d at 632).  But *Miller* does not help Plaintiff here.  As explained above, the *Miller* court considered the actions of the individual officer responsible for making the materially false statements or omissions.  *See* 475 F.3d at 632.  Thus, the established right that *Miller* identifies does not provide adequate notice of a constitutional violation to those for whom, like McCabe, there are no plausible allegations of any knowing material misrepresentations or omissions in an affidavit to procure a warrant.  *See Johnson*, 927 F.3d at 546 (explaining that the right must be defined "in a manner 'particularized to the [pertinent] facts'" so as to "put a reasonable officer on adequate notice that the specific violation alleged" violates a statutory or constitutional right).  Plaintiff has not identified any such authority, and thus cannot claim that McCabe's limited role here violated a "clearly defined" Fourth Amendment right.  Qualified immunity therefore bars Plaintiff's claims against McCabe.

Plaintiff also argues that qualified immunity is not available for FISA claims at all. *See* Opp. at 62 (citing *Berry v. Funk*, 146 F.3d 1003, 1013 (D.C. Cir. 1998)). But this Circuit clarified ten years after *Berry* that qualified immunity *is* available for some statutory claims. *See Rasul v. Myers*, 512 F.3d 644, 668 n.20 (D.C. Cir. 2008) ("'[W]e [have] held that . . . the doctrine of qualified immunity applied to plaintiff's statutory claims [under the Federal Wiretap Act] in the same manner as it applied to plaintiff's constitutional claims.'" (quoting *Berry*, 146 F.3d at 1014) (alterations in original)), *judgment vacated on other grounds*, 555 U.S. 1083 (2008). Indeed, the *Rasul* court observed that "qualified immunity is available against statutory claim[s] unless 'Congress intended to abrogate the defense of qualified immunity to claims under that act[.]'" 512 F.3d at 668 n.20 (citing *Tapley v. Collins*, 211 F.3d 1210, 1214-15 n.9 (11th Cir. 2000) (collecting statutes)). Plaintiff cites no authority, and counsel has found none, holding either that qualified immunity is unavailable for FISA claims, or that Congress *intended* to abrogate qualified immunity in the FISA context.

Furthermore, Plaintiff's argument that qualified immunity is "an affirmative defense" which should not be raised at the motion to dismiss stage is simply wrong on its face. *See* Opp. at 63-64. Qualified immunity "is an *immunity from suit* rather than a mere defense to liability," and therefore should be resolved "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (internal citation omitted) (collecting cases). Thus, it is entirely appropriate to raise qualified immunity where, as here, the SAC alleges that McCabe was a government official who violated Plaintiff's "statutory [and] constitutional right[s]." *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

Finally, the Opposition did not address the arguments raised in McCabe's Motion that Plaintiff has failed to allege that McCabe *personally* violated Plaintiff's rights. Thus, even if

Plaintiff had identified a clearly established constitutional right or stated a civil FISA claim, which he has not, qualified immunity would nonetheless bar all of Plaintiff's claims for the reasons set forth in Section V.B of McCabe's Motion.

## CONCLUSION

For all the foregoing reasons, McCabe respectfully requests that Counts I-IV and Count VI of the SAC be dismissed with prejudice.


Dated: April 1, 2022                              Respectfully submitted,

                                                  /s/ Brigida Benitez
                                                  Brigida Benitez (DC Bar No. 446144)
                                                  Lisa M. Southerland (DC Bar No. 198412)
                                                  **STEPTOE & JOHNSON LLP**
                                                  1330 Connecticut Avenue, NW
                                                  Washington, DC 20036
                                                  Telephone:     (202) 429-3000
                                                  Fax:           (202) 429-3902
                                                  bbenitez@steptoe.com
                                                  lsoutherland@steptoe.com

                                                  *Counsel for Defendant Andrew McCabe in his individual capacity*

23

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 1, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties and/or counsel of record.


<u>/s/ *Brigida Benitez*</u>
Brigida Benitez