**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| CARTER PAGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-3460 |
| | ) | |
| JAMES COMEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**GOVERNMENT DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
GOVERNMENT DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

Dated: April 1, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

MARCIA BERMAN
Assistant Director, Federal Programs Branch

*/s/Amy E. Powell*
AMY E. POWELL
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
c/o U.S. Attorney's Office
150 Fayetteville St., Suite 2100
Raleigh, NC 27601
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

ELIZABETH TULIS
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel: (202) 514-9237
Fax: (202) 616-8470
E-mail: elizabeth.tulis@usdoj.gov

*Attorneys for Defendants Department of Justice
and Federal Bureau of Investigations*

*/s/  Daniel P. Chung*
DANIEL P. CHUNG
CATE E. CARDINALE
Trial Attorneys, Torts Branch
Civil Division
United States Department of Justice
P.O. Box 888 Ben Franklin Station
Washington, DC 20044
Phone: (202) 616-4258
Email: Daniel.P.Chung@usdoj.gov

*Attorneys for the United States of America*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 1

   I.    THE COURT MAY PROPERLY CONSIDER JUDICIALLY NOTICEABLE
       DOCUMENTS ............................................................................................... 1

   II.   THE COURT SHOULD DISMISS PLAINTIFF'S PATRIOT ACT CLAIM. ............. 2

      A.   Plaintiff's Arguments Rest on a Mischaracterization of Section 2712. ...................... 2

      B.   Plaintiff Fails to Plausibly Allege a Violation of Section 1806(a). .............................. 4

      C.   Plaintiff's Putative PATRIOT Act Claim Is Time-Barred. ......................................... 6

   III.  THE COURT SHOULD DISMISS COUNT 5 (FTCA CLAIM). ................................... 9

      A.   Plaintiff Fails to State a Claim for Abuse of Process. .................................................. 9

      B.   Plaintiff's Abuse-of-Process Claim Is Time-Barred ................................................. 12

   IV.  THE COURT SHOULD DISMISS THE PRIVACY ACT CLAIMS FOR ACCESS OR
       AMENDMENT, OR GRANT SUMMARY JUDGMENT FOR THE GOVERNMENT.
       ................................................................................................................... 16

      A.   Plaintiff Has Not Shown that He Exhausted Administrative Remedies ..................... 16

      B.   Plaintiff's Failure to Identify Alleged Errors in the Report Precludes Him from
          Stating a Claim for Amendment. ............................................................................. 18

      C.   The OIG Report Is Not in a System of Records. ....................................................... 19

      D.   OIG Investigative Files Are Exempt from Access and Amendment Claims. ............ 21

   V.   THE COURT SHOULD DISMISS COUNT 8 (PRIVACY ACT DISCLOSURE) ...... 24

      A.   Count 8 Is Time-Barred. ......................................................................................... 24

      B.   Plaintiff Has Not Plausibly Pleaded Actual Damages Caused by the Alleged
          Disclosures ............................................................................................................. 26

CONCLUSION ......................................................................................................... 27

## **TABLE OF AUTHORITIES**

### **Cases**

*Adams, Nash & Haskell, Inc. v. United States*,
  No. CV 20-1916 (RC), 2021 WL 1340918 (D.D.C. Apr. 9, 2021) ............................................ 2

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................................... 4, 5

*Atherton v. D.C. Off. of Mayor*,
  567 F.3d 672 (D.C. Cir. 2009) ........................................................................................ 4, 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................ 6

*Bowden v. United States*,
  106 F.3d 433 (1997) ........................................................................................................... 17

*Bown v. Hamilton*,
  601 A.2d 1074 (D.C. 1992) ............................................................................................... 12

*Bussineau v. President & Dirs. Of Georgetown College*,
  518 A.2d 423 (D.C. 1986) ................................................................................................. 14

*BYD Co. Ltd. v. All. for Am. Mfg.*,
  No. 1:20-CV-03458 (TNM), 2021 WL 3472386 (D.D.C. Aug. 6, 2021)................................. 2

*Callahan v. United States*,
  426 F.3d 444 (1st Cir. 2004) ............................................................................................. 16

*Capitol Place I Assocs. L.P. v. George Hyman Constr. Co.*,
  673 A.2d 194 (D.C. 1996) ................................................................................................. 14

*Capitol Servs. Mgmt., Inc. v. Vesta Corp.*,
  933 F.3d 784 (D.C. Cir. 2019) ..................................................................................... 13, 14

*Convertino v. U. S. Dep't of Justice*,
  684 F.3d 93 (D.C. Cir. 2012) ............................................................................................ 25

*Covad Commc'ns Co. v. Bell Atl. Corp.*,
  407 F.3d 1220 (D.C. Cir. 2005) .......................................................................................... 1

*Croskey v. U.S. Office of Special Counsel*,
  9 F. Supp. 2d 8 (D.D.C. 1998),
  *aff'd*, No. 98-5346, 1999 WL 58614 (D.C. Cir. Jan. 12, 1999) ................................................ 23

*E.E.O.C. v. St. Francis Xavier Parochial Sch.*,
   117 F.3d 621 (D.C. Cir. 1997) ............................................................. 1

*Fikre v. FBI*,
   142 F. Supp. 3d 1152 (D. Or. 2015) .................................................... 4

*Firestone v. Firestone*,
   76 F.3d 1205 (D.C. Cir. 1996) ............................................................ 8

*Garcia v. City of Merced*,
   637 F. Supp. 2d 731 (E.D. Cal. 2008) ................................................. 9

*Gerlich v. U.S. Dep't of Justice*,
   711 F.3d 161 (D.C. Cir. 2013) .......................................................... 20

*Golden Commissary Corp. v. Shipley*,
   157 A.2d 810 (D.C. 1960) ....................................................... 9, 10, 11

*Gonzalez Rucci v. U.S. I.N.S.*,
   405 F.3d 45 (1st Cir. 2005) ................................................................. 9

*Hall v. Field Enterprises, Inc.*,
   94 A.2d 479 (D.C. 1953) ............................................................. 10, 11

*Hall v. Field Enterprises, Inc.*,
   114 A.2d 840 (D.C. 1955) ................................................................ 11

*Hall v. Hollywood Credit Clothing Co.*,
   147 A.2d 866 (D.C. 1959) .............................................................. 9, 10

*Harrison v. Howard Univ.*,
   846 F. Supp. 1 (D.D.C. 1993) .......................................................... 12

*Hatfill v. Gonzales*,
   505 F. Supp. 2d 33 (D.D.C. 2007) ................................................ 25, 26

*Hill v. DoD*,
   70 F. Supp. 3d 17 (D.D.C. 2014) .................................................. 26, 27

*Hill v. DoD*,
   981 F. Supp. 2d 1 (D.D.C. 2013) ...................................................... 25

*Hobson v. Wilson*,
   737 F.2d 1 (D.C. Cir. 1984) .......................................... 8, 16, 17, 18

*Jacobsen v. Oliver*,
   201 F. Supp. 2d 93 (D.D.C. 2002) ...................................................... 2

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ................................................................................................ 17

*Kronisch v. United States*,
    150 F.3d 112 (2d Cir. 1998) ................................................................................... 16

*Lewis v. United States*,
    173 F. Supp. 2d 52 (D.D.C. 2001) ......................................................................... 16

*M.J. ex rel. Jarvis v. Georgetown University Medical Ctr.*,
    962 F. Supp. 2d 3 (D.D.C. 2013) ........................................................................... 14

*Marshall Cnty. Health Care Auth. v. Shalala*,
    988 F.2d 1221 (D.C. Cir. 1993) ............................................................................... 2

*Martinez v. City of W. Sacramento*,
    No. 2:16-cv-02566-TLN-E,FB, 2019 WL 448282 (E.D. Cal. Feb. 5 2019) ............ 9

*Maydak v. United States*,
    363 F.3d 512 (D.C. Cir. 2004) ............................................................................... 19

*Maydak v. United States*,
    630 F.3d 166 (D.C. Cir. 2010) ............................................................................... 19

*McCready v. Nicholson*,
    465 F.3d 1 (D.C. Cir. 2006) ............................................................................ 18, 20, 21, 23

*Mobley v. CIA*,
    924 F. Supp. 2d 24 (D.D.C. 2013) .................................................................... 22, 23

*Morfessis v. Baum*,
    281 F.2d 938 (D.C. Cir. 1960) ............................................................................... 10

