# Appendix
**1:20-cv-003460-DLF**

**Comparison of Allegations in Plaintiff's June 8, 2021 Second Amended Complaint and Information Disclosed on February 2, 2018 in the Nunes Memo**
*Carter Page v. James Comey, et al.* 1:20-cv-3460-DLF

| Allegations in Plaintiff's Second Amended Complaint (ECF NO. 73) | Information Provided in the Nunes Memorandum (ECF NO. 88-12) |
|---|---|
| "The complained of misconduct occurred in connection with the submission of **four false and misleading warrant applications** to engage in electronic surveillance of Dr. Page, ostensibly pursuant to the Foreign Intelligence Surveillance Act. ('FISA')" (ECF No. 73, ¶ 3) (emphasis added)<br><br>"In accordance with core principles of the U.S. Constitution, reinforced by the nation's legal and cultural aversion to spying on its citizens, **Congress and the executive branch have enacted rigorous requirements that must be met before electronic surveillance of a U.S. citizen is legally permitted**." (ECF No. 73, ¶ 10) | "The FBI and DOJ obtained **one initial FISA warrant targeting Carter Page and three FISA renewals from the FISC**. As required by statute … **a FISA order on an American citizen must be renewed by the FISC every 90 days and each renewal requires a separate finding of probable cause**…However the FISC's rigor in protecting the rights of Americans, which is reinforced by 90-day renewals of surveillance orders, is necessarily dependent on the government's production to the court of all material and relevant facts. **This should include information potentially favorable to the target of the FISA application that is known by the government**." (ECF No. 88-12 at 4–5) (emphasis added). |
| "In order to mislead the FISC into concluding that there was probable cause to believe that Dr. Page was a Russian agent, the **Defendants caused false or misleading information to be provided to the FISC**…" (*See* ECF No. 73, ¶ 16) (emphasis added) | "In the case of Carter Page, the government had at least **four independent opportunities before the FISC** to accurately provide an accounting of the relevant facts. However, our findings indicate that, as described below, **material and relevant information was omitted**." (ECF No. 88-12 at 5) (emphasis added) |
| "The FBI did not have probable cause to lawfully obtain a FISA warrant. Instead, the **FBI used documents furnished by Christopher Steele** … to unlawfully conceal this legal deficiency." (ECF No. 73, ¶ 9) (emphasis added) | "The **'dossier' compiled by Christopher Steele (Steele dossier)** on behalf of the Democratic National Committee (DNC) and the Hilary Clinton campaign **formed an essential part of the Carter Page FISA application."** (ECF No. 88-12 at 5) (emphasis added) |
| "**Neither** the First FISA Warrant application nor any of the subsequent renewal applications **disclosed or referenced any role that the Democratic National Committee or any party/campaign had in funding the efforts by Steele, even though those efforts were known to senior DOJ and FBI officials**." (ECF No. 73, ¶ 96) (emphasis added) | **"Neither** the initial application in October 2016, nor any of the renewals, **disclose the role of the DNC, Clinton campaign, or any party/campaign in funding Steele's efforts, even though the political origins of the Steele dossier were then known to senior DOJ and FBI officials**." (ECF No. 88-12 at 5) (emphasis added) |
| "The FBI did not advise the FISC that **CHS Steele had been paid by the Democrat party and/or the Clinton campaign** to provide opposition research on Donald Trump …" (*See* ECF No. 73, ¶ 17)(emphasis added) | "The initial FISA application notes Steele was **working for a named U.S. person**, but does not name Fusion GPS and principal Glenn Simpson, who was paid by a U.S. law firm (Perkins Coie) representing the DNC **(even though it was known by the DOJ at the time that political actors were |

