**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CARTER W. PAGE,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>JAMES COMEY, ANDREW MCCABE, KEVIN CLINESMITH, PETER STRZOK, LISA PAGE, JOE PIENTKA III, STEPHEN SOMMA, BRIAN J. AUTEN, DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION, UNITED STATES OF AMERICA, JOHN DOES 1-10, JANE DOES 1-10,<br><br>　　　　　　　　Defendants. | No. 1:20-cv-03460<br><br>Honorable Dabney L. Friedrich<br><br>*Oral Argument Requested* |

**DEFENDANT JAMES B. COMEY'S REPLY IN SUPPORT OF HIS**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Amisha R. Patel (DC Bar No. 1005420)
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
Tel: (202) 261-3374
Fax: (202) 261-3333
amisha.patel@dechert.com

David N. Kelley (*pro hac vice*)
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 100036-6797
Tel: (212) 698-3580
Fax: (212) 698-3599
david.kelley@dechert.com

Stormie Mauck (*pro hac vice*)
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-2516
Fax: (215) 994-2222
stormie.mauck@dechert.com

*Counsel for Defendant James. B. Comey*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITES ................................................................................... ii

INTRODUCTION ........................................................................................... 1

ARGUMENT ................................................................................................. 1

    I.      All of Page's Claims Against Comey Are Untimely ............................................. 1

    II.    Page's FISA Claims Against Comey Are Inadequately Pleaded And Must Be Dismissed ......................................................................................... 5

          A.     FISA Civil Claims Do Not Extend To Aiding And Abetting .................... 5

          B.     Page Fails To State A FISA Claim Against Comey ................................. 8

               1.     *Comey Did Not Engage in Electronic Surveillance* ...................... 9

               2.     *Comey Did Note Use or Disclose Information Obtained from the Surveillance of Page* ...................................... 11

    III.   Page's *Bivens* Claim Against Comey Must Be Dismissed ................................. 12

          A.     Page Fails To State A *Bivens* Claim Against Comey ............................ 12

          B.     Page's *Bivens* Claim Should Not Be Extended To A New Context ........ 14

          C.     FISA's Existing Statutory Framework Precludes Page From Recovering Damages Under *Bivens* .............................................. 15

    IV.   Comey Is Entitled To Qualified Immunity ..................................................... 16

    V.    Page Should Not Be Granted Leave to File Another Amended Complaint ........ 18

CONCLUSION .............................................................................................. 19

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011)..................................................................................................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................12, 13

*Attkisson v. Holder*,
2017 WL 5013230 (E.D. Va. Nov. 1, 2017),
*aff'd*, 925 F.3d 606 (4th Cir. 2019)........................................................................9, 10

*Attkisson v. Holder*,
925 F.3d 606 (4th Cir. 2019) ...................................................................................14

*Berman v. Cook*,
293 F. Supp. 3d 48 (D.D.C. 2018) .............................................................................3

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
403 U.S. 388 (1971)....................................................................................... *passim*

*Broidy Cap. Mgmt. LLC v Muzin*,
2020 WL 1536350 (D.D.C. Mar. 31, 2020),
*aff'd*, 12 F.4th 789 (D.C. Cir. 2021) ..................................................................6, 7, 10

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994)...............................................................................................5, 6

*Doe v. U.S. Dep't of Just.*,
753 F.2d 1092 (D.C. Cir. 1985) ..................................................................................1

*Edokobi v. U.S. Gen. Servs. Admin.*,
2018 WL 4639102 (D. Md. Sept. 27, 2018),
*aff'd*, 796 F. App'x 813 (4th Cir. 2020)......................................................................3

*Elnashar v. U.S. Dep't of Just.*,
2004 WL 2237059 (D. Minn. Sept. 30, 2004),
*aff'd*, 446 F.3d 792 (8th Cir. 2006)..........................................................................18

*Fazaga v. Federal Bureau of Investigation*,
965 F.3d 1015 (9th Cir. 2020) ......................................................................9, 11, 18

*Hardin v. Jackson*,
625 F.3d 739 (D.C. Cir. 2010) ....................................................................................2

*Hernandez v. Mesa*,
 140 S. Ct. 735 (2020) ...................................................................................15

*Hill v. Dep't of Def.*,
 981 F. Supp. 2d 1 (D.D.C. 2013) .....................................................................5

*Hunter v. Bryant*,
 502 U.S. 224 (1991) ......................................................................................18

*Kirch v. Embarq Management Co.*,
 702 F.3d 1245 (10th Cir. 2012) .......................................................................6

*Martin v. Malhoyt*,
 830 F.2d 237 (D.C. Cir. 1987) .......................................................................12

*Mitchell v. Forsyth*,
 472 U.S. 511 (1985) ......................................................................................18

*Nono v. George Washington Univ.*,
 245 F. Supp. 3d 141 (D.D.C. 2017) ...............................................................19

*Owens v. BNP Paribas S.A.*,
 235 F. Supp. 3d 85 (D.D.C. 2017) ...................................................................6

*Owens v. BNP Paribas, S.A.*,
 897 F.3d 266 (D.C. Cir. 2018) .....................................................................6, 7

*Rasul v. Myers*,
 512 F.3d 644 (D.C. Cir. 2008),
 *judgment vacated on other grounds*, 555 U.S. 1083 (2008) ...................................17

*Roark v. United States*,
 2013 WL 1071778 (D. Or. Mar. 12, 2013) .........................................................3

*Romag Fasteners, Inc v. Fossil, Inc.*,
 140 S. Ct. 1492 (2020) ....................................................................................6

