**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CARTER PAGE,<br><br>              Plaintiff,<br><br>         v.<br><br>JAMES B. COMEY, ANDREW MCCABE, KEVIN CLINESMITH, PETER STRZOK, LISA PAGE, JOE PIENTKA III, STEPHEN SOMMA, BRIAN J. AUTEN, DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION, UNITED STATES OF AMERICA, JOHN DOES 1-10, JANE DOES 1-10,<br><br>              Defendants. | No. 1:20-cv-03460-DLF |

**JOE PIENTKA III'S REPLY BRIEF**
**IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

James M. Koukios (#477072)
Vanshika Vij (#1029822 )
Robin A. Smith (#1685989)
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, D.C. 20037
Phone:  (202) 887-1500
Fax:  (202) 887-0763
JKoukios@mofo.com
VVij@mofo.com
RSmith@mofo.com

*Attorneys for Joe Pientka III*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 1

I.      Plaintiff's Claims are Time-Barred.................................................................... 1

II.     Plaintiff Fails to State FISA Claims Against Mr. Pientka .................................... 3

        A.      Plaintiff's Attempt to Constructively Amend the SAC Should be
                Rejected................................................................................................. 4

        B.      Plaintiff's Secondary Liability Arguments Fail......................................... 8

III.    Plaintiff's *Bivens* Claim Fails and Must Be Dismissed ..................................... 11

IV.     Mr. Pientka is Entitled to the FISA Safe Harbor Protections or Qualified
        Immunity or Both................................................................................................ 12

V.      Plaintiff Should Not Be Granted Leave to File Another Amended
        Complaint........................................................................................................... 13

CONCLUSION..................................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Annappareddy v. Lating*,
 2019 WL 12094026 (D. Md. Oct. 18, 2019) ............................................................3

*Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Service*,
 297 F. Supp. 2d 165 (D.D.C. 2003) ........................................................................4

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ....................................................................................10, 11, 12

*Balt.-Wash. Tel. Co. v. Hot Leads Co.*,
 584 F. Supp. 2d 736 (D. Md. 2008) ........................................................................8

*Berman v. Crook*,
 293 F. Supp. 3d 48 (D.D.C. 2018) .......................................................................2, 11

*Boim v. Holy Land Found. for Relief & Dev.*,
 549 F.3d 685 (7th Cir. 2008) (en banc) ..................................................................8

*Carter v. Carson*,
 241 F. Supp. 3d 191 (D.D.C. 2017) ........................................................................7

*Central Bank, N.A. v First Interstate Bank*,
 511 U.S. 164 (1994) .............................................................................................8, 9

*City of New York v. Milhelm Attea & Bros.*,
 2009 U.S. Dist. LEXIS 19351 (E.D.N.Y. Mar. 11, 2009) .......................................9

*Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*,
 891 F. Supp. 2d 13 (D.D.C. 2012) ..........................................................................8

*In re Currency Conversion Fee Lit.*,
 265 F. Supp. 2d 385 (S.D.N.Y. 2003) .....................................................................8

*Eco Tour Adventures, Inc. v. Jewell*,
 174 F. Supp. 3d 319 (D.D.C. 2016) .......................................................................12

*Freeman v. DirecTV, Inc.*,
 457 F.3d 1001 (9th Cir. 2006) .................................................................................8

*Graves v. United States*,
 961 F. Supp. 314 (D.D.C. 1997) ............................................................................13

*James Madison Ltd. By Hecht v. Ludwig*,
    82 F.3d 1085 (D.C. Cir. 1996) ........................................................................13

*Jones v. Global Info. Group, Inc*.,
    2009 U.S. Dist. LEXIS 23879 (W.D. Ky. Mar. 25, 2009) ........................................8

*Kelley v. FBI*,
    67 F. Supp. 3d 240 (D.D.C. 2014) ....................................................................5

*LKQ Corp. v. United States*,
    2019 WL 3304708 (D.D.C. 2019) ...............................................................11, 12

*MCI Telecomms. Corp. v. Graphnet, Inc.*,
    881 F. Supp. 126 (D.N.J. 1995) .......................................................................9

*McLachlan v. Simon*,
    31 F. Supp. 2d 731 (N.D. Cal. 1998) ................................................................8

*Meeks v. Larsen*,
    611 F. App'x 277 (6th Cir. 2015) ....................................................................11

*Mruz v. Caring, Inc.*,
    991 F. Supp. 701 (D.N.J. 1998) .......................................................................9

