# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CARTER PAGE,

        *Plaintiff*,

    v.

JAMES COMEY, et al.,

        *Defendants.*

Civil Action No. 20-cv-3460 (DLF)

**DEFENDANT PETER STRZOK'S REPLY MEMORANDUM IN SUPPORT OF HIS
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 2

    I.   The FISA Claims Should Be Dismissed. ............................................................ 2

        A.  Plaintiff Does Not Dispute That Mr. Strzok Never Performed Surveillance and Ignores The IG's Findings That Mr. Strzok Had No Role In The Four FISA Warrants. .......................................................................................................... 2

        B.  Plaintiff Cannot State A Claim Under FISA's Disclosure Provision. ................... 6

        C.  Section 1809(b) Bars Plaintiff's FISA Claims ....................................................... 9

        D.  The FISA Claims Are Time-Barred. ...................................................................... 10

    II.  The *Bivens* Claim Fails. .................................................................................... 11

        A.  The Court Should Not Recognize Plaintiff's New *Bivens* Claim. ....................... 11

        B.  The *Bivens* Claim Is Barred By Qualified Immunity ........................................... 13

        C.  The *Bivens* Claim Is Time-Barred. ..................................................................... 15

    III. Plaintiff's Damages Are Not Traceable To Mr. Strzok's Conduct. .................................. 15

CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. D.C. Ct. Servs.*,
  538 F. Supp. 2d 157 (D.D.C. 2008)................................................................4

*Atchley v. AstraZeneca UK Ltd.*,
  22 F.4th 204 (D.C. Cir. 2022) ........................................................................3

*Attkisson v. Holder*,
  2017 WL 5013230 (E.D. Va. Nov. 1, 2017) ...................................................2

*Bettis v. Bowser*,
  2020 WL 5632414 (D.D.C. Sept. 21, 2020)....................................................8

*\*Black Lives Matter D.C. v. Trump*,
  544 F. Supp. 3d 15 (D.D.C. 2021) ....................................................12, 13, 14

*Border v. Nat'l Real Estate Advisors, LLC*,
  453 F. Supp. 3d 249 (D.D.C. 2020)................................................................5

*Bostock v. Clayton Cty., Ga.*,
  140 S. Ct. 1731 (2020)....................................................................................9

*\*Corsi v. Mueller*,
  422 F. Supp. 3d 51 (D.D.C. 2019)......................................................12, 13, 14

*Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*,
  31 F. Supp. 3d 237 (D.D.C. 2014)...............................................................3, 6

*Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*,
  891 F. Supp. 2d 13 (D.D.C. 2012)..................................................................3

*Daugherty v. Sheer*,
  891 F.3d 386 (D.C. Cir. 2018) ......................................................................13

*District of Columbia v. Wesby*,
  138 S. Ct. 577 (2018)....................................................................................14

*Dukore v. District of Columbia*,
  799 F.3d 1137 (D.C. Cir. 2015)....................................................................14

*Flowers v. Tandy Corp.*,
  773 F.2d 585 (4th Cir. 1985) ..........................................................................3

*Hernandez v. Mesa,*
  140 S. Ct. 735 (2020)................................................................................... 12, 13

*Kaempe v. Myers,*
  367 F.3d 958 (D.C. Cir. 2004)........................................................................... 5

*LKQ Corp. v. United States,*
  2019 WL 3304708 (D.D.C. July 23, 2019) ...................................................... 12

*Robinson v. Pilgram,*
  2021 WL 5987016 (D.D.C. Dec. 17, 2021) ...................................................... 12

*Rosenfeld v. Lenich,*
  370 F. Supp. 3d 335 (E.D.N.Y. 2019)................................................................ 7

*Toumazou v. Turkish Republic of N. Cyprus,*
  71 F. Supp. 3d 7 (D.D.C. 2014)......................................................................... 8

*United States v. Koyomejian,*
  946 F.2d 1450 (9th Cir. 1991) ........................................................................... 2

*United States, ex rel. Hood v. Satory Glob., Inc.,*
  946 F. Supp. 2d 69 (D.D.C. 2013) ..................................................................... 9

