**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CARTER PAGE, | |
| Plaintiff, | |
| v. | No. 20-cv-03460 (DLF) |
| JAMES COMEY, ANDREW MCCABE, KEVIN CLINESMITH, PETER STRZOK, LISA PAGE, JOE PIENTKA III, STEPHEN SOMMA, BRIAN J. AUTEN, DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION, UNITED STATES OF AMERICA, JOHN DOES 1-10, JANE DOES 1-10, | **Oral Argument Requested** |
| Defendants. | |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT BRIAN J. AUTEN'S MOTION TO DISMISS**

Patrick F. Linehan (D.C. Bar No. 472183)
Brian M. Heberlig (D.C. Bar No. 455381)
James M. Hobbs (D.C. Bar No. 1031106)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC  20036-1795
Tel: (202) 429-3000
Fax: (202) 429-3902
plinehan@steptoe.com
bheberlig@steptoe.com
jhobbs@steptoe.com

*Counsel for Defendant Brian J. Auten*

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.      Plaintiff's Claims Against Auten Are Time-Barred ............................................................ 2

      A.      Plaintiff's Claims under Both *Bivens* and FISA are Subject to a One-Year Statute of Limitations ............................................................................................... 3

      B.      Plaintiff's Claims are Time-Barred Even if a Three-Year Limitations Period Applies ............................................................................................................... 5

II.     Plaintiff Cannot State a FISA Claim Against Auten Based on Secondary Liability .......... 8

III.    Plaintiff's *Bivens* Claim Against Auten Must Fail ........................................................ 10

IV.   Auten is Entitled to Qualified Immunity ........................................................................ 13

      A.      Qualified Immunity Bars Plaintiff's Bivens Claim Against Auten ..................... 13

      B.      Qualified Immunity Bars Plaintiff's FISA Claims Against Auten ...................... 14

V.      Plaintiff's Damages Are Not Traceable to Auten ............................................................ 16

CONCLUSION ..................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amobi v. D.C. Dep't of Corr.*,
  755 F.3d 980 (D.C. Cir. 2014) ...................................................................................6

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) ...............................................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................................10

*Berman v. Crook*,
  293 F. Supp. 3d 48 (D.D.C. 2018) ...........................................................................6

*Berry v. Funk*,
  146 F.3d 1003 (D.C. Cir. 1998) .............................................................................14

*Bivens* v. *Six Unknown Named Agents of Fed. Bureau of Narcotics*,
  403 U.S. 388 (1971) ........................................................................................ *passim*

*Church of Scientology v. Foley*,
  640 F.2d 1335 (D.C. Cir. 1981) ...............................................................................4

*City of Escondido v. Emmons*,
  139 S. Ct. 500 (2019) .............................................................................................13

*DeBrew v. Atwood*,
  847 F. Supp. 2d 95 (D.D.C. 2012), *aff'd in part*, No. 12-5361, 2014 WL
  590663 (D.C. Cir. Jan. 28, 2014), and *aff'd in part, vacated in part*,
  792 F.3d 118 (D.C. Cir. 2015) ...............................................................................11

*Doe v. Dep't of Justice*,
  753 F.2d 1092 (D.C. Cir. 1985) ...............................................................................4

*Dukore v. Dist. of Columbia*,
  799 F.3d 1137 (D.C. Cir. 2015) .............................................................................13

*Elnashar v. U.S. Dep't of Just.*,
  No. 03-cv-5110, 2004 WL 2237059 (D. Minn. Sept. 30, 2004), *aff'd*,
  446 F.3d 792 (8th Cir. 2006) .................................................................................14

*Fazaga v. FBI*,
  965 F.3d 1015 (9th Cir. 2020), *rev'd and remanded on other grounds*,
  142 S. Ct. 1051 (2022) ...........................................................................................14

ii

*Fletcher v. U.S. Parole Comm'n,*
  550 F. Supp. 2d 30 (D.D.C. 2008) ...........................................................................11

*Franks v. Delaware,*
  438 U.S. 154 (1978) ...........................................................................................13, 14

*Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson,*
  545 U.S. 409 (2005) .................................................................................................3

*Higazy v. Templeton,*
  505 F.3d 161 (2d Cir. 2007) ...................................................................................10

*Hunter v. Bryant,*
  502 U.S. 224 (1991) ...............................................................................................15

*Jefferson v. Harris,*
  170 F. Supp. 3d 194 (D.D.C. 2016) .........................................................................4

*Kerns v. United States,*
  No. 07-15769, 2009 WL 226207 (9th Cir. Jan. 28, 2009) ........................................8

*Lockhart v. Coastal Int'l Sec., Inc.,*
  905 F. Supp. 2d 105 (D.D.C. 2012) .........................................................................4

*McAlister v. Potter,*
  843 F. Supp. 2d 117 (D.D.C. 2012) .......................................................................11

