UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CARTER PAGE,

      *Plaintiff*,

v.

JAMES B. COMEY *et al.*,

      *Defendants*.

No. 20-cv-3460 (DLF)

**MEMORANDUM OPINION**

Following the Court's order granting the defendants' motions to dismiss and closing this case, Carter Page filed a motion to alter or amend the judgment under Rule 59(e) and for relief from the judgment under Rule 60(b) of the Federal Rules of Civil Procedure. Pl.'s Mot. for Recons., Dkt. 119. For the reasons that follow, the Court will deny the motion.

**I.    BACKGROUND**[1]

As explained at length in the Court's initial opinion, *see* Mem. Op. at 1–9, Dkt. 115, this case arises out of various FBI agents' alleged actions to obtain four successive Foreign Intelligence Surveillance Act (FISA) warrants to electronically surveil Page during the Trump 2016 campaign, despite there being no probable cause to do so. *Id.* at 2. Among other things, Page alleged that the FBI used reports by Christopher Steele, who "was paid by the Democratic National Committee and/or the Clinton campaign to perform political opposition research," as a basis to obtain the FISA warrants "without adequately investigating [Steele's] reliability and motives." *Id.* at 2–3. And as relevant here, the complaint alleged that Igor Danchenko, "one of Steele's key sub-

---

[1] The Court assumes familiarity with the extensive discussion of the facts set forth in its initial opinion. *See* Mem. Op. at 1–10, Dkt. 115.

sources," provided information to the FBI that "contradicted key claims in Steele's reports" but "was not reported" in the FISA applications. *Id.* at 31.

Page's Second Amended Complaint brought claims under the FISA and *Bivens* against individual defendants James Comey, Andrew McCabe, Kevin Clinesmith, Peter Strzok, Lisa Page, Joe Pientka, Stephen Somma, and Brian Auten, all individuals who worked at the FBI. Second Am. Compl. (SAC) ¶¶ 256–274, 283–289, Dkt. 73. The complaint also listed John Does 1–10 as individual defendants "whose identities or specific involvement in the conduct alleged in this Complaint may not yet be known to the Plaintiff." *Id.* ¶¶ 34–35. Finally, Page sued the United States under the Federal Tort Claims Act (FTCA) and PATRIOT Act, *id.* ¶¶ 275–282, 303–311, and DOJ and the FBI under the Privacy Act, *id.* ¶¶ 290–302.

Each of the named individual defendants and the institutional defendants moved to dismiss. Dkts. 80–88. The Court granted the motions. *See* Order, Dkt. 114. It dismissed the FISA, *Bivens*, FTCA, and PATRIOT Act counts for failure to state a claim under Rule 12(b)(6). Mem. Op. at 34–35, 38–39, 43–44. It further dismissed one Privacy Act count for failure to exhaust administrative remedies, *id.* at 49, and the other as time-barred, *id.* at 50. Although the Court dismissed all claims without prejudice except for the *Bivens* claim, the Court directed that the case be closed.[2] Order at 1. On September 29, 2022, Page moved to alter or amend the judgment under Rule 59(e) and for relief from the judgment under Rule 60(b) based on newly discovered evidence about the FBI's relationship with Danchenko. Pl's Mem. of Law in Supp. of Mot. for Recons. at 2–3, Dkt. 119-1.

---

[2] The Order constituted "[t]he dismissal without prejudice of [the] action (or 'case')," which "is final and appealable." *Ciralsky v. CIA*, 355 F.3d 661, 666 (D.C. Cir. 2004) ("That the dismissal was without prejudice to filing another suit does not make the cause unappealable, for denial of relief and dismissal of the case ended this suit as far as the District Court was concerned." (quoting *United States v. Wallace & Tiernan Co.*, 336 U.S. 793, 794–95 n.1 (1949))).

2

## II. LEGAL STANDARDS

Rule 59(e) permits a party to file a "motion to alter or amend a judgment . . . no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam) (quotation marks omitted). A movant cannot use a Rule 59(e) motion to raise new issues, theories, or arguments that could have been presented in the course of the litigation. *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020); *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004). Instead, such a motion "must address new evidence or errors of law or fact and cannot merely reargue previous factual and legal assertions," and it will be granted "[o]nly if the moving party presents new facts or a clear error of law which compel a change in the court's ruling." *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995) (quotation marks omitted).