*Morin v. Caire*,
    77 F.3d 116 (5th Cir. 1966) ..................................................................................... 9

*Morowitz v. Marvel*,
    423 A.2d 196 (D.C. 1980) ...................................................................................... 12

*Nader v. Democratic Nat'l,Cmte.*,
    555 F. Supp. 2d 137 (D.D.C. 2008) ....................................................................... 12

*Neumann v. Vidal*,
    710 F.2d 856 (D.C. Cir. 1983) ............................................................................... 11

*Peart v. Latham & Watkins LLP*,
    985 F. Supp. 2d 72 (D.D.C. 2013) ........................................................................... 2

*Ramstack v. Dep't of the Army*,
    607 F. Supp. 2d 94 (D.D.C. 2009) ........................................................ 17

*Richards v. Mileski*,
    662 F.2d 65 (D.C. Cir. 1981) ................................................................. 8

*Rural Hous. All. v. United States Dep't of Agric.*,
    498 F.2d 73 (D.C. Cir. 1974) ................................................................. 23

*Rynn v. Jaffe*,
    457 F. Supp. 2d 22 (D.D.C. 2006) ........................................................ 10

*Scott v. District of Columbia*,
    101 F.3d 748 (D.C. Cir. 1996) ............................................................... 10

*Sexton v. United States*,
    832 F.2d 629 (D.C. Cir. 1987) ............................................................... 14

*Sparshott v. Feld Ent., Inc.*,
    311 F.3d 425 (D.C. Cir. 2002) ............................................................... 8

*Spiller v. District of Columbia*,
    362 F. Supp. 3d 1 (D.D.C. 2019) ........................................................... 10

*Sprint Commc'ns Co., L.P. v. F.C.C.*,
    76 F.3d 1221 (D.C. Cir. 1996) ............................................................... 8

*Thompson v. DEA*,
    492 F.3d 428 (D.C. Cir. 2007) ......................................................... 17, 18

*Trent v. DHS*,
    No. CV 18-2591 (ABJ), 2020 WL 1429881 (D.D.C. Mar. 24, 2020) .................. 17

*United States v. Kubrick*,
    444 U.S. 111 (1984) ............................................................................... 14

*Washington v. DHS*,
    525 F. Supp. 3d 181 (D.D.C. 2021) ................................................... 23, 24

*Watkins v. United States*,
    854 F.3d 947 (7th Cir. 2017) ................................................................. 13

*Watson v. City of Kansas City*,
    185 F. Supp. 2d 1191 (D. Kan. 2001) .................................................... 9

*Whelan v. Abell*,
    953 F.2d 663 (D.C. Cir. 1992) ............................................................... 11

*Williams v. Chu*,
  641 F. Supp. 2d 31 (D.D.C. 2009) ........................................................................... 2

## **Statutes**

5 U.S.C. § 552a(a)(5) ..................................................................................................... 19

5 U.S.C. § 552a(g)(4) .................................................................................................... 26

5 U.S.C. § 552a(g)(5) .................................................................................................... 24

5 U.S.C. § 552a(k)(2) ..................................................................................................... 21

18 U.S.C. § 2712 .................................................................................................... 3, 5, 7

18 U.S.C. § 2712(a) ......................................................................................................... 3

28 U.S.C. § 2401(b) ....................................................................................................... 12

50 U.S.C. § 1806(a) ......................................................................................................... 3

50 U.S.C. § 1809 .............................................................................................................. 3

## **Rules**

Fed. R. Civ. P. 9(b) ....................................................................................................... 10

Fed. R. Civ. P. 12(b)(1) ................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 1

Fed. R. Civ. P. 56(d) ..................................................................................................... 27

## INTRODUCTION

Plaintiff Carter Page ("Plaintiff") fails to establish jurisdiction or to state a claim under the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act ("PATRIOT Act"), the Federal Tort Claims Act ("FTCA"), or the Privacy Act.  Accordingly, for the reasons set forth below, the Court should dismiss his claims against the Government pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, enter summary judgment for the Government on Count 7.

## ARGUMENT

## I.      THE COURT MAY PROPERLY CONSIDER JUDICIALLY NOTICEABLE DOCUMENTS.

Plaintiff premises many of his timeliness arguments on the incorrect notion that the Court cannot consider judicially noticeable documents, such as the documents attached to the Motion to Dismiss.  In fact, the Court can take judicial notice of these attachments because they are public record documents not subject to reasonable dispute.  *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *see* ECF No. 88-1 at 28.  Plaintiff mistakenly asserts that only facts on the face of his Second Amended Complaint ("SAC") can be considered in support of an affirmative defense.  Plaintiff's Opposition Brief ("Pl. Opp."), ECF No. 99 at 14.  However, it is well-settled that this Court may take "judicial notice of facts on the public record . . . to avoid unnecessary proceedings when an undisputed fact on the public record makes it clear that the plaintiff does not state a claim upon which relief could be granted." *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005); *see Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).  All documents the Government Defendants attached to its memorandum in support of its motion to dismiss are public records and are therefore appropriate for the Court's consideration on the limited issues

1

presented here.  *See* ECF Nos. 88-3 to 88-37; *see, e.g., BYD Co. Ltd. v. All. for Am. Mfg*., No.

1:20-CV-03458 (TNM), 2021 WL 3472386, at *8 (D.D.C. Aug. 6, 2021) (finding claim time-

barred based on judicial notice), appeal filed;  *Adams, Nash & Haskell, Inc. v. United States*, No.

CV 20-1916 (RC), 2021 WL 1340918, at *4 (D.D.C. Apr. 9, 2021) (taking judicial notice of

media articles in considering and rejecting statute of limitations defense); *Peart v. Latham &*

*Watkins LLP*, 985 F. Supp. 2d 72 (D.D.C. 2013) (taking judicial notice of records of other

proceedings in connection with jurisdictional and statute of limitations issues); *Williams v. Chu*,

641 F. Supp. 2d 31, 34 (D.D.C. 2009) (taking judicial notice of public documents in connection

with statute of limitations defense); *Jacobsen v. Oliver,* 201 F. Supp. 2d 93, 110 (D.D.C. 2002)

(taking judicial notice of matters of public record when determining inquiry notice).

## II.     THE COURT SHOULD DISMISS PLAINTIFF'S PATRIOT ACT CLAIM.

Plaintiff limits his discussion of his PATRIOT Act claim to two theories: (1) the

Government unlawfully leaked Foreign Intelligence Surveillance Act (FISA)-related information

about Plaintiff to the media, and (2) the Government used information obtained through

electronic surveillance "not lawfully authorized" under FISA in later renewal applications

submitted to the Foreign Intelligence Surveillance Court (FISC) for FISA orders.  Plaintiff fails

to demonstrate that his claim survives the Government's motion to dismiss under either theory.

### A.  Plaintiff's Arguments Rest on a Mischaracterization of Section 2712.

Plaintiff's arguments regarding his PATRIOT Act claim rest on a mischaracterization of

the cause of action provided by 18 U.S.C. § 2712.  Section 2712 establishes a cause of action

against the United States based on violations of 50 U.S.C. § 1806(a), which prohibits the

disclosure or use of information obtained via electronic surveillance pursuant to FISA except

where the disclosure or use is "for lawful purposes."  Contrary to Plaintiff's contention, Section

2712 does not impose liability on the United States if "one of its agents discloses or uses information obtained under color of law by electronic surveillance, knowing or having reason to know that the information was obtained through electronic surveillance not authorized by FISA." *See* Pl. Opp. at 11.  As in his complaint, Plaintiff inaccurately describes the cause of action for FISA violations under Section 2712, using language that tracks 50 U.S.C. § 1809.  But Section 2712 provides no remedy for a violation of Section 1809.  *See* Government Defendants' Motion to Dismiss ("Gov't Br."), ECF No. 88-1 at 51.

Plaintiff twice suggests that the legislative history of FISA demonstrates that the use or disclosure restriction in Section 1806(a) incorporates the criminal liability standard in Section 1809.  *See* Pl. Opp. at 11, 13.  In fact, the 1978 Committee Report language quoted by Plaintiff addresses only the criminal penalty provision in Section 1809, not the use and disclosure restriction in Section 1806(a).  *See* H.R. Rep. No. 95-1720, at 33 (1978) (addressing "Criminal Penalty" provision).  *Cf. id.* at 30 (addressing provision regarding "Authority to Use Information").