1

| | |
|---|---|
| "The First FISA Warrant application was submitted to the FISC on October 21, 2016.  It asserted that 'the FBI has learned that Page met with at least two Russian officials during [a trip to Russia in July 2016],' relying on CHS Steele's allegations.  **But it [FBI] did not fully disclose Steele's bias and motives**."  (ECF No. 73, ¶ 95) (emphasis added)<br><br>"**These false allegations against Dr. Page made by CHS Steele were not investigated by the FBI in accordance with its own manuals and procedures.  For the FBI to disregard its procedures was particularly egregious in this case because the FBI knew that CHS Steele: (a) was being paid to provide "opposition research" on this topic; b) was essentially the exclusive source of information supporting probable cause for the FISA warrant applications** …" (ECF No. 73, ¶ 15) (emphasis added).<br><br>"Pursuant to the terms of his CHS agreement with the FBI, **Steele was prohibited from talking to the media about allegations in the Steele Reports.**" (ECF No. 73,  ¶ 76)<br><br>"The FBI allegedly did not ask Steele if he was the source referenced in the <u>YAHOO! NEWS</u> article."  (ECF No. 73, ¶ 77) | involved with the Steele dossier).  The **application does not mention Steele was ultimately working on behalf of – and paid by – the DNC and Clinton campaign, or that the FBI had separately authorized payment to Steele for the same information.**"  (ECF No. 88-12 at 5)<br><br>"Before and after Steele was terminated as a source, he maintained contact with DOJ via then-Associate Deputy Attorney General Bruce Ohr, a senior DOJ official who worked closely with Deputy Attorney General Yates and later Rosenstein.  Shortly after the election, the FBI began interviewing Ohr, documenting his communications with Steele.  For **example, in September 2016, Steele admitted to Ohr his feeling against then-candidate Trump when Steele said he** '**was desperate that Donald Trump not get elected and was passionate about him not being president.**'  This clear evidence of Steele's bias was recorded by Ohr at the time and subsequently in official FBI files–but not reflected in any of the Page FISA applications."  (ECF No. 88-12 at 6) (emphasis added)<br><br>"Steele's **numerous encounters with the media violated the cardinal rule of source handling–** maintaining confidentiality–and demonstrated that Steele had become a less than reliable source for the FBI."  (ECF No. 88-12 at 6) (emphasis added). |
| "On September 23, 2016, an article was published in YAHOO! NEWS alleging meetings between Dr. Page and the same two Russian individuals.  The **FBI treated this article as corroboration for CHS Steele's claims when, in fact, there was no corroboration of these false claims because CHS Steele was also the source for the Yahoo article** …"  (ECF No. 73, ¶ 15) (emphasis added).[1]<br><br>"The FBI falsely cited the YAHOO! NEWS article in the warrant application as independent corroboration of the allegations in the Steele report, however." (ECF No. 73, ¶ 78) | "The Carter Page FISA application also cited extensively a September 23, 2016, *Yahoo News* article by Michael Isikoff, which focuses on Page's July 2016 trip to Moscow.  **This article does not corroborate the Steele dossier because it is derived from information leaked by Steele himself to *Yahoo News*.**  The Page FISA application incorrectly assesses that Steele did not directly provide information to *Yahoo News*–and several other outlets– in September 2016 at the direction of Fusion GPS.  Perkins Coie was aware of Steele's initial media contacts because they hosted at least one meeting in Washington, D.C. in 2016 with Steele and Fusion GPS where this matter was discussed."  (ECF No. 88-12 at 5)(emphasis added) |

---

[1] Information in the Grassley-Graham Referral revealed that "Mr. Steele further stated that journalists from 'the New York Times, the Washington Post, Yahoo News, the New Yorker, and CNN' were briefed at the end of September 2016 [by Mr. Steele] and Fusion at Fusion's instructions."  ECF No. 88-14 at 5.

2

| | |
|---|---|
| "Thereafter, Ohr communicated with the FBI on 13 separate occasions in a successful effort to provide information he received from former CHS Steele, as well as information received from Glenn Simpson of Fusion GPS, and also a thumb drive of opposition created by Ohr's wife, who was a Fusion GPS employee.  **In essence, Ohr became a go-between by which the FBI maintained ongoing contact with former CHS Steele and continued to rely on his allegations notwithstanding that Steele had been fired and supposedly terminated as a source of reliable information**." (ECF No. 73, ¶ 107) (emphasis added)<br><br>"**The FBI also failed to include relevant information provided to the FBI in November and December 2016 related to Steele's motivations and reliability, which undermined his credibility and the trustworthiness of the information he provided**."  (ECF No. 73, ¶ 112) (emphasis added). | "During this same time period, Ohr's wife was employed by Fusion GPS to assist in the cultivation of opposition research on Trump.  Ohr later provided the FBI with all of his wife's research, paid for by the DNC and Clinton campaign via Fusion GPS.  **The Ohrs' relationship with Steele and Fusion GPS was inexplicably concealed from the FISC**."  (ECF No. 88-12 at 6) |
| "On August 15, 2016, Strzok sent Lisa Page a text message in which he said 'I want to believe the path you threw out for consideration in Andy's [McCabe's] office – that there's no way he gets elected – but I'm afraid we can't take that risk.  It's like **an insurance policy** in the unlikely event you die before you're 40." (ECF No. 73, ¶ 71) (emphasis added) | "Strzok was reassigned by the Special Counsel's Office to FBI Human Resources for improper text messages with his mistress, FBI Attorney Lisa Page (no known relation to Carter Page), where they both demonstrated a clear bias against Trump and in favor of Clinton whom Strzok had also investigated.  The Strzok/Lisa Page texts also reflect extensive discussions about the investigation, orchestrating leaks to the media, and **include a meeting with Deputy Director McCabe to discuss an "insurance" policy against President Trump's election**.  (ECF No. 88-12 at 7) (emphasis added) |