*Rosenblatt v. Fenty*,
 734 F. Supp. 2d 21 (D.D.C. 2010) .................................................................16

*Rotella v. Wood*,
 528 U.S. 549 (2000) ........................................................................................2

*Smith v. Nixon*,
 606 F.2d 1183 (D.C. Cir. 1979) ...................................................................3, 5

*Sparshott, v. Feld Ent., Inc.*,
 311 F.3d 425 (D.C. Cir. 2002) .........................................................................4

*Sykes v. U.S. Att'y for D.C.*,
    770 F. Supp. 2d 152 (D.D.C. 2011),
    *aff'd*, 2011 WL 5515568 (D.C. Cir. Nov 10, 2011)....................................................................1

*Toumazou v. Turkish Republic of N. Cyprus*,
    71 F. Supp. 3d 7 (D.D.C. 2014) ...................................................................................12

*United States v. Gaviria*,
    116 F.3d 1498 (D.C. Cir. 1997) ....................................................................................8

*United States v. Philip Morris USA, Inc.*,
    396 F.3d 1190 (D.C. Cir. 2005) ....................................................................................6

*Wesby v. District of Columbia*,
    765 F.3d 13 (D.C. Cir. 2014), *rev'd*, 138 S. Ct. 577 (2018) ....................................13

*Wikimedia Found. v. Nat'l Sec. Agency/Cent. Sec. Serv.*,
    335 F. Supp. 3d 772 (D. Md. 2018) ..............................................................................9

*U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*,
    389 F.3d 1251 (D.C. Cir. 2004) ..............................................................................18, 19

*Wilson v. Libby*,
    535 F.3d 697 (D.C. Cir. 2008) ....................................................................................16

**Statutes**

50 U.S.C. § 1801.............................................................................................................7

50 U.S.C. § 1809.........................................................................................................7, 11

Defendant James B. Comey submits this reply in support of his Motion to Dismiss Plaintiff Carter Page's Second Amended Complaint (the "SAC").

## INTRODUCTION

Page's Opposition is long on prose but short on substance. It fails to save his untimely and deficient claims, which should be dismissed. For the sake of judicial economy, Comey joins the Reply Briefs of Individual Defendants Kevin Clinesmith, Stephen Somma, Peter Strzok, Andrew McCabe, Lisa Page, Brian Auten, and Joseph Pientka (the "Co-Defendants"), and incorporates herein by reference all arguments set forth in those replies that apply equally to Comey. Specifically, Comey joins in the following of the Co-Defendants' arguments, which similarly apply to him: (1) Page's claims are barred by the applicable statutes of limitations; (2) Page's attempt to recast his FISA claims under an aiding and abetting theory is not permitted by the statute, and even if plausibly alleged, Comey is entitled to FISA's statutory defense; (3) Likewise, Page's *Bivens* claim should not be permitted in this new context where special factors counsel against such an extension, and in any event is inadequately pleaded; and (4) had Page adequately pleaded his FISA and *Bivens* claims, Comey is entitled to qualified immunity.

## ARGUMENT

### I.   All of Page's Claims Against Comey Are Untimely

Page's Opposition fails to save his untimely FISA and *Bivens* claims. He argues that the SAC does not conclusively establish that his claims are untimely. Dkt. 98 at 64-67. Taking the allegations of the SAC at face value, however, this argument fails. A claim must be dismissed "when it appears from the face of the complaint that the relevant statute of limitations bars the action." *Doe v. U.S. Dep't of Just.*, 753 F.2d 1092, 1115 (D.C. Cir. 1985); *see also Sykes v. U.S. Att'y for D.C.*, 770 F. Supp. 2d 152, 154 (D.D.C. 2011), *aff'd*, 2011 WL 5515568 (D.C. Cir. Nov 10, 2011) ("An affirmative defense that claims are barred by the statute of limitations may be

asserted in a Rule 12(b)(6) motion 'when the facts that give rise to the defense are clear from the face of the complaint.'").  The facts as alleged by Page in the SAC establish conclusively that Page's claims against Comey are barred by the applicable statutes of limitation.

Page's Opposition contends that his FISA and *Bivens* claims did not begin to accrue until he "discover[ed], or by reasonable diligence could have discovered, the basis of the lawsuit."  Dkt. 98 at 66 (quoting *Smith v. Nixon*, 606 F.2d 1183, 1190 (D.C. Cir. 1979)).  He further alleges that the basis of the lawsuit is that the FISA warrants "were obtained without probable cause by the inclusion of numerous, material misrepresentations and omissions . . . ."  Dkt. 98 at 66.  As fully explained in Co-Defendant Clinesmith's Reply and incorporated here, the law does not require a plaintiff know *all* of the facts underlying their claim for it to accrue.  Dkt. 101 at 3-4 (citing *Sprint Commc'ns Co., L.P. v. F.C.C.*, 76 F.3d 1221, 1228 (D.C. Cir. 1996) ("Accrual does not wait until the injured party has access to or constructive knowledge of *all the facts* required to support its claim.") (emphasis added)).  Instead, under the discovery rule, an aggrieved party need only learn or be able to learn of the alleged injury to toll the statute of limitations.  *See Rotella v. Wood*, 528 U.S. 549, 555 (2000) (explaining that under the discovery accrual rule, the clock begins to run with the "discovery of the injury, not discovery of the other elements of a claim"); *Hardin v. Jackson*, 625 F.3d 739, 744 (D.C. Cir. 2010) (finding that plaintiffs were aware of their injury when they learned of the injury and not after a university published a study establishing it).  This is also true even when there is a pattern of conduct by defendants, *Rotella*, 528 U.S. at 556, or when discovery of the pattern of activity would require "considerable enquiry and investigation," *id.*  Under this standard, Page's claims are untimely because the FBI's investigation of him was publicly disclosed at least three years before Page brought his claims before this Court.  Indeed, Page alleges not just an injury from supposed mis-statements in the FISA applications, but an

alleged injury arising from the very fact that he was the subject of electronic surveillance, and the public disclosure of that fact. *See, e.g.*, SAC ¶ 260.