*Smith v. Nixon*,
    606 F.2d 1183 (D.C. Cir. 1979) ......................................................................3

*Sparshott v. Feld Ent., Inc.*,
    311 F.3d 425 (D.C. Cir. 2002) ........................................................................2

*In re Toys R Us, Inc., Privacy Litig.*,
    2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ......................................................8

*United States v. Teffera*,
    985 F.2d 1082 (D.C. Cir. 1993) .....................................................................10

*Wynn v. Nat'l Broad. Co*.,
    234 F. Supp. 2d 1067 (C.D. Cal. 2002) .............................................................8

**Statutes**

18 U.S.C. § 2 ...........................................................................................9

50 U.S.C. § 1809 ...................................................................................5, 9

50 U.S.C. § 1810 ...................................................................................4, 5

**Other Authorities**

Ellen Nakashima et al., *FBI Obtained FISA Warrant to Monitor Former Trump
Advisor Carter Page*, WASH. POST (Apr. 11, 2017) ...............................................................2, 3

U.S. Department of Justice, *Review of Four FISA Applications and Other Aspects
of the FBI's Crossfire Hurricane Investigation* (Dec. 9, 2019)....................................... passim

**INTRODUCTION**

Plaintiff Carter Page, having now filed three complaints and a seventy-page brief in opposition to Defendants' motions to dismiss, still has not alleged facts sufficient to state either a Foreign Intelligence Surveillance Act ("FISA") claim or a *Bivens* claim against Defendant Joe Pientka III, who participated only in conducting the Woods Review for the initial FISA Warrant and did not participate at all in the three renewal FISA warrants.  Seemingly recognizing the deficiency of the allegations in the Second Amended Complaint ("SAC"), Plaintiff improperly rewrites those allegations in his opposition brief.  Such new (and factually incorrect) allegations cannot be considered by the Court because they were not properly alleged in the SAC.  But even accepting those new allegations at face value, Plaintiff's claims fail as a matter of law.  ***First***, Plaintiff's claims are untimely.  ***Second***, Plaintiff has not stated a FISA claim against Mr. Pientka. ***Third***, Plaintiff does not meaningfully engage with Mr. Pientka's argument that his *Bivens* claim would extend the *Bivens* doctrine to a new context.  ***Fourth and finally***, Mr. Pientka is immune from liability under FISA's safe harbor provision, qualified immunity, or both.

**ARGUMENT**[1]

**I.    Plaintiff's Claims are Time-Barred**

Plaintiff does not dispute that, as demonstrated on the face of the SAC, he had notice that he had been the target of the initial FISA warrant as early as April 11, 2017, when the *Washington Post* reported that the Federal Bureau of Investigation ("FBI") and the Justice Department had obtained an initial FISA warrant (and at least one renewal warrant), which allowed the FBI to monitor Plaintiff's communications.  SAC ¶ 221.  Nor can he dispute this.  Plaintiff was quoted in

---

[1] For the sake of judicial economy, Mr. Pientka joins the Reply Briefs of Individual Defendants Kevin Clinesmith, Stephen Somma, Peter Strzok, Andrew McCabe, Lisa Page, Brian J. Auten, and James B. Comey (the "Co-Defendants"), and incorporates herein by reference all arguments set forth in those replies that apply equally to Mr. Pientka.

the article, telling the *Post*, "This confirms all of my suspicions about unjustified, politically motivated government surveillance," and "dismiss[ing] what he called 'the dodgy [Steele] dossier' of false allegations," which he believed was used to support the warrant.  Ellen Nakashima et al., *FBI Obtained FISA Warrant to Monitor Former Trump Advisor Carter Page*, WASH. POST (Apr. 11, 2017), http://wapo.st/2pr7kpE ("April 2017 *Post* article").[2]

Plaintiff's argument that the defendants used the secrecy of the FISA process to "affirmatively prevent[]" him from learning about the details of the alleged misrepresentations contained in the warrant affidavits until OIG published its report in December 2019 is legally irrelevant (and factually dubious).  The April 2017 *Post* article reporting that Plaintiff had been the target of FISA surveillance provided all the notice that was required for Plaintiff's claims against Mr. Pientka to accrue.  *See Berman v. Crook*, 293 F. Supp. 3d 48, 56 (D.D.C. 2018) ("Here, Mr. Berman's claim accrued in 2000 **when he learned of the search of his office**.") (internal citations omitted) (emphasis added);[3] *Sparshott v. Feld Ent., Inc.*, 311 F.3d 425, 429 (D.C. Cir.