*Whitfield v. United States,*
  543 U.S. 209 (2005) ...................................................................................... 4, 9

*Ziglar v. Abbasi,*
  137 S. Ct. 1843 (2017)..................................................................................... 13

**Statutes**

18 U.S.C. § 2 ....................................................................................................... 4

18 U.S.C. § 1956(h) ............................................................................................. 4

18 U.S.C. § 2511(1) ............................................................................................. 3

18 U.S.C. § 2520(d) ........................................................................................... 10

18 U.S.C. § 2707(e) ........................................................................................... 10

50 U.S.C. § 1809 ................................................................................................. 4

50 U.S.C. § 1809(a) ............................................................................................. 9

50 U.S.C. § 1809(a)(2) ........................................................................................ 6

50 U.S.C. § 1809(b) ....................................................................................... 9, 10

50 U.S.C. § 1810...................................................................................................................4

**Other Authorities**

H.R. Rep. No. 95-1720 (1978)..............................................................................................4

# INTRODUCTION

Plaintiff's Opposition does not, and cannot, save the Second Amended Complaint from dismissal. Instead, the Opposition ignores the bulk of Mr. Strzok's arguments, illustrating that the Second Amended Complaint should be dismissed. In particular, the Opposition never acknowledges the fact that, as found by the Office of Inspector General ("IG"), Strzok "*played no role* in the substantive preparation or approval of any of the four FISA applications"[1] related to Plaintiff. Despite Plaintiff's repeated reliance on the IG Report throughout his one hundred-plus pages of opposition briefing and complaint allegations, he never attempts to rebut the IG's findings as to Mr. Strzok. Those findings conclusively demonstrate that Plaintiff's claims against Mr. Strzok lack merit.

The Opposition further illustrates the infirmity of Plaintiff's allegations in several ways. *First*, as to the engagement claims, Plaintiff does not dispute that Mr. Strzok did not perform any surveillance, which is required to state a claim under FISA. Plaintiff nonetheless argues that Mr. Strzok is liable for causing *others* to perform surveillance. Not only is that claim wrong on the law—including by overlooking binding D.C. Circuit precedent rejecting Plaintiff's aiding-and-abetting theory—but there are no facts pled in the Second Amended Complaint supporting such an allegation.

*Second*, as to Plaintiff's disclosure claims, the Opposition, like the Second Amended Complaint, fails to identify any FISA-protected information that Mr. Strzok disclosed or any facts showing that Mr. Strzok knew, or should have known, such information came from unauthorized surveillance.

---

[1] *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* at 359, Office of Inspector General Report (December 2019), https://www.oversight.gov/sites/default/files/oig-reports/o20012.pdf (emphasis added).

*Third*, as to the statute of limitations, Plaintiff is wrong to argue that he could not have brought his claims against Mr. Strzok until the release of the IG Report. The Report could not have provided the necessary facts against Mr. Strzok because it absolved him of any role in the four warrants central to Plaintiff's claims.

*Fourth*, Plaintiff's Opposition cannot overcome Supreme Court precedent showing that Plaintiff's *Bivens* claim, involving electronic surveillance, national security and high-ranking executive officials, presents a new *Bivens* context that the Court should not recognize. And, like the FISA claims, the *Bivens* claim is time-barred.

For those reasons, and others below, the Court should dismiss the Second Amended Complaint as to Mr. Strzok.

## ARGUMENT

## I.    THE FISA CLAIMS SHOULD BE DISMISSED.

### A.    Plaintiff Does Not Dispute That Mr. Strzok Never Performed Surveillance and Ignores The IG's Findings That Mr. Strzok Had No Role In The Four FISA Warrants.

Plaintiff cannot state a claim against Mr. Strzok for engaging in surveillance because, as Plaintiff implicitly concedes, Mr. Strzok never engaged in surveillance of Plaintiff. As Mr. Strzok showed in his motion to dismiss, a required element of an engagement claim is that the defendant "perform[ed]," or "personally engaged in," surveillance. Strzok Mot. to Dismiss (ECF No. 82-1) 11 (citing *United States v. Koyomejian*, 946 F.2d 1450, 1459 n.16 (9th Cir. 1991); *Attkisson v. Holder*, 2017 WL 5013230, at *12 (E.D. Va. Nov. 1, 2017)). According to Plaintiff, however, whether Mr. Strzok performed any surveillance is "irrelevant." *See* Opp'n (ECF No. 98) 32. Indeed, Plaintiff's Opposition never asserts that Mr. Strzok performed or engaged in surveillance. Plaintiff's failure to satisfy a required element of his FISA claim requires dismissal.