*Rasul v. Myers,*
  512 F.3d 644 (D.C. Cir. 2008), *cert. granted and judgment vacated,* 555 U.S.
  1083 ...................................................................................................................14, 15

*Smith v. Nixon,*
  606 F.2d 1183 (D.C. Cir. 1979) ...............................................................................6

*Sprint Commc'ns Co., L.P. v. FCC,*
  76 F.3d 1221 (D.C. Cir. 1996) .................................................................................6

*Sykes v. U.S. Att'y for D.C.,*
  770 F. Supp. 2d 152 (D.D.C. 2011), *aff'd,* No. 11-5106, 2011 WL 5515568
  (D.C. Cir. Jan. 17, 2012) .........................................................................................7

*Tapley v. Collins,*
  211 F.3d 1210 (11th Cir. 2000) .............................................................................15

*Twelve John Does v. District of Columbia,*
  117 F.3d 571 (D.C. Cir. 1997) .................................................................................4

*United States v. Gaviria*,
    116 F.3d 1498 (D.C. Cir. 1997) ...........................................................................8

*United States v. Gonzalez*,
    922 F.2d 1044 (2d Cir. 1991) ..............................................................................9

*United States v. Kelley*,
    36 F.3d 1118 (D.C. Cir. 1994) .............................................................................9

*Wormley v. United States*,
    601 F. Supp. 2d 27 (D.D.C. 2009) ......................................................................4

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) .......................................................................................10

## Statutes

18 U.S.C. § 2 ................................................................................................................8

18 U.S.C. § 1512 ..........................................................................................................9

50 U.S.C. § 1805(d) .....................................................................................................5

50 U.S.C. § 1809 ...................................................................................................2, 8, 9

## State Statutes

D.C. Code § 12-301(4) ..............................................................................................3, 4

D.C. Code § 12-301(8) ................................................................................................3

## Other Authorities

DOJ Office of Inspector General, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* (Dec. 2019) .......................5, 9, 12

Ellen Nakashima, Devlin Barrett, & Adam Entous, *FBI obtained FISA warrant to monitor former Trump advisor Carter Page*, WASH. POST (Apr. 11, 2017) .........................7

## INTRODUCTION

As set forth in his Motion to Dismiss (Dkt. 86), Brian J. Auten is a career civil servant, Russia expert, and dedicated FBI intelligence analyst who was assigned by FBI leadership to work on the Crossfire Hurricane investigation into allegations of the Trump Campaign's involvement in Russian interference in the 2016 election.   Auten is ***not*** a political appointee, a member of the FBI's executive leadership, an attorney, or a law enforcement or investigative officer or agent. Auten is an intelligence ***analyst***, and he had no responsibility for drafting, approving, or signing any filings provided to the Foreign Intelligence Surveillance Court ("FISC").

Despite this reality, Plaintiff Carter Page ("Plaintiff") has brought a number of novel and unsupported claims against Auten in connection with Page being subject to electronic surveillance pursuant to the Foreign Intelligence Surveillance Act ("FISA") as part of the Crossfire Hurricane investigation.  Plaintiff's Opposition to Auten's Motion to Dismiss (Dkt. 98) does nothing to save the Complaint's[1] conclusory and undifferentiated allegations against the "Defendants" and formulaic recitations of the elements of the claims.  Indeed, Plaintiff has failed to rebut any of Auten's arguments for dismissal that are unique to him.  The few discernible arguments Plaintiff's Opposition does raise, however, are without merit.

*First*, Plaintiff has failed to articulate why his claims are not time-barred.  As Auten made clear in his Motion to Dismiss, the one-year statute of limitations period derived from the most analogous state law claims should govern, and that period has already run its course starting from the date Plaintiff's claims accrued (April 11, 2017, at the latest).  And even if Plaintiff's preferred

---

[1] Consistent with his Motion to Dismiss, Auten refers to the operative Second Amended Complaint filed on June 8, 2021 (Dkt. 73) as "the Complaint" in this filing for ease of reference.

three-year period applied, Plaintiff's claims accrued when he was aware of the facts underlying them, which was April 2017 at the latest based on his statements to the media.[2]

*Second*, for the first time in his Opposition, Plaintiff attempts to save his faulty FISA claims by shoehorning the criminal aiding and abetting statute into the FISA provision that creates a civil private right of action.  This argument misunderstands the law, which requires clear Congressional intent to create secondary civil liability, and, even if Plaintiff were correct, the Complaint nevertheless lacks any allegations suggesting that Auten had any secondary involvement in an effort to violate 50 U.S.C. § 1809 that would support aiding and abetting liability.

*Third*, Plaintiff fails to rebut the arguments that *Bivens* has never been applied in the new context in which his claims against Auten have been brought—an intelligence analyst's conduct— and that the Complaint does not allege that Auten actually violated Plaintiff's constitutional rights.