Similarly, under Rule 60(b), "the court may relieve a party . . . from a final judgment" on grounds including "mistake, inadvertence, surprise, or excusable neglect"; "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)"; "fraud . . . , misrepresentation, or misconduct by an opposing party"; or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (2), (3), (6). "[A] district court enjoys significant discretion in deciding whether to grant or deny a Rule 60(b) motion . . . ." *Computer Pros. for Soc. Resp. v. U.S. Secret Serv.*, 72 F.3d 897, 903 (D.C. Cir. 1996). Like Rule 59(e), "Rule 60(b) is not a vehicle for presenting theories or arguments that could have been raised previously." *Walsh v. Hagee*, 10 F. Supp. 3d 15, 19 (D.D.C. 2013) (quotation marks omitted).

## III.     ANALYSIS

In his motion for reconsideration, Page asks the Court to reopen the case to "correct mistakes of fact and law" and grant him "leave to amend his SAC" based on newly discovered evidence. Pl.'s Mem. at 13–14. He also requests authorization to conduct "targeted discovery." *Id.* at 13. The Court will address each in turn.

### A.     Reopening the case based on newly discovered evidence

Page alleges that, after the Court's opinion and order issued, new evidence came to light that Danchenko was a paid source for the FBI from March 2017 to October 2020 and thus had "been paid to assist each of the Defendants' perpetration of their illegal activities," which the defendants "conceal[ed] . . . from this Court throughout the course of the current litigation." *Id.* at 2, 5. Page understands this new information to imply that the individual defendants "deliberately put one of the fabricators of the Steele Dossier on FBI payroll in order to keep him quiet and further cover up the individual FBI Defendants' misdeeds." *Id.* at 17 (emphasis omitted); *see also id.* at 16–19. Based on this new evidence, Page "moves the Court to alter and/or amend the final order" dismissing his Second Amended Complaint and closing the case. *Id.* at 13.

Such relief is not warranted. Troubling as the Danchenko allegation may be, it does not "compel the court to change its prior position" on any count. *Nat'l Ctr. for Mfg. Scis. v. Dep't of Def.*, 199 F.3d 507, 511 (D.C. Cir. 2000). Rather, the alleged new evidence would not affect the analyses dismissing the claims against either the individual or institutional defendants.

As to the individual defendants, the new facts have no bearing on the Court's rationale for dismissing the FISA claims.[3] The Court reasoned that Page's FISA claims "fail[ed] for two reasons": (1) FISA "does not allow for aiding and abetting liability," Mem. Op. at 19–20; and

---

[3] Page does not challenge the dismissal of the *Bivens* claims against the individual defendants.

4

(2) it applies only to those "who participate[] in *collecting* the target's communications using certain devices," which Page's complaint did not allege for any individual defendant, *id.* at 26, 28–29. Even assuming the new allegations about a coverup involving Danchenko are true, those two legal conclusions remain unaffected. While Page suggests that the Danchenko evidence supports a "civil conspiracy" theory of liability, *see* Pl.'s Reply at 4–5, Dkt. 124, that argument fails for the same reason his aiding-and-abetting theory failed. Mem. Op. at 20 ("[S]tatutory silence on the subject of secondary liability means there is none." (quotation marks omitted)); *see also Broidy Cap. Mgmt. LLC v. Muzin*, No. 19-cv-0150, 2020 WL 1536350, at *11 (D.D.C. Mar. 31, 2020), *aff'd*, 12 F.4th 789 (D.C. Cir. 2021) ("The same principle applies to bar recovery from coconspirators . . . .").

Moreover, Page's assertion that Danchenko himself was a "device" by which the defendants collected communications, Pl.'s Reply at 17, is likewise unconvincing. Page defines "device" to include "[a] scheme to trick or deceive." *Id.* (quoting Black's Law Dictionary (11th ed. 2019)). But his definition is plainly at odds with the statutory language, which speaks of "the installation of . . . an *electronic*, *mechanical*, or other surveillance device," 50 U.S.C. § 1801(f)(1), (4) (emphasis added), and the Court's explanation of that term, which emphasizes that using a device "is distinct from the process of getting a warrant," Mem. Op. at 22–23. Therefore, even if a coverup helped secure the warrants, it cannot be considered a "device" for purposes of FISA.