Plaintiff also fails to point to any case law supporting his reformulation of the standard for a claim under Section 2712 and Section 1806(a).  As explained by another district court in a case Plaintiff himself cites, *see* Pl. Opp. at 11, the elements of a claim under 18 U.S.C. § 2712(a) and 50 U.S.C. § 1806(a) are: (1) a willful (2) disclosure or use (3) of information acquired from an electronic surveillance conducted pursuant to FISA (4) without the consent of the person who was the subject of the surveillance and (5) without the required minimization procedures, or without any lawful purpose.  *Fikre v. FBI*, 142 F. Supp. 3d 1152, 1169 (D. Or. 2015).  Thus, even if information disclosed or used by the Government was "obtained through electronic

surveillance not authorized by FISA," Pl. Opp. at 11, that allegation is neither necessary nor sufficient to establish a claim under Section 2712.

**B.  Plaintiff Fails to Plausibly Allege a Violation of Section 1806(a).**

Plaintiff also fails to show that the SAC plausibly alleges any unlawful use or disclosure of information obtained by electronic surveillance pursuant to FISA.

To the extent Plaintiff's claim rests on a theory of media leaks, Plaintiff fails to plausibly allege a leak of information obtained via electronic surveillance pursuant to FISA, as opposed to information signaling the mere existence of certain FISA orders.  *See* Gov't Br. at 52.  Plaintiff points to no information contradicting the Government's observation that the articles based on alleged leaks merely discuss FISA orders, and do not say anything about information obtained from surveillance undertaken pursuant to the orders.  Pl. Opp. at 12.  Rather, Plaintiff asserts that "it is far from clear that [the Government] is correct," adding that "it is not clear what unlawful disclosures of FISA-related information were made to the reporters who wrote these articles." *Id.*  Plaintiff's unsupported speculation that the government may be wrong, or that there might have been other disclosures (not specifically pleaded) are insufficient to withstand the Government's Rule 12(b)(6) motion.  *See Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (explaining that a plaintiff "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009))).

To the extent Plaintiff relies on a theory that "information unlawfully obtained" pursuant to FISA orders was used in renewal applications for additional orders, he fails to state a claim for multiple reasons.

First, as noted above, a claim under Section 2712 and Section 1806(a) requires a showing that information obtained via electronic surveillance pursuant to FISA was used or disclosed for an unlawful purpose. *See supra* Part II.A. This standard turns on the purpose for which the information is used or disclosed, not on whether it was unlawfully collected. *See* Gov't Br. at 50–51. Plaintiff fails to identify any authority suggesting that the use of FISA-acquired information to seek authorization to conduct surveillance could constitute use for an "unlawful purpose." Nor does Plaintiff plead allegations that the purported use of such information in renewal applications was for some purpose other than seeking authorization to conduct surveillance. Plaintiff's assertion that "the legislative history of FISA" indicates that he can rely on allegations that the information at issue was unlawfully obtained, Pl. Opp. at 13, is again an attempt to bootstrap language addressing FISA's criminal penalty provision in Section 1809 to the use and disclosure restriction in Section 1806(a). *See supra* Part II.A. Because obtaining an order from the FISC to conduct surveillance is a lawful purpose, *see* Gov't Br. at 53, and because Plaintiff does not even attempt to argue that the SAC alleges a violation of minimization procedures, *see id.*, Plaintiff's renewal application theory cannot support a viable Section 2712 claim.

Second, even if use of unlawfully obtained electronic surveillance information in a FISA renewal application could form the basis for a Section 2712 claim, Plaintiff does not point to any factual allegations in the SAC supporting a conclusion that the renewal applications included FISA-acquired information. Plaintiff asserts that it is "logical and plausible" to conclude that the renewal applications contained such information because there were "four successive warrants issued by the FISC." Pl. Opp. at 13. This reasoning, however, is mere supposition, and thus

"stops short of the line between possibility and plausibility."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Third, even if Plaintiff had alleged a use or disclosure in the renewal applications and an unlawful purpose, he points to no factual allegations that would allow the Court to plausibly infer that any violation of Section 1806(a) was willful.  *See* Gov't Br. at 54.  Indeed, Plaintiff's only response on this point is a brief suggestion that he is not required to point to any such allegations at the motion to dismiss stage.  *See* Pl. Opp. at 13-14.  He cites no legal authority for his contention that he is excused from pleading facts to support one of the elements of his claim.

Finally, Plaintiff does not identify factual allegations plausibly suggesting any other unlawful use or disclosure of FISA-acquired information.  *See* Gov't Br. at 55-57.  Instead, Plaintiff again suggests in passing that he is not required to identify such information at the motion to dismiss stage, Pl. Opp. at 13, and states in a conclusory manner that "[t]he SAC provides ample notice," *id.* at 14.  But here again, Plaintiff is not excused from pleading facts to support the elements of his claim, and he sets forth nothing to support his claim that there was some other unlawful use or disclosure of FISA-acquired information.  Moreover, as undisputed by Plaintiff, a claim based on any such alternative theory would be jurisdictionally barred because it was not included in Plaintiff's administrative claim.  *See* Gov't Br. at 55.

## C.  Plaintiff's Putative PATRIOT Act Claim Is Time-Barred.

Plaintiff also fails to refute the Government's showing that his putative PATRIOT Act claim is time-barred because it accrued more than two years before he filed his administrative claim on September 30, 2020.  *See* Gov't Br. at 47–50.

First, to the extent Plaintiff relies on the media leak theory, Plaintiff admits that his allegations and the judicially noticeable documents before the Court show that he complained

about the alleged leaks as early as mid-2017, more than two years before he filed his administrative claim on September 30, 2020. *See* Pl. Opp. at 17; Gov't Br. at 48. Plaintiff contends that he had "no real ability to investigate or confirm the source of these leaks at that time." Pl. Opp. at 17. But Plaintiff does not identify any facts regarding those alleged leaks that were unavailable to him before September 30, 2018, and that now form the basis for his claim.

Second, to the extent his claim is based on a theory that FISA information was used to obtain renewal orders, Plaintiff does not dispute that the allegations of the SAC and judicially noticeable documents before the Court demonstrate that he was aware of the existence of the subsequent orders since at least July 2018. Pl. Opp. at 17, 18. Moreover, Plaintiff acknowledges that the Government has never publicly confirmed or denied whether information obtained via FISA appears in the renewal applications. Pl. Opp. at 18. In other words, though his claim is premised on a theory that FISA information appeared in renewal applications, he acknowledges that, at the time he filed his administrative claim, he had no more information about the content of the applications than he did more than two years earlier, after their public release. *See* Gov't Br. at 49.

Third, to the extent his claim rests on a theory that the Government used unlawfully "obtain[ed]" FISA information, Plaintiff likewise fails to identify relevant facts that he was unable to discover until after September 30, 2018. Even if unlawfully "obtain[ing]" FISA information could form the basis for a Section 2712 claim, Plaintiff is still out of time because he has contended since at least 2017 that he was subject to unlawful FISA surveillance. Pl. Opp. at 17-18. Plaintiff argues that his claim nonetheless did not accrue at that time because his contention that he had been subjected to unlawful surveillance was merely a suspicion, and he became aware of specific defects in the original FISA orders only upon publication of a report

entitled *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* (December 2019), https://www.oversight.gov/sites/default/files/oig-reports/o20012.pdf ("OIG Report" or "Report").  Pl. Opp. at 18.  But, as noted in the Government's opening brief, Gov't Br. at 47, accrual is not delayed until a plaintiff "has access to or constructive knowledge of all the facts required to support his claim."  *Sprint Commc'ns Co., L.P. v. F.C.C.*, 76 F.3d 1221, 1228 (D.C. Cir. 1996) (interpreting FTCA discovery rule).  Rather, the clock begins to run when the plaintiff "had such notice as would lead a reasonable person either to sue or to launch an investigation that would likely uncover the requisite facts."  *Sparshott v. Feld Ent., Inc.*, 311 F.3d 425, 429 (D.C. Cir. 2002) (interpreting similar standard in a different Wiretap Act provision).