Page concedes that his claims in this case are akin to the Wiretap claims in *Smith v. Nixon*. Dkt. 98 at 65-66, where the alleged injury arose from public disclosure that the plaintiff had been the subject of electronic surveillance. Even under the standard articulated in that case, a Wiretap claim accrues when the existence of the wiretap "be[comes] public knowledge." Dkt. 98 at 66 (quoting *Smith v. Nixon*, 606 F.2d 1183, 1191 (D.C. Cir. 1979)); *see also Berman v. Cook*, 293 F. Supp. 3d 48, 56 (D.D.C. 2018) (plaintiff's claim accrued when he learned of the offending search); *Edokobi v. U.S. Gen. Servs. Admin.*, 2018 WL 4639102, at *4 (D. Md. Sept. 27, 2018) (finding that a cause of action based on an unlawful search "accrue[s] when [the plaintiff] receive[s] notice of the search"), *aff'd*, 796 F. App'x 813 (4th Cir. 2020); *Roark v. United States*, 2013 WL 1071778, at *3 (D. Or. Mar. 12, 2013) ("[A] Bivens claim arising out of a search accrues on the date of the search."). There, the Smiths were subjects of a wiretap from June 4, 1969 to August 31, 1969. *Smith v. Nixon*, 606 F.2d 1183, 1186 (D.C. Cir. 1979). However, applying a "due diligence" standard, the court found that the Smiths could not have discovered the fact that they were surveilled until the fact of the wiretap became public in 1973. *Id.* at 1190-91. Here, the fact of Page's surveillance undisputedly became public at the latest on April 11, 2017, when the Washington Post article revealed that he was being surveilled pursuant to FISA warrants. *See* SAC ¶ 221. Even if this Court determines that Page's claims accrued on this date, his complaint was not brought within the applicable statute of limitations period.

Page's argument that he was foreclosed from learning of the basis of his FISA and *Bivens* claims by the inherent secrecy of the FISA warrant process until the December 2019 release of the Horowitz Report fares no better in light of the substantial press reporting regarding the FBI's

investigation of Page.  Dkt. 98 at 66.  Indeed, Page tacitly admits that he knew as early as September 23, 2016, when Yahoo! News published an article detailing the investigation, that the FBI was surveilling him.  SAC ¶ 76.  Moreover, Page specifically pleads that on September 25, 2016, he sent Comey a letter denying the allegations giving rise to the investigation as a result of the Yahoo! article.[1]  SAC ¶¶ 15, 81, 146.  Page also admits that he was aware of at least the first two FISA warrants by April 11, 2017, when the Washington Post "broke the story about the FISA Warrants targeting Dr. Page, including that a FISA warrant had been issued in 2016 and had been renewed at least once."  SAC ¶ 221.  This article also confirmed that Page believed the warrants lacked probable cause.  Dkt. 87-1 at 35 (citing April 11, 2017 WaPo Article) (Page stated that the Washington Post's reporting "confirm[ed] all of [his] suspicions about unjustified, politically motivated government surveillance.").  Thus, the SAC makes clear that Page was fully aware— *years* before the release of the Horowitz Report—that: (1) he was the subject of an FBI investigation, SAC ¶ 76 (September 23, 2016 Yahoo! News Article), 81 (Page's Letter to Comey); (2) he believed the surveillance was improper, SAC ¶ 221 (April 11, 2017 WaPo Article); and (3) he believed the FISA warrants lacked probable cause.

Despite Page's clear knowledge of the investigation and the FISA warrants, he argues that he could not have brought suit until he was aware of the fact that the warrants were purportedly obtained "without probable cause by inclusion of numerous, material misrepresentations and omissions . . . ."  Dkt. 98 at 66.  But for a claim to accrue, courts do not require detailed information about how the information was acquired; instead, the accrual triggers when a complainant learns they are being surveilled.  *Sparshott, v. Feld Ent., Inc.*, 311 F.3d 425, 429 (D.C. Cir. 2002) (finding

---

[1] This fact also confirms that Page was well aware of Comey's involvement in the investigation at this time.

that wiretap claim accrued when plaintiff received "warnings with considerable objectivit[y]"). *See also Hill v. Dep't of Def.*, 981 F. Supp. 2d 1, 7–8 (D.D.C. 2013) (finding that a claim under the Privacy Act begins to accrue when "plaintiff has received adequate notice that an agency or its employees are engaged in practices inconsistent with the agency's obligations" regardless of whether the plaintiff "know[s] the exact details of the violative practices or be aware of exact documents improperly maintained or disclosed"). Critically, Page's own admissions show that he believed the FISA warrants were obtained without probable cause *years before* the release of the Horowitz Report. For example, just two weeks after the 2017 Washington Post article, on April 27, 2017, when asked during a CNN interview how a judge could have found probable cause to surveil him, Page stated that "there is no probable cause and there could be no probable cause based on anything I've ever done in Russia." Dkt. 88-10 at 9.