---

[2] As shown on the face of the SAC, Plaintiff's claims likely accrued even earlier than April 2017. *See* SAC ¶¶ 15, 81 (discussing Plaintiff's September 25, 2016, letter to then-FBI Director Comey, in which he attacked the Crossfire Hurricane investigation and denied the allegations about him in the YAHOO! NEWS article); Office of the Inspector General, U.S. Department of Justice, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* (Dec. 9, 2019) (hereinafter "OIG Report") at 220 (detailing that Plaintiff told the FBI in March 2017 that he "believed he was under surveillance").

[3] The court in *Berman v. Crook* unequivocally held that the plaintiff's "claim accrued in 2000 **when he learned of the search of his office.**"  293 F. Supp. 3d 48, 56 (D.D.C. 2018) (internal citations omitted) (emphasis added).  Plaintiff therefore misstates this holding by asserting that the court found the plaintiff's "claim accrued when plaintiff received a copy of the warrant affidavit, including the portion with the alleged false statements."  Opp'n Br. at 67.  It is true that, having received notice from the search of his office, the plaintiff in *Berman* filed a motion to unseal the warrant affidavit and ultimately received a redacted copy of the affidavit, and then much later, an unredacted copy of the affidavit.  But it was his learning of the search that was the operative fact for statute of limitations purposes.  That he later received a redacted copy of the affidavit in addition to the original notice only undermined the plaintiff's notice argument further.  Even assuming that the court in *Berman* viewed the affidavit as necessary for notice, Plaintiff here

2002) (notice sufficient where plaintiff "received outside warnings of [defendant's] wiretapping"). Plaintiff does not rebut the argument that he could have filed suit against the FBI, Justice Department, and John Does upon learning of the April 2017 *Post* article.   Dkt 84-1 at 10. Moreover, Plaintiff has failed to allege—and, given the April 2017 *Post* article, cannot allege— any facts that would establish that Mr. Pientka or any of the other defendants "engaged in affirmative acts of concealment that prevented [him] from ***discovering the surveillance***" until the OIG Report was published.   *Smith v. Nixon*, 606 F.2d 1183, 1191 (D.C. Cir. 1979) (emphasis added).[4]

Because Plaintiff did not file his initial complaint for more than three years after he received notice of the FISA surveillance through the April 2017 *Post* Article, his claims against Mr. Pientka are time-barred under either the one-year statute of limitations that Mr. Pientka asserts should apply or the three-year statute of limitations advocated by Plaintiff.[5]   Accordingly, they should be dismissed with prejudice.

## II.  Plaintiff Fails to State FISA Claims Against Mr. Pientka

As discussed at length in Mr. Pientka's Motion, the SAC does not allege a single fact that, if proved, would establish that Mr. Pientka intentionally "engage[d] in electronic surveillance" of Plaintiff or intentionally "disclose[d] or use[d]" the fruits of the FISA surveillance required to state

---

should not be rewarded for failing to take any action to obtain the affidavit after he received notice of the FISA surveillance.

[4] Plaintiff's only other support for his position is *Annappareddy v. Lating*, a case in which the plaintiff brought a claim under *Franks v. Delaware* challenging the basis for a search warrant. 2019 WL 12094026 (D. Md. Oct. 18, 2019), *rev'd on other grounds*, 996 F.3d 120 (4th Cir. 2021). This case cannot bear the weight Plaintiff would put upon it.  Setting aside that the Fourth Circuit reversed the district court and dismissed all of the plaintiff's claims, the opinion stands for the unremarkable proposition that a cause of action accrues when the plaintiff has sufficient facts about the harm that a reasonable inquiry will reveal his cause of action.  Plaintiff knew everything he needed to know to bring this suit in April 2017.

[5] In addition to the arguments above, Mr. Pientka joins and incorporates by reference the generally applicable statute-of-limitations arguments set forth in Section I of the Clinesmith Reply Brief.

a violation of 50 U.S.C. § 1810.  Dkt. 84-1 at 11-18.  Recognizing this pleading deficiency, Plaintiff

impermissibly attempts to amend the SAC's allegations through his opposition brief and asserts a

new, faulty theory of secondary liability.