Because Plaintiff cannot plead a claim under FISA as written, he creates a new FISA claim out of whole cloth. Plaintiff contends that Mr. Strzok is liable because he "directly caused" *others* to perform surveillance. Opp'n 32. Plaintiff does not point to anything in the language of FISA that supports this expansive liability theory or any case agreeing with him. Congress knows how to include the broader liability Plaintiff seeks here, as it did in the criminal provisions of the Wiretap Act. In that statute—using language absent from FISA—Congress made it unlawful to "procure" the interception and use of certain communications. 18 U.S.C. § 2511(1)(a), (b). "Procure" "is generally understood to mean actively bringing about, causing or instigating something to be done"—i.e., the kind of acts for which Plaintiff seeks to hold Mr. Strzok liable. *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 31 F. Supp. 3d 237, 266 (D.D.C. 2014) (quoting *Flowers v. Tandy Corp.*, 773 F.2d 585, 590 (4th Cir. 1985)). Congress, however, omitted that language in the *civil* liability provisions of the Wiretap Act, and, as a result, there is no civil procurement liability under that statute. *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 24 (D.D.C. 2012) ("Plaintiffs cannot pursue a [civil] claim for procurement liability . . . under the Federal Wiretap Act."). Because Congress also did not include such language in FISA, it is clear Congress did not intend to capture those individuals who "cause" FISA surveillance to occur.

To the extent Plaintiff invokes his aiding-and-abetting theory against Mr. Strzok, he misses the mark. In binding precedent Plaintiff ignores, the D.C. Circuit has squarely held that there is no civil aiding and abetting claim unless Congress specifically "spell[s] out a cause of action against anyone who knowingly provides substantial assistance…" *Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 215 (D.C. Cir. 2022) (secondary liability *only* available where "Congress included an

element for secondary liability" in the statute).[2] Plaintiff never argues that anything in section 1810—FISA's civil liability provision—or section 1809 mentions aiding and abetting liability for civil claims. *See* 50 U.S.C. §§ 1809–10. Indeed, FISA is silent as to aiding and abetting. Plaintiff's reliance on 18 U.S.C. § 2—for *criminal cases*—does not apply to this civil case. And the single snippet of FISA's legislative history discussing civil and criminal liability does not mention aiding and abetting liability, Opp'n 16 (citing H.R. Rep. No. 95-1720 at 34 (1978)), and would be irrelevant even if it did. *Whitfield v. United States*, 543 U.S. 209, 215 (2005) ("Because the meaning of § 1956(h)'s text is plain and unambiguous, we need not accept petitioners' invitation to consider the legislative history.").

Even assuming there was some basis for Plaintiff's expansive and unprecedented liability theories, his claims would still fail. *First*, Plaintiff's Opposition makes no mention of the IG Report's findings, based on testimonial and documentary evidence, that Mr. Strzok "*played no role* in the substantive preparation or approval of any of the four FISA applications." IG Report at 359 (emphasis added). That determination conclusively rebuts Plaintiff's allegations against Mr. Strzok. Plaintiff does not dispute that the Court can consider the Report, as he heavily relies on it. *See, e.g.*, Opp'n 14 ("The Horowitz Report catalogued the many material defects in the FISA Warrant applications submitted to the FISC, and by whom they were committed, *i.e.*, the Individual Defendants in this case."); *id.* at 66 (asserting that "key facts" were "made public" in IG Report). But Plaintiff *never* acknowledges, let alone contests, the clear conclusion by the IG that Mr. Strzok had nothing to do with the approval or preparation of the FISA warrants. *See Ali v. D.C. Ct. Servs.*, 538 F. Supp. 2d 157, 161 (D.D.C. 2008) ("If a plaintiff . . . files an opposition to a motion to