*Fourth*, the Opposition largely ignores Auten's argument that he is entitled to qualified immunity.  He is, and Plaintiff's Complaint must therefore be dismissed.

## ARGUMENT

### I.    Plaintiff's Claims Against Auten Are Time-Barred

It is clear from the face of the Complaint that Plaintiff's claims are time-barred, and Plaintiff's Opposition fails to establish otherwise.  Given the breadth of contrary authority, Plaintiff's unsupported position that a three-year statute of limitations applies to both his *Bivens* and FISA claims cannot stand.  Moreover, even if Plaintiff was afforded a three-year limitations period, Plaintiff has already stated—without a modicum of ambiguity—that he was aware of the

---

[2] Because Plaintiff reported to the FBI "that he believed he was under surveillance" in March 2017, *see* Office of the Inspector General, U.S. Department of Justice, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* (Dec. 9, 2019) ("Horowitz Report") at 220, his claims likely accrued even earlier than April 2017.

purported injury as early as April 2017, which plainly renders his suit time-barred under any applicable statute of limitations.

### A.   Plaintiff's Claims under Both *Bivens* and FISA are Subject to a One-Year Statute of Limitations

Plaintiff's Opposition devotes a single paragraph to addressing the applicability of a one-year statute of limitations to Plaintiff's FISA and *Bivens* claims. Opp., Dkt. 98, at 65. Rather than addressing the argument set forth in Clinesmith's Motion to Dismiss and adopted by Auten that a one-year statute of limitations applies to both Plaintiff's *Bivens* and FISA claims,[3] *see* Auten Mem. in Support of Mot. to Dismiss ("Auten Mem."), Dkt. 86-1, at 8, 11, Plaintiff summarily states that, under D.C. Code § 12-301(8), the residual three-year limitations period applies to both claims. Opp. at 65. For the reasons described below and as explained in Auten's and Clinesmith's prior motions, this argument must fail.

As set forth in more detail in Clinesmith's Motion to Dismiss, Dkt. 81-1, at 14-15, when a federal statute creates a cause of action that is not accompanied by a federal statute of limitations, courts "generally 'borrow' the most closely analogous state limitations period." *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 414-15 (2005). While Plaintiff would have this Court apply a three-year limitations period to both claims, doing so would ignore an analogous D.C. limitations period. Plaintiff's FISA and *Bivens* claims are most closely analogous to the state law cause of action for libel and slander, which carries a one-year limitations period. D.C. Code § 12-301(4). Indeed, for each claim made under FISA and *Bivens*, Plaintiff

---

[3] In the interests of judicial economy, Auten's Motion to Dismiss joined and incorporated by reference arguments made by other Individual Defendants in their Motions to Dismiss. *See generally* Auten Mem. Once again, Auten joins and incorporates by reference the arguments relevant to him found in the Replies in Support of the Motions to Dismiss filed by the other Individual Defendants.

asserts that the harm that Plaintiff incurred stems from being "falsely portrayed as a traitor to his country" because of alleged false statements made by Defendants in connection with obtaining from FISC authorization to surveil the Plaintiff.  Sec. Am. Compl. ¶¶ 262, 266, 270, 274.

Plaintiff declines to challenge Auten's argument regarding the common-sense application of a one-year limitations period under D.C. Code § 12-301(4) and fails to cite a single case applying the residual three-year limitations period to claims made under FISA or *Bivens*.[4]  In so doing, Plaintiff also asks the Court to ignore the multitude of cases in this Circuit likening similar *Bivens* claims to libel and slander.  *See, e.g.*, *Doe v. Dep't of Justice*, 753 F.2d 1092, 1114 (D.C. Cir. 1985) (holding that *Bivens* claim alleging due process violations was barred by D.C.'s one-year limitations period for libel because "[t]he gist of Doe's claims against the individual defendants is that they disseminated false and defamatory statements to other attorneys" which "destroyed her reputation"); *Church of Scientology v. Foley*, 640 F.2d 1335, 1336 (D.C. Cir. 1981) (one-year limitations period applied to *Bivens* claims alleging First and Fifth Amendment violations because they effectively amounted to defamation claims); *Wormley v. United States*, 601 F. Supp. 2d 27, 35 (D.D.C. 2009) (applying one-year limitations period to *Bivens* claim alleging unlawful detention caused by false statements); *Jefferson v. Harris*, 170 F. Supp. 3d 194, 213 (D.D.C. 2016) (applying one-year libel limitations period to *Bivens* claims based on due process violations).

---

[4] In fact, Plaintiff's failure to respond meaningfully arguably constitutes waiver and a concession that the one-year limitations period applies.  *See, e.g.*, *Lockhart v. Coastal Int'l Sec., Inc.*, 905 F. Supp. 2d 105, 118 (D.D.C. 2012) ("[W]hen a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.") (quotation omitted); *see also Twelve John Does v. District of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997) ("Where the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the rule.").