As to the institutional defendants, the new evidence does not impact the statute of limitations analysis for dismissing Page's Privacy Act claim.[4] *See id.* at 50–52. The Court reasoned that Page knew about alleged leaks to media outlets "when [the relevant articles] were published in April 2017," even if "he did not then know the identities of the leakers" or details of

---

[4] Page does not challenge the dismissal of his other Privacy Act claim due to failure to exhaust.

5

the leaks. *Id.* at 51. Thus, the Court concluded, Page's "Privacy Act disclosure claims expired two years after publication," *id.*, and his suit (brought more than three-and-a-half years later) was time-barred. *Id.* at 52. Again, the Danchenko allegations are irrelevant. Even if the new evidence did show that the defendants engaged in "material and willfull [*sic*] misrepresentations," Pl.'s Reply at 23, those misrepresentations would not negate Page's inquiry notice of any Privacy Act violations when the articles containing alleged leaks were published. *See* Mem. Op. at 51. Page's arguments to the contrary reference the portion of the Court's opinion discussing—and rejecting—whether the *FISA claims* were time barred, *see* Pl.'s Mem. at 25–26 (citing Mem. Op. at 16), and are inapposite for the Privacy Act conclusion.[5]

To the extent Page challenges the dismissal of the remaining claims against the institutional defendants, *see* Pl.'s Reply at 12–13 (FTCA claim); *id.* at 18–22 (PATRIOT Act claim), he did not raise those arguments in his motion and the Court will not consider "issues raised for the first time in a reply brief." *Rollins Env't Servs. (NJ) Inc. v. EPA*, 937 F.2d 649, 653 n.2 (D.C. Cir. 1991). And even if the Court did consider them, the arguments would fail for the same reason: whether or not Danchenko was a paid FBI informant does not impact the analyses as to either claim. *See* Mem. Op. at 40 (dismissing FTCA claim because Page did not allege that "the defendants *used* the warrants wrongfully"); *id.* at 41–45 (dismissing PATRIOT Act claim due to sovereign immunity, failure to exhaust, and failure to plausibly allege that the government improperly "used or disclosed FISA information").

---

[5] Page's remaining arguments about FISA's legislative history and statutory interpretation, *see* Pl.'s Mem. at 20–23; Pl.'s Reply at 18–19, and the Privacy Act's statute of limitations, *see* Pl.'s Mem. at 26–27, are legal theories that "could have [been] raised before the decision issued" and the Court will not address them now. *Banister*, 140 S. Ct. at 1703.

Because the newly discovered information about Danchenko would not "compel a change in the court's ruling" on any claim, it does not support altering, amending, or granting relief from the Court's order dismissing Page's complaint and closing the case. *New York*, 880 F. Supp. at 38 (quotation marks omitted). As a result, Page's motion for leave to amend necessarily fails. *See* Pl.'s Mem. at 17, 19–20. "[O]nce a final judgment has been entered, a court cannot permit an amendment unless the plaintiff 'first satisfies Rule 59(e)'s more stringent standard' for setting aside that judgment." *Ciralsky*, 355 F.3d at 673 (quoting *Firestone*, 76 F.3d at 1208 (alteration omitted)). "Since the court decline[s] to set aside the judgment under Rule 59(e)," Page's "motion to amend under Rule 15(a) [is] moot." *Id.*[6]

### B. Conducting targeted discovery

Page also asks for discovery to enable him "to learn sufficient details to plead the relevant causes of action." Pl.'s Mem. at 13. Specifically, he seeks to uncover "[w]hat exactly the [d]efendants . . . disclosed to journalists," "[w]hat . . . the [d]efendants kn[ew] about the partisan, political motivations of the surveillance of Page," and the identities of John Does 1–10, "the individuals who 'engaged in' the mechanics of the FISA surveillance." *Id.* at 24–25. The Court will deny these requests.