Plaintiff argues that any claim based on alleged unlawful electronic surveillance under FISA did not accrue before the OIG Report was made public because he was not required to file suit "on a hunch," citing *Hobson v. Wilson*, 737 F.2d 1, 38-39 (D.C. Cir. 1984), and *Richards v. Mileski*, 662 F.2d 65, 72 (D.C. Cir. 1981).  Pl. Opp. at 17-18.  However, *Hobson* and *Richards* are inapposite as they addressed equitable tolling of a statute of limitations based on fraudulent concealment.  *See Hobson*, 737 F.2d at 33; *Richards*, 662 F.2d at 70.  Plaintiff has not asserted any such fraud claim, let alone pleaded its elements with specificity, as required by Rule 9(b) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 9(b); *Firestone v. Firestone*, 76 F.3d 1205, 1211 (D.C. Cir. 1996) ("Parties pleading fraudulent concealment 'must plead with particularity the facts giving rise to the fraudulent concealment claim and must establish that they used due diligence in trying to uncover the facts.'" (citation omitted)).

Accordingly, Plaintiff's PATRIOT Act claim is time-barred.

III.     **THE COURT SHOULD DISMISS COUNT 5 (FTCA CLAIM).**

A. **Plaintiff Fails to State a Claim for Abuse of Process.**

The SAC fails to state a claim for abuse of process under D.C. law because it does not

allege Defendants used the FISA process for any purpose other than what FISA specifically

contemplates (*i.e.*, to conduct surveillance as part of a foreign intelligence investigation)*.  See*

Gov't Br. 88-1 at 2, 20–23.  As the D.C. Court of Appeals has held:

> The mere issuance of process is not actionable, no matter what ulterior motive may have
> prompted it; the gist of the action lies in the improper use after issuance.  Consequently,
> two elements are essential:  (1) the existence of an ulterior motive; and (2) an act in the
> use of the process other than such as would be proper in the regular prosecution of the
> charge.

*Hall v. Hollywood Credit Clothing Co.*, 147 A.2d 866, 868 (D.C. 1959) (emphasis omitted).

Plaintiff argues that he can bring an abuse-of-process claim based on the theory that

Defendants made material misstatements and omissions to obtain FISA orders without probable

cause for the ulterior motive of surveilling Plaintiff and the Trump campaign.  *See* Pl. Opp. at

21–23.  While some jurisdictions might allow an abuse-of-process claim on such a theory,[1] D.C.

law does not.  For example, in *Golden Commissary Corp. v. Shipley*, 157 A.2d 810 (D.C. 1960),

the court affirmed the dismissal of the plaintiffs' claims for both malicious prosecution and abuse

of process even though the complaint alleged that the defendant had caused civil proceedings to

be brought against the plaintiffs "maliciously and without probable cause."  *Id.* at 813.

---

[1] In pressing this argument, Plaintiff relies almost entirely on cases from outside the
District of Columbia.  *See* Pl. Opp. at 21–22 (citing *Gonzalez Rucci v. U.S. I.N.S.*, 405 F.3d 45,
50 (1st Cir. 2005); *Morin v. Caire*, 77 F.3d 116, 122–23 (5th Cir. 1966); *Garcia v. City of
Merced*, 637 F. Supp. 2d 731, 750 (E.D. Cal. 2008); *Martinez v. City of W. Sacramento*, No.
2:16-cv-02566-TLN-EFB, 2019 WL 448282, at *23 (E.D. Cal. Feb. 5 2019); *Watson v. City of
Kansas City*, 185 F. Supp. 2d 1191, 1208 (D. Kan. 2001)).  To the extent these cases stand for
the propositions for which Plaintiff cites them, they are inconsistent with D.C. law and should
not be followed.

With respect to the plaintiffs' abuse-of-process claim in particular, the court in *Golden Commissary* explained that no abuse of process occurred because the process of the court was used for its normal and usual purpose. *Id.* at 814 (citing *Hall*, 147 A.2d 866). Thus, Plaintiff is wrong that D.C. law recognizes an abuse-of-process claim based on allegations that process was initiated maliciously and without probable cause, without also alleging some collateral misuse of the process after initiation.[2]

Plaintiffs' reliance on *Hall v. Field Enterprises, Inc.*, 94 A.2d 479 (D.C. 1953) ("*Hall I*") is misplaced. *Hall I* does not support Plaintiff's assertion that even where process is used as intended it amounts to an abuse of process if it is obtained without proper justification. In *Hall I*, plaintiff alleged that the defendants wrongfully and falsely filed a suit against the plaintiff for a debt owed by the plaintiff's wife and then improperly used the judgment to obtain a writ of attachment on his wages. *Id.* at 480. Plaintiff alleged that the defendants' conduct amounted to an abuse of process because they knew the plaintiff did not owe the debt and pursued the action and writ nonetheless. *Id.*

---

[2] For example, in *Spiller v. District of Columbia*, 362 F. Supp. 3d 1, 6 (D.D.C. 2019), the plaintiffs alleged that the police officers committed an abuse of process by criminally charging plaintiffs in an attempt to cover up their assault of the plaintiffs. The court found that the plaintiffs did not allege the kind of perversion of the judicial process that gives rise to a cause of action for abuse of process. *Id.* at 7. "Rather a perversion of the judicial process requires some 'collateral purpose,' such as 'pressur[ing] [the defendant] into taking [an] action or prevent[ing] him from taking [an] action,' or 'stifl[ing] competition by dissuading third parties from investing in the [defendant's] business venture.'" *Id.* (quoting *Scott v. District of Columbia*, 101 F.3d 748, 756 (D.C. Cir. 1996) (alteration in original)). "Without any allegation of improper coercion or some other 'collateral purpose' Plaintiffs' abuse of process claim . . . cannot stand." *Id.* at 8. Additionally, D.C. courts have repeatedly rejected plaintiffs' attempts to label a tort as abuse of process where the alleged misuse of process centered on the initiation of that process and did not allege some collateral misuse of the process after its issuance. *See Morfessis v. Baum*, 281 F.2d 938, 940 (D.C. Cir. 1960) (rejecting the plaintiff's attempt to label his tort abuse of process where plaintiff alleged defendants lacked foundation for the process); *Rynn v. Jaffe*, 457 F. Supp. 2d 22, 25 (D.D.C. 2006) (rejecting the plaintiffs' attempt to label their claim as an abuse of process where "plaintiffs claim[ed] that defendants acted 'without probable cause.'").

Although the court in *Hall I* reversed the lower court's dismissal of the claim, when the case was later appealed again, the court ruled that the plaintiff had failed to bring an abuse-of-process claim because the defendants had used the process for a procedurally proper purpose. *Hall v. Field Enterprises, Inc.*, 114 A.2d 840, 841 (D.C. 1955) ("*Hall II*"). The court reasoned that "[t]he process used against the plaintiff was used for its legally intended purpose: to obtain a judgment against the plaintiff and to obtain satisfaction of that judgment by garnishment." *Id.* Notably, the court in *Hall II* so concluded even though defendants brought the lawsuit against the plaintiff for a debt his wife had incurred.

Thus, when process has been used for its legally intended purpose, a claim for abuse of process will not lie, even if the defendant procured the process without probable cause. *See Golden Commissary Corp.*, 157 A.2d at 813–14 ("[T]he most that can be said for the amended complaint is that it charged that civil proceedings were brought against the appellants maliciously and without probable cause and that such proceedings terminated in their favor. This did not constitute malicious prosecution and the trial court correctly dismissed this claim."); *id.* at 814 ("If we treat the claim as one for malicious abuse of process, though not so designated, the result is the same. The process of the court was used for its usual and normal purpose. There was no abuse of process."). Accordingly, Plaintiff's purported abuse of process claim is legally insufficient and should be dismissed as a matter of law.[3]

---

[3] To the extent that Plaintiff relies on *Whelan v. Abell*, 953 F.2d 663, 670 (D.C. Cir. 1992), and *Neumann v. Vidal*, 710 F.2d 856, 860 (D.C. Cir. 1983), to support the notion that the mere initiation of a suit and allegation of an ulterior motive is sufficient to plead abuse of process, "these cases have been superseded by more recent decisions embracing the more restrictive standard of" *Bown v. Hamilton*, 601 A.2d 1074, 1079–80 (D.C. 1992), and *Morowitz*, 423 A.2d 196, 198–99 (D.C. 1980). *Nader v. Democratic Nat'l Cmte.*, 555 F. Supp. 2d 137, 160–61 (D.D.C. 2008), *aff'd on other grounds*, 567 F.3d 692 (D.C. Cir. 2009); *see also Harrison v. Howard Univ.*, 846 F. Supp. 1, 2 n.3 (D.D.C. 1993) (holding to the extent *Whelan* and

**B. Plaintiff's Abuse-of-Process Claim Is Time-Barred**

In its opening brief, the United States further demonstrated that Plaintiff's abuse-of-process claim is time-barred because it was not presented to the appropriate federal agency within two years of the claim's accrual as required by 28 U.S.C. § 2401(b). *See* Gov't Br. at 2, 23–27. In so arguing, the United States specifically relied on assertions Plaintiff himself made in submissions to the court in one of his earlier lawsuits. *See Page v. Oath, Inc., et al.*, Civil Action No. 17-CV-06990-LGS (S.D.N.Y); ECF Nos. 88-24, 88-26 & 88-28.