Here, just as in *Smith v. Nixon*, the public disclosure of the FBI's investigation of Page on April 11, 2017 triggered the statutes of limitation for Page's FISA and *Bivens* claims. 606 F.2d at 1191 (finding that the Smiths could not have reasonably learned of the wiretap until "it became public knowledge"). Thus, Page's claims against Comey are untimely and must be dismissed.

## II.   Page's FISA Claims Against Comey Are Inadequately Pleaded And Must Be Dismissed

### A.   FISA Civil Claims Do Not Extend To Aiding And Abetting

In an attempt to save his FISA claims, Page argues that Congress somehow intended for defendants to be held liable under a civil aiding and abetting theory implied in section 1810.[2] Dkt. 98 at 16. But that is not the law. "[W]hen Congress enacts a statute providing for private civil liability 'there is no general presumption that the plaintiff may also sue aiders and abettors.'" *Cent.*

---

[2] In his Opposition, Page claims that the Defendants "wholly ignore" this argument. Dkt. 98 at 16. However, Comey explicitly refuted this argument in his Motion to Dismiss. Dkt. 87 at 22.

*Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182 (1994); *see also Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 278 (D.C. Cir. 2018) (same).  Rather, a defendant may not be held liable under an aiding and abetting theory "unless Congress speaks to it explicitly." *Owens*, 897 F.3d at 277, 279 ("[W]hen Congress is silent as to aiding and abetting liability, it has unambiguously foreclosed that theory of recovery.").  Similar to the Stored Communications Act and other comparable statutes, FISA's civil liability provision makes no explicit reference to aiding and abetting liability.  *See Broidy Cap. Mgmt. LLC v Muzin*, 2020 WL 1536350, at *11 (D.D.C. Mar. 31, 2020) (Friedrich, J.) (Stored Communications Act), *aff'd*, 12 F.4th 789 (D.C. Cir. 2021); *Kirch v. Embarq Management Co.*, 702 F.3d 1245, 1246-47 (10th Cir. 2012) (Wiretap Act).  Page's footnote argument that the "sweeping language" of § 1810, which provides a cause of action against "any person" who violates § 1809, somehow provides for aiding and abetting civil liability is simply not an "explicit" directive from Congress.  *Owens*, 897 F.3d at 277.  Moreover, this Circuit has held that burying an argument in a conclusory footnote is insufficient to properly raise it.  *See United States v. Philip Morris USA, Inc.*, 396 F.3d 1190, 1195 (D.C. Cir. 2005) (finding with respect to defendant's footnote argument that a "litigant does not properly raise an issue by addressing it in a cursory fashion, with only bare-bones arguments") (internal quotations and citations omitted).

That Congress did not intend to create a theory of aiding and abetting civil liability is punctuated by Congress' clear inclusion of aiding and abetting liability in *other* portions of FISA. *See Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492, 1493, 1495 (2020) (finding that the absence of a *mens rea* standard is "all the more telling" where other portions of the statute speak "expressly about mental states"); *Owens v. BNP Paribas S.A.*, 235 F. Supp. 3d 85, 93 (D.D.C. 2017) (explaining that it is "doubt[ful] that Congress, having included in the ATA several express

provisions with respect to aiding and abetting in connection with the criminal provisions, can have intended § 2333 to authorize civil liability for aiding and abetting through its silence"). FISA's definition of an "[a]gent of a foreign power" includes an individual who "knowingly aids or abets any person" or "knowingly conspires with any person." 50 U.S.C. § 1801(b)(1)(E). Yet, FISA's civil liability provisions are silent on aiding and abetting liability. As explained by this Court, there can be "no general presumption that the plaintiff may also sue aiders and abettors," "because Congress knows how to provide private plaintiffs with an action for secondary liability when it sees fit." *Broidy Cap. Mgmt. LLC*, 2020 WL 1536350, at *11 (quoting *Cent. Bank of Denver, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 182 (1994)).

In support of his position, Page cites a single line from the 35-page 1978 FISA legislative history. Dkt. 98 at 16 (citing to H.R. Rep. No. 95-1720, at 34 (1978) ("The conferees agree that the civil liability of intelligence agents under this act should coincide with the criminal liability.")). But this is not a clear directive from Congress, and Page tellingly does not and cannot cite a single case in which a defendant was held liable under a civil aiding and abetting theory in the more than 40 years since Congress enacted FISA. Likewise, the U.S. Court of Appeals for the D.C. Circuit has held that legislative history "may not be used [to] show an 'intent' at variance with the meaning of the text." *Owens*, 897 F.3d at 279 (quoting *In re Sinclair*, 870 F.2d 1340, 1344 (7th Cir. 1989)). The plain language of FISA establishes that "an aggrieved person" must demonstrate two prohibited activities: (1) that the defendant in question intentionally engaged in unlawful electronic surveillance; and (2) that defendant intentionally "disclose[d] or use[d]" the information obtained through such surveillance. 50 U.S.C. § 1809(a)(1)-(2); Dkt. 78-1 at 21. The language of the statute is unambiguous and leaves no room for secondary liability. And where a statute is not ambiguous, legislative history is not "necessary or helpful." *Owens*, 897 F.3d at 279. Further, as fully

7

explained in Co-Defendant Clinesmith's Reply and incorporated here, FISA's legislative history actually counsels *against* permitting aiding and abetting civil liability. Dkt. 101 at 13-18. Thus, Page's attempt to read into the statute an intent to create civil aiding and abetting liability under section 1810 fails.