### A.  Plaintiff's Attempt to Constructively Amend the SAC Should be Rejected

"It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion

to dismiss." *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Service*, 297 F. Supp. 2d 165,

170 (D.D.C. 2003).  Yet this is precisely what Plaintiff attempts to do.

In particular, Plaintiff attempts to enhance his allegations regarding Mr. Pientka's role with

respect to the Initial FISA warrant.  Plaintiff contends in his opposition brief that the Woods

Procedures "required Defendant Pientka to ***verify the accuracy of the facts*** and confirm that the

'Woods File' contained all documents to support each factual assertion in a FISA application."

Opp'n Br. at 38 (citing SAC ¶ 198) (emphasis added).  Similarly, Plaintiff contends in his

opposition brief that Mr. Pientka "falsely certified that the information in the First FISA Warrant

application was ***verified for accuracy***."  Opp'n Br. at 39 (citing SAC ¶¶ 97, 198) (emphasis added).

But SAC ¶ 198 does ***not*** allege this.  Rather, that paragraph concedes that Mr. Pientka's role with

respect to the initial FISA warrant was limited to "confirming the completion of the Woods File

for the warrant application, and for double checking the factual accuracy review ***to confirm that***

***the file contained appropriate documentation*** for each of the factual assertions in the FISA

application." SAC at ¶ 198 (emphasis added).[6]  Plaintiff even more aggressively attempts to amend

the SAC when he writes in his opposition brief that Mr. Pientka "***intentionally set forth misleading***

---

[6] The Woods Procedures in place at the time required the SSA to review the Woods File and confirm that it contains supporting documentation for each factual assertion in the FISA application.  *See* OIG Report at 44.  It did ***not*** impose a duty on the SSA to verify the accuracy of the facts in the FISA application, notwithstanding Plaintiff's contrary insinuations in his opposition brief.

*statements* to the FISC to falsely establish probable cause for the First FISA Warrant[.]"  Opp'n Br. at 40 (emphasis added).  Here, Plaintiff does not even attempt to cite the SAC, which (correctly) contains no allegation that Mr. Pientka authored even a single statement contained in the affidavit supporting the first FISA application.[7]

These are no small changes.  Verifying that a file contains documentation to support a factual allegation is meaningfully different than verifying the accuracy of the factual allegation itself and is dramatically different than intentionally drafting a false statement in an affidavit. Plaintiff's motive for these attempted constructive amendments are obvious: Without plausible allegations that Mr. Pientka *intentionally* violated FISA, Plaintiff fails to state a claim under 50 U.S.C. § 1810.[8]  The Court should reject these attempted amendments, which, in any event do not establish intentionality.  But even if the Court were to find that these new allegations are proper and sufficient to allege intentionality, Plaintiff still points to no particularized factual allegations in the SAC that would establish that Mr. Pientka engaged in electronic surveillance or disclosed or used information obtained through electronic surveillance, as is required by the statute.[9]

_____

[7] *See also* Dkt. 84-1 at 18 ("Plaintiff acknowledges [in the SAC] that Mr. Pientka did not write the initial FISA application, and the Woods Procedures do not call upon an SSA to evaluate a FISA application for missing facts. Thus, Plaintiff does not and cannot allege that Mr. Pientka intentionally or recklessly included material false statements in, or withheld material information from, the initial FISA application.").

[8] Underscoring this deficiency in pleading, Plaintiff deploys the words "intentional" and "intentionally" no fewer than 23 times in his opposition brief.  But these rote allegations are nothing more than "labels and conclusions" that, even if actually alleged in the SAC, would fail to satisfy *Twombly*.  *Kelley v. FBI*, 67 F. Supp. 3d 240, 257-58 (D.D.C. 2014) (discussing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  But the fact remains that the OIG "did not find documentary or testimonial evidence of intentional misconduct on the part of the case agents who assisted [the National Security Division's Office of Intelligence] in preparing the applications, or the agents and supervisors who performed the Woods Procedures[.]"  OIG Report at 376-77, 413.