---

[2] Plaintiff asserts that the Defendants "ignore," and "cite no authority" concerning, his aiding and abetting argument. Opp'n 52 n.9. But it is Plaintiff who ignores the binding precedent and cites no authority supporting his position.

dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."). The IG's finding contradicts Plaintiff's allegations against Mr. Strzok, and the Court should take none of them as true. *See Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) (holding that court need not "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice"); *Border v. Nat'l Real Estate Advisors, LLC*, 453 F. Supp. 3d 249, 257–58 (D.D.C. 2020) ("Although plaintiff's factual allegations should be construed in her favor, the Court may examine the documents in question (the First and Second Charges, as well as the February 2019 Right to Sue Notice) to determine whether they contradict her allegations without converting the standard of review to that of a motion for summary judgment."). The findings of the IG Report—and Plaintiff's failure to engage with them—provide an independent basis to dismiss the claims against Mr. Strzok.

*Second*, Plaintiff's own factual allegations cannot support his claims, even setting aside the IG's exculpatory findings. Plaintiff does not dispute that Mr. Strzok cannot be liable under Counts 2 through 4 because he was not involved with the investigation of Plaintiff at the time of those warrants. *See* Strzok Mot. to Dismiss 12–13.[3] As to Count 1, Plaintiff did not allege any facts showing that Mr. Strzok "directly caused" surveillance. The handful of allegations Plaintiff marshals in his Opposition do not support that argument. Several have nothing to do with Plaintiff, but rather then-presidential candidate Donald Trump. Opp'n 30 (citing SAC ¶¶ 12, 70, 71, 145, 167). Plaintiff also relies on the unremarkable allegations that Mr. Strzok had supervisory authority

---

[3] Plaintiff incorrectly argues that Mr. Strzok "was extensively engaged in the production of *several* of the unlawful FISA warrant applications." Opp'n 29 (emphasis added). But Plaintiff acknowledges that Mr. Strzok no longer supervised the investigation in January 2017, *id.*—when the second FISA warrant was approved.

over the investigation for a few months, *id.* (citing SAC ¶ 151), and briefed other Defendants about a DOJ attorney's concerns with the FISA warrant application, *id.* at 31 (citing SAC ¶¶ 91, 170). And nothing in the allegations regarding Christopher Steele's background and a possible interview of Plaintiff shows that Mr. Strzok caused any surveillance. *Id.* at 30–31 (citing SAC ¶¶ 105, 106). Accordingly, even ignoring the language of the FISA statute and the IG's findings regarding Mr. Strzok, Plaintiff's engagement theory still fails.

**B.      Plaintiff Cannot State A Claim Under FISA's Disclosure Provision.**

Plaintiff's disclosure arguments fare no better than his engagement theories. Plaintiff contends that Mr. Strzok participated in "a scheme with Co-defendant Lisa Page (and others) to disclose information and records to the media regarding the existence [of] a FISA warrant and a renewal that revealed information protected by law under the FISA and Privacy Act." Opp'n 31. This claim for unlawful disclosure under FISA requires that Plaintiff allege that Mr. Strzok (1) "disclose[d] or use[d] information obtained under color of law by electronic surveillance" while (2) "knowing or having reason to know that the information was obtained through electronic surveillance not authorized." 50 U.S.C. § 1809(a)(2). Nothing in Plaintiff's Opposition identifies the facts necessary to support those elements.

*First*, the IG's findings—which Plaintiff ignores—confirm that Mr. Strzok did not know, or have reason to know, that any allegedly disclosed information was obtained through unauthorized surveillance. Because the IG concluded that Mr. Strzok had no part in the preparation or approval of any of the four FISA warrants, there is no factual basis to infer that he knew, or should have known, those warrants were unauthorized. As with the engagement claims, Plaintiff offers no reason to disregard the IG's findings, thus conceding the point. *See Council on Am.-Islamic Rels. Action Network, Inc.*, 31 F. Supp. 3d at 263 (dismissing disclosure claims under

Wiretap Act because there were "no facts showing that these Defendants . . . knew or had reason to know that these communications were intercepted in violation of" the Act because "Plaintiffs entirely fail to respond to (and therefore concede) Defendants' statements that [they] had no role").