Plaintiff fails to establish that a three-year statute of limitations period applies, and, for the reasons described above and in the individual Defendants' prior motions, D.C.'s one-year statute of limitations period under D.C. Code § 12-301(4) is more closely analogous and should apply to both the *Bivens* and FISA claims.  Because well over one year has passed since the date on which of Plaintiff's cause of action was or could have been known, even under the most charitable view of its accrual date,[5] all of Plaintiff's claims are time-barred.

**B.      Plaintiff's Claims are Time-Barred Even if a Three-Year Limitations Period Applies**

As Auten's Motion argues, even if the longer three-year limitations period applied to Plaintiff's claims, they would nevertheless still be time-barred.

Plaintiff now suggests that government secrecy prevented him from discovering the information that gives rise to his claims, which he defines as "the facts underlying the FISA warrants, *i.e.*, that they were obtained without probable cause by the inclusion of numerous, material misrepresentations and omissions, which rendered the disclosure or use of information obtained through those warrants unlawful."  Opp. at 65-66.  In Plaintiff's view, his cause of action did not accrue until the December 2019 publication of the DOJ Office of the Inspector General Report entitled *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* ("Horowitz Report"), and thus Plaintiff envisions that—even under a one-year statute of limitations period—he timely filed suit in November 2020.  *Id.*

---

[5] As explained below, based on Plaintiff's public statements regarding his own contemporaneous knowledge, his claims accrued no later than April 11, 2017.  However, even viewing each FISA warrant as having a separate limitations period, the outcome is the same.  At most, the FISA warrants were valid for a 90-day period, *see* 50 U.S.C. § 1805(d), which means that the latest Plaintiff's claims could have accrued was September 27, 2017, 90 days from the alleged issuance of the last FISA Warrant on June 29, 2017.  *See* Sec. Am. Compl. ¶ 272.

However, as explained by Clinesmith in his Reply, *see* Clinesmith Reply, Dkt. 101, at 3-5, the standard suggested by Plaintiff is not based on an accurate reading of the law.  Courts do not condition the accrual of a cause of action on "the injured party [having] access to or constructive knowledge of all the facts required to support its claim."  *Sprint Commc'ns Co., L.P. v. FCC*, 76 F.3d 1221, 1228 (D.C. Cir. 1996).  Rather, "a cause of action accrues when the injured party discovers—or in the exercise of due diligence should have discovered—that it has been injured." *Id.*; *see also Berman v. Crook*, 293 F. Supp. 3d 48 (D.D.C. 2018) (holding that *Bivens* claim accrued when plaintiff became aware of allegedly improper search and received the supporting affidavit containing false statements, not when he later received a fully unredacted copy of the affidavit).  As Auten made clear in his Motion to Dismiss, Plaintiff's claims accrued when Plaintiff first learned that he was being *surveilled*, *see* Auten Mem., Dkt. 86-1, at 9-11, not with the publication of the "first official authoritative source to disclose" that the FISA warrants were improperly obtained.[6]  Sec. Am. Compl. ¶ 233.

Plaintiff relies on *Smith v. Nixon*, 606 F.2d 1183, 1190-91 (D.C. Cir. 1979), to support his argument that the statute of limitations period did not begin to run until the publication of the Horowitz Report.  Opp. at 65-67.  Strikingly, in *Nixon*, the Court confronted a seven-year delay in filing suit that was attributable to the appellants' inability to discover *the existence of the wiretap at issue*, not its unlawfulness.  *Id.* at 1190 (holding limitations period to have tolled because the appellants "could not through the exercise of due diligence have discovered the existence of the

---

[6] To be clear, Plaintiff cites no authority for the proposition that an "authoritative source" of information is necessary to start the clock on the statute of limitations, and, of course, federal lawsuits are initiated every day based only on a plaintiff's allegations, without the need for any outside source of authority.  *See Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 994 (D.C. Cir. 2014) (holding that a claim accrues when a plaintiff through "reasonable diligence should know (1) of the injury, (2) its cause in fact, and (3) of some evidence of wrongdoing") (citation omitted).

wiretap").   In determining whether the plaintiffs exercised the appropriate level of due diligence to discover the wiretap, the Court considered that the government took "extraordinary efforts . . . to conceal the surveillance program," as well as "affirmative acts of concealment that prevented the [appellants] from discovering the surveillance."   *Id.* at 1191.   Not so here.   Not only *could* Page have discovered the existence of the purportedly improper surveillance, *he was actually aware of it.*

Plaintiff cannot hide from a fact made abundantly clear on the face of his Complaint—that is, Plaintiff discovered his injury by April 11, 2017, at the latest.   *See* Sec. Am. Compl. ¶ 221. Plaintiff was put on notice by contemporaneous news articles describing the very conduct that serves as the basis of his Complaint, a fact he publicly acknowledged through his own contemporaneous statements to the media.   *See* Auten Mem., Dkt. 86-1, at 9-10.   Plaintiff cannot plausibly claim that his cause of action did not accrue until December 2019 when, in April 2017, he told the *Washington Post* that media coverage of the FISA warrants at issue "confirm[ed]" all of his "suspicions about unjustified, politically motivated government surveillance."   *See* Ellen Nakashima, Devlin Barrett, & Adam Entous, *FBI obtained FISA warrant to monitor former Trump advisor Carter Page*, WASH. POST (Apr. 11, 2017), https://www.washingtonpost.com/world/national-security/fbi-obtained-fisa-warrant-tomonitor-former-trump-adviser-carter-page/2017/04/11/620192ea-1e0e-11e7-ad74-3a742a6e93a7_story.html.