First, Page has not provided grounds for this relief under Rule 59(e) or Rule 60(b). These discovery requests are not related to the newly discovered evidence, nor has Page identified any "intervening change of controlling law . . . or the need to correct a clear error or prevent manifest

---

[6] To the extent Page wishes to bring new causes of action, *see, e.g.*, Pl.'s Reply at 14–15 (quoting 42 U.S.C. § 1985(3)), the Court notes that his Second Amended Complaint was dismissed without prejudice to refiling a new suit. *See* Order at 1. Page has provided no argument or reason to believe that that dismissal unfairly prejudiced him due to, for example, a statute of limitations concern. *See Ciralsky*, 355 F.3d at 674 (remanding for the district court to consider "the [statute of limitations] consequences of denial" of a Rule 59(e) decision, but ultimately "leav[ing] the choice entirely in the hands of the district court" (quotation marks omitted)).

7

injustice." *Firestone*, 76 F.3d at 1208 (quotation marks omitted).  Rules 59(e) and 60(b) are thus not the proper vehicle for these requests, which could have been presented earlier. *Id.*; *Walsh*, 10 F. Supp. 3d at 19.

In any event, Page's discovery requests fail for a second reason. "A plaintiff may not 'use discovery to obtain the facts necessary to establish a claim that is plausible on its face pursuant to [the] *Twombly* and *Iqbal* [pleading standards]—even when those facts are only within the head or hands of the defendant.'" *Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, 406 F. Supp. 3d 72, 83 (D.D.C. 2019), *aff'd*, No. 19-7124, 2020 WL 873574 (D.C. Cir. Feb. 14, 2020) (quoting *Felder v. WMATA*, 105 F. Supp. 3d 52, 59 (D.D.C. 2015)). Page is not entitled to conduct "a fishing expedition" to discover new potential claims he may bring against the defendants. *Id.* at 82 (quoting *Bastin v. Fed. Nat'l Mortgage Ass'n*, 104 F.3d 1392, 1396 (D.C. Cir. 1997)); *see also Mama Cares Found. v. Nutriset Societe Par Actions Cimplifiee*, 825 F. Supp. 2d 178, 184 (D.D.C. 2011) ("[T]he discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim." (quotation marks omitted)).

Page's request for discovery to learn the identities of the John Does fares no better. Courts do sometimes allow cases to proceed against "'John Doe' defendants, but only in situations where the otherwise unavailable identity of the defendant will eventually be made known through discovery." *Newdow v. Roberts*, 603 F.3d 1002, 1010 (D.C. Cir. 2010). That exception is not applicable here. Page's complaint does not detail any alleged wrongdoing by the John Does. *See* SAC ¶¶ 34–35 (stating that Does' "specific involvement in the conduct alleged in this Complaint [was] not yet [] known to the Plaintiff"). The complaint later states that unknown individuals engaged in surveillance of Page pursuant to the FISA warrants, *id.* ¶¶ 140–141, but makes no

8

attempt to link that action to any cause of action.[7] Thus, this is a very different case from *Malibu Media, LLC v. Doe*, 64 F. Supp. 3d 47, 48–50 (D.D.C. 2014), which permitted jurisdictional discovery "to learn the identity of putative defendants." *See* Pl.'s Mem. at 23. There, the complaint plausibly alleged that John Doe violated the Copyright Act, and discovery was permitted to uncover his identity and ensure personal jurisdiction. *Malibu Media*, 64 F. Supp. 3d at 48–50. By contrast, Page has not alleged any claim against John Does 1–10. Thus, discovery would, once again, "amount to nothing more than a fishing expedition" to uncover wrongdoing that he has not already plausibly alleged. *Bastin*, 104 F.3d at 1396. Page's "[m]ere conjecture or speculation" of wrongdoing by John Does 1–10 "is not enough to justify jurisdictional discovery." *Malibu Media*, 64 F. Supp. 3d at 48 (quotation marks omitted); *see also Landwehr v. FDIC*, 282 F.R.D. 1, 4–5 (D.D.C. 2010) (explaining that plaintiffs could not "maintain their claims against the 'Doe' defendants" given "the complete absence of any specific allegations against" them).

## CONCLUSION

For the foregoing reasons, the plaintiff's motion to alter or amend the judgment and for relief from the judgment is denied. A separate order consistent with this decision accompanies this memorandum opinion.

January 18, 2023

DABNEY L. FRIEDRICH
United States District Judge

---

[7] Notably, FISA exempts from liability those who engage in electronic surveillance that "was authorized by and conducted pursuant to a search warrant or court order of a court of competent jurisdiction." 50 U.S.C. §§ 1809(b), 1810.

9