These submissions–all of which were filed by Plaintiff in the earlier *Oath, Inc.* litigation more than two years before Plaintiff belatedly presented his FTCA administrative tort claim–establish Plaintiff's awareness of what had been widely reported in the media, and contain numerous assertions by him that there had been an "abuse of process." [4] In these submissions, not only did Plaintiff specifically reference media reports and the House Permanent Select Committee ("HPSCI") memo reporting that he had been the target of FISA surveillance, but he also repeatedly asserted that DOJ and the Federal Bureau of Investigation ("FBI") had submitted

---

*Neumann* were inconsistent with *Bown* and *Morowitz* the district court was bound to apply the latter two decisions), *aff'd*, 48 F.3d 562 (D.C. Cir. 1995)).

[4] *See, e.g.*, ECF No. 88-24 (Exh. V, Pl.'s Mem. of Law in Op. to Def. BBG's Mot. to Dismiss at 22 (filed Jan. 19, 2018)) ("[T]he libelous false information campaign against Dr. Page is now widely believed to have been a primary cause of the abuse of process in the FISC[.]"); ECF No. 88-26 (Exh. X, Pl.'s Letter Brief at 1 (filed Feb. 5, 2018)) (asserting that "HPSCI memo," which had been released three days earlier, had underscored applicability of FTCA's "abuse of process" exception and confirmed Plaintiff's allegations that "false evidence" had been submitted to FISC); ECF No. 88-28 (Exh. Z, Pl.'s Letter Brief at 1 (filed Apr. 16, 2018)) ("[R]epresen-tatives of DOJ and the FBI have continued to act illegally throughout this rare instance of alleged Article III federal district court abuse of process on an unprecedented scale since 2016, leading to extensive national indignation in some quarters."); *id.* at 4 n. i ("This rejection throughout society has been most vividly seen throughout recent debates in Congress regarding the abuse of process with regard to acts or omissions of investigative or law enforcement officers of the USG in the U.S. Foreign Intelligence Surveillance Court[.]")

false information to the FISC in order to obtain FISA orders authorizing this surveillance.  *See* Gov't Br. at 14–15.

Plaintiff's Opposition does not even mention his prior *Oath, Inc.* lawsuit or the various submissions cited by the United States in its opening brief.  Plaintiff instead argues that in considering a motion to dismiss that challenges the timeliness of his claim, this Court may consider only the facts he chose to allege in the SAC.  *See* Pl. Opp. at 23–24.  He then argues that his abuse-of-process claim did not accrue until January 7, 2020, the date on which the FISC issued an unclassified order discussing an earlier non-public filing in which, according to Plaintiff, the Government had conceded that probable cause was lacking for two of the FISA applications at issue in this case.  *See* Pl. Opp. at 25–26 (citing *In re Carter W. Page, a U.S. Person,* FISC Docket Nos. 16-1182, 17-52, 17-375, 17-679, Order of Jan. 7, 2020).

Neither argument has merit.  First, the law is clear that in ruling on a motion to dismiss based on the statute of limitations, a court may properly take judicial notice of the plaintiff's publicly filed submissions in a related case.  *See Capitol Servs. Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784, 789 (D.C. Cir. 2019) ("The district court properly took notice of Capitol Services' allegations in the Superior Court action not for their truth, but for the fact that Capitol Services believed those allegations to be true and viable legal claims at the time they were made."), *citing Watkins v. United States,* 854 F.3d 947, 949 (7th Cir. 2017).  That is all the United States asks this Court to do in this matter.

Second, in arguing that his abuse-of-process claim did not accrue until he learned probable cause was lacking for two of the FISA applications at issue in this case, Plaintiff misapprehends the rule that governs the accrual of claims under the FTCA.  While the District of Columbia applies a liberal discovery rule under which its own statute of limitations does not

begin to run "until the plaintiff 'knows or by the exercise of reasonable diligence should know:
(1) of the injury; (2) the injury's cause in fact; and (3) of some evidence of wrongdoing,'"
*Capitol Servs. Mgmt.*, 933 F.3d at 791 (quoting *Capitol Place I Assocs. L.P. v. George Hyman
Constr. Co.*, 673 A.2d 194, 199 (D.C. 1996); *see also Bussineau v. President & Dirs. Of
Georgetown College*, 518 A.2d 423, 425 (D.C. 1986), a more stringent discovery rule applies in
FTCA cases.

Under this stricter rule, the accrual of an FTCA claim is not postponed until evidence of
wrongdoing on the part of the Government becomes available to a would-be plaintiff; instead,
the FTCA's two-year limitations period begins running once the would-be plaintiff knows, or by
the reasonable exercise of diligence should know, of both his injury and its cause. *See United
States v. Kubrick*, 444 U.S. 111, 120-23 (1984) (plaintiff's claim for medical malpractice under
FTCA accrued when he discovered his injury and its cause, rather than when he later discovered
that injury had been negligently inflicted); *Sexton v. United States*, 832 F.2d 629, 636 (D.C. Cir.
1987) (rejecting as inconsistent with *Kubrick* a "notice of the wrong" standard for accrual); *see
also M.J. ex rel. Jarvis v. Georgetown University Medical Ctr.*, 962 F. Supp. 2d 3, 7 (D.D.C.
2013) (accrual of claim under FTCA governed by federal law) (citing *Sexton*, 832 F.2d at 633
n.4); *cf. Bussineau*, 518 A.2d at 428 (declining to follow *Kubrick*'s injury-and-its-cause
discovery rule and instead adopting as D.C. law more liberal some-evidence-of-wrongdoing
discovery rule).

Here, as previously explained, Plaintiff's submissions in his earlier *Oath, Inc.* lawsuit
establish that he knew he had been the subject of FISA surveillance and that he had suffered
purported injury as a result of that surveillance, and that he contended that the FBI and DOJ
caused the surveillance to happen. *See* ECF No. 88-24 at 13–14.  The situation is analogous to

14

*Kubrick*, in which the plaintiff had submitted an application for veterans' benefits alleging that his treatment with neomycin while receiving care in a Veterans Administration hospital had caused his deafness, thereby demonstrating his awareness of the possible causal connection between his injury and his treatment.  The Court held that the plaintiff's claim for medical malpractice under the FTCA accrued when he became aware of this possible causal connection (which was the basis for his application for veterans' benefits), rather than when he later learned that the neomycin treatment he had received did not meet the applicable standard of care.

In any event, Plaintiff specifically asserted in his *Oath, Inc.* submissions that the FBI and DOJ had submitted "false evidence" to the FISC, and that doing so was an "abuse of process."[5] Thus, even if Plaintiff could base an abuse-of-process claim on the theory that the FBI and DOJ submitted false information to obtain FISA orders authorizing the surveillance of Plaintiff and the Trump campaign, accrual of this claim was not delayed until the Government's supposed concession that probable cause was lacking for some of the FISA applications (or other evidence of Government wrongdoing).  *See Callahan v. United States*, 426 F.3d 444, 454–55 (1st Cir. 2004) (certainty is "not required for a claim to accrue"); *see also Kronisch v. United States*, 150

---

[5] *See, e.g.*, ECF No. 88-26 (Exhibit X, Pl.'s Letter Brief at 1).  In this letter brief, Plaintiff specifically cited and relied on the "Nunes Memo" (which the letter brief referred to as the "HPSCI memo").  Plaintiff's allegations supporting his abuse-of-process claim in his SAC closely track the Nunes Memo concerning the dossier.  For example, the SAC alleges that the FBI and DOJ relied on a "dossier" created by Christopher Steele (a former FBI confidential human source) to form an essential part of the FISA applications.  *See* ECF No. 73, ¶ 9.  This specifically tracks the assertions in the Nunes Memo concerning the dossier.  *See* ECF No. 88-12 at 5 ("The 'dossier' compiled by Christopher Steele . . . formed an essential part of the Carter Page FISA application").  The SAC's allegations that "the application does not mention Steele was ultimately working on behalf of – and paid by – the DNC and Clinton campaign," also track the same information in the Nunes Memo.  *See* ECF No. 73, ¶ 96; *cf.* ECF No. 88-12 at 5.  A chart comparing information in the Nunes Memo to allegations in the SAC is attached to this brief as an appendix.