Even if successful, Page fails to adequately allege that Comey is liable under an aiding and abetting theory which requires "(1) specific intent to facilitate the commission of a crime by another; (2) guilty knowledge; (3) that someone else was committing a crime; and (4) assisting or participating in the crime." *United States v. Gaviria*, 116 F.3d 1498, 1535 (D.C. Cir. 1997). Nowhere in the Second Amended Complaint does Page allege that Comey acted with specific intent to assist any of the other defendants to commit a crime. In fact, Page does not even allege that Comey was aware that any other defendant specifically intended to commit a crime. Thus, Comey cannot be held liable under Page's theory of liability.

### B.    Page Fails To State A FISA Claim Against Comey

Page's allegations that Comey "personally . . . engaged in violations of FISA, and thereby harmed Dr. Page," Dkt. 98 at 19, are similarly insufficient. Page alleges that Comey personally engaged in FISA violations by (1) "'green light[ing]'" the FISA warrant applications despite being briefed of a DOJ attorney's concerns, Dkt. 98 at 20-21; (2) signing the certification of the first FISA warrant "despite knowing that relevant, material information that bore on the question of probable cause was intentionally omitted from the warrant application," Dkt. 98 at 21; (3) remaining "deeply involved" in the Crossfire Hurricane operation by receiving updates on the investigation every two to four weeks, Dkt. 98 at 21; and (4) signing the second and third FISA warrant certifications "despite the total lack of any such information resulting from the surveillance and despite multiple indications throughout his regular briefings that the 'investigation' was solely

an exercise in political maneuvering," Dkt. 98 at 22-23.  Critically, Page does not allege Comey

was involved with the fourth FISA warrant at all.  As a result, that claim should be dismissed.

Nonetheless, even accepting Page's allegations as true, Page fails to sufficiently allege a

FISA claim against Comey.

### 1.     *Comey Did Not Engage in Electronic Surveillance*

Page argues that the Individual Defendants "seek to limit the evaluation of the sufficiency

of the SAC's allegations against them by focusing on their own actions."  Dkt. 98 at 50.  Yet this

is exactly what is required for a valid claim under section 1810.  *See Fazaga v. Federal Bureau of*

*Investigation*, 965 F.3d 1015, 1039 (9th Cir. 2020) ("[A] plaintiff must plead that *each*

Government-official defendant, through the official's own individual actions, has violated the

Constitution.") (emphasis added) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).  *See also*

*Wikimedia Found. v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 335 F. Supp. 3d 772, 784 (D. Md. 2018)

("[T]he civil cause of action in § 1810 is premised upon the individual agent's violation of section

1809.") (internal quotation and citation omitted); *Attkisson v. Holder*, 2017 WL 5013230, at *12

(E.D. Va. Nov. 1, 2017) ("Any 'aggrieved person' has a 'cause of action against any person who

committed' a 'violation' of § 1809.") (quoting 50 U.S.C. § 1810), *aff'd*, 925 F.3d 606 (4th Cir.

2019).

When reviewing Page's allegations against Comey individually, he does not adequately

allege that Comey *personally* engaged in surveillance of Page.  Indeed, Page's Opposition—just

as the SAC—includes nothing more than generalized allegations that Comey personally engaged

in violations of FISA.   *See*, *e.g.*, Dkt. 98 at 19 ("He is being sued because he personally . . .

engaged in violations of FISA, and thereby harmed Dr. Page.").  Page's substantive arguments are

essentially that Comey's certifications were "critical to the approval of any warrant application

made to the FISC," Dkt. 98 at 19, and that Comey signed the FISA warrant certifications "despite

knowing that relevant, material information that bore on the question of probable cause was intentionally omitted from the warrant application," Dkt. 98 at 21.  Page mistakenly appears to argue that Comey's certification of the FISA warrant applications constituted a verification of the information contained therein. *See e.g.*, Dkt. 98 at 21.  Yet Page offers no response to the pertinent portion of FISA (other than citing it), which explains that the purpose of the FISA certification is to certify that the FISA warrants has a significant foreign intelligence purpose and logistical need. Dkt. 98 at 19 (citing 50 U.S.C. § 1804(a)).

While Page alleges that Comey's "role in, and responsibility for, the issuance of the warrants [ ] resulted in the unlawful surveillance of Dr. Page," Dkt. 98 at 19, courts require personal engagement in the alleged surveillance and not just search warrant "sign-off."  *See Attkisson*, 2017 WL 5013230, at *4, 12* (finding that complaint failed to "plausibly allege that [the former Attorney General] actually engaged in the alleged unauthorized surveillance" because it did not allege that he "personally engaged in the alleged surveillance," even though the complaint included allegations of his personal involvement through inter alia, "signing-off" on search warrants); *cf. Broidy Cap. Mgmt. LLC*, 2020 WL 1536350, at *11 (similar language in Stored Communications Act applied only to defendants who "themselves accessed [complainant's] computer systems").  Simply put, Page's allegations that Comey's certifications amounted to personal involvement in the alleged surveillance fail as a matter of law.

Page also argues that Comey remained "deeply involved" in the Operation Hurricane investigation because he received status updates every two to four weeks.  Dkt. 98 at 21.  But such periodic status updates similarly do not amount to personal engagement in the electronic surveillance.  *See Attkisson*, 2017 WL 5013230, at *4, 12 (finding that plaintiff failed to allege that the former Attorney General engaged in the alleged unauthorized surveillance despite having

"knowledge of [the] illegal surveillance" and being "involved in discussions" regarding the target of the surveillance).  Similarly, to the extent Page argues Comey is liable under a supervisory liability theory, that theory already has been rejected in the FISA context.  *See Fazaga*, 965 F.3d at 1039 (citing *Iqbal*, 556 U.S. 662, 676 (2009)) (finding that supervisors could not be held liable for their subordinates' alleged FISA violations).