[9] To state a FISA claim, Plaintiff must plausibly allege that (1) he is an "aggrieved person[,]" (2) he was "subjected to an electronic surveillance," and (3) Mr. Pientka violated 50 U.S.C. § 1809 by either (a) intentionally engaging in unauthorized electronic surveillance or (b) intentionally

Furthermore, Plaintiff's opposition brief asks the court to draw unreasonable factual inferences in the hopes of establishing that Mr. Pientka was responsible for the allegations contained in the affidavits supporting the renewal FISA warrants.  Implicitly acknowledging that the SAC does not contain any factual allegation that Mr. Pientka worked on the second FISA warrant, Plaintiff argues that Mr. Pientka must have been involved in the preparation of the first renewal application simply because his assignment to Operation Crossfire Hurricane terminated the same month that the renewal application was submitted.  Opp'n Br. at 41.  Recognizing that he does not allege any facts against (and does not even name) Mr. Pientka in the sections of the SAC labeled "The Third FISA Warrant" and "The Fourth FISA Warrant,"[10] Plaintiff then argues that Mr. Pientka "set in motion the circumstances that created the final two unlawful warrants" because "the subsequent warrant renewal applications incorporated, relied upon, and built upon the false and incomplete information" in the First Warrant.  Opp'n Br. at 41–42.  These allegations are not supported by fact, logic, or a single factual allegation in the SAC.  Indeed, as required by FBI policy, each of the three renewal applications submitted after Mr. Pientka's departure from Crossfire Hurricane in January 2017 were to receive a *de novo* review by his replacement, breaking any speculative connection between Mr. Pientka and the renewal applications.  OIG Report at 44, 207.[11]  The Court should also reject these attempted amendments to the SAC.

---

disclosing or using information obtained through electronic surveillance that Mr. Pientka knew was not properly authorized.  50 U.S.C. §§ 1809(a), 1810.

[10] *See* Dkt. 84-1 at 17.

[11] "In the case of renewal applications, the case agent must re-verify the accuracy of each factual assertion that is carried over from the first application and also verify and obtain supporting documentation for any new factual assertions that are added. . . .The case agent then submits the Woods Form and Woods File to his or her SSA.  The SSA is responsible for reviewing the Woods File and confirming that it contains supporting documentation of every factual assertion in the application." OIG Report at 44.  Mr. Pientka was not the SSA for the renewal applications.  As explained in the OIG Report, Case Agent 1's "new supervisor at FBI Headquarters for the Carter Page investigation, SSA 3, was responsible for confirming that the Woods File was complete and

Plaintiff further asserts for the first time in his opposition brief that Mr. Pientka violated FISA by failing to inform the Foreign Intelligence Surveillance Court ("FISC") of information he learned after the initial FISA warrant was granted, which Plaintiff contends was in contravention of FISC Rule 13.  Plaintiff alleges only that in November 2016, after the Initial FISA Warrant application was submitted:  (1) Mr. Pientka was present at a meeting with other FBI personnel, during which the context of Steele's information was discussed, and (2) Mr. Pientka was "in possession of information" regarding Steele from a State Department official, with whom he did not "follow up."  SAC ¶ 106, 109; Opp'n Br. at 39.  However, not only does Plaintiff again ignore that Mr. Pientka's role with respect to the Initial FISA Warrant was limited to confirming that the application contained adequate documentation, but he has also failed to explain why an alleged violation of the FISC Rules of Procedure amounts to a substantive violation of FISA.  Moreover, these new allegations have no bearing on the renewal FISA applications, over which Mr. Pientka had no responsibility.

Plaintiff should not be permitted to amend his deficient complaint now.  *Carter v. Carson*, 241 F. Supp. 3d 191, 197 (D.D.C. 2017) ("I cannot consider this new information in testing the legal sufficiency of the complaint against defendant's motion to dismiss, however, because plaintiff failed to include these allegations in her complaint, and a plaintiff may not amend her complaint by the briefs in opposition to a motion to dismiss.") (internal quotation marks omitted).  Instead, the Court should dismiss Plaintiff's FISA claims against Mr. Pientka based on the SAC's deficient factual allegations.

---

double checking the factual accuracy review to confirm that the file contained appropriate documentation for the factual assertions in the [first renewal] FISA application."  OIG Report at 207.

### B.  Plaintiff's Secondary Liability Arguments Fail

#### 1.  FISA Does Not Authorize Secondary Liability

Mr. Pientka joins and incorporates by reference the secondary-liability argument set forth in Section II of the Clinesmith Reply Brief.