*Second*, Plaintiff has not identified any protected information disclosed by Mr. Strzok. Plaintiff argues that Mr. Strzok and "Lisa Page (and others)" "disclose[d] information and records to the media regarding the existence a FISA warrant and a renewal that revealed information protected by law under the FISA and Privacy Act." Opp'n 31. That conclusory argument, like the Second Amended Complaint, does not point to any FISA-protected information—whether disclosed by Mr. Strzok or not—in either of the two news articles forming the basis of his claim. *See Rosenfeld v. Lenich*, 370 F. Supp. 3d 335, 348 & n.6 (E.D.N.Y. 2019) (dismissing Electronic Communications Privacy Act claim where the plaintiff "could not point to a single example of that purported disclosure" and "does not point to a single news article that discusses the contents of her communications"). Nor does the Opposition explain what information Mr. Strzok, as opposed to "others," disclosed. Opp'n 31. Without such factual support, Plaintiff's conclusory disclosure allegations made "on information and belief," *see* SAC ¶¶ 225–26, do not state a claim. *See Rosenfeld*, 370 F. Supp. 3d  at 349 ("Plaintiff's assertion '[u]pon information and belief' that Gonzalez 'disclosed, or directed the disclosure of Plaintiff's private communications' to the DOJ (FAC ¶ 83) is 'obviously conclusory' and not accepted as true.").

The bulk of Plaintiff's meager response to Mr. Strzok's arguments is hidden in a footnote. *See* Opp'n 31–32 n.4. According to Plaintiff, the "SAC expressly asserts that the Defendants did unlawfully use FISA obtained information in ways both known and unknown to Dr. Page, including by leaking to the media, and for use in obtaining the warrant renewals, and for other purposes as already admitted by the FBI in filings to the FISC." *Id.* (citing SAC ¶¶ 229, 230, 231).

None of the cited paragraphs of the Second Amended Complaint mentions Mr. Strzok by name, or identifies a specific disclosure he made. Instead, they improperly group all Defendants together as responsible for a whole host of alleged disclosures. Such group pleading is improper and cannot be used to state a claim against an individual defendant. *See Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014) ("grouping multiple defendants together in a broad allegation is insufficient to provide the defendants with fair notice of the claims against them and the grounds for relief") (citation omitted).

Plaintiff also asserts—for the first time in his Opposition—that Mr. Strzok used or disclosed "protected FISA obtained information in the warrant application process." Opp'n 33 There is no factual allegation in the Second Amended Complaint supporting this claim as to Mr. Strzok and Plaintiff cites none. The Court should reject the argument because Plaintiff cannot amend his Second Amended Complaint through his opposition brief. *See Bettis v. Bowser*, 2020 WL 5632414, at *5 (D.D.C. Sept. 21, 2020) (Friedrich, J.) ("[A] plaintiff cannot amend his or her complaint by the briefs in opposition to a motion to dismiss."). Moreover, the IG's finding that Mr. Strzok had "no role" in the preparation or approval of *any* of the four warrants shows that Plaintiff's new argument is unsupported. IG Report at 359.

Finally, Plaintiff cannot rely on the excuse that the information purportedly supporting his claim is "exclusively in the possession of the Defendants." *See* Opp'n 31–32 n.4. Plaintiff's entire theory is that Mr. Strzok "*publicly* disclosed" information. *Id.* at 33 (emphasis added). By its nature, public information is not exclusively in the possession of the Defendants. And here, Plaintiff alleges that the disclosures were to The Washington Post and The New York Times, which (a) would possess the information if it existed and (b) no doubt would have published it if they had it. Plaintiff cannot evade his pleading obligations about a public disclosure through conclusory

assertions that Defendants possess that information. *See United States, ex rel. Hood v. Satory Glob., Inc*., 946 F. Supp. 2d 69, 79 (D.D.C. 2013) (explaining that plaintiff may plead "on information and belief" where "essential information" is within another party's control but must include "a statement of the facts upon which the allegations are based").