Thus, regardless of whether this Court finds that the one-year or three-year statute of limitations period applies to Plaintiff's claims, all claims against Auten are time-barred.   *Sykes v. U.S. Att'y for D.C.*, 770 F. Supp. 2d 152, 154 (D.D.C. 2011) (claim must be dismissed "when the

face of the complaint conclusively indicates it is time-barred"), *aff'd*, No. 11-5106, 2011WL5515568 (D.C. Cir. Jan. 17, 2012).[7]

## II.   Plaintiff Cannot State a FISA Claim Against Auten Based on Secondary Liability

Plaintiff's attempt to effectively re-plead his case as an aiding and abetting case—against a group of alleged "accessories" with no identified "principal"—reeks of desperation, and speaks volumes about his utter failure to allege facts establishing an act directly prohibited under § 1809, at least against Auten.[8] As Clinesmith's Reply details, and which Auten joins and incorporates here, (1) Plaintiff has raised this novel theory for the first time in his Opposition, (2) the text of FISA does not contemplate secondary liability, including for purported aiders and abettors, and (3) the legislative history does not support a theory of secondary liability. *See* Clinesmith Reply, Dkt. 101, at 8-18.

But even if Plaintiff's newfound assertion of secondary liability had a legal basis (which it does not), the Complaint still lacks any allegations suggesting that Auten was involved in an effort

---

[7] Any suggestion that the facts known by and available to Plaintiff in April 2017 were insufficient to allow him to "learn[] the information that would give rise to a cause of action against any of the Individual Defendants" is inapposite. *See* Opp. at 66. Plaintiff was certainly aware that the FISA warrants had been sought by the FBI and Department of Justice, acting through the agencies' respective employees, and he could have brought suit against unknown John and Jane Does, just as he eventually did in this case. *See also Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (involving suit against unknown federal agents).

[8] Plaintiff also fails to adequately confront Auten's argument that 50 U.S.C. § 1809 does not reach intelligence analysts, like Auten, who provide secondary support to those who have legal authority to conduct investigations. Auten Mem., Dkt. 86-1, at 21-22. Plaintiff's recitation of the 1978 conference report, *see* Opp. at 62-63, which references "intelligence agents," does nothing to bolster his position. An "intelligence agent" is someone who, unlike an analyst, is by definition directly involved in the *acquisition* of intelligence. *See also Kerns v. United States*, No. 07-15769, 2009 WL 226207, at *1 (9th Cir. Jan. 28, 2009) ("[A] plain reading of the statutory definition of 'investigative or law enforcement officer' indicates that the intelligence analyst defendants are not such officers."). Plaintiff's failure to provide a substantive response to this argument amounts to a waiver and concession that § 1809 does not apply to intelligence analysts. *See, e.g., Lockhart*, 905 F. Supp. 2d at 118; *Twelve John Does*, 117 F.3d at 577.

that "aided" or "abetted" any violation of § 1809.  The Complaint does not contain any allegations regarding Auten that remotely satisfy the elements of aiding and abetting liability.  As Plaintiff acknowledges, *see* Opp. at 17, aiding and abetting liability under 18 U.S.C. § 2 requires: (1) the specific intent to facilitate the commission of a crime by another; (2) guilty knowledge; (3) that someone else was committing a crime; and (4) assisting or participating in the crime.  *See, e.g.*, *United States v. Gaviria*, 116 F.3d 1498, 1535 (D.C. Cir. 1997).  As Auten explained in his Motion to Dismiss, there is no fact alleged in the Complaint that even suggests, let alone establishes, that Auten acted with the requisite intent in any act relating to the submission of any of the FISA warrant applications.  Auten Mem., Dkt. 86-1, at 18.  Moreover, there is no allegation that Auten took any act knowing that one of the other Defendants (or some other unidentified "principal") was committing a crime.[9]

At best, the Complaint registers Plaintiff's disagreement with some of Auten's assessments regarding the reliability of intelligence sources.  Sec. Am. Compl. ¶¶ 179-84.  For example, the Complaint alleges that Auten wrote that Steele's past reporting as an informant had been "corroborated and used in criminal proceedings."  Sec. Am. Compl. ¶ 179.  As Auten stated in his Motion to Dismiss, *see* Auten Mem., Dkt. 86-1, at 6, and as noted in the Horowitz Report, which Plaintiff incorporates by reference into his Complaint, Sec. Am. Compl. ¶ 41, Auten made this statement, which accurately characterized his understanding of Steele's past reporting at that time, and**,** according to numerous federal courts, is an objectively true statement,[10] in an intelligence

---

[9] As Clinesmith states, *see* Clinesmith Reply, Dkt. 101, at 19, the Horowitz Report, which the Complaint incorporates, did not find any evidence "that political bias or improper motivation influenced the decision" either to investigate Plaintiff or "to seek FISA authority" regarding his surveillance.  *See* Horowitz Report at iv, vi.