F.3d 112, 121 (2d Cir. 1998) (a plaintiff "need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim.").  Rather, accrual of Plaintiff's claim occurred when Plaintiff had sufficient facts allowing him to connect governmental action to his injuries.[6]

## IV.     THE COURT SHOULD DISMISS THE PRIVACY ACT CLAIMS FOR ACCESS OR AMENDMENT, OR GRANT SUMMARY JUDGMENT FOR THE GOVERNMENT.

### A.  Plaintiff Has Not Shown that He Exhausted Administrative Remedies.

In his Opposition, Plaintiff fails to show that he exhausted administrative remedies with respect to Count 7.  For Privacy Act claims, exhaustion is a jurisdictional requirement.  *See* Gov't Br. at 30.  Thus, contrary to Plaintiff's contention, failure to exhaust is not an "affirmative defense," Pl. Opp. at 29, and the burden rests with Plaintiff to show that the SAC adequately

---

[6] It is unclear whether Plaintiff intends to invoke the doctrine of fraudulent concealment in arguing that his abuse of process claim is timely.  In support of the argument that his PATRIOT ACT claim was timely, Plaintiff cites *Hobson v. Wilson*, 737 F.2d 1 (D.C. Cir. 1984).  *See* Pl's Opp. at 18, 26.  Any attempt by Plaintiff to rely on fraudulent concealment with respect to his FTCA claim fails for two reasons.  First, he has not pleaded with particularity the facts giving rise to a claim of fraudulent concealment.  *See supra*, Section II.C.  *Hobson* held that to plead fraudulent concealment, a plaintiff must assert that "defendants . . . engage[d] in some misleading, deceptive or otherwise contrived action or scheme, *in the course of committing the wrong*, that is designed to mask the existence of a cause of action." 737 F.2d at 34 (emphasis added); *see also Lewis v. United States*, 173 F. Supp. 2d 52, 55 (D.D.C. 2001), *vacated on other grounds*, 290 F. Supp. 2d 1 (D.D.C. 2003) (failure to disclose information does not rise to the level of fraudulent concealment).  Here, Plaintiff has merely pointed out that FISA applications are "highly classified and fundamentally secret," *see* Pl. Opp. at 16.  Second, the judicially noticeable documents establish that Plaintiff possessed information concerning his asserted cause of action and knew who was responsible for his injury, thus demonstrating he was on "notice of a potential claim."  *Hobson*, 737 F.2d at 35 (doctrine of fraudulent concealment does not come into play "[i]f a plaintiff is on notice of a potential claim.").  Here, in short, Plaintiff had information very much like the information possessed by the three plaintiffs in *Hobson* whose *Bivens* claims the D.C. Circuit held were untimely even under the fraudulent concealment doctrine.  *See id.* at 39 (holding time-barred claims of three plaintiffs who were aware that they had been the subjects of surreptitious FBI surveillance and had read newspaper and magazine articles concerning FBI's secret surveillance program).

alleges exhaustion.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)

(explaining that plaintiff bears burden of establishing jurisdiction); *see, e.g.*, *Trent v. DHS*, No.

CV 18-2591 (ABJ), 2020 WL 1429881, at *3 (D.D.C. Mar. 24, 2020) (noting that Privacy Act

plaintiff bears burden of showing a proper administrative appeal).  To the extent the district court

in *Ramstack v. Dep't of the Army*, the case cited by Plaintiff, suggested that exhaustion *is* an

affirmative defense in the Privacy Act context, that court was incorrect, and misapplied language

from *Bowden v. United States*, 106 F.3d 433, 437 (1997), which was not a Privacy Act case.  *See

Ramstack*, 607 F. Supp. 2d 94, 104 (D.D.C. 2009); *Bowden*, 106 F.3d at 437 (addressing failure

to exhaust as an affirmative defense to a claim that the agency had breached a Title VII

settlement agreement).  The other case cited by Plaintiff, *Thompson v. DEA*, likewise did not

involve a Privacy Act claim.  *See* 492 F.3d 428, 438 (D.C. Cir. 2007) (discussing whether a

court's dismissal of a prisoner's Freedom of Information Act claim based on failure to exhaust

counted as a "strike" under the Prison Litigation Reform Act).

> With respect to the final OIG Report, Plaintiff does not even attempt to argue that he
administratively exhausted a request to amend the final OIG Report.  Neither the SAC nor the
opposition brief alleges that Plaintiff ever made a request to amend the final OIG Report.
Indeed, Plaintiff makes no argument at all about the final OIG Report in this portion of his
opposition brief, resting entirely on his erroneous understanding of whose burden it is to prove
exhaustion of administrative remedies.  Pl. Opp. at 29-20.  But even if Plaintiff is right that the
Government must show that the complaint "reveals the exhaustion defense on its face," *id*. at 29,
the Government has done this because the SAC does not allege that Plaintiff made a request to
amend the final OIG Report.

Instead Plaintiff argues that he constructively exhausted his administrative remedies because DOJ never addressed his request to access the draft report or informed him of his appeal rights with respect to the draft report.  *Id.*  But nowhere does Plaintiff maintain that he seeks access to or amendment of the *draft* report in this lawsuit.  Instead, he wants the *final* Report amended.  *See, e.g.*, Pl. Opp. at 28 ("The Horowitz Report contains errors that Dr. Page has a right to have amended"), *id*. 32 ("The public Report . . . is what Dr. Page sought to review.").  As for the SAC, it merely vaguely seeks "injunctive relief compelling Defendant DOJ to amend inaccurate records concerning him," SAC ¶ 294.  Notably, the Government specifically argued in its opening brief that "Plaintiff does not appear to have any interest in seeking access to the *draft* at this point (the only request he even arguably exhausted); he wants amendment of the final OIG Report," Gov't Br. at 31, and Plaintiff failed to argue otherwise.  *See* Pl. Opp. at 29-30.

## B.  Plaintiff's Failure to Identify Alleged Errors in the Report Precludes Him from Stating a Claim for Amendment.

With respect to his claim for amendment, Plaintiff concedes that the SAC does not actually identify any errors in the OIG Report, and instead specifically and heavily relies on it. *See* Pl. Opp. at 30; Govt. Br. at 31.  As set forth in the Government's opening brief, the failure to identify any such errors precludes Plaintiff from stating a claim for relief because the Privacy Act's amendment provision only allows "for correction of facts."  Gov't Br. at 31 (quoting *McCready v. Nicholson*, 465 F.3d 1, 19 (D.C. Cir. 2006)).  Plaintiff cites no authority in support of his contention that "[t]here is no need to detail the alleged errors in order to provide the Government with the requisite notice."  Pl. Opp. at 30.  Without knowing which statements a plaintiff seeks to amend, a court has no way to assess whether it is plausible that the agency failed to correct an error, and the defendant has no way to defend against the claim that statements are inaccurate.  In other words, because he has not identified alleged errors in the OIG

Report, Plaintiff has not pleaded "'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'"  *Atherton*, 567 F.3d at 681-82.  Accordingly, to the extent Plaintiff seeks amendment of the OIG Report, Count 7 fails to state a claim for relief.

### C.  The OIG Report Is Not in a System of Records.

Neither the final nor the draft OIG Report is in a system of records because these reports are not retrieved by Plaintiff's name.  Gov't Br. 32-34; 5 U.S.C. § 552a(a)(5).  Plaintiff argues that this "elevates form over substance" and identifies various instances in which the OIG Report is "linked" to Plaintiff by name.  Pl. Opp. 34-38.  The Government does not dispute that the report includes Carter Page's name.  In fact, prior to the issuance of the OIG Report, Plaintiff, Congress, and the President had already publicly disclosed the connection between "Carter Page" and the Crossfire Hurricane investigation.  However, the definition for a system of records is not whether an individual's name is "linked" or "tied" to a particular document.  Rather, whether a system of records exists hinges on whether the information in question is "actually retrieved" by personal identifier.  *Maydak v. United States*, 630 F.3d 166, 178 (D.C. Cir. 2010) ("*Maydak II*").