Moreover, even if this Court agreed with Page's conclusory allegations that Comey "engaged in" unlawful electronic surveillance, Comey is entitled to protection under FISA's safe harbor provision.  50 U.S.C. § 1809(b).  Page does not and cannot allege that Comey is not a "law enforcement officer" for purposes of the statute.  *See* Dkt. 87-1 at 26.  Instead, Page argues that the Individual Defendants are not entitled to protection under the safe harbor provisions because they did not act in good faith.  As explained in Co-Defendant McCabe's Reply and incorporated here, there is no "good faith exception" to FISA's safe harbor provision.  Dkt. 106 at 15-16.  Thus, Page fails to overcome this critical hurdle to save his FISA claims against Comey.

2.   *Comey Did Note Use or Disclose Information Obtained from the Surveillance of Page*

Page's only argument that Comey "used or disclosed" information obtained from the surveillance appears in a single footnote.  Dkt. 98 at 31, n.4.  He states that "the SAC expressly asserts that the Defendants did unlawfully use FISA obtained information in ways both known and unknown to Dr. Page, including by leaking to the media, and for use in obtaining the warrant renewals, and for other purposes as already admitted by the FBI in filings to the FISC."  *Id*.; *see also* SAC ¶ 142.  Page further argues that "the facts further establishing unlawful use of the FISA obtained information are exclusively in the possession of the Defendants in this case because they are protected from the view of the public, including Dr. Page, as 'law enforcement' and classified information."  Dkt. 98 at 31, n.4.  These arguments are insufficient to save Page's claims.

11

As a threshold matter, Page's arguments that Defendants "used and disclosed" FISA obtained information violates the prohibition against "lumping all the defendants together" without a "factual basis to distinguish their conduct." *Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014) (discussing minimum pleading requirements under Federal Rule of Civil Procedure 8). This is because doing so deprives defendants of "fair notice of the claims against them and the grounds for relief." *Id.* Page's Opposition fails to meaningfully address the fatal flaws of the SAC with respect to Comey's use or disclosure of information obtained through the FISA warrants. Instead, Page argues it is inappropriate for the Defendants to make these arguments because Defendants are "exclusively in possession" of the facts establishing the unlawful use. Dkt. 98 at 27, n.3. But this argument does not save Page's claims. *See Martin v. Malhoyt*, 830 F.2d 237, 257 (D.C. Cir. 1987) (finding that "conclusory allegations of unconstitutional or otherwise illegal conduct will not withstand a public official's dispositive pre-trial motion" and that "plaintiffs cannot expect the court's assistance in obtaining the necessary factual support"). Thus, Page's FISA claims against Comey must be dismissed.

## III.  Page's *Bivens* Claim Against Comey Must Be Dismissed

In an attempt to save his *Bivens* claim, Page argues that (1) he properly pleaded his *Bivens* claim against the Individual Defendants; (2) his *Bivens* claim does not involve a new context; and (3) the overlap of his *Bivens* and FISA claims is not a basis for dismissing either claim. Each of these arguments fail to save his *Bivens* claim against Comey.

### A.  Page Fails To State A *Bivens* Claim Against Comey

Page seemingly admits that he has not pleaded an adequate *Bivens* claim against Comey personally and instead argues that Comey is liable under a supervisory theory of liability for actions Comey allegedly helped orchestrate. Dkt. 98 at 55. While Page correctly cites *Iqbal* for the proposition that a *Bivens* claim requires a plaintiff to plead that "each Government-official

defendant, through the official's own individual actions, has violated the Constitution," Dkt. 98 at 55 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)), he somewhat inexplicably cites a D.C. District Court case predating *Iqbal* for the proposition that "supervisory liability exists under *Bivens*." *Id.* at 55-56 (citing to *Fletcher v. U.S. Parole Com'n*, 550 F. Supp. 2d 30, 39 (D.D.C. 2008)). The Supreme Court in *Iqbal* explicitly faulted the Respondent for the very same argument:

> Respondent's conception of "supervisory liability" is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents. In a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term "supervisory liability" is a misnomer.

*Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). As the Supreme Court in *Ziglar v. Abbasi* recognized, a *Bivens* action is "not designed to hold officers responsible for [the] acts of their subordinates." 137 S. Ct. 1843, 1849 (2017).

And even the one post-*Iqbal* case Page cites was reversed and does not involve a *Bivens* action or FISA surveillance. Dkt. 98 at 57 (citing *Wesby v. District of Columbia*, 765 F.3d 13, 29 (D.C. Cir. 2014), *rev'd*, 138 S. Ct. 577 (2018) (involving alleged civil rights violation for false arrest)). Instead, *Wesby* involved two police officers who did not personally arrest each of the plaintiffs, but who became "the hub of [the] investigation" when they "gathered evidence, including photographs of the people in the house, and actively participated in questioning the Plaintiffs and other key witnesses." *Wesby v. District of Columbia*, 765 F.3d 13, 29 (D.C. Cir. 2014), *rev'd*, 138 S. Ct. 577 (2018). Unlike the Plaintiffs in *Wesby*, Page does not and cannot allege that Comey actively participated in the gathering of any evidence against Page or in the actual surveillance of Page. *Id.* at 29-30. Likewise, Page does not even attempt to argue that the individual allegations against Comey are sufficient to state an individual *Bivens* claim against Comey. For these reasons, Page's *Bivens* claim against Comey must be dismissed.