Plaintiff asserts that, even if Mr. Pientka did not personally engage in unlawful surveillance, he is liable because he aided and abetted the unlawful surveillance of others.  But *Central Bank, N.A. v First Interstate Bank*, 511 U.S. 164 (1994), forecloses this argument.  In *Central Bank*, the Supreme Court held that parties cannot be liable for aiding and abetting a violation of section 10(b) of the Securities Exchange Act of 1934 because the statute does not provide for such liability.  *Id*. at 191.  The Court explained, "when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors."  *Id*. at 182.  In other words, "statutory silence on the subject of secondary liability means there is none."  *Boim v. Holy Land Found. for Relief & Dev*., 549 F.3d 685, 689 (7th Cir. 2008) (en banc).  For this reason, federal courts across the country have applied *Central Bank* to reject secondary liability under multiple other statutes, including the Electronic Communications Privacy Act,[12] the Wiretap Act,[13] the Stored Wire and Electronic Communications and Transactional Records Access Act,[14] and many other statutes.[15]

---

[12] *Freeman v. DirecTV, Inc*., 457 F.3d 1001, 1006 (9th Cir. 2006); *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 26-27 (D.D.C. 2012).

[13] *In re Toys R Us, Inc., Privacy Litig.*, 2001 WL 34517252, at *7 (N.D. Cal. Oct. 9, 2001).

[14] *Jones v. Global Info. Group, Inc*., 2009 U.S. Dist. LEXIS 23879 at 5-7 (W.D. Ky. Mar. 25, 2009).

[15] *Balt.-Wash. Tel. Co. v. Hot Leads Co*., 584 F. Supp. 2d 736, 745-46 (D. Md. 2008) (the Telephone Consumer Protection Act); *In re Currency Conversion Fee Lit*., 265 F. Supp. 2d 385, 432-44 (S.D.N.Y. 2003) (the Truth in Lending Act); *Wynn v. Nat'l Broad. Co*., 234 F. Supp. 2d 1067, 1114-15 (C.D. Cal. 2002) (the Age Discrimination in Employment Act of 1967); *McLachlan v. Simon*, 31 F. Supp. 2d 731, 739 n.7 (N.D. Cal. 1998) (the Investment Company Act of 1940);

*Central Bank* similarly precludes secondary liability under FISA.  The Supreme Court made clear in *Central Bank* that the analysis should begin and end with the statute's text.  *Central Bank*, 511 U.S. at 191 ("Because the text of § 10(b) does not prohibit aiding and abetting, we hold that a private plaintiff may not maintain an aiding and abetting suit under § 10(b).)  Just like the statute at issue in *Central Bank*, FISA does not expressly provide for secondary liability; it only sanctions a person who "intentionally . . . engages in electronic surveillance" or "discloses or uses information obtained under color of law by electronic surveillance."  50 U.S.C. § 1809.  Because FISA is silent as to secondary liability, courts should presume that Congress deliberately omitted it.  *Central Bank*, 511 U.S. at 182.

Notwithstanding FISA's silence on secondary liability, Plaintiff argues the Court should apply 18 U.S.C. § 2 to find the Individual Defendants liable for the actions of other individuals.  But the Supreme Court rejected a similar argument in *Central Bank*, "declin[ing] to rely only on 18 U.S.C. § 2 as the basis for recognizing a private aiding and abetting right of action . . ." *Id*. at 191.  No court has ever held that secondary liability is available for a FISA claim, either under FISA itself or via 18 U.S.C. § 2.  This Court should not find such liability here.

### 2.   Plaintiff Has Failed to Plausibly Allege Secondary Liability as to Mr. Pientka

Even if secondary civil liability were available under FISA and even accepting the new allegations in his Opposition Brief,[16] Plaintiff fails to allege facts sufficient to support a claim that Mr. Pientka aided and abetted anyone in violating any law.  Assuming *arguendo* that Plaintiff

---

*Mruz v. Caring, Inc.,* 991 F. Supp. 701, 709 (D.N.J. 1998) (the False Claims Act); *MCI Telecomms. Corp. v. Graphnet, Inc*., 881 F. Supp. 126, 129-31 (D.N.J. 1995) (the Sherman Act); *City of New York v. Milhelm Attea & Bros*., 2009 U.S. Dist. LEXIS 19351, at *7–19 (E.D.N.Y. Mar. 11, 2009) (the Contraband Cigarette Trafficking Act).