Accordingly, Plaintiff's disclosure claims fail to state a claim.[4]

### C.      Section 1809(b) Bars Plaintiff's FISA Claims.

Even if Plaintiff's claims had some factual support—which they do not—they would still be barred by section 1809(b). Plaintiff does not dispute that Mr. Strzok satisfies the statutory requirements of that affirmative defense provision—he is a law enforcement officer, who would have been acting pursuant to his official duties in any alleged surveillance, and any surveillance would have been "authorized by and conducted pursuant to a search warrant or court order of a court of competent jurisdiction." 50 U.S.C. § 1809(b); *see* Opp'n 54. Accordingly, the statutory defense applies and precludes Plaintiff's claims against Mr. Strzok.[5]

Plaintiff's response is to add a "good faith" requirement that does not exist in the statute. Opp'n 54. Courts should not add language to statutes that Congress did not include. *See Bostock v. Clayton Cty., Ga.*, 140 S. Ct. 1731, 1738 (2020) ("If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's representatives."). That principle has particular force here, where Congress knows how to include a "good faith" requirement when it wants to. *See Whitfield*, 543 U.S. at 216 ("Congress has

---

[4] Mr. Strzok adopts and incorporates by reference the arguments in § IIIA–B of the Somma Reply Brief (ECF No. 104) regarding pleading an intentional violation of section 1809(a).

[5] If the Court does not view section 1809(b) as a complete defense, then Mr. Strzok is entitled to qualified immunity as described in his opening brief. Strzok Mot. to Dismiss 17–18.

included an express overt-act requirement in at least 22 other current conspiracy statutes, clearly demonstrating that it knows how to impose such a requirement when it wishes to do so."). For example, Congress set out such defenses in the Wiretap Act and the Stored Communications Act. *See* 18 U.S.C. § 2520(d) ("[G]ood faith reliance on . . . court warrant or order . . . is a complete defense"); *id.* § 2707(e) (similar). The absence of such language in FISA demonstrates that Congress did not require good faith.

In any event, there is no basis for concluding Mr. Strzok did not act in "good faith." The only allegations Plaintiff cites as showing the absence of good faith do not mention Mr. Strzok. *See* Opp'n 54 (citing SAC ¶¶ 40–69). And, as the IG concluded, Mr. Strzok had no role in the preparation or approval of the warrants. Accordingly, the claims against Mr. Strzok are barred even under Plaintiff's mistaken understanding of section 1809(b).

### D.   The FISA Claims Are Time-Barred.

Plaintiff's engagement and disclosure claims against Mr. Strzok are also time-barred. On this point, Mr. Strzok adopts and incorporates by reference the arguments in § I of the Clinesmith Reply brief (ECF No. 101). Moreover, as explained in Mr. Strzok's motion to dismiss, a one-year limitation period should apply under D.C. law for actions relating to libel and invasion of privacy. *See* Strzok Mot. to Dismiss 9–10. Plaintiff ignores those arguments. He does not explain why his action is *not* based in libel and invasion of privacy. He offers no discussion as to why the two-year limitations period in the Wiretap Act or Stored Communications Act does not apply. Plaintiff instead asserts that a three-year limitations period applies under D.C. law, but makes no effort to support that argument. Accordingly, the Court should apply the one-year or two-year limitations period.

Regardless of the applicable limitations period, Plaintiff's primary argument is that his claims—which are based on the four FISA warrants—did not accrue until the release of the IG Report. Opp'n 64–67. But that assertion cannot be true as to Mr. Strzok. The IG Report *absolved* Mr. Strzok of any role in the preparation or approval of the four warrants. *See* IG Report at 359. As a result, nothing in the Report would have provided any facts supporting the claims against Mr. Strzok. If anything, the IG Report should have put Plaintiff on notice that Mr. Strzok was not an appropriate defendant.

The IG Report also was not necessary for Plaintiff to bring his meritless disclosure claims against Mr. Strzok. Plaintiff knew about any purported disclosures when The Washington Post and The New York Times articles were published in 2017. *See* SAC ¶¶ 221, 224. And Plaintiff believed, in spring 2017, that those disclosures were unlawful, describing The Washington Post disclosure as "reveal[ing] the completely unjustified FISA warrant," which was a "nonsensical invasion of privacy." *See* ECF No. 88-11 at ECF p. 25 (May 22, 2017 letter). As a result, Plaintiff's claims were ripe in spring 2017, and are time-barred, whether under a one-, two-, or three-year limitations period.