[10] *Compare* Horowitz Report at 162, *with, e.g., United States v. Kelley*, 36 F.3d 1118, 1128 (D.C. Cir. 1994) (noting that grand jury investigation is "official proceeding" under 18 U.S.C. §

memorandum that had *no relationship* to the FISA application process and was unilaterally incorporated into the first FISA warrant application by another agent.  Auten Mem., Dkt. 86-1, at 5-6.  Even accepting Plaintiff's unsupported suggestion, Sec. Am. Compl. ¶ 179, that Auten somehow included this statement in a FISA application, the allegation does not imply that Auten was intentionally supporting others' violation of § 1809.  Indeed, the Complaint does not allege that Auten had *any* knowledge that this statement would later be used in an application to the FISC.  That Plaintiff now includes some cursory allegations regarding Auten's intent in his opposition to Auten's Motion to Dismiss, Opp. at 47, cannot excuse the fact that the Complaint is completely devoid of any such well-pleaded allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (A complaint cannot "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)) (alteration in original).

Even if Plaintiff's theory of aiding and abetting liability were applicable (and it is not), Plaintiff has failed to plead allegations that satisfy its basic elements as to Auten.  For these reasons, Plaintiff's FISA claims against Auten must be dismissed.

### III.    Plaintiff's *Bivens* Claim Against Auten Must Fail

Auten hereby joins and incorporates by reference the authorities and arguments set forth in in Clinesmith's Reply regarding the new context under which Plaintiff's *Bivens* claims arise, the existence of alternative remedies, and the applicability of joint and several liability.  *See* Clinesmith Reply, Dkt. 101, at 20-22.[11]

---

1512) *and United States v. Gonzalez*, 922 F.2d 1044, 1056 (2d Cir. 1991) (narcotics investigation an "official proceeding" under § 1512).

[11] Plaintiff attempts to rebut Defendants' arguments regarding the new context to which he seeks to apply *Bivens* in only broad strokes.  In doing so, Plaintiff fails to meaningfully respond to the argument raised by Auten in his Motion to Dismiss that applying *Bivens* to intelligence

As explained below, Plaintiff's *Bivens* claim against Auten also fails under the theory of supervisory liability upon which Plaintiff now relies. A *Bivens* action must be "brought against the individual official for his or her own acts, not the acts of others." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017). Indeed, Plaintiff's Opposition acknowledges that under *Iqbal*, 556 U.S. at 676, he must plead that each Defendant, "through [his] own individual actions, has violated the Constitution."[12] Opp. at 55. As Auten explained in his Motion to Dismiss, the Complaint does not give rise to any inference that Auten personally participated in a violation of Plaintiff's constitutional rights. Auten Mem., Dkt. 86-1, at 14-20. Rather than address this failing directly, Plaintiff now attempts to sidestep the issue by asking this Court to apply supervisory liability. Opp. at 55-56. But even under this standard, Plaintiff's claims against Auten miss the mark.

*First*, while the Complaint alleges that Auten held the title of "Supervisory Intelligence Analyst," Sec. Am. Compl. ¶ 33, it is not sufficient to merely state that Auten was a government official who held a supervisory role when Plaintiff's constitutional rights were allegedly violated. *See DeBrew v. Atwood*, 847 F. Supp. 2d 95, 106 (D.D.C. 2012) ("The supervisory role that a defendant may have played does not render him personally liable for the alleged wrongful acts of others."), *aff'd in part*, No. 12-5361, 2014 WL 590663 (D.C. Cir. Jan. 28, 2014), and *aff'd in part*,

---

analysts, like Auten, would create a "new category of defendants" under *Bivens* and therefore a new context warranting dismissal. Auten Mem., Dkt. 86-1, at 12-13. With this failure, Plaintiff thus effectively concedes the issue. *See, e.g.*, *Lockhart*, 905 F. Supp. 2d at 118; *Twelve John Does*, 117 F.3d at 577.