Relying on *Maydak I*, Plaintiff argues that even incidental retrievals of information by personal identifier may be sufficient where the files are for investigatory purposes.   Pl. Opp. 35 (citing *Maydak v. United States*, 363 F.3d 512 (D.C. Cir. 2004) (finding that certain photographs of inmates compiled and reviewed for the purpose of investigating inmates were at least in some instances retrieved by personal identifier)).  Here, there is no indication that the OIG Report or draft are or would be retrieved by Plaintiff's identifiers.  The OIG Report does not document an OIG investigation of Plaintiff or his actions, and he was not even a witness in connection with the investigation.  Rather, OIG was investigating DOJ and FBI actions in connection with

Crossfire Hurricane, including the FISA applications regarding Plaintiff.  Nothing in the Report, the OIG website, the pleadings, or any of the documents cited by Plaintiff, *see* Pl. Opp. 35, suggests that the Report is indexed or retrieved by Plaintiff's name or identifiers.  The Malis Declaration confirms the same.

This matter is therefore analogous to *McCready*, where the Court of Appeals relied on an agency declaration to find that the OIG report at issue was not retrieved by personal identifier. *See generally McCready v. Nicholson*, 465 F.3d 1 (D.C. Cir. 2006).  Moreover, the OIG report in *McCready* discussed an OIG investigation of the plaintiff herself.  Plaintiff here argues that the decision in *McCready* "was not intended to be a roadmap for an agency to circumvent Privacy Act requirements," Pl. Opp. at 37, but fails to distinguish that case in any meaningful way.  He quotes *McCready*'s language about holding an agency accountable for records "it can easily retrieve consistent with its day to day practice of information management," and argues that OIG's "day to day practice of information management is to maintain the [OIG] Report on the OIG website, to publicly tie it to Dr. Page, and to advise the public exactly how to use it," Pl. Opp. at 37, but none of that speaks to OIG's retrieval of the Report.  And *McCready* already rejected that information is retrievable by personal identifier where the public can search an OIG record on OIG's website via an individual identifier, explaining that "the practice of retrieval by name or other personal identifier must be an *agency* practice to create a system of records and not a 'practice' by those outside the agency."  465 F.3d at 13.[7]

---

[7] In *Gerlich v. U.S. Dep't of Justice*, 711 F.3d 161 (D.C. Cir. 2013), also cited by Plaintiff, Pl. Opp. 37, the Court of Appeals rejected a plaintiff's effort to shoehorn documents into a system of records based on the plaintiff's arguments that it should have been in a system of records as a functional matter.  Plaintiff here quotes from a portion of the opinion that is summarizing the *Gerlich* plaintiff's rejected argument.

Finally, Plaintiff argues that he has had no opportunity to conduct discovery, and cites Fed. R. Civ. P. 56(d).  Pl. Opp. 37.  He has not submitted an affidavit as required by Rule 56, or identified the specific additional facts he needs or discovery he intends to serve, and he has made no showing that discovery is necessary or appropriate.  This Court should rule on the pleading and judicially noticed documents to dismiss the claim in the face of no plausible allegations that the OIG Report is retrieved by personal identifier.  But in the alternative, the Court is bound by the D.C. Circuit decision in *McCready*, where the court relied on an undisputed agency declaration, rejecting the plaintiff's request for discovery, to hold that the OIG report was not in a system of records, for the very reasons submitted here.  465 F.3d at 12-14.

### D.  OIG Investigative Files Are Exempt from Access and Amendment Claims.

The Government previously explained that, even if the draft OIG Report were the proper subject of a claim here, and even if the draft OIG Report was contained in a system of records, it would be exempt from the access and amendment portions of the Privacy Act as part of OIG's investigative files.  Gov't Def. Br. 34-35.  The Malis Declaration explains that, in its entirety, the draft report is "investigatory material compiled for law enforcement purposes" under 5 U.S.C. § 552a(k)(2) and is thus exempt from the access and amendment provisions of the Privacy Act, and that it is further exempt because it contains classified information.  Malis Decl. ¶12.[8]  The Government has not asserted the same exemptions over the final OIG Report, which is publicly available with limited redactions (redactions that are not challenged by Plaintiff here).

---

[8] Importantly, Plaintiff is not now claiming a right to access the classified information in the draft report.  The draft report contained classified information—some of which was eventually declassified, and some of which is redacted from the final report because it remains classified.  Malis Decl. ¶ 12.  Plaintiff does not appear to challenge these redactions from the final, or seek access to classified information at all, claiming that he seeks access only to what was eventually released.  Pl. Opp. 32.

In opposition, Plaintiff first suggests that there is something improper about addressing this issue on summary judgment. Pl. Opp. 30-31. But, much like in the context of Freedom of Information Act ("FOIA") claims, courts typically consider Privacy Act exemptions on the basis of agency affidavits and a motion for summary judgment. *See, e.g.*, *Mobley v. CIA*, 924 F. Supp. 2d 24, 36 (D.D.C. 2013).

The main thrust of Plaintiff's argument in opposition is that Exemption (k)(2) applies only if the investigation was based on a concern that federal laws may have been violated, and that the OIG Report was a "compliance exercise" rather than a "law enforcement exercise." Pl. Opp. 32-34. Plaintiff points out that, in the FOIA context, courts have distinguished between files compiled in connection with investigations that focus on specific alleged illegal acts that could result in civil or criminal sanctions, and those compiled in connection with general oversight of the performance of employees. Plaintiff then declares the OIG Report to be "an oversight exercise." Pl. Opp. 33-34.

However, in compiling the draft OIG Report, OIG was clearly investigating potential violations of law and agency policy, and in fact found some violations of law. *See generally* OIG Report, available at https://www.justice.gov/storage/120919-examination.pdf. OIG investigated, among other specific acts, "the decision to open Crossfire Hurricane and four individual cases"; "the FBI's receipt, use and evaluation of election reports from [Christopher] Steele"; and "whether [the FISA applications pertaining to Carter Page] complied with Department and FBI policies and satisfied the government's obligations to the FISC." *See* OIG Report, at i. And the investigation of these specific acts specifically sought to uncover violations of law. *See id.* (describing OIG's role as considering "whether the Department and the FBI complied with applicable legal requirements, policies and procedures in taking" these actions);

22

*id*. at 8 (describing original announcement of investigation to include "[w]hether the Department and the FBI complied with legal requirements and applicable policies and procedures in FISA applications"). Not only did the inquiry culminate in prosecution of one of the individual Defendants, *see* SAC ¶ 131 (citing *United States v. Clinesmith*, No. 20-cr-165 (D.D.C. August 19, 2020)), but Plaintiff himself points to findings in the OIG Report as essential evidence of criminal wrongdoing. *See, e.g.*, SAC ¶¶ 3, 41-42; Pl. Opp. 16 (arguing that Plaintiff lacked knowledge of violations prior to release of the OIG Report). This investigation of specific activity for violations of law is not the sort of internal, ongoing monitoring or "customary surveillance" for compliance purposes that the D.C. Circuit suggested may not be investigatory for a law enforcement purpose under FOIA. *See* Pl. Opp. 33 (citing *Rural Hous. All. v. United States Dep't of Agric.*, 498 F.2d 73, 81-82 (D.C. Cir. 1974). Indeed, courts have found similar OIG reports to be investigatory. *See, e.g.*, *Croskey v. U.S. Office of Special Counsel*, 9 F. Supp. 2d 8, 11 (D.D.C. 1998) (finding OIG report itself was compiled for law enforcement purposes), *aff'd*, No. 98-5346, 1999 WL 58614 (D.C. Cir. Jan. 12, 1999); *Citizens for Resp. & Ethics in Washington v. DHS*, 525 F. Supp. 3d 181, 189 (D.D.C. 2021) (noting that "there is a strong argument that the OIG Report itself was compiled for law enforcement purposes" because it was investigating potential illegality).

It is of no moment that the review was conducted by the "Oversight and Review" Division within DOJ OIG, or that it was publicly released. *See* Pl. Opp. 33-34. Although there is also an "Investigations Division" within OIG, the Oversight and Review Division is not prohibited from conducting investigations that serve a law enforcement purpose; this division has a broad mission that includes "special reviews and investigations of sensitive allegations

involving Department employees and operations." *See* https://oig.justice.gov/about.[9]  Here, the

nature of the review and the resulting Report make clear that it did in fact serve a law

enforcement purpose.  And while the final OIG Report was intentionally created for public

release, that is often true of OIG investigations.  Transparency is not evidence that the Report

does not serve a law enforcement purpose.  And of course, a draft has not been released publicly

because it reflects the "then-ongoing deliberations and investigative activity related to the final

Report."  Malis Decl. ¶ 12.