**B.**     **Page's *Bivens* Claim Should Not Be Extended To A New Context**

Page argues that his *Bivens* claim does not involve a new context because, at base, this case involves "a federal agent who commits an unconstitutional search and seizure."  Dkt. 98 at 58. While Courts have upheld *Bivens* claims in the search and seizure context, "expanding the *Bivens* remedy [to a new context] is now a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857.  The test for determining whether a claim arises in a new context is whether the case "is different in a meaningful way from previous *Bivens* cases." *Id.* at 1859.  That is the case here.  Page cannot credibly argue that his claims do not meaningfully differ from the search and seizure context in *Bivens*, in which officers searched an individual's home *without* a search warrant. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971).

Page argues that because Courts have "recognized the validity of *Bivens* claims based on an allegation that defendants falsely obtained a warrant without probable cause," his *Bivens* claim does not involve a new context.  Dkt. 98 at 58-59.  But Page ignores that "a claim based on unlawful electronic surveillance presents wildly different facts and a vastly different statutory framework from a warrantless search and arrest." *Attkisson v. Holder*, 925 F.3d 606, 621 (4th Cir. 2019). Similar to the *Bivens* claim rejected in *Attkisson*, Page asserts his claims here against high-level officials. *Id.* ("[T]he plaintiffs' claim against Holder [Former United States Attorney General] and Donahoe [United States Army Major General] assuredly presents a 'new *Bivens* context.'").  This is because "high [ranking] officials who face personal liability for damages might refrain from taking urgent and lawful action in a time of crisis." *Ziglar*, 137 S.Ct. at 1863.  As the court did in *Attkisson*, this Court should reject Page's attempt to expand *Bivens* to this new context.

14

Page also argues that Comey uses the threat of national security as "a talisman [] to ward off inconvenient claims . . . ." Dkt. 98 at 59 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 523 (1985)).[3] However, the law is clear that national security is often a special factor counseling hesitation against expanding *Bivens* liability.  For example, the Supreme Court explained that "Judicial inquiry into the national-security realm raises 'concerns for the separation of powers in trenching on matters committed to the other branches.'" *Ziglar*, 137 S.Ct. at 1861.  The Court in *Ziglar* further explained that these concerns are heightened where, as here, the plaintiff seeks money damages because the risk of personal liability may "cause an official to second-guess difficult but necessary decisions concerning national-security policy." *Id.*  Thus, rather than imposing *Bivens* liability, courts defer to "what the Executive Branch 'has determined . . . is 'essential to national security.'" *Id.*  And, as fully explained below, Congress explicitly enacted legislation providing the necessary framework for when a public official may be held personally liable for a FISA violation.

### C.    FISA's Existing Statutory Framework Precludes Page From Recovering Damages Under *Bivens*

Page mistakenly interprets Comey's arguments that FISA's existing statutory framework excludes Page from recovering damages under his *Bivens* claim as an argument invoking the doctrine of election of remedies.  Dkt. 98 at 60.  Instead, Comey argues that FISA's existing statutory framework is a special factor counselling hesitation.  Dkt. 87-1 at 37.  Once a court determines that a claim arises in a new context, the court must then "ask whether there are any special factors that counsel hesitation about granting the extension." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (quotations and alterations omitted).  One such special factor "that precludes

---

[3] Curiously, the language quoted by Page does not appear in the text of *Mitchell v. Forsth*.

creation of a *Bivens* remedy is the existence of a comprehensive remedial scheme." *Wilson v. Libby*, 535 F.3d 697, 705 (D.C. Cir. 2008). This doctrine stems from the question of "who should decide whether such a remedy should be provided." *Id.* (citing *Bush v. Lucas*, 462 U.S. 367, 380 (1983)). The U.S. Court of Appeals for the D.C. Circuit has held that "courts must withhold their power to fashion damages remedies when Congress has put in place a comprehensive system to administer public rights, has 'not inadvertently' omitted damages remedies for certain claimants, and has not plainly expressed an intention that the courts preserve *Bivens* remedies." *Wilson*, 535 F.3d at 706 (quoting *Spagnola v. Mathis*, 859 F.2d 223 (D.C. Cir. 1988)). As explained in Co-Defendant Clinesmith's Motion to Dismiss and incorporated in Comey's Motion, FISA, along with other statutes, qualifies as a comprehensive statutory scheme that counsels hesitation, and Page's claims fit squarely within that scheme. Dkt. 81-1 at 33-36 (explaining that Congress provided for civil and criminal liability for FISA violations in 50 U.S.C. §§ 1809, 1810); Dkt. 87-1 at 37 (same). Page does not challenge this critical argument, and consequently must concede it. *Rosenblatt v. Fenty*, 734 F. Supp. 2d 21, 22 (D.D.C. 2010) ("[A]n argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded.").