[16] For the reasons set forth in Section II.A above, the Court should reject any attempt by Plaintiff to amend the SAC through his opposition brief.

could bring a FISA aiding-and-abetting claim (which he cannot), plaintiff would have to allege facts that would establish (1) specific intent to facilitate the commission of a crime by another; (2) guilty knowledge by the alleged abettor; (3) commission of the substantive offense by someone else; and (4) assistance or participation in the commission of the offense. *United States v. Teffera*, 985 F.2d 1082, 1086 n.3 (D.C. Cir. 1993).  But Plaintiff's aiding-and-abetting theory comes up short for the same reasons that he cannot state a substantive offense against Mr. Pientka: he has not plausibly alleged that Mr. Pientka had the specific intent to violate FISA or that Mr. Pientka had knowledge that someone else was violating FISA.  Dkt. 84-1 at 11-15, *see supra* II.A.  Nor has Plaintiff adequately alleged that Mr. Pientka assisted or participated in committing a crime. And, as discussed in Mr. Pientka's motion (Dkt. 84-1 at 11-12), we are aware of no section 1809 or 1810 cases based on an allegedly faulty Woods Review, and Plaintiff certainly does not cite any in his opposition brief.

Having no factual information to support his new aiding-and-abetting theory, Plaintiff suggests that it would take this court "little imagination" to conclude that Mr. Pientka was "engaged in conduct, along with others, to obtain the FISA Warrants regardless of the fact that probable cause was lacking."  Opp'n Br. at 39.  However, imagination is insufficient to state a claim that is "plausible on its face."  *Twombly*, 550 U.S. at 555.  The allegations do not provide "sufficient factual matter" to allow the court "to draw the reasonable inference" that Mr. Pientka intentionally engaged in such an illegal scheme to obtain the initial FISA warrant, nor is there anything to suggest that Mr. Pientka learned of and decided to support an illegal scheme to obtain the renewal FISA warrants.[17]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[17] As discussed in Mr. Pientka's motion to dismiss and this reply brief, Mr. Pientka was not involved in any of the three renewal applications for the FISA warrant, and left Operation Crossfire Hurricane in January 2017.

Finally, Plaintiff cannot cure the absence of factual allegations by suggesting that the Court focus on the "bigger picture" here (Opp'n Br. at 50)—to the contrary, the law requires Plaintiff to plausibly allege "that ***each Government-official defendant***, through the ***official's own individual actions***, has violated the Constitution" or other applicable law. *Iqbal*, 556 U.S. at 676 (emphasis added).

## III.   Plaintiff's *Bivens* Claim Fails and Must Be Dismissed

Mr. Pientka also joins and incorporates by reference the generally applicable *Bivens* arguments set forth in Section III of the Clinesmith Reply Brief. As with his FISA claims, Plaintiff does not meaningfully respond to Mr. Pientka's motion, and what little he does offer is not sufficient to support his claim. Plaintiff's *Bivens* claim (Claim 6) against Mr. Pientka should be dismissed.

***First***, as discussed at length in Mr. Pientka's Motion, Plaintiff's *Bivens* claim, even if it was sufficiently alleged, would impermissibly extend *Bivens* to a new context, in the face of special factors that counsel against that extension. Dkt. 84-1 at 19-20. Plaintiff does very little in his opposition to confront these arguments, and in some circumstances even agrees with Mr. Pientka's position. *See* Opp'n Br. at 62 (admitting this case does not arise in the traditional law enforcement context, stating that "[t]he purpose of FISA is to gather foreign intelligence, not evidence for law enforcement[.]").

The few cases that Plaintiff does cite (Opp'n Br. at 58-59) do not support extending *Bivens* into the FISA context. *Meeks v. Larsen*, 611 F. App'x 277, 283 (6th Cir. 2015) (dismissing *Bivens* claims for failure to state a claim in traditional law enforcement search-and-seizure context); *Berman v. Crook*, 293 F. Supp. 3d 48 (D.D.C. 2018) (granting motion to dismiss and declining to extend *Bivens* to due process claims). Indeed, at least one case would counsel against extending *Bivens* to FISA on account of its comprehensive statutory scheme. *LKQ Corp. v. United States*,

No. 18-cv-1562 (DLF), 2019 WL 3304708 (D.D.C. 2019) (declining to extend *Bivens* to due process claim on the grounds that "the presence of a comprehensive statutory scheme governing [the claim] counsels strongly against expanding the implied *Bivens* cause of action," and granting the motion to dismiss as to that count). Plaintiff's arguments concerning the "election of remedies and damages proof" are inapplicable in the *Bivens* context and cannot save Plaintiff's claim.[18]

**Second**, even accepting Plaintiff's new, and impermissible, allegations, he has nonetheless failed to plead that Mr. Pientka himself committed a Fourth Amendment violation.  Dkt. 84-1 at 18–19.  Plaintiff adds nothing new that is specific to Mr. Pientka, or which bears addressing here. But, to the extent that Plaintiff's failed attempt at asserting group liability applies to Mr. Pientka as an "Individual Defendant," Mr. Pientka also joins and incorporates by reference those arguments as set forth in Section III of the Clinesmith Reply Brief.