## II.   THE *BIVENS* CLAIM FAILS.

Plaintiff's *Bivens* claim against Mr. Strzok should be dismissed because it arises in a new context, which the Court should not recognize, and is time-barred.

### A.   The Court Should Not Recognize Plaintiff's New *Bivens* Claim.

Under clear instructions from the Supreme Court, Plaintiff's *Bivens* claim fails because it arises in a new context and special factors counsel against recognizing this new claim. Plaintiff's response rests on a misreading of Supreme Court case law.

Plaintiff's main contention is that no new context exists because his case—against high-ranking executive officials involving matters of national security and electronic surveillance—is

like *Bivens*, a case about "entering and searching a private apartment to enforce federal narcotics laws." *Black Lives Matter D.C. v. Trump*, 544 F. Supp. 3d 15, 31 (D.D.C. 2021) (Friedrich, J.). That argument is wrong. *See id.* ("[A]s the Supreme Court has instructed, what matters is whether the claims in this case arise in a similar context to *Bivens* or *Davis*, *see* [*Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)], and the claims here clearly do not."). This Court found that *Bivens* was "markedly different" from a claim concerning the government's response to "a large protest in Lafayette Square." *Id.* Another court in this District recently concluded that *Bivens* is "markedly different" "from searching a private vehicle on a public street in the vicinity of the White House." *Robinson v. Pilgram*, 2021 WL 5987016, at *12 (D.D.C. Dec. 17, 2021), *appeal docketed*, No. 22-5001 (D.C. Cir. Jan. 5, 2022). Plaintiff's allegations here are further afield from *Bivens* than both of those cases, neither of which involved electronic surveillance or FISA.

Plaintiff also fails to acknowledge that this case arises in a new context because it involves a different class of defendants than *Bivens*. This Court has recognized a new *Bivens* context where "the remaining individual defendants are high-ranking, government officials within the executive branch, rather than the line-level FBI agents sued in *Bivens*." *See LKQ Corp. v. United States*, 2019 WL 3304708, at *11 (D.D.C. July 23, 2019) (Friedrich, J.). This case also involves such high-ranking officials—as Plaintiff agrees. *See* Opp'n 1 (emphasizing that his allegations do not involve "mere field agents . . . but rather the highest level FBI executives").

Multiple factors prohibit extending *Bivens* to this new context, including the existence of alternative remedies and the national security implications. Because Congress has provided an alternative remedial structure in FISA, a new *Bivens* claim is inappropriate. *See Corsi v. Mueller*, 422 F. Supp. 3d 51, 66 (D.D.C. 2019), *aff'd*, 819 F. App'x 6 (D.C. Cir. 2020) (holding no *Bivens* claim where Wiretap Act, Stored Communications Act, and FISA provided possible remedies);

*see also id.* ("no case has extended *Bivens* to warrantless wiretaps") (collecting cases). Plaintiff's response is that the existence of FISA's comprehensive framework is "irrelevant" because it concerns only the "election of remedies." Opp'n 60. But Plaintiff misunderstands the inquiry under *Bivens*. As this Court explained, a "special factor counseling hesitation is the availability of alternative remedies." *Black Lives Matter D.C.*, 544 F. Supp. 3d at 33. There is no dispute that FISA is an alternative remedy here—one that Plaintiff seeks to take advantage of in this case. The presence of that remedy counsels against recognizing Plaintiff's new *Bivens* context.

As to national security, Plaintiff relies on two out-of-context sentences in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), to support his position that national security concerns should not preclude a *Bivens* claim. *See* Opp'n 59. But he gets *Ziglar* exactly backwards. The Supreme Court shrugged off those concerns quoted by Plaintiff and *denied* the *Bivens* claim. *Ziglar*, 137 S. Ct. at 1862–63 ("The proper balance is one for the Congress, not the Judiciary, to undertake."); *see also Hernandez*, 140 S. Ct. at 747 ("Since regulating the conduct of agents at the border unquestionably has national security implications, the risk of undermining border security provides reason to hesitate before extending *Bivens* into this field."). It is telling that Plaintiff never argues that the national security concerns are absent from this case, or that they are any less significant than in *Ziglar* or *Hernandez*.