[12] Curiously, Plaintiff points to *Higazy v. Templeton*, 505 F.3d 161, 175 (2d Cir. 2007), for the notion that *Bivens* defendants may be held liable for the "natural consequences" of their actions. Opp. at 56. *Higazy* is not binding on this Court, but even if it was, it does nothing to limit the requirement under *Iqbal* and *Abbasi* that each defendant facing a *Bivens* claim must be alleged to have engaged in conduct that violated Plaintiff's constitutional rights. In *Higazy*, the defendant's participation in the alleged Fifth Amendment violation was not at issue. *See Higazy*, 505 F.3d at 171 (noting that defendant did not challenge the sufficiency of the Complaint's allegation that the defendant coerced the plaintiff to make a statement that was later used in a criminal proceeding).

*vacated in part*, 792 F.3d 118 (D.C. Cir. 2015).  In *Fletcher v. United States Parole Commission*, 550 F. Supp. 2d 30, 39 (D.D.C. 2008), the case on which  Plaintiff relies, the Court made clear that a supervisor can only be held liable for the constitutional violations of his subordinates if "the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."  *Id.* (citation omitted)*; see also McAlister v. Potter*, 843 F. Supp. 2d 117, 123 (D.D.C. 2012) (dismissing plaintiff's complaint because the complaint failed to allege that the defendant "personally acted in any way, let alone in a way that violated [the plaintiff's] constitutional rights.").  The Complaint, by contrast, does not allege that Auten even *knew* of the alleged constitutional violations, never mind his participation in or direction thereof.

*Second*, and more to the point, Plaintiff makes no attempt to allege that constitutional violations were carried out by any subordinate of Auten.  The Complaint fails to name a single defendant who is subordinate to Auten, nor does it allege that Auten somehow provided "authorization or approval" of the alleged constitutional violations.  Indeed, the Complaint cannot plausibly make either claim.  As Auten stated in his Motion to Dismiss, he was at or near the bottom of the chain of command at all times during the course of the Crossfire Hurricane Investigation.  Auten Mem., Dkt. 86-1, at 1; *see also* Horowitz Report at 81-83 (showing position of "Supervisory Intel Analyst" at the three different phases of the Crossfire Hurricane investigation).  As the Complaint recognizes, Auten supervised five or six analysts during the Crossfire Hurricane Investigation, none of whom is named in the Complaint or otherwise alleged to have violated Plaintiff's constitutional rights.  *See* Sec. Am. Compl. ¶ 174.  Even Plaintiff in his own words acknowledges that Auten played a "supportive role" for the agents preparing FISA applications, *id*. ¶ 175, and "assisted" case agents providing information on the reliability of intelligence sources, *id*. ¶ 176.  This description of his position does not align with the one that

Plaintiff now hopes to ascribe to Auten, *i.e.*, that his authorization or approval was a prerequisite to an alleged constitutional violation. *See also* Horowitz Report at 133 ("[O]nce an FBI case agent affirms the accuracy the information in the read copy of an application, an OI Unit Chief or Deputy Unit Chief is usually the final and only approver before a read copy is submitted to the FISC.").

The Complaint thus fails to allege facts that align with Plaintiff's theory of supervisory liability, if the Court were to find that theory applicable at all. Therefore, Plaintiff's *Bivens* claims against Auten must be dismissed for yet another reason.

## IV. Auten is Entitled to Qualified Immunity

Finally, as argued in his Motion, *see* Auten Mem., Dkt. 86-1, at 20-21, Auten is entitled to dismissal on the basis of qualified immunity because the Complaint fails to allege that he violated Plaintiff's clearly established rights under either the Fourth Amendment or FISA. Plaintiff carries the burden of establishing that the right in question, when "narrowly described to fit the factual pattern confronting the officers," is clearly established, *Dukore v. Dist. of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015). To be clearly established, the right must be one for which "existing precedent . . . place[s] the statutory or constitutional question *beyond debate*." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (emphasis added). Nothing in the Opposition counters that Plaintiff has failed to meet this standard.

### A. Qualified Immunity Bars Plaintiff's Bivens Claim Against Auten

With respect to his *Bivens* claim, Plaintiff fails to point to **any** existing precedent—not a single case—that supports his position that Auten, an intelligence analyst, is not entitled to qualified immunity, and instead seeks to broadly equate Auten's alleged conduct to that which the Supreme Court found to constitute a Fourth Amendment violation in *Franks v. Delaware*, 438 U.S. 154 (1978). Opp. at 61. In *Franks*, however, the Supreme Court held that **a police officer**

who made intentional, knowing, or reckless submission of false information in a warrant affidavit violated the Fourth Amendment when that information is material to a finding of probable cause. 438 U.S. at 171-73.  As Clinesmith sets forth in his Reply, *see* Clinesmith Reply, Dkt. 101, at 23, drawing a comparison at this level of generality does not satisfy the requirement that the right be "clearly established." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) ("[T]he clearly established right must be defined with specificity.").  As stated above, the Complaint contains only vague allegations regarding Auten's support of agents preparing FISA applications and his role in assisting agents in providing information on the reliability of intelligence sources.  It fails to allege that Auten signed an affidavit or any application the FISC or that he determined which information to include in such applications or affidavits.  In fact, the Complaint does not even make a perfunctory attempt to claim that Auten made any misstatements or omissions that were *material* to the FISC's probable cause determination.  Absent even these base-level similarities, and the lack of any precedent even suggesting—let alone, clearly establishing—that an intelligence analyst with no authority to approve or submit a FISA warrant application can be liable for a *Franks* violation, it cannot be said that Auten violated a clearly-established Fourth Amendment right.