## V.   THE COURT SHOULD DISMISS COUNT 8 (PRIVACY ACT DISCLOSURE).

The Court should dismiss Count 8 because this claim is time-barred and because Plaintiff

does not adequately allege actual damages, a required element of a Privacy Act disclosure claim.

Gov't Br. 36-44.

### A.  Count 8 Is Time-Barred.

Plaintiff's claim is time-barred because the cause of action arose more than two years

before this action was filed.  5 U.S.C. § 552a(g)(5); Gov't Br. 36-41.  Plaintiff is well aware of

the many, varied, judicially noticeable statements he has made regarding alleged FBI leaks to the

*Washington Post* and *New York Times* more than two years prior to the filing of this suit

(including statements in court filings, to Congress, to the media, and on social media).  *Id*.

Rather than attempt to distinguish his prior knowledge or explain how some new claim arose

more recently, Plaintiff primarily argues that the Court may not consider anything outside the

---

[9] The Oversight and Review Division's involvement in an investigation of potential illegality is not unique.  Other Oversight and Review reports similarly reflect OIG investigation of possible civil and criminal violations.  *See, e.g.*, *Report of Investigation of Former FBI Director James Comey's Disclosure of Sensitive Investigative Information and Handling of Certain Memoranda* (August 2019), https://www.oversight.gov/sites/default/files/oig-reports/o1902.pdf, at 2.

SAC itself, because the statute of limitations is somehow an exception to judicial notice.  There are at least two problems with this argument.  First, the statute of limitations bar is in fact apparent from the face of the SAC, which describes purported leaks in published articles far more than two years before this case was filed, and does not describe a single alleged violation that occurred less than two years before this action was filed.  *See* SAC ¶¶ 218-31 (describing 2017 articles).  Second, Plaintiff is mistaken in his assertion that the statute of limitation defense is somehow an exception to judicial notice.  Although it is an affirmative defense, courts routinely consider material appropriate for judicial notice in evaluating such claims on a motion to dismiss.  *See* Part I *supra*.

Plaintiff also argues that the cause of action did not accrue until he knew the identities of the leakers, which permitted him to conclude that the disclosure was intentional or willful as required by the statute.  But accrual does not require knowledge of the "precise details" of a disclosure, *see Hill v. DoD*, 981 F. Supp. 2d 1, 7 (D.D.C. 2013), especially given that the Privacy Act claim runs against the agency, not the individuals.  In many Privacy Act leak cases— including the *Convertino* case Plaintiff cites (Pl. Opp. at 39)—the plaintiff does not know the identity of the leaker at the time the complaint is filed but rather conducts discovery into it, in order to prove that the unauthorized disclosure was intentional and willful.  *See, e.g.*, *Convertino v. U. S. Dep't of Justice*, 684 F.3d 93, 97 (D.C. Cir. 2012); *Hatfill v. Gonzales*, 505 F. Supp. 2d 33 (D.D.C. 2007).  Plaintiff claimed knowledge (which is considerably more than inquiry notice) of illegal disclosures as early as May 2017, and repeated the same allegations in courts.  *See* Gov't Br. 39-40.  And even if Plaintiff was correct that he needed the identities of the leakers, which he is not, neither the SAC, nor Plaintiff's brief, identifies any event less than two years

before this action that identified the leakers, or provided him any information allegedly essential to his Privacy Act claim sufficient to make this claim timely. *See id*. 40 n.17.

Finally, Plaintiff argues the Court may not consider public documents regarding the Page-Strzok texts in considering when Plaintiff was on notice of the accrual of his cause of action. *See id*. Plaintiff did not need information regarding these allegations in order for a claim to accrue, and his claim is time-barred without regard to those text messages. But Plaintiff is also mistaken. The public documents (an opinion article and two tweets from Plaintiff's Twitter account) include statements from Plaintiff himself. Plaintiff cannot reasonably dispute the existence of the statements, or claim that he was unaware of his own statements more than two years prior to filing this lawsuit. Plaintiff hints darkly that discovery may turn up additional information. But public record documents, including allegations in the SAC, establish that the claim alleged in the SAC accrued more than two years before filing, and is time-barred. Plaintiff is not entitled to a fishing expedition as to some other as-yet unknown claim that he has not plausibly alleged in the SAC.

The Court should therefore conclude that Plaintiff's Privacy Act claim is barred because he failed to bring it within the applicable two-year statute of limitations.

## B. Plaintiff Has Not Plausibly Pleaded Actual Damages Caused by the Alleged Disclosures.

Count 8 should also be dismissed for failure to state a claim because Plaintiff has not plausibly pleaded actual damages that were proximately caused by the alleged disclosures. *See* 5 U.S.C. § 552a(g)(4); Gov't Br. 41-44. Plaintiff relies solely on an analogy to *Hill v. DoD*, where the plaintiff originally failed to plead "actual damages" as required by the Privacy Act, but the court permitted filing of an amended complaint that cured this deficiency by pleading specific pecuniary losses. *See Hill v. DoD*, 70 F. Supp. 3d 17, 21 (D.D.C. 2014).

In the amended complaint, Hill alleged that she made actual payments for medical treatment and transportation as a result of intense distress following the disclosure of her personal medical information, and that she lost employment opportunities following the disclosure of that information to a former supervisor who would not provide a reference. *Id*. Although the court in *Hill* ruled that details of specific payments and jobs were not required at the pleading stage, that plaintiff's pleadings as to damages and causation were far more specific than the SAC here, which relies on generalized allegations of economic harm and lost opportunities as a result of all of the misconduct alleged in the SAC, rather than these specific disclosures. There is also no indication in *Hill* that the disclosures followed widespread media reporting and lawful disclosures regarding the plaintiff. Plaintiff here has no rejoinder to the Government's argument that suspicions about his involvement with Russia were a subject of public discussion long before the alleged leaks in April 2017. *See* Govt. Br. at 43; Pl. Opp. at 40-42. Plaintiff thus fails to plead actual damages as required by the statute.

The Court should dismiss Count 8 for failure to state a claim.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the claims against the United States, the FBI, and DOJ.

Dated:  April 1, 2022                                    Respectfully Submitted,

                                                        BRIAN M. BOYNTON
                                                        Principal Deputy Assistant Attorney General

                                                        ALEXANDER K. HAAS
                                                        Director, Federal Programs Branch

                                                        ANTHONY J. COPPOLINO
                                                        Deputy Director, Federal Programs Branch

                                                        MARCIA BERMAN

Assistant Director, Federal Programs Branch

*/s/Amy E. Powell*
AMY E. POWELL
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
c/o U.S. Attorney's Office
150 Fayetteville St., Suite 2100
Raleigh, NC 27601
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

ELIZABETH TULIS
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel: (202) 514-9237
Fax: (202) 616-8470
E-mail: elizabeth.tulis@usdoj.gov

*Attorneys for Defendants Department of
Justice and Federal Bureau of Investigation*

*/s/  Daniel P. Chung*
DANIEL P. CHUNG
CATE E. CARDINALE
Trial Attorneys, Torts Branch
Civil Division
United States Department of Justice
P.O. Box 888 Ben Franklin Station
Washington, DC 20044
Phone: (202) 616-4258
Email: Daniel.P.Chung@usdoj.gov

*Attorneys for the United States of America*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 1, 2022, I electronically filed the foregoing GOVERNMENT DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR PARTIAL SUMMARY JUDGMENT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF GOVERNMENT DEFENDANT'S MOTION and EXHIBITS A–II (in compliance with LCvR 7-1(n)(1)) with the Clerk of Court by using the CM/ECF system, which will provide electronic notice and an electronic link to this document, which suffices for service to the attorneys of record who have entered an appearance.  *See* L.R. 5.4(d).

DATED:   April 1, 2022

                                                      */s/ Amy E. Powell*
                                                      AMY E. POWELL
                                                      Trial Attorney
                                                      United States Department of Justice
                                                      Civil Division, Federal Programs Branch

                                                      */s/ Daniel P. Chung*
                                                      DANIEL P. CHUNG
                                                      Trial Attorney
                                                      United States Department of Justice
                                                      Civil Division, Torts Branch