## IV. <u>Comey Is Entitled To Qualified Immunity</u>

Page argues that Comey is not entitled to qualified immunity on the *Bivens* claim because "the Constitution [does] not permit a police officer deliberately, or with reckless disregard for the truth, to make material misrepresentations or omissions to seek a warrant that would otherwise be without probable cause." Dkt. 98 at 61 (quoting *Miller v. Prince George's County, MD*, 475 F.3d 621, 632 (4th Cir. 2007). Page does not allege nor can he allege that Comey deliberately, or with reckless disregard for the truth, made any material misrepresentations or omissions in the warrant applications. In fact, the OIG Report not only concluded that Comey was not involved in the compilation of any evidence used to support the probable cause determination in the application,

but the Inspector General also found no evidence that Comey actually knew, at the time of his certifications, that the factual information submitted in support of the applications was false or misleading. OIG Report at 156-57. Instead, Page merely alleges that Comey verified three of the FISA warrant applications. SAC ¶ 150. As explained above and in Comey's Motion to Dismiss, it appears that Page fails to appreciate that Comey's certification (not verification) of the first three FISA warrant applications was not a verification of the information contained in the warrant applications, despite Comey's clear recitation of the role of his certifications. *See* Dkt. 87-1 at 28-32 (citing 50 U.S.C § 1804 and explaining that the purpose of a FISA certification is to certify that the purpose of the surveillance is to obtain foreign intelligence information and that the information cannot reasonably be obtained by normal investigative techniques). Comey's certifications did not and were not intended or required to verify the information contained in the FISA warrant applications. And, existing precedent does not clearly establish that Comey's *certification* of the FISA warrant applications as part of that process could have conceivably violated Page's Fourth Amendment rights. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (finding that a "clearly established" right exists where "existing precedent must have placed the statutory or constitutional question beyond debate").

Page further argues that Comey is not entitled to qualified immunity on the FISA claims because "FISA itself contains a statutory affirmative defense that exempts law enforcement or investigative officers engaged in official duties when the electronic surveillance was authorized by and conducted pursuant to a search warrant." Dkt. 98 at 62. However, qualified immunity is available for *both* constitutional claims *and* some statutory claims. *See Rasul v. Myers*, 512 F.3d 644, 668 n.20 (D.C. Cir. 2008) ("'[W]e [have] held that . . . the doctrine of qualified immunity applied to plaintiff's statutory claims [under the Federal Wiretap Act] in the same manner as it

applied to plaintiff's constitutional claims.'" (quoting *Berry*, 146 F.3d at 1014) (alterations in original)), *judgment vacated on other grounds*, 555 U.S. 1083 (2008).  Page's position ignores the fact that courts have dismissed FISA claims on the basis of qualified immunity.  *See Fazaga*, 965 F.3d at 1039 (non-agent defendants "entitled to qualified immunity on the FISA claim"); *Elnashar v. U.S. Dep't of Just.*, 2004 WL 2237059, at *5 (D. Minn. Sept. 30, 2004), *aff'd*, 446 F.3d 792 (8th Cir. 2006) ("Umbel is entitled to qualified immunity insofar as Elnashar asserts that Umbel violated the FISA.").

Finally, Page alleges that any issue of qualified immunity is an affirmative defense that is not properly raised at the motion to dismiss stage of litigation.  Dkt. 98 at 63-64.  This is wrong.  The Supreme Court has recognized that qualified immunity is not "a mere defense to liability" but rather "an immunity from suit."  *Mitchell v. Forsyth*, 472 U.S. 511, 526-27 (1985).  As a result, the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).  Here, the allegations in the SAC inescapably lead to the conclusion that Comey is entitled to qualified immunity, and thus, the claims against him must be dismissed.

## V.    Page Should Not Be Granted Leave to File Another Amended Complaint

This Court should reject Page's request to replead his claims yet again.  Page has had ample opportunity and time to revise his pleading, including an opportunity to amend his claims to correct the fatal flaws as explained by the Defendants in their Motions to Dismiss Page's First Amended Complaint.  Dkts. 60-1, 62-1, 63-1, 64-1, 66-1, 67-1, 68-1, 69-1, 70-1.  Page's Second Amended Complaint wholly fails to adequately address any of the Defendants' arguments, *see* Dkt. 73, because the facts do not permit Page to correct the fatal flaws of the SAC.  Further, "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)."  *U.S.*

*ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004). Page also

did not attach a proposed amended complaint as an exhibit as required by LCvR 15.1. Where a

plaintiff "has not provided a proposed amended complaint and has not indicated that he will be

able to plead sufficient facts that would overcome the pleading deficiencies here, amendment

would be futile." *Nono v. George Washington Univ.*, 245 F. Supp. 3d 141, 149 (D.D.C. 2017).

Page's perfunctory request devoid of any additional factual allegation that could possibly cure the

defects in the SAC counsels that the Court reject Page's request for yet another bite at the apple.

Page's request for leave to amend should be denied.

<u>**CONCLUSION**</u>

For the reasons set forth above and in Comey's Motion to Dismiss, the Court should

dismiss all claims against James B. Comey (Counts 1-4, and 6) with prejudice.

Dated:  April 1, 2022                              Respectfully submitted,

                                                   **DECHERT LLP**

                                                   */s/ Amisha R. Patel*
                                                   Amisha R. Patel (DC Bar No. 1005420)
                                                   1900 K Street, NW
                                                   Washington, D.C. 20006
                                                   Tel: (202) 261-3374
                                                   Fax: (202) 261-3333
                                                   amisha.patel@dechert.com

                                                   David N. Kelley (*pro hac vice*)
                                                   Three Bryant Park
                                                   1095 Avenue of the Americas
                                                   New York, NY 100036-6797
                                                   Tel: (212) 698-3580
                                                   Fax: (212) 698-3599
                                                   david.kelley@dechert.com

Stormie Mauck (*pro hac vice*)
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-2516
Fax: (215) 994-2222
stormie.mauck@dechert.com

*Counsel for Defendant James B. Comey*