Plaintiff cannot save his *Bivens* claim against Mr. Pientka by arguing supervisory liability. As explained above, Plaintiff must plausibly allege that Mr. Pientka himself, through his own individual actions, has violated the constitution.  *Iqbal*, 556 U.S. at 676.[19]

## IV.    Mr. Pientka is Entitled to the FISA Safe Harbor Protections or Qualified Immunity or Both

Mr. Pientka joins and incorporates by reference the generally applicable arguments regarding qualified immunity and the FISA safe harbor protections set forth in Section IV of the Clinesmith Reply Brief.  **First**, Mr. Pientka is entitled to the statutory safe harbor under § 1809(b) for the FISA claims.  Plaintiff does not even try to argue that Mr. Pientka is not "a law enforcement

---

[18] Plaintiff cites one case regarding election of remedies (Opp'n Br. 60-61), *Eco Tour Adventures, Inc. v. Jewell*, 174 F. Supp. 3d 319, 333 (D.D.C. 2016).  This case deals with a plaintiff who brought action under the Administrative Procedure Act seeking relief as to a National Park Service contract award; there is no connection to *Bivens*.

[19] Mr. Pientka also joins and incorporates by reference the supervisory liability arguments as set forth in the Comey Reply Brief.

or investigative officer engaged in the course of his official duties" or that the surveillance against him was not "authorized and conducted pursuant to a search warrant or court order of a court of competent jurisdiction." Nor could he. The complaint alleges precisely this. *E.g.*, SAC ¶ 198 (alleging Mr. Pientka's responsibility for the Woods Procedures compliance). **Second**, Plaintiff stumbles at each step of the qualified immunity inquiry. He has failed to allege a violation of a constitutional right, and he has provided no legal or factual support for the proposition that a deficient Woods Procedures review by Mr. Pientka violated his Fourth Amendment rights. *See* Dkt. 84-1 at 18-19. Mr. Pientka is entitled to these defenses based on the allegations in the SAC, and Plaintiff's FISA and *Bivens* claims should be dismissed.

## V. Plaintiff Should Not Be Granted Leave to File Another Amended Complaint

Plaintiff requests yet again that he be given leave to amend his complaint. Opp'n Br. at 68. The Court should deny this request. Plaintiff has already revised his complaint twice, the second time with the added benefit of previewing all of the factual and legal deficiencies that the Individual and Government Defendants raised in their Motions to Dismiss Plaintiff's First Amended Complaint. *See e.g.*, Dkts. 60-1; 62-1. Plaintiff was unable to cure his deficient pleading then, and it would be futile to do so now.[20] Plaintiff's request for leave to amend should be denied.

## <u>CONCLUSION</u>

For the reasons set forth above and in Mr. Pientka's opening brief, Dkt. 84-1, plaintiff's claims against Mr. Pientka should be dismissed in their entirety with prejudice.

---

[20] Leave to amend the Complaint should be denied as "futile" if the complaint as amended could not withstand a motion to dismiss. *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996); *Graves v. United States*, 961 F. Supp. 314, 317 (D.D.C. 1997) (granting defendants' motion to dismiss where allegations relating to additional defendants did not constitute conspiracy as matter of law, so that amendment of the complaint to add those defendants would be futile). Mr. Pientka also joins and incorporates by reference the arguments opposing leave to amend set forth in the Comey Reply Brief.

Dated:    April 1, 2022                    Respectfully submitted,

                                           /s/ James M. Koukios
                                           James M. Koukios
                                           Vanshika Vij
                                           Robin A. Smith
                                           MORRISON & FOERSTER LLP
                                           2100 L Street, NW Suite 900
                                           Washington, D.C. 20037
                                           Phone:  (202) 887-1500
                                           Fax:  (202) 887-0763
                                           JKoukios@mofo.com
                                           VVij@mofo.com
                                           RSmith@mofo.com

                                           *Attorneys for Joe Pientka III*

14

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 1, 2022, I caused a copy of the foregoing to be served via CM/ECF on all counsel of record.

<u>/s/ James M. Koukios</u>