Accordingly, the Court should decline to recognize Plaintiff's new *Bivens* claim.

## B.    The *Bivens* Claim Is Barred By Qualified Immunity.

Mr. Strzok is also entitled to qualified immunity. *First*, there is no clearly established law that applies to Mr. Strzok. *See Daugherty v. Sheer*, 891 F.3d 386, 390 (D.C. Cir. 2018) ("[E]xisting precedent must have placed the statutory or constitutional question beyond debate."). Plaintiff makes no argument—and cites no case showing—that a supervisor of an investigation can be held

liable for alleged false statements in warrants or affidavits made by those under his purview. *See Corsi*, 422 F. Supp. 3d at 80 ("The allegedly violated right must be defined 'narrowly' so that it 'fit[s] the factual pattern confronting the officers.'") (quoting *Dukore v. District of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015)); *Black Lives Matter D.C.*, 544 F. Supp. 3d at 49 ("where assessing qualified immunity in the context of the Fourth Amendment, the Supreme Court has repeatedly 'stressed the need to identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment'") (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)).[6]

*Second*, Plaintiff has not identified any facts against Mr. Strzok supporting the *Bivens* claim. Plaintiff asserts that his *Bivens* claim focuses on false statements in warrants, Opp'n 55, yet he never argues that Mr. Strzok made such a statement or directed anyone to make such a statement. His only argument—unsupported by any factual allegations in the Second Amended Complaint—is that Mr. Strzok caused others to engage in surveillance. Opp'n 32. But directing others to engage in surveillance does not state a *Bivens* claim about false statements in warrants— there is nothing in the Opposition or Second Amended Complaint suggesting Mr. Strzok instructed anyone to make a false statement in a warrant. Accordingly, the *Bivens* claim—if it existed, which it does not—fails on its own terms.

---

[6] Plaintiff cites (Opp'n 57) the D.C. Circuit's decision in *Wesby* as supporting his *Bivens* analysis but does not explain that the Supreme Court, in reversing the D.C. Circuit, held that all the officers were entitled to qualified immunity. *See Wesby*, 138 S. Ct. at 591 ("[N]either the panel majority nor the partygoers have identified a single precedent—much less a controlling case or robust consensus of cases—finding a Fourth Amendment violation 'under similar circumstances.'").

C.     The *Bivens* Claim Is Time-Barred.

For the same reasons as with the FISA claims, the *Bivens* claim is time-barred. *See supra*.

Mr. Strzok also adopts and incorporates by reference the arguments in § I of the Clinesmith Reply

brief (ECF No. 101).

III.    <u>PLAINTIFF'S DAMAGES ARE NOT TRACEABLE TO MR. STRZOK'S
       CONDUCT.</u>

Mr. Strzok adopts and incorporates by reference the arguments in § IV of the Somma Reply

Brief (ECF No. 104) explaining that Plaintiff's alleged damages are not traceable to the conduct

of the Defendants, including Mr. Strzok.

CONCLUSION

The Court should dismiss Plaintiff's Second Amended Complaint against Mr. Strzok.


Dated: April 1, 2022                          Respectfully submitted,


                                              /s/ *Aitan Goelman*

                                              Aitan Goelman (D.C. Bar No. 446636)
                                              Ivano M. Ventresca (D.C. Bar No. 1045769)
                                              ZUCKERMAN SPAEDER LLP
                                              1800 M Street, NW, Suite 1000
                                              Washington, DC 20036
                                              Tel: (202) 778-1800
                                              Fax: (202) 822-8106
                                              E-mail: agoelman@zuckerman.com
                                              E-mail: iventresca@zuckerman.com

                                              *Attorneys for Defendant Peter Strzok*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of April, 2022, a true and correct copy of the foregoing document was served upon all counsel of record via the Court's CM/ECF system.

/s/ *Aitan Goelman*
Aitan Goelman