### B.    Qualified Immunity Bars Plaintiff's FISA Claims Against Auten

Similarly, Auten is entitled to qualified immunity from Plaintiff's FISA claims, as the law regarding the liability of a government official conducting surveillance pursuant to a warrant issued by the FISC is far from clearly established, *see* Auten Mem., Dkt. 86-1, at 21-22, and Plaintiff fails to point the Court to any caselaw suggesting otherwise.  Plaintiff again sidesteps the issue by taking the position—without citing sufficient authority—that qualified immunity is unavailable as a defense under FISA.  Plaintiff ignores, however, that courts in other jurisdictions have considered the merit of a claim of qualified immunity in the context of FISA on a Rule 12(b)

motion.  *See, e.g.*, *Fazaga v. FBI*, 965 F.3d 1015, 1031 (9th Cir. 2020), *rev'd and remanded on other grounds*, 142 S. Ct. 1051 (2022); *Elnashar v. U.S. Dep't of Just.*, No. 03-cv-5110, 2004 WL 2237059, at *5 (D. Minn. Sept. 30, 2004), *aff'd*, 446 F.3d 792 (8th Cir. 2006).

Plaintiff also relies on *Berry v. Funk*, 146 F.3d 1003, 1013 (D.C. Cir. 1998), for the proposition that, because Congress created a statutory safe harbor, the common law doctrine of qualified immunity does not apply.  Opp. at 62.  To be clear, *Berry* did not involve FISA, and the D.C. Circuit has subsequently explained that "[b]oth the Supreme Court and our court have recognized qualified immunity is available to counter not only constitutional claims *but also certain statutory claims*."  *Rasul v. Myers*, 512 F.3d 644, 668 n.20 (D.C. Cir. 2008) (emphasis added) (citing *Berry*, 146 F.3d at 1014), *cert. granted and judgment vacated*, 555 U.S. 1083 (2008).  In this more recent decision, the D.C. Circuit quoted an Eleventh Circuit opinion for the proposition that "qualified immunity is available against statutory claim[s] unless 'Congress intended to abrogate the defense of qualified immunity to claims under that act[.]'"  512 F.3d at 668 n.20 (quoting *Tapley v. Collins*, 211 F.3d 1210, 1214-15 n.9 (11th Cir. 2000); *see also Tapley*, 211 F.3d at 1216 ("[T]he qualified immunity defense is so well-rooted in our jurisprudence that only a specific and unequivocal statement of Congress can abolish the defense.") (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993)).  FISA contains no indication that Congress intended to abrogate qualified immunity, including when it created the statutory safe harbor.

Finally, Plaintiff states that qualified immunity is "an affirmative defense" that cannot be raised at this stage in the litigation.  *See* Opp. at 63-64.  That is simply not the law.  The Supreme Court has stated clearly that, because qualified immunity "is an immunity from suit rather than a mere defense to liability," it should be addressed "at the earliest possible stage in litigation."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (citations omitted).

For these reasons, both Plaintiff's *Bivens* and FISA claims should be dismissed on the basis of qualified immunity.

## V.     Plaintiff's Damages Are Not Traceable to Auten

Finally, Auten hereby joins and incorporates by reference the authorities and arguments set forth in Defendant Stephen Somma's Reply explaining that Plaintiff's alleged damages are not traceable to the conduct of the Defendants, including Auten.  *See* Somma Reply, Dkt. 104, at 16-17.

## <u>CONCLUSION</u>

For the reasons stated above and set forth in his Motion to Dismiss, all claims against Brian J. Auten should be dismissed with prejudice.

Dated:    April 1, 2022

Respectfully submitted,

*/s/ Patrick F. Linehan*
Patrick F. Linehan (D.C. Bar No. 472183)
Brian M. Heberlig (D.C. Bar No. 455381)
James M. Hobbs (D.C. Bar No. 1031106)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC  20036-1795
Tel: (202) 429-3000
Fax: (202) 429-3902
plinehan@steptoe.com
bheberlig@steptoe.com
jhobbs@steptoe.com

*Counsel for Defendant Brian J. Auten*

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2022, a copy of the foregoing Reply Memorandum in Support of Defendant Brian J. Auten's Motion to Dismiss was served upon all counsel of record using the Court's CM/ECF electronic filing system.


_/s/ Patrick F. Linehan_
Patrick